4
WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Attorneys for Chapter 9 Counsel


McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Timothy L. Thompson, #133537
   tim.thompson@mccormickbarstow.com
Mandy L. Jeffcoach, #232313
   mandy.jeffcoach@mccormickbarstow.com
Nikole E. Cunningham, #277976
   niki.cunningham@mccormickbarstow.com
7647 North Fresno Street
Fresno, California 93720
Telephone:   (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for District Counsel

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>              Debtor.<br><br>Tax ID #    94-6002897<br>Address:    869 N. Cherry Street<br>             Tulare, CA 93274 | Case No. 17-13797<br><br>DC No.: WW-1<br><br>Chapter 9<br><br>Date:    October 12, 2017<br>Time:   10:30 a.m.<br>Place:   2500 Tulare Street<br>          Fresno, CA 93721<br>          Courtroom 13<br>Judge:  Honorable Rene Lastreto II |

**<u>DECLARATION OF RICHARD GIANELLO IN SUPPORT OF MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT (HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)</u>**

I, Richard A Gianello, declare:

1. I am a Partner at Wipfli LLP/HFS Consultants ("HFS"), who has been hired as an advisor and crisis manager for Debtor TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER ("Debtor"). I have personal knowledge of the events and facts described in this Declaration, and if called upon to testify about the same, could and would competently do so.

2. I am submitting this Declaration in Support of Debtor's Motion for Authorization to Reject Executory Contract (Healthcare Conglomerate Associates, LLC ("HCCA").

3. The Board retained HFS during a Special Board Meeting on October 4, 2017. HFS has a long history of assisting hospitals and hospital districts who are in financial crisis. The purpose of our retention was for HFS to serve an interim role and have no intentions as serving as the long term manager for the Debtor, and specifically its Board. To delivery transparency, the Board indicated a desire to have an objective set of eyes to evaluate the Debtor's operations, provide meaningful analysis and report on the current financial position so that the Debtor and its Board can understand all of the issues it is facing and make informed decisions and recommendations. HFS was also intended to act an intermediary to communicate with and evaluate the information being provided by current management

4. As part of our scope of work, we have evaluated the applicable to which Debtor has bond indebtedness. General Obligation Bonds, Election of 2005, Series A (2007); interest at 4.0% to 4.65% due semi-annually; principal due in annual amounts ranging from $15,000.00 on August 1, 2012 to $2 million due on August 1, 2037; collateralized by ad valorem tax revenues. General Obligation Bonds, Election of 2005, Series B (2009); interest at 6.45% to 8.0% due semi-annually; principal due in annual amounts ranging from $100,000.00 on August 1, 2014 to $17,240,000.00 due on August 1, 2039; collateralized by and valorem tax revenues. Series 2007 Refunding Revenue Bonds: Interest at 3.75% to 5.2% due semi-annually; principal due in annual amounts ranging from $405,000.00 due on November 1, 2008 to $1,210,000.00 due on November 1, 2032; collateralized by District revenues.

5. Based on my review of the documents available to me, all bonds were current as of the date of this Declaration.

6. The current Fitch rating for the Debtor is CC which was revised downward on or about September 7, 2017.

7. In connection with my work with hospital, I understand that under California law, hospitals are required to treat any person who presents at the emergency room without regard to the patient's ability to pay for services. The District accepts all patients regardless of their ability to pay. The District absorbs the costs of medical care for uninsured patients who account for a very large percentage of its volume. It is my understanding that a patient is classified as a charity patient by reference to certain established policies of the political district. Essentially, these policies define charity services as those services for which no payment is anticipated.

8. I am informed and believe that the Debtor has agreements with third party payors that provide for payments to TRMC at amounts different from its established rates. A summary of payment arrangements with major third party payors follows:

    a. MediCare: Payments for inpatient acute care services rendered to MediCare program beneficiaries are based on prospectively determined rates, which vary according to the patient diagnostic classification systems. Outpatient services are generally paid under an outpatient classification system subject to certain limitations. The Debtor is subject to cost reimbursable services in rural healthcare services. As I understand it, filed cost reports are subject to final settlements determined after submission of the annual cost reports and audits thereof by the MediCare fiscal intermediary.

    b. Medi-Cal: Payments for inpatient acute care services rendered to MediCal program beneficiaries are based on prospectively determined rates, which vary according to the patient diagnostic classification systems. Outpatient services are generally paid through an outpatient published fee schedule.

    c. Other: Payments for services rendered to other than MediCare and Medi-Cal patients are based on established rates or on agreements with certain commercial insurance companies, health maintenance organizations and preferred provider organizations which provide for various discounts from established rates.

///

       d.     Medi-Cal and Medicare programs, which represents, as I understand it, a considerable amount of gross patient revenues, are highly regulated and controlled, are subject to frequent changes in reimbursement levels based upon actions of the California Department of Health Care Services, the U.S. Department of Health and Human Services (CMS) and Congress. In addition, many private insurers base their payment schedules on a percentage of Medicare rates. Payment reductions by Medi-Cal and Medicare negatively affect the Debtor's revenue.

       9.     As of the date of this Declaration, HFS has not been able to obtain any meaningful financial information would enable HFS to evaluate the current operations of the hospital, including what payments have been received from any of the above referenced programs.

I declare under the penalty of perjury and the laws of the state of California that the foregoing is true and correct. This declaration was executed by the undersigned on this \_\_10\_\_ day of October, 2017, in Oakland, California.

_____
Richard Gianello

00158909-gaa-10.10.2017

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720