27

**WALTER WILHELM LAW GROUP**
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:    (559) 435-9800
Facsimile:    (559) 435-9868
E-mail:       rileywalter@w2lg.com

Chapter 9 Counsel

**MCCORMICK BARSTOW, LLP**
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone:    (559) 433-1300
Facsimile:    (559) 433-2300
E-mail:       mandy.jeffcoach@mccormickbarstow.com

District Counsel

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,**<br><br>Debtor.<br><br>Tax ID #:   94-6002897<br>Address:   869 N. Cherry Street<br>            Tulare, CA 93274 | CASE NO.  17-13797<br><br>DC No.:  WW-1<br><br>Chapter 9<br><br>Date:    October 12, 2017<br>Time:    10:30 a.m.<br>Place:   2500 Tulare Street<br>         Fresno, CA 93721<br>         Courtroom 13<br>Judge:   Honorable René Lastreto II |

**EXHIBIT TO MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT (HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

///

///

| Exh. | Description | Pages |
|------|-------------|-------|
| A | List of Unfavorable Conditions | 25 |

Dated: October 10, 2017

WALTER WILHELM LAW GROUP
A Professional Corporation

By: _____

Riley C. Walter, Attorneys for Debtor
Tulare Local Healthcare District

**Management Services Agreement (Ex. A1 to the Declaration of Kevin Northcraft)**

1. **Definitions**

2. **Operating Period**

   (a) <u>Initial Operating Period</u>.  15 years (May 29, 2014 to May 29, 2029).

   (b) <u>Extension of Operating Period</u>.  Agreement to automatically renew for additional 10-year period unless notice given no less than 12 months prior to the end of the operating period (i.e., on or before May 29, 2028).

   (c) <u>Irrevocability of Agreement</u>.  TRMC irrevocably waives any right to terminate MSA, "except in strict accordance with the express provisions". (Not reciprocal)

3. **General Responsibilities of the Parties**

   (a) <u>Appointment</u>.  HCCA is appointed to exclusively provide day-to-day management services for TRMC Facilities.[1]  HCCA's duties shall include but are not limited to financial and operating system management, preparation of proposed annual budgets, purchasing, contracting support and relationship management, expansion of the hospital, clinics and other facilities or the services offered, preparation and implementation of staffing plans, recruitment of personnel, and supervision of day-to-day operations.

   HCCA shall perform duties in accordance with District Bylaws, unless Hospital Law (defined as Health & Safety Code §32000 *et seq.*)/MSA terms are in conflict, then Hospital Law/MSA terms control.

   (b) <u>General Control of the District</u>.

      (i) <u>"Ultimate Control"</u>.  TRMC to exercise "ultimate" control and direction of the operations.

      (ii) <u>Licensing/Classification</u>.  Any change in classification or operations of the Hospital other than as  Medicare participating acute care hospital is subject to prior written approval of the Board **and** HCCA.

      (iii) <u>Payment of Expenses</u>. TRMC shall furnish HCCA with sufficient funds to timely pay the expenses relating to the operations, including funding of both operating expenses and non-operating expenses[2].

---

[1] TRMC Facilities is used herein as a shorthand for the "Hospital" and the "Clinics and Other Facilities." "Hospital and "Clinics and Other Facilities" are defined in section 1 of the MSA.
[2] Note, TRMC does not have control over any of its bank accounts and all revenue it receives is automatically "swept" into an account for HCCA.

EXHIBIT A
Page 1 of 25

If Insufficient Funds. Where insufficient funds, HCCA shall notify TRMC for funds by submitting request to TRMC and TRMC shall supply funds within 3 days of notice; if unanticipated Emergent Expenses (see 4(f)(ii)), HCCA has right to provide shorter notice.

Advancing Funds. HCCA can in its sole and absolute discretion, advance funds (see 4(j)(i)(1)).

No Default. HCCA shall not be in default if its failure to comply with terms of MSA is due to lack of adequate funds provided by TRMC.

(c) Cooperation and Responsiveness.

   (i) Timing of Input. When TRMC has "obligation" to provide input/decide issue, TRMC shall do so in within "reasonable period of time" i.e., 5-7 calendar days. If no response is provided to HCCA within 10 days from receipt of request, then approval shall be deemed to be given (see 11(o)).

   (ii) Consultation. HCCA shall provide up to 5 hours of consultation to TRMC on a monthly basis re: operations. HCCA shall determine cost thereof and TRMC shall pay amount within 30 days of invoice.

(d) Relationship.

   (i) Interference. TRMC shall not interfere with HCCA's decisions. TRMC representatives shall not access the hospital, clinics and other facilities, except upon prior arrangement with HCCA, except in the event of emergency. TRMC shall not access data systems utilized in connection with operations, unless specifically authorized by HCCA in each instance.

   (ii) Confidentiality. TRMC and Board shall not disclose confidential or negative information re: or take action that is materially detrimental to the reputation of HCCA, or make statements that defame/criticize personal or business reputation, practices or conduct of HCCA to anyone other than HCCA CEO. Prohibition extends to new media, bondholders, industry analysis, competitors, strategic partners, vendors, employees and clients. (Not reciprocal)

   (iii) Breach. Parties acknowledge Section 3(d) is a material provision such that a breach constitutes a material breach and that breach causes irreparable harm.

(e) Medical and Professional Matters.

   (i) Care and Treatment. Treatment of patients remains the responsibility of TRMC medical directors and staff, provided that HCCA shall be obligated to (i) recommend bylaws re: appointment of members of the medical staff; and (ii) provide recommendations to TRMC re: Board approval of medical staff by-laws (collectively, Medical Staff Recommendations)

EXHIBIT A
Page 2 of 25

TRMC shall be deemed to have accepted HCCA's Medical Staff Recommendations unless Board votes by 4/5th majority vote to disapprove of the same within 30 days of written notice of such Recommendation, and only after HCCA has opportunity to explain/justify Recommendation. Good cause for disapproval must be set forth in writing.

(ii) <u>Oversight</u>. HCCA shall provide oversight and support in its sole and absolute discretion for medical staff's administrative affairs.

(iii) <u>Staff Appointment</u>. TRMC retains control over all appointments to its medical staff, except that CEO (or designee) may grant individual temporary clinical privileges for a period not to exceed greater of 120 days or such period as allowed by law and/or bylaws.

(f) <u>Standards of Performance</u>. HCCA shall expend commercially reasonable efforts in perform its obligations, but does not guarantee any particular results.

## 4. Duties of Manager

(a) <u>Hospital Chief Executive Officer</u>.

(i) <u>CEO Responsibilities</u>. HCCA shall provide CEO, who shall serve as TRMC's authorized representative to the public, report regularly to the Board on performance, assist TRMC with development of strategies/action plans re: health care needs, and direct TRMC in expanding community relations program.

(b) <u>Personnel</u>.

(i) <u>Employer Relationship</u>. As determined by HCCA, HCCA shall become the exclusive employer/contractor of the personnel of TRMC Facilities.

(ii) <u>Leasing Employees</u>. HCCA shall lease employees to TRMC. Prior to HCCA becoming employer, TRMC shall be the employer and shall be responsible for payroll.

(iii) <u>Benefits</u>. Leased employees shall be employees of HCCA for purposes of HCCA's benefit programs. All expenses and charges incurred in connection with leased employees shall be reimbursed to HCCA by TRMC.

(iv) <u>Vacation</u>: HCCA shall pay employees for "certain" holidays and vacations. Any paid holidays and vacations occurring during the operating period shall be billed to TRMC.

(v) <u>Right to Control</u>. HCCA reserves right to control. HCCA shall recruit, employ, train, promote, direct and terminate employment of leased employees, as needed for operations.

(vi) <u>Personnel Management Services Only</u>: HCCA shall be responsible for the development and implementation of policies and practices relating to personnel management services only.

3

EXHIBIT A
Page 3 of 25

(vii) <u>Performance Standards</u>: Leased employees are subject to work rules and performance standards applicable to HCCA's employees and contractors.

(viii) <u>Payment</u>: HCCA shall draw from the Master Account, or if amount is insufficient, TRMC shall pay HCCA the estimated amount of employee lease payments for each payroll cycle within 2 days of a request from HCCA. Within 10 days after the close of each month, HCCA shall deliver to TRMC a statement of the actual employee lease payments.

If actual employee lease payments were less than estimated, HCCA shall refund excess to TRMC or the Master Account. If actual payments more than estimated, TRMC will pay shortfall within 1 business day or amounts will be drawn from Master Account. If TRMC fails to timely advance funds, HCCA shall have sole and absolute discretion, but not the obligation, to advance funds.

(ix) <u>Leased Employee Pay Rate</u>. Payment with respect to each leased employee is an amount equal to 130% of compensation.

(x) <u>Hiring/Firing Authority</u>. HCCA shall have the ultimate authority to hire, fire and set terms of employment for leased employees.

(xi) <u>Non-Solicitation</u>: During operation period and for 2 years after, TRMC and its affiliates shall not solicit for employment any leased employee.

(xii) <u>Consultants</u>. HCCA may retain consultants. TRMC is responsible for cost. If cost of service exceeds $100,00/year, HCCA must have Board approval, unless otherwise approved in annual budget.

(xiii) <u>"At-will" Status</u>. Employment offered by HCCA is "at will".

(c) <u>Patient Safety Quality and Performance Measurement</u>. HCCA shall assist in the implementation and oversight of and facilitate patient safety, quality and performance measurement program. HCCA activities shall include:

(i) Data collection/analysis and recommendations

(ii) Recommending strategies to enhance safety (TRMC to be responsible for all expenses associated with surveys, licensure, permits and accreditation)

(iii) Guiding or directing TRMC to maximize standardized performance score.

(d) <u>Standard Forms</u>. HCCA shall recommend standard formats.

(e) <u>Revenue Cycle Management</u>. HCCA shall provide direction in overseeing TRMC's revenue cycle management. All charges incurred in connection with revenue cycle management shall be TRMC's expenses.

4

EXHIBIT A
Page 4 of 25

(f) <u>Annual Budget</u>.

   (i)   <u>Preparation/Implementation</u>: HCCA shall be responsible for the annual (July 1st through June 30th) operating and capital budgets.

   (ii)   <u>Management</u>. HCCA shall take "commercially reasonable efforts" to oversee management so that actual revenues, costs and expenses are consistent with approved annual budget. HCCA shall have right to make expenditures on an "emergency basis" to avoid/mitigate damages, whether or not provided in the annual budget. HCCA shall use reasonable efforts to give TRMC advance notice of any Emergent Expenses, or as soon as reasonably practical after such expenditures, not to exceed 15 days.

(g) <u>Bank Accounts</u>.

   (i)   <u>Maintenance</u>. TRMC shall maintain Gross Revenue Fund bank accounts. If bonds are delinquent or bonds are in default, TRMC shall use its best efforts to cause the trustee to disburse funds in the Gross Revenue Fund for payment, and authorizes HCCA to make such requests directly to the bond trustee on behalf of TRMC.

        If TRMC revokes instructions to Government Depository Account, HCCA shall be entitled to seek an order or judgment for specific performance to sweep Government Depository Account pursuant to MSA.

   (ii)   <u>Deposits</u>. HCCA shall make timely deposits in the Depository Accounts or the Master Account, subject to the bond indenture requirement.

   (iii)   <u>Control</u>. TRMC shall provide disposition instructions to the Depository to transfer all amounts in the Depository Accounts to a bank account controlled by HCCA. TRMC shall not encumber any funds in the Depository Accounts or Master Account, except for transfer to the Master Account and bond payments.

   (iv)   <u>Associated Fees</u>. TRMC shall be responsible for all fees incurred in connection with maintaining Depository Account.

   (v)   <u>Fees Owed to HCCA</u>: HCCA is authorized to make payment from the Master Account or other accounts of TRMC to itself. Any amounts due to HCCA (and affiliates) shall be of at least as senior a priority as any amount due to any other creditor TRMC, unless otherwise agreed in writing.

   (vi)   <u>Liability</u>. HCCA shall have no liability or responsibly for any loss resulting from insolvency, malfeasance or nonfeasance of any Depository with respect to the District bank accounts.

   (vii)   <u>Disbursements</u>. HCCA shall have the right to make disbursements on behalf of TRMC as are required to operate TRMC Facilities. If TRMC fails to advance funds, HCCA may advance funds as Emergent Expenses.

EXHIBIT A
Page 5 of 25

(h) <u>Charges and Collections of Accounts</u>.

  (i) <u>Billing/Collections</u>. HCCA shall assist TRMC in billing and collecting. All related costs are the responsibility of TRMC.

  (ii) <u>Remittance Advices</u>. TRMC shall direct payors to provide HCCA with copies of remittance advices.

  (iii) <u>Appointment of Attorney-in-Fact</u>. TRMC irrevocably appoints HCCA as its true and lawful attorney-in-fact to take the following actions: (1) bill patients and third-party payors; (2) collect charges; (3) take possession of and endorse all cash, notes, checks money orders, insurance payments and other instruments in the name of TRMC; (4)(5) deposit collections; (6) make withdrawals from the Depository Account; (7) place accounts for collection, settle and compromise claims and institute legal action for the recovery of accountants; and (8) execute instruments.

  (iv) <u>Indemnity</u>. HCCA may appeal/contest any action taken by any government authority against TRMC. If HCCA pursues appeal/contest, TRMC shall adequately secure and protect HCCA from all loss, cost, damage or expenses by bond or other means.

(i) <u>Payment of Expenses</u>.

  (i) <u>Oversight</u>. HCCA shall provide oversight of TRMC's funds in connection with payment of TRMC's liabilities/obligations and cause payments.

  (ii) <u>Special Power of Attorney</u>. TRMC grants HCCA exclusive special power of attorney and exclusive true and lawful agent and attorney-in-fact so that HCCA can sign on behalf of TRMC, make withdrawals and decide signatories.

  (iii) <u>Irrevocability</u>. Special power of attorney is coupled with an interest and shall be irrevocable except with HCCA's written consent.

  (iv) <u>No Obligation to Advance Fees</u>. HCCA is under no obligation to advance funds. No advance of funds shall cure TRMC's default resulting from a failure to timely provide funds. HCCA shall not be liable for debts of TRMC or its Facilities. TRMC shall be responsible for all legal/collection fees incurred by HCCA if TRMC fails to pay its invoices timely.

(j) Pledge of Credit

  (i) <u>Approval</u>. HCCA shall not engage in any financial lending, financing or banking actions that results in financial obligation in TRMC's name, without prior written consent of the Board. Prior to requesting approval, HCCA shall provide proposal to Board.

    (1) <u>Repayment of Advance</u>. HCCA has right, but no obligation, to advance funds as a loan to TRMC. TRMC shall pay HCCA interest at a rate equal to the lesser of 1%

EXHIBIT A
Page 10 of 25

per month or the maximum non-usurious interest rate allowable by law. Advances shall be evidenced by a promissory note issued to TRMC.

(2) <u>Security Agreement</u>. To the extent HCCA advances funds, TRMC agrees to provide HCCA with a lien on all TRMC assets. HCCA shall have the right to file UCC financing statement without TRMC's signature.

(3) <u>Execution</u>. HCCA has right to execute promissory note on behalf of TRMC and other security instruments to perfect its security interest.

(ii) <u>Borrowing Limitation</u>. Except with respect to repayment of advances, HCCA shall not borrow money in the name of/on behalf of TRMC or dispose of any asset, without the consent of the Board.

(k) <u>Information Technology</u>. HCCA shall provide oversight of IT activities and shall seek approval of Board of any new systems and/or termination of existing systems. TRMC shall be responsible for all related costs. HCCA shall not perform IT maintenance, unless so provided by separate agreement.

(l) <u>Internal Audit</u>. HCCA shall provide oversight of TRMC's routine audits of internal procedures and systems. All fees associated with external and internal audits are the responsibility of TRMC.

(m) <u>Managed Care Contracting</u>. HCCA shall oversee managed care contracts.

(n) <u>Operating Contracts</u>.

(i) <u>Third-Party Operating Contracts</u>. HCCA shall assist with third party operating contracts.

(ii) <u>HCCA Authority to Bind TRMC</u>. HCCA may entered into operating contracts in TRMC's name. For contracts in HCCA's name, TRMC shall reimburse HCCA for all costs at HCCA's discretion.

(iii) <u>TRMC Obligations</u>. If MSA terminated, contracts re: operation of TRMC Facilities in HCCA's name shall be assigned to TRMC and TRMC shall assume obligations and shall indemnify HCCA from liability.

(iv) <u>Approval of Costs</u>. Operating contracts is excess of $1,000,000 shall be approved by Board, unless previously approved in annual budget.

(v) <u>Allocation of Costs</u>. Expense of third party contracts shall be a direct expense of TRMC. HCCA shall not be obliged to guarantee any debt under any purchasing agreement.

(o) <u>Insurance</u>. HCCA shall consult with TRMC re: insurance. Approval of change to limits shall be made by the Board. HCCA shall use "commercial reasonable efforts" to cause insurance be placed and kept in effect, provided TRMC maintain the following policies: (i)

EXHIBIT A
Page 7 of 25

general liability insurance; (ii) property and casualty insurance; (iii) automobile liability insurance, if deemed necessary by TRMC or HCCA; (iv) worker's compensation and employer's liability insurance; (v) professional liability insurance, and to the extent available director's and officer's insurance; (vi) commercial umbrella or excess liability, and to extent available, regulatory insurance coverage.

(p) <u>Insurance Specifications</u>.

    (i)   <u>Policy Requirements</u>. Policies shall be in amounts as are deemed necessary by TRMC and HCCA, and shall contain a waiver of rights of subrogation clause against HCCA and TRMC. Parties waive claims for losses or expenses (including attorney's fees) arising out of ownership and operation of TRMC Facilities to the extent the same would be covered by required insurance.

    (ii)   <u>Named Insureds</u>. TRMC shall cause HCCA to be named as insurance on liability insurance coverage set forth in section 4(o)(i)-(vi) and on any fidelity bond.

    (iii)   <u>Notice of Changes to Policies</u>. Certificates shall be provided to HCCA within 30 days of the MSA and thereafter within 30 days of policy or bond, or at the request of HCCA. Policies shall provide that they may not be cancelled modified or reduced except upon at least 30 days written notice to HCCA. TRMC shall notify HCCA in writing of any change in term of insurance coverage within 24 hours of receipt.

    (iv)   <u>HCCA Liability</u>. HCCA reserves right to procure insurance at TRMC's cost any of the enumerated types of coverage. HCCA is not required to act under section 4(p) and shall not be liable for failure to effect or maintain insurance upon TRMC's failure to do so.

    (v)   <u>HCCA Only Policies</u>. HCCA may obtain similar coverage for its benefit to cover only HCCA's interest. All expenses incurred in connection with obtaining such insurance shall be TRMC's expenses, even if the insurance protects only HCCA's interests.

    (vi)   <u>Extended Reporting Endorsement</u>. If covered by liability insurance on a "claims made" basis, then 10 days before termination of MSA, TRMC shall procure extended reporting endorsement for a period of at least 4 years thereafter. HCCA to be named as additional insured.

    (vii)   <u>Self-Insurance</u>. TRMC shall assure that such insurance complies with applicable law and shall be reinsured by reinsurers acceptable to HCCA.

(q) <u>Purchasing</u>.

    (i)   <u>HCCA Duty</u>. HCCA responsible for oversight and management of TRMC's purchasing systems and procedures at the supervisory level.

    (ii)   <u>Costs</u>. TRMC shall be responsible for the expense of all purchases and for all purchasing expenses, including but not limited to utilities, concessions, drugs,

EXHIBIT A
Page 8 of 25

equipment, supplies, furniture or furnishings, inventory items, linens, machinery, medicines and services.

    (iii) <u>Other Expenditures</u>.  All capital and other expenditures shall be subject to the purchasing and procurement policies of TRMC, bylaws and laws.

(r) <u>Marketing and Communications</u>.

    (i) <u>HCCA Duty</u>.  HCCA shall provide oversight re: marketing and advertising.

    (ii) <u>HCCA Responsibilities</u>. HCCA shall (1) provide direction re: marketing program; (2) cause a community needs health assessment to be prepared and propose implementation strategy; (3) prepare and distribute informational materials re: state/federal reimbursement programs.

    (iii) <u>Costs</u>.  All costs incurred shall be the sole cost of TRMC.

(s) <u>Medical Records</u>.

    (i) <u>HCCA Duty</u>.  HCCA shall be responsible for oversight of TRMC's medical records activities at director and executive levels.

    (ii) <u>Recordkeeping</u>.  All records shall remain at TRMC property.

    (iii) <u>Confidentiality</u>.  All medical records shall be treated as confidential.

    (iv) <u>"Business Associate"</u>.  HCCA shall be a "business associate" as defined by HIPAA. HCCA shall execute/comply with Business Associate Agreement.

    (v) <u>Breach</u>.  HCCA shall notify TRMC of data breach promptly.

(t) <u>Additional Reports</u>.

    (i) <u>Quarterly Reports</u>.  Within 45 days after end of fiscal quarter, HCCA shall make available (1) utilization statistics for HCCA for prior quarter; and (2) financial statements and budget analysis for prior quarter.

    (ii) <u>Notice</u>.  HCCA shall provide the Board on at least 30 days' notice, or sooner if necessary, description of needed or discontinued services, refinancing proposals, expansion plans or material changes in operating procedures.  Proposal shall explain reasons for proposed activity.

(u) <u>Agency</u>.  Subject to approval of the Board and terms of MSA, HCCA shall have right to act as agent of TRMC in procuring licenses, permits and other approvals, payment and collection, and all activities necessary or appropriate or useful.

(v) <u>Construction Project Advice</u>.

EXHIBIT A
Page 1 of 25

(i)   HCCA Duty.  HCCA shall provide TRMC with advice/recommendations re: current Hospital construction project (the "Project").  HCCA shall not be deemed responsible for construction.

(ii)  HCCA Involvement.  HCCA shall assist TRMC in efforts to discharge all field operation requirements of TRMC as owner of Project, and to cause TRMC's contractors to perform work required.

(iii) No Liability.  HCCA shall endeavor to obtain satisfactory performance from contractors, but shall have no liability for any failure of performance or design defect. HCCA shall report to TRMC any defects or deficiencies upon obtaining actual knowledge, but HCCA shall have no obligation to investigate or take active steps to determine existence of defects or deficiencies, nor shall Manger be liable for any failure to timely communicate any defects or deficiency to TRMC.  Failure of HCCA to recommend rejection of any work shall not constitute HCCA's approval or acceptance of work.

(iv)-(ix) Other HCCA Obligations.  HCCA shall: (iv) review requests for changes in construction contracts and provide recommendations; (v) evaluate costs and notify TRMC if inconsistencies in information presented by TRMC's contractors; (vi) assist TRMC in processing payments; (vii) record progress and report to Bard on monthly basis; (viii) not have control over or responsibility for construction or safety precautions; (ix) make recommendations if consultants required and supervise.

(x)   Limitations.  (1) HCCA has no authority to execute contract documents or bind TRMC re: Project construction. (2) TRMC accepts responsibility for results of Project. (3) TRMC acknowledges HCCA does not guarantee results. (4) HCCA is not liable to TRMC for any claims relating to the Project, except to the extent resulting from willful misconduct of HCCA.  HCCA may be liable for general and punitive damages, but not for consequential damages. (5) TRMC shall indemnify and hold HCCA harmless from any claims (including attorney's fees).  HCCA shall have no liability for actions/failure to act prior to January 10, 2014, including claims which relate to construction activities prior to that date. (6) Where limitations on damages or indemnification provision is unenforceable or unavailable, TRMC shall contribute to any claim proportional to any fault of the parties. (7) HCCA shall not have liability to TRMC and TRMC agrees it will not bring any action against HCCA, except to the extent cause by willful misconduct. (8) Sections 4(v)(x)(4)-(7) shall survive expiration or termination of MSA.

**5. Legal Compliance**

(a)   Compliance Plan.  HCCA shall abide by TRMC's Compliance Policies and Procedures.  Any recommended revisions to policies must be approved by the Board.  All costs related to the compliance plan shall be borne by TRMC.

(b) <u>Government Regulations</u>. HCCA shall use reasonable commercial efforts to assure TRMC complies with applicable laws and that TRMC maintains in good standing all necessary accreditations, licenses, permits, approvals and other authorizations.

(c) <u>Accreditation Compliance</u>. HCCA shall assist TRMC to continue meeting applicable accreditation agency's accreditation standards. HCCA has right to change applicable accreditation agency in its sole discretion.

(d) <u>Licensure</u>. HCCA shall not act in manner which adversely affects licensure. HCCA will furnish report concerning licensure within 30 days of receipt.

(e) <u>HIPAA Compliance</u>.

(f) <u>Ineligible Persons – Disclosure Obligation</u>. HCCA will use reasonable commercial efforts to monitor that no HCCA or TRMC employee has been deemed ineligible to participate in federal health care programs. HCCA represents that it is not an Ineligible Person . HCCA will give 3 business days' notice after becoming aware that would make it an Ineligible Person.

(g) <u>Access to Records</u>. For 4 years after termination of MSA, HCCA shall make the MSA available to certain federal agencies to verify the services provided by HCCA to TRMC.

(h) <u>No Obligation to Refer Patients</u>. Neither HCCA nor TRMC are required to refer patients to the other as a precondition to receiving benefits set forth in MSA.

6. **Management Fee**

(a) <u>Management Fee</u>. HCCA shall receive a monthly fee of $225,000 to be increased beginning on January 1, 2015 as set forth in section 6(b).

(b) <u>CPI Adjustment</u>.

    (i)-(ii)  Beginning on January 1, 2015, (1) HCCA fee shall be multiplied by the greater of the CPI percentage increase using the latest published data or 5%; (2) existing HCCA fee shall be added to CPI increase; and (3) net adjusted management fee will be multiplied by 1.01 to determine fee for next calendar year.

(c) <u>Expenses</u>. HCCA shall be reimbursed monthly by TRMC for expenses made reimbursable by MSA or other expenses in accordance with approved budget or approval of Board, but not for indirect or overhead expenses of HCCA.

(d) <u>Operating Expenses</u>. All other expenses of running TRMC Facilities shall be the sole cost of TRMC, including operating and non-operating expenses incurred for services to TRMC and cost of employee or consultant.

(e) <u>Late Payments</u>. Interest shall accrue on any unpaid amounts for each day beyond the due date at a rate equal to the lesser of 1% per month or the maximum non-usurious interest rate allowable by law.

11

EXHIBIT A
Page 11 of 25

(f) <u>Senior Indebtedness Status</u>. Obligations of TRMC shall rank at least senior in priority of payment to all other unsecured debt of TRMC. Payments received by TRMC shall be directed regardless of purpose according to following priority ranking: (1) payment of bonds; (2) payment of management fee and other amounts due pursuant to MSA; (3) all other debts of TRMC.

    (i)   <u>Setoff</u>. HCCA has right to setoff amounts owed by TRMC against amounts owed by HCCA and/or from TRMC funds over which HCCA has power of attorney or right of disbursement.

**7. Books and Records**

(a) <u>Maintenance of Books and Records</u>. HCCA shall supervise maintenance.

(b) <u>Accounting</u>. HCCA shall be responsible for oversight of accounting functions.

(c) <u>Reports and Financial Statements</u>. HCCA shall deliver to Board reports and financial statements reasonably requested by Board.

(d) <u>Financial Statements</u>.

    (i)   <u>Accessibility</u>. The following shall generally be made available as follows: (i) monthly financial statements on the 20th day of the following month.; (ii) quarterly statements by the 45th day of the following quarter; (iii) annual statements by 90 days into the following year.

(e) <u>Audit</u>.

    (i)   <u>CPA</u>. If TRMC elects, financial statements will be certified by independent CPA. Costs shall be borne by TRMC.

    (ii)   <u>HCCA Response to Recommendations</u>. HCCA shall respond in writing to any recommendations made by independent audit, acknowledging implementation or reasons why not.

(f) <u>Financial Reporting Expenses</u>. Fees paid to independent firms and professionals shall be TRMC expenses.

(g) <u>Inspection of Records</u>. Authorized agents of TRMC shall have right to inspect and make copies from the books of account of TRMC maintained by HCCA during usual business hours.

(h) <u>Confidentiality</u>. Parties agree that they will not disclose secrets or confidential information or trade secrets without prior written consent, except to agents, or as may be necessary by reason of legal, accounting or regulatory requirements. If the MSA is terminated, neither party will retain any confidential information except for copies as may be reasonably necessary to defend any anticipated litigation.

EXHIBIT A
Page 12 of 25

## 8. Indemnification and Liabilities[3]

(a) <u>District Indemnity Obligation</u>. HCCA does not assume any obligations, liabilities or debts of TRMC or TRMC Facilities, except as otherwise expressly provided. TRMC agrees to indemnify, defend and hold HCCA harmless from any claims of any nature whatsoever, including reasonable attorney's fees, asserted against HCCA, except for demands arising from HCCA's willful misconduct. HCCA shall not be liable to TRMC for loss of use, goodwill, revenue or profits, or any consequential, special, indirect or incidental loss, or for punitive damages, except for punitive damages resulting from willful misconduct.

(b) <u>Manager Not Liable for District Liabilities</u>. TRMC shall be fully liable to all patients and governmental authorities for patient care. HCCA shall have absolutely no obligation to act on behalf of TRMC on any matter that is not directly related to HCCA's obligations and shall not be or become liable for existing or future obligations.

(c) <u>Manager Not Liable for Condition of Buildings or Equipment</u>. HCCA shall not be liable for any damages re: physical condition of the buildings or equipment thereon; such damage shall be the sole responsibility of TRMC, except to the extent HCCA engages in willful misconduct, in which case HCCA's liability shall be limited to amounts not covered by applicable insurance policies.

(d) <u>Manager Not Liable for Acts or Omissions of the Districts Agents</u>. HCCA shall not be responsible for acts or omissions of TRMC's agents rendering services in connection with operation of TRMC Facilities.

(e) <u>Manager Not Liable for Consultants' Fees and Other Financial Obligations</u>. TRMC shall be responsible for fees charged by consultants engaged by TRMC (or HCCA on behalf of TRMC) to provide services to TRMC Facilities.

(f) <u>Release</u>. HCCA shall not be liable to TRMC for any damages includes, without limitation: (i) direct damages; (ii) consequential damages; (iii) loss of profits; (iv) business interruption; (v) damage to property or death or injury to persons; or (vi) damage, loss or injury caused by defect in structure of TRMC Facilities, power failure, fire, strikes, shortage of supplies or any cause , unless such claims are the result of willful misconduct by HCCA.

(g) <u>Manager Indemnity Obligation</u>. HCCA shall indemnity, defend and hold TRMC harmless from any claim, including reasonable attorney's fees, imposed on TRMC and its agents on account of any breach of terms by HCA and resulting from the willful misconduct of HCCA. In no event shall HCCA be liable for (i) failure to realize savings or loss of profits, revenue, or any other indirect, incidental, punitive, special or consequential damages, and (ii) direct and other damages in excess of the amount of management fees earned by HCCA during the 3 month prior to the date of the applicable claim, even if HCCA has been advised of possibility of such damage.

---

[3] All subsections of section 8 provide that they shall survive the expiration or termination of MSA.

13

EXHIBIT A
Page 13 of 25

**9. Joint Venture**

(a) <u>Covenant to Enter into Joint Operating Agreement</u>.

    (i) <u>Preconditions for Interim Operating Agreement</u>. Interim Operating Agreement (attached as Ex. B) shall become effective upon written notice from HCCA following (i) HCCA or TRMC's receipt of consent from TRMC's bond trustee under the general obligation bonds and revenue bonds; (ii) any required notices to the Attorney General regarding the transaction, and (iii) any required approvals from the AG with respect to the charitable care assumption by HCCA has been received, if any.

    (ii) <u>Preconditions for Long Term Operating Agreement</u>. Long Term Operating Agreement (attached as Ex. C) shall become effective upon written notice from HCCA to TRMC after: (i) all bonds which require compliance with Rev. Proc. 97-13 have bene repaid or defeased, or IRS limitations waived; (ii) any required notices to AG regarding transaction; and (iii) any required approvals from AG with respect to charitable care assumption by HCCA has been received, if any. Parties may enter the Long Term Operating Agreement, whether conditions occur prior to or following entry into Interim Operating Agreement.

    (iii) <u>Right to Control</u>. HCCA shall have right to direct strategy and process by which parties effectuate the Interim Operating Agreement and Long Term Operating Agreement.

    (iv) <u>TRMC Obligations</u>. TRMC shall (a) give notice to Bond trustees in connection with effectuating Operating Agreements; (b) use best efforts to obtain all Bond trustee and other approval; (c) permit HCCA to review and comment on any proposed filing or communication by TRMC to its affiliates; and (d) give HCCA the opportunity to participate in any meeting with Bond trustees and other parties whose consent is required to effectuate Operating Agreements.

    (v) <u>Notification of Interested Persons</u>. TRMC shall promptly notify HCCA of (i) any notice from any person alleging that consent of such person may be required in connection with Operating Agreements becoming effective; (ii) notice from Bond trustee or other party from whom consent is required; (iii) action commenced or threatened against HCCA and/or TRMC which relates to consummation of transactions proposed under Operating Agreements.

(b) <u>Stand-by Management Services</u>.

    (i) <u>Suspended Obligations</u>. Upon the effective date of an Operating Agreement, parties' obligations hereunder shall be treated as suspended. Following the effective date of an Operating Agreement, during the remainder of the operating period, TRMC shall pay HCCA an amount equal to $100 per year for each year MSA is suspended in consideration for HCCA agreeing to serve as stand-by manager.

    (ii) <u>Commencement of Stand-by Management Services</u>. HCCA shall provide management services in the event the term of the applicable Operating Agreement terminates or is

declared to be unenforceable and such termination was not due to HCCA's default, any event which resulted in the payment of a termination fee; or the Long Term Operating Agreement becoming effective.

(iii) <u>Management Fees</u>. If HCCA provides stand-by services, the management fee shall be adjusted pursuant to section 6(b) as if the MSA had not been suspended and CPI adjustments had continued to be made following the effective date of the Operating Agreement.

## 10. Default

(a) <u>District Default</u>. The following circumstances shall be deemed a default by TRMC unless waived in writing by HCCA:

(i) <u>Material Breach</u>. Material breach of any representation, warranty or covenant of TRMC contained in Agreement after giving written notice to TRMC and TRMC's failure to cure within 60 days, 10 days if monetary breach, or 30 days if breach requires TRMC to: (i) provide HCCA with approval or (ii) execute an agreement. If cure cannot be reasonably effectuated within applicable cure period, a longer period shall be allowed not to exceed 90 days, if TRMC has commenced to cure in good faith and with due diligence.

(ii) <u>Bankruptcy</u>. The occurrence of any of the following: (a) filing voluntary petition bankruptcy or reorganization under Bankruptcy Code; (b) filing of petition for appointment of receiver; (c) steps to dissolve or suspend powers of TRMC within 30 days; (d) consent of TRMC for relief under Bankruptcy Code or failure to vacate such order for relief within 60 days from entry; (e) entry of order on any creditor's application adjudicating TRMC as bankrupt or insolvent or approving petition seeking reorganization or appointment of receiver, if such order shall continue unstayed for period of 60 days.

If TRMC becomes debtor under Bankruptcy Code, TRMC agrees, to the extent permitted under law to: (a) not reject MSA; (b) designate HCCA as vendor supplier and obtain critical vendor order that (x) waives or releases preference liability and (y) provides administrative priority or preferred status, acceptable to HCCA, with respect to HCCA's pre-petition claims.

(iii) <u>Letter of Credit</u>. IF HCCA deems itself insecure, it shall have no obligation to continue performing more than 30 days from and after it notifies TRMC that it has deemed itself insecure, unless TRMC provides HCCA with an unconditional, irrevocable letter of credit.

A letter of credit shall (i) meet the requirements of Uniform Customs and Practice for Documentary Credits ICC No. 500; (ii) name HCCA as beneficiary; (iii) be in amount equal to the lesser of the termination fee or a lesser amount specified by HCCA; (iv) be payable in full or partial draws against HCCA's sight draft; (v) include an "evergreen" provision to be renewed automatically unless 30 days prior

EXHIBIT A

Page 15 of 25

written notice of cancellation; (vi) have an initial expiration date no earlier than one year from date of issue; (vii) otherwise be satisfactory to HCCA.

If letter of credit is not timely provided, then HCCA shall have right to immediately terminate MSA (with no right of TRMC to cure) and receive the termination fee.

(b) Liquidated Damages.

    (i)   Termination Fee. If MSA terminated due to default by TRMC or any other reason, other than termination by HCCA, TRMC shall pay a termination fee within 5 days of termination of MSA.

    (ii)   Amount. Termination fee shall be an amount equal to $70,000 per month first increased by CPI and then multiplied by the remaining number of months in the term (not to exceed 120 months), discounted to present value using the discount rate of the Federal Reserve Bank of San Francisco at the time of termination plus 1%.

    (iii)   Reduction. If termination fee exceeds amount permissible under tax-exempt financing requirements with respect to the Bonds, termination fee shall be reduced to the maximum termination permitted under law.

    (iv)   Interest. If TRMC fails to pay the termination fee, the termination fee shall bear interest at the rate set forth in section 6(e).[4]

    (v)   Dispute Over Whether Termination Fee Owed. If TRMC contends termination fee is not due, but HCCA does, TRMC must deposit termination fee within 3days into an escrow account with funds to be released upon (a) mutual instructions; (b) final non-appealable order directing release of funds; (c) to TRMC if HCCA has not contested in a judicial proceeding the funds are owed within 24 months of termination.

    (vi)   Section Survives Expiration/Termination of Agreement.

(c) Manager Default. The following circumstances shall be deemed a default by HCCA unless waived in writing by TRMC:

    (i)   Material Breach. Material breach of any covenant of HCCA after giving written notice to HCCA, and HCCA's failure to cure within 60 days, unless cure cannot be reasonably effectuated within 60 days, then longer period shall be allowed if HCCA has commenced to cure such breach. TRMC shall exercise its reasonable discretion in good faith and shall use its best efforts to assist HCCA in effectuating cure.

    (ii)   Bankruptcy. The occurrence of any of the following: (a) filing voluntary petition bankruptcy or reorganization under Bankruptcy Code; (b) filing of petition for appointment of receiver; (c) steps to dissolve or suspend powers of HCCA within 60

---

[4] Interest shall accrue on any unpaid amounts for each day beyond the due date at a rate equal to the lesser of 1% per month or the maximum non-usurious interest rate allowable by law.

EXHIBIT A
Page 16 of 25

days; (d) consent by HCCA for relief under Bankruptcy Code or failure to vacate such order for relief within 60 days from entry;(e) entry of order on any creditor's application adjudicating HCCA as bankrupt or insolvent or approving petition seeking reorganization or appointment of receiver, if such order shall continue unstayed for period of 60 days.

(d) Early Termination Events.

    (i)    Option by HCCA. During first 36 months of operating period, HCCA shall have option to terminate MSA upon at least 6 months written notice.

    (ii)    Violation of Law. If either party is determined to be in violation of law, parties shall use best efforts to negotiate an amendment. If they are unable to do so within 6 months, either party may terminate the MSA by written notice, provided that upon termination, TRMC shall be obliged to pay the termination fee. Until written notice of termination is received, HCCA may elect to exercise its rights under Section 9 (Joint Venture) without regard to whether preconditions regarding the bond indebtedness has been satisfied.

(e) Procedure.

    (i)    Notice. If a party deems the other party to be in default, that party shall provide notice, to include a detailed description of the default.

    (ii)    Dispute. If in dispute, the receiving party shall give notice of the dispute to the charging party within 10 days. If the parties cannot resolve such dispute within 10 days, parties are to submit matter to binding arbitration in Los Angeles County in accordance with American Health Lawyers Association Alternative Dispute Resolution Services Rules and Procedures for Arbitration. Costs to be borne equally by the parties.

(f) Termination.

    (i)    Failure to Cure Default. If party fails to cure within time allowed, non-defaulting party may immediately terminate MSA by notice to defaulting party. In the event of monetary default by TRMC which is not cured within a 10 day period, HCCA may immediately terminate MSA by written notice and cease rendering services, without any further liability to TRMC.

    (ii)    Mutual Agreement.

    (iii)    Automatic Termination. MSA shall automatically terminate if:

        (1) Operating Agreement, after its effective date, has been terminated and HCCA is not obliged to provide stand-by management services.

        (2) Operating period has expired.

        (3) Substantial portion of TRMC Facilities are destroyed or subject to condemnation.

EXHIBIT A
Page 17 of 25

(iv) <u>HCCA Obligations if Termination</u>. In the event of termination, HCCA shall remove itself as a signatory on TRMC accounts and turn over the TRMC within 10 business days all business records.

## 11. Miscellaneous

(a) <u>Complete Agreement</u>.

(b) <u>Recordation</u>. At the request of either party, the parties shall execute a short form memorandum of MSA to be recorded in Office of County Recorder in Tulare.

(c) <u>Binding Agreement</u>. TRMC may not assign its right or delegate its duties unless it obtains written consent of HCCA. HCCA may it its discretion assign MSA without TRMC's consent. HCCA may subcontract with third parties to perform any services required of HCCA.

(d) <u>Governing Law</u>. The parties agree the exclusive jurisdiction and venue is the Superior Court of the County of Los Angeles.

(e) <u>Headings</u>.

(f) <u>Notices</u>. Notices shall be in writing and personally delivered, mailed or emailed.

(g) <u>Survival of Representatives</u>. Agreements which are stated to survive termination or expiration of MSA shall survive for any reason, except to the extent they are expressly waived in writing.

(h) <u>Counterparts</u>.

(i) <u>Severability</u>.

    (i) <u>Severability</u>. Invalidity of one provision does not affect the validity of the MSA.

    (ii) <u>Violative of Law</u>. If there is a change in law or if it is determined that term poses a material risk of violating any law, applicable term shall be subject to renegotiation. If parties are unable to renegotiate the terms within 60 days of written notice, then either party shall be entitled to terminate the MSA provided that such parties received an opinion of reputable legal counsel,[5] which legal counsel and opinion are reasonably acceptable to the other party. If MSA is terminated pursuant to this section, HCCA shall be entitled to receive payment of the termination fee.

(j) <u>Cumulative Rights and Remedies</u>.

(k) <u>Modification and Waiver</u>.

---

[5] "Reputable legal counsel" is defined as a legal counsel with at least 10 years' experience in Hospital Law.

EXHIBIT A
Page 18 of 25

(i)    <u>Modification</u>. The MSA may only be amended by a writing signed by both parties.

(ii)    <u>Waiver</u>. No failure to insist upon strict compliance will constitute a waiver.

(l)  <u>Attorneys' Fees</u>. Upon action to enforce the terms of the MSA, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, which shall include attorney's fees and costs in connection with any bankruptcy proceeding (including relief from stay litigation) and in connection with appeals.

(m) <u>Independent Contractor Status</u>. TRMC is not an employee or partner of HCCA. Parties cannot act on behalf of the other, except as expressly provided.

(n)  <u>Ambiguities and Uncertainties</u>. The parties waive the benefit of CCP §1654 providing that in cases of uncertainty, language of contract should be interpreted against party who caused uncertainty to exist.

(o)  <u>Consents, Approvals and Discretion</u>. If no response to a consent or request from HCCA to TRMC for approval is provided to HCCA within 10 days from receipt of request, consent is deemed to have been given. (No reciprocal provision)

(p)  <u>Expiration of Time Periods</u>.

(q)  <u>Force Majeure</u>. No party shall be liable for work interruptions beyond the reasonable control of either party, except with respect to payment obligations.

(r)  <u>No Third-Party Beneficiaries</u>.

(s)  <u>Consequential Damages</u>. Neither party shall be liable for consequential damages, incidental damages, indirect damages or special damages or for loss of profit, loss of business opportunity or loss of income, unless expressly provided. Nothing in this section shall affect any remedies of HCCA set forth in the MSA, including the right to be paid the termination fee.

(t)  <u>Limitation of Liability</u>. HCCA shall not have any personal liability for any failure to perform or for any breach. Any judgment so rendered against HCCA shall be satisfied solely out of the assets of HCCA.

(u)  <u>Additional Assurances</u>. The provisions of the MSA are self-operative, except as expressly provided.

(v)  <u>Expenses</u>. TRMC shall bear all costs in connection with the negotiation of the transactions contemplated and shall reimburse HCCA for its out-of-pocket expenses incurred provided that such amount shall not exceed $180,00. HCCA shall bear any other such costs beyond that amount.

EXHIBIT A
Page 19 of 25

**Interim Joint Operating Agreement (Ex. A2 to the Declaration of Kevin Northcraft)**

The Interim Joint Operating Agreement, which is also referred to as the "Interim Operating Agreement" in the MSA contains the following unfavorable provisions:[6]

- Section 2(f)(iii).  Section 2(f)(iii) provides that while HCCA "shall endeavor to obtain satisfactory performance from the District's contractors" with respect to the Tower No. 1 Expansion Project, HCCA "shall have no liability for any failure of performance by an such contractors."  Additionally, pursuant to the Agreement, HCCA shall have no obligation to investigate or take active steps to determine the existence of defects or deficiencies in the work of any contractor which HCCA obtains acknowledge knowledge of, nor shall HCCA be liable, for any failure to timely communicate any such defect or deficiency to TRMC.  (Pp. 7.)

- Section 2(f)(x)(4). Section 2(f)(x)(4) provides that HCCA (or HCCA Parties) shall not be liable TRMC for any claims relating to the Tower No. 1 Expansion Project, except to the extent resulting from the willful misconduct of HCCA.  In no event shall HCCA be liable for consequential damages, including loss of use, special, indirect or incidental damages. (Pp. 8.)

- Section 2(f)(x)(5).  Section 2(f)(x)(5) provides that TRMC shall defend, indemnify and hold HCCA harmless from any claims, except to the extent resulting from the willful misconduct of HCCA, including claims which relate to construction activities occurring prior to the effective date of the Agreement and claims which include both pre-existing claims and claims which are not pre-existing.  (Pp. 9.)

- Section 2(f)(x)(7).  Section 2(f)(x)(7) provides that HCCA (or HCCA Parties) shall not have any liability to TRMC, and TRMC agrees that it will not bring any action against HCCA, except to the extent caused by willful misconduct.  (Pp. 9.)

- Section 2(g)(iii).  Section 2(g)(iii) provides that TRMC irrevocably appoints HCCA as its attorney-in-fact coupled with an interest with full power to prepare and execute instruments, including but not limited to, any note evidencing the advance or loan and any Uniform Commercial Code financing statements, to perfect its security interest in favor of HCCA.  (Pp. 10.)

- Section 2(h), "Charitable Care and Operation Support Fund".  Section 2(h)(i) provides that TRMC shall subsidize the cost of providing healthcare services for the indigent and uninsured populations of Tulare County.  (Pp. 10.)  Subject to certain exceptions, funds derived from TRMC's regular annual tax and assessments shall be conveyed by TRMC to HCCA, on a month basis (at minimum), to be held by HCCA to pay expenses incurred in connection with operation of the Hospital, Clinics and Other Facilities, including the cost of providing charitable care.  (Pp. 10 at 2(h)(ii).)

---

[6] Note, many of the unfavorable provisions contained in the Interim Joint Operating Agreement (aka Interim Operation Agreement) overlap with those provisions of the MSA.

EXHIBIT A

Page 20 of 25

- Section 2(j), "Relationship". Section 2(j)(i) provides that TRMC shall not interfere with HCCA's decisions and daily operations and shall not access the Hospital, Clinics or Other Facilities unless arranged, in the event of emergency, or as may be required under the Agreement. (Pp. 11.) Section 2(j) provides that TRMC and the Board shall not disclose confidential or negative information regarding HCCA or take action that is materially detrimental to the reputation of HCCA, or make statements that defame/criticize personal or business reputation, practices or conduct of HCCA to anyone other than HCCA CEO, and that such action is a material breach and would cause irreparable harm. (Pp. 12 at 2(j)(iii)-(iv).)

- Section 3(a), "District Contribution". Section 3(a) provides that upon the effective date of the Agreement, the District shall convey to HCCA the *exclusive* right to use all of its assets. (Pp. 13-14.)

- Section 3(c), "HCCA Contribution". Section 3(c) provides that HCCA "in its sole and absolute discretion" may contribute working capital to the joint venture created by the Agreement. (Pp. 14.)

- Section 3(d), "Economic Distribution". Section 3(d) provides that any losses incurred in the operation of the Hospital, the Clinics or Other Facilities shall be the sole responsibility of TRMC. (Pp. 14 at 3(d)(ii).)

- Section 5, "Fees and Revenues". Section 5 provides that HCCA shall have the *exclusive* right to receive all fees and revenues generated by and payments received from operations for application to operating expenses and other expenses. (Pp. 17.)

- Section 6(c), "Irrevocability of Agreement". TRMC irrevocably waives and relinquishes any right, power or authority existing at law or in equity to terminate the Agreement, except in strict accordance with the express provisions of the Agreement. The section further provides that, "The parties further hereby acknowledge that any breach of this Section will cause irreparable and permanent damage to HCCA, no compensable by money damages." (Pp. 17.)

- Section 6(d), "District Default". Section 6(d)(ii) provides that if TRMC becomes a debtor under the Bankruptcy Code, then TRMC agrees not to reject the Agreement and to designate the Agreement as a non-executory Agreement. Section 6(d)(iii) provides that if HCCA deems itself insecure, it shall have no obligation to continue performing more than 30 days from and after it notifies TRMC that it has deemed itself insecure, unless TRMC provides HCCA with an unconditional, irrevocable letter of credit. The letter of credit shall (i) meet the requirements of Uniform Customs and Practice for Documentary Credits ICC No. 500; (ii) name HCCA as beneficiary; (iii) be in amount equal to the lesser of the termination fee or a lesser amount specified by HCCA; (iv) be payable in full or partial draws against HCCA's sight draft; (v) include an "evergreen" provision to be renewed automatically unless 30 days prior written notice of cancellation; (vi) have an initial expiration date no earlier than one year from date of issue; (vii) otherwise be satisfactory to HCCA. (Pp. 18.)

- Section 6(e), "Liquidated Damages". If the Agreement is terminated due to default by TRMC or any other reason other than a termination by HCCA, TRMC shall pay a termination fee within 5 days of termination of MSA. The termination fee shall be an amount equal to $87,500 per

EXHIBIT A
Page 21 of 25

month first increased by CPI and then multiplied by the remaining number of months in the term (not to exceed 120 months), discounted to present value using the discount rate of the Federal Reserve Bank of San Francisco at the time of termination plus 1%. (Pp. 19.)

- Section 6(g), "Early Termination Events". Under section 6(g)(ii), if either party is determined to be in violation of law, parties shall use best efforts to negotiate an amendment. If they are unable to do so within 6 months, either party may terminate the Agreement by written notice, provided that upon termination, TRMC shall be obliged to pay the termination fee. (Pp. 20-21.)

- Section 12, "Exclusivity". Section 12(a) provides that TRMC agrees not to engage in any business relating to the operation of a hospital, clinic, home health, or medical clinics or any other activity which is competitive with any activity of HCCA during the term within the District service area other than in accordance with the Agreement. Section 12(b) further provides that TRMC shall not operate or invest in the provision of medical or other clinical healthcare services, except with the prior consent of HCCA, unless required to do so under law. (Pp. 24.)

- Section 13, "Insurance and Casualty". Sections 13(a) and (d) entitled "Insurance" and "HCCA's Insurance," respectively, provide that HCCA shall maintain risk property insurance, commercial general liability insurance and professional liability insurance, but that the cost of such insurance shall be paid by TRMC as an operations expense. (Pp. 25.)

- Section 13(f), "Indemnity". Section 13(f)(i) provides that in no event shall HCCA be liable for failure to realize savings or loss of profits, revenue or any other indirect, incidental, punitive, special or consequential damages, and direct or other damages in excess of the amount of the operating fee earned by HCCA during the 3 months prior to the date of the claim for damages, even if HCCA has been advised of possibility of such damages. Comparatively, TRMC covenants to hold harmless HCCA and indemnify and defend them against all damages related to any breach by TRMC of any covenant to be performed by it pursuant to the Agreement, or any liability of TRMC arising from TRMC activities, whether during or prior to the term, with indemnity surviving termination of the Agreement. (Pp. 27 at 13(f)(ii).)

**Joint Operating Agreement (Ex. A3 to the Declaration of Kevin Northcraft)**

The Joint Operating Agreement, which is also referred to as the "Long Term Operating Agreement" in the MSA contains the following unfavorable provisions:[7]

- Section 2(f)(iii). (Pp. 7.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.[8]

- Section 2(f)(x)(4). (Pp. 9.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

---

[7] Note, many of the unfavorable provisions contained in the parties' Joint Operating Agreement (aka Long Term Operation Agreement) overlap with those provisions of the MSA.
[8] Unless otherwise noted, the section identified in the Long Term Operating Agreement tracks the numbering scheme as set forth in the Interim Operating Agreement.

EXHIBIT A
Page 22 of 25

- Section 2(f)(x)(5). (Pp. 9.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

- Section 2(f)(x)(7). (Pp. 9.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

- Sections 2(h)(i), (iii)-(iv). (Pp. 10.) These sections, as contained in the Joint Operating Agreement, appear verbatim in the Interim Operating Agreement at sections 2(j)(i), (iii)-(iv).

- Section 3(a). (Pp. 10-11.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

- Sections 3(c)(i), (iii). (Pp. 12.) These sections, as contained in the Joint Operating Agreement, appear verbatim in the Interim Operating Agreement at sections 2(h)(i)-(ii).

- Section 3(d). (Pp. 13.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement at section 3(c).

- Section 5. (Pp. 15.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

- Section 6(c). (Pp. 16.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

- Sections 6(d)(ii)-(iii). (Pp. 16-17.) These sections, as contained in the Joint Operating Agreement, appear verbatim in the Interim Operating Agreement.

- Sections 6(e)(i)-(ii). (Pp. 17.) These sections, as contained in the Joint Operating Agreement, appear verbatim in the Interim Operating Agreement.

- Section 6(g)(i). (Pp. 19.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

- Section 6(g)(ii). The section provides that if it is determined that TRMC has the right to make and enforce rules, regulations and bylaws necessary for administration of the Hospital, Clinics and Other Facilities, or prescribe the terms upon which patients may be admitted and HCCA determines in its sole and absolute discretion that TRMC is exercising or threatening to exercise those rights in a manner that HCCA views as "fundamentally inconsistent" with HCCA's approach to management, HCCA shall have the right to terminate the Agreement and upon such termination, TRMC shall be obliged to pay the termination fee. (Pp. 19.)

- Section 9, "Alterations of Clinics and Hospital". Section 9(a) provides that HCCA shall have the right to modify the physical condition of the District's buildings in its sole and absolute discretion. TRMC shall have the first option to provide financing. If TRMC fails or refuses to finance any expansion, HCCA shall have the right to finance it. Upon termination of the Agreement, TRMC shall pay the fair market value of the expansion. (Pp. 21-22.)

EXHIBIT A
Page 23 of 25

- Sections 12(a)-(b). (Pp. 23.) These sections, as contained in the Joint Operating Agreement, appear verbatim in the Interim Operating Agreement.

- Section 13(f)(i). (Pp. 25-26.) This section, as contained in the Joint Operating Agreement, appears verbatim in the Interim Operating Agreement.

**Option Agreement (Ex. A4 to the Declaration of Kevin Northcraft)**

The Option Agreement was entered into between HCCA and TRMC and made effective on May 29, 2014. By way of the Option Agreement, TRMC granted HCCA the irrevocable and exclusive right and option to purchase or lease the Hospital, the Clinics and Other Facilities and the other District Assets, as set forth in Exhibit A attached thereto.

Unfavorable provisions contained in the Option Agreement include:

- Section 3, "Option Consideration". Section 3 entitled "Option Consideration" provides that HCCA shall pay TRMC a total of $100.00 as consideration for the granting of the irrevocable and exclusive right and option to purchase or lease the Hospital, Clinics and Other Facilities and other District Assets. (Agreement, pp. 1.)

- Section 7, "District Covenants". Section 7 entitled "District Covenants" at subsection (a) requires that TRMC "will not sell or otherwise transfer, or further encumber, the Hospital, the Clinics and Other Facilities, or any of the other District Assets to any other Person," without qualification. Paragraph 7, subsection (b) similarly provides that TRMC is restricted from entering into any leases with respect to these assets. (Agreement, pp. 2.)

Exhibit "A" to the Option Agreement contains the following unfavorable provisions against TRMC:

- Section 2 "Option to Purchase". Section 2 entitled "Option to Purchase" at subdivision (a) provides that HCCA may make a down payment of $500,000, or more at HCCA's option, with the balance to be carried by TRMC pursuant to a note secured by the assets being purchased, the note bearing interest at the current market rate. Payments thereafter shall be as follows: $100,000 per month for the first 3 years; $200,00 per month for the next 3 years; and the balance to be amortized and paid over the following 4 years. Subdivision (c) provides that if the option to purchase is exercised, TRMC will continue to subsidize the cost of providing healthcare services for the indigent, the uninsured and underinsured populations of Tulare County and surrounding areas as set forth in 3(c) of the Joint Operating Agreement (aka Long Term Operating Agreement). (Ex. "A", pp. 2-3.)

- Section 3 "Right of First Refusal". Section 3 entitled "Right of First Refusal" provides that if TRMC receives an offer, HCCA shall have the right of first refusal to lease or purchase the District Assets at the *lesser of* (a) the same economic benefit to TRMC as the purchase price and terms and conditions which are contained in the offer; or (b) the purchase price and terms and conditions set forth under Section 2. (Ex. "A", pp. 3-4.)

24

EXHIBIT A
Page 24 of 25

- Section 6 "Exclusive Rights". Section 6 entitled "Bankruptcy" at subdivision (a) provides that if TRMC seeks bankruptcy relief and HCCA exercises the option to purchase, TRMC shall file a sale motion seeking the sale of District assets to HCCA under the terms of Section 2. Subdivision (b) requires HCCA to pay HCCA a stalking horse bidder fee in an amount equal to 5% of the sales price offered by HCCA, plus reimbursement of HCCA's out-of-pocket expenses up to $1,500,000. The fee shall be payable in cash on the first business day following entry of an order approving a purchaser other than HCCA, and shall be treated as a super-priority administrative expense. (Ex. "A", pp. 5-6.)

00158901-gaa-10.10.2017

EXHIBIT A
Page 25 of 25