81
WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:   (559) 435-9800
Facsimile:   (559) 435-9868
E-mail:      rileywalter@w2lg.com

Chapter 9 Counsel

MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone:   (559) 433-1300
Facsimile:   (559) 433-2300
E-mail:      mandy.jeffcoach@mccormickbarstow.com

District Counsel

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #:   94-6002897<br>Address:   869 N. Cherry Street<br>Tulare, CA 93274 | CASE NO.  17-13797<br><br>DC No.:  WW-1<br><br>Chapter 9<br><br>Date:   October 12, 2017<br>Time:   10:30 a.m.<br>Place:   2500 Tulare Street<br>Fresno, CA 93721<br>Courtroom 13<br>Judge:   Honorable René Lastreto II |

**EXHIBIT A1 TO DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT OF MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT (HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

///

///

| Exh. | Description | Pages |
|------|-------------|-------|
| A1 | Management Services Agreement dated May 29, 2014 | 79 |

Dated:  October 10, 2017

WALTER WILHELM LAW GROUP
A Professional Corporation

By:  _____
Riley C. Walter, Attorneys for Debtor
Tulare Local Healthcare District

Management Services Agreement

between

HealthCare Conglomerate Associates, LLC

and

Tulare Regional Medical Center

MAY      29, 2014

## MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement ("**Agreement**") is made and entered into effective as of _May 29_, 2014 ("**Effective Date**"), by and between HealthCare Conglomerate Associates, LLC, a California limited liability company ("**Manager**"), and Tulare Local Healthcare District, d/b/a Tulare Regional Medical Center (the "**District**"). This Agreement supersedes that certain Management Services Agreement dated as of January 10, 2014 between Manager and the District.

### R E C I T A L S :

WHEREAS, the District owns and operates an acute care hospital at 869 North Cherry Street in Tulare, California (the "**Hospital**") together with the Clinics and Other Facilities;

WHEREAS, the parties have determined that Manager's provision of services in accordance with the terms of this Agreement will further the ability of the District (1) to provide for efficient delivery of health care services; (2) serve the best interests of the communities served by the District; and (3) enhance the ability of the parties to effectively and efficiently provide health care for the communities served by the District;

WHEREAS, the parties intend that this arrangement will allow them to achieve a number of mutually beneficial objectives, including the following: (1) further the development of a community-based integrated health care system; (2) enhance the quality of health care services available to residents of the communities served by the District; (3) respond to the health care needs and cost concerns of community residents by allowing evaluation of existing services and addition of new services, as deemed appropriate by Manager; (4) achieve efficiencies through coordination, consolidation, or reorganization, as appropriate, of certain identified health care services; and (5) improve the capacity of the parties and their affiliates to recruit and retain physicians necessary to serve the health care needs of the community, develop linkages with other providers and payers, and expand the geographical service area of the District;

WHEREAS, Manager has heretofore expended considerable effort and resources, including, but not limited to, financial resources and independent consultants, to review and analyze information regarding the Hospital provided by the District; and

WHEREAS, the District desires to engage Manager, and Manager desires to be engaged, to manage the operations of the District upon the terms set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the premises and the mutual undertakings and representations herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to become legally bound, hereby agree as follows:

### AGREEMENT

1. <u>Definitions</u>.

All capitalized terms not defined elsewhere in this Agreement shall have the following meanings, unless a different meaning clearly appears from the context:

(a)    "<u>Acquisition Proposal</u>" shall have the meaning set forth in Section 9(b)(ii).

(b)   "Affiliate" means any other firm, partnership, association, corporation, joint venture or public body, directly or indirectly controlling or controlled by, or under direct or indirect common control with, the District or Manager.  The term "control," when used with respect to a particular Person, means the possession, directly or indirectly, of the power to direct or cause the direction of management in the policies of such Person whether through the ownership of voting stock, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(c)   "Annual Budget" shall have the meaning set forth in Section 4(f)(i)."Bond Indenture" means that certain Indenture of Trust dated as of November 1, 2007 between the District and U.S. National Bank Association, as trustee.

(e)   "Bonds" shall have the meaning set forth in Section 9(a)(i).

(f)   "Buildings" means those buildings and other structures in which the Operations, now or hereafter are conducted, together with such other buildings and structures now or hereafter owned, leased or otherwise operated by the District that Manager elects, in its sole and absolute discretion, to operate hereunder, by notice to the District from time to time.

(g)   "Chief Executive Officer" shall have the meaning set forth in Section 4(a)(i)

(h)   "CIA" shall have the meaning set forth in Section 5(a).

(i)   "Claims" shall have the meaning set forth in Section 4(v)(x)(4).

(j)   "Clinics and Other Facilities" means those facilities and businesses identified on Exhibit A to this Agreement, together with such other facilities and clinics owned, leased or otherwise operated by the District that Manager elects, in its sole and absolute discretion, to manage hereunder, by notice to the District from time to time.

(k)   "CMS" means the Centers for Medicare and Medicaid Services.

(l)   "Collections" shall have the meaning set forth in Section 4(g)(i).

(m)   "Compliance Plan" shall have the meaning set forth in Section 5(a).

(n)   "Consultants" shall have the meaning set forth in Section 4(b)(xii).

(o)   "Contract Document" shall have the meaning set forth in Section 4(v)(ii).

(p)   "Controlling Person" means any Person, who acting alone or with others, has the ability to directly or indirectly influence, direct, or cause the direction of the management, expenditure of money, or policies of a Person submitting an Acquisition Proposal, including any shareholder owning, directly or indirectly, legally or beneficially, more than 5% of the equity of such Person submitting an Acquisition Proposal, a management company or similar service provider (together with a Person who is a Controlling Person of such management company or other business entity) and any other individual who, because of a relationship of any nature with the Person submitting an Acquisition Proposal or its owners, or managers, is in a position of actual control or authority with respect to the Person submitting an Acquisition Proposal, without regard to whether the individual is formally named as an owner, manager, director, officer, provider, consultant, contractor, or employee of the Person submitting an Acquisition Proposal.

2

(q)     "CPI" shall have the meaning set forth in Section 6(b)(i).

(r)     "CPI Increase" shall have the meaning set forth in Section 6(b)(ii)(1).

(s)     "Depository" shall have the meaning set forth in Section 4(g)(i).

(t)     "Depository Account" shall have the meaning set forth in Section 4(g)(i).

(u)     "District Default" shall have the meaning set forth in Section 10(a).

(v)     "Emergent Expenses" shall have the meaning set forth in Section 4(f)(ii).

(w)     "Employee Lease Payment" shall have the meaning set forth in Section 4(b)(viii).

(x)     "GAAP" means United States generally accepted accounting principles and practices as in effect from time-to-time as applied by Manager.

(y)     "Governing Body" shall have the meaning set forth in Section 3(a).

(z)     "Governmental Authority" means any federal, State or local judicial, executive or legislative body or governmental municipality, department, commission board, agency or authority, including government contractors for federal health programs, and including without limitation, the State of California – Health and Human Services Agency Office of Statewide Health Planning and Development.

(aa)    "Governmental Depository Account" means a Depository Account established for the sole purpose of receiving checks, wire transfers and other forms of electronic payments governed under the Social Security Act (42 U.S.C. §§ 1395 et seq.), including payments under Medicare, Medicaid and TRICARE/CHAMPUS, and payments administered or regulated by the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services (collectively "Governmental Health Payers").

(bb)    "HIPAA" means the Health Insurance Portability and Accountability Act of 1996 and the regulations promulgated pursuant thereto.

(cc)    "Hospital" shall have the meaning set forth in the Recitals.

(dd)    "Hospital Law" means California Health and Safety Code §32000 et seq.

(ee)    "Ineligible Person" shall have the meaning set forth in Section 5(f).

(ff)    "Interim Operating Agreement" shall have the meaning set forth in Section 9(a)(i).

(gg)    "Jeopardy Event" shall have the meaning set forth in Section 10(d)(ii).

(hh)    "Law" means any constitutional provision, statute, ordinance, or other law, rule, regulation, interpretation, judgment, decree, or order of any Governmental Authority or any settlement agreement or compliance agreement with any Governmental Authority, including Hospital Law, as the foregoing may be revised, replaced or amended from time to time.

3

(ii)    "Leased Employees" shall have the meaning set forth in Section 4(b)(ii).

(jj)    "Long Term Operating Agreement" shall have the meaning set forth in Section 9(a)(ii).

(kk)    "Manager" has the meaning set forth in the Preamble.

(ll)    "Manager Default" shall have the meaning set forth in Section 10(c).

(mm)    "Manager Parties" shall have the meaning set forth in Section 3(e)(i).

(nn)    "Master Account" shall have the meaning set forth in Section 4(g)(iii).

(oo)    "Medical Staff" shall have the meaning set forth in Section 3(e)(i).

(pp)    "Medical Staff Recommendations" shall have the meaning set forth in Section 3(e)(i).

(qq)    "Net Adjusted Management Fee" shall have the meaning set forth in Section 6(b)(ii)(2).

(rr)    "OIG" means the Office of Inspector General of the Department of Health and Human Services.

(ss)    "Operating Contracts" shall have the meaning set forth in Section 4(n)(ii).

(tt)    "Operating Period" shall have the meaning set forth in Section 2(a).

(uu)    "Operations" means the healthcare and other operations and programs which are conducted at the Hospital and the Clinics and Other Facilities, as the same may be modified by Manager from time to time during the Operating Period.

(vv)    "Person" means an association, a corporation, a limited liability company, an individual, a partnership (general or limited), a trust, a hospital district organized under the Hospital Law, or any other entity or organization, including a Governmental Authority.

(ww)    "PHI" shall have the meaning set forth in Section 4(s)(iv).

(xx)    "Pre-existing Claims" shall have the meaning set forth in Section 4(v)(x)(5).

(yy)    "Project" shall have the meaning set forth in Section 4(v)(i).

(zz)    "State" means the State of California.

(aaa)    "Statement" shall have the meaning set forth in Section 4(b)(viii).

(bbb)    "Suspended" shall have the meaning set forth in Section 9(b).

(ccc)    "Termination Fee" shall have the meaning set forth in Section 10(b)(i).

4

2.    <u>Operating Period</u>

    (a)    <u>Initial Operating Period</u>. The initial term of this Agreement shall commence on the Effective Date and end on the date fifteen (15) years thereafter (as such initial term may be renewed pursuant to <u>Section 2(b)</u>, the "Operating Period").

    (b)    <u>Extension of Operating Period</u>. Upon completion of the initial Operating Period or of any subsequent renewal Operating Period, this Agreement shall automatically renew for an additional 10-year period unless either party shall send a written notice of intent not to renew the Agreement to the other party not less than twelve (12) months prior to the end of the initial Operating Period or then current renewal Operating Period, as applicable. Each renewal Operating Period shall be on the same terms and conditions set forth herein. Notwithstanding the foregoing, nothing herein is intended to permit the Operating Period to exceed such time period as is permissible under any tax-exempt bond financing requirements under applicable Law, with respect to bonds issued by the District on or prior to the date hereof, or hereafter issued with the concurrence of Manager. In the event the Operating Period exceeds any permissible time period, then the Operating Period shall be conformed to the maximum time period permitted under applicable Law.

    (c)    <u>Irrevocability of Agreement</u>. The District acknowledges and agrees that Manager is entering into this Agreement in reliance on the long term nature of this Agreement, and further acknowledges that the rights, duties, powers and authority of each of the parties hereto, are intended to be non-terminable throughout the Operating Period, except in accordance with the express provisions of this Agreement. The District acknowledges that neither party will achieve the benefits intended to be achieved if the District has any continuing right or power to terminate this Agreement, or the relationship hereby created, except in accordance with the express provisions of this Agreement. Accordingly, the District, as a substantial inducement to Manager to enter into this Agreement and provide its proprietary systems and knowledge, hereby irrevocably waives and relinquishes any right, power or authority existing at law or in equity to terminate this Agreement, except in strict accordance with the express provisions of this Agreement. The parties further hereby acknowledge that any breach of this Section will cause irreparable and permanent damage to Manager, not compensable by money damages.

3.    <u>General Responsibilities of the Parties</u>.

    (a)    <u>Appointment</u>. The District hereby engages and appoints Manager, and Manager hereby accepts such engagement, to exclusively provide day-to-day management services to and for the District with respect to the Hospital and the Clinics and Other Facilities. Anything herein to the contrary notwithstanding, Manager's authority hereunder shall be limited as described in <u>Section 3(b)</u>, and Manager shall otherwise perform its services hereunder in accordance with <u>Section 5</u>. Manager's duties shall include but are not limited to financial and operating system management, preparation of proposed annual budgets, purchasing, contracting support and relationship management, expansion of the Hospital and the Clinics and Other Facilities or the services offered, preparation and implementation of staffing plans, recruitment of personnel, and supervision of the day-to-day operations of the Hospital and the Clinics and Other Facilities. Manager shall perform its services hereunder in accordance with the District Bylaws, the policies lawfully adopted by the Board of Directors of the District (the "<u>Governing Body</u>") and applicable Law. It is understood and agreed to the extent that (i) Hospital Law is in conflict with any of the District's Bylaws, then Hospital Law shall control or (ii) the District's Bylaws or policies conflict with the terms hereof, the terms hereof shall control.

5

(b)    <u>General Control of the District</u>.

    (i)    Manager expressly acknowledges and agrees that the District exercises, and at all times during the Operating Period, shall exercise the ultimate control and direction of the Operations. Subject to the provisions of <u>Section 3(a)</u>, Manager shall operate within the reasonable parameters, policies and procedures adopted by the Governing Body and communicated to Manager by the District, (and provided that such parameters, policies and procedures do not, in Manager's reasonable judgment, jeopardize the quality of patient care provided at the Hospital and the Clinics and Other Facilities, or require Manager or the District to engage in any illegal or unethical acts, or breach any express provision of this Agreement or any other agreement of the parties). Notwithstanding the ultimate control to be exercised by the Governing Body, Manager shall comply with its obligations under this Agreement, provided that the District shall not interfere with its ability to do so.

    (ii)    Notwithstanding anything to the contrary herein, any change in the licensure type, payment model chosen by the Hospital, classification or operations of the Hospital other than as a Medicare participating acute care hospital that is paid through the Medicare Prospective Payment System (Social Security Act §1886(d)), shall be subject to the prior written approval of the Governing Body and Manager.

    (iii)    The District shall timely furnish Manager with sufficient funds to timely pay the expenses relating to the Operations, including funding of both operating expenses and non-operating expenses. Subject to the more expedient funding requirements set forth in <u>Section 4(b)(viii)</u>, if funds in the Master Account are insufficient, Manager shall notify the District of the need for funds by submitting Manager's fund request to the District and the District shall supply the requested funds within three (3) days of Manager's notice to the District of the need for same, provided that for unanticipated Emergent Expenses, Manager shall have the right to provide a shorter notice period. Manager shall not be obliged to fund the District expenses hereunder or provide funds to accommodate shortfalls in revenue, however, Manager may, in its sole and absolute discretion, advance funds as provided in <u>Section 4(i)(i)(1)</u>. Manager shall not be in default hereunder if Manager's failure to comply with the terms of this Agreement is due to the lack of adequate funds provided by the District.

    (iv)    The District shall assure that its funds are used to support the Hospital and the Clinics and Other Facilities and to provide charitable care therein and are not diverted to other uses.

(c)    <u>Cooperation and Responsiveness</u>.

    (i)    The District and its Governing Body shall fully and timely cooperate in good faith with Manager and shall be responsive and available to Manager during the Operating Period in order that Manager can carry out its duties and obligations hereunder.

    (ii)    In any instance in which the District (or the Governing Body) has an obligation to provide input or decide an issue, or provide (or withhold) its approval or consent under the terms of this Agreement, the District (or the Governing Body) shall do so in accordance with the provisions of <u>Section 11(o)</u>. Unless a specific period of time is set forth herein for a particular act, a reasonable period of time for the District to provide input or decide an issue, or provide (or withhold) its approval or consent shall generally be within five (5) to seven (7) calendar days.

(iii)    In addition to its obligation to provide funds, the District will timely provide Manager with the necessary equipment, information and other resources to enable Manager to fully and timely perform its services hereunder.

(iv)    Manager shall provide up to five (5) hours of consultation to the District on a monthly basis regarding the Operations and the services provided hereunder. If requested to do so, Manager will provide additional consulting services for the District. Such services and the charge therefor will be determined by Manager and the cost thereof shall be billed to the District pursuant to Manager's then current terms and conditions, and the District shall pay such amount within thirty (30) days of invoicing.

(d)    Relationship.

(i)    Except as specifically authorized hereunder, the District shall not interfere, directly or indirectly, with Manager's decisions or the daily Operations, and shall not interfere with Manager's ability to perform its obligations hereunder. The District representatives shall not access the Hospital and the Clinics and Other Facilities, except upon prior arrangement with Manager, except in the event of emergency. Except upon request of Manager, individual members of the District's Governing Body, shall not issue directions to Manager, except following and in accordance with the formal actions of the District's Governing Body. The District shall not access data systems utilized in connection with the Operations, unless specifically authorized by Manager in each instance.

(ii)    The District representatives' communications, formal and informal, regarding Manager and the Operations with Persons associated or affiliated with the Operations or Manager, shall be conducted exclusively with Persons designated by Manager's Chief Executive Officer.

(iii)    Neither the District nor its Governing Body shall (nor cause or encourage others to) disclose confidential or negative information regarding, or take any action or omit to take any action that is materially detrimental to the reputation of (anything which might tend to bring a party into public disrepute, hatred, contempt, scorn, scandal, or ridicule, or which might tend to reflect unfavorably on or otherwise degrade such party), Manager or any of the other Manager Parties, or make any statements, verbally, in writing or otherwise, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of Manager, or of the other Manager Parties, to anyone other than Manager's Chief Executive Officer. Notwithstanding the foregoing, negative information may be discussed within official the District Governing Body meetings and in connection with its internal operations, provided that if such information is used in a non-confidential forum, the District shall use reasonable efforts to verify the veracity and objectivity of such information prior to disclosing same in a non-confidential forum. However, nothing herein shall prevent the District or any member of its Governing Body from testifying truthfully in a legal proceeding or governmental administrative proceeding. the District acknowledges and agrees that this prohibition extends to statements, written or verbal, made to anyone, including but not limited to, the news media, bondholders, industry analysts, competitors, strategic partners, vendors, employees (past and present), and clients.

(iv)    The parties acknowledge that: (1) this Section is a material provision of this Agreement; (2) any breach of this Section shall be a material breach of this Agreement, and (3) a breach of this Section would cause irreparable harm.

7

(e)    Medical and Professional Matters.

(i)    All medical and professional matters relating to the care and treatment of patients requiring professional medical judgment shall remain the responsibility of the District medical director(s) and medical staff of the Hospital (the "**Medical Staff**"), provided, however, that Manager, in accordance with Cal. Admin.Code Regs., tit. 22, § 70701 and § 70703(b) and 42 C.F.R. § 482.12(a) and § 482.22, shall be obliged to (i) recommend written bylaws for adoption by the District in accordance with legal requirements and the District's community responsibility regarding the appointment and reappointment of members of the Medical Staff, which bylaws may or may not be consistent with the current bylaws in order to provide the most efficient, highest quality care practicable given the Hospital's size, location and resources, and (ii) provide recommendations to the District regarding Governing Body approval of Medical Staff by-laws (collectively "**Medical Staff Recommendations**"). It being the goal of the parties to establish and implement a medical staff development plan (the "**Medical Staff Development Plan**") that will lead to the establishment of a medical staff which is configured to (a) provide high quality care through a patient centered approach (b) be accountable for the care delivered and the efficiency of that care. The Medical Staff Development Plan shall be consistent with the provisions of 42 C.F.R. pt. 425, without regard to whether the District is a recognized accountable care organization. The parties recognize that changes established pursuant to the Medical Staff Development Plan implementation may result in a smaller more accountable Medical Staff being appointed. The District shall be deemed to have accepted Manager's Medical Staff Recommendations unless the District's Governing Body (i) within thirty (30) days of written notice of such Medical Staff Recommendation with good cause (which shall be specifically set forth in writing) specifically votes to disapprove the Medical Staff Recommendation and (ii) such vote is by a 4/5ths majority vote of the Governing Body, after Manager has been provided a reasonable opportunity to explain and/or justify the Medical Staff Recommendation before the members of the Governing Body. The Medical Staff shall be organized and shall function in compliance with applicable Law and other licensure, certification, and accreditation standards as they may be amended from time-to-time. Subject to the foregoing, final decision-making authority relating to all matters of medical, professional, and ethical affairs, are and shall be the exclusive responsibility of the District. Manager and its Affiliates, and their respective officers, directors, managers, members, employees, agents, contractors and representatives (collectively, "**Manager Parties**") expressly do not, by this Agreement, undertake to perform or provide any physician or medical services to patients. Except as provided with respect to Medical Staff Recommendations, all matters requiring or involving physician professional medical judgments or medical issues shall remain the responsibility of the District and its Medical Staff. Manager and Manager Parties shall not be responsible in any manner for the acts, omissions or conduct of any member of the Medical Staff, or other credentialed health care providers or practitioners. Neither Manager nor Manager Parties shall be liable to any patient or other Person for damages arising out of or resulting from any medical treatment, or act or omission by, or dishonesty or misconduct of, any servant or employee of the Hospital and the Clinics and Other Facilities, any physician or other credentialed health care provider providing physician or medical services at the Hospital or the Clinics and Other Facilities, or any agent of the Hospital and the Clinics and Other Facilities (other than for the direct acts of agents of Manager and Manager Parties, which shall not include any physicians, health care professionals or the District employees). However, Manager and Medical Staff shall consult with each other regarding such matters where consultation is feasible and in the best interest of the patients of the District.

(ii)    Subject to Subsection 3(e)(i), Manager shall provide such oversight and support as Manager, in its sole and absolute discretion, deems appropriate for the Medical

8

Staff's administrative affairs, including monitoring the performance of professional services by the Medical Staff and other licensed personnel.

(iii)    Subject to the Medical Staff Recommendations, the District retains control and authority over all appointments to the District's Medical Staff, the granting of clinical privileges at the District to the extent required by applicable Law and applicable accreditation standards, and any actions taken with respect to Medical Staff members, including appeals of actions. Actions taken by the District pursuant to this Subsection shall be consistent with the Medical Staff Development Plan. Notwithstanding the foregoing, the Chief Executive Officer or his or her designee may grant an individual temporary clinical privileges for a period not to exceed the greater of (i) one hundred twenty (120) days or (ii) such period as is allowed under applicable Law, all in accordance with accreditation agency requirements and the District's Bylaws.

(f)    Standards of Performance.  The District acknowledges that while Manager shall expend its commercially reasonable efforts in performing its obligations under this Agreement, Manager does not guarantee any particular results, notwithstanding projections which may be made by Manager. Manager's projections and forward looking statements are based on estimates and expectations, and reasonably available competitive, financial, economic and other data, and as a result are inherently uncertain. Actual results could differ materially from those anticipated as a result of a variety of factors. Manager shall use its commercially reasonable judgment in providing the services required under this Agreement. The parties acknowledge that implementation of the District's charitable care purposes may not permit the maximization of the District's profits. Manager shall, for and on behalf of the District, use commercially reasonable efforts to make recommendations and take actions required hereunder to assist the District to comply in all material respects with any material Law respecting the Hospital and the Clinics and Other Facilities. The District covenants that it will, in good faith, consider all of Manager's recommendations regarding the Operations, and will support and implement, through policies and/or other appropriate actions of the Governing Body, the recommendations it deems reasonably appropriate. The District is a California Health Care District organized and operating under the Hospital Law with, inter alia, a charitable mission, and it has under the Hospital Law certain responsibilities and obligations, including, but not limited to, obligations to provide charity care and indigent care. At all times, Manager, in managing the District, shall follow the charity and indigent care policies and obligations of the District (provided that the Hospital and the Clinics and Other Facilities' financial obligations in that regard shall not be materially changed unless such change is required by applicable Law) and shall assist the District in meeting all of the District's required obligations under Hospital Law, the District will promptly notify Manager of any changes to any policy, procedure, or the District Bylaw which may impact Manager's rights or obligations under this Agreement, including but not limited to, those affecting the Hospital and the Clinics and Other Facilities' charity care obligations.

4.    Duties of Manager.

(a)    Hospital Chief Executive Officer.

(i)    Manager shall provide a Chief Executive Officer ("**Chief Executive Officer**") to provide the routine, day-to-day administrative and management services for the Hospital and the Clinics and Other Facilities, as set forth herein. Such Chief Executive Officer shall carry out the usual and customary duties of such positions within the health care industry. The Chief Executive Officer shall be an employee of Manager, as provided in Section 4(b). Notwithstanding anything to the contrary in this Agreement, the Chief Executive Officer's authority shall be at least as extensive as the authority the District delegated to the District's former chief

9

executive officer (as of the end of 2013), together with such additional authority as is provided in the District's Bylaws. However, it is specifically agreed that the restriction on the authority of the Chief Executive Officer set forth in Section 2(g) of the District's Bylaws (regarding submittal of certain expenditures over $100,000 to the Governing Body) shall not be a limitation on the authority of the Chief Executive Officer. Any duties and/or responsibilities beyond the foregoing will be discussed and agreed upon by Manager and the Governing Body and will be provided by Manager pursuant to the terms of a separate written agreement in exchange for fair market value compensation, and in compliance with applicable Law.

(ii)     The Chief Executive Officer shall: (i) serve as the District's authorized representative to the public, as well as to Governmental Authorities or voluntary organizations; (ii) report regularly to the Governing Body on the performance of the Hospital; (iii) assist the District with the development of strategies and action plans enabling the District to respond to the health care needs of individuals residing in communities served by the District; and (iv) direct the District in expanding its community relations program.

(b)     Personnel.

(i)     As soon as reasonably practicable, as determined by Manager, following the Effective Date, Manager shall be and become the exclusive employer / contractor of the personnel of the Hospital and the Clinics and Other Facilities required for the day-to-day Operations, except for those employees who must be employed by the District in order to comply with applicable Law (e.g., 42 C.F.R. § 482.28). Manager shall provide advance notice to the District of the date or dates upon which Manager shall elect to become the employer of the personnel of the Hospital and the Clinics and Other Facilities, as provided herein. Such employee transition may be made in one or more stages, as determined by Manager.

(ii)     Upon Manager's becoming the employer of the employees associated with the Hospital and the Clinics and other Facilities, Manager shall lease the employees associated with the Hospital and the Clinics and Other Facilities (the "Leased Employees") to the District during the Operating Period, on the terms set forth in this Section 4. Prior to Manager's becoming the employer of such employees the District shall be the employer of the employees and shall be responsible for paying such employees in accordance with its regular payroll practices.

(iii)     The Leased Employees shall be employees of Manager for purposes of Manager's benefit programs or plans now existing or hereafter created, including compensation and payment and withholding of federal, state and local income, social security, unemployment, Medicare, other payroll and employment taxes, Section 125 plans, Section 403(b) annuities, workers' compensation and health insurance. Manager is solely responsible for the administration of employee benefits, benefit plans and programs for the Leased Employees. All expenses and charges incurred in connection with the Leased Employees shall be reimbursed to Manager by the District.

(iv)     Manager pays compensation to its employees for certain holidays and vacations. Any paid holidays and vacation occurring during the Operating Period hereof shall be billed to the District at the same rates as if the employee was working.

(v)     Manager reserves the right of direction and control over the Leased Employees, including a right to terminate Manager's employment relationship with a Leased Employee in Manager's sole and absolute discretion. Manager shall recruit, employ, train,

10

promote, direct and terminate the employment of Leased Employees, as needed for the Operations, and shall provide oversight and consultation regarding performance standards, personnel policies, and employee benefits.

(vi)    Manager shall be responsible for the development and implementation of policies and practices, in conformity with the terms of this Agreement, relating to personnel management services only, including without limitation, enrolling, recruiting, interviewing, selecting, training, evaluating, replacing, supervising, disciplining, reassigning and terminating Leased Employees.

(vii)    While performing services for the District, the Leased Employees will be subject to all work rules and performance standards applicable to Manager's employees and contractors, including disciplinary standards.

(viii)    Manager shall have the right to draw from the Master Account, or if such amount is not sufficient, the District shall pay to Manager the estimated amount of the Employee Lease Payment for each payroll cycle payment date within two (2) days of a request from Manager for such funds. Within ten (10) days after the close of each month, Manager shall deliver to the District a statement of the actual Employee Lease Payment(s) for the prior month (the "**Statement**"). At the District's written request, Manager shall provide the District reasonable supporting detail underlying the calculations of the Employee Lease Payment(s). If the Statement discloses that actual Employee Lease Payments were less than the estimated Employee Lease Payments for the applicable prior month, then Manager shall refund the excess to the District or redeposit such amount in the Master Account, as Manager shall determine appropriate. If the Statement discloses that actual Employee Lease Payments were more than the estimated Employee Lease Payments for the applicable prior month, then Manager shall be paid the shortfall by the District within one (1) business day or shall withdraw such amount from the Master Account, as Manager shall determine appropriate. If the District fails to timely advance funds for the Employee Lease Payment, Manager shall have the right, in its sole and absolute discretion, but not the obligation, to advance such funds, as provided in Section 4(f)(I)(1).

(ix)    The payment for the applicable period, with respect to each Leased Employee (the "**Employee Lease Payment**"), shall be an amount equal to 130% of the compensation (including, without limitation, wages, salary, compensation, employee benefits, insurance, workers' compensation coverage, unemployment compensation coverage, taxes, withholdings, contributions, commissions, bonuses and travel and business expenses), retirement, workers' compensation premiums and benefit amounts payable with respect to a Leased Employee, and taxes thereon.

(x)    Manager shall confer with the District in determining the general range of the number and qualifications of employees required for the efficient and effective operation of Hospital and the Clinics and Other Facilities and in establishing and revising in-service training programs, and job descriptions, all in order to accomplish the goals and objectives of Hospital and the Clinics and Other Facilities. However, Manager shall have the ultimate authority to hire, fire and set the terms of employment for all such employees. To discourage nepotism and conflicts of interest, the District and its representatives agree that they shall not request or require that Manager: (i) hire or fire any specific employee or amend the terms of any specific employee's employment, (ii) dictate the specific number of employees in a category of employment or (iii) select, reject or promote a Leased Employee or contractor (or its' personnel) based on the individual's political affiliation or beliefs or as a reward for political services or as a form of political

patronage, directly or indirectly. Likewise, the District shall not refer potential employees or contractors to Manager for hiring or engagement.

(xi)      During the Operating Period and for a period of two (2) years thereafter, the District and its Affiliates shall not, directly or indirectly, solicit for employment any Leased Employee.

(xii)      Manager may hire or retain any consultants, accountants, attorneys or other professional personnel (collectively, "Consultants") which Manager, in its sole and absolute discretion, determines is necessary or appropriate to assist Manager in carrying out its duties and responsibilities under this Agreement. The expense of any Consultants so retained shall be an expense of the District, but Manager shall not retain any such Consultants without the approval of the Governing Body, if the cost of such services shall exceed $100,000 in any calendar year for such services, unless otherwise set forth in the approved Annual Budget.

(xiii)      Manager, during the transition of Leased Employees from the District hereunder, shall not implement any employee layoffs that could implicate the Worker Adjustment and Retraining Notification Act of 1988, as amended, 29 U.S.C. §§ 2101, et seq., and any similar state and local applicable Law, without providing any required notices. Notwithstanding anything in this Agreement to the contrary, Manager is not obligated to hire any specific District employee but may interview any or all such District employees. Manager may, but shall not be obligated to, make offers of employment to such employees of the District as are identified by Manager in its discretion. It is understood and agreed that (A) Manager's extension of offers of employment shall not constitute any commitment, contract or understanding (expressed or implied) of any obligation on the part of Manager to an employment relationship of any fixed term or duration or upon any terms or conditions other than those that Manager may establish pursuant to individual offers of employment, and (B) employment offered by Manager is "at will" and may be terminated by Manager or by an employee at any time for any reason (subject to any written commitments to the contrary made by Manager or an employee). Nothing in this Agreement shall be deemed to prevent or restrict in any way the right of Manager to terminate, reassign, promote or demote any of the Leased Employees or to change adversely or favorably the title, powers, duties, responsibilities, functions, locations, salaries, other compensation or terms or conditions of employment of such employees.

(c)      Patient Safety Quality and Performance Measurement. Manager shall assist in the implementation of the Hospital and the Clinics and Other Facilities' patient safety, quality, and performance measurement program. Manager shall provide oversight and facilitate the Hospital and the Clinics and Other Facilities' patient safety, quality, regulatory readiness, infection control/prevention, and service excellence performance metrics. Manager activities shall include:

(i)      Coordination, data collection/analysis and recommendation/ facilitation of evidence-based practices to address the following:

(1)      Clinical program measures, hospital-acquired conditions, and other priority patient populations;

(2)      Patient and staff safety, including the reduction of preventable adverse events;

(3)      Infection control and prevention services to include electronic surveillance, tracking and transmission of required data;

12

EXHIBIT A
Page 13 of 79

(4)      Regulatory and accreditation readiness and compliance tracking;

(5)      Evidence-based policy and procedure development; and

(6)      Patient satisfaction and loyalty.

(ii)      Manager will also recommend strategies to enhance the Hospital's patient safety and quality department infrastructures, assist the Hospital and the Clinics and Other Facilities in implementation of evidence-based order sets, and disseminate best practices. The District shall be responsible for all expenses associated with surveys, licensure, permits, and accreditation.

(iii)      Manager shall use reasonable efforts, on a consultative basis, to guide or direct the District in maximizing its total performance score under the Federal government's value-based purchasing programs, including but not limited to the clinical process of core measures, the patient experience of care dimensions; and in connection with the Consumer Assessment of Health Care Providers and Systems surveys.

(d)      <u>Standard Forms</u>. Manager shall recommend standard formats for all charts, invoices, and other forms used in the Operations. Manager shall make reasonable efforts to ensure that such standard forms remain current as to applicable Law, as well as industry standards.

(e)      <u>Revenue Cycle Management</u>. Manager shall provide advice, direction, and reasonable assistance to the District and assist it in overseeing its revenue cycle management for the Hospital and the Clinics and Other Facilities. Services provided by Manager include making recommendations regarding Hospital and the Clinics and Other Facilities':

(i)      Charge master or similar schedule of charges;

(ii)      Adjustment coding;

(iii)      Patient / client billing and collections; and

(iv)      Coding and billing compliance audits.

<u>All direct, out-of-pocket fees, expenses and charges incurred in connection with actual revenue cycle management shall be the District expenses.</u>

(f)      <u>Annual Budget</u>.

(i)      Manager shall be responsible for preparation, presentation, monitoring, and reporting of the annual operating and capital budgets (collectively, the "**Annual Budget**"). Each proposed Annual Budget shall set forth an estimate of operating revenues and expenses (including capital expenses) for the next fiscal year, together with an explanation of anticipated changes in utilization, charges to patients and clients, payroll rates and positions, non-wage cost increases, and all other factors differing significantly from the then-current year. Manager shall be responsible for the oversight and review of the Annual Budgets, with final recommendations presented to the Governing Body for approval. Each Annual Budget will be created and implemented to coincide with the District's fiscal year, which is July 1st through June

EXHIBIT A
Page 14 Of 79

30th of the following year. Once approved, Manager shall thereafter establish a plan necessary to implement such Annual Budget.

(ii)    Subject to the limitations set forth in Section 3(f), Manager shall take commercially reasonable efforts to oversee the management of the Hospital and the Clinics and Other Facilities so that the actual revenues, costs, and expenses of the operation and maintenance of the Hospital and the Clinics and Other Facilities shall be consistent with the approved Annual Budget. Inclusion of any item within the Annual Budget shall constitute all necessary approval of the Governing Body for Manager to take such act to effectuate the budgeted item. Notwithstanding anything to the contrary herein, Manager shall have the right, in its sole and absolute discretion, to make any expenditures necessary on an emergent basis to avoid or mitigate damage to the Hospital and the Clinics and Other Facilities, obtain equipment repairs or to avoid or mitigate injury or potential injury to Persons or property or that are necessary on an emergent basis to comply with any Law or to cure or prevent any violation of any Law, whether or not provided for or within the amounts provided for in the approved Annual Budget for the applicable year (collectively, the "**Emergent Expenses**"). Manager shall use its reasonable efforts to give the District advance notice of any such Emergent Expenses, and in any event, shall give notice as soon as reasonably practicable after such expenditures, but in no event later than fifteen (15) days.

(g)    Bank Accounts.

(i)    The District shall maintain the Gross Revenue Fund (as defined in the Section 5.01 of the Bond Indenture) bank accounts (the "**Depository Accounts**") at one or more financial institutions (the "**Depository**") pursuant to the requirements of the Bonds. The District shall cause all amounts received by or on behalf of the District in connection with the operation, maintenance, or ownership of the Hospital and the Clinics and Other Facilities (the "**Collections**") to be deposited in the Depository Accounts, including a Governmental Depository Account. Amounts received from Governmental Health Payers shall, unless otherwise required by the Bonds, be deposited into a separate Governmental Depository Account. Funds in the Governmental Depository Account shall be transferred, on a daily basis to a Depository Account (other than the Governmental Depository Account), in a manner consistent with the Bond Indenture. In the event that payments on the Bonds are delinquent or the Bonds are in default, or the Bond trustee shall have otherwise taken control of the Depository Accounts or amounts to be deposited therein, the District shall use its best efforts to cause the trustee to disburse amounts in the Gross Revenue Fund for the payment of current or past due expenses of the District and hereby authorizes Manager to make such requests directly to the Bond trustee on behalf of the District.

(1)    Except to the extent inconsistent with the Bond Indenture, the District shall enter into an agreement with each Depository to cause the Depository to receive such payments and deposit them into Governmental Depository Account in the name of the District, and sweep the proceeds of such account on a daily basis, into the Depository or Master Account as designated by Manager, in conformity with the terms of the Bond Indenture.

(2)    The foregoing instructions of the District with respect to the Government Depository Account shall be revocable, at the sole instruction of the District, to the extent required by applicable Law; provided, however, that if the District revokes such instructions, it shall be in material default of this Agreement and Manager shall, in addition to all other rights hereunder, be entitled to seek an order or judgment from a court of proper jurisdiction for specific performance to sweep the Governmental Depository Account pursuant to this Agreement.

14

(ii)     Manager, acting in the District's name and as agent of the District, as provided in Section 4(h) shall make or direct to be made timely deposits, in the Depository Accounts or the Master Account, as hereafter defined, of all Collections which Manager receives, subject to the Bond Indenture requirements.

(iii)     The District shall provide disposition instructions to the Depository to transfer, at the end of each business day during the Operating Period, subject to the terms of the Bond Indenture, all amounts in the Depository Account (other than amounts required for payment of the Bonds) into a bank account controlled by Manager (the "Master Account"). Except for the transfers to the Master Account and Bond payments, the District shall not remove, disburse, transfer, use, pledge, hypothecate, grant a lien on or security interest in, or otherwise encumber any funds in the Depository Accounts or Master Account.

(iv)     The District shall execute such documents as any Depository or Manager may reasonably require, including without limitation, a limited power of attorney, to permit the Depository to receive the Collections, endorse any checks, drafts, notes, money orders, cash, insurance payments, and other instruments relating to such Collections, deposit the Collections into the Depository Account, and to transfer the Collections (less amounts precluded from transfer under the Bond Indenture) each day from the Depository Account into the Master Account. The District shall be responsible for all fees, costs and expenses incurred in connection with maintaining the Depository Account, including all fees, costs and expenses of a lockbox which may be deemed desirable and appropriate by Manager; provided, however if and to the extent permitted by applicable Law and the Bonds, at the request of Manager, the Collections or any part thereof, shall be deposited directly into the Master Account.

(v)     Manager is hereby authorized to make payment from the Master Account or other accounts of the District, including the Depository Account, to itself and its Affiliates of any amounts due to it or any of them by the District under this Agreement or otherwise, including, without limitation, the Management Fee, and the reimbursement of expenses and advances, and the District acknowledges that any amounts due to Manager or any of its Affiliates under this Agreement, including without limitation, any Management Fee, shall be of at least as senior a priority as, and shall not be subordinate to the payment of, any amount due to any other creditor of Company, unless otherwise agreed to in writing by Manager and paid as provided in Section 6(f).

(vi)     Manager shall have no liability or responsibility for any loss resulting from the insolvency, malfeasance or non-feasance of any Depository with respect to the District bank accounts.

(vii)     Manager shall have the right to make disbursements from the Master Account, the Depository Account and other the District bank accounts, on behalf of the District in such amounts and at such times as the same are required to operate the Hospital and the Clinics and Other Facilities, as provided in Section 4(l) and to pay the expenses and debts incurred in connection therewith. If the District fails to timely advance funds for to pay expenses, Manager shall have the right, in its sole and absolute discretion, but not the obligation, to advance such funds, as provided in Section 4(i)(i)(1).

(h)     Charges and Collections of Accounts.

(i)     Manager shall assist the District in billing and collecting for all fees payable with respect to all services, equipment, devices and supplies provided to patients and

15

clients at the Hospital and the Clinics and Other Facilities, including the enforcement of the rights of the Hospital and the Clinics and Other Facilities and/or the District as creditor under any contract or in connection with the rendering of any service in accordance with the District's charity care policies. All out-of-pocket costs and expenses relating to the billing and collection services, including without limitation, any fees or expenses payable to collection agencies, shall be for the account of the District.

(ii)     The District shall direct all third party payors to provide Manager with copies of all remittance advices in electronic format or in such other format as shall be agreeable to Manager.

(iii)     The District hereby irrevocably appoints Manager during the Operating Period as its true and lawful attorney-in-fact to take the following actions for and on behalf of and in the name of the District and agrees to execute the Limited Power of Attorney, attached hereto as **Exhibit D** and any other instrument reasonably requested by Manager to evidence such appointment to:

(1)     Bill patients and third party payors (including reimbursement or indemnification from insurance companies and plans, and other third party payors or fiscal intermediaries) in the name and provider number(s) of the District;

(2)     Collect in the name of the District from patients, insurance companies and all other third party payors (other than from Governmental Health Payers), all charges resulting from the provision of items and services rendered to patients of the Hospital and the Clinics and Other Facilities, and to collect capitated payments and all other charges, fees or salaries resulting from or related to the Operations, including but not limited to any and all incentive funds and funds from shared risk and bonus pools under any risk sharing arrangements wherein the District is the provider of medical services, in whole or in part;

(3)     Take possession of and endorse in the name of the District all cash, notes, checks, money orders, insurance payments, and any other instruments received as payment of accounts receivable for deposit into the Depository Account or Master Account or other account, as applicable;

(4)     Deposit all such Collections directly into the Depository Account or the Master Account, other than with respect to Governmental Health Payer receivables;

(5)     Deposit Governmental Health Payer receivables into the Governmental Depository Account;

(6)     Make withdrawals from the Depository Account and other the District accounts for such purposes as are consistent with the provisions of this Agreement and the Bond Indenture;

(7)     Place accounts for collection, settle and compromise claims, and institute legal action for the recovery of accounts; and

(8)     Execute all instruments or documents necessary or appropriate in connection with the above.

16

(iv)    With respect to Government Health Payer patients and clients, Manager shall bill the Governmental Health Payers for same in the name of and on behalf of the District.

(v)    At the District's expense, Manager shall be entitled to obtain the assistance of one or more billing and/or collection agencies to bill and/or collect sums due to the District, in accordance with the District's charity care policies and applicable Law, including, without limitation, Section 9007 of the Patient Protection and Affordable Care Act.

(vi)    Manager, on behalf of the District, may, in its name or in the name of the District, but in any event at the expense of the District, appeal or contest any action taken by any Governmental Authority against the District and/or the Operations, including, without limitation any overpayment claims, or contest by legal proceedings the validity of any Law adverse to the District and/or the Operations; provided, however, that if Manager pursues any such appeal or contest, or asserts any such legal proceeding, the District shall adequately secure and protect Manager from all loss, cost, damage or expense by bond or other means satisfactory to Manager if any action taken by any Governmental Authority against the District and/or the Operations related to such action could result in a loss, cost, damage, or expense to Manager.

(i)    <u>Payment of Expenses.</u>

(I)    Manager shall provide oversight of the District's funds in connection with the timely payment of the District's liabilities and other obligations. Manager shall review the payables of the District and shall cause payment thereof to be made from the Depository Account, the Master Account and / or from funds otherwise provided by the District. If the District fails to timely advance funds for such expenses, Manager shall have the right, in its sole discretion, but not the obligation, to advance such funds, as provided in <u>Section 4(i)(i)(1)</u>.

(ii)    The District hereby grants to Manager, to the extent permitted by applicable Law, throughout the Operating Period, an exclusive special power of attorney and appoints Manager, to the extent permitted by applicable Law, the District's exclusive true and lawful agent and attorney-in-fact, and Manager hereby accepts such special power of attorney and appointment, to: (i) sign checks, drafts, bank notes or other instruments on behalf of the District, (ii) make withdrawals from the Depository Account, the Master Account or other the District accounts for payments specified in this Agreement and (iii) designate, remove, and change such signatories on such accounts as Manager deems necessary or appropriate from time to time.

(iii)    Upon request of Manager, the District shall execute and deliver to any applicable financial institution such additional documents or instruments as Manager may reasonably request to evidence or effect the special power of attorney granted to Manager by the District pursuant to this Section. The special power of attorney granted herein is coupled with an interest and shall be irrevocable except with Manager's written consent.

(iv)    It is specifically agreed and understood, however, that Manager's obligations under this <u>Section 4</u> are subject to availability of the District funds to make such payments. Nothing contained herein shall obligate Manager to make any such payments from its own funds or resources or to advance any monies whatsoever to the District. If the District fails to timely advance funds, Manager shall have the right, in its sole and absolute discretion, but not the obligation, to advance such funds, as provided in <u>Section 4(i)(i)(1)</u>. Notwithstanding the foregoing, no advance of funds hereunder shall cure the District's default resulting from a failure to timely provide funds as required hereunder. Manager shall not be liable either primarily or as guarantor

for debts of the Hospital or the Clinics and Other Facilities, or the District under the terms of this Agreement. The District shall be responsible for payment of all legal fees and collection fees incurred by Manager if the District fails to pay its invoices timely.

    (j)    <u>Pledge of Credit</u>.

        (i)    Manager shall not engage in any financial lending, financing or banking actions that result in liens, mortgages, lines of credit, security interest or financial obligations in the name of the District, without the prior written consent of the Governing Body. Prior to requesting consent for approval, Manager shall provide a detailed proposal to the Governing Body describing the amount of required funding, the purpose of the financing, the strategic plan to generate sufficient revenue to repay such financing and all other alternatives evaluated to obtain sufficient funding.

        (1)    Notwithstanding anything in this Agreement to the contrary, in the event the District fails to timely advance funds as required hereunder and/or meet any of its payment obligations under this Agreement, Manager shall have the right, but not the obligation, in its sole and absolute discretion, to advance funds or agree to undertake to advance funds to any Person, as a loan to the District to meet the shortfall caused by the District's failure. Such advance of funds by Manager, however, shall not cure any default of the District as a result of its failure to timely provide funds. All sums advanced by Manager pursuant to such agreements or undertakings shall be for the District's account. The District shall pay Manager interest on all advanced funds at the rate set forth in <u>Section 6(e)</u> and the principal upon demand by Manager. Any advance made shall be evidenced by a promissory note issued by the District in an amount equal to the amount advanced.

        (2)    To the extent Manager advances funds, this Agreement constitutes a security agreement pursuant to which the District provides Manager with a lien on all of the District's assets, to the extent allowed by Law, and Manager shall have the right to file a Uniform Commercial Code financing statement with respect to such obligation without the signature of the District.

        (3)    Manager shall have the right to execute the above described promissory note on behalf of the District, to the extent permitted by Law. The District hereby irrevocably appoints Manager as its attorney-in-fact coupled with an interest with full power to prepare and execute any documents, instruments and agreements, including, but not limited to, any note evidencing the advance or loan and any Uniform Commercial Code financing statements, continuation statements and other security instruments as may be appropriate to perfect and continue its security interest in favor of Manager.

        (ii)    Except as provided in Section 4(j)(i), Manager shall not, under any circumstance, in the name of, or on behalf of, the District borrow any money or execute any promissory note, bill of exchange or other obligation, or dispose of any asset of the District not in the ordinary course of business, without the consent of the Governing Body; and only to the extent allowed by all applicable Law.

    (k)    <u>Information Technology</u>. Manager shall provide oversight of the Information technology activities associated with the Hospital and the Clinics and Other Facilities. Manager shall be responsible for oversight of the selection, negotiation, installation, and implementation of the information technology systems and structures at the Hospital and the Clinics and Other Facilities consistent with the Annual Budget. Manager shall seek approval from the Governing

18

Body of any new systems and/or termination of any existing agreements, which approval shall not be unreasonably withheld. The District shall be responsible for the direct expense of all hardware and software for the information technology activities of the Hospital and the Clinics and Other Facilities. The District shall be responsible for the cost of maintenance and support of all such hardware and software, as well as the training of Manager and the District employees, physicians and other applicable personnel on systems and software provided, however, that Manager shall not incur any expense in excess of $100,000 unless set forth in the approved Annual Budget or otherwise approved by the Governing Body. For avoidance of doubt, Manager shall not perform the information technology maintenance for the District under the terms of this Agreement. Rather, any such additional services if provided, will be provided by Manager pursuant to the terms of a separate written agreement in exchange for fair market value compensation, and in compliance with applicable Law.

(l)    Internal Audit. Manager shall provide oversight of the District's routine audits of internal procedures and systems, including auditing of billing, information systems, payroll, and other areas as identified and shall perform such internal audits as Manager, in its reasonable discretion, deems necessary for the purposes of providing its services hereunder. External audits, if requested by and performed for the District, shall be the responsibility of the District. All direct, out-of-pocket fees, expenses and charges incurred in connection with such external and internal audits shall be a the District expense. All internal and/or external audit expenses in excess of $100,000 shall be approved by the Governing Body, unless such expenses are set forth in the approved Annual Budget.

(m)    Managed Care Contracting. Manager shall provide recommendations regarding managed care contracts and rates, and assist the District in the negotiation and consummation of such contracts, and monitoring of contract effectiveness and compliance.

(n)    Operating Contracts.

(i)    Manager shall assist the District in negotiating and securing all third party Operating Contracts necessary or desirable for the proper and efficient management and operation of the Hospital and the Clinics and Other Facilities.

(ii)    Notwithstanding Section 4(i), Manager may enter into, or modify, supplement, amend, discharge, or terminate, or grant waivers or releases of obligations under such contracts, leases, licenses, instruments, and other agreements ("Operating Contracts") in the name of and at the expense of the District, as may be deemed necessary or advisable by Manager for the furnishing of all professional, consulting, and staffing services, concessions, drugs, supplies, utilities, equipment, property maintenance, insurance and other products, goods, and services as may be necessary or appropriate from time to time for the maintenance and operation of the Hospital and the Clinics and Other Facilities, or as may otherwise be necessary or appropriate to carry out Manager's obligations under this Agreement. Subject to the terms hereof, Manager is hereby expressly authorized, as the District's agent, to execute and deliver any of such Operating Contracts in the name of and on behalf of the District, and presentation of a copy of this Agreement shall constitute conclusive evidence of such agency; provided, however, that Manager is also authorized to enter into and maintain in its own name any national and regional contracts in which the District may participate, as well as such other contracts for the District which, in the judgment of Manager, are advisable to be entered into in Manager's name. Upon Manager's request, the District shall execute such agreements, contracts, leases, instruments, documents and other Agreements as Manager shall determine are desirable to facilitate the operation and management of the Hospital and the Clinics and Other Facilities. With respect to all cost and

19

expenses associated with Operating Contracts in Manager's name, the District shall reimburse Manager for all such costs and expenses and / or pay such costs and expenses directly, at Manager's discretion. Manager is expressly authorized to contract, in the name and on behalf of the District, for the provision by Manager or its Affiliates of any services to be provided with respect to the Operations.

(iii)    In the event of a termination of this Agreement which results in no further relationship between the District and Manager, Manager shall cause any contracts, including Operating Contracts, it has entered into in its own name to manage and operate the Hospital and the Clinics and Other Facilities pursuant to this Agreement for the benefit of the District to be assigned to the District and the District shall assume the obligations under all such agreements and shall indemnify Manager from and against any liability thereunder.

(iv)    All such Operating Contracts in excess of $1,000,000 shall be approved by the Governing Body, such consent not to be unreasonably delayed or denied, unless the items or services that are the subject of the Contract have been approved previously in the Annual Budget.

(v)    The expense of such third party contracts shall be a direct expense of the District. Manager shall not be obliged to pay for any the District purchases from its own funds nor shall Manager be obliged to guarantee, directly or indirectly, any debts of the Hospital or the District under the terms of any purchasing arrangement. If the District fails to timely pay amounts due under such arrangements, Manager shall have the right, in its sole discretion, but not the obligation, to advance the funds necessary to satisfy such obligations, as provided in Section 4(i)(i)(1).

(o)    Insurance. Manager shall consult with the District as to the type of insurance or self-insurance, amount of coverage thereunder, deductibles and/or self-insured retentions therefor, premiums therefor, and issuers thereof to be carried with respect to the Hospital and the Clinics and Other Facilities and the Operations. Approval of any change to the types or limits of insurance coverage for the District shall be made by the Governing Body. Manager shall use its commercially reasonable efforts to cause such insurance to be placed and kept in effect at all times; provided, however, the District shall, solely at its own expense, obtain and maintain in full force and effect throughout the Operating Period the following policies of insurance or self-insurance coverage:

(i)    Comprehensive general liability insurance, including personal injury and property damage liability insurance naming the District and Manager as insureds.

(ii)    Property and casualty insurance, including coverage for all Buildings and their contents, including boiler insurance naming the District and Manager as insureds.

(iii)    If deemed necessary by the District or Manager, comprehensive automobile liability insurance naming the District and Manager as insureds.

(iv)    Worker's compensation and employer's liability insurance and other similar insurance naming the District and Manager as insureds for the District's and Manager's employees.

(v)    Professional liability insurance covering all Operations and, to the extent available, directors and officers insurance, naming the District and Manager (and Manager's

20

executive employees) as named insureds. The professional liability insurance shall afford minimum protection (which may be effectuated through primary and/or excess coverage) of not less than $1,000,000.00 combined single limit for damage in any one occurrence and not less than $3,000,000.00 aggregate for all occurrences. The insurer must be licensed by the California Department of Insurance and have a general policyholders rating of not less than A-X or better by Best's Key Rating Guide and with a claims paying ability rating from S&P of at least AA or an equivalent rating from another rating agency acceptable to Manager. Manager may require that the District obtain from the insurer a statement as to good standing with the California Department of Insurance.

        (vi)    Commercial umbrella or excess liability coverage and, to the extent available, regulatory insurance coverage, covering all Operations, naming the District and Manager as named insureds. The commercial Umbrella and Excessive Liability Insurance shall afford minimum protection (which may be effectuated through primary and/or excess coverage) of not less than $1,000,000.00 combined single limit for damage in any one occurrence and not less than $3,000,000.00 aggregate for all occurrences, insuring Manager and the District and their respective employees and representatives in connection with Operations. The insurer must be licensed by the California Department of Insurance and have a general policyholders rating of not less than A-X or better by Best's Key Rating Guide and with a claims paying ability rating from S&P of at least AA or an equivalent rating from another rating agency acceptable to Manager. Manager may require that the District obtain from the insurer a statement as to good standing with the California Department of Insurance.

        (p)    <u>Insurance Specifications</u>. The foregoing insurance shall meet the following specifications:

        (i)    All such policies of insurance shall be in such amounts as are deemed necessary by the District and Manager (but in no event less than the amounts set forth above) and shall contain a waiver of rights of subrogation clause against Manager and the District, to the maximum extent permitted under applicable Laws. The parties and their respective Affiliates shall not assert against the others, and each does hereby waive with respect to the others, any claims for any losses, damages, liabilities or expenses (including attorneys' fees) incurred or sustained by any of them on account of damage or injury to Persons or property arising out of the ownership, operation and/or maintenance of the Hospital and the Clinics and Other Facilities, to the extent that the same would be covered and paid by the insurance required to be carried hereunder. The District shall present such policies of insurance to Manager for review, upon request by Manager.

        (ii)    The District shall cause Manager, and any Person affiliated with Manger, that Manager so directs, to be named as additional insureds on the liability insurance coverage described above and on any fidelity bond (if any). It is the intention of the parties that the insurance and bonds (if any) maintained by the District with respect to the Operations shall protect both the District and Manager and will be primary insurance for both parties for any and all losses covered thereby.

        (iii)    Certificates of insurance for the above coverages and a copy of the bond (if any) and accompanying endorsement naming Manager and/or Manager's employees (specifying his/her position), as applicable, shall be provided to Manager within thirty (30) days of the Effective Date and thereafter within thirty (30) days (i) of policy or bond (if any) renewal or replacement and (ii) of a request by Manager. All such policies shall provide that the subject policy may not be canceled, modified or reduced (including, without limitation, any amendment that would

21

reduce the scope or limit coverage or remove any endorsement to such policy or cause the same to no longer be in full force and effect) except upon not less than thirty (30) days prior written notice to Manager. Originals of each renewal policy or certificates therefore from the insurers evidencing the existence thereof shall be provided to Manager at least thirty (30) days prior to, but not later than, the expiration or termination dates of the applicable policy. In addition, the District shall notify Manager in writing of any reduction or cancellation, increase of deductible or material modification of any term or condition of any of insurance coverage required herein within twenty-four (24) hours of receipt.

(iv)    Manager reserves the right to procure, at the District's cost, any or all of the foregoing required insurance coverage, if the District fails or refuses to do so, or if Manager in its sole discretion determines that Manager's procuring of such insurance is most efficient and/or in the financial benefit of Manager and/or the District. Manager is not required to act under this Section 4(p) and shall not be liable for its failure to effect or maintain recommended insurance upon the District's failure to do so.

(v)    Manager may obtain similar coverages for its benefit by taking out policies with such insurance companies as may be selected by Manager. Notwithstanding anything herein to the contrary, any insurance obtained by Manager hereunder may, at Manager's election, cover only Manager's interest. All direct, out-of-pocket fees, expenses and charges incurred in connection with obtaining such insurance shall be the District expenses, even if the insurance protects only Manager's interests.

(vi)    If, during the Operating Period, the District is covered by general liability, professional liability, or other liability insurance on a "claims made" basis, then at least ten (10) days before the termination of this Agreement, the District shall procure and maintain, at the District's sole cost and expense, an extended reporting endorsement or "tail" insurance coverage for a period of at least four (4) years after the termination date of this Agreement, with coverage limits and deductible amounts equivalent to those required hereunder on the date immediately preceding the termination of this Agreement for such coverage for general, professional and other liability claims reported after the termination of this Agreement but concerning services provided during the Operating Period or the term of the claims made policy. The District shall provide Manager with a certificate evidencing such coverage no later than ten (10) days before the termination of this Agreement. The District shall be named as the primary insured party on each policy of tail insurance and Manager shall be named as an additional insured. This Section will survive the termination or expiration of the Agreement.

(vii)    To the extent any insurance is placed through a self-insurance program or captive insurance program, the District shall assure that such insurance shall comply with all applicable Law, if such self-insurance or captive program is domiciled outside the United States, and the District shall assure that such coverage shall be, as appropriate, reinsured by reinsurers acceptable to Manager, in Manager's sole and absolute discretion.

(q)    Purchasing.

(i)    Manager shall be responsible for the oversight and management of the District's purchasing systems and procedures for the Operations at the supervisory / management level, including but not limited to oversight of:

(1)    Capital purchasing;

22

(2)    Researching and negotiating equipment based on Hospital and the Clinics and Other Facilities' needs, specifications, and the Annual Budget;

(3)    Reviewing oversight of inventory par levels (monthly audits); and/or

(4)    Department purchasing structures and systems.

(ii)    The District shall be responsible for the direct expense of all purchases and for all purchasing expenses, including but not limited to utilities, concessions, drugs, equipment, supplies, furniture or furnishings, inventory items, linens, machinery, medicines, and services.

(iii)    In furtherance of the foregoing, all capital and other expenditures made shall be subject to the purchasing and procurement policies and procedures of the District, its Bylaws, and applicable Law.

(r)    Marketing and Communications.

(i)    Manager shall provide consultation, advice and oversight related to marketing, advertising, and promotional issues, as well as marketing strategies and policies, as it deems necessary in its sole and absolute discretion.

(ii)    Manager shall:

(1)    Provide direction and advice regarding the marketing program for the Hospital and the Clinics and Other Facilities which shall be reasonably designed to inform and educate health care professionals and the general public served by the District of the existence of one or more of the services offered by the District.

(2)    Cause, to the extent required by applicable Law, including Internal Revenue Code §501(r), a community needs health assessment to be prepared identifying the health and welfare needs of the residents who reside in the communities served by the District, and propose an implementation strategy to meet the outstanding community health needs identified in the assessment.

(3)    Cause to be prepared and distributed such descriptive booklets, brochures or pamphlets as Manager determines are necessary, in its sole and absolute discretion, to inform health care professionals and members of the public of the nature and requirements of State and Federal reimbursement programs for patients and how the same relate to the services offered at the District.

(iii)    All direct, out-of-pocket fees, expenses and charges incurred in connection with marketing, advertising, and promotional activities shall be at the sole cost and expense of the District.

(s)    Medical Records.

(i)    Manager shall be responsible for the oversight of the District's medical records activities at director and executive levels, including development of department strategies and systems and planning.

(ii)      During and following the expiration of the Operating Period, all records of the District shall remain the property of the District.

(iii)      All patient medical records shall be treated as confidential so as to comply with all applicable Laws regarding the confidentiality of patient records, including, without limitation, the privacy standards promulgated under HIPAA.

(iv)      Manager shall be a "Business Associate" of the District, as that term is defined in the regulations implementing HIPAA, and Manager's use of "Protected Health Information," as that term is defined in the regulations implementing HIPAA ("PHI"). Manager shall execute and comply with the Business Associate Agreement previously executed by the parties.

(v)      Manager shall notify the District of any data breach that may occur at the Hospital and the Clinics and Other Facilities, promptly after Manager becomes aware of same.

(t)      Additional Reports. Manager agrees to prepare, cause to be prepared or otherwise make available reports regarding the Operations as follows:

(i)      Within forty-five (45) days after the end of each fiscal quarter, Manager shall make available to the District the following information:

(1)      Relevant utilization statistics for the District for the prior quarter, including but not limited to patient volume and payor mix; and

(2)      Financial statements and budget analysis for the District for the prior quarter, as provided in Section 7(c).

(ii)      Manager shall provide to the Governing Body, on at least thirty (30) calendar days' notice, or sooner if necessary, to implement such required action, a description of any needed or discontinued services, refinancing proposals, expansion plans or material changes in operating procedures. The proposal shall explain the reasons for the proposed activity.

(u)      Agency. Subject to (i) approval of the Governing Body for acts outside of the ordinary course of the Hospital and the Clinics and Other Facilities' businesses, and (ii) the terms hereof, Manager shall have the right to act as the agent of the District and/or the Hospital and the Clinics and Other Facilities in the procuring of licenses, permits and other approvals, the payment and collection of accounts and in all other activities necessary or appropriate or useful to Manager in the carrying out of its duties as specified herein.

(v)      Construction Project Advice.

(i)      Manager shall provide the District with advice and recommendations regarding the current Hospital construction project (involving the construction of a new tower commonly referred to as the Tower No. 1 Expansion Project (the "Project")) and will assist the District in its coordination of the Project. Any Consultants engaged by Manager in this regard shall be compensated as provided in Section 4(b)(xii). Manager shall not be a contractor on the Project and shall not have control over, charge of or responsibility for, the means, methods, techniques, sequences, procedures, or for the safety precautions and programs related to such Project. Manager shall not have control over or be responsible for the District's architects or contractors or their agents, nor shall Manager be deemed to be responsible for the construction of the Project, directly or indirectly or the funding of such Project.

(ii)     Manager shall provide consultation and advice, and shall assist the District in the District's efforts to discharge all of the field operations requirements and responsibilities of the District as the owner of the Project as required under the construction contracts between the District and its contractors (the "**Contract Documents**") and to cause the District's contractors to perform the work required to construct the Project in accordance with the Contract Documents.  In this regard, Manager shall provide recommendations to the District to assist in its evaluation of the status of the on-going construction associated with the Project. Manager shall provide on-site administration of the Contract Documents in cooperation with the Project architect. Manager shall provide assistance, including administrative, management and related services, to coordinate scheduled activities and responsibilities of the contractors, and Manager shall schedule and conduct meetings to discuss such matters as procedures, progress, coordination, and scheduling of the Project work.

(iii)     Manager shall endeavor to obtain satisfactory performance from the District's contractors, but shall have no liability for any failure of performance by any of such contractors.  Manager shall have no liability for any design defect or other matter which is the responsibility of the Project architect.  Manager shall recommend courses of action to the District when requirements of the Contract Documents are not being fulfilled.  Manager shall report to the District any defects or deficiencies in the work of any contractor or their agents or employees, or any other Person performing construction on or providing materials or equipment to the Project of which Manager obtains actual knowledge.  Notwithstanding the foregoing, Manager shall have no obligation to investigate or take active steps to determine the existence of any such defects or deficiencies, nor shall Manager be liable, for any failure to timely communicate any such defect or deficiency to the District.  Manager may recommend the rejection of any deficient or defective work to the District, if such work does not conform to the Contract Documents; however, the failure of Manager to recommend rejection of any such work shall not constitute Manager's approval or acceptance of the work.

(iv)     Manager shall review requests for changes in the construction contracts, assist in negotiating contractors' proposals, and provide recommendations to the Project architect and the District in connection therewith.

(v)     Manager shall monitor and evaluate actual costs for the construction work, and estimates for uncompleted work, and shall advise the District as to variances between actual and budgeted or estimated costs. Manager shall notify the District if there are any apparent inconsistencies or inaccuracies in the information presented by the District's contractors. Manager shall also report the contractors' cost control information to the District.

(vi)     Manager shall assist the District in developing and implementing procedures for the review and processing of applications for payment from the contractors for progress and final payments.

(vii)     Manager shall record the progress of the Project.  On a monthly basis or otherwise as requested by the District, Manager shall submit written or oral progress reports to the District and attend monthly Governing Body meetings requested by the District.

(viii)     Manager shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for safety precautions or programs in connection with the work of any contractors.

(ix)     Manager shall make recommendations if it determines that Consultants are reasonably required for the Project, and shall assist the District in selecting and engaging such Consultants. Manager shall supervise and coordinate Project Consultants.

(x)     Limitations.

(1)     Manager has no authority to execute any Contract Documents or otherwise bind the District to any transactions with respect to the Project construction. Manager shall not provide any legal services or architectural services with respect to the Project. The District agrees that although Manager will make recommendations, Manager shall not take any action in connection with the implementation of such recommendations without the District's prior approval.

(2)     The District will at all times maintain a meaningful and substantial involvement in all phases of the Project, and hereby accepts responsibility for the results of the Project. Manager's recommendations concerning terms of the Construction Contracts shall be subject to review and approval of the District and the District's attorneys or other advisers.

(3)     The District acknowledges that Manager does not guarantee any particular results, notwithstanding projections which may be made by Manager. Manager's projections and forward looking statements are based on estimates and expectations, and reasonably available data from contractors, architects and others, and as a result are inherently uncertain. Actual results could differ materially from those anticipated as a result of a variety of factors.

(4)     Neither Manager nor Manager Parties shall be liable to the District for any claims, demands, costs, expenses, liabilities or obligations of any nature relating to the Project, ("**Claims**"), except to the extent resulting from the willful misconduct of Manager or Manager Parties. Manager and Manager Parties may be liable to the District for general and direct damages, but in no event shall Manager or any Manager Parties be liable to the District for any consequential damages, including loss of use, special, indirect or incidental damages. Manager and Manager Parties may be liable for punitive or exemplary damages to the extent resulting from their willful misconduct.

(5)     The District shall defend, indemnify and hold Manager and Manager Parties free and harmless from and against all Claims (including reasonable attorney's fees), except to the extent resulting from the willful misconduct of Manager or Manager Parties. It is understood and agreed that, Manager and Manager Parties shall have no liability whatsoever for any actions or failure to act which arose prior to January 10, 2014, including Claims which relate in any way to construction activities which occurred prior to that date ("**Pre-existing Claims**"). In the event that any Claims are made against Manager or any Manager Party which may include Pre-existing Claims, then the indemnification and defense obligations of the District shall apply, even if they also involve Claims which are not Pre-existing Claims. However, in the event of a determination by a court or arbitrator that any Claims for which indemnification was provided by the District were not in fact Pre-Existing Claims and were not Claims for which indemnification is otherwise required hereunder, then Manager shall be liable to reimburse the District for any reasonable costs or expenses incurred by the District in connection with the defense or indemnification.

26

(6)      In circumstances where any limitation on damages or indemnification provision hereunder is unenforceable or unavailable for any reason, the District shall contribute to any Claims, relating to the Services provided hereunder by Manager, in such proportion proportional to the relative fault of the parties bears to all other conduct giving rise to such Claim.

(7)      Neither Manager nor any Manager Parties, or any of their respective Affiliates, shall have any liability hereunder to the District, and the District agrees it will not bring any action against any such Persons, except to the extent caused by the willful misconduct of such Persons. Without limiting the foregoing, such Affiliates are intended third-party beneficiaries of these terms and may in their own right enforce such terms.

(8)      The provisions of Section 4(v)(x)(4)-(7) shall survive the expiration or termination of this Agreement.

5.      Legal Compliance.

(a)      Compliance Plan. Manager has received a copy of the District's Compliance Policies and Procedures, including the Code of Conduct and the Physician Referral, Stark Law, and Anti-Kickback policies and procedures together with a copy of the District's Corporate Integrity Agreement with the HHS Office of Inspector General dated July 20, 2009 (the "CIA"). Manager shall abide by these policies and procedures and applicable Law. Any recommendations and/or revisions of such policies made by Manager must be approved by the Governing Body. Manager will be given prompt written notice of any changes made to the foregoing. Manager may develop and recommend changes to the District's existing Compliance Plan (the "Compliance Plan") for implementation during the Operating Period. Any such recommendations and/or revisions to the Compliance Plan must be approved by the Governing Body. Manager shall use its commercially reasonable efforts to support the Compliance Plan. All costs of developing, implementing and maintaining the Compliance Plan shall be borne by the District.

(b)      Government Regulations. On behalf of the District, Manager shall, subject to the limitations set forth herein, use its reasonable commercial efforts to help assure that: (1) the District continuously complies with all material applicable Laws, including without limitation, Hospital Law, State and Federal False Claims Act, Civil Monetary Penalty Law, State and Federal Anti-Kickback statutes, State and Federal self-referral prohibitions and applicable Medicare conditions of coverage and/or participation and (2) the District retains and maintains in good standing all necessary accreditations, licenses, permits, approvals and authorizations required for the ongoing operation of the Hospital and the Clinics and Other Facilities.

(c)      Accreditation Compliance. Manager shall, subject to the limitations set forth herein, take all steps necessary to assist the District to continue meeting the applicable accreditation agency's accreditation standards, as they exist or may be changed from time-to-time, and as may be applicable to the Hospital and the Clinics and Other Facilities' then current accreditation(s). Manager shall have the right to select and/or change the applicable accreditation agency for the Hospital, and if applicable, the Clinics and Other Facilities, in its sole and absolute discretion.

(d)      Licensure. Manager shall not act in a manner which adversely affects the licensure of the District by the State as a Medicare participating acute care hospital (or any other Medicare reimbursement designation as may be agreed to by the parties). Within thirty (30) days of receipt by the District or Manager of any final report or written assessment concerning the

licensure of the District by the State as an acute care hospital or the accreditation of the District, Manager shall furnish a copy of such report to the District.

(e)     HIPAA Compliance.  Manager shall comply with the applicable provisions of the Administrative Simplification and Privacy Rules of the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations promulgated pursuant thereto, and any related or applicable privacy Law regarding medical information and protected health information.

(f)     Ineligible Persons - Disclosure Obligation.  Manager shall use reasonable commercial efforts to monitor that none of Manager's or the District's employees employed at the Hospital and the Clinics and Other Facilities have been sanctioned, debarred or suspended or otherwise deemed ineligible to participate in Medicare, Medicaid or other Federal health care programs, and procurement, or non-procurement programs (collectively, an "**Ineligible Person**"). Manager represents to the District that Manager is not an Ineligible Person nor has any pending proceedings or received notice of any action or proceeding to exclude, debar, suspend, or otherwise declare Manager ineligible under any federally funded health program.  Manager shall notify the District within three (3) business days after becoming aware of any fact or circumstance that would make Manager an Ineligible Person.

(g)     Access to Records.  Manager shall, in accordance with Section 1395x(v)(1) of Title 42 United States Code until the expiration of four (4) years, or longer as may be required by applicable Law, after the termination of this Agreement, make available upon written request to the Secretary of the United States Department of Health and Human Services, or, upon request, to the Comptroller General of the United States Accounting Office, or any of their duly authorized representatives, a copy of this Agreement and such books, documents and records as are necessary to verify the nature and extent of the costs of the services provided by Manager under this Agreement.  Manager further agrees that in the event Manager carries out any duties under this Agreement through a subcontract with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve-month period with a related organization, such agreement shall contain a clause to the effect that until expiration of four (4) years, or longer as may be required by Law, after the furnishing of such services pursuant to such subcontract, the related organization shall make available upon written request to the Secretary of the United States Department of Health and Human Services, or, upon request, to the Comptroller General of the United States Accounting Office, or any of their duly authorized representatives, a copy of such contract and such books, documents and records of such organizations as are necessary to verify the nature and extent of such costs.  This Section is included pursuant to and is governed by the requirements of federal Law.  No attorney-client, accountant-client, or other legal privilege will be deemed to have been waived by the parties or any of the parties' representatives by virtue of this Agreement.

(h)     No Obligation to Refer Patients.  Nothing contained in this Agreement shall require (directly or indirectly, explicitly or implicitly) either Manager or its Affiliates or the District or its Affiliates, to refer any patients to one another or to use the Hospital or the Clinics or Other Facilities as a precondition to receiving the benefits set forth herein.

6.     **Management Fee.**

(a)     Management Fee.    As Manager's fee for the performance of the management services under this Agreement, Manager shall receive monthly (in advance on the first day of each month) a fee (the "**Management Fee**") in the amount of Two Hundred Twenty Five Thousand Dollars ($225,000).  Effective as of each January 1st, commencing January 1, 2015, the Management Fee shall be increased as provided in Section 6(b).

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY/GUIDELINE MANUAL

up a payment plan within 150 days of service or the account will be assigned to a third party billing agency at full billed charges upon 150 days after initial billing.

7. Written notification of determination of eligibility or non-eligibility for financial assistance will be forwarded to the applicant by the Director of Patient Access / or designee, within 30 days of receipt of the Financial Profile.

8. Patients or guarantors have the right to appeal a non-eligible decision within 30 days of the denial letter. Appeals will be forwarded to the Director of Patient Access / or designee who will decide to uphold or overturn the original decision within 15 days.

9. An emergency physician as defined in AB 774, Section 127450, who provides emergency medical services in a hospital that provides emergency care is also required by to provide discounts to uninsured patients or patients with high medical costs who are at or below 350% of the federal poverty level.

10. Tulare Regional Medical will comply with OSHPD reporting requirements including the following information:

   a. Submission of charity care and discount policies
   b. Submission of eligibility procedures for charity care and discount payment
   c. Submission of review procedures for charity care and discount payment
   d. Submission of the application used for charity care and discount payment

## Charity Care Qualifications & Calculations

1. Financial obligations not eligible for consideration are those whose injury is a compensable injury for the purposes of workers' compensation or auto insurance. Further, not all services are eligible for charity care. Elective services are not eligible. Special consideration may be made by the Director of Patient Access /or designee, Chief Financial Officer, or Chief Executive Officer.

2. A patient may qualify for financial assistance prior to admission, after admission, or after discharge. Written price estimates are available prior to service for inpatient and outpatient services with the exception of emergency services. Every attempt will be made to identify all available funding sources prior to or at time of visit. If a funding source cannot be identified after full compliance by the patient or guarantor, financial assistance will be considered. The hospital contact information for financial assistance is listed on the Financial Assistance application.

3. A financial assistance application, provided by TRMC Hospital staff, must be completed with the assistance of a Financial Counselor or by completing, signing and returning it to Tulare Regional Medical Center Admitting Department. This document must be completed within 30 – 60 calendar days from date of discharge. The application shall remain valid for services rendered within a 180 day period or upon a new admission to the hospital. The financial assessment will include a



EXHIBIT A-1
Page 30 Of- 71

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY/GUIDELINE MANUAL

review of the family's gross income, number of family members, outstanding balances of the medical bills, and assets when appropriate. Copies of prior year tax return (preferred documentation) or current pay stubs will be needed to verify income information. Other documents proving status of assets may be required. The information contained in the financial application will not be used in collection efforts.

4. For purposes of determining family size, the following guidelines will be used.
   a. For patients 18 years of age and older, patient's family includes spouse, domestic partner and dependent children under 21 years of age whether living at home or not.
   b. For patients under 18 years of age, patient's family includes parents, caretaker relatives and other children under 21 years of age of the parent or caretaker relative.

5. Financial assistance information is available from Tulare Regional Medical Center through various means, including the publication of notices in patient bills and by posting notices in high volume areas such as the Emergency Department, Clinics, Admitting, and other places as Tulare Regional Medical Center may elect. Such information shall be provided in English and Spanish, and will be translated for patients/guarantors who speak other languages.

6. Any patient account recommended for partial or total financial assistance, after meeting the guidelines set forth in this policy, requires the Director of Patient Access / or designee to prepare all the patient documentation. The following approval process applies:

   a. $0-$25,000- Patient Access Director
   b. Over $25,001- Chief Financial Officer

7. Tulare Regional Medical Center will assign any financial obligation to a debt collector after 150 calendar days from date of discharge of non-payment of an established payment plan or 30 calendar days of non-payment on an account where the patient guarantor is not in process with an eligibility application for a government sponsored insurance program or is attempting in good faith to settle an outstanding bill.

8. Interest or finance charges will not be added to any account that has been approved for Financial Assistance.

9. The financial assistance policy shall also include an extended payment plan to allow payment of the discounted price over time. The hospital and patient will negotiate terms of the payment plan. If the patient fails to make payments for a period of 90 days, the payment plan will be considered inoperative and TRMC will inform the patient via phone call and written correspondence that the payment plan has terminated and the account may be forwarded to collections.

EXHIBIT A

Page 31 Of 79

TULARE LOCAL HEALTH CARE DISTRICT
dba TULARE REGIONAL MEDICAL CENTER

POLICY/GUIDELINE MANUAL

10. In the course of debt collection involving low-income uninsured patients who are at or below 350% of the Federal Poverty Level, Tulare Regional Medical Center will follow all guidelines established by AB 774. This provision will not preclude Tulare Regional Medical Center from pursuing reimbursement from third party liability settlements.

11. A patient deemed homeless will qualify for presumptive eligibility. To be deemed homeless, the individual must not have a fixed, regular, and adequate nighttime residence or has a primary nighttime residence that is a supervisor publicly or privately operated shelter.

12. All documentation will be maintained by Patient Access Services in accordance with regulatory guidelines.

13. Tulare Regional Medical Center Home Care and Retail Pharmacy will use best efforts to follow the hospital's approved charity care policy. Separate or additional applications to be completed by the patient/family will not be required. Referral will be made to use the Hospital's financial information.

14. This policy does not apply to professional services provided to Hospital patients by physicians or other medical providers including but not limited to Radiology, Anesthesiology, Pathology other than Emergency Room services as required by AB774, Section 127450.

Questions concerning any aspect of this policy/guideline should be referred to Patient Access or Administration.

This policy/guideline replaces and supersedes all previous policies/guidelines concerning this matter and is effective immediately.

| | |
|---|---|
| Descriptive Name: | Financial Assistance (Charity Care) Program |
| Descriptive Type: | New Policy |
| Document Number: | 11-3028 |
| Attachments: | None |
| Author: | Karan Levering, Director, Patient Access (First Source) in conjunction with the Chief Financial Officer, TRMC |
| Typist: | Karan Levering |
| Creation Date: | 04/15/12 |
| Prev. Dist. Date: | None |

| Committee Review and Approval: | Approval Date: | Comments: |
|---|---|---|
| Board of Directors | 07/25/12 | |

| | |
|---|---|
| Effective Date: | 07/26/12 |
| Forward To: | Policy Binders – (PBX and Administration) and Post to Intranet Site |
| Disposition: | Copy and Distribution - Administration |
| Comments: | **Policy replaces 11-1002 Charity Care Program** |

EXHIBIT F
LONG TERM OPERATING AGREEMENT

See attached

Exhibit F

# EXHIBIT C

JOINT OPERATING AGREEMENT

[Attached]

# Interim Joint Operating Agreement

## between

## HealthCare Conglomerate Associates, LLC

## and

## Tulare Regional Medical Center

MAY 29, 2014

EXHIBIT A1
Page 3e Of 79

**EXHIBIT A**
**HOSPITAL**

869 N Cherry St, Tulare, CA 93274



Exhibit A



The parties acknowledge that the foregoing description and maps do not represent all of the real property associated with the Hospital which is owned by the District. The District hereby grants HCCA the right to amend and/or supplement this exhibit to properly describe the real estate associated with the Hospital, from time to time.

Exhibit A

**EXHIBIT B**
**CLINICS AND OTHER FACILITIES**

Evolutions Fitness & Wellness
1425 E. Prosperity Avenue
Tulare CA

Family X-Ray Center
880 E. Merritt Ave
Tulare, CA 93274

Hillman Healthcare Center - 1062 South K Street Tulare, CA. 93274

Kingsburg Healthcare Center - 1200 Smith Street Kingsburg, CA. 93631

Lindsay Healthcare Center - 845 N Sequoia Ave Lindsay, CA. 93247

West Street Healthcare Center - 325 N West Street Tulare, CA. 93274

Woodville Healthcare Center - 16796 Ave 168 Woodville, CA. 93257

Allied Services Center
    Tulare Regional Medical Center Clinical Laboratory
    Allied Services Building
    869 N. Cherry
    Tulare, CA 93274

    Tulare Regional Laboratory - Alternate Collection Site
    799 Cherry Street
    Tulare, CA 93274

    Mineral King Toxicology Laboratory
    880 E. Merritt, Suite 107
    Tulare, CA 93274

Retail Pharmacy
    Tulare District Hospital Pharmacy
    869 N Cherry St
    Tulare, CA 93274

Together with such other facilities and clinics as are owned, leased or otherwise
operated by District that HCCA elects to operate hereunder, by notice to District
from time to time.

Exhibit B

**EXHIBIT C**
**CONTRACTS**

Contracts shall include all Contracts that relate to the Operations as of the Effective Date. HCCA shall supplement this Exhibit within thirty (30) days following the Effective Date.

Exhibit C

## EXHIBIT D
## ASSUMED CONTRACTS

HCCA shall provide the information for this Exhibit within thirty (30) days following the Effective Date.

Exhibit D

**EXHIBIT E**
**CHARITABLE POLICIES OF THE HOSPITAL**

The District's Charity policy as in effect on May 1, 2014. The Charity Policy shall include the foregoing Charity Policy together with any changes thereto as mutually agreed to by the parties prior to the Effective Date pursuant to the terms of the MSA.

Exhibit E

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY / GUIDELINE

TO:          All Departments

FROM:      Administration

SUBJECT:  Financial Assistance (Charity Care) Program

## PURPOSE:

The mission of Tulare Regional Medical Center California is to provide safe, efficient, technologically advanced healthcare with the respect for the diversity of our region. Assembly Bill 774 (AB 774) became effective January 1, 2007. The law mandates that as a condition of obtaining or holding an acute care hospital license, Hospitals must limit bills to the uninsured with family incomes at or below 350% of the Federal Poverty Level (FPL) and individuals with high cost medical bills compared to their family income. Bills are limited to the higher of the government reimbursement rates for comparable health services. This policy complies with the requirements of AB 774.

## PROCEDURE:

Who is financially eligible?

Non-Insured Patients:
1. No third party insurance
2. No Medicare/Medi-Cal
3. No Workers Compensation
4. No Auto Insurance (medical portion for third party liability)
5. Family income at or below 350% of Federal Poverty Level (FPL)

Insured Patients with Patient Responsibility:

1. Family income at or below 350% FPL
2. Financial assistance is available for patients whose out of pocket expenses exceed 10% of family income in the prior 12 month period.
3. Special consideration may be made for patients with out of pocket expenses less than 10% of family income in the prior 12 month period.

---

Effective Date: 07/26/12                    (11)      Fiscal & Business
                                                      Patient Accounting:
APPROVED:                                             Financial Assistance (Charity Care)
                                                      Program
Board Of Directors: 07/25/12                          11-3028

EXHIBIT  A1
Page 43 Of 79

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY/GUIDELINE MANUAL

1. Eligibility for financial assistance will be considered for all patients who meet the above criteria. The granting of financial assistance shall be based on an individualized determination of financial need and shall not take into account age, gender, race, socio-economic or immigrant status, sexual orientation, or religious affiliation.

2. Tulare Regional Medical Center recognizes that there may be unusual or extenuating financial circumstances which may exceed the specific criteria as established in this policy and warrant special consideration. In such cases, a description of the unusual circumstances should be forwarded by Hospital staff to the Director of Patient Access / or designee for review and then forward to the Chief Financial Officer who will make the final determination as to the amount, if any, of financial assistance allowance to be granted.

3. Tulare Regional Medical Center recognizes that the financial status of patients may change over time. Hospital personnel will actively assist families in securing eligibility for any program with the cooperation of patients and their families. Services for dates of service prior to discharge date of January 1, 2007 are not considered under this policy.

4. The Director of Patient Access /or designee will review all applications to determine eligibility for financial assistance. Reasonable efforts will be made to verify financial data. All financial information provided will be considered confidential and staff will respect each circumstance with dignity.

5. The Director of Patient Access or designee will use the following table to determine the amount of financial assistance. This schedule will be maintained and updated annually by the Patient Access Director or designee.

| Federal Poverty Level | Charity Care Allowance [write off] | |
|---|---|---|
| | Inpatient | Outpatient |
| a. Less than 200% | 100% | 100% |
| b. 201-250% | 90% | 95% |
| c. 251-300% | 80% | 90% |
| d. 301 - 350% | 75% | 87% |

   e. Any other type of discount not adhering to the above schedule is not considered a Financial Assistance Discount and will follow the terms and conditions set forth in the Discount Policy.

   f. In all cases Tulare Regional Medical Center will not collect more than the average reimbursement of its government payers which includes but is not limited to Medicare, Medi-Cal, and Healthy Family Programs.

6. Patient guarantors must complete a financial assistance application, be in process with an eligibility application for a government sponsored insurance program or set



EXHIBIT A1
Page 44 Of 79

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY/GUIDELINE MANUAL

up a payment plan within 150 days of service or the account will be assigned to a third party billing agency at full billed charges upon 150 days after initial billing.

7. Written notification of determination of eligibility or non-eligibility for financial assistance will be forwarded to the applicant by the Director of Patient Access / or designee, within 30 days of receipt of the Financial Profile.

8. Patients or guarantors have the right to appeal a non-eligible decision within 30 days of the denial letter. Appeals will be forwarded to the Director of Patient Access / or designee who will decide to uphold or overturn the original decision within 15 days.

9. An emergency physician as defined in AB 774, Section 127450, who provides emergency medical services in a hospital that provides emergency care is also required by to provide discounts to uninsured patients or patients with high medical costs who are at or below 350% of the federal poverty level.

10. Tulare Regional Medical will comply with OSHPD reporting requirements including the following information:

    a. Submission of charity care and discount policies
    b. Submission of eligibility procedures for charity care and discount payment
    c. Submission of review procedures for charity care and discount payment
    d. Submission of the application used for charity care and discount payment

### Charity Care Qualifications & Calculations

1. Financial obligations not eligible for consideration are those whose injury is a compensable injury for the purposes of workers' compensation or auto insurance. Further, not all services are eligible for charity care. <u>Elective services are not eligible</u>. Special consideration may be made by the Director of Patient Access /or designee, Chief Financial Officer, or Chief Executive Officer.

2. A patient may qualify for financial assistance prior to admission, after admission, or after discharge. Written price estimates are available prior to service for inpatient and outpatient services with the exception of emergency services. Every attempt will be made to identify all available funding sources prior to or at time of visit. If a funding source cannot be identified after full compliance by the patient or guarantor, financial assistance will be considered. The hospital contact information for financial assistance is listed on the Financial Assistance application.

3. A financial assistance application, provided by TRMC Hospital staff, must be completed with the assistance of a Financial Counselor or by completing, signing and returning it to Tulare Regional Medical Center Admitting Department. This document must be completed within 30 - 60 calendar days from date of discharge. The application shall remain valid for services rendered within a 180 day period or upon a new admission to the hospital. The financial assessment will include a



EXHIBIT A1
Page 45 Of 71

TULARE LOCAL HEALTH CARE DISTRICT
dba TULARE REGIONAL MEDICAL CENTER

POLICY/GUIDELINE MANUAL

review of the family's gross income, number of family members, outstanding balances of the medical bills, and assets when appropriate. Copies of prior year tax return (preferred documentation) or current pay stubs will be needed to verify income information. Other documents proving status of assets may be required. The information contained in the financial application will not be used in collection efforts.

4. For purposes of determining family size, the following guidelines will be used.
    a. For patients 18 years of age and older, patient's family includes spouse, domestic partner and dependent children under 21 years of age whether living at home or not.
    b. For patients under 18 years of age, patient's family includes parents, caretaker relatives and other children under 21 years of age of the parent or caretaker relative.

5. Financial assistance information is available from Tulare Regional Medical Center through various means, including the publication of notices in patient bills and by posting notices in high volume areas such as the Emergency Department, Clinics, Admitting, and other places as Tulare Regional Medical Center may elect. Such information shall be provided in English and Spanish, and will be translated for patients/guarantors who speak other languages.

6. Any patient account recommended for partial or total financial assistance, after meeting the guidelines set forth in this policy, requires the Director of Patient Access / or designee to prepare all the patient documentation. The following approval process applies:

    a. $0-$25,000- Patient Access Director
    b. Over $25,001- Chief Financial Officer

7. Tulare Regional Medical Center will assign any financial obligation to a debt collector after 150 calendar days from date of discharge of non-payment of an established payment plan or 30 calendar days of non-payment on an account where the patient guarantor is not in process with an eligibility application for a government sponsored insurance program or is attempting in good faith to settle an outstanding bill.

8. Interest or finance charges will not be added to any account that has been approved for Financial Assistance.

9. The financial assistance policy shall also include an extended payment plan to allow payment of the discounted price over time. The hospital and patient will negotiate terms of the payment plan. If the patient fails to make payments for a period of 90 days, the payment plan will be considered inoperative and TRMC will inform the patient via phone call and written correspondence that the payment plan has terminated and the account may be forwarded to collections.

EXHIBIT A-1
Page 44 of 79

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY/GUIDELINE MANUAL

10. In the course of debt collection involving low-income uninsured patients who are at or below 350% of the Federal Poverty Level, Tulare Regional Medical Center will follow all guidelines established by AB 774. This provision will not preclude Tulare Regional Medical Center from pursuing reimbursement from third party liability settlements.

11. A patient deemed homeless will qualify for presumptive eligibility. To be deemed homeless, the individual must not have a fixed, regular, and adequate nighttime residence or has a primary nighttime residence that is a supervisor publicly or privately operated shelter.

12. All documentation will be maintained by Patient Access Services in accordance with regulatory guidelines.

13. Tulare Regional Medical Center Home Care and Retail Pharmacy will use best efforts to follow the hospital's approved charity care policy. Separate or additional applications to be completed by the patient/family will not be required. Referral will be made to use the Hospital's financial information.

14. This policy does not apply to professional services provided to Hospital patients by physicians or other medical providers including but not limited to Radiology, Anesthesiology, Pathology other than Emergency Room services as required by AB774, Section 127450.

Questions concerning any aspect of this policy/guideline should be referred to Patient Access or Administration.

This policy/guideline replaces and supersedes all previous policies/guidelines concerning this matter and is effective immediately.

Effective Date: 07/26/12          Page 5 of 5          #11-3028

EXHIBIT A-1
Page 49 of 81

| | |
|---|---|
| Descriptive Name: | Financial Assistance (Charity Care) Program |
| Descriptive Type: | New Policy |
| Document Number: | 11-3028 |
| Attachments: | None |
| Author: | Karan Levering, Director, Patient Access (First Source) In conjunction with the Chief Financial Officer, TRMC |
| Typist: | Karan Levering |
| Creation Date: | 04/15/12 |
| Prev. Dist. Date: | None |

| Committee Review and Approval: | Approval Date: | Comments: |
|---|---|---|
| Board of Directors | 07/25/12 | |

| | |
|---|---|
| Effective Date: | 07/26/12 |
| Forward To: | Policy Binders – (PBX and Administration) and Post to Intranet Site |
| Disposition: | Copy and Distribution - Administration |
| Comments: | **Policy replaces 11-1002 Charity Care Program** |

**EXHIBIT F**
**LONG TERM OPERATING AGREEMENT**

See attached

Exhibit F

EXHIBIT   A1
Page 49   Of 79

## EXHIBIT D

### Limited Power of Attorney

KNOW ALL MEN BY THESE PRESENTS, that in accordance with the terms of that certain Management Services Agreement, dated of even date herewith, (the "**Agreement**"), by and among HealthCare Conglomerate Associates, LLC ("**Manager**") and Tulare Local Healthcare District dba Tulare Regional Medical Center (the "**District**"), the District hereby makes, constitutes and appoints Manager as the District's true and lawful attorney-in-fact (the "**Attorney-In-Fact**") and in the District's name, place and stead to act in connection with any and all matters relating to any of the following and with all requisite authority and power and as legally permissible:

1.      To bill, collect, or cause to be collected, all amounts related to the operation of the Hospital and the Clinics and the Other Facilities, including, but not limited to, the accounts receivable, in the District's name, and, when deemed appropriate by the Attorney-In-Fact, settle and compromise claims, and assign such other items to a collection agency, bring a legal action or take such other appropriate action against an obligee;

2.      To receive, take possession of, endorse in the name of the District, and deposit into the Depository Account, the Master Account or other account, as deemed appropriate by Manager, in accordance with the terms of the Agreement, any notes, checks, money orders, payments, insurance payments, and any other instruments received in payment of services provided at the Hospital and the Clinics and Other Facilities.

3.      To deposit all amounts collected into the Depository Account, Master Account or other account, as deemed appropriate by Manager, in accordance with the terms of the Agreement.

4.      To sign checks, drafts, bank notes or other instruments on behalf of the District, and to make withdrawals from the Depository Account, Master Account or other applicable account for payments specified in this Agreement.

5.      To execute any instruments or documents or take such other or further action necessary or appropriate in connection with any of the above.

This Power of Attorney is coupled with an interest, and shall give the Attorney-In-Fact the power and authority to act in the District's name as fully as the District could do if present. The District hereby ratifies and confirms and agrees to ratify and confirm whatsoever the Attorney-In-Fact shall do or purport to do by reason of these presents.

Capitalized terms not defined herein shall have the meaning ascribed to them by the Agreement. Any provision hereof which may prove unenforceable under any Law shall not affect the validity of any other provisions hereof.

Any photocopy of this Power of Attorney shall have the same force and effect as the original.



IN WITNESS WHEREOF, I have hereunto set my hand and seal effective as of the _____ day of _____.

WITNESS:

**Tulare Local Healthcare District, d/b/a Tulare Regional Medical Center**

Signature:_____
Print Name:_____

By:_____
    Sherrie Bell, Chairman of the Board/President

Signature:_____
Print Name:_____

603546537.7

Exhibit D

(b)    CPI Adjustment.

(i)    "**CPI**" means the monthly index of the U.S. City Average Consumer Price Index for Urban Wage Earners and Clerical Workers -- Medical Care Services (1982-84 equals 100) published by the United States Department of Labor, Bureau of Labor Statistics or any successor agency that shall issue such index. In the event that the CPI is discontinued for any reason, the parties shall use such other index, or comparable statistics, on the cost of medical care services in the United States, as shall be computed and published by any agency of the United States or, if no such index is published by any agency of the United States, by a responsible financial periodical of recognized authority.

(ii)    Beginning on January 1, 2015, and every year thereafter, the Management Fee shall each be adjusted for inflation as follows:

(1)    The then existing Management Fee shall be multiplied by the greater of (i) the CPI percentage increase using the latest published data since the last adjustment or (ii) five percent (5%) ("**CPI Increase**");

(2)    The then existing Management Fee shall then be added to the CPI Increase ("**Net Adjusted Management Fee**"); and

(3)    The Net Adjusted Management Fee will then be multiplied by 1.01 to determine the Management Fee for the next ensuing calendar year.

(4)    For example, the latest published CPI in January 2015 (e.g. November 2014) will be compared to the CPI for November 2013 (assuming that was the latest available published data) and the 2014 Management Fee will be multiplied by the percentage difference. Assuming a three percent increase, the Management Fee of $225,000 would be increased by $6,750 for a new monthly Net Adjusted Management Fee of $231,750. That amount would then be multiplied by 1.01 resulting in a new monthly Management Fee of $234,067.50.

(c)    Expenses.    In addition to the Management Fee, Manager shall be reimbursed monthly by the District for (i) expenses expressly made reimbursable hereunder together with (ii) other usual, customary, and commercially reasonable out-of-pocket expenses incurred on behalf of the District, in accordance with the approved Annual Budget, or with approval from the Governing Body, if such fees are in excess of the amount in the approved Annual Budget. Manager shall not be reimbursed for any indirect or overhead expenses of Manager or its Affiliates.

(d)    Operating Expenses.  Except as otherwise provided in this Agreement, all of the costs and expenses of maintaining and operating the Hospital and the Clinics and Other Facilities shall be the sole cost and expense of the District, and shall not be expenses of Manager. Expenses shall include, without limitation:

(i)    any operating or non-operating expense incurred in the provision of services to the District (unless specifically excluded hereunder); and

(ii)    The cost of any employee or Consultant that provides services at or in connection with the Hospital or the Clinics or Other Facilities for improved clinic performance, such as management, billing and collections, business office consultation, accounting and legal services, including salaries, benefits, other compensation, travel costs, and other expenses, but only when such services are coordinated by Manager.

29

(e)    Late Payments.    If payment of amounts due hereunder, including Management Fees, Employee Lease Payments and reimbursement of other amounts, are not made on the due date, then interest shall accrue on any unpaid amounts for each day beyond the due date at a rate equal to the lesser of: (a) one percent (1.0%) per month or (b) the maximum non-usurious interest rate allowable by Law.

(f)    Senior Indebtedness Status. The obligations of the District under this Agreement rank and shall rank at least senior in priority of payment to all other unsecured debt of the District.    Fund transfers and other payments received by the District shall be directed, regardless of the payment purpose indicated in the payment document, according to the following priority ranking: (1) payment of the Bonds; (2) payment of the Management Fee and other amounts due hereunder and (3) all other debts of the District.

(l)    Setoff.    Notwithstanding any provision of this Agreement to the contrary, Manager shall have the right from time to time to setoff any amounts owed by the District to Manager against any amounts owed by Manager to the District and/or from any funds of the District over which Manager has a power of attorney or right of disbursement, whether pursuant to this Agreement or otherwise.

7.    Books and Records.

(a)    Maintenance of Books and Records.    Manager shall supervise the maintenance of the books of account covering the operation of the District.  Such books of account shall be maintained on an accrual basis in accordance with GAAP.

(b)    Accounting.  Manager shall be responsible for the oversight of Hospital and the Clinics and Other Facilities' accounting functions.

(c)    Reports and Financial Statements.  Manager shall from time to time deliver to the Governing Body, from the District's data, the reports and financial statements reasonably requested by the Governing Body, as well as any other reports or financial statements required by the terms of this Agreement.  Oversight shall include consultation with respect to Hospital and the Clinics and Other Facilities:

(i)    General ledger / financial accounting;

(ii)    Accounts payable;

(iii)    Payroll;

(iv)    Facilitation of Hospital and the Clinics and Other Facilities annual audit; fees paid to independent accountants, however, shall be the responsibility of the District;

(v)    Cost reporting.    Year-end information required for preparation of Medicare and MediCal cost reports shall be available to the District, and at the District's direction, to its accountants, prior to one hundred twenty (120) days into the year following the year for which they are prepared; and

(vi)    Monthly bank reconciliation.

30

(d)      <u>Financial Statements</u>.

(i)      Monthly financial statements, including income statements, balance sheets, statement of cash flows. Such statements shall generally be available to the District by the 20th day of the month following the applicable period.

(ii)      Quarterly financial statements including unaudited financial statements reflecting the operations of the District for such quarter. Such statements shall generally be available to the District by the 45th day following the end of each applicable quarter. Quarterly statements shall also include Manager's usual and customary statistical and performance measures.

(iii)      Annual financial statements, including an unaudited balance sheet of the District dated as of the end of the fiscal year and a related statement of income or loss for the District for such fiscal year. Year-end income statements, shall be available to the District, and at the District's direction, to its accountants, prior to ninety (90) days into the year following the year for which they are prepared.

(e)      <u>Audit</u>.

(i)      If the District so elects, such financial statements will be certified in the customary manner by an independent certified public accountant approved by the District. <u>The expense of any such independent accountants shall be borne by the District</u>.

(ii)      Manager shall respond, in writing, to any and all recommendations made by the District's independent auditors, which response shall either acknowledge that an audit proposal or recommendation has been implemented or, if not, the reasons why not.

(f)      <u>Financial Reporting Expenses</u>. Fees paid to independent firms and professionals in connection with the foregoing together with the direct, out-of-pocket fees, expenses and charges incurred in connection with the preparation of <u>such shall be the District expenses</u>.

(g)      <u>Inspection of Records</u>. Authorized agents of the District shall have the right at all reasonable times during usual business hours, <u>at the District's expense</u>, to audit, examine and make copies of or extracts from the books of account of the District maintained by Manager. Such right may be exercised through any agent, independent public accountant or employee of the District designated by the District.

(h)      <u>Confidentiality</u>. The parties agree that: (a) neither party will disclose any secrets or confidential technology, proprietary information, or trade secrets of the other party without the prior written consent of the transmitting party, except (i) to the receiving party's agents, advisors, auditors and representatives; or (ii) as may be necessary by reason of legal, accounting or regulatory requirements beyond the reasonable control of the recipient party; and (b) should this Agreement expire or terminate, neither party will take or retain any papers, records, files, computer programs and software, other documents or copies thereof, or other confidential information of any kind belonging to the other party, except for copies of same as may be reasonably necessary to defend any anticipated litigation or respond to claims or pursuant to ordinary data backup or storage processes.

31

8.      <u>Indemnification and Liabilities</u>.

(a)      <u>District Indemnity Obligation</u>. Manager does not hereby assume any of the obligations, liabilities or debts of the District or the Hospital or the Clinics and Other Facilities, except as otherwise expressly provided herein, and shall not, by virtue of its performance hereunder, assume or become liable for any of such obligations, debts or liabilities. The District hereby agrees to indemnify, defend and hold Manager harmless from and against any and all claims, actions, liabilities, losses, costs and expenses of any nature whatsoever, including reasonable attorneys' fees and other costs of investigating and defending any such claim or action, asserted against Manager on account of any of the obligations, liabilities or debts of the District or the Hospital or the Clinics and Other Facilities, except for demands arising from Manager's willful misconduct. The District further hereby agrees to defend, hold harmless and indemnify Manager and Manager Parties from and against any and all claims, actions, liabilities, losses, costs and expenses of any kind imposed on account of or arising out of actions taken by Manager or Manager Parties in what Manager or any such Person reasonably believed to be within the scope of their responsibilities under this Agreement, except for acts of willful misconduct. However, in no event shall Manager or any Manager Parties be liable to the District for any loss of use, goodwill, revenues or profits, or any consequential, special, indirect or incidental loss, damage or expense, or for punitive or exemplary damages, except for punitive or exemplary damages to the extent resulting from the willful misconduct of Manager or Manager Parties. This Section shall survive the expiration or termination of this Agreement. The foregoing indemnification is an addition to and not in limitation of the indemnification provisions as they relate to agents of the District (it being agreed that Manager is an agent of the District for that purpose), as set forth in the District's Bylaws, and any other indemnification provisions set forth in this Agreement.

(b)      <u>Manager Not Liable for District Liabilities</u>. The District is and shall be fully liable and legally accountable at all times to all patients and Governmental Authorities for all patient care and funds and all other aspects of the operation and maintenance of the Hospital and the Clinics and Other Facilities. Manager shall have absolutely no obligation or duty to act for or on behalf of the District with respect to any matter which is not directly related to Manager's obligation to provide the administrative and management services described herein to the Hospital and the Clinics and Other Facilities, as and to the extent provided herein. Manager shall not be or become liable for any of the existing or future obligations, liabilities, or debts of the District, or for any of the obligations of the Hospital and the Clinics and Other Facilities. This Section shall survive the expiration or termination of this Agreement.

(c)      <u>Manager Not Liable for Condition of Buildings or Equipment</u>. Notwithstanding anything contained herein to the contrary, in no event shall Manager be liable for any damages arising from, incident to, or in connection with, the physical condition (including the environmental condition) of the Buildings or other structures owned or leased by the District, or the land upon which such Buildings or other structures are situated, or any of the equipment located thereon, and any such damages as may arise shall be the sole responsibility of the District, as a the District expense, except to the extent that Manager engages in willful misconduct in carrying out its responsibilities hereunder, in which event Manager's liability shall be limited to amounts not covered by applicable insurance policies. In connection with the foregoing, the District shall, with the assistance of Manager, comply with any and all applicable fire and safety codes. This Section shall survive the expiration or termination of this Agreement.

(d)      <u>Manager Not Liable for Acts or Omissions of the District's Agents</u>. Manager shall not be responsible for the acts or omissions of any of the District's managers, officers, directors, Governing Body, agents, employees, contractors, subcontractors or any other Persons

32

performing any work or rendering any services in connection with the operation, management, ownership or other use of the Hospital and the Clinics and Other Facilities, or any Consultants or other Persons engaged with respect thereto. This Section shall survive the expiration or termination of this Agreement.

(e) Manager Not Liable for Consultants' Fees and Other Financial Obligations. The District, and not Manager, shall be responsible for all fees and other compensation charged by Consultants and other Persons engaged by the District (or by Manager on behalf of the District in accordance with the terms hereof) to provide services related to the Hospital and the Clinics and Other Facilities. Manager shall be responsible for reviewing such fees, and the District shall timely provide Manager with copies of all bills, invoices, and other information relating to such fees.

(f) Release. Because of the unique services to be provided by Manager hereunder, neither Manager nor any Manager Parties shall be liable to the District for any damages or loss of any kind including, without limitation: (i) direct damages; (ii) consequential damages; (iii) loss of profits; (iv) business interruption; (v) damage to property or death or injury to Persons from any cause whatsoever including, without limitation, professional liability or malpractice, acts of vandalism, loss of trade secrets or other confidential information; or (vi) damage, loss, or injury caused by a defect in the structure of the Hospital and the Clinics and Other Facilities, power failure, fire, strikes, shortage of supplies, or any cause whatsoever in or about the Hospital and the Clinics and Other Facilities or any part thereof, unless such claims, losses, costs, damages or expenses are the result of the willful misconduct of Manager or Manager Parties. This Section shall survive the expiration or termination of this Agreement.

(g) Manager Indemnity Obligation. Manager shall indemnify, defend and hold the District harmless from and against any and all claims, actions, liabilities, losses, costs and expenses of any nature whatsoever, including reasonable attorneys' fees and other costs of investigating and defending any such claim or action, imposed on the District including its officers, directors, partners, employees and agents on account of or arising out of any breach of the terms hereof by Manager, and resulting from the willful misconduct of Manager or any Manager Parties. NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT (INCLUDING ANY INDEMNIFICATION OBLIGATIONS), IN NO EVENT SHALL MANAGER BE LIABLE (WHETHER IN AN ACTION IN NEGLIGENCE, CONTRACT OR TORT OR BASED ON A WARRANTY OR OTHERWISE) FOR (I) FAILURE TO REALIZE SAVINGS OR LOSS OF PROFITS, REVENUE, OR ANY OTHER INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, AND (II) DIRECT AND OTHER DAMAGES IN EXCESS OF THE AMOUNT OF MANAGEMENT FEES EARNED BY MANAGER UNDER THIS AGREEMENT DURING THE THREE (3) MONTHS PRIOR TO THE DATE OF THE APPLICABLE CLAIM FOR DAMAGES, IN EACH CASE, EVEN IF MANAGER HAS BEEN ADVISED OF POSSIBILITY OF SUCH DAMAGES.

9. Joint Venture.

(a) Covenant to Enter Into Joint Operating Agreement.

(i) Attached hereto as Exhibit B is the Interim Joint Operating Agreement (the "**Interim Operating Agreement**") that the parties have executed and shall become effective, upon written notice from Manager, following: (i) Manager's or the District's receipt of consent thereto from the District's Bond trustee under the general obligation bonds and revenue bonds issued by the District prior to the date hereof, or hereafter issued with the concurrence of Manager (collectively, the "**Bonds**"); (ii) any required notices to the Attorney General regarding the transaction, if any, have been provided, including any that may be required pursuant to Cal. Code

<u>Regs.</u>, tit. 11, § 999.40; and (iii) any required approvals from the Attorney General with respect to the charitable care assumption by Manager thereunder have been received, if any. The District shall fully cooperate with Manager's efforts to obtain the consent of such Bond trustee and the Attorney General, and the District shall promptly make such requests and take such actions as Manager shall request to obtain the Bond trustee's and Attorney General's consent(s). Efforts to procure such consent shall be commenced promptly after the Effective Date.

       (ii)     Attached hereto as **<u>Exhibit C</u>** is the form of Joint Operating Agreement (the "**<u>Long Term Operating Agreement</u>**") that the parties have executed and shall become effective, upon written notice from Manager to the District after: (i) all Bonds which require compliance with Rev. Proc. 97-13 (or any successor regulatory requirement thereto containing similar limitations), have been repaid or otherwise defeased or the Internal Revenue Code limitations and conditions to the proposed transaction set forth in the Long Term Operating Agreement have been waived; (ii) any required notices to the Attorney General regarding the transaction, if any, have been provided, including any that may be required pursuant to <u>Cal. Code Regs.</u>, tit. 11, § 999.40; and (iii) any required approvals from the Attorney General with respect to the charitable care assumption by Manager thereunder have been received, if any. The parties may enter into the Long Term Operating Agreement, whether the conditions described herein occur prior to or following entry into the Interim Operating Agreement. The District shall use its reasonable commercial efforts to repay or defease the Bonds as soon as reasonably practicable following the Effective Date. The District shall fully cooperate with Manager's efforts to obtain the consent of the Attorney General, and the District shall promptly make such requests and take such actions as Manager shall request to obtain the Attorney General's consent.

       (iii)     The District agrees that Manager shall have the right to determine and direct the strategy and process by which the District and Manager effectuate the Interim Operating Agreement and the Long Term Operating Agreement (collectively, the "**<u>Operating Agreements</u>**"). Manager shall have the right to take the lead in all meetings and communications with the Bond trustee(s) and / or any other party whose consent is required to effectuate the Operating Agreements, including by determining the appropriate timing of any such meeting or communications (including the timing of the submission of any filing with, or the response to any request by, any consent party or any action to be taken pursuant to this Section).

       (iv)     The District shall: (a) promptly give all notices which either party deems necessary, proper or advisable to the Bond trustee(s) and other applicable third parties which may be necessary or deemed desirable by Manager in connection with effectuating the Operating Agreements and the consummation of the transactions contemplated thereby; (b) use its best efforts to obtain all Bond trustee and other approvals, consents, permits, authorizations, and orders necessary, proper or deemed desirable by Manager in connection with effectuating the Operating Agreements and the consummation of the transactions contemplated thereby; (c) Permit Manager to review in advance, and consult with Manager on, any proposed filing, submission or communication (whether verbal or written) by the District or its Affiliates, and (d) give Manager the opportunity to attend and participate at any meeting with the Bond trustee(s) or any other party's representatives that are necessary, proper or advisable to effectuate the Operating Agreements. The District and its accountants, and attorneys shall cooperate fully with Manager in the preparation of any statements or applications made by Manager to the Bond trustee(s) and other applicable parties whose consent is required to effectuate the Operating Agreements and the transactions contemplated thereby and to furnish Manager with all information concerning the District necessary or deemed desirable by Manager for inclusion in such statements and applications, including, without limitation, all requisite financial statements and schedules.

34

(v)     Between the date hereof and the effective dates of the Operating Agreements, the District shall promptly notify Manager of (i) any notice or other communication from any Person alleging that the consent of such Person is or may be required in connection with the Operating Agreements becoming effective, (ii) any notice or communication from the Bond trustee(s) or any other party from whom consent is required, and (iii) any action or proceeding commenced or, to the knowledge of the District, threatened against Manager and/or the District which relates to the consummation of the transactions proposed under the Operating Agreements.

(b)     Stand-by Management Services.

(i)     Upon the Effective Date of an Operating Agreement (as defined in the Operating Agreements), Manager's and the District's obligations hereunder shall be treated as suspended ("**Suspended**") with neither party effectively having any obligation beyond those they would have had if the Agreement had been terminated or expired. When the District and Manager enter into either the Interim Operating Agreement and/or the Long Term Operating Agreement, the parties shall wind-up of their obligations hereunder as if this Agreement had been terminated. Following the Effective Date of an Operating Agreement (as defined in the Operating Agreements), during the remainder of the Operating Period hereunder, the District shall pay Manager an amount equal to One Hundred Dollars ($100) per year, for each year in which this Agreement is Suspended, on each annual anniversary of the Effective Date under the applicable Operating Agreement, in consideration of Manager's agreement to serve as a stand-by manager for the District for the Operating Period hereunder.

(ii)     As stand-by manager, Manager shall provide the management services described herein upon the terms set forth herein in the event that: (a) the term of the applicable Operating Agreement terminated or declared by a court of competent jurisdiction to be invalid or unenforceable and (b) such termination of the Operating Agreement was not due to: (i) Manager's default under the applicable Operating Agreement; (ii) any event which resulted in the payment of a Termination Fee, as defined in the applicable Operating Agreement; or (iii) the Long Term Operating Agreement becoming effective.   Manager shall commence providing the management services under the terms of this Agreement immediately following the termination of the applicable Operating Agreement and shall have all rights hereunder, including the right to renew the Operating Period.

(iii)     If Manager provides stand-by services hereunder, the Management Fee shall be adjusted pursuant to Section 6(b) as if the Agreement had not been Suspended and CPI Adjustments had continued to be made following the Effective Date of the applicable Operating Agreement.

10.     **Default.**

(a)     District Default.  The following occurrences shall each be deemed an event of default by the District ("**District Default**"), unless waived in writing by Manager:

(i)     Material breach of any representation, warranty, or covenant of the District contained within this Agreement, after giving written notice to the District, and the District's subsequent failure to cure the breach (if such breach is capable of being cured) within sixty (60) days (or ten (10) days in the event of a monetary breach or thirty (30) days in the event of a breach of any provision requiring the District to: (i) provide the Manager with a consent or approval or (ii) execute an agreement or document hereunder; provided, however, that if the cure cannot reasonably be effectuated within the applicable cure period, a longer period shall be allowed not to

35

exceed ninety (90) days, if the District has commenced to cure such breach in good faith or has otherwise provided adequate protection or security to protect Manager's interest hereunder (which security shall be sufficient in Manager's sole and absolute discretion) within the applicable cure period, and the District is proceeding with due diligence to effect a cure.

(ii)     The occurrence of any of the following: (a) the filing by the District of a voluntary petition in bankruptcy or for reorganization under the Bankruptcy Code, or (b) the filing of a petition for the appointment of a receiver for all or any of the property of the District, or (c) the taking of any voluntary or involuntary steps to dissolve or suspend the powers of the District (unless such steps to dissolve or suspend are removed) within thirty (30) days, or (d) the consent by the District to an order for relief under the Bankruptcy Code or the failure to vacate such an order for relief within sixty (60) days from and after the date of entry thereof, or (e) the entry of any order, judgment or decree, by any court of competent jurisdiction, on the application of any creditor of the District or any other Person, adjudicating the District as a bankrupt, or to be insolvent, or approving a petition seeking reorganization or the appointment of a receiver, trustee or liquidator of all or a substantial part of the District's assets, if such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) days. In the event that the District becomes a debtor under the Bankruptcy Code, the District agrees, to the extent permitted under applicable Law: (a) not to reject this Agreement; (b) to designate Manager as a vendor supplier that is critical to the District's business and obtain a critical vendor order that (x) waives or releases any preference liability; and (y) provides administrative priority or other preferred status, acceptable to Manager, with respect to Manager's pre-petition claims.

(iii)     If Manager, at any time and in good faith, shall deem itself insecure and for the purposes of this Agreement, Manager shall be entitled to deem itself insecure when some event occurs, fails to occur or is threatened or some objective condition exists or is threatened which significantly impairs the prospects that any of the obligations of the District hereunder will be paid when due, or which significantly affects the financial or business condition of the District. If Manager deems itself insecure, it shall have no obligation to continue performing hereunder more than thirty (30) days from and after it notifies the District that it has deemed itself insecure, unless the District provides Manager with an unconditional, irrevocable letter of credit (the "**Letter of Credit**") from a U.S. banking institution acceptable to Manager, insured by a federal insurance agency ("**Issuer**"). The Letter of Credit shall (i) meet the requirements of the "Uniform Customs and Practice for Documentary Credits," ICC No. 500 (1993 Edition), (ii) name Manager as beneficiary, (iii) be in an amount equal to the lesser of (A) the Termination Fee or (B) such lesser amount as may be specified by Manager, in its sole and absolute discretion, (iv) be payable in full or partial draws against Manager's sight draft, (v) include an "evergreen" provision which provides that the Letter of Credit shall be renewed automatically on an annual basis following its issuance, unless the Issuer delivers thirty (30) days prior written notice of cancellation to Manager, (vi) have an initial expiration date no earlier than one year from the date of issue, and (vii) otherwise be in form and substance satisfactory to Manager. In the event the Letter of Credit is ever not renewed when required hereunder, Manager shall have the right, immediately upon receipt of the notice of cancellation described above, to draw upon the Letter of Credit and hold the proceeds thereof as a cash security deposit. Provided that the District is not then in default of any of its obligations hereunder and no act, omission, fact, circumstance, condition or event that with the giving of notice or the passage of time or both would constitute a default hereunder exists, Manager shall return the Letter of Credit to the District within forty-five (45) days after the expiration or termination of this Agreement. If the Letter of Credit is not timely provided, then Manager shall have the right to immediately terminate this Agreement (with no right on the part of the District to cure same) and receive the Termination Fee.

36

(b)     <u>Liquidated Damages</u>.

(i)     Each of the parties acknowledges that it would be extremely difficult and impracticable, if not impossible, for Manager to ascertain with any degree of certainty the amount of damages that would be suffered by Manager in the event of the occurrence of a the District Default. In the event this Agreement is terminated as a result of any the District Default, or for any other reason other than a termination by Manager under <u>Section 10(d)(i)</u>, or a Manager Default, the District shall pay a fee (the "<u>Termination Fee</u>"), which fee is not a penalty, but rather is liquidated damages in accordance with California Civil Code Section 1671, which the parties have negotiated in good faith and have agreed is a reasonable fee under the circumstances. The Termination Fee shall be paid within five (5) days after the effective date of the termination of this Agreement.

(ii)     The Termination Fee shall be an amount equal to Seventy Thousand Dollars ($70,000) per month first increased by CPI, as provided below, and then multiplied by the remaining number of months in the Term (not to exceed 120 months) at the time of the termination, discounted to its present value using the discount rate of the Federal Reserve Bank of San Francisco at the time of termination plus one percent (1%).

(1)     "CPI" means the monthly index of the U.S. City Average Consumer Price Index for Urban Wage Earners and Clerical Workers — Medical Care Services (1982-84 equals 100) published by the United States Department of Labor, Bureau of Labor Statistics or any successor agency that shall issue such index. In the event that the CPI is discontinued for any reason, the parties shall use such other index, or comparable statistics, on the cost of medical care services in the United States, as shall be computed and published by any agency of the United States or, if no such index is published by any agency of the United States, by a responsible financial periodical of recognized authority.

(2)     Inflation Adjustment. The Termination Fee shall be adjusted for inflation by multiplying the above stated Termination Fee by the CPI percentage increase between January 1, 2015 and the date the Termination Fee is payable, using the latest published data since the last adjustment.

(iii)     Notwithstanding the foregoing, nothing herein is intended to permit the Termination Fee to exceed such amount as is permissible under any tax-exempt financing requirements under applicable Law, with respect to the Bonds. In the event the Termination Fee exceeds any permissible limit upon such fees, then the Termination Fee shall be reduced to the maximum termination or similar fee permitted under such Law, however denominated, and the District shall enter into any agreements necessary to minimize any reduction to the Termination Fee.

(iv)     If the District fails to pay the Termination Fee when due, then the Termination Fee, or any unpaid portion thereof, shall bear interest from the date such payment was required to be made until the date of payment at the interest rate set forth in Section 6(e).

(v)     If upon termination of this Agreement, the District contends that the Termination Fee is not due and owing and Manager contends that same is due and owing, the District shall be obliged to deposit, within three (3) days, the amount of the Termination Fee into an Escrow account with a national bank with not less than $50,000,000,000 in assets. The funds shall be released to the applicable party upon the sooner to occur of: (a) mutual instructions of Manager and the District; (b) final non-appealable order of a court directing the release of the funds

· 37

to a party; or (c) to the District if Manager has not contested, in a judicial proceeding, that the funds are owed to it within twenty four (24) months of the termination.

    (vi) This Section shall survive the expiration or termination of this Agreement.

  (c) <u>Manager Default</u>. The following occurrences shall each be deemed an event of default by Manager ("**<u>Manager Default</u>**"), unless waived in writing by the District:

    (i) Material breach of any material covenant of Manager contained within this Agreement, after giving written notice to Manager, and Manager's subsequent failure to cure the breach within sixty (60) days; provided, however, that if the cure cannot reasonably be effectuated within such sixty (60) day period, a longer period shall be allowed, if Manager has commenced to cure such breach or has otherwise provided adequate protection or security to protect the District 's interest hereunder, and Manager is proceeding to effect a cure.   In determining whether a breach has occurred, the District shall exercise its reasonable discretion in good faith and shall use its best efforts to assist Manager in effectuating a cure.

    (ii) The occurrence of any of the following: (a) the filing by Manager of a voluntary petition in bankruptcy or for reorganization under the Bankruptcy Code, or (b) the filing of a petition for the appointment of a receiver for all or any substantial portion of the property of Manager, or (c) the taking of any voluntary or involuntary steps to dissolve or suspend the powers of Manager (unless such steps to dissolve or suspend are removed) within sixty (60) days, or (d) the consent by Manager to an order for relief under the Bankruptcy Code or the failure to vacate such an order for relief within sixty (60) days from and after the date of entry thereof, or (e) the entry of any order, judgment or decree, by any court of competent jurisdiction, on the application of any creditor of Manager or any other Person, adjudicating Manager as a bankrupt, or to be insolvent, or approving a petition seeking reorganization or the appointment of a receiver, trustee or liquidator of all or a substantial part of Manager's assets, if such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) days.

  (d) <u>Early Termination Events</u>.

    (i) Notwithstanding anything herein to the contrary, during the initial thirty-six (36) months of the Operating Period, Manager shall have the option to terminate this Agreement before its expiration, upon at least six (6) months' written notice to the District.

    (ii) In the event either party should be determined by a Governmental Authority to be in violation of any Law, by virtue of this arrangement or this arrangement is otherwise deemed illegal by a Court of competent jurisdiction in a final non-appealable determination ("**<u>Jeopardy Events</u>**"), the parties shall use best efforts to negotiate an amendment to this Agreement to remove or negate the Jeopardy Event. If they are unable to do so within six (6) months, either party may terminate this Agreement by written notice to the other, provided that upon such termination the District shall be obliged to pay the Termination Fee as provided in Section 10(b).  Until any such written notice of termination is received, Manager may elect to exercise its rights under Section 9, without regard to whether the preconditions regarding the Bond Indebtedness has been satisfied.

38



(e)    Procedure.

(i)    In the event either party to this Agreement deems the other party to be in default of its obligations hereunder, then said party shall be required to provide notice of the alleged default to the other party, which notice shall contain a detailed description of the alleged default.

(ii)    If the claim of default is disputed by the party receiving such notice, within ten (10) business days thereafter the party receiving the notice shall give notice to the charging party that the party receiving such notice disputes that the factual matters alleged constitute a default under this Agreement. If the parties cannot resolve such dispute within ten (10) business days thereafter (commencing on the date that the charging party receives notice of the dispute) the parties shall submit such matter to binding arbitration in Los Angeles County, California, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules and Procedure for Arbitration, and applying the Law of the State. Any determination by the arbitrator shall be final and binding upon the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne equally by the parties. During the pendency of any such arbitration and until final judgment thereon has been entered, this Agreement shall not be terminated as a result of the alleged default which is in dispute.

(f)    Termination.

(i)    In the event of a party's failure to cure a default within the time allowed herein for curing such default, the non-defaulting party may immediately terminate this Agreement by notice to the defaulting party and none of the parties shall have any further obligations under this Agreement, except those obligations that by their terms or nature extend beyond the date of expiration or termination, provided, that the non-defaulting party shall have all rights and remedies available hereunder and at Law as a result of the default. It is understood that in the event of any monetary default by the District which is not cured within the specified ten (10) day period (including the failure to deposit sufficient funds to enable Manager to pay the Hospital and the Clinics and Other Facilities' expenses) Manager may immediately terminate this Agreement by written notice to the District and may cease rendering any services hereunder to the District, all without any further liability to the District (without regard to whether Manager has advanced any funds pursuant to Section 4(f)(i)(1).

(ii)    The parties may mutually agree at any time to terminate this Agreement.

(iii)    This Agreement shall automatically terminate if:

(1)    An Operating Agreement, after its Effective Date, has been terminated and the Manager is not obliged to provide the stand-by management services described in Section 9(b);

(2)    The Operating Period hereunder has expired; or

(3)    A substantial portion of the Hospital and the Clinics and Other Facilities are destroyed or subject to condemnation such that the Operations are, in the sole and absolute discretion of Manager, materially impaired.

39

(iv)    In the event of termination of this Agreement, Manager shall remove itself as a signatory on the District's accounts and turn over to the District within ten (10) business days following the expiration or termination of this Agreement all business records of the District pertaining to the District.  All medical records shall be maintained by the District and shall remain the property of the District.

11.    <u>Miscellaneous</u>.

(a)    <u>Complete Agreement</u>.  This Agreement constitutes the entire agreement between the parties with respect to the management of the Hospital and the Clinics and Other Facilities, and supersedes any and all prior agreements, either oral or written, between the parties with respect thereto, including the Management Services Agreement described in the first paragraph of this Agreement.

(b)    <u>Recordation.</u> At the request of either party and at the expense of the requesting party, the parties shall execute a short form memorandum of this Agreement which identifies this Agreement, the parties, the Operating Period, the legal description of the real property upon which the Hospital and the Clinics and Other Facilities are located, and such other matters as the parties may agree.  Such memorandum shall be recorded in the Office of the County Recorder of Tulare County, California, at the expense of the requesting party.

(c)    <u>Binding Agreement</u>.  This Agreement and the rights and obligations of the parties hereunder are binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as provided in this Section, neither party shall have the right to assign its rights or delegate its duties hereunder unless it first obtains the written consent of the other party hereto.  Manager may, in its sole and absolute discretion, assign this Agreement, without the District's consent, to any Affiliate of Manager, or to any other Person which is owned and controlled by Manager or the Controlling Persons of Manager, or in connection with a Manager consolidation or sale by Manager to any Person of all or substantially all of Manager's assets or ownership interests.  Nothing herein prevents Manager from subcontracting with third parties to perform any of the services required of Manager hereunder.  Any assignment in violation of this Section shall be null and void.

(d)    <u>Governing Law</u>.  This Agreement shall be deemed to be made in, and in all respects shall be interpreted, construed, and governed by and in accordance with, the Law of the State.  The parties agree that the exclusive jurisdiction and venue of all actions claims, or other legal proceedings arising in any manner pursuant to this Agreement, shall be vested in the Superior Court of the County of Los Angeles in the State and in no other.  Notwithstanding any other provisions contained in any other document executed simultaneously herewith, each party, for itself, and all successor, assigns, heirs, executors, or future parties at interest agree and accept the jurisdiction of these courts and waive any defense of personal jurisdiction, forum non conveniens, venue or similar defenses and irrevocably agree to be bound by any judgment rendered in the aforementioned Court; exclusive of any and all other Federal or State courts.

(e)    <u>Headings</u>.   The section and subsection headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of the Agreement.

(f)    <u>Notices</u>.   Except as otherwise expressly permitted herein, all notices required or permitted to be given hereunder shall be in writing (whether or not written notice is specified herein) and shall be personally delivered, or mailed by United States mail, postage

40

prepaid, registered or certified, return receipt requested, or sent by a nationally recognized overnight delivery service, or sent by electronic transmission system. Unless such information is changed by written notice given by the affected party, any such notices shall be sent to the following addresses:

> If to Manager:
> HealthCare Conglomerate Associates
> Attention: Benny Benzeevi, M.D.
> 810 North Cherry Street
> Tulare, CA 93274
> Email: Benny@Healthcca.com
>
> With a copy to:
> Bruce R. Greene, Esq.
> Baker Hostetler LLP
> 11601 Wilshire Blvd., Suite 1400
> Los Angeles, CA 90025
> Email: brgreene@bakerlaw.com
>
> If to the District:
> Tulare Regional Medical Center
> Attention: Chair of the Board
> 869 North Cherry Street
> Tulare, CA 93274
> Email: sbell@tulareregional.org
>
> With a copy to:
> Dooley, Herr, Pedersen & Berglund Bailey
> Attention: Kris Pedersen
> 100 Willow Plaza, Suite 300
> Visalia, CA 93291
> Email: kpedersen@dhlaw.net

All notices sent by personal delivery shall be effective and deemed served upon receipt thereof. All notices sent by mail shall be effective and deemed served three (3) calendar days after being deposited in the United States mail. All notices sent by overnight delivery service shall be effective and deemed served when delivered by such overnight delivery service. All notices sent by electronic transmission system shall be effective and deemed served on the day of transmission, if on a business day and during business hours (9am until 5pm, PT) or otherwise on the next business day thereafter.

(g)    Survival of Representations. All of the representations, and warranties, and those covenants and agreements contained in this Agreement which are stated to survive termination or expiration of this Agreement, shall survive the expiration or the termination, for any reason, of this Agreement. No performance or execution of this Agreement, in whole or in part, by any party hereto, no course of dealing between the parties hereto or any delay or failure on the party of any party in exercising any rights hereunder or at Law or in equity, and no investigation by any party hereto, shall operate as a waiver of rights of such party, except to the extent expressly waived in writing by such party.

(h)    <u>Counterparts</u>.   This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Signatures transmitted by facsimile or e-mail or other digital means shall be accepted as original signatures.

(i)    <u>Severability</u>.

(i)    Each and every provision of this Agreement is severable, and the invalidity of one or more of such provisions shall not, in any way, affect the validity of this Agreement or any other provisions hereof. If any clause or provision of this Agreement is illegal, invalid or unenforceable, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and it is also the intention of the parties to this Agreement that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Agreement a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

(ii)    The parties hereby have made all reasonable efforts to ensure this Agreement represents and memorializes the complete and final agreement between the parties hereto, and that it complies with all applicable Law. In the event there is a change in Law, or the interpretations thereof, whether by statute, regulation, agency or judicial decision, or otherwise, that has any material effect on any term of this Agreement, or in the event that a party's reputable counsel (being legal counsel with at least ten (10) years' experience in Hospital Law) determines that any term of this Agreement poses a material risk of violating any Law, then the applicable term(s) of this Agreement shall be subject to renegotiation and either party may request renegotiation of the affected term or terms of this Agreement, upon written notice to the other party, to remedy such condition. In the interim, the parties shall perform their obligations hereunder in full compliance with applicable Law. The parties expressly recognize that upon request for renegotiation, each party has a duty and obligation to the other only to renegotiate the affected term(s) in good faith and, further, the parties expressly agree that their consent to proposals submitted by the other party during renegotiation efforts shall not be unreasonably withheld or delayed. The parties further expressly recognize that in any such renegotiation, the relative economics to each of the parties shall be preserved. Should the parties be unable to renegotiate the term or terms so affected so as to bring it/them into compliance with Law or the interpretation thereof within sixty (60) days of the date on which written notice of a desired renegotiation is given, then either party shall be entitled, after the expiration of said sixty (60) day period, to terminate this Agreement upon sixty (60) days' written notice to the other party, provided that such party has received an opinion of reputable legal counsel, which legal counsel and opinion are reasonably acceptable to the other party, that it is more likely than not that this Agreement violates applicable Law. If this Agreement is terminated pursuant to <u>Section 11(i)(ii)</u>, Manager shall be entitled to receive payment of the Termination Fee.

(j)    <u>Cumulative Rights and Remedies</u>. Any right, power or remedy provided under this Agreement or any party hereto shall be cumulative and in addition to any other right, power or remedy provided under this Agreement or existing in Law or in equity, including, without limitation, the remedies of injunctive relief and specific performance.

(k)    <u>Modification and Waiver</u>.

(i)    This Agreement may only be amended by a writing signed by both parties.

42

(ii)    No failure by any party to insist upon strict compliance with any term of this Agreement, to exercise any option, enforce any right, or seek any remedy upon any default of any other party shall affect, or constitute a waiver of, the first party's right to insist upon such strict compliance, exercise that option, enforce that right, or seek that remedy with respect to that default or any prior, contemporaneous, or subsequent default; nor shall any custom or practice of the parties at variance with any provision of this Agreement affect or constitute a waiver of, any party's right to demand strict compliance with all provisions of this Agreement.

(l)    Attorneys' Fees.  If any action at law or in equity (or any arbitration proceeding required hereunder) is brought to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs in addition to any other relief, as determined by the applicable court or arbitrator.  The foregoing includes reasonable attorney's fees in connection with any bankruptcy proceeding (including relief from stay litigation), and in connection with any appeals.

(m)    Independent Contractor Status.  Notwithstanding any provision contained herein to the contrary, Manager and the District each understand and agree that the parties hereto intend to act and perform as independent contractors.  Therefore, the District is not an employee or partner of Manager.  Nothing in this Agreement shall be construed as placing the District in a relationship of employer-employee or partners with Manager.  The parties shall not have the right to make any promises, warranties or representations, or to assume or create any obligations, on behalf of the other party except as otherwise expressly provided herein or as otherwise agreed.  The District and Manager agree to be solely and entirely responsible for their respective acts and for the acts of any of their respective employees and agents, except as otherwise expressly provided herein.

(n)    Ambiguities and Uncertainties.  This Agreement and any ambiguities or uncertainties herein, or the documents referenced herein, shall be equally and fairly interpreted and construed without reference to the identity of the party or parties preparing this Agreement or any of the documents referred to herein, on the express understanding and agreement that the parties participated equally in the negotiation of the Agreement and the documents referred to herein, or have had equal opportunity to do so.  Accordingly, the parties hereby waive the benefit of California Civil Code Section 1654 and any successor or amended statute providing that in cases of uncertainty, language or a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

(o)    Consents, Approvals and Discretion.  Except as herein expressly provided to the contrary, whenever this Agreement requires any consent or approval to be given by any party or any party must or may exercise discretion, the parties agree that such consent or approval shall not be unreasonably withheld, conditioned or delayed and such discretion shall be reasonably exercised, except as otherwise provided herein.  If no response to a consent or request from Manager to the District for approval is provided to Manager within ten (10) days from the receipt by the District of the request, then the consent or approval of the District shall be deemed to have been given.

(p)    Expiration of Time Periods.  In the event that any date specified herein is, or that any period specified herein expires on, a Saturday, a Sunday, or a State or federal holiday, then such date or the expiration date of such period, as the case may be, will be extended to the next succeeding business day.  A business day is a day on which banks are required to be open for business in Los Angeles, California.  All references in this Agreement to "days" are to calendar days, unless business days are so indicated.

43

(q)     Force Majeure.  Except with respect to payment obligations, neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service deemed resulting, directly or indirectly, from acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, machinery or supplies, vandalism, strikes or other work interruptions beyond the reasonable control of either party. However, both parties shall make good faith efforts to perform under this Agreement in the event of any such circumstances.

(r)     No Third-Party Beneficiaries.  The rights, privileges, benefits, and obligations arising under or created by this Agreement are intended to apply to and shall only apply to the parties and to no other Persons, except as otherwise set forth herein.

(s)     Consequential Damages.   Except as expressly provided herein to the contrary, neither party shall be liable under this Agreement for consequential damages, incidental damages, indirect damages, or special damages or for loss of profit, loss of business opportunity or loss of income.  Notwithstanding anything to the contrary contained in this Agreement, the parties hereto acknowledge and agree that the terms and provisions of this Section 11(s) shall not limit, alter, modify, impair, or otherwise affect any of the remedies of Manager set forth in this Agreement, including the right to be paid the Termination Fee.

(t)     Limitation of Liability.  Notwithstanding any provision in this Agreement to the contrary, under no circumstances shall Manager or any Manager Party have any personal liability for any failure to perform any obligations arising out of or in connection with this Agreement or for any breach of the terms or conditions of this Agreement (whether written or implied). No personal judgment shall lie against Manager or any Manager Party and any judgments so rendered shall not give rise to any right of execution or levy against any of their assets. Any judgments rendered against Manager shall be satisfied solely out of the assets of Manager. The foregoing provisions are not intended to relieve Manager from the performance of any of Manager's obligations under this Agreement, but only to limit the personal liability of Manager and Manager Parties in case of recovery of a judgment against any of them.

(u)     Additional Assurances.  The provisions of this Agreement shall be self-operative and shall not require further agreement by the parties except as may be herein specifically provided to the contrary; provided, however, at the request of a party, the other party or parties shall execute such additional instruments and take such additional actions as the requesting party may deem necessary to effectuate this Agreement.

(v)     Expenses. District shall bear any costs and expenses incurred by it in connection with the negotiation of the transactions contemplated herein and shall reimburse Manager for its actual out-of-pocket expenses incurred in connection with formulating, identifying, and developing transaction structures and strategies, financial and operational due diligence, preparation of definitive transaction agreements and ancillary documents, oversight of the legal process, and coordination and oversight of transaction implementation strategy related to the transactions contemplated herein, provided that such amount shall not exceed One Hundred Eighty Thousand Dollars ($180,000).   Manager shall bear any other costs and expenses incurred by it in connection with the negotiation of the transactions contemplated herein.

[Signatures on next page]

44

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

HEALTHCARE CONGLOMERATE ASSOCIATES, LLC

By _____
Name: Yorai (Benny) Benzeevi, M.D.
Title: Manager


TULARE LOCAL HEALTHCARE DISTRICT, d/b/a
TULARE REGIONAL MEDICAL CENTER

By: _____
Name: Sherrie Bell
Title: Chairman of the Board/President

By: _____          5·28·14
Name: Parmod Kumar, MD                                        17 45
Title: Vice Chairman/ Vice President

By: _____
Name: Richard Torrez
Title: Member / Treasurer

By: _____
Name: Rosalinda Avitia
Title: Member / Secretary

By: _____
Name: Laura Gadke
Title: Member


45

## EXHIBIT A

### LIST OF FACILITIES

Evolutions Fitness & Wellness
1425 E. Prosperity Avenue
Tulare CA

Family X-Ray Center
880 E. Merritt Ave
Tulare, CA 93274

Hillman Healthcare Center – 1062 South K Street Tulare, CA. 93274

Kingsburg Healthcare Center – 1200 Smith Street Kingsburg, CA. 93631

Lindsay Healthcare Center – 845 N Sequoia Ave Lindsay, CA. 93247

West Street Healthcare Center – 325 N West Street Tulare, CA. 93274

Woodville Healthcare Center – 16796 Ave 168 Woodville, CA. 93257

Allied Services Center
    Tulare Regional Medical Center Clinical Laboratory
    Allied Services Building
    869 N. Cherry
    Tulare, CA 93274

    Tulare Regional Laboratory – Alternate Collection Site
    799 Cherry Street
    Tulare, CA 93274

    Mineral King Toxicology Laboratory
    880 E. Merritt, Suite 107
    Tulare, CA 93274

Retail Pharmacy
    Tulare District Hospital Pharmacy
    869 N Cherry St
    Tulare, CA 93274

Together with such other facilities and clinics as are owned, leased or otherwise operated by District that Manager elects to operate hereunder, by notice to District from time to time.

Exhibit A

**EXHIBIT B**

INTERIM JOINT OPERATING AGREEMENT

[Attached]

603545537.7

Exhibit B

Interim Joint Operating Agreement

between

HealthCare Conglomerate Associates, LLC

and

Tulare Regional Medical Center

MAY 29, 2014

## EXHIBIT A
## HOSPITAL

869 N Cherry St, Tulare, CA 93274



Exhibit A



The parties acknowledge that the foregoing description and maps do not represent all of the real property associated with the Hospital which is owned by the District. The District hereby grants HCCA the right to amend and/or supplement this exhibit to properly describe the real estate associated with the Hospital, from time to time.

Exhibit A

**EXHIBIT B**
**CLINICS AND OTHER FACILITIES**

Evolutions Fitness & Wellness
1425 E. Prosperity Avenue
Tulare CA

Family X-Ray Center
880 E. Merritt Ave
Tulare, CA 93274

Hillman Healthcare Center - 1062 South K Street Tulare, CA. 93274

Kingsburg Healthcare Center - 1200 Smith Street Kingsburg, CA. 93631

Lindsay Healthcare Center - 845 N Sequoia Ave Lindsay, CA. 93247

West Street Healthcare Center - 325 N West Street Tulare, CA. 93274

Woodville Healthcare Center - 16796 Ave 168 Woodville, CA. 93257

Allied Services Center
    Tulare Regional Medical Center Clinical Laboratory
    Allied Services Building
    869 N. Cherry
    Tulare, CA 93274

    Tulare Regional Laboratory - Alternate Collection Site
    799 Cherry Street
    Tulare, CA 93274

    Mineral King Toxicology Laboratory
    880 E. Merritt, Suite 107
    Tulare, CA 93274

Retail Pharmacy
    Tulare District Hospital Pharmacy
    869 N Cherry St
    Tulare, CA 93274

Together with such other facilities and clinics as are owned, leased or otherwise operated by District that HCCA elects to operate hereunder, by notice to District from time to time.

Exhibit B

**EXHIBIT C**
**CONTRACTS**

Contracts shall include all Contracts that relate to the Operations as of the Effective Date.
HCCA shall supplement this Exhibit within thirty (30) days following the Effective Date.

Exhibit C

**EXHIBIT D**
**ASSUMED CONTRACTS**

HCCA shall provide the information for this Exhibit within thirty (30) days following the Effective Date.

Exhibit D

### EXHIBIT E
### CHARITABLE POLICIES OF THE HOSPITAL

The District's Charity policy as in effect on May 1, 2014. The Charity Policy shall include the foregoing Charity Policy together with any changes thereto as mutually agreed to by the parties prior to the Effective Date pursuant to the terms of the MSA.

Exhibit E

## TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY / GUIDELINE

TO:          All Departments

FROM:       Administration

SUBJECT:    Financial Assistance (Charity Care) Program

### PURPOSE:

The mission of Tulare Regional Medical Center California is to provide safe, efficient, technologically advanced healthcare with the respect for the diversity of our region. Assembly Bill 774 (AB 774) became effective January 1, 2007. The law mandates that as a condition of obtaining or holding an acute care hospital license, Hospitals must limit bills to the uninsured with family incomes at or below 350% of the Federal Poverty Level (FPL) and individuals with high cost medical bills compared to their family income. Bills are limited to the higher of the government reimbursement rates for comparable health services. This policy complies with the requirements of AB 774.

### PROCEDURE:

Who is financially eligible?

Non-Insured Patients:
1. No third party insurance
2. No Medicare/Medi-Cal
3. No Workers Compensation
4. No Auto Insurance (medical portion for third party liability)
5. Family income at or below 350% of Federal Poverty Level (FPL)

Insured Patients with Patient Responsibility:

1. Family income at or below 350% FPL
2. Financial assistance is available for patients whose out of pocket expenses exceed 10% of family income in the prior 12 month period.
3. Special consideration may be made for patients with out of pocket expenses less than 10% of family income in the prior 12 month period.

---

Effective Date: 07/26/12                    (11)      Fiscal & Business
                                                       Patient Accounting:
**APPROVED:**                                          Financial Assistance (Charity Care)
                                                       Program
Board Of Directors: 07/25/12                           11-3028

EXHIBIT A-1
Page 80 of 79

# TULARE LOCAL HEALTH CARE DISTRICT
## dba TULARE REGIONAL MEDICAL CENTER

### POLICY/GUIDELINE MANUAL

1. Eligibility for financial assistance will be considered for all patients who meet the above criteria. The granting of financial assistance shall be based on an individualized determination of financial need and shall not take into account age, gender, race, socio-economic or immigrant status, sexual orientation, or religious affiliation.

2. Tulare Regional Medical Center recognizes that there may be unusual or extenuating financial circumstances which may exceed the specific criteria as established in this policy and warrant special consideration. In such cases, a description of the unusual circumstances should be forwarded by Hospital staff to the Director of Patient Access / or designee for review and then forward to the Chief Financial Officer who will make the final determination as to the amount, if any, of financial assistance allowance to be granted.

3. Tulare Regional Medical Center recognizes that the financial status of patients may change over time. Hospital personnel will actively assist families in securing eligibility for any program with the cooperation of patients and their families. Services for dates of service prior to discharge date of January 1, 2007 are not considered under this policy.

4. The Director of Patient Access /or designee will review all applications to determine eligibility for financial assistance. Reasonable efforts will be made to verify financial data. All financial information provided will be considered confidential and staff will respect each circumstance with dignity.

5. The Director of Patient Access or designee will use the following table to determine the amount of financial assistance. This schedule will be maintained and updated annually by the Patient Access Director or designee.

| Federal Poverty Level | Charity Care Allowance [write off] | |
|---|---|---|
| | Inpatient | Outpatient |
| a. Less than 200% | 100% | 100% |
| b. 201-250% | 90% | 95% |
| c. 251-300% | 80% | 90% |
| d. 301 - 350% | 75% | 87% |

    e. Any other type of discount not adhering to the above schedule is not considered a Financial Assistance Discount and will follow the terms and conditions set forth in the Discount Policy.

    f. In all cases Tulare Regional Medical Center will not collect more than the average reimbursement of its government payers which includes but is not limited to Medicare, Medi-Cal, and Healthy Family Programs.

6. Patient guarantors must complete a financial assistance application, be in process with an eligibility application for a government sponsored insurance program or set



EXHIBIT A-1
Page 79 Of 79