9

Diane C. Stanfield (State Bar No. 106366)
Leib M. Lerner (State Bar No. 227323)
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
diane.stanfield@alston.com
leib.lerner@alston.com

Attorneys for Creditor and Moving Party
Navigant Cymetrix Corporation

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT,<br><br>Debtor. | **Case No.: 17-13797**<br><br>**DC No.: AB-1**<br><br>**Chapter 9**<br><br>Date: November 1, 2017<br>Time: 9:30 a.m.<br>Place: 2500 Tulare Street<br>        Fresno, CA 93721<br>        Courtroom 13<br>Judge: Honorable René Lastreto II<br><br>(Declaration of James Mapes and Exhibits in Support of Motion for Relief from Stay Filed Concurrently) |

### MOTION OF NAVIGANT CYMETRIX CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY OR, ALTERNATIVELY, REQUIRING DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT; REQUEST FOR ADEQUATE PROTECTION PAYMENTS AND PAYMENT OF ADMINISTRATIVE CLAIM

Navigant Cymetrix Corporation ("Cymetrix") files this motion (the "Motion") for relief from the automatic stay pursuant to section 362 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, to permit Cymetrix to exercise its rights under that certain Master Services

1

Agreement dated November 26, 2014 (along with the applicable Statement of Work #1, as amended, the "Agreement") between Cymetrix and debtor Tulare Local Healthcare District ("Debtor" or the "Hospital") or, alternatively, for an order pursuant to 11 U.S.C. § 365(d)(2) requiring Debtor to assume or reject the Agreement within 30 days or such time as the Court may order, and for the payment to Cymetrix of administrative claims and/or adequate protection payments.

Cymetrix has been providing services to the Hospital in accordance with and subject to the provisions of the Agreement since on or about November 26, 2014, as described in more detail in the Declaration of James Mapes ("Mapes Declaration"), filed concurrently herewith. A true and correct copy of the Agreement, Statement of Work #1 and amendments thereto are designated as **Exhibits A-E**, respectively, and filed concurrently herewith.[1] *See* Mapes Declaration, ¶ 2.

Cymetrix's fees have not been paid for over a year, and there is presently an outstanding balance in excess of $2.2 million. The Agreement was set to terminate automatically on October 5, 2017, based upon the Debtor's prepetition material default in failing to make monthly payments. The default was not cured; moreover, Debtor has also failed to make any arrangements to pay post-petition fees in the ordinary course or otherwise.

While Cymetrix contends that the termination is self-executing and automatic as of October 5, 2017, it acknowledges an obligation to collaborate with the Debtor for a transition to the Hospital of the revenue cycle functions (as described in the Agreement), and has reached out to Debtor's counsel about next steps. Discussions with counsel are ongoing, and Cymetrix will work cooperatively with Debtor to transition the services as described below. However, in the meantime, Cymetrix is incurring tremendous employee and out-of-pocket costs to continue performance of the Agreement. Cymetrix employs over fifty full-time equivalent employees dedicated to performing the Agreement, and continues to incur costs of third-party vendors with which it has contracted on behalf of the Hospital, and which Cymetrix pays directly. *See* Mapes Declaration, ¶ 4. As of the filing of this Motion, Cymetrix has received no assurance of post-petition compensation in any form—let alone a cure of the default. For those reasons, Cymetrix requests that the Court enter an order terminating the

---

[1] The Agreement and related documents have been redacted with respect to confidential business information of Navigant, but unredacted copies will be provided upon request and with an appropriate protective order.

automatic stay to permit Cymetrix to cease providing Services under the Agreement in accordance with the Termination Notice and to commence the transition process. Alternatively, Cymetrix requests an order requiring the Debtor to make a prompt election to assume or reject the Agreement, requiring Debtor to compensate Cymetrix as an administrative creditor or otherwise provide adequate protection pending such election. Cymetrix also requests a waiver of the stay provision of FRBP 4001(a)(3).

## BACKGROUND

A.　Services Provided Pursuant to the Agreement

The services to be provided by Cymetrix pursuant to the Agreement (the "Services") are set forth in the Statement of Work #1 as amended from time to time (the "SOW"). See Exhibit B at pp. 1-5. To summarize, the Hospital has outsourced to Cymetrix a number of administrative functions associated with the Hospital's revenue cycle functions," as described below.

"Patient access services" are described in the SOW at paragraph 1.2, which provides: "Cymetrix shall assume responsibility to staff, manage and provide functional oversight of the Client Facility's patient access services department and associated business operations and functions. Cymetrix will leverage its own internal proprietary tools as it deems appropriate to efficiently deliver the services described herein. Cymetrix shall provide revenue cycle management and staffing for the Client Facility's patient access services department in the areas described herein." More detailed descriptions of these duties are set forth in paragraph 1.2 (a) and (b).

"Patient financial services" are described in the SOW at paragraph 1.3, which provides: "Cymetrix shall assume responsibility to staff, manage and provide functional oversight of the [Hospital's] patient financial services department and associated business operations and functions. Cymetrix will leverage its own internal proprietary tools as it deems appropriate to efficiently deliver the services described herein. Cymetrix shall provide revenue cycle management and staffing for the [Hospital's] patient financial services department in the areas described herein." More detailed descriptions of these duties are set forth in paragraph 1.3 (a) and (b). The Agreement further provides for other "General" services at paragraph 1.4.

Cymetrix employs more than fifty full-time equivalent employees to perform the Services, and bills the Hospital a monthly fee (based on collections and other metrics). Mapes Declaration, ¶ 4.

1 Additionally, Cymetrix has contracted with third-party software vendors on behalf of the Hospital.
2 Mapes Declaration, ¶ 4. Obviously, it continues to incur significant costs with each passing day
3 Services are performed, including compensation and benefits provided to the Cymetrix employees
4 performing the Services for the Hospital and fees paid to third party vendors.

B. <u>The Default Letter and Termination</u>

The SOW provides for early termination by Cymetrix "in the event [Hospital] fails to make any payment when due and thereafter fails to cure such default within forty five (45) days of receipt of written notice thereof." By letter dated August 7, 2017 (the "Default Letter") (sent by electronic mail on August 21, 2017), Cymetrix gave the Hospital written notice of default under the Agreement based on the Hospital's failure to pay invoices as detailed in the Default Letter totaling (at that date) $1,738,537.35. A true and correct copy of Cymetrix's Default Letter is **Exhibit F**, filed concurrently herewith. *See* Mapes Declaration, ¶ 8.

The Default Letter stated at page 2 that Cymetrix "is hereby giving [Hospital] notice of its intent to terminate the Agreement if such default is not cured by [Hospital] within forty-five (45) days of receipt of this notice."

By letter sent by electronic mail on September 21, 2017 (the "Termination Notice"), Cymetrix notified the Hospital that "if your account is not made current for all outstanding invoiced amounts by midnight on October 5, 2017, Navigant Cymetrix will suspend performance of its services to Tulare effective October 9, 2017." A true and correct copy of Cymetrix's Termination Notice is **Exhibit G**, filed concurrently herewith. *See* Mapes Declaration, ¶ 10.

No payments have been made on the account since the Default Letter or the Termination Notice. Mapes Declaration, ¶ 11.

C. <u>The Transition Provision</u>

The SOW provides at paragraph 1.4 (j): "Upon expiration or termination of this SOW #1, upon request of Client, Cymetrix will collaborate with Client to ensure the efficient and systematic transition of the revenue cycle functions to Client. This shall include a comprehensive plan that addresses required communications and any necessary transitions in staffing and management, technology systems and any Cymetrix partner services." Accordingly, Cymetrix has reached out to

Debtor's counsel to give assurances that it would work with Debtor toward an orderly transition, and is prepared to do so.

## AUTHORITY

11 U.S.C. § 362(d)(1) (made applicable to Chapter 9 proceedings by § 901) provides that, on request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay for cause.

11 U.S.C. § 365(d)(2) (made applicable to Chapter 9 proceedings by § 901) provides:

> [O]n the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

## ARGUMENT

A.     <u>Cause Exists to Grant Relief From the Stay Because The Agreement Automatically Expired on October 5, 2017</u>

"The automatic stay provided for by section 362(a) does not enlarge the rights of individuals under a contract nor does it toll the running of time under a contract." *Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989). It will not prevent the automatic termination of a contract by its own terms. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212 (7th Cir. 1984) (once all that is required for a franchise agreement to be terminated is the passage of time, the filing of the bankruptcy petition will not stop the franchise agreement from expiring); *In re Diversified Washes of Vandalia, Inc.*, 147 B.R. 23, 25-26 (Bankr. S.D. Ohio 1992) (holding that automatic stay does not prevent the mere running of time under a termination notice where there was nothing left to be done for the termination to become complete); *In re Beck*, 5 B.R. 169, 170-71 (Bankr. D.Haw. 1980) ("It is well established that the filing of the petition for relief with the Bankruptcy Court in no way gives rise to a right in the Trustee as Debtor in possession to extend the time of the Agreements, which expired by their terms [after the petition date].") (citations omitted).

It is axiomatic that the automatic stay enjoins the enforcement of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). However, courts have recognized that "§ 362[a] was not intended to act as a toll on leases, contracts, and the like, but only on actual proceedings and similar acts against

the debtor." *In re Compass Development,* 55 B.R. 260 (Bankr. D.N.J. 1985). Thus, "the automatic stay does not toll the running of time under a contract and does not prevent the automatic termination of a contract." *In re Policy Realty Corp.*, 242 B.R. 121, 126 (Bankr. S.D.N.Y. 1999); *In re Chautauqua Capital Corp.*, 135 B.R. 779, 782 (Bankr. W.D. Pa. 1992) ("the automatic stay provided by § 362 does not prevent a contract, agreement or lease from expiring according to its terms post-bankruptcy"); *In re C.W. Mining Co.*, 422 B.R. 746, 755 (B.A.P. 10th Cir. 2010) ("…as a general rule, the automatic stay does not prevent the automatic termination of a contract"); *see also In re Diversified Washes of Vandalia,* 147 B.R. at 26 (holding that when franchisor accelerated termination of contract with debtor-franchisee by sending a notice of termination, debtor's filing of bankruptcy ten days before the accelerated termination date did not prevent the termination time from running).

The reason for this is another well-settled proposition: "[t]he Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms." *In re Advent Corp.,* 24 B.R. 612, 614 (B.A.P. 1st Cir. 1982) *as quoted in In re Carroll*, 903 F.2d 1266, 1271 (9th Cir. 1990).

Here, no further action is required by Cymetrix under the Agreement with respect to its termination; the notice period having elapsed on October 5, 2017, the Agreement has terminated by its own terms.

B.　<u>Failure to Grant Relief from Stay Will Cause the Debtor to Accrue Administrative Expenses</u>

Cause also exists for granting Cymetrix's requested relief because the estate will continue to accrue administrative expense fees, including the reasonable value of the Services performed by Cymetrix.

C.　<u>Rule 4001(a)(3) Should Be Waived</u>

Cymetrix also requests that the Court waive the 14-day stay of the order granting relief from the automatic stay under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. Every day the Agreement continues costs Cymetrix a significant amount, and causes the estate to accrue substantial administrative expenses that could be avoided or minimized if the Services are transitioned to the Hospital. Thus, Cymetrix respectfully submits that the 14-day stay imposed by Rule 4001(a)(3) should be waived.

D. Alternatively, the Debtor Should Be Ordered To Assume or Reject the Agreement

The Debtor, candidly, is unlikely to be in a position to assume a contract that would require curing a pre-petition claim in excess of $2 million. Cymetrix is incurring the expenses of maintaining a staff of over fifty full-time equivalent employees to perform the Services and making payments to a third party vendor to continue to provide services directly to the Hospital. It is grossly inequitable to require it to continue to incur those costs, bearing the risk that it will not be made whole (never mind the risk that it will not achieve the benefit of its contractual bargain). It simply isn't fair to conscript it to perform for more than the shortest period of time required to transition the Services to the Hospital or a new provider.

For cases such as this, "[a] party who cannot afford the uncertainty during the pendency of the reorganization may request the bankruptcy court to order the debtor to decide whether to assume or reject the contract within a specified period. 11 U.S.C. § 365(d)(2)." *Moody v. Amoco Oil Co.*, 734 F.2d at 1216. The tremendous burden on Cymetrix of continued performance—coupled with the unlikelihood that the Debtor will elect to cure -- dictates that the Debtor should be required to assume or reject at the earliest possible date. Cymetrix requests that Debtor be required to make its election within 30 days.

E. Cymetrix Should Be Receiving Adequate Protection Payments Pending Relief from Stay and/or A Decision on Assumption

Courts have recognized that when a debtor in possession elects to receive the benefits of an executory contract during the period pending its decision to assume or reject, the debtor "must, nevertheless, pay for the reasonable value of those services." *In re Travelot Co.,* 286 B.R. 462, 466 (Bankr. S.D. Ga. 2002) (*quoting NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)); *In re Tabernash Meadows, LLC*, 2005 WL 375660, at *10 (Bankr. D.Colo. 2005).

Certainly, Cymetrix is entitled to no less than what it would receive under the Agreement. *See In re StarNet, Inc.,* 355 F.3d 634 (7th Cir. 2004) ("the fact remains that neither § 365(a) nor anything else in bankruptcy law entitles debtors to more or different services, at lower prices, than their contracts provide. Section 365(a) gives debtors a right to walk away before the contract's end…not a right to

7

obtain extra benefits without paying for them"); *see also In re Monarch Capital Corp.*, 163 B.R. 899, 907–908 (Bankr. D.Mass.1994) (non-debtor party to pre-petition contract was entitled to reasonable value of services actually conferred on debtor during post-petition, pre-assumption/rejection period).

The Debtor may not benefit unfairly from its agreement with Cymetrix by requiring Cymetrix to provide Services without fair and adequate compensation. Until the Debtor makes an election to assume or reject, it should be required to compensate Cymetrix the reasonable value of the Services which are being performed on a daily basis and which are integral to the operation of the Hospital.

F.　<u>Cymetrix's Services Should be Accorded An Administrative Expense Priority</u>

11 U.S.C. § 503 (made applicable to Chapter 9 by § 901) provides in pertinent part that "(a) an entity may file a request for payment of an administrative expense and (b) after notice and a hearing, there shall be allowed administrative expenses ... including (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503.

The claimant must show that the debt asserted to be an administrative expense "(1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate." *In re DAK Industries, Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995) (*quoting* I*n re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987)). The bankruptcy court has broad discretion to determine whether to grant such a claim. *See In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988).

A key purpose of the rule is to ensure that the benefit was provided to the postpetition estate, in contrast to the prepetition debtor. *In re Sports Shinko (Florida) Co., Ltd.*, 333 B.R. 483, 500 (Bankr. M.D.Fla. 2005) (HOA entitled to administrative expense where the association continued to perform certain services and maintain property as this constituted post-petition consideration); *In re Audre Inc.*, 59 Fed.Appx. 925, 927, No. 02-55535, 2003 WL 1459637, at *1 (9th Cir. 2003) (CEO entitled to administrative expense for running the day-to-day operations to the benefit of the debtor).

Here, there is no question that the Debtor has continued to benefit directly and substantially from Cymetrix's post-petition Services. The Hospital's administrative functions described above are

all performed by Cymetrix employees, using Cymetrix' licensed software and at its cost. Debtor not only has accepted the Services post-petition, but continuously and critically relied on them. As such, Cymetrix is entitled to administrative priority for the reasonable value of its post-petition Services.

## CONCLUSION

Cymetrix respectfully requests that the Court enter an order lifting the automatic stay to permit Cymetrix to exercise its rights under the Agreement, including taking the necessary actions to transition the revenue cycle functions to the Hospital, and waiving the stay provision of FRBP 4001(a)(3). In the alternative, if for any reason relief from stay is not granted, Cymetrix requests an order that the Debtor make adequate protection and/or administrative claim payments as set forth above, and requiring Debtor to assume or reject the Agreement within 30 days or such other time as the Court may order.

Respectfully submitted,

DATED: October 12, 2017　　　　　　　　DIANE C. STANFIELD
　　　　　　　　　　　　　　　　　　　　LEIB M. LERNER
　　　　　　　　　　　　　　　　　　　　**ALSTON & BIRD LLP**


/s/ Leib M. Lerner
　　　　　　　　　　　　　　　　　　　Leib M. Lerner

Attorneys for Creditor Navigant Cymetrix Corporation