**3**

MARC A. LEVINSON, CSB NO. 57613
CYNTHIA J. LARSEN, CSB NO. 123994
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone: (916) 329-4910
Email: malevinson@orrick.com
        clarsen@orrick.com

HAGOP T. BEDOYAN, CSB NO. 131285
LISA HOLDER, CSB NO. 217752
**Klein, DeNatale, Goldner,**
  **Cooper, Rosenlieb & Kimball LLP**
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile:  (559) 432-1847
E-mail: hbedoyan@kleinlaw.com
        lholder@kleinlaw.com

Attorneys for Healthcare Conglomerate Associates, LLC

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br>TULARE LOCAL HEALTHCARE DISTRICT dba TULARE REGIONAL MEDICAL CENTER,<br>                          Debtor. | Case No.: 17-13797-9-B<br><br>Chapter 9<br><br>DC No.:      WW-1<br><br>**EXHIBITS A-K TO THE DECLARATION OF MARC A. LEVINSON IN OPPOSITION TO DEBTOR'S MOTION TO REJECT EXECUTORY CONTRACT (HEALTHCARE CONGLOMERATE ASSOCIATES, INC.)**<br><br>Date:      October 19, 2017<br>Time:      2:00 p.m.<br>Place:     2500 Tulare Street<br>               Fresno, CA 93721<br>Judge:    Hon. René Lastreto II |

- 1 -

## INDEX OF EXHIBITS TO DECLARATION OF MARC A. LEVINSON

| Exhibit | Page Number | Document |
|---------|-------------|----------|
| A | 4 | HCCA's Notice of Material Breach. |
| B | 8 | HCCA's Notice of District Default. |
| C | 13 | September 29, 2017 Email from McCormick Barstow Attaching a Letter from Tim Thompson. |
| D | 29 | Email Exchange Between Marshall Grossman and Tim Thompson on September 29, 2017. |
| E | 32 | Marc A. Levinson October 4, 2017 Email Memorandum to Riley Walter Attaching Proposed Loan Documents. |
| F | 95 | Marc Levinson September 26, 2017 Email Memorandum to McCormick Barstow Attaching Financial Documents Sent at 8:20 a.m. |
| G | 132 | Marc A. Levinson September 26, 2017 Email Memorandum to McCormick Barstow Attaching Financial Documents Sent at 8:26 a.m. |
| H | 168 | Marc A. Levinson September 26, 2017 Email Memorandum to McCormick Barstow Attaching Financial Documents Sent at 3:59 p.m. |
| I | 204 | Marc A. Levinson September 26, 2017 Email Memorandum to McCormick Barstow Attaching Financial Documents Sent at 4:06 p.m. |
| J | 224 | Marc A. Levinson September 27, 2017 Email Memorandum to McCormick Barstow Attaching Financial Documents Sent at 11:40 a.m. |
| K | 235 | Marc A. Levinson September 28, 2017 Email Memorandum to McCormick Barstow Attaching Financial Documents Sent at 3:13 p.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS A-K TO THE DECLARATION OF MARC A. LEVINSON

# EXHIBIT A



September 8, 2017

**By FedEx Overnight & E-Mail**

Tulare Local Healthcare District
dba Tulare Regional Medical Center
Attn: Chair of the Board
869 North Cherry Street
Tulare, CA 93274
sbell@tulareregional.org

**Orrick, Herrington & Sutcliffe LLP**
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017-5855

+1 213 629 2020

orrick.com

**Marshall B. Grossman**

E  mgrossman@orrick.com
D  +1 213 612 2255
F  +1 213 612 2499

Re:    Notice of Material Breach of Management Services Agreement

Dear Chairperson:

As you know, this firm is counsel to Healthcare Conglomerate Associates, LLC ("HCCA") (including Dr. Benzeevi in his capacity as its representative). Reference is made to the Management Services Agreement entered into between HCCA and Tulare Local Healthcare District, d/b/a Tulare Regional Medical Center (the "District"), dated May 29, 2014 (the "MSA"). Capitalized terms used in this notice not otherwise defined have the meanings set forth in the MSA.

This letter shall constitute a written notice by HCCA of the District's breach of the MSA and is given pursuant to Section 10(a)(i) of the MSA. We hereby notify the District that it has breached the MSA with respect to the following:

1.  In breach of Section 3(b)(iii), the District has failed to timely furnish HCCA with sufficient funds to timely pay the expenses relating to the Operations, including funding of operating expenses and non-operating expenses, since at least December 21, 2016, totaling $2,118,634.60. Breaches of Section 3 of the MSA are a material breach pursuant to Section 3(d)(iv).

2.  In breach of Section 3(d)(i), the District has interfered, directly or indirectly, with HCCA's decisions or the daily Operations, including HCCA's ability to perform its obligations under the MSA. This includes the District's interference, through Governing Body members Kevin Northcraft and Michael Jamaica, with HCCA's ability to obtain funding for the benefit of the Hospital. Breaches of Section 3 of the MSA are a material breach pursuant to Section 3(d)(iv).

3.  In breach of Section 3(d)(iii), the District and members of its Governing Body (Kevin Northcraft and Michael Jamaica) have disclosed confidential or negative information regarding, or taking any action that is materially detrimental to the reputation of, HCCA and Dr. Benzeevi that defame, disparage or in any way criticize their personal or business reputation, practices, or conduct. Examples of such statements were previously provided to Mr. Northcraft and Mr. Jamaica in my letter dated August 9, 2017 to them, and are incorporated by this reference. The complained of statements have not been made in good faith, as the District and the members of



Tulare Local Healthcare District
September 8, 2017
Page 2

the Governing Body have not used reasonable efforts to verify the truthfulness and objectivity of those statements prior to making or adopting them in a non-confidential forum, which would have revealed their inaccuracies. Breaches of Section 3 of the MSA are a material breach pursuant to Section 3(d)(iv).

4. In breach of Section 4(b)(iii), the District has failed to reimburse HCCA for expenses and charges incurred in connection with the Leased Employees. While HCCA has leased its employees pursuant to its obligations under the MSA, the District has failed to reimburse HCCA in the amount of $5,532,047.79 for these Leased Employees since at least July 31, 2015 as required by the MSA.

5. In breach of Section 6(a), the District has failed to pay HCCA the Management Fee. HCCA has provided management services pursuant to the MSA, and the District has failed to pay the required Management Fee, totaling $526,066.86, since at least August 1, 2017.

6. In breach of Section 6(c), the District has failed to reimburse HCCA's monthly expenses incurred on behalf of the District as of August 31, 2017.

7. In breach of Section 11(o), the District, through Governing Body members Kevin Northcraft and Michael Jamaica, has interfered with HCCA's ability to perform its obligations by purporting to unreasonably withdraw consent relating to third-party funding during unlawful meetings of the Governing Body.

8. The monetary breaches identified in paragraphs 1-2, and 4-6 can be cured by the District. If these breaches are not cured within ten (10) days as provided for in the MSA then they will be a District Default of the MSA according to the terms of the MSA.

Certain actions resulting in damage and liability to HCCA are not capable of being cured, including the breaches identified in paragraphs 3 and 7. If you consider otherwise, please so state and explain how they may be cured in reply to this letter.

This notice is without prejudice to HCCA's rights, claims and defenses, all of which are expressly reserved.

Sincerely yours,

*Marshall B Grossman*

Marshall B. Grossman

Exhibit A, Page 6



Tulare Local Healthcare District
September 8, 2017
Page 3

cc:     Dooley, Herr, Pedersen & Berglund Bailey; Attn: Kris Pedersen (*via email only*)
        McCormick Barstow LLP; Attn: Timothy Thompson *(via email only)*
        Baker Hostetler; Attn: Bruce Greene (*via email only*)

# EXHIBIT B



September 19, 2017

*By FedEx Overnight & E-Mail*


Tulare Local Healthcare District
dba Tulare Regional Medical Center
Attn: Chair of the Board
Tim Thompson, Esq.
869 North Cherry Street
Tulare, CA 93274
Tim.thompson@mccormickbarstow.com

**Orrick, Herrington & Sutcliffe LLP**
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017-5855

+1 213 629 2020
orrick.com

**Marshall B. Grossman**

E  mgrossman@orrick.com
D  +1 213 612 2255
F  +1 213 612 2499


Re:      Notice of District Default of Management Services Agreement

Dear Mr. Thompson and Chair:

As you know, this firm is counsel to Healthcare Conglomerate Associates, LLC ("HCCA") (including Dr. Benzeevi in his capacity as its representative). Reference is made to the Management Services Agreement entered into between HCCA and Tulare Local Healthcare District, d/b/a Tulare Regional Medical Center (the "District"), dated May 29, 2014 (the "MSA"). Capitalized terms used in this notice not otherwise defined have the meanings set forth in the MSA.

This letter shall constitute a written notice by HCCA of the District's Default of the MSA and is given pursuant to Section 10(e)(i) of the MSA. We hereby notify the District that it has breached the MSA, failed to cure such breaches, and is therefore in default with respect to the following:

1.  In breach of Section 3(b)(iii), the District has failed to timely furnish HCCA with sufficient funds to timely pay the expenses relating to the Operations, including funding of operating expenses and non-operating expenses, since at least December 21, 2016, totaling $2,118,634.60 (and $5,532,047.79 in expenses relating to the Leased Employees (*see* Paragraph 4, below)). Breaches of Section 3 of the MSA are a material breach pursuant to Section 3(d)(iv). The District has failed to cure this breach within the ten day cure period set forth in Section 10(a)(i), and is therefore in default.

    a)  As a result of the District's failure to timely furnish HCCA with sufficient funds pursuant to Section 3(b)(iii), HCCA submitted Requests for Funds to the District. Subsequently, HCCA loaned the District funds pursuant to Section 4(j)(i)(1), for the purpose of assisting the District to timely pay its expenses relating to its Operations, including expenses relating to the Leased Employees (*see* Paragraph 4, below). Section 4(j)(i)(1) states, the "advance of funds by [HCCA] … shall not cure any default of the District as a result of its failure to timely provide funds."

Exhibit B, Page 9



Tulare Local Healthcare District
September 19, 2017
Page 2

    b)  The following reflects the dates of the Requests for Funds and the amounts requested pursuant to Section 3(b)(iii).

- On December 21, 2016, HCCA submitted a Request for Funds in the amount of $1,064,729.80.

- On December 28, 2016, HCCA submitted a Request for Funds in the amount of $179,355.34.

- On December 29, 2016, HCCA submitted a Request for Funds in the amount of $27,502.46.

- On December 30, 2016, HCCA submitted a Request for Funds in the amount of $900,000.00 and $281,393.44.

- On March 31, 2017, HCCA submitted a Request for Funds in the amount of $1,800,000.00.

- On April 10, 2017, HCCA submitted a Request for Funds in the amount of $1,112,229.77.

- On May 8, 2017, HCCA submitted a Request for Funds in the amount of $1,105,835.33.

- On May 23, 2017, HCCA submitted a Request for Funds in the amount of $422,045.25.

- On June 6, 2017, HCCA submitted a Request for Funds in the amount of $1,134,399.70.

- On July 21, 2017, HCCA submitted a Request for Funds in the amount of $250,000.00.

- On July 31, 2017, HCCA submitted a Request for Funds in the amount of $1,500,401.01.

2. In breach of Section 3(d)(i), the District has interfered, directly or indirectly, with HCCA's decisions or the daily Operations, including HCCA's ability to exercise its rights and perform its obligations under the MSA. This includes the District's interference, through Governing Body members Kevin Northcraft and Michael Jamaica, with HCCA's ability to obtain funding for the benefit of the Hospital. Messrs. Northcraft and Jamaica have purported to hold "Special Board Meetings" and claimed to rescind and terminate HCCA's authority to enter into loans on behalf of the District without express Board approval. Breaches of Section 3 of the MSA are a material



Tulare Local Healthcare District
September 19, 2017
Page 3

breach pursuant to Section 3(d)(iv). The District has failed to cure this breach within the ten day cure period set forth in Section 10(a)(i), and is therefore in default.

3. In breach of Section 3(d)(iii), the District and members of its Governing Body (Kevin Northcraft and Michael Jamaica) have disclosed confidential or negative information regarding, or taking any action that is materially detrimental to the reputation of, HCCA and Dr. Benzeevi that defame, disparage or in any way criticize their personal or business reputation, practices, or conduct. Examples of such statements were previously provided to Mr. Northcraft and Mr. Jamaica in my letter dated August 9, 2017 to them, and are incorporated by this reference. The complained of statements have not been made in good faith, as the District and the members of the Governing Body have not used reasonable efforts to verify the truthfulness and objectivity of those statements prior to making or adopting them in a non-confidential forum, which would have revealed their inaccuracies. Breaches of Section 3 of the MSA are a material breach pursuant to Section 3(d)(iv). The District cannot cure its breach of Section 3(d)(iii), and is therefore in default.

4. In breach of Section 4(b)(iii), the District has failed to reimburse HCCA for expenses and charges incurred in connection with the Leased Employees. While HCCA has leased its employees pursuant to its obligations under the MSA, the District has failed to reimburse HCCA in the amount of $5,532,047.79 for these Leased Employees since at least July 31, 2015 as required by the MSA. *See* Paragraph 1(a)-(b), above, for additional details. The District has failed to cure this breach within the ten day cure period set forth in Section 10(a)(i), and is therefore in default.

5. In breach of Section 6(a), the District has failed to pay HCCA the Management Fee. HCCA has provided management services pursuant to the MSA, and the District has failed to pay the required Management Fee, totaling $526,066.86, since at least August 1, 2017. The District has failed to cure this breach within the ten day cure period set forth in Section 10(a)(i), and is therefore in default.

6. In breach of Section 6(c), the District has failed to reimburse HCCA's monthly expenses incurred on behalf of the District as of August 31, 2017. The District has failed to cure this breach within the ten day cure period set forth in Section 10(a)(i), and is therefore in default.

7. In breach of Section 11(o), the District, through Governing Body members Kevin Northcraft and Michael Jamaica, has interfered with HCCA's ability to perform its obligations by purporting to unreasonably withdraw consent relating to third-party funding during meetings reportedly of the Governing Body. *See* Paragraph 2, above. The District cannot cure its breach of Section 11(o), and is therefore in default.



Tulare Local Healthcare District
September 19, 2017
Page 4

If the claim of default is disputed by the District, please provide written notice of the factual matters disputed within ten (10) business days, and no later than October 3, 2017, pursuant to Section 10(e)(ii) of the MSA.

This notice is without prejudice to HCCA's rights, claims and defenses, all of which are expressly reserved.

Sincerely yours,

Marshall Grossman

Marshall B. Grossman

cc:     Dooley, Herr, Pedersen & Berglund Bailey; Attn: Kris Pedersen (*via email only*)
        Baker Hostetler; Attn: Bruce Greene (*via email only*)

OHSUSA:767398009.1

# EXHIBIT C

| From: | Monica Barsotti <Monica.Barsotti@mccormickbarstow.com> |
|---|---|
| Sent: | Friday, September 29, 2017 12:11 PM |
| To: | Levinson, Marc A.; Grossman, Marshall; Larsen, Cynthia J. |
| Cc: | Niki Cunningham; Tim Thompson; Mandy Jeffcoach; 'northee@aol.com'; 'mikejamaica@sbcglobal.net'; 'senovia@live.com' |
| Subject: | Tulare Local Healthcare District - Notice of Emergency Meeting of Board of Directors |
| Attachments: | 2017.09.29 NEC Ltr to Levinson, Grossman re Notice Emergency Meeting (TRMC).PDF |

Dear Counsel,

Attached is correspondence of today's date from our firm regarding the above-referenced matter. Should you have any questions, please do not hesitate to call.



**MONICA BARSOTTI**
Secretary

McCormick Barstow, LLP
7647 North Fresno Street
P.O. Box 28912
Fresno, CA 93729-8912
(559) 433-1300 main
(559) 433-2300 fax

Monica.Barsotti@mccormickbarstow.com

FRESNO  •  CINCINNATI  •  DENVER  •  LAS VEGAS  •  MODESTO

CONFIDENTIALITY NOTICE: E-mail may contain confidential information that is legally privileged. Do not read this e-mail if you are not the intended recipient. This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential and proprietary information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by forwarding this to info@mccormickbarstow.com or by telephone at (559) 433-1300, and destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.

Exhibit C, Page 14



**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

Timothy L. Thompson
Partner
(Admitted in California)
(559) 433-2134
tim.thompson@mccormickbarstow.com

Mandy L. Jeffcoach
Partner
(Admitted in California)
(559) 433-2359
mandy.jeffcoach@mccormickbarstow.com

Nikole E. Cunningham
Partner
(Admitted in California)
(559) 433-2233
niki.cunningham@mccormickbarstow.com

FRESNO, CA OFFICE
7647 North Fresno Street
Fresno, CA 93720
P.O. Box 28912
Fresno, CA 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

CINCINNATI, OH OFFICE
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

DENVER, CO OFFICE
999 18th Street, Suite 3000
Denver, Colorado 80202
Telephone (720) 282-8126
Fax (720) 282-8127

LAS VEGAS, NV OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101

MODESTO, CA OFFICE
1125 I Street, Suite 1
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

September 29, 2017

**VIA U.S. MAIL & E-MAIL**

Marc Levinson                          Marshall Grossman
Cynthia Larsen                         Orrick, Herrington & Sutcliffe LLC
Orrick, Herrington & Sutcliffe LLC     777 South Figueroa Street, Suite 3200
400 Capitol Mall, Suite 3000           Los Angeles, CA 90017
Sacramento, CA 95814-4497

Re:    Tulare Local Healthcare District: **NOTICE** of Emergency Meeting of the Board
       of Directors and Demand for Production of Documents
       Our File No.: 36894-00000

Dear Counsel:

We received Dr. Benzeevi's letter dated September 28, 2017, which was addressed to us
directly. Given that Dr. Benzeevi is represented by counsel, we do not intend to respond
directly to him but expect that you will promptly forward this letter to him.

As you know, last night we made several demands for information from HCCA and Dr.
Benzeevi. Specifically, we were advised by employees at the Tulare Regional Medical
Center that staff had not been paid by HCCA and were walking off the job. As a result,
we were advised that the Hospital was in imminent risk of closure, patient safety was in
jeopardy, and HCCA was taking steps to close the Hospital. We repeatedly demanded
specific information from HCCA and Dr. Benzeevi last night. However, consistent with
his prior conduct, Dr. Benzeevi refused to cooperate with the Board or provide the Board
with any meaningful information. Enclosed again are copies of our correspondence last
night, which contain the many demands for information by the Board.

In response, we finally received a letter from Dr. Benzeevi (emailed last night at 11:07
p.m.) wherein Dr. Benzeevi states that there is a "dire cash flow issue" at the Hospital,
and that the "District is COMPLETELY out of cash, that many vendors are threatening
to cease providing goods and services, and that the District lacks sufficient cash to fund
the entire gross payroll and that HCCA, which is owed in excess of $7 million, is
unwilling to extend further credit to the District." Additionally, Dr. Benzeevi states that
"Without immediate approval for the District to obtain prompt funding, the only
alternative will be for HCCA to move immediately to cease operations at the Hospital
and to consider immediately a plan over the next several days to close the Hospital."
Astonishingly, none of this specific information or plan to not pay employees was
disclosed to the Board during HCCA's, Dr. Benzeevi's, and Mr. Germany's financial
presentations at the Board meeting just one day prior on September 27.

**PLEASE BE ADVISED that the Board of Directors will be holding an
EMERGENCY Board Meeting tonight at 6:30 pm.** The agenda for the meeting is
enclosed for your review. **The Board demands that both Dr. Benzeevi and Alan**



**McCORMICK**
**BARSTOW LLP**
ATTORNEYS AT LAW

Marshall Grossman
Marc Levinson
Cynthia Larsen
September 29, 2017
Page 2

**Germany attend the emergency meeting tonight** and provide a detailed report to the Board of the financial condition of the District, the details of any proposed loans that HCCA believes are necessary for operational expenses, factual details regarding HCCA's failure to pay employees of the Hospital, and any efforts or other plans by HCCA to close the Tulare Regional Medical Center.

Regarding HCCA's request for loan approval, as you know beginning on September 1, 2017, we made demand that HCCA immediately provide the Board with information regarding any planned or anticipated loans by HCCA, requesting the following by letter:

> "To the extent that HCCA believes that the above-described loan, or some other loan, is necessary for the District's operation and maintenance of the Tulare Regional Medical Center, a loan proposal must be presented to the Board for its review and consideration. Such presentation should include the terms of the loan, the proposed lender, any planned security interest or pledge of the District's property, a disclosure of any and all personal interest that Dr. Benzeevi or any of his family members have in the proposed lending company, disclosure of any and all personal benefits or payments that Dr. Benzeevi or any of his family members would receive from the loan, disclosure of any potential conflicts of interest relating to the loan, the purpose of the loan, and HCCA's intended use and allocation of the funds received from the lender. If presented with this information, the Board will promptly consider the request and schedule a meeting to review, analyze, and determine whether or not to authorize the request."

HCCA failed to provide any of the requested information to the Board, and in fact altogether failed to respond to the letter. Despite HCCA's refusal to provide this information to the Board, Alan Germany inexplicably and falsely informed TRMC staff last night that HCCA has presented the Board with "a lot of information regarding loans", including the "details and terms of those loans" and "it's in the Board's hands now". As you know, Mr. Germany's statements regarding the loans are palpably false. No such information has been provided to the Board. HCCA has not even informed the Board of the amounts of the proposed loans, the proposed lender, or any of the other terms of the loan(s). We again renew our demand that such information be immediately provided to the Board, and Dr. Benzeevi and Mr. Germany should be prepared to discuss the details of any proposed loans tonight at the emergency meeting.

In addition, the District renews its demand that HCCA **immediately** provide complete and detailed financial information to the Board. As repeatedly demanded throughout the past month, and in numerous emails last night, HCCA must provide the Board with information and backup documentation regarding the District/TRMC's financial



McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

Marshall Grossman
Marc Levinson
Cynthia Larsen
September 29, 2017
Page 3

condition so that the Board can evaluate and respond to the financial crisis. Attached hereto is our letter of September 11, 2017 which outlines the District's demands for financial information. To date, HCCA has failed to comply with the District's demand for documents. Instead, HCCA has simply provided outdated balance sheets which are unaudited and meaningless to the overall picture of the District's financial condition and outstanding liabilities. Given the state of emergency at the Hospital, the District demands that the requested records be made available no later than Monday October 2, 2017.

We expect to receive HCCA's cooperation in providing the requested financial documentation, and look forward to Dr. Benzeevi's and Mr. Germany's presentation tonight at the emergency meeting.

Very truly yours,

Timothy L. Thompson
Mandy L. Jeffcoach
Nikole E. Cunningham
McCormick Barstow LLP

Encls.

cc:    Kevin Northcraft
       Mike Jamaica
       Senovia Gutierrez

36894-00000 4728185.1

Exhibit C, Page 17

## Monica Barsotti

| | |
|---|---|
| **From:** | Tim Thompson |
| **Sent:** | Thursday, September 28, 2017 10:29 PM |
| **To:** | 'Grossman, Marshall' |
| **Cc:** | 'Levinson, Marc A.'; 'Larsen, Cynthia J.'; Mandy Jeffcoach; Niki Cunningham |
| **Subject:** | RE: Tulare Hospital District |

Cynthia,

Below is a link to a video taken during a staff meeting tonight, which was called by HCCA to address HCCA's apparent failure to pay TRMC staff members.

http://www.visaliatimesdelta.com/videos/news/2017/09/28/raw-video-trmc-officials-call-thursday-%22internal-disaster%22/106103610/

As you will see in this video, contrasted with what we listened to last night, there are obvious false representations being made by Mr. Germany to the TRMC staff members. Specifically, Mr. Germany represents in this staff meeting that HCCA has presented the board with "a lot of information regarding loans", including the "details and terms of those loans", and "the board is going to be considering the loans". Mr. Germany goes on to say that HCCA "really anticipates the board approving the loans" and "it's in the board's hands now", while referencing a special meeting that is supposedly being held on Monday. Mr. Germany represented that discussions regarding these loans took place both in open and closed session last night. None of this occurred.

Consistent with my earlier requests this evening of your office to provide much needed information, will you also please immediately provide us with all of this information regarding loans, etc. that Mr. Germany, on behalf of HCCA, referenced in his staff meeting. The board has none of this information, and Mr. Germany's statements to the TRMC staff tonight were false and intentionally misleading.

---

**From:** Tim Thompson
**Sent:** Thursday, September 28, 2017 7:58 PM
**To:** 'Grossman, Marshall'
**Cc:** 'Levinson, Marc A.'; Larsen, Cynthia J.; Mandy Jeffcoach; Niki Cunningham
**Subject:** RE: Tulare Hospital District

Your clients know what they disclosed and failed to disclose last night at the Board meeting. The information requested here is straight forward and goes directly to the health and safety of the patients at TRMC: (1) has HCCA failed to pay any or all of the hospital employees, (2) have staff walked off the job or failed to report to work as a result of HCCA's failure to timely pay the hospital staff, (3) has the second floor of the hospital been closed due to the staff walking off the job, (4) is HCCA transferring or attempting to transfer the current patients (appx. 14-20) to other hospitals or otherwise discharge those patients from the hospital, (5) is HCCA attempting to discontinue emergency room services to the public, (6) has HCCA instructed staff to not admit any new patients to the hospital, and (7) is HCCA attempting to close the hospital in the near future without providing notice of that plan to the Board of Directors and without providing the required notices to the State and other agencies? You criticize the Board for relying on reports from the hospital staff, characterizing those reports as "rumors", but the people with answers to these simple questions – HCCA and Dr. Benzeevi – refuse to provide this information to the Board. It is critical that HCCA immediately answer these questions and provide the Board with this information. The Board must be informed of what is going on at the hospital.

**From:** Grossman, Marshall [mailto:mgrossman@orrick.com]
**Sent:** Thursday, September 28, 2017 7:38 PM
**To:** Tim Thompson
**Cc:** mlevinson@orrick.com; Larsen, Cynthia J.; Mandy Jeffcoach; Niki Cunningham
**Subject:** Re: Tulare Hospital District

It's unclear to me what specific report or reports and information you claim to be lacking. If you're now moving from speculation and rumors please send your request once again with clarity and we will respond if appropriate to do so. Your constant threats and false narrative's do not contribute to a civil exchange or discourse

Sent from my iPhone

> On Sep 28, 2017, at 5:44 PM, Grossman, Marshall <mgrossman@orrick.com> wrote:
>
> I have responded to your email and my response and invitation remains unchanged
>
> Sent from my iPhone
>
>> On Sep 28, 2017, at 5:40 PM, Tim Thompson <Tim.Thompson@mccormickbarstow.com> wrote:
>>
>> Please let us know whether these reports are accurate as we have been unable to obtain accurate and complete disclosures from your clients. As these are serious matters that impact the health of patients and public safety, we would appreciate your client's prompt response.
>>
>> Sent from my iPhone
>>
>> Tim Thompson
>> Attorney
>>
>> McCormick Barstow, LLP
>> 7647 North Fresno Street
>> P.O. Box 28912
>> Fresno, CA 93729-8912
>> (559) 433-1300 main
>> (559) 433-2300 fax
>>
>> Tim.Thompson@mccormickbarstow.com
>>
>> CONFIDENTIALITY NOTICE: E-mail may contain confidential information that is legally privileged. Do not read this e-mail if you are not the intended recipient. This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential and proprietary information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by forwarding this to info@mccormickbarstow.com or by telephone at (559) 433-1300, and destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.
>>
>> On Sep 28, 2017, at 5:33 PM, Grossman, Marshall <mgrossman@orrick.com<mailto:mgrossman@orrick.com>> wrote:

2

>>
>> With all due respect it is not my practice to reply to your unnamed sources without any supporting information to support that source or hearsay. In the past when you have identified unnamed sources for your information the information has proven to be false and without support. I refer for example to your recent letter reporting sources as telling you that there is a $100 million loan under consideration by our client. That proved to be false. We welcome your providing us with dates and related details and we will look into the matter if we believe it so merits. My client and I are each out of the office or on limited availability until Monday next because of the Jewish holiday. Marshall.
>> Sent from my iPhone
>>
>> On Sep 28, 2017, at 5:07 PM, Tim Thompson
<Tim.Thompson@mccormickbarstow.com<mailto:Tim.Thompson@mccormickbarstow.com>> wrote:
>>
>>
>>
>>
>> All,
>>
>> Several board members have been informed today of the following:
>>
>> 1. HCCA has failed to timely pay all of its employees that staff the Tulare Regional Medical Center. If this was planned, why wasn't this disclosure made to the public and board last night? Please provide information. We assume that you have warned your client of the potential consequences of this decision, including penalties by the Labor Commissioner and potential violation/penalties under the WARN Act.
>>
>> 2. That Dr. Benzeevi has called emergency staff meetings for tonight and tomorrow morning in which he plans to announce the rapid closure of the hospital and that he is in the process of discharging patients (including the 20 patients presently admitted to the hospital). Please confirm if this is true as again, this plan was not disclosed to the board or public last night. In addition, we assume you have warned your client of the prohibitions of such action without proper notice as required by, among other, the following authorities:
>>
>> a. Medicare requires at least 30 days' notice to close a hospital. See Social Security Act Section 1866(b)(1) and Medicare State Operations Manual Chapter 3-3046. Section 1866 of the Social Security Act is 42 USC Section 1395cc.
>>
>> b. State of California requires 90 and 30 days' notice to close a hospital.
>>
>> c. Health & Safety Code Section 1255.1 requires 90 days' notice to the State before terminating emergency services.
>>
>> d. Health & Safety Code Section 1255.25 requires 30 days' notice to CDPH and County Board of Supervisors before terminating other services.
>>
>> e. Health & Safety Code Section 1300 states:
>>
>> " (a) Any licensee or holder of a special permit may, with the approval of the state department, surrender his or her license or special permit for suspension or cancellation by the state department. Any license or special permit suspended or canceled pursuant to this section may be reinstated by the state department on receipt of an application showing compliance with the requirements of Section 1265.
>>
>> (b) Before approving a downgrade or closure of emergency services pursuant to subdivision (a), the state

3

department shall receive a copy of the impact evaluation of the county to determine impacts, including, but not limited to, an impact evaluation of the downgrade or closure upon the community, including community access to emergency care, and how that downgrade or closure will affect emergency services provided by other entities. Development of the impact evaluation shall incorporate at least one public hearing. The county in which the proposed downgrade or closure will occur shall ensure the completion of the impact evaluation, and shall notify the state department of results of an impact evaluation within three days of the completion of that evaluation. The county may designate the local emergency medical services agency as the appropriate agency to conduct the impact evaluation. The impact evaluation and hearing shall be completed within 60 days of the county receiving notification of intent to downgrade or close emergency services. The county or designated local emergency medical services agency shall ensure that all hospital and prehospital health care providers in the geographic area impacted by the service closure or change are consulted with, and that local emergency service agencies and planning or zoning authorities are notified, prior to completing an impact evaluation as required by this section. This subdivision shall be implemented on and after the date that the county in which the proposed downgrade or closure will occur, or its designated local emergency medical services agency, has developed a policy specifying the criteria it will consider in conducting an impact evaluation, as required by subdivision (c).

>>

>> (c) The Emergency Medical Services Authority shall develop guidelines for development of impact evaluation policies. On or before June 30, 1999, each county or its designated local emergency medical services agency shall develop a policy specifying the criteria it will consider in conducting an impact evaluation pursuant to subdivision (b). Each county or its designated local emergency medical services agency shall submit its impact evaluation policy to the state department and the Emergency Medical Services Authority within three days of completion of the policy. The Emergency Medical Services Authority shall provide technical assistance upon request to a county or its designated local emergency medical services agency."

>>

>> If the information we have been provided is accurate, HCCA/Dr. Benzeevi's conduct is in violation of the law and is greatly jeopardizing patient safety and the health and safety of the public. If HCCA/Dr. Benzeevi continues to take such action, the Board will be forced to take immediate and emergent action. We look forward to your prompt response as the Board must act quickly to respond to these serious concerns. The District reserves all rights, and if Dr. Benzeevi/HCCA continue to act in such an unlawful manner, it will be at their peril and such action is in no way authorized by the District.

>>

>> Be guided accordingly.

>>

>>

>>

>>

>>

>>

>>

>> <117092820074202965.png><https://us-api.mimecast.com/s/click/F2A44qlyvx7D1oreXULOBaRqIuBC3TOL8Jh1CuGA2XVpOLAraFhGWQuvET9g3smeGfRvM4L61aZeShcA58abbIVuYfc2e8tNKAoDu3haUp9lSx40whIGt2mAYLk6rgtSciCFu_qH-IScS6coRuLOmIOLUIaux9ucVfgMiOhigXU>

>>

>>

>> Tim Thompson

>> Attorney

>>

>> McCormick Barstow, LLP

>> 7647 North Fresno Street

4

\>> P.O. Box 28912
\>> Fresno, CA 93729-8912
\>> (559) 433-1300 main
\>> (559) 433-2300 fax
\>>
\>> Tim.Thompson@mccormickbarstow.com<mailto:Tim.Thompson@mccormickbarstow.com>
\>>
\>>
\>> <117092820074201865.png><https://us-
api.mimecast.com/s/click/gNXpRy8Di3hABeg9FCvOkDZWFuDr_FowwI6bMa80wgQUPrKkHtHIw9i84eq_c
6i2IPh6ueCEKkhDIm_MBw4zHzTUTuSBcF5HuEJmSelaFeTiQcrDJFmKaLHlFf4Aj7UT9QcHD4EZ1WLzW
XjTQbM_9mVAfsi0V54KNkxmL1ypgFA>
\>>
\>> <117092820074202465.png><https://us-
api.mimecast.com/s/click/F2A44qlyvx7D1oreXULOBYsmBKczSyyq7qBe3UQNuOrtSDvnFAT6WoBFTmiok
ilSwcWP8So46P4VhYzVPQQr6jTUTuSBcF5HuEJmSelaFeTiQcrDJFmKaLHlFf4Aj7UT9QcHD4EZ1WLzW
XjTQbM_9pgIJVYiCTno5NCIFKVow0w>
\>>
\>>
\>> CONFIDENTIALITY NOTICE: E-mail may contain confidential information that is legally privileged. Do
not read this e-mail if you are not the intended recipient. This e-mail transmission, and any documents, files or
previous e-mail messages attached to it may contain confidential and proprietary information that is legally
privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended
recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information
contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this
transmission in error, please immediately notify us by forwarding this to
info@mccormickbarstow.com<mailto:info@mccormickbarstow.com> or by telephone at (559) 433-1300, and
destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.
\>>
\>>
\>> NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and
may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination,
distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return
e-mail and please delete this message from your system. Thank you in advance for your cooperation.
\>>
\>> For more information about Orrick, please visit http://www.orrick.com<http://www.orrick.com/>.

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be
a communication privileged by law. If you received this e-mail in error, any review, use, dissemination,
distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return
e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com<http://www.orrick.com/>.

Tulare Local Health Care District
Board of Directors

EMERGENCY Meeting Agenda
Friday September 29, 2017
Board Convenes at 6:30 p.m.
First Congregational United Church of Christ
220 W. Tulare Ave., Tulare CA

I.     Call to order

II.    Public Comment

III.   Open Session

      a)     Acceptance of resignation of Richard Torrez

      b)     Discussion regarding financial condition of the District

      c)     Discussion regarding options to respond to financial crisis

            1.     Closure of hospital

            2.     Loan(s) for operational and other costs

            3.     Chapter 9 Bankruptcy

      d)     Discussion regarding financial records, including IT systems

IV.    Closed Session

      a)     Conference with Interim Legal Counsel – Initiation of Litigation (Gov. Code §
           54956.9) – 1 matter

V.     Open Session

      a)     Hearing regarding Fiscal Emergency

      b)     Consideration of Declaration of Fiscal Emergency

VI.    Adjournment

36894-00000 4727838.1



**McCORMICK**
**BARSTOW LLP**
ATTORNEYS AT LAW

Timothy L. Thompson
Partner
(Admitted in California)
(559) 433-2134
tim.thompson@mccormickbarstow.com

Mandy L. Jeffcoach
Partner
(Admitted in California)
(559) 433-2399
mandy.jeffcoach@mccormickbarstow.com

Nikole E Cunningham
Partner
(Admitted in California)
(559) 433-2233
niki.cunningham@mccormickbarstow.com

FRESNO, CA OFFICE
7647 North Fresno Street
Fresno, CA 93720
P.O. Box 28912
Fresno, CA 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

CINCINNATI, OH OFFICE
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

DENVER, CO OFFICE
999 18th Street, Suite 3000
Denver, Colorado 80202
Telephone (720) 282-8126
Fax (720) 282-9127

LAS VEGAS, NV OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101

MODESTO, CA OFFICE
1125 I Street, Suite 1
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

September 1, 2017

**Via U.S. Mail & E-Mail**

Bruce Greene
Baker Hostetler
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025

Marshall Grossman
Orrick
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

Re:    Tulare Local Healthcare District
       Our File No.: 36894-00000

Dear Mr. Greene and Mr. Grossman:

It has come to our attention that HCCA (through Dr. Benzeevi and other agents) is attempting to obtain a loan on behalf of the Tulare Local Healthcare District ("the District") for approximately $100 million, using the District's real and personal property as collateral for such loan. The District demands that HCCA immediately cease and desist from such efforts unless and until approved by the Board. We request written confirmation from you that HCCA will follow this instruction.

As you know, the Board took action on July 27, 2017 at its special meeting to rescind Resolution Nos. 851 and 852. In so doing, the Board rescinded and terminated HCCA's authority to enter into loans on behalf of the District without the express approval of the Board, and similarly terminated HCCA's authority to use the District's property as collateral and security for such loans. HCCA was provided with notice of this Board action following the July 27, 2017 special meeting. Despite the clear directive of the Board, we are informed that HCCA, Dr. Benzeevi, and other employees/agents of HCCA are presently taking inventory of all of the District's real and personal property with the intent of pledging such property as security for a loan in the amount of $100 million. You are hereby on notice that the Board does not consent to, authorize, or approve of such action.

To the extent that HCCA believes that the above-described loan, or some other loan, is necessary for the District's operation and maintenance of the Tulare Regional Medical Center, a loan proposal must be presented to the Board for its review and consideration. Such presentation should include the terms of the loan, the proposed lender, any planned security interest or pledge of the District's property, a disclosure of any and all personal interest that Dr. Benzeevi or any of his family members have in the proposed lending company, disclosure of any and all personal benefits or payments that Dr. Benzeevi or any of his family members would receive from the loan, disclosure of any potential conflicts of interest relating to the loan, the purpose of the loan, and HCCA's intended use and allocation of the funds received from the lender. If presented with this information, the Board will promptly consider the request and schedule a meeting to review, analyze, and determine whether or not to authorize the request.



McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

Bruce Greene
Marshall Grossman
September 1, 2017
Page 2

However, if HCCA continues to pursue this or other loans without Board approval, be advised that it does so without legal authority or authorization by the District's Board. In the event that any damages are incurred by the District from HCCA's and Dr. Benzeevi's refusal to heed this instruction, the District intends to pursue all legal remedies available, including but not limited to injunctive relief.

If you have any questions, please feel free to contact us.

Very truly yours,

Timothy L. Thompson
Mandy L. Jeffcoach
Nikole E. Cunningham
McCormick Barstow LLP

Cc:    Kevin Northcraft (*via email only*)
       Mike Jamaica (*via email only*)
       Senovia Gutierrez (*via email only*)
       Richard Torrez (*via email only*)

36894-00000 4685036.1



**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

Timothy L. Thompson
Partner
(Admitted in California)
(559) 433-2134
tim.thompson@mccormickbarstow.com

FRESNO, CA OFFICE
7647 North Fresno Street
Fresno, CA 93720
P.O. Box 28912
Fresno, CA 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

CINCINNATI, OH OFFICE
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

DENVER, CO OFFICE
999 18th Street, Suite 3000
Denver, Colorado 80202
Telephone (720) 282-8126
Fax (720) 282-8127

LAS VEGAS, NV OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101

MODESTO, CA OFFICE
1125 I Street, Suite 1
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

September 11, 2017

**VIA U.S. MAIL & E-MAIL**

Marc Levinson                          Marshall Grossman
Orrick                                 Orrick
400 Capitol Mall, Suite 3000           777 South Figueroa Street, Suite 3200
Sacramento, CA 95814-4497              Los Angeles, CA 90017

Re:    Tulare Local Healthcare District
       Our File No.: 36894-00000

Dear Mr. Levinson and Mr. Grossman:

As a follow-up to our meeting on September 6, 2017, the following is our document request. Keep in mind this request is being made consistent with Paragraph 7 (g) of the Management Services Agreement. While the section calls for an inspection to occur, based on our meeting and ongoing dialogue, we would request that the documents be electronically provided.

As we indicated, the production of these documents will allow us to begin evaluating this matter with an eye towards resolution. Until we have the necessary information, we are not in a position to fully advise our client; hence the request for the following information:

❖ All financial statements for the District/Hospital from 2013 to the present;

❖ All balance sheets for the District/Hospital from 2013 to the present;

❖ All profit and loss statements for the District/Hospital from 2013 to the present;

❖ The detailed trial balances for the District's general ledger on a quarterly and annual basis from 2013 to the present;

❖ The chart of accounts for the District's general ledger describing the accounts, sub-accounts, assigned account numbers and other descriptions;

❖ All cost reporting for the District/Hospital from 2013 to the present;

❖ All payroll reports for the last 2 years;

❖ Monthly bank reconciliations for the last 2 years;

❖ All vendor contracts for the District/Hospital from 2013 to the present;

❖ All accounts receivables for the District/Hospital from 2013 to the present;



McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

Bruce Greene
Marshall Grossman
September 11, 2017
Page 2

❖ Current accounts payable for the District/Hospital;

❖ Audited financial statements for 2015, 2016 and 2017 (assuming 2017 is available) for the District/Hospital;

❖ All loan agreements and/or promissory notes between HCCA and the Hospital/District;

❖ All loan agreements and/or promissory notes made by the Hospital/District to third parties;

❖ All loan agreements and/or promissory notes to which the Hospital/District have a repayment obligation;

❖ All documents, including but not limited to any accountings, loan documents, and bank records which evidence the approximate $7.6 million HCCA claims it is owed from the District/Hospital;

❖ List of all pending lawsuits naming HCCA and/or TRMC;

❖ The most recent 9900 filed with the IRS (assuming there is one);

❖ Copies of all engagement letters between the District/Hospital and any lawyer and/or accountant;

❖ Copies of all engagement letters between HCCA/Dr. Benzeevi and any lawyer and/or accountant for which the lawyer and/or accountant was paid with District funds;

❖ Signature cards for all bank accounts for the District/Hospital;

❖ Employment contracts that may exist between the District/Hospital and third parties;

❖ A check disbursement record for the last year;

❖ A vendor report identifying the current status of all vendors and the current obligation to each; and

❖ All requests for funding made on behalf of the District/Hospital in the last year.



McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

Bruce Greene
Marshall Grossman
September 11, 2017
Page 3

We look forward to hearing from you.

Very truly yours,

Timothy L. Thompson
Mandy L. Jeffcoach
Nikole E. Cunningham
McCormick Barstow LLP

36894-00000 4695565.1

# EXHIBIT D

| | |
|---|---|
| **From:** | Tim Thompson <Tim.Thompson@mccormickbarstow.com> |
| **Sent:** | Friday, September 29, 2017 2:35 PM |
| **To:** | Grossman, Marshall |
| **Cc:** | Levinson, Marc A.; Larsen, Cynthia J. |
| **Subject:** | RE: Response to your letter regarding tonight's board meeting |

Counsel,

As we have requested for over a month, if your clients have any financial plans, loan proposals, schedule of accounts receivable and other liabilities of the District, that they have to address the dire financial crisis they have created for the District, they should immediately forward that information for the Board's consideration at tonight's meeting that has been properly noticed. By dodging these simple requests, HCCA/Benzeevi has created their own problem. Now the District's Board must act.

The calling of this emergency meeting is absolutely necessary and justified based on the imminent risk to public safety, the apparent inability to staff the emergency room, the failure to pay all employees, the risk of closure by HCCA or governmental agencies such as CDPH, and the cash/liquidity crisis acknowledged by Mr. Germany and Dr. Benzeevi. For those reasons, the Board cannot delay tonight's emergency meeting. Although Dr. Benzeevi is entitled to not attend the meeting based on his observance of Yom Kippur, there is no reason Mr. Germany cannot attend by phone or personally as we understand he was at the hospital today holding meetings along with Dr. Benzeevi. If he would like to call by phone, please let us know and we will try to make arrangements. In addition, if HCCA has other employees/consultants that could present its plans, they are certainly welcome to attend. We also have not yet received the information requested last night as represented by Mr. Germany to employees regarding loan terms, amounts and other key details he claimed were given to the Board on Wednesday night, when no such information was provided. The Board would very much like to see what he was referring to in his meeting with the staff.



**TIM THOMPSON**
Attorney

McCormick Barstow, LLP
7647 North Fresno Street
P.O. Box 28912
Fresno, CA 93729-8912
(559) 433-1300 main
(559) 433-2300 fax

Tim.Thompson@mccormickbarstow.com

FRESNO     •     CINCINNATI     •     DENVER     •     LAS VEGAS     •     MODESTO

CONFIDENTIALITY NOTICE:  E-mail may contain confidential information that is legally privileged.  Do not read this e-mail if you are not the intended recipient.  This e-mail transmission, and

1

any documents, files or previous e-mail messages attached to it may contain confidential and proprietary information that is legally privileged.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify us by forwarding this to info@mccormickbarstow.com or by telephone at (559) 433-1300, and destroy the original transmission and its attachments without reading or saving it in any manner.  Thank you.

**From:** Grossman, Marshall [mailto:mgrossman@orrick.com]
**Sent:** Friday, September 29, 2017 2:05 PM
**To:** Tim Thompson
**Cc:** Levinson, Marc A.; Larsen, Cynthia J.
**Subject:** Re: Response to your letter regarding tonight's board meeting

Sent from my iPhone

On Sep 29, 2017, at 1:46 PM, Levinson, Marc A. <MALEVINSON@Orrick.com> wrote:

> Tim
>
> We are in receipt of your letter emailed at 12:15 p.m. today scheduling an "emergency meeting" for 6:30 this evening.   The letter is laden with half-truths and outright false statements.    But that aside, the letter demands that Dr. Benzeevi and Alan Germany personally appear  at such meeting.   You and your clients may know that Dr. Benzeevi is not available this evening because Yom Kippur, the most important and most holy Jewish holiday, starts at sundown today and ends at sundown on Saturday.   Our faith mandates that one not do any work on Yom Kippur. For example, Marc will not be reading or responding to emails during that period.  Nor do I intend to do so.

My understanding is that Mr. Germany is physically unable to attend a meeting tonight because he is not in California.

We understand that there already is a special meeting scheduled for next Monday evening at which Dr. Benzeevi and Mr. Germany will be present.  Dr. Benzeevi has authorized us to represent to you that nothing will be happening between now and then to close the hospital.   Thus there is no need for an emergency meeting on that topic tonight.   Dr. Benzeevi looks forward to appearing before the board on Monday.

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com.

# EXHIBIT E

**From:** Levinson, Marc A.
**Sent:** Wednesday, October 4, 2017 6:21 PM
**To:** Riley C. Walter (rileywalter@w2lg.com) <rileywalter@w2lg.com>; 'Tim Thompson' <Tim.Thompson@mccormickbarstow.com>
**Cc:** Grossman, Marshall <mgrossman@orrick.com>
**Subject:** Tulare -- Critical funding issues

Tim and Riley,

The next payroll at the Hospital is due on Tuesday, October 10. The payroll will be at least $1.2 million, and HCCA has informed me that the projection is that there will be no funds in the District account to pay the approximately $1.2 million or any portion thereof.   The funds that the Hospital has received on a daily basis have been used to keep the Hospital open and operational, for example by paying for the disposal of medical waste and paying the emergency room doctors, among others.

HCCA has offered repeatedly to present loan options for Board consideration.  However, the Board has been completely unwilling to consider such options and instead approved a chapter 9 filing at the emergency meeting held on six hours' notice on Yom Kippur and after notice from Marshall Grossman that HCCA could not attend.  The District rejected HCCA's offer of September 28 to present loan proposals at a special meeting on October 2, and has revoked HCCA's authority to enter into loan arrangements on behalf of the District.  As per Riley's request of yesterday, HCCA has forwarded to me and I have attached the documentation of the two proposed loans that Dr. Benzeevi would have provided the Board at such hearing.

Even if the Board changed direction and considered obtaining HCCA's proposals for loans from third party lenders, in light of the chapter 9 filing, there is not time to finalize the loans in order to fund next

1

Tuesday's payroll because the putative lenders are demanding collateral, and it is unlikely that a hearing on a motion under Bankruptcy Code section 364(c) could occur on or before the day after tomorrow.

As noted in my email to Riley sent at 2:44 this afternoon, HCCA is unwilling to consider loaning the District additional money for the funding of payroll without coming to a clear understanding with the District as to how such funding will be repaid.    Please let me know what assurance the Board is willing to give HCCA to ensure that *if* HCCA makes payments in the future for the benefit of the District – e.g. extends credit to the District in order to keep the hospital operational – it will be repaid.   At the very least, the District should offer a super priority and a lien under 364(c), which is incorporated into chapter 9 by 901(a).

In summary, without the District providing clarity as to how it will fund the payroll, HCCA will have no choice but to dismiss its employees at the end of the present payroll cycle at 12:01 a.m. on Saturday, October 8, which will lead to cessation of services at the Hospital and its closure.  HCCA will continue to honor its obligations under the MSA to continue to manage operations after the closure of the Hospital.  Short of immediate clarity from the Board as to how the District plans to meet its funding obligations, HCCA has no choice but to notify the California Department of Healthcare Services and other appropriate governmental entities of the Hospital's impending closure in order to protect the patients there.

Marc

**Marc Levinson**
Senior Counsel

Orrick

Sacramento Ⓥ
T (916) 329-4910
malevinson@orrick.com



Distressed Download Blog

Exhibit E, Page 34

261 N. Highway 101, Solana Beach, CA 92075
Ph. 858-259-4794     Fax 858-259-7076
.

August 31, 2017

Alan W. Germany
**Tulare Local Health Care District**
**d/b/a Tulare Regional Medical Center**
869 N. Cherry Street
Tulare, CA 93274

RE:     State and Municipal Lease Purchase Equipment Lease Agreement No. HGF070117, between Leasing Innovations, Incorporated, as Lessor, and Tulare Local Health Care District d/b/a Tulare Regional Medical Center, as Lessee.

Dear Mr. Germany:

Enclosed, please find the following documents, pertaining to the above-referenced transaction:

1. (2) Lease Agreements No. HGF070117
2. (1) Rider to Lease
3. (1) Essential Use Certificate
4. (1) Municipal Certificate
5. (1) Opinion of Council Letter (must be dated by or before September 1, 2017)
6. (1) Invoice for Advance Payments and Fees
7. (2) Schedule A's
8. (2) Concluding Payment Schedules
9. (1) Exhibit B
10. (1) ACH
11. (1) Bill of Sale
12. (1) Deed of Trust with Assignment of Rents (must be Notarized)
13. (1) Addendum to Lease (Section 3 must be completed)

Please have all appropriate documents executed on behalf of Tulare Local Health Care District dba Tulare Regional Medical Center, and return them, to my attention at **261 N. Highway 101, Solana Beach, CA 92075.**

We will also need you to complete the insurance authorization information on the Rider to the Lease so we may properly request the insurance certificate from your broker or insurance carrier.

We also need proof of the Federal Identification Number for Tulare Local Health Care District.

Please feel free to call me at 858-259-4794 if you have any questions. Thank you.

Sincerely,

Brian Snider
Contracts Coordinator
LEASING INNOVATIONS, INCORPORATED
*Teamwork, dedication, and communication, a solid foundation for a solid future.*



**Leasing**
INNOVATIONS
INCORPORATED
261 N. Highway 101
Solana Beach, CA 92075
Ph. 858.259.4794  Fax 858.259.7079

# STATE AND MUNICIPAL LEASE-PURCHASE AGREEMENT ("LEASE") No. HGF070117

1. LESSEE  Tulare Local Health Care District d/b/a Tulare Regional Medical Center
2.          869 N. Cherry Street
            Tulare, CA 93274

Equipment location: 869 N.Cherry Street
                    Tulare, CA 93274

2A. VENDOR:  Multiple Vendors: See Attached Exhibit B

2B. LESSOR:  Leasing Innovations, Incorporated
             261 N. Highway 101
             Solana Beach, CA  92075

2C. ASSIGNEE:

3. "THE EQUIPMENT" (See Attached Schedule A and Deed of Trust with Assignment of Rents):

| QUANTITY | DESCRIPTION | CASH PRICE | PRINCIPAL AND INTEREST PAYMENT |
|---|---|---|---|
| See Schedule A | | | |

4. **COVENANTS:** LESSEE represents, covenants and warrants that (a) It is a political subdivision of the State of California (b) It is authorized by all applicable laws to perform this Lease, (c) The Equipment is essential and needed for its proper, efficient and economic operation, (d) At the time of making the Lease, sufficient funds were appropriated to fulfill the obligations for the current fiscal year, and (e) LESSEE has not previously terminated an agreement substantially similar to the Lease for non-appropriation except as specifically described in a letter appended hereto.

5. **PAYMENTS:** 72  monthly payments of  $121,600.00  per month are required. The first payment will be due on  September 1, 2017. Subsequent payments will be due on the same day of each month thereafter.  All payments will be made, subject only to non-appropriation as described in Section 7, below.  Each payment will consist of principal and interest as detailed in an amortization schedule to be supplied and made a part of this Lease as Exhibit A.

6. **PURCHASE OPTION:**  After making all of the payments, LESSEE may purchase the Equipment for $1.  At any other time, LESSEE may purchase the Equipment for the "Concluding Payment" value shown in the amortization schedule attached hereto as Exhibit A.

7. **NON-APPROPRIATION:**  If LESSEE is not allotted funds for the next Fiscal Period to continue the payments under this Lease, and has no funds for the purchase, lease or rental of the Equipment or equipment which will perform functions similar to those performed by the EQUIPMENT, and has no funds from other sources, LESSEE may terminate this lease at the end of the then current Fiscal Period, by giving ninety (90) days' written notice prior to the end of such Fiscal Period to LESSOR, and enclosing therewith a sworn statement by an appropriate officer of the LESSEE that the foregoing conditions exist.  **In this sole event**, LESSEE shall not be obligated to make payments beyond the end of the then current Fiscal Year.  Upon the occurrence of this event, LESSEE agrees, if requested, that it will provide LESSOR with an opinion of its counsel relating to the circumstances of non-appropriation. Upon the occurrence of this event, LESSEE shall, at it's sole expense, both restore the Equipment to its original condition, allowing for reasonable wear and tear, and return it to the LESSOR, or to a place designated by the LESSOR.

8. **PAYMENTS UNCONDITIONAL:**  LESSEE HAS EXAMINED, TESTED AND ACCEPTED THE EQUIPMENT COVERED BY THIS LEASE.  AS LONG AS FUNDS HAVE BEEN LEGALLY APPROPRIATED, IT WILL NOT FAIL TO MAKE AGREED PAYMENTS, REGARDLESS OF LOSS, DAMAGE, DESTRUCTION, MALFUNCTION OR DISREPAIR OF THE EQUIPMENT, OR DISPUTE WITH THE VENDOR FOR ANY REASON.

9. **DISCLAIMER OF WARRANTIES:**  THERE ARE NO IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY.  LESSOR OR ANY SUCCESSOR ASSIGNEE SHALL NOT BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR SPECIAL DAMAGES.

10. **OTHER GENERAL TERMS AND CONDITIONS:** See Reverse Side.

11. **SIGNATURES:**  Each signer warrants that he/she has full power and authority to bind LESSOR and LESSEE, respectively.

LESSEE: TULARE LOCAL HEALTH CARE DISTRICT
        D/B/A TULARE REGIONAL MEDICAL CENTER

Signature: _____

Title: _____ CEO _____

Date of this Lease: _____

Federal Identification Number: _____

LESSOR:  LEASING INNOVATIONS, INCORPORATED

Signature: _____

Title: _____ President _____

## ACCEPTANCE CERTIFICATE

The EQUIPMENT was specified and selected by us.  We have received it in good order and condition, and it is acceptable to us.  We approve payment by you to the VENDOR, and hereby certify that the VENDOR has fully and satisfactorily performed all of its obligations under the purchase agreement for the Equipment.  This will advise you that we have carefully read the Lease, and are fully aware of our obligations under it.  WE AGREE TO ENFORCE, IN OUR OWN NAME, ALL WARRANTIES OR REPRESENTATIONS, WHICH THE VENDOR HAS MADE TO US.

LESSEE: TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER

By: _____  Title: ____ CEO ____  Acceptance Date: ____ September 1, 2017 ____

## SIGNER: THESE ARE SOME OF THE IMPORTANT STATEMENTS INCLUDED IN THIS AGREEMENT

• THE LESSEE IS A STATE OR POLITICAL SUBDIVISION THEREOF, AND HAS AN ESSENTIAL, CONTINUING NEED FOR THE EQUIPMENT.
• YOU ARE AUTHORIZED TO BIND THE LESSEE, AND YOU ARE NOT RELYING ON ANY REPRESENTATIONS, OR PROMISES, MADE TO YOU WHICH ARE NOT STATED IN THIS WRITTEN AGREEMENT.
• YOU ARE AWARE OF THE NON-APPROPRIATION CANCELLATION PRIVILEGE, AND UNDERSTAND THAT IT IS A "LAST-RESORT" PROTECTIVE PROVISION, WHICH YOU DO NOT NOW INTEND OR FORESEE WILL BE USED, AND YOU HAVE NOT PREVIOUSLY USED IT TO END A SIMILAR AGREEMENT, UNLESS SPECIFICALLY DISCLOSED TO US IN WRITING.
• YOU UNDERSTAND THAT, EXCEPT FOR NON-APPROPRIATION, THE OBLIGATION TO MAKE PAYMENTS IS UNCONDITIONAL.● IN THE EVENT OF A DISPUTE WITH THE VENDOR, FOR ANY REASON, YOU WILL HAVE NO RIGHT TO WITHHOLD, OR DELAY, ANY PAYMENTS.

## GENERAL TERMS AND CONDITIONS

(a)   **TITLE:** Title to the Equipment shall at all times be and remain with LESSEE, subject to the security interest of LESSOR, LESSEE agrees to affix to the Equipment a tag, if provided by Lessor, stating LESSOR'S interest in the Equipment.

(b)   **REPAIRS:** LESSEE, at its sole expense, shall maintain the Equipment in good operating condition and state of repair. The payments specified herein do not include maintenance or repair services, or repair or replacement parts for the Equipment, unless separately stated.

(c)   **TAXES:** In addition to payments specified herein, LESSEE shall promptly pay all taxes, assessments and other governmental charges (including penalties, interest, recording and registration fees, if any) levied or assessed: (1) upon the LESSEE'S interest in, or use of operation of, or earnings arising from the Equipment: and (2) against LESSOR, on account of its ownership, use or operation, leasing to the LESSEE of the Equipment or receipt of payments or earnings from it, exclusive, however, of taxes based on net income of LESSOR.

(d)   **INSPECTION:** LESSEE shall have the right to enter the premises where the Equipment is located, at all reasonable times, to inspect the Equipment and otherwise determine LESSEE'S compliance with the terms of this Lease.

(e)   **ALTERATIONS:** LESSEE shall make no alterations or affix any attachments to the Equipment without the prior written consent of LESSOR.

(f)   **THIRD-PARTY INJURY:** LESSOR shall not be liable for injury to any person or damage to property resulting directly or indirectly from the operation or use of the Equipment. LESSEE shall indemnify and save LESSOR and its assignee(s) harmless from and against any loss, damage, liability or expenses (including attorneys' fees) claimed with respect to injury to any person or damage to property resulting directly or indirectly from the operation or use of the Equipment.

(g)   **NON-ASSIGNABILITY BY LESSEE:** This Lease is personal to LESSEE. LESSEE shall not assign, sub-lease, transfer or otherwise encumber its rights in and to this Lease or the Equipment without the prior written consent of the LESSOR.

(h)   **RISK OF LOSS:** LESSEE shall bear the risk of loss, damage or destruction to the Equipment during the term of the Lease. In such event, LESSEE shall either (1) restore the equipment to good repair, condition and working order, in which event this Lease shall remain in full force and effect without abatement of payments: or (2) pay to LESSOR an amount equal to the option to purchase value immediately prior to the loss, damage or destruction, plus any late charges and interest at 12% per annum from the due date of such payment until paid. In such event this Lease shall terminate as to the equipment for which such payment is made at the time such payment is made.

(i)   **DEFAULT:** In the event of default by LESSEE in the payment of any sums due under this Lease within ten (10) days after they are due, or receivership, insolvency, or proceedings by or against LESSEE under the bankruptcy laws, or LESSEE'S failure to observe or perform any other required provision of this Lease, and such default continues for fifteen (15) days after written notice thereof, by LESSOR to LESSEE, LESSOR shall have the right to exercise any one or more of the following remedies: (1) to declare all sums due and to become due hereunder, during the LESSEE'S current fiscal period, immediately due and payable, without notice or demand to LESSEE: (2) to sue for and recover all payments then accrued or thereafter accruing with respect to the Equipment: (3) to take possession of the Equipment without demand or notice wherever it may be located, with or without legal process, and retain it free from any claims of LESSEE whatsoever: (4) to terminate this Lease: or (5) to pursue any other remedy at law or in equity. Notwithstanding any repossession or any other action which LESSOR may take, LESSEE shall be and remain liable for the full performance of all of its obligations under this Lease unless LESSOR elects, at its option, to sell or re-lease any of the repossessed Equipment to a third party, in which event the net proceeds of such sale or lease, less LESSOR'S expenses incurred in connection therewith, including attorney's fees, shall be applied to the balance due by LESSEE under this Lease and LESSEE shall be obligated to pay LESSOR any deficiency. All of the foregoing remedies are cumulative and may be exercised concurrently or separately. LESSEE shall pay all costs and legal expenses incurred by LESSOR in collecting or attempting to collect, any sums due hereunder or in securing possession of the Equipment. LESSEE consents to the personal jurisdiction of the courts of the State of California, or Commonwealth of Massachusetts , with respect to any dispute arising out of this Lease.

(j)   **PERSONAL PROPERTY:** LESSEE warrants that the Equipment is, and shall at all times during the Lease term remain, personal property.

(k)   **ASSIGNMENT BY LESSOR:** This Lease, the Equipment and any payments by LESSEE due or to become due under it, may be assigned or otherwise transferred, either in whole or in part, by LESSOR and its assignee, without affecting any obligations of LESSEE, and in such event LESSOR'S transferee or assignee shall have all the rights, powers, privileges and remedies of LESSOR hereunder to the extent of such transfer or assignment. Any assignee's rights shall be free from all defenses, set-offs or counterclaims, which LESSEE may have. No assignee shall be obligated to perform any duty or condition required to be performed by LESSOR under the terms of this Lease.

(l)   **DETERMINATION OF PAYMENT AMOUNT:** LESSOR and LESSEE hereby acknowledge that the amount of the periodic payments under this Lease has been established by negotiation between LESSEE and LESSOR, and have been agreed to by them. Such amount contemplates the addition to the equipment cost of compensation for the securing of third party funding of this Lease. LESSOR and LESSEE agree that the interest payments to the LESSOR, or a successor assignee, as shown on the supplied amortization schedule, shall be the interest applicable to this Lease.

(m)   **ADMINISTRATIVE SUPPORT:** LESSEE may, from time to time, be required to file, or assist in the filing of, reports to regulatory and/or taxing authorities, which may be necessary to establish, perfect or maintain the legally and/or tax-exempt status of this Lease, or to execute documents needed for LESSOR'S financing. LESSEE acknowledges that its compliance with the reporting requirements of the Internal Revenue Code is essential to the exemption from Federal Income tax of the interest portion of payments made by LESSEE hereunder. Accordingly, LESSEE agrees that its failure to comply with those requirements shall constitute a material default thereunder which, in addition to any other remedies provided in paragraph (i) above, shall entitle LESSOR and any of its assignee(s) to be indemnified and held harmless by LESSEE for all costs, liabilities, damages, expenses, taxes and penalties including Federal Income tax penalties and interest incurred as a result of such failure, which amount LESSEE agrees to pay upon written demand therefore. LESSEE promises to promptly make such filings or to render such assistance as may, from time to time, be reasonably requested by LESSOR or its assigns, and to indemnify and hold harmless LESSOR or its assigns from any cost, expense or other damage caused by its failure to do so. LESSEE hereby further authorizes LESSOR to file UCC-1 financing statements without LESSEE'S signature, and to fill in dates and other obvious minor corrections on this Agreement.

(n)   **SEVERABILITY:** Any term or provision of this Lease found to be prohibited by law or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without, to the extent reasonably possible, invalidating the remainder of this Lease.

(o)   **FEES, COLLECTION EXPENSES, LATE CHARGES, AND ADVANCES.** Lessee shall also pay to Lessor with the first rental payment an administrative fee equal to: (a) three hundred seventy-five dollars ($375.00) if the purchase price of the equipment is less that $5,000.00, six hundred dollars ($600.00) if purchase price is between $5,001.00 to $10,000.00, seven hundred dollars ($700.00) if purchase price is between $10,001.00 to $25,000.00, seven hundred and fifty dollars ($750.00) if purchase price is between $25,001.00 to $50,000.00, nine hundred dollars ($900.00) if purchase price is between $50,001.00 to $100,000.00, one thousand dollars ($1,000.00) if purchase price is between $100,001.00 to $250,000.00, one-thousand two hundred dollars ($1,200.00) if purchase price is between $250,001.00 to $500,000.00, or one thousand four hundred dollars ($1,400.00) if purchase price is between $500,001.00 to $1,000,000.00. In addition, Lessee shall pay Lessor a processing fee of $1.00 per scheduled rental payment. If any rent or other amount payable hereunder is not paid when due, then as compensation for the administration and enforcement of Lessee's obligation to make timely payments, Lessee shall pay with respect to each overdue payment on demand (i) any collection agency fees and expenses, plus (ii) a late payment service fee of $10.00 or 5% of total invoice including sales tax, whichever is greater, which Lessee agrees is a reasonable approximation of the internal costs that Lessor will incur as a result of Lessee's delay in payment, plus (iii) interest at 18% per annum (but not to exceed the highest rate permitted by law) on such overdue payment for the period for which it is overdue. All advances made by Lessor to preserve said property or to pay insurance premiums for insurance hereon (but not to exceed the highest rate permitted by law) or to discharge and pay any taxes, liens or encumbrances thereon shall be added to the unpaid balance of rentals due hereunder and shall be repayable by Lessee to Lessor together with interest thereon at the highest contract rate until paid. Lessee shall pay to Lessor a fee equal to twenty-five dollars ($25.00) for each check returned to Lessor unpaid, in addition to pay late charge provided for herein for a delinquent payment.

(p)   **ENTIRE AGREEMENT:** This Lease constitutes the entire agreement between the parties regarding the Equipment, and there are no representations, warranties, promises, guarantees or agreements, oral or written, expressed or implied, between the parties hereto with respect to this Lease. No modification or amendment hereof shall be binding upon the LESSOR unless made in writing and executed on behalf of LESSOR by its duly authorized officer or agent. Lessor and Lessee agree that this Lease and other documents incorporated in it shall be governed by, and construed in accordance with, the laws of, or under this Lease, shall be in the California District Court, San Diego County, or Massachusetts District Court, Suffolk County where the Lessor has places of business.

---

## ASSIGNMENT OF LEASE

For value received, LESSOR hereby sells, assigns and transfers to Assignee in item 2C, all of its right, title and interest in and to the Lease, including title to the Equipment, all payments due, any and all insurance policies, and all proceeds of any of the foregoing. LESSOR warrants that the Lease is genuine and in all respects what it purports to be, that LESSOR'S interest is free from liens or encumbrances: and that to the best of LESSOR'S knowledge, the Lease has been executed by an individual acting with full authority to do so. LESSOR is not hereby relieved of any of its obligations to LESSEE under the Lease.

LESSOR:   LEASING INNOVATIONS, INCORPORATED

By: _____    Title: _____President_____    Date: _____

**Rider attached to and made part of State and Municipal Lease-Purchase Agreement No. HGF070117  (the 'Lease'), between Leasing Innovations, Incorporated (the "Lessor"), and Tulare Local Health Care District d/b/a Tulare Regional Medical Center (the "Lessee").**

<u>**INSURANCE AUTHORIZATION INSTRUCTIONS**</u>

TO:      INSURANCE COMPANY                FROM:_____     Tulare Local Health Care District_____
           NAME: Beta Healthcare Group                        _____d/b/a Tulare Regional Medical Center_____
           ADDRESS: 9171 Towne Centre Drive, Suite 500
           CITY: San Diego, CA 92122
           AREA CODE/ PHONE #: (858) 550-1147          LEASE #:_____      HGF070117_____
           AREA CODE/ FAX #:  (858) 909-9609
           CONTACT PERSON: Jim Gonzales

We have entered into a lease agreement with Leasing Innovations, Incorporated or its Assignee or the following equipment, with a value of $7,000,000.00

EQUIPMENT DESCRIPTION:      SEE ATTACHED SCHEDULE A

This is a net lease and we are responsible for the insurance cost.  Please see that we have immediate coverage and notify Lessor at once in the form of a copy of the insurance policy or a certificate of insurance.  If the letter is sent, please include therein the standard 30-day notice of cancellation clause.

XX    **PHYSICAL DAMAGE:**  Coverage for fire, extended coverage, vandalism, theft and Malicious Mischief for the replacement, value of the equipment on an occurrence basis, for no less than $7,000,000.00.Leasing Innovations, Incorporated and its assigns are to be named as Loss Payee under Physical Damage as their interest may appear.

XX    **LIABILITY:**  Coverage for comprehensive **GENERAL** liability shall be at least $ 1Million for Bodily Injury and Property Damage. Leasing Innovations, Incorporated and its assigns are to be named as additional insured.

---

**INVOICING INSTRUCTIONS**

Pursuant to Section 5 of the State and Municipal Lease-Purchase Agreement No. HGF070117 (the "Lease") between Leasing Innovations, Incorporated, (the "Lessor") and Tulare Local Health Care District d/b/a Tulare Regional Medical Center (the "Lessee"), Lessee Lessor  hereby acknowledges the obligation to make Payments promptly when due, in accordance with the Lease.

1. <u>RECEIPT OF INVOICE:</u>  All invoices should be mailed to:
   Tulare Regional Medical Center
ATTENTION:_____Accounts Payable_____
TEL. NO. ( 559  )  688-0821 ext 3913
FAX NO. ( 559  )  685-3862
PROCESSING TIME _____ DAYS

2. <u>APPROVAL:</u>  Invoices are approved for payment by:
   Tulare Regional Medical Center
ATTENTION:_____Alan Germany, CFO/COO___
TEL. NO. ( 559  )  688-0821 ext 3913
FAX NO. ( 559  )  685-3862
PROCESSING TIME _____ DAYS

3. <u>ACCOUNTS PAYABLE:</u>  Checks are processed and mailed by:
   Tulare Regional Medical Center
ATTENTION:_____Accounts Payable_____
TEL. NO. ( 559  )  688-0821 ext 3913
FAX NO. ( 559  )  685-3862
PROCESSING TIME _____ DAYS

4. <u>OTHER</u> (If needed):
_____
ATTENTION:_____
FAX NO. (_____)_____
TEL. NO. (_____)_____
PROCESSING TIME _____ DAYS

5. <u>PURCHASE ORDER NUMBERS:</u>
Invoices require purchase order numbers.  Yes_____ No_____
The current purchase order number is _____
Purchase order numbers will change annually. Yes _____  No_____
Processing time for new purchase orders ___ days.

Essential Use Certificate

Leasing Innovations, Incorporated
261 N. Highway 101
Solana Beach, CA 92075

RE:     State and Municipal Lease Purchase Agreement No. HGF070117 (the "Lease"),
        between Leasing Innovations, Incorporated (the "Lessor") and Tulare Local
        Health Care District d/b/a Tulare Regional Medical Center (the "LESSEE").

Gentlemen:

This confirms and affirms that the Equipment is essential to the function of the Lessee
or to the service we provide to our citizens.

Further, we have an immediate need for, and expect to make immediate use of all the
Equipment, which need is not temporary or expected to diminish during the lease term
of the Lease.  The Equipment will be used by us only for the purpose of performing our
governmental or proprietary function consistent with permissible scope of our authority.
The Equipment will be used by Tulare Local Health Care District d/b/a Tulare Regional
Medical Center, 869 N. Cherry Street, Tulare, CA 93274.  (Name and address of User.)

  The software is used to create and maintain the electronic medical record as required by

  the federal government, and for all revenue cycle processes and functions.


**(State how and for what purposes the Equipment will be used.)**

We expect and anticipate adequate funds to be available for all future payments or rent
due after the current budgetary period.

LESSEE:

**TULARE LOCAL HEALTH DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

By: _____

Title: _____CEO_____

Date: _____

__SEGMENT__

## MUNICIPAL CERTIFICATE

Re:     State and Municipal Lease Purchase Agreement No. HGF070117 between Tulare Local Health Care District d/b/a Tulare Regional Medical Center as Lessee, and Leasing Innovations, Incorporated, as Lessor.

I, the undersigned, the duly appointed, qualified and acting [Clerk*] of the above-captioned Lessee do hereby certify this _AUGUST 29_ day of, 20 _17_, as follows:

1.      Lessee did at regular meeting of the governing body of the Lessee held _JUNE 20_, 20 _17_, by motion duly made, seconded and carried in accordance with all requirements of law, approve and authorize the execution and delivery of the above-referenced State and Municipal Lease Purchase Agreement No. HGF070117 on its behalf by the following named representative of the Lessee, to wit.

| Benny Benzeevi, MD | CEO | |
|---|---|---|
| Name of Person Signing Documents | Title | Signature |

2.      The above-named representative of the Lessee held at the time of such authorization and holds at the present time the office set forth above.

3.      No event or condition that constitutes, or with the giving of notice or the lapse of time or both would constitute, an Event of Default (as such term is defined in the Lease) exists as the date hereof.

4.      All insurance required in accordance with the Lease is currently maintained by the Lessee.

5.      Subject to Section 7 of the Lease, Lessee has in accordance with the requirements of law, fully budgeted and appropriated sufficient funds for the current budgetary year to make the payments scheduled to come due during the Original Term and to meet its other obligations for the Original Term (as such terms are defined in the Lease) and such funds have not been expended for other purposes.

IN WITNESS WHEREOF, I hereunto set my hand and the seal of the governing body of the Lessee the day and year first above written.

By: _____
    Signature

(SEAL)      MARY CLAUDIA RAZO
            (Typewritten name of Clerk*)

By: _____
    Alan Germany, CFO/ COO
    Tulare Regional Medical Center

*Do not have the position of clerk      See attached notary certificates

The Board determined that it was necessary and appropriate to authorize Benny Benzeevi, MD, Chairman of HCCA to seek and borrow funds (see attachment).

M:\Leasing Innovation\MUNICIPAL CERTIFICATE.docx

## RESOLUTION NO. 852 OF THE BOARD OF DIRECTORS OF
## TULARE REGIONAL MEDICAL CENTER

**WHEREAS,** the Board of Directors (the "Board") of Tulare Local Healthcare District dba Tulare Regional Medical Center (the "District") has determined that it is necessary and appropriate, and in the best interests of the District to borrow funds to cover operating cash flow; and

**WHEREAS,** the Board has determined that it is necessary and appropriate, and in the best interests of the District, to have its manager, Healthcare Conglomerate Associates, LLC ("HCCA"), acting through its Chairman, Benny Benzeevi, M.D ("Authorized Representative") seek to obtain a loan for the purposes of payment of operating expenses of the Hospital, repayment of debt, payment of ongoing costs of construction of the Tower project, and for other Hospital purposes.

**NOW, THEREFORE, BE IT RESOLVED THAT** the District's Authorized Representative is authorized and directed to prepare, execute and submit to potential lenders applications for a commitment to make a loan, or other agreement for the extension of credit to the District, in an amount of up to $22,000,000, upon such terms and at such interest rate as the District's Authorized Representative determines to be fair and consistent with the marketplace for the purposes stated above.

**FURTHER RESOLVED,** that if a loan commitment is obtained, the Authorized Representative is authorized and directed to take any further actions and to execute, in the name of and on behalf of the District, any instruments and documents required by the lender to obtain such loan, including, without limitation, promissory notes, security instruments and other customary loan documents (which includes sale/leaseback documents which are used for financing purposes), it being the intention of the Board that the Authorized Representative shall have absolute, full and complete power and authority to execute and deliver to the lender any and all documents and instruments required to obtain and consummate such loan, and to take any further actions required to obtain and consummate such loan.

**FURTHER RESOLVED,** that the Board acknowledges and agrees that except to the extent prohibited by applicable law and any existing Bond documents, all property (real and personal), equipment, revenues, deposit accounts and other assets of the District may be used as security for any loan obtained pursuant to this Resolution.

**IN WITNESS WHEREOF,** I have hereto set my name as Secretary of the District, this _____20_____ day of June, 2017.

Mike Jamaica, Secretary

093734.000003 610927047.1

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Tulare_ )

On _August 30, 2017_ before me, _Melissa S. Arend - notary public_,
　　　Date　　　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Benny Benzeevi_
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Melissa S Arend_
　　　　　　　Signature of Notary Public

> MELISSA S. AREND
> Commission # 2113102
> Notary Public - California
> Tulare County
> My Comm. Expires May 25, 2019

　　　　Place Notary Seal Above
━━━━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━━━━
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Municipal Certificate_　Document Date: _8/29/17_
Number of Pages: _1_　Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Benny Benzeevi_ 　　　　　Signer's Name: _____
☐ Corporate Officer — Title(s): _____ 　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General 　　　☐ Partner — ☐ Limited ☐ General
☒ Individual 　☐ Attorney in Fact 　　　☐ Individual 　☐ Attorney in Fact
☐ Trustee 　☐ Guardian or Conservator 　☐ Trustee 　☐ Guardian or Conservator
☐ Other: _____ 　　　　　　☐ Other: _____
Signer Is Representing: _____ 　Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Tulare_

On _August 29, 2017_ before me, _Melissa S. Arend - notary public_,
　　　Date　　　　　　　　　　　　　　　　Here Insert Name and Title of the Officer
personally appeared _Mary Claudia Razo_
　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**MELISSA S. AREND**
Commission # 2113102
Notary Public - California
Tulare County
My Comm. Expires May 25, 2019

Signature _Melissa S Arend_
　　　　　　　Signature of Notary Public

Place Notary Seal Above

───────────────── **OPTIONAL** ─────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Municipal Certificate_ Document Date: _August 29, 2017_
Number of Pages: _1_ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _Mary Claudia Razo_
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☒ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of _Tulare_ )

On _August 29, 2017_ before me, _Melissa S. Arend - notary public,_
⠀⠀⠀Date⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Here Insert Name and Title of the Officer

personally appeared _Alan Germany_
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**MELISSA S. AREND**
Commission # 2113102
Notary Public - California
Tulare County
My Comm. Expires May 25, 2019

Signature _Melissa S Arend_
⠀⠀⠀⠀⠀⠀⠀⠀⠀Signature of Notary Public

Place Notary Seal Above

───────────── **OPTIONAL** ─────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Municipal Certificate_ Document Date: _August 29, 2017_
Number of Pages: _1_ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Alan Germany_ ⠀⠀⠀⠀ Signer's Name: _____
☐ Corporate Officer — Title(s): _____ ⠀ ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General ⠀⠀ ☐ Partner — ☐ Limited ☐ General
☑ Individual ⠀⠀☐ Attorney in Fact ⠀⠀ ☐ Individual ⠀⠀☐ Attorney in Fact
☐ Trustee ⠀⠀☐ Guardian or Conservator ☐ Trustee ⠀⠀☐ Guardian or Conservator
☐ Other: _____ ⠀⠀⠀⠀ ☐ Other: _____
Signer Is Representing: _____ ⠀ Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

Baker&Hostetler LLP

11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025-0509

T 310.820.8800
F 310.820.8859
www.bakerlaw.com

_____ August 31_, 2017

Leasing Innovations, Incorporated
261 N. Highway 101
Solana Beach, CA 92075

     Re:     *State and Municipal Lease-Purchase Agreement*
             *No. HGF 070117 (the "Lease")*

Ladies and Gentlemen:

     We have acted as special California counsel to Tulare Local Healthcare District dba Tulare Regional Medical Center ("**Lessee**") in connection with the above-referenced Lease between Lessee and Leasing Innovations, Incorporated ("**Lessor**").

     In such capacity, we have reviewed the following documents:-

         1.   The Lease;

         2.   Municipal Certificate executed by a representative of Lessee (the "Municipal Certificate"); and

         3.   Bill of Sale.

     In rendering our opinion, we have also examined such certificates of public officials, organizational documents of Lessee, and other certificates and instruments as we have deemed necessary for the purposes of the opinions herein expressed. As to various questions of fact material to our opinion, we have relied upon certificates and written statements of the directors or officers of Lessee (the "**Opinion Certificate**"), and the representations of Lessee contained in the Municipal Certificate.

     We express no opinion with respect to the effect of any law other than the laws of the State California (the "**State**"), including, without limitation, the California Uniform

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver*
*Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

093734.000003 611035658.1

Leasing Innovations Incorporated
          August 31 , 2017
Page 2

Commercial Code (the "**UCC**"), and the federal law of the United States (together with the laws of the State, "**Applicable Law**").

Whenever our opinion herein is qualified by the phrase "to the best of our knowledge" (or similar phrase) it is intended to indicate that the current, actual knowledge of the attorneys within the Los Angeles office of this firm engaged in the representation of Lessee in connection with the Lease transaction is not inconsistent with that portion of the opinion which such phrase qualifies. Except as expressed herein, we have made no independent investigation of any such matters and we have not made any other examination of Lessee.

Based on the foregoing, and subject to the qualifications and exceptions herein contained, we are of the opinion that:

1.     Lessee is a political subdivision of the State of California, to wit, a local healthcare district, duly organized and existing under the laws of the State, and specifically Section 32000 et seq of the California Health & Safety Code.

2.     Based solely on the Opinion Certificate and the Municipal Certificate, the Lease has been duly authorized, executed and delivered by an authorized representative of Lessee.

3.     The Lease constitutes the legal, valid and binding obligation of Lessee, enforceable against Lessee in accordance with its terms.

4.     The Equipment (as described in the Lease) is personal property (or intangible property) and when subject to use by the Lessee, will not be or become fixtures under the laws of the State.

5.     To the best of our knowledge, all required public bidding procedures or other Applicable Laws regarding the award of the Lease have been followed.

6.     We have no reason to believe that any of the representations of Lessee contained in the Lease are inaccurate in any material respect, or that Lessee does not intent to perform its covenants under the Lease.

We express no opinion with respect to any documents other than the Lease.

The foregoing opinions are subject to the following qualifications, limitations and exceptions:

(a)     The effect of bankruptcy, insolvency, fraudulent conveyance or transfer, reorganization, arrangement, moratorium or other similar laws relating to or affecting the rights, powers, privileges, remedies and interests of creditors, obligees or sureties including, without limitation, the effect of Sections 547 and 548 of the Federal Bankruptcy Code and comparable provisions of the laws of the State;

(b)     The effect of the limitations imposed by Applicable Law or rules or principles (of equity, public policy or otherwise) affecting the enforcement of obligations

generally, whether considered at law, in equity or otherwise, including (without limitation) those pertaining to specific performance, injunctive relief, materiality, good faith, fair dealing, diligence, reasonableness, unconscionability, impossibility of performance, redemption or other cure, suretyship rights or defenses, waiver, laches, estoppel, or judicial deference or other equitable remedies;

(c)     The enforceability of any term or provision of the Lease that purportedly grants to a party or authorizes or permits a party or other person to exercise or otherwise enforce or pursue specific rights, powers, privileges, remedies or interests in a manner impermissible under or otherwise inconsistent with Applicable Law or public policy of the State from time to time in effect;

(d)     The unenforceability under certain circumstances of provisions in the Lease to the effect that rights or remedies are not exclusive, that every right or remedy is cumulative and may be exercised in addition to or with any other right or remedy, that election of a particular remedy or remedies does not preclude recourse to one or more other remedies, and that any right or remedy may be exercised without notice or an opportunity to cure;

(e)     The unenforceability under certain circumstances of any term or provision in the Lease indemnifying a party against liability for its own wrongful or negligent acts or where such indemnification is contrary to public policy or prohibited by Applicable Law;

(f)     The enforceability of any term or provision in the Lease purporting to assign contractual rights, to the extent such provisions are limited by requirements of notice to and consent of any third parties to such contracts or other interested parties, or any other restrictions as to the assignability of such contractual rights;

(g)     The effect of the provisions of the UCC which require a secured party, in any disposition of personal property collateral, to act in good faith or in a commercially reasonable manner;

(h)     Any rights under the Lease which are governed by the UCC are subject to the limitations and restrictions of the UCC which such statute provides cannot be waived;

(i)     We express no opinion as to the existence, validity, binding effect, enforceability, attachment, perfection or priority of any security interest or lien created or purported to be created under the Lease;

(j)     There may be limitations on the exercise of the Lessor's remedies arising out of any failure by the Lessor to comply with statutory requirements or judicial decisions thereunder in the actual exercise of its rights in connection with the foreclosure, sale or other enforcement of its security interests in any of the Equipment;

(k)     We express no opinion as to whether or not the Lease transaction will be treated for federal and state income tax purposes as a lease or as a financing transaction.

In our opinion, the foregoing qualifications, limitations and exceptions do not render the Lease invalid as a whole, and there exist, in the Lease or pursuant to Applicable Law, legally adequate remedies for a realization of the principal benefits and/or security intended to be provided by the Lease.

We advise Lessor that circumstances can occur after the perfection of a security interest in personal property which could cause the security interest to become unperfected including, without limitation, the fact that a financing statement lapses after five years; the UCC creates certain limitations on the rights to proceeds; a change in the name of the debtor or the location of the debtor will result in the security interest in certain property to become unperfected unless appropriate steps are taken; and a secured party's rights are subject to the rights of certain purchasers of the collateral to acquire the collateral free of the security interest.

To the extent that the obligations of Lessee may be dependent upon such matters, we assume that:  Lessor is duly formed, validly existing and in good standing under the laws of its jurisdiction of formation; Lessor has the requisite power and authority to execute and deliver the Lease and to perform its obligations under the Lease; the Lease has been duly executed and delivered by Lessor, and constitutes the legally valid and binding obligation of Lessor, enforceable against Lessor in accordance with its terms; there are no other documents, understandings, or agreements (whether written or oral) between or among the parties which would expand, modify or otherwise affect the obligations of the parties under the Lease, the documents submitted to us contain therein all the terms intended by the parties.

We have also assumed that:

(1)     The Lease transaction is not being entered into for any personal, family or household purposes.

(2)     Lessee has "rights" (within the meaning of Section 9203 of the UCC) in the Equipment, and value has been given by the Lessor to Lessee in connection with the transactions contemplated by the Lease.

This opinion is intended solely for the benefit of the Lessor and its successors and assigns in connection with the Lease transaction.  No part of this opinion may be relied upon by any other person or for any other purpose, be incorporated, quoted or otherwise referred to in any other document or communication or be filed with or otherwise furnished to any governmental authority or other person without our prior written consent, except that our prior written consent is not needed to furnish a copy of this opinion:  (a) in connection with any proceedings relating to the Lease or the enforcement thereof; and (b) to accountants and legal counsel for the Lessor (each of whom may rely upon this opinion as though it had been addressed and delivered to them as of the date of this opinion).   In all cases, reliance upon this opinion is conditioned upon acceptance of all of the qualifications, exceptions, assumptions, definitions, exclusions and other limitations set forth herein.

This opinion speaks only as of the date hereof, and to its addressees and their successors and assigns, and we have no responsibility or obligation to update this

Leasing Innovations Incorporated
August 31, 2017
Page 5

opinion, to consider its applicability or correctness to anyone other than its addressees, and their successors and assigns, or to take into account changes in law, facts or any other developments of which we may later become aware.

Very truly yours,

BAKER & HOSTETLER LLP



261 N. Highway 101, Solana Beach, CA 92075
Ph. 858.259.4794      Fax   858.259.7076

INVOICE NO 1
Lease No. HGF070117
DATE: August 31, 2017
Due: Immediately

To:  Tulare Local Health Care District d/b/a Tulare Regional Medical Center
     869 N. Cherry Street
     Tulare, CA 93274

| DESCRIPTION | AMOUNT |
|---|---|
| First Payment | $121,600.00 |
| Processing Fee | $400.00 |
| Documentation Fee | $400.00 |
| UCC Filing Fee | $675.00 |
| Amendment Fee | $275.00 |
| SUBTOTAL | $123,350.00 |
| SALES TAX (8.25%, Tulare County) | $ 10,176.38 |
| TOTAL DUE | $ 133,526.38 |

Make all checks payable to:    Leasing Innovations, Incorporated
                               261 N. Highway 101
                               Solana Beach, CA  92075

If you have any questions concerning this invoice, call: Brian Snider at 858-259-4794

**THANK YOU FOR YOUR BUSINESS!**

*Please note that a late fee of 5% or $10.00 (whichever total is larger) will be assessed for any payments that are past due.  An account will be considered in default of their lease agreement should payment not be received within **30 Days** of due date.  Once an account is in default of their lease agreement, immediate action will be taken.*

Remittance Copy

# SCHEDULE A

**LEASE NO.:  HGF070117**

**LESSEE:       TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
                REGIONAL MEDICAL CENTER**

**LESSOR:       LEASING INNOVATIONS, INCORPORATED**

## QTY     DESCRIPTION

### CDW Government

(1)     Item Number: 1694727; TRIPP 12U Wallmount Rack DRS & Sides
(10)    Item Number: 1703730; Ken Wash Antimicro USB KB WhiteHT
(1)     Item Number: 554475; TRIPP 750A UPS Smart 120v 1U RM
(2)     Item Number: 2030976; CISCO 48Port 10/100/1000 POE+ ENET

### CDW Direct, LLC

(1)     Item Number: 3696841; Logitech Type + PROT KB Case Ipad Air

### Nihon Kohden America, Inc.

(6)     Item Number: YS-074P5; 50P - 9P, SERIAL COMMUNICATION

### Drager

(1)     Item Number: MS11700; Infinity Gateway/Symphony, Target Country, USA, 120v
(1)     Item Number: 5729418 Gateway Server Software
(1)     Item Number: MS22041; HL7 Interface ADT
(1)     Item Number: MS22040; HL7 Interface Vitals High Spd, DMTN_0418
        Traceability Serial Nos: 2146950128, Value Infinity Gateway/Symphony
(1)     Item Number: MQ00134, Implementation Services

### Architectural Wood Design

(1)     Casework @ 1st Floor Emergency Department: Supply & install new base lower,
        sub top & new Avonite (New Caldron) solid surface in a gloss finish, 1-1/2 eased
        edge & surface applied splashes
(1)     Casework @ 1st Floor Fast Track Area: Demo existing to salvage finishes then
        supply & install new base lower, sub top & new Avonite (New Caldron) solid
        surface in gloss finish, 1-1/2 eased edge & surface applied splashes.
(1)     Casework @ 1st ACU/ 2nd Floor PACU Area: Supply & install new base lower,
        sub top & new Avonite (New Caldron) solid surface in a gloss finish, 1-1/2 eased
        edge & surface applied splashes.
(1)     Casework @ 2nd ICU Area: Supply & install new base lower, sub top & new
        Avonite (New Caldron) solid surface in a gloss finish, 1-1/2 eased edge &
        surface applied splashes.
(1)     Casework Modification @ 3rd Floor Med Surg 3/Peds: Demo and modify existing
        casework applied new end panel & cut down top and re applied new edge @
        end.

# SCHEDULE A

**LEASE NO.:   HGF070117**

**LESSEE:      TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
              REGIONAL MEDICAL CENTER**

**LESSOR:      LEASING INNOVATIONS, INCORPORATED**

## QTY    DESCRIPTION

### Fujifilm Medical Systems, U.S.A., Inc.

(4)    Item Number: 800006958; Prof Serve Syn Pacs Train Appl Day On Sit
(1)    Item Number: Syn Pacs Integr Upgr HL-7 To URL

### Morris Levin & Son

(1)    Item Number: 10240729 Cover, SS 2/g 2-Duplex P88 Lev-84009
(1)    Item Number: JAQ; Second Floor Surgical Room: Furnished And Installed New
       Receptacle And Data Box. Furnished And Installed New Conduit In Hallway And
       Breaker. ICU Medical ICU Medical Room 2103: Added One Double Duplex
       Receptacle And Add Data. Third Floor Room 3: Furnished And Installed
       Extension Boxes.

### I2I

(1)    Licenses: i2iTracks Base Software License – Includes bundle of Five (5) users,
       Installation, implementation, Custom Data Integrator, up to Two (2) days data
       assessment and an elective Three (3) days of training.
(1)    Interfaces Services: i2iLinks – Electronic Data: NextGen EHR; Includes PMS
       Data, Medications, Allergies, Problem List, and Vitals
(1)    Add-ons: Lab Interface – HL7 – LabCorp – ORU, Custom Z messages

### Cerner

(11)     Item Code: CI-200800; CareAware iBus for Bedside Medical Devices
(25)     Item Code: PV-20230 – CW PowerChart Ambulatory – CommunityWorks
(25)     Item Code: PV-20247; Practice Management: Registration and Scheduling
(25)     Item Code: PV-20248; Practice Management: Patient Accounts
(10)     Item Code: WH-10220A; PowerChart Maternity – Ambulatory
(1,253)  Item Code: WH-10410; PowerChart Maternity Acute
(1,253)  Item Code: WH-20110; FetaLink
(500)    Item Code: MM-22260; CareAware Multimedia – Digital Objects
(60)     Item Code: PA-20075-CW; Microbiology for CommunityWorks
(60)     Item Code: PA-20090-CW; Blood Bank Transfusion for CommunityWorks
(5,000)  Item Code: MM-22271; Worklist Manager (Modality Worklist)
(60)     Item Code: SU-20320-CW; Anesthesia Management for CommunityWorks
(1)      Item Code: CTP-IATK-USER; Cerner instant Access Toolkit – Named User
         License
(60)     Item Code: CH-50220; CommunityWorks Inventory Management Suite
(60)     Item Code: CH-50120; CommunityWorks Full Clinical Suite

## SCHEDULE A

**LEASE NO.:  HGF070117**

**LESSEE:       TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
                REGIONAL MEDICAL CENTER**

**LESSOR:       LEASING INNOVATIONS, INCORPORATED**

**QTY     DESCRIPTION**

(60)     Item Code: CH-50190; CommunityWorks ED Suite
(60)     Item Code: CH-50165; CommunityWorks General Laboratory
(60)     Item Code: CH-50180; CommunityWorks Radiology Suite
(60)     Item Code: CH-50152; CommunityWorks Revenue Cycle Suite Acute
(60)     Item Code: CH-50140; CommunityWorks; Surgical Suite
(11)     Item Code: CI-200999; Cerner Device Manager Driver Library
(25)     Item Code: CH- 52105; CommunityWorks Ambulatory Content Package
(25)     Item Code: KS-26965; MedSource Foundation for Ambulatory
(25)     Item Code: KS-26960; PowerNote Content for Ambulatory
(25)     Item Code: KS-26970; Cerner CMT (Ambulatory)
(150)    Item Code: PV-22115-CW; Eligible Provider Quality Reporting
         (CommunityWorks)
(150)    Item Code: KS-22198; ExitCare – Physician/Ambulatory
(25)     Item Code: CP-20805-CW; Enhanced Medical Necessity Content for Ambulatory
         Care
(25)     Item Code: KS026930; Intelligent Medical Objects (IMO) - Ambulatory
(1,253)  Item Code: LH-22524; Core Measure: IQR Perinatal w/e QualityCheck
         (Maternity)
(30)     Item Code: LH-22521-CW; CoreMeasure: Hos OQR w/e QualityCheck
         (CommunityWorks)
(100)    Item Code: KS-22095; CPT Codes for Millenium
(1)      Item Code: LS-22091-CW; Cerner CMT (CommunityWorks)
(30)     Item Code: CH-52101; CommunityWorks Acute Care Content Package
(30)     Item Code: LH-22510; Core Measures VTE w/e QualityCheck
(30)     Item Code: LH-22517; Core Measure: ED Throughput w/e QualityCheck
(30)     Item Code: LH-22514; Core Measures- Stroke w/eQualityCheck
(30)     Item Code: LH-22516; Core Measures: Children's Asthma w/eQualityCheck
(30)     Item Code: LH-2252Q; Core Measure: IQR Immunizations w/eOualitvCheck
(30)     Item Code: AC-26525; PowerNote Content for Acute Care
(30)     Item Code: LH-22512; Core Measures: Heart Failure w/eOualitvCheck
(30)     Item Code: LH-22S13; Core Measures: AMI w/eQualityCheck
(30)     Item Code: KS-22004; MedSource Foundation (Enterprise)
(30)     Item Code: LH-22511; Core Measures: SC/P w/eQualityCheck
(30)     Item Code: LH-22515; Core Measures Pneumonia w/eQualityCheck

(4,732)  Item Code: KS-22194-CW; ExitCare – Inpatient (CommunityWorks)
(30)     Item Code: KS-26925-CW; Intelligent Medical Objects (IMO) - Acute Care
(30)     Item Code: KS-26748-CW; HealthSentry Data Services (CommunityWorks)
(1)      Item Code: KS-26746; Health Facts Reporting
(2,185)  Item Code: ER-22196-CW (ExitCare - ED (CommunityWorks)

## SCHEDULE A

**LEASE NO.: HGF070117**

**LESSEE:      TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:      LEASING INNOVATIONS, INCORPORATED**

**QTY    DESCRIPTION**

(2,185) Item Code: CH-50195: ED Coding and Physician Content Subscription - Communi
(2,185) Item Code: ER-22436-CW; ED Coding Subscription (CommunityWorks)
(2,185) Item Code: ER-22435-CW; ED Physician Documentation Content (CommunityWorks)
(1)      Item Code: PA-22214; CAP SNOMED International (III) for Pathology
(1,000) Item Code: CP-20800; Enhanced Medical Necessity Content for Acute Care
(1)      Item Code: SU-22015-CW; AORN Syntegrity Content (CommunityWorks)
(1)      Item Code: SU-22020-CW; AORN Syntegrity Content Subscription
(1)      Item Code: P2S-SEC-SRV-PKG; P2Sentinel-Security as a Service.
(150)   Item Code: PS-22870C; Mobility Extension for Physician
(25)     Item Code: PY-61621C; Connect to CommonWell - Ambulatory *
(1)      Item Code: PY-61625C; Connect to CommonWell Onboard! ng
(1,253) Item Code: WH-22500C; FetaLink+
(1)      Item Code: WH-22550-CW-C; FetaLlnk+ Setup Fee CommunityWorks
(150)   Item Code: PS-20080-CW-C-I; Cerner ePrescribe Package
(30)     Item Code: PS-20087C-I; External Rx History - Acute
(1)      Item Code: CE-10205C; Chart Search - CommunityWorks
(1)      Item Code: CE-10305C; St. John Sepsis agent - CommunityWorks
(30)     Item Code: PY-27656C; Cerner Hub - CommunityWorks Immunization
(1)      Item Code: PY-27651C; Cerner Hub - CommunityWorks Immunization Setup
(4,732) Item Code: PY-27800-CW-C; HealtheLlfe for CommunityWorks
(4,732) Item Code: PV-27801-CW-C HealtneLife for CommunityWorks Setup
(10)     Item Code: RC-20401C; Revenue Cycle Analytics
(1)      Item Code: PY-61625C; Connect to CommonWell Onboardmg
(4,732) Item Code: PY-61620C; Connect to CommonWell - Acute *
(1)      Item Code: PY-61601C; Cerner Resonance
(1)      Item Code: PY-61600C; Cerner Resonance - Setup
(1)      Item Code: PY-70125-CW-C; Cerner Direct HISP - CommunityWorks
(1)      Item Code: PY-70120-CW-C; Cerner Direct HISP Connection - CommunityWorks
(2)      Item Code: SA-206000-AMS; AMS CommunityWorks Services
(1)      Item Code: CFG CMS; CernerWorks
(1)      Item Code: CFG_BMDI; CareAware BMDI
(22)     Item Code: 301-1001-51; Device Adapter, Programmable
(22)     Item Code: CABLEDA2; Adapter Cable
(22)     Item Code: 13400; Cables to Go - USB cable – Type A (M) – Type B (M)
(11)     Item Code: CCE-N270/1G-R2QLEI; IEI 8.4/n Fanless Panel PC SVGA High Brightness Touch
(11)     Item Code: A3L791-10; Belkin - Patch cable - RJ-45 (M) - RJ-45(M) - 10ft -
(11)     Item Code: 2011-0503-00; IEI 6-Port CE power brick mounting bracket

# SCHEDULE A

**LEASE NO.:**   **HGF070117**

**LESSEE:**     **TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:**     **LEASING INNOVATIONS, INCORPORATED**

| **QTY** | **DESCRIPTION** |
|---|---|
| (1) | Item Code: CFG_FETALINK; Cerner FetaLink |
| (12) | Item Code: CW-DEVICEID; Device Adapter |
| (12) | Item Code: 13400; Cables to Go - USB cable – Type A (M) – Type B (M) |
| (12) | Item Code: MBST272006MOD-D; Cable RJ11 Male to DE9 Female |
| (12) | Item Code: CW-FMCE-2, Fetal Monitor Connectivity Engine includes 8gb CF Card |
| (12) | Item Code: AUPS-A10-R11; VESA 75,DC 12V input SOW UPS module with 7.4V:3800mAH, |
| (12) | Item Code: 1900HHD-0USB; Honeywell 1900 USB Kit 1D, PDF417, 2D, HDfocus, white |
| (1) | Item Code: CFG_IACCESS_USER; iAccess Solutions Named User |
| (1) | Item Code: CFG_IMPRIVATA; Imprivita Solutions |
| (100) | Item Code:HDW-IMP-60-100; Imprivita Proximity USB Reader-Hid (Qty 100-499) |
| (2) | Item Code: CCE-N270/1G-R2QLEI; IEI 8.4/n Fanless Panel PC SVGA High Brightness Touch |
| (2) | Item Code: A3L791-10; Belkin - Patch cable - RJ-45 (M) - RJ-45(M) - 10ft |
| (2) | Item Code: 2011-0503-00 IEI 6-Port CE power brick mounting bracket |
| (1) | Item Code: CF_BMDI; CareAware MDI |
| (1) | Item Code: DSRVW-JCR; DecServer 716 16 MJ8 Ports external Flash Slot and HQ3 |
| (1) | Item Code: CFG_VPN_COMMWX; CommunityWorks VPN |
| (19) | Item Code: PA03670-B055; i-7160 Color Duplex Document Scanner |
| (1) | Item Code: BO-20668-CW; Business Objects Application Specific License (CommWx) |
| (150) | Item Code: SSPW-50; OneSign SSPW Mgmt 50-1499 User |
| (150) | Item Code: SSO/AM-200; License: OneSign SSQ/AM 5Q-29Q Users |
| (3) | Item Code: VIR-APP; OneSign New Virtual Appliance |
| (1) | Item Code: CFG_CPDI_SW; CPDI - Imaging Software |
| (4) | Item Code: 457-100-245; Applicationxtender Package – 5 CC User Pack |
| (1) | Item Code: 457-100-246; Applicationxtender Package – 25 CC User Pack |
| (1) | Item Code: 456-100-645_26-50; AX to CAMM 26-50 |
| (22) | Item Code: 301-1001-51; Device Adapter, Programmable |
| (11) | Item Code: CCE-N270/1G-R20IEI; EI 8.4in Fanless Panel PC SVGA High Brightness Touch |
| (1) | Item Code: BO-20668-CW; Business Objects Application Specific License; (Commwx) |
| (12) | Item Code: CW-DEVICEID; Device Adapter |
| (12) | Item Code: CW-FMCE-2; Fetal Monitor Connectivity Engine Includes 8GB CF Card |
| (12) | Item Code: 1900HHD-0USB; Honeywell 1900 USB Kit 1D, PDF417, 2D, HD focus, whit |

# SCHEDULE A

**LEASE NO.: HGF070117**

**LESSEE:**      **TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:**      **LEASING INNOVATIONS, INCORPORATED**

**QTY**    **DESCRIPTION**

(150)   Item Code: SSPW-50; OneSign SSPW Mgmt 50-1499 User
(150)   Item Code: SSO/AM-200; MNT: OneSign SSO/AM 200-299 Users
(2)      Item Code: CCE-N270/1G-R20IEI; EI 8.4in Fanless Panel PC SVGA High Brightness Touch
(1)      Item Code: DSRVW-JCR; DecServer 716 16 MJ8 Ports external Flash Slot and H03
(4)      Item Code: 457-100-245; APPLICATIONXTENDER PACKAGE – 5 CC USER PACK
(1)      Item Code: 457-100-246; APPLICATIONXTENDER PACKAGE – 25 CC USER PACK
(1)      Item Code: 456-100-645_26-50; AX to CAMM 26-50
(442)   Item Code: RC-20160; Cerner Acute Case Management
(24)    Item Code: CTP-724-COMM; 724 Access Downtime Viewer for Community Works
(1)      Item Code: CFG_724_COMM; 724 Access – ComunityWorks Solution
(1)      Item Code: B334925; HP Z230 SFF Workstation, 64 bit OS, 8gb DDR3-1600, HD
(40)    Item Code: 0POWM2N-D04; PowerMic II Non-Scanner Microphone: Level D (60+)
(1)      Item Code: CFG_Esignature; Cerner eSignature Solution
(23)    Item Code: WACOMDTU-1031X; Wacom DTU-1031X Pen Display 10.1" color LCD w/ 1024x600 res
(40)    Item Code: DMNEP-CLT-0250; DM360 Ntwk Ed, Perp, Phys Client Lic(1-250)
(1)      Item Code: DMNE-NMS-F20; Nuance Management Server SW for DMNE Perp, Lic
(150)   Item Code: SSPW-50; OneSign SSPW Mgmt 60-1499 User
(150)   Item Code: SSO/AM-50; License: OneSign SSO/AM 50-499 Users
(14)    Item Code: CT-ESIG-CLIN; Patient eSignature per Clinic License
(30)    Item Code: CT-ESIG-BED; Patient eSignature Lic per Bed

**Hill-Rom Company, Inc.**

(22)    Item Code: INTEGRISBEDLOCATO; Integris Bed Locator, B.O.L.#7702685; Stand Alone Int Bed Locator, Floor Name: LDR 3RD & 4TH FLOOR, Area of Designation: Other, Drawing Number; 71292702A01; Serial Numbers: P171BL1228, P171BL1229, P171BL1230, P171BL1231, P171BL1232, P171BL1233, P171BL1234, P171BL1235, P171BL1236, P171BL1237, P171BL1238, P171BL1239, P171BL1240, P171BL1241, P171BL1242, P171BL1243, P171BL1244, P171BL1245, P171BL1246, P171BL1247, P171BL1248, P171BL1249

# SCHEDULE A

**LEASE NO.:  HGF070117**

**LESSEE:      TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
                      REGIONAL MEDICAL CENTER**

**LESSOR:      LEASING INNOVATIONS, INCORPORATED**

**QTY      DESCRIPTION**

(22)     Item Code: INTEGRISBEDLOCATO; Integris Bed Locator, B.O.L. #7702689;
           dated: 08/21/2013, Stand Alone Int Bed Locator, Floor Name: LDR 3RD & 4TH
           FLOOR, Area of Designation: Other, Drawing Number; 71292702B01; Serial
           Numbers: P171BL1250, P171BL1251, P171BL1252, P171BL1253,
           P171BL1254, P171BL1255, P171BL1256, P171BL1257, P171BL1258,
           P171BL1259, P171BL1260, P171BL1261, P171BL1262, P171BL1263,
           P171BL1264, P171BL1265, P171BL1266, P171BL1267, P171BL1268,
           P171BL1269, P171BL1270, P171BL1271

(14)     Item Code: FLATWALLS; Flatwalls, B.O.L. #: 7702685, dated: 08/21/2013;
           Flatwall 670 Headwall, Floor Name: LDR 4TH, FLOOR, Area of Designation:
           Other, Drawing Number: 71292701A; Serial Numbers: P151W0468,
           P151W0469, P151W0470, P151W0471, P151W0472, P151W0472,
           P151W0473, P151W0474, P151W0475, P151W0476, P151W0477,
           P151W0478, P151W0479, P151W0480, P151W0481, P151W0482,
           P151W0595

(42)     Item Code: P970A01; Universal Holder

(14)     Item Code: P973-01; Bottle Slide

(14)     Item Code: P984-00, I.V. Pump Holder

(14)     Item Code: FLATWALLS; Flatwalls, B.O.L. #: 7702685, dated: 08/21/2013;
           Flatwall 670 Headwall, Floor Name: LDR 4TH, FLOOR, Area of Designation:
           Other, Drawing Number: 71292701B; Serial Numbers: P177FW0596,
           P177FW0597, P177FW0598, P177FW059, P177FW0600, P177FW0601,
           P177FW0602, P177FW0603, P177FW0604, P177FW0605, P177FW0606,
           P177FW0607, P177FW0645, P177FW0646,

(42)     Item Code: P970A01; Universal Holder

(14)     Item Code: P973-01; Bottle Slide

(14)     Item Code: P984-00, I.V. Pump Holder

(14)     Item Code: FLATWALLS; Flatwalls, B.O.L. #: 7702685, dated: 08/21/2013;
           Flatwall 670 Headwall, Floor Name: LDR 4TH, FLOOR, Area of Designation:
           Other, Drawing Number: 71292701B; Serial Numbers: P177FW0608,
           P177FW0617, P177FW0619, P177FW0647, P177FW0648, P177FW0649,
           P177FW0650, P177FW0651, P177FW0652, P177FW0653, P177FW0682,
           P177FW0991, P177FW0996, P177FW0997,

(14)     Item Code: P17041201X01; Tycos Sphygmo 7670-01 Wall Mou

(14)     Item Code: P970A01; Universal Holder

(3)       Item Code: UNIFLEX; Uniflex, B.O.L. #: 8016454 dated: 08/21/2013, Uniflex
           1000 Headwall, Floor Name: Emergency Major Tre, Area of Designation: Other,
           Drawing Number: 71292704A

(3)       Item Code: P10020071292704C, Uniflex 1002 Headwall, P229UN0450,
           P229UN0451, P229UN0452,

# SCHEDULE A

**LEASE NO.: HGF070117**

**LESSEE:**      **TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:**      **LEASING INNOVATIONS, INCORPORATED**

**QTY**      **DESCRIPTION**

(3)      Item Code: P10020071292704D, Uniflex 1002 Headwall, P229UN0447, P229UN0448, P229UN0449,

(3)      Item Code: P100301; Tie Strip, Chaseless Uniflex

(44)      Item Code: SPECIALARCHPROD; Special Arch Prod, B.O.L. #: 7702807, dated: 08/20/2013

(44)      Item Code: PSPEC00124479Q01, Valance – Flatwalls

(23)      Item Code: P0054A000V561; Bed Locator Blank; B.O.L. #: 7702802, dated: 08/21/2013, P226BL0861, P226BL0862, P226BL0864, P226BL0865, P226BL0866, P226BL0867, P226BL0868, P226BL0869, P226BL0870, P226BL0871, P226BL0872, P226BL0873, P226BL0874, P226BL0875, P226BL0876, P226BL0877, P226BL0878, P226BL0879, P226BL0880, P226BL0881, P226BL0882, P226BL0883, P226BL0884,

(14)      Item Code: FLATWALLS; Flatwalls, B.O.L. #: 7702685, dated: 09/17/2013; Flatwall 670 Headwall, Floor Name: LDR 4TH, FLOOR, Area of Designation: Other, Drawing Number: 71292701A

(14)      Item Code: P670E0071292701A01; Flatwall 670 Headwall, P151FW0463, P151FW0464, P151FW0465, P151FW0466, P151FW0467, P151FW0609, P151FW0610, P151FW0611, P151FW0612, P151FW0613, P151FW0614, P151FW0615, P151FW0616, P151FW0618

(14)      Item Code: P17041201X01; Tycos Sphygmo 7670-01 Wall Mou

(14)      Item Code: P970A01; Universal Holder

(14)      Item Code: P975A01; Sphygmo Mount, W-A 7670-01

(8)      Item Code: FLATWALLS; Flatwalls, B.O.L. #: 8647293, dated: 09/17/2013, Flatwall 670 Flatwall, Floor Name: LDR 3RD FLOOR, Area of Designation: OTHER, Drawing Number: 71292705A

(8)      Item Code: P670E0071292705A01; Flatwall 670 Headwall, R031FW0979, R031FW0980, R031FW0981, R031FW0982, R031FW0983, R031FW0984, R031FW0985, R031FW0986

(8)      Item Code: P17041201X01; Tycos Sphygmo 7670-01 Wall Mou

(8)      Item Code: P970A01; Universal Holder

(8)      Item Code: P975A01; Sphygmo Mount, W-A 7670-01

(8)      Item Code: FLATWALLS; Flatwalls, B.O.L. #: 7702685, dated: 09/17/2013; Flatwall 670 Headwall, Floor Name: LDR 4TH, FLOOR, Area of Designation: Other, Drawing Number: 71292705A

8)      Item Code: P670E0071292705A01; Flatwall 670 Headwall, R031FW0987, R031FW0988, R031FW0989, R031FW0990, R031FW0991, R031FW0992, R031FW0993, R031FW0994, R031FW0995

(24)      Item Code: P970A01; Universal Holder

(8)      Item Code: P973-01; Bottle Slide

# SCHEDULE A

**LEASE NO.:**   HGF070117

**LESSEE:**   TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER

**LESSOR:**   LEASING INNOVATIONS, INCORPORATED

**QTY**   **DESCRIPTION**

(8)   Item Code: FLATWALLS; Flatwalls, B.O.L. #: 8647293, dated: 09/17/2013, Flatwall 670 Flatwall, Floor Name: LDR 3RD FLOOR, Area of Designation: OTHER, Drawing Number: 71292705B

(8)   Item Code: P670E0071292705B01; Flatwall 670 Headwall, F031FW1001, R031FW0999, R031FW1000, R031FW1001, R031FW1002, R031FW1004, R031FW1005, R031FW1442

(24)   Item Code: P970A01; Universal Holder

(8)   Item Code: P973-01; Bottle Slide

(8)   Item Code: FLATWALLS; Flatwalls, B.O.L. #: 8647293, dated: 09/17/2013, Flatwall 670 Flatwall, Floor Name: LDR 3RD FLOOR, Area of Designation: OTHER, Drawing Number: 71292705B

(8)   Item Code: P670E0071292705B01; Flatwall 670 Headwall, R031FW1006, R031FW1007, R031FW1008, R031FW1009, R031FW1010, R031FW1011, R031FW1012, R031FW1013

(8)   Item Code: P17041201X01; Tycos Sphygmo 7670-01 Wall Mou

(8)   Item Code: P970A01; Universal Holder

(8)   Item Code: P975A01; Sphygmo Mount, W-A 7670-01

(8)   Item Code: P975A01; Sphygmo Mount, W-A 7670-01, B.O.L. #: 8679154, dated: 09/17/2013

(16)   Item Code: P984-00; I.V. Pump Holder, B.O.L. #: 8730901, dated: 09/23/2013

(23)   Item Code: CONTOUR; Contour, B.O.L. #:8646953, dated: 09/17/2013; Contour Headwall, Floor Name: PACU/PRE-OP/PAT. RECOVERY; Area of Designation: OTHER, Drawing Number: 31341603A

(23)   Item Code: P667B0031341603A; Contour 667 Headwall, R255CT1541, R255CT1542, R255CT1543, R255CT1544, R255CT1545, R255CT1546, R255CT1547, R255CT1548, R255CT1549, R255CT1550, R255CT1551, R255CT1552, R255CT1553, R255CT1554, R255CT1555, R255CT1556, R255CT1557, R255CT1558, R255CT1559, R255CT1560, R255CT1561, R255CT1562, R255CT1563,

## Maquet Medical Systems USA

(2)   Item Code: US5600-2241; D82Anchor Plate

(3)   Item Code: USALM84028B; Plate Mounting, 5/8 Bolts

(6)   Item Code: US517003131; Plate, Seismic, Ceiling, Singl

(2)   Item Code: US517003121; Plate, Seismic, Ceiling, Dual

(6)   Item Code: USALM43427; Plate, Mounting, Satelite To

(4)   Item Code: US517003121; Plate, Seismic, Ceiling, Dual

(4)   Item Code: ALM688302967; WPS20 US Wall Mounted Power Module, Serial No. MP7514400010005, MP7514400010006, MP7514400010007, MP7514400010008

## SCHEDULE A

**LEASE NO.:**  HGF070117

**LESSEE:**  TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER

**LESSOR:**  LEASING INNOVATIONS, INCORPORATED

**QTY**  **DESCRIPTION**

(4)  Item Code: ALM367301900; Kit of US Termination Box
(4)  Item Code: ALM367302900; BPS Cover
(4)  Item Code: ALM567320999; Stainless Steel Double Facade
(4)  Item Code: US0007-2133; Box; Elec Junction; 3-Gang
(8)  Item Code: ALM587313901; Cable CAT5E 15m
(16)  Item Code: ALM567313903; Plugs RJ45
(3)  Item Code: 113322F5; ALPHAMAXX; Surgical Table w/ Auto Drive; Electrohydraulic, without cable-connected hand control, head rest or extension segment, with SFC padding, with autodrive, (460 mm), Serial-No.: 41, 45, 49
(3)  Item Code: 113053B0; Head rest with double articulation tiltable, with cassette rails, SFC padding
(3)  Item Code: 113131F0; Extension segment (SFC 80 mm) USA for Betastar 1131.12F0 (SFC 80 mm) USA
(3)  Item Code: 113358FC; Leg plate one-piece coded USA-GS
(6)  Item Code: US100660TR; Armboard, Snaplock, Trigger Release
(6)  Item Code: US1006P6S3; Pad Assembly, Armboard, Softpad, 3"
(1)  Item Code: 115064B0; Leg plates, double section, For extension table top 11500.20B0, SFC-padded
(3)  Item Code: 100323C0; Radial setting clamp for rods of 0-16 – 18 mm
(1)  Item Code: 100491C0; Slide rail extension, US, length 520 mm, side rail 18,6 x 9,54 mm
(1)  Item Code: 100165A0; Goepel knee crutch, adjustable via ball-and-socket joint, with fastening strap, PUR padded, without clamp
(1)  Item Code: 100197A0; Foot plate, pair, width-adjustable, with Velco strap and heel pad
(1)  Item Code: 100334A0; Rotation and tilting clamp for mounting foot plates or Weinberger hand traction device
(1)  Item Code: 10033700; Screw tension device, adjustable via bal-and-socket joint and vertical telescopic bar, traction by hand crank
(1)  Item Code: 100492A0; Countertraction post for tibia, height-adjustable, PUR padded
(1)  Item Code: 113234A0; Back and shoulder plate with pivoted head rest support, SFC padding
(1)  Item Code: 100205A0; Head support for shoulder operations, U-shaped helmet with soft pads and 2 fixation straps f.safe positioning and lateral fixation of the head. Can be adapted to varying head sizes from adolescents to adults
(2)  Item Code: ALM569065112C; BLUE 30 W
(9)  Item Code: USHAN40125; TRANSFORMER BOX ASSY BLUE 30
(2)  Item Code: ALM569015111C; BLUE 30 C
(2)  Item Code: ALM569028999; BLUE 30-80 MEDIUM CEILING COVER

# SCHEDULE A

**LEASE NO.:   HGF070117**

**LESSEE:       TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
                      REGIONAL MEDICAL CENTER**

**LESSOR:       LEASING INNOVATIONS, INCORPORATED**

**QTY    DESCRIPTION**

| | |
|---|---|
| (2) | Item Code: ALM569011902; FLANGE FOR BLUE 30 WITH POWER SUPPLY, Serial No.: AR013767, AR013772 |
| (2) | Item Code: ALM569061999; TUB 300 BLUE LCA, Serial No.: AR012317, AR12322 |
| (2) | Item Code: USHAN40125; TRANSFORMER BOX ASSY BLUE 30 |
| (3) | Item Code: usalm43148; PWR SPLY, REMOTE, SFL LG WPS200, Serial No.: FU506009, FU0809010, FU0812029 |
| (3) | Item Code: USALM43295; CEILING HOOD, DOME, SOLID, 200D |
| (18) | Item Code: USALM43278; BOLT, 5/8-18X2.25, HEX GR.8 |
| (36) | Item Code: USALM43279; WASHER, 5/8, FLAT, ZINC TSI |
| (18) | Item Code: USALMB43280; NUT, 5/8-18, NYLOCK YELLOW |
| (2) | Item Code: ALM517005947, POWER SUPPLY – LED/BRAKE |
| (2) | Item Code: USMOD10044; KIT, BRAKE REGULATR, MODUTEC, contains item 20022, 20223 |
| (2) | Item Code: US0007-5000; KIT; PNUEMATIC BRAKE REGUALTO |
| (2) | Item Code: USMOD10001; GREDUCER, BRAKE TUBING |
| (1) | Item Code: ALM568425010C; PWD55+DF HD K3 |
| (6) | Item Code: ALM515011999; FLAT COVER – 2 PARTS, Serial No.: AR015386, AR015388, AR015390, AR015392, AR015394, AR015396 |
| (6) | Item Code: USALM43452B; KIT, HARDWARE, LT TUBE TO ANCOR |
| (6) | Item Code: ALM515023999; FLANGE FOR 3 AXIS TUBES, Serial No.: AR019583, AR019584, AR019585, AR019610, AR019611, AR019612 |
| (2) | Item Code: ALM515072999; 3 AXIS SUSPENSION TUBE LG 550, Serial No.: AR013253, AR013368 |
| (4) | Item Code: ALM51507299; 3 AXIX SUSPENSION TUBE LG 550, Serial No.: AR013250, AR013351, AR013369, AR013370 |
| (6) | Item Code: ALM515053999; BLIND COVER FOR AXIS 2 OR 3 |
| (2) | Item Code: ALM568302957; WPS20 US WALL MOUNTED POWER MODULE, Serial No.: MP7514500010044, MP7514500010051 |
| (2) | Item Code: ALM367301900; KIT OF US TERMINATION BOX |
| (2) | Item Code: ALM367302900; BPS COVER |
| (2) | Item Code: ALM567320999; STAINLESS STEEL DOUBLE FACADE |
| (2) | Item Code: US0007-2133; BOX; ELEC JUNCTION; 3-GANG |
| (4) | Item Code: ALM567313901; CABLE CAT5E 15M |
| (8) | Item Code: ALM567313903; PLUGS RJ45 |
| (4) | Item Code: ALM567005947; POWER SUPPLY – LED / BRAKE |
| (4) | Item Code: USMOD10044; KIT, BRAKE REGULATOR, MODUTECT, contains item 2552 to 2553 |
| (4) | Item Code: US0007-5000; KIT; PNUEMATIC BRAKE REGULATO |
| (4) | Item Code: USMOD10001; GREDUCER; BRAKE TUBING |

# SCHEDULE A

**LEASE NO.:  HGF070117**

**LESSEE:      TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
REGIONAL MEDICAL CENTER**

**LESSOR:     LEASING INNOVATIONS, INCORPORATED**

**QTY   DESCRIPTION**

(6)     Item Code: ALM515032550C; SAT XS 1213
(2)     Item Code: ALM515032660C; SAT XD 2413
(4)     Item Code: AKN517005903; PARASISMIC INTERMEDIATE KIT MODUTEC
(4)     Item Code: ALM515066999; R. RING – COVER 433MM TO SAT TUBE (OVAL)
(4)     Item Code: ALM515023999; FLANGE FOR 3 AXIS TUBES. Serial No.: AR019613, AR019614, AR019615, AR019616
(4)     Item Code: ALM515072999; 3 AXIS SUSPENSIO TUBE LG 550, Serial No.: AR013352, AR013353, AR013354, AR013355
(4)     Item Code: ALM515053999; BLIND COVER FOR AXIS 2 OR 3
(3)     Item Code: ALM515089999; BLIND COVER FOR AXIS 1
(1)     Item Code: 141901HC; Extension Device (coded), Serial No.: 532
(1)     Item Code: ALM515089999; BLIND COVER FOR AXIS 1
(24)    Item Code: USMOD10115; MODUTEC UTILIZATION EQUIPMENT OUTLET BOX
(3)     Item Code: ALM567505961C; AXL5001S
(7)     Item Code: ALM569075113C; BLUE 30 MOB US
(4)     Item Code: ALM568425010C; PWD55 - DF HD K3
(1)     Item Code: ALM568425010C; PWD55 – DF HD K3

## Siemens Industry, Inc.

(1)     Item Code: A7F55000056; Service Order Number; 5200271187, Billing Item – materials per quote, ECCN: EAR99
(1)     Item Code: MSB; Switchboard
(1)     Item Code: MSA; Switchboard
(1)     Item Code: DBCBH1, Switchboard
(1)     Item Code: DBLBH1, Switchboard
(1)     Item Code: DBEQBH1, Switchboard
(1)     Item Code: DBNBH1, Switchboard
(1)     Item Code: DBNBH2, Switchboard
(1)     Item Code: DBEQBH2, Switchboard
(1)     Item Code: DBEQRH1, Switchboard
(1)     Item Code: DBEQRH2, Switchboard
(1)     Item Code: DBELEVBH1, Switchboard
(1)     Item Code: 15 kVA – TL41; Transformers
(1)     Item Code: 45 kVA – TCB1, TLB1, TL21, TQ11, TQ21, TQ31, TQ41, TNB1; Transformers
(1)     Item Code: 75 kVA – TC11, TQB1, TN21, TN31, TN41; Transformers
(1)     Item Code: 112.5 kVA – TC21, TC31, TC41, TN11; Transformers
(1)     Item Code: 60A – L4L1, OR1,OR2, OR3, OR4, CSOR1, CSOR2, OR5, LBEV, CB1T, C1L1T, C2L1T, C3L1T, C4LT1; Panelboards (208/120v) 3 phase

# SCHEDULE A

**LEASE NO.:   HGF070117**

**LESSEE:       TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE
                        REGIONAL MEDICAL CENTER**

**LESSOR:       LEASING INNOVATIONS, INCORPORATED**

**QTY    DESCRIPTION**

(1)      Item Code: 150A – LBL1, NBL1A, Q1L1, L2L1, Q2L1, Q3L1, Q4L1; Panelboards
           (208/120V) 3 phase
(1)      Item Code: 250A – C1L1A, N2L1A, C3L1A, N3L1A, N4L1A, CBL1A, QBL1,
           NBL1B, C1L1B, N2L1B, N2L1B, C4L1A; Panelboards (208/120V) 3 phase
(1)      Item Code: 400A – N1L1B, C2L1B, C3L1B, C4L1B, C4L1C, N4L1B, C3L1C,
           N3L1C, C2L1C, N1L1A, C2L1A; Panelboards (208/120V) 3 phase
(1)      Item Code:  125A – LBH1, L2H1, L4H1; Panelboards – 480V, 3 phase
(1)      Item Code: 250A – QBH1, NBH1, C1H1, Q1H1, N1H1, C2H1, Q2H1, N2H1,
           C3H1, Q3H1, Q4H1, N3H1, C4H1, N4H1, CBH1; Panelboards – 480V, 3 phase
(1)      Item Code: A7F55000056; Service Order Number; Billing Item – materials per
           quote, ECCN: EAR99; ATS & Paralleling Gear, ATS-Critical, ATS-LS, ATS-
           EQUIP1; ESA – Paralleling Switchgear
(1)      Item Code: WL Breaker; 1600 AF, 800AT, ETU 745 LSIG, Catalog#
           S2F316NGXXXXXXN, (For MSA-FP)
(1)      Item Code: TYZ:SMALL PROJECT; SF- Modify 2 Generators – Tulare Med Ctr,
           HTS: 9801008500
(1)      Item Code: TYZ-IS_BILLING; SF-MSB Switchgear; HTS: 9801008500, MSB
           Switchgear to include Siemens power meter for future remote monitoring system

**LESSOR:**                                    **LESSEE:**

**LEASING INNOVATIONS,**                 **TULARE LOCAL HEALTH CARE**
**INCORPORATED**                            **DISTRICT D/B/A TULARE REGIONAL**
                                                      **MEDICAL CENTER**

**By:**_____        **By:**_____

**Title:** **President**_____    **Title:** _____**CEO**_____

**Date:**_____        **Date:** _____

Exhibit A

Amortization & Concluding Payment Schedule

Lessee:   Tulare Local Health Care District d/b/a
          Tulare Regional Medical Center

Master Agreement Number:   HGF070117

Delivery Order Number :    Short

| Lease Payment Number | Payment | Interest | Principal | Concluding Payment |
|---|---|---|---|---|
| 1 | 121,600.00 | 0.00 | 121,600.00 | 7,513,625.44 |
| 2 | 121,600.00 | 45,300.00 | 76,300.00 | 7,421,766.87 |
| 3 | 121,600.00 | 44,797.50 | 76,802.50 | 7,329,544.70 |
| 4 | 121,600.00 | 44,291.69 | 77,308.31 | 7,236,957.48 |
| 5 | 121,600.00 | 43,782.55 | 77,817.45 | 7,144,003.77 |
| 6 | 121,600.00 | 43,270.06 | 78,329.94 | 7,050,682.12 |
| 7 | 121,600.00 | 42,754.19 | 78,845.81 | 6,956,991.07 |
| 8 | 121,600.00 | 42,234.92 | 79,365.08 | 6,862,929.16 |
| 9 | 121,600.00 | 41,712.24 | 79,887.76 | 6,768,494.92 |
| 10 | 121,600.00 | 41,186.11 | 80,413.89 | 6,673,686.88 |
| 11 | 121,600.00 | 40,656.52 | 80,943.48 | 6,578,503.56 |
| 12 | 121,600.00 | 40,123.44 | 81,476.56 | 6,482,943.47 |
| 13 | 121,600.00 | 39,586.85 | 82,013.15 | 6,387,005.12 |
| 14 | 121,600.00 | 39,046.72 | 82,553.28 | 6,290,687.02 |
| 15 | 121,600.00 | 38,503.04 | 83,096.96 | 6,193,987.66 |
| 16 | 121,600.00 | 37,955.78 | 83,644.22 | 6,096,905.53 |
| 17 | 121,600.00 | 37,404.91 | 84,195.09 | 5,999,439.11 |
| 18 | 121,600.00 | 36,850.41 | 84,749.59 | 5,901,586.89 |
| 19 | 121,600.00 | 36,292.27 | 85,307.73 | 5,803,347.34 |
| 20 | 121,600.00 | 35,730.45 | 85,869.55 | 5,704,718.92 |
| 21 | 121,600.00 | 35,164.92 | 86,435.08 | 5,605,700.10 |
| 22 | 121,600.00 | 34,595.68 | 87,004.32 | 5,506,289.33 |
| 23 | 121,600.00 | 34,022.68 | 87,577.32 | 5,406,485.06 |
| 24 | 121,600.00 | 33,445.91 | 88,154.09 | 5,306,285.73 |
| 25 | 121,600.00 | 32,865.34 | 88,734.66 | 5,205,689.78 |
| 26 | 121,600.00 | 32,280.95 | 89,319.05 | 5,104,695.64 |
| 27 | 121,600.00 | 31,692.71 | 89,907.29 | 5,003,301.73 |
| 28 | 121,600.00 | 31,100.60 | 90,499.40 | 4,901,506.47 |
| 29 | 121,600.00 | 30,504.58 | 91,095.42 | 4,799,308.27 |
| 30 | 121,600.00 | 29,904.64 | 91,695.36 | 4,696,705.53 |
| 31 | 121,600.00 | 29,300.75 | 92,299.25 | 4,593,696.66 |
| 32 | 121,600.00 | 28,692.88 | 92,907.12 | 4,490,280.04 |
| 33 | 121,600.00 | 28,081.01 | 93,518.99 | 4,386,454.07 |
| 34 | 121,600.00 | 27,465.11 | 94,134.89 | 4,282,217.12 |



| | | | | |
|---|---|---|---|---|
| 35 | 121,600.00 | 26,845.16 | 94,754.84 | 4,177,567.56 |
| 36 | 121,600.00 | 26,221.12 | 95,378.88 | 4,072,503.76 |
| 37 | 121,600.00 | 25,592.97 | 96,007.03 | 3,967,024.09 |
| 38 | 121,600.00 | 24,960.68 | 96,639.32 | 3,861,126.89 |
| 39 | 121,600.00 | 24,324.23 | 97,275.77 | 3,754,810.52 |
| 40 | 121,600.00 | 23,683.59 | 97,916.41 | 3,648,073.31 |
| 41 | 121,600.00 | 23,038.73 | 98,561.27 | 3,540,913.60 |
| 42 | 121,600.00 | 22,389.62 | 99,210.38 | 3,433,329.72 |
| 43 | 121,600.00 | 21,736.24 | 99,863.76 | 3,325,319.98 |
| 44 | 121,600.00 | 21,078.55 | 100,521.45 | 3,216,882.70 |
| 45 | 121,600.00 | 20,416.53 | 101,183.47 | 3,108,016.19 |
| 46 | 121,600.00 | 19,750.16 | 101,849.84 | 2,998,718.75 |
| 47 | 121,600.00 | 19,079.39 | 102,520.61 | 2,888,988.68 |
| 48 | 121,600.00 | 18,404.21 | 103,195.79 | 2,778,824.26 |
| 49 | 121,600.00 | 17,724.58 | 103,875.42 | 2,668,223.77 |
| 50 | 121,600.00 | 17,040.47 | 104,559.53 | 2,557,185.49 |
| 51 | 121,600.00 | 16,351.86 | 105,248.14 | 2,445,707.68 |
| 52 | 121,600.00 | 15,658.71 | 105,941.29 | 2,333,788.61 |
| 53 | 121,600.00 | 14,961.00 | 106,639.00 | 2,221,426.52 |
| 54 | 121,600.00 | 14,258.69 | 107,341.31 | 2,108,619.67 |
| 55 | 121,600.00 | 13,551.76 | 108,048.24 | 1,995,366.29 |
| 56 | 121,600.00 | 12,840.17 | 108,759.83 | 1,881,664.61 |
| 57 | 121,600.00 | 12,123.90 | 109,476.10 | 1,767,512.87 |
| 58 | 121,600.00 | 11,402.91 | 110,197.09 | 1,652,909.28 |
| 59 | 121,600.00 | 10,677.17 | 110,922.83 | 1,537,852.05 |
| 60 | 121,600.00 | 9,946.65 | 111,653.35 | 1,422,339.38 |
| 61 | 121,600.00 | 9,211.32 | 112,388.68 | 1,306,369.47 |
| 62 | 121,600.00 | 8,471.15 | 113,128.85 | 1,189,940.52 |
| 63 | 121,600.00 | 7,726.10 | 113,873.90 | 1,073,050.70 |
| 64 | 121,600.00 | 6,976.14 | 114,623.86 | 955,698.19 |
| 65 | 121,600.00 | 6,221.25 | 115,378.75 | 837,881.16 |
| 66 | 121,600.00 | 5,461.38 | 116,138.62 | 719,597.77 |
| 67 | 121,600.00 | 4,696.51 | 116,903.49 | 600,846.18 |
| 68 | 121,600.00 | 3,926.61 | 117,673.39 | 481,624.53 |
| 69 | 121,600.00 | 3,151.63 | 118,448.37 | 361,930.96 |
| 70 | 121,600.00 | 2,371.55 | 119,228.45 | 241,763.60 |
| 71 | 121,600.00 | 1,586.33 | 120,013.67 | 121,120.58 |
| 72 | 121,600.00 | 743.57 | 120,856.43 | 0.00 |

```
        ----------------- - ------ -------------- ---------------
          8,755,200.00           1,755,200.00   7,000,000.00
        ================= = ====== ============== ===============
```

```
LESSOR:                          LESSEE:
LEASING INNOVATIONS,             TULARE LOCAL HEALTH CARE DISTRICT D/B/A
INCORPORATED                     TULARE REGIONAL MEDICAL CENTER

BY: _____          BY: _____

TITLE: _____       TITLE: ___CEO_____

DATE: _____        DATE: _____
```

Exhibit E, Page 65

**Exhibit B**

**LEASE NO.: HGF070117**

**LESSEE:**      **TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:**      **LEASING INNOVATIONS, INCORPORATED**

1. Cerner Corporation
   2800 Rockcreek Parkway
   North Kansas City, MO 63117

2. Office Depot, Inc.
   6800 North Military Trail
   Boca Raton, FL 33496

3. Signal Communications Systems
   4325 W Shaw Ave #101
   Fresno, CA 93722

4. CDW Government LLC
   230 North Milwaukee Avenue
   Vernon Hills, IL 60061

5: I2I Systems, Inc
   3663 N. Laughlin Rd., Suite 200
   Santa Rosa, CA 95403

6: Telcor, Inc.
   1330 Fall Creek Rd.
   Lincoln, NE 68510

7. Nihon Kohden America, Inc.
   15353 Barranca Pkwy
   Irvine, CA 92618

8. Drager Medical Systems, Inc.
   211 E. 7th Street, Suite 620
   Austin, TX 78701

9. Medsphere Systems Corporation
   1903 Wright Place, Suite 120
   Carlsbad, CA 92008

10. Baker & Hostetler, LLP
    Key Tower, 127 Public Square, Suite 2000
    Cleveland, OH 44114

11. Lois Tickle Consulting Services, Inc.
    332 Glade Lane
    Charlottesville, VA 22901

12. Navigant Consulting, Inc.
    150 North Riverside Plaza, Suite 2100
    Chicago, IL 60606

13. BKD, LLP
    910 E. St. Louis Street, Suite 400
    P.O. Box 1900
    Springfield, MO 65801-1900

**Exhibit B**

LEASE NO.:  **HGF070117**

LESSEE:      **TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

LESSOR:     **LEASING INNOVATIONS, INCORPORATED**


14. HEI Consulting, LLC
    13635 E 50th St.
    Kansas City, MO 64133

15. Gonzalez Architects, LLC
    33 Bull Street Suite 412
    Savannah, GA 31401

16. Architectural Wood Design, Inc.
    5672 Dayton Ave
    Fresno, CA 93727

17. CDW Direct, LLC
    230 North Milwaukee Avenue
    Vernon Hills, IL 60061

18. Rutherford Co., Inc.
    2107 Crystal St.
    Los Angeles, CA 90039

19. Fujifilm Medical Systems, USA, Inc.
    419 West Avenue
    Stamford, CT 06902

20. Signal Solutions, Inc.
    4702 East Second St. Suite 1
    Benicia, CA 94510-1030

21. Morris, Levin, & Son
    1816 S K St.
    Tulare, CA 93274

**LESSOR:**                                    **LESSEE:**

**LEASING INNOVATIONS,**              **TULARE LOCAL HEALTH CARE DISTRICT**
**INCORPORATED**                          **D/B/A TULARE REGIONAL MEDICAL CENTER**


**By:**_____          **By:** _____

**Title:**__**President**_____          **Title:** _____**CEO**_____

**Date:**_____          **Date:** _____

Exhibit E, Page 67

# State and Municipal Lease Purchase Agreement No.<u>HGF070117</u>

## Authorization Agreement for Preauthorized Payments (ACH)

Contact Name: <u>Tulare Local Health Care District d/b/a Tulare Regional Medical Center</u>

I (we) <u>Benny Benzeevi, MD</u> hereby authorize Leasing Innovations, Incorporated or its assigns initiate and make debit entries to my (our) checking account at the bank named below. **Attached is a voided check** from this checking account to ensure proper processing of this agreement.

As part of this Lease approval and funding, it was required that Lease payments would be made by ACH. I (we) have agreed to make payments by ACH during the term of the Lease. I (we) can elect to cancel this automatic payment method by providing written notification to cancel along with an additional security deposit equal to ten percent of the original equipment cost. My/(our) failure to provide the additional security deposit at anytime that I/we cancel this payment method through written notice or payments are unable to be deducted shall be a default under the Lease and Leasing Innovations, Incorporated or its assigns shall be entitled to all its rights and remedies there under.

Monthly Payment: $<u>  121,601.00  </u> **(includes $1.00 processing fee)**

Term: <u>          71          </u> Months Non-cancelable State and Municipal Lease-Purchase Agreement

Bank/Depository Name: <u>  Bank of the Sierra</u>

Address: <u>246 E Tulare Ave</u>

City: <u> Tulare</u>          State: <u> CA</u>          Zip: <u> 93274</u>

Customer Signature:<u>                                                      </u>Date: <u>            </u>

**(Attach voided Check here)**

BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, Tulare Local Health Care District d/b/a Tulare Regional Medical Center (the "Seller") for good and valuable consideration paid by Leasing Innovations, Incorporated (the "Buyer") the receipt and sufficiently of which is acknowledged herein, Seller hereby grants, bargains, sells, conveys, transfers, assigns, and delivers to Buyer, its successors and assigns, all of its right, title and interest in the following equipment listed under State and Municipal Lease-Purchase Agreement No. HGF070117 and located at: Tulare Regional Medical Center, 869 N. Cherry St., Tulare, CA 93274.

QUANTITY/DESCRIPTION                SERIAL NUMBER              COST

SEE SCHEDULE A


Seller warrants that it is the true and lawful owner of said Equipment and that same are free and clear of all liens, security interests, claims and encumbrances of any kind; and that it has the right and authority to sell the same.  SELLER MAKES NO WARRANTIES ON THE EQUIPMENT EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, UNLESS OTHERWISE PROVIDED HEREIN.

        IN WITNESS WHEREOF, this Bill of Sale has been duly executed and delivered by Seller's duly authorized corporate officer.


SELLER:

TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER

By: _____

Title: _____ CEO _____

Date: _____

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

Leasing Innovations, Incorporated
Attn: Heather G. Fritz
15 Court Sq., Suite 520   Boston, MA 02108


Title Order No.: NCS-864456-KCTY

APN: 171-300-015-000 AND 171-300-016-000          SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS

This Deed of Trust With Assignment of Rents ("**Deed of Trust**") is made this 1st day of September, 2017, among TULARE LOCAL HEALTH CARE DISTRICT ("**Trustor**"), whose address is 869 N. Cherry Street, Tulare, CA 93274, First American Title Insurance Company ("**Trustee**"), and LEASING INNOVATIONS, INCORPORATED, on behalf of itself and as collateral agent on behalf of any Assignee under the Lease (defined below) (collectively, "**Beneficiary**"), whose address is 15 Court Sq., Suite 520, Boston, MA.

**Witnesseth:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, the following property located in the City of Tulare, County of Tulare, State of California (the "**Real Property**"):

> PARCEL 1 AND REMAINDER OF PARCEL MAP NO. 4531, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED AUGUST 23, 2002 IN BOOK 46, PAGE 36 OF PARCEL MAPS, TULARE COUNTY RECORDS.
>
> EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF OF ALL THE MINERALS, GAS, OILS, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND, TOGETHER WITH ALL RIGHTS INCIDENTAL TO THE DEVELOPMENT OF SAME, AS EXCEPTED IN THE DEED FROM SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, A NATIONAL BANKING ASSOCIATION, TO C. E. SWEARINGEN AND CLARA B. SWEARINGEN, HUSBAND AND WIFE, DATED SEPTEMBER 29, 1936 AND RECORDED NOVEMBER 30, 1936 IN BOOK 704, PAGE 316 OF OFFICIAL RECORDS.

TOGETHER WITH all buildings and other improvements and structures now or hereafter located on the Real Property (collectively, the "**Improvements**" and together with the Real Property shall sometimes be referred to as the "**Property**");

TOGETHER WITH all existing and future leases, subleases, subtenancies, licenses, agreements and concessions relating to the use, occupancy or enjoyment of all or any part of the Property, together with any and all guaranties and other agreements relating to or made in connection with any of the foregoing (each, individually, a "**Lease**", and, collectively, the "**Leases**");

TOGETHER WITH all rents, issues, income, revenues, royalties, profits, proceeds and earnings now or hereafter payable with respect to or otherwise derived from the ownership, use, management, operation, leasing or occupancy of the Property, including, without limitation, cash or security deposited under any of the Leases to secure the performance by the lessees of their obligations thereunder (collectively, the "**Rents**"); and

TOGETHER WITH all Trustor's rights in and to the personal property and equipment located at the Real Property (the "**Personal Property**" collectively with the Property, Leases and Rents, the "**Collateral**").

**For the Purpose of Securing:**

    1.       Performance of each agreement of Trustor herein contained.

DOCS 999999-905089/3038880.1

2. The prompt payment, when due, of all sums due to Beneficiary as "Lessor" and any "Assignee" under that certain State and Municipal Lease-Purchase Agreement, dated September 1, 2017, (the "**Lease**"), and any assignment, extension or renewal thereof, in the principal sum of Seven Million Dollars and 00/100 ($7,000,000.00) Dollars executed by Trustor, as "Lessee", and Beneficiary, as "Lessor".

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

1. To keep said Collateral in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2. To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4. To pay: at least ten days before delinquency, all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said Collateral or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Deed of Trust.

  Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said Property for such purposes; appear in and defend any action or proceeding purporting to affect the Collateral hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5. To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6. That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7. That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8.      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Lease for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.      That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust to Trustee and satisfaction of all obligations set forth in the Lease and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

10.     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said Property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said Property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11.     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder or under the Lease or any other documents executed in connection with the Lease (the "**Lease Documents**"), Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Lease and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said Property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of his Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto. Notwithstanding the foregoing or any other terms set forth herein, upon the occurrence of a default hereunder, Beneficiary shall have all rights and remedies available to it in law or equity.

12.     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee

                                        3

predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

13.    That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the Collateral secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

14.    Beneficiary requests that a copy of any "Notice of Default" and of any "Notice of Sale" under any senior deed of trust or mortgage that affects the Property or under any other indebtedness that affects the Collateral, or any portion thereof be mailed to Beneficiary at the address set forth above.

**[Remainder of Page Intentionally Left Blank.]**

15.     That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

**See attached Rider for additional terms and provisions incorporated herein by this reference.**

TULARE LOCAL HEALTH CARE DISTRICT
D/B/A TULARE REGIONAL MEDICAL CENTER

By:      _____

Name:      _____Benny Benzeevi_____

Title:      _____CEO_____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF _____          )

                                     )     ss:

COUNTY OF _____          )

On _____, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
                                Notary Public

### RIDER TO DEED OF TRUST WITH ASSIGNMENT OF RENTS

THIS RIDER TO DEED OF TRUST WITH ASSIGNMENT OF RENTS (this "**Agreement**") is made as of September 1, 2017, by TULARE LOCAL HEALTH CARE DISTRICT ("**Trustor**"), in favor of LEASING INNOVATIONS, INCORPORATED, on behalf of itself and as collateral agent on behalf of any Assignee under the Lease ("**Beneficiary**"), and amends and supplements that certain Deed of Trust With Assignment of Rents of even date herewith (this "**Deed of Trust**"). The following additional provisions are incorporated in the above-referenced Deed of Trust to which this Rider is attached, and shall have the same force and effect as though set forth therein:

1.  <u>Acceleration of Indebtedness Under Lease</u>. In the event of any Transfer (defined below) of the Property or Collateral or any part thereof or any interest therein in any manner or way, whether voluntary or involuntary, without the prior written consent of the Beneficiary, (which consent may be withheld for any reason or for no reason or given upon such terms and conditions as Beneficiary deems necessary or appropriate, all within Beneficiary's absolute discretion) or upon the occurrence of a Non-Appropriation Event (as defined in the Lease), the entire balance of the principal and interest of the Lease owed to Beneficiary and secured hereby shall, at the option of the Beneficiary hereof, be declared immediately all due and payable. Consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions. Beneficiary may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Deed of Trust, and any such transferee shall assume all obligations hereunder and agree to be bound by all provisions contained herein. As used herein, "**Transfer**" includes the sale, transfer, conveyance, assignment, alienation or other disposal of or divestment of title to, or, mortgage, conveyance of security interest to, or other encumbrance of the Property or Collateral, or any portion thereof or interest therein, whether voluntary, involuntary, by operation of law or otherwise, the execution of an agreement to sell or an option to buy the Property or Collateral, or any portion thereof or interest therein. This covenant shall run with the Property and remain in full force and effect until the indebtedness secured hereby is liquidated, and Beneficiary may, without notice to Trustor, deal with such transferees with reference to the indebtedness secured hereby in the same manner as with Trustor, without in any way altering or discharging Trustor's liability hereunder or the indebtedness secured hereby or the liability of any guarantor of Trustor with respect thereto.

2.  <u>Insurance</u>. In addition to and without limiting any requirements set forth in this Deed of Trust, Trustor shall obtain and keep in force the following minimum insurance coverages: (i) comprehensive general liability and property damage coverage with a broad form coverage endorsement and a combined single limit of at least $2,000,000; and (ii) protection against fire, "extended coverage" and other "All Risk" perils in the full replacement cost of the improvements. All property insurance policies shall include the standard mortgagee clause in the state naming Beneficiary as the mortgagee with all losses payable to Beneficiary. All liability policies shall name Beneficiary as an additional insured. All insurance policies shall provide that the policy may not be canceled or modified in any material way without 30 days prior written notice to Beneficiary.

3.  <u>Property</u>. The Property encumbered by the lien of this Deed of Trust shall include all improvements now or hereafter erected on the Property, and easements, rights, appurtenances, rents, water rights, and all fixtures now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by this Deed of Trust; and all of the foregoing, together with such property are referred to herein as the "Property."

4.  <u>Attorneys' Fees</u>. If any claim is brought for the foreclosure of this Deed of Trust or for the enforcement of any provision of this Deed of Trust, Trustor agrees to pay all costs and expenses of Beneficiary and Trustee, including reasonable attorneys' fees, and these sums shall be secured by this Deed of Trust.

5.  <u>Remedies</u>. The powers and remedies conferred in this Deed of Trust are concurrent and cumulative to all other rights and remedies provided in this Deed of Trust or given by law. These powers and remedies may be exercised singly, successively, or together, and as often as deemed necessary.

**[Remainder of Page Intentionally Left Blank]**

# ADDENDUM TO
# STATE AND MUNICIPAL LEASE-PURCHASE AGREEMENT NO. HGF070117

This Addendum to Statement Municipal Lease-Purchase Agreement No. HGF070117 ("**Addendum**") is attached to and made part of that certain State and Municipal Lease-Purchase Agreement (the "**Agreement**") between Tulare Local Health Care District d/b/a/ Tulare Regional Medical Center ("**Lessee**") and Leasing Innovations, Incorporated (as "**Lessor**"), which Lessor's interest may be assigned (in whole or in part). All terms not defined in this Addendum have the same meanings as set forth in the Agreement. The Agreement and this Addendum are sometimes collectively referred to in this Addendum as the "**Lease**." To the extent of any inconsistency between the terms of the Agreement and the terms of this Addendum (including terms in this Addendum which "continue" provisions of the Agreement), the terms of this Addendum shall control.

The parties hereto agree that the following terms are added to and constitute an integral part of the Lease:

1. **Real Property Collateral; Deed of Trust.** In addition to the Equipment, the principal and interest payments that are due by Lessee to the Lessor in accordance with the Lease shall be secured by that certain Deed of Trust with Assignment of Rents (the "**Deed of Trust**") of even date herewith made by Lessee, as "Trustor", for the benefit of Lessor, as "Beneficiary" with respect to that certain real property and improvements thereon located at 1425 Prosperity Avenue, Tulare, CA, as more particularly described in the Deed of Trust (the "**Property**").

2. **Acceleration of Indebtedness; Event of Default.** In the event of any Transfer (defined below) of the Property or Collateral or any part thereof or any interest therein in any manner or way, whether voluntary or involuntary, without the prior written consent of the Lessor, (which consent may be withheld for any reason or for no reason or given upon such terms and conditions as Lessor deems necessary or appropriate, all within Lessor's absolute discretion) or upon the occurrence of a Non-Appropriation Event (defined below), the entire balance of the principal and interest owed by Lessee to Lessor pursuant to the Lease shall, at the option of the Lessor, be declared immediately all due and payable. Consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions. Lessor may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to the terms of the Lease, and any such transferee shall assume all obligations hereunder and agree to be bound by all provisions contained herein. As used herein, "**Transfer**" includes the sale, transfer, conveyance, assignment, alienation or other disposal of or divestment of title to, or, mortgage, conveyance of security interest to, or other encumbrance of the Property or Collateral, or any portion thereof or interest therein, whether voluntary, involuntary, by operation of law or otherwise, the execution of an agreement to sell or an option to buy the Property or Collateral, or any portion thereof or interest therein. As used herein, a "**Non-Appropriation Event**" refers to the exercise by Lessee of its rights to terminate the Lease pursuant to Section 7 hereof. For the avoidance of doubt, a Transfer or Non-Appropriation Event shall be considered an Event of Default under the Lease and the Deed of Trust and Lessor shall be permitted to exercise all remedies available to it thereunder.

3. **Appropriation of Funds; Representations of Lessee.** Lessee hereby certifies to Lessor that (a) all payments due from the Lessee to Lessor pursuant to the Lease, for the current budgetary period of the Lessee ending __06/30/2018__, are within the Lessee's budget for the above referenced budgetary period and are within an available, unexhausted and unencumbered appropriation for the Lessee, (b) with respect to the Lease, Lessee represents that the use of the Equipment is (i) for a governmental use; and (ii) such use is for a valid public purpose and essential to the proper, efficient, economic operation of the Lessee, and (c) Lessee has obtained all necessary consents and approvals to enter into the Lease, the Deed of Trust and all other instruments in connection with this Lease transaction. The Lessee further represents that the Equipment will not be used in or for any private commercial activity.

Except as expressly amended or supplemented by this Addendum, the terms and provisions of the Agreement shall remain unchanged and in full force and effect and are expressly reaffirm and incorporated by reference in this Addendum.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum as of the date first written above.

**LESSEE:**

TULARE LOCAL HEALTH CARE DISTRICT
D/B/A TULARE REGIONAL MEDICAL CENTER

By: _____
Name: _____Benny Benzeevi, MD_____
Title: _____CEO_____

**LESSOR:**

LEASING INNOVATIONS, INCORPORATED

By: _____
Name: _____Heather G. Fritz_____
Title: _____President_____



261 N. Highway 101
Solana Beach, CA 92075
Ph. 858.259.4754 Fax 858.259.7076

# STATE AND MUNICIPAL LEASE-PURCHASE AGREEMENT ("LEASE") No. HGF070117

1.   LESSEE   <u>Tulare Local Health Care District d/b/a Tulare Regional Medical Center</u>     2A.   VENDOR: <u>Multiple Vendors; See Attached Exhibit B</u>
2.           <u>869 N. Cherry Street</u>
               <u>Tulare, CA 93274</u>

                                                            2B.   LESSOR:   <u>Leasing Innovations, Incorporated</u>
      <u>Equipment location:869 N.Cherry Street</u>                               <u>261 N. Highway 101</u>
             <u>Tulare, CA 93274</u>                                     <u>Solana Beach, CA 92075</u>
                                                            2C.   ASSIGNEE:

3.   "THE EQUIPMENT" (See Attached Schedule A and Deed of Trust with Assignment of Rents):

| QUANTITY | DESCRIPTION | CASH PRICE | PRINCIPAL AND INTEREST PAYMENT |
|---|---|---|---|
| See Schedule A | | | |

4.  **COVENANTS:** LESSEE represents, covenants and warrants that (a) It is a political subdivision of the State of California (b) It is authorized by all applicable laws to perform this Lease, (c) The Equipment is essential and needed for its proper, efficient and economic operation, (d) At the time of making the Lease, sufficient funds were appropriated to fulfill the obligations for the current fiscal year, and (e) LESSEE has not previously terminated an agreement substantially similar to the Lease for non-appropriation except as specifically described in a letter appended hereto.

5.  **PAYMENTS:** <u>72</u>  monthly payments of  <u>$121,600.00</u>    per month are required. The first payment will be due on  <u>September 1, 2017.</u> Subsequent payments will be due on the same day of each month thereafter. All payments will be made, subject only to non-appropriation as described in Section 7, below. Each payment will consist of principal and interest as detailed in an amortization schedule to be supplied and made a part of this Lease as Exhibit A.

6.  **PURCHASE OPTION:** After making all of the payments, LESSEE may purchase the Equipment for $1. At any other time, LESSEE may purchase the Equipment for the "Concluding Payment" value shown in the amortization schedule attached hereto as Exhibit A.

7.  **NON-APPROPRIATION:** If LESSEE is not allotted funds for the next Fiscal Period to continue the payments under this Lease, and has no funds for the purchase, lease or rental of the Equipment or equipment which will perform functions similar to those performed by the EQUIPMENT, and has no funds from other sources, LESSEE may terminate this lease at the end of the then current Fiscal Period, by giving ninety (90) days' written notice prior to the end of such Fiscal Period to LESSOR, and enclosing therewith a sworn statement by an appropriate officer of the LESSEE that the foregoing conditions exist. **In this sole event**, LESSEE shall not be obligated to make payments beyond the end of the then current Fiscal Year. Upon the occurrence of this event, LESSEE agrees, if requested, that it will provide LESSOR with an opinion of its counsel relating to the circumstances of non-appropriation. Upon the occurrence of this event, LESSEE shall, at it's sole expense, both restore the Equipment to its original condition, allowing for reasonable wear and tear, and return it to the LESSOR, or to a place designated by the LESSOR.

8.  **PAYMENTS UNCONDITIONAL:** LESSEE HAS EXAMINED, TESTED AND ACCEPTED THE EQUIPMENT COVERED BY THIS LEASE. AS LONG AS FUNDS HAVE BEEN LEGALLY APPROPRIATED, IT WILL NOT FAIL TO MAKE AGREED PAYMENTS, REGARDLESS OF LOSS, DAMAGE, DESTRUCTION, MALFUNCTION OR DISREPAIR OF THE EQUIPMENT, OR DISPUTE WITH THE VENDOR FOR ANY REASON.

9.  **DISCLAIMER OF WARRANTIES:** THERE ARE NO IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY. LESSOR OR ANY SUCCESSOR ASSIGNEE SHALL NOT BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR SPECIAL DAMAGES.

10. **OTHER GENERAL TERMS AND CONDITIONS:** See Reverse Side.

11. **SIGNATURES:** Each signer warrants that he/she has full power and authority to bind LESSOR and LESSEE, respectively.

LESSEE: TULARE LOCAL HEALTH CARE DISTRICT                            LESSOR: LEASING INNOVATIONS, INCORPORATED
           D/B/A TULARE REGIONAL MEDICAL CENTER

Signature: _____                Signature: _____

Title: _____CEO_____           Title: _____President_____

Date of this Lease: _____

Federal Identification Number: _____

## ACCEPTANCE CERTIFICATE

The EQUIPMENT was specified and selected by us. We have received it in good order and condition, and it is acceptable to us. We approve payment by you to the VENDOR, and hereby certify that the VENDOR has fully and satisfactorily performed all of its obligations under the purchase agreement for the Equipment. This will advise you that we have carefully read the Lease, and are fully aware of our obligations under it. WE AGREE TO ENFORCE, IN OUR OWN NAME, ALL WARRANTIES OR REPRESENTATIONS, WHICH THE VENDOR HAS MADE TO US.

LESSEE: TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER

By: _____        Title: ____CEO_____       Acceptance Date: _____September 1, 2017____

### SIGNER: THESE ARE SOME OF THE IMPORTANT STATEMENTS INCLUDED IN THIS AGREEMENT

- THE LESSEE IS A STATE OR POLITICAL SUBDIVISION THEREOF, AND HAS AN ESSENTIAL, CONTINUING NEED FOR THE EQUIPMENT.
- YOU ARE AUTHORIZED TO BIND THE LESSEE, AND YOU ARE NOT RELYING ON ANY REPRESENTATIONS, OR PROMISES, MADE TO YOU WHICH ARE NOT STATED IN THIS WRITTEN AGREEMENT.
- YOU ARE AWARE OF THE NON-APPROPRIATION CANCELLATION PRIVILEGE, AND UNDERSTAND THAT IT IS A "LAST-RESORT" PROTECTIVE PROVISION, WHICH YOU DO NOT NOW INTEND OR FORESEE WILL BE USED, AND YOU HAVE NOT PREVIOUSLY USED IT TO END A SIMILAR AGREEMENT, UNLESS SPECIFICALLY DISCLOSED TO US IN WRITING.
- YOU UNDERSTAND THAT, EXCEPT FOR NON-APPROPRIATION, THE OBLIGATION TO MAKE PAYMENTS IS UNCONDITIONAL.• IN THE EVENT OF A DISPUTE WITH THE VENDOR, FOR ANY REASON, YOU WILL HAVE NO RIGHT TO WITHHOLD, OR DELAY, ANY PAYMENTS.

## GENERAL TERMS AND CONDITIONS

(a) **TITLE:** Title to the Equipment shall at all times be and remain with LESSEE, subject to the security interest of LESSOR, LESSEE agrees to affix to the Equipment a tag, if provided by Lessor, stating LESSOR'S interest in the Equipment.

(b) **REPAIRS:** LESSEE, at its sole expense, shall maintain the Equipment in good operating condition and state of repair. The payments specified herein do not include maintenance or repair services, or repair or replacement parts for the Equipment, unless separately stated.

(c) **TAXES:** In addition to payments specified herein, LESSEE shall promptly pay all taxes, assessments and other governmental charges (including penalties, interest, recording and registration fees, if any) levied or assessed: (1) upon the LESSEE'S interest in, or use of operation of, or earnings arising from the Equipment: and (2) against LESSOR, on account of its ownership, use or operation, leasing to the LESSEE of the Equipment or receipt of payments or earnings from it, exclusive, however, of taxes based on net income of LESSOR.

(d) **INSPECTION:** LESSOR shall have the right to enter the premises where the Equipment is located, at all reasonable times, to inspect the Equipment and otherwise determine LESSEE's compliance with the terms of this Lease.

(e) **ALTERATIONS:** LESSEE shall make no alterations or affix any attachments to the Equipment without the prior written consent of LESSOR.

(f) **THIRD-PARTY INJURY:** LESSOR shall not be liable for injury to any person or damage to property resulting directly or indirectly from the operation or use of the Equipment. LESSEE shall indemnify and save LESSOR and its assignee(s) harmless from and against any loss, damage, liability or expenses (including attorneys' fees) claimed with respect to injury to any person or damage to property resulting directly or indirectly from the operation or use of the Equipment.

(g) **NON-ASSIGNABILITY BY LESSEE:** This Lease is personal to LESSEE. LESSEE shall not assign, sub-lease, transfer or otherwise encumber its rights in and to this Lease or the Equipment without the prior written consent of the LESSOR.

(h) **RISK OF LOSS:** LESSEE shall bear the risk of loss, damage or destruction to the Equipment during the term of the Lease. In such event, LESSEE shall either (1) restore the equipment to good repair, condition and working order, in which event this Lease shall remain in full force and effect without abatement of payments: or (2) pay to LESSOR an amount equal to the option to purchase value immediately prior to the loss, damage or destruction, plus any late charges and interest at 12% per annum from the due date of such payment until paid. In which event this Lease shall terminate as to the equipment for which such payment is made at the time such payment is made.

(i) **DEFAULT:** In the event of default by LESSEE in the payment of any sums due under this Lease within ten (10) days after they are due, or receivership, insolvency, or proceedings by or against LESSEE under the bankruptcy laws, or LESSEE'S failure to observe or perform any other required provision of this Lease, and such default continues for fifteen (15) days after written notice thereof, by LESSOR to LESSEE, LESSOR shall have the right to exercise any one or more of the following remedies: (1) to declare all sums due and to become due hereunder, during the LESSEE'S current fiscal period, immediately due and payable, without notice or demand to LESSEE: (2) to sue for and recover all payments then accrued or thereafter accruing with respect to the Equipment: (3) to take possession of the Equipment without demand or notice wherever it may be located, with or without legal process, and retain it free from any claims of LESSEE whatsoever: (4) to terminate this Lease: or (5) to pursue any other remedy at law or in equity. Notwithstanding any repossession or any other action which LESSOR may take, LESSEE shall be and remain liable for the full performance of all of its obligations under this Lease unless LESSOR elects, at its option, to sell or re-lease any of the repossessed Equipment to a third party, in which event the net proceeds of such sale or lease, less LESSOR'S expenses incurred in connection therewith, including attorney's fees, shall be applied to the total amount due by LESSEE under this Lease and LESSEE shall be obligated to pay LESSOR any deficiency. All of the foregoing remedies are cumulative and may be exercised concurrently or separately. LESSEE shall pay all costs and legal expenses incurred by LESSOR in collecting or attempting to collect, any sums due hereunder or in securing possession of the Equipment. LESSEE consents to the personal jurisdiction of the courts of the State of California, or, Commonwealth of Massachusetts , with respect to any dispute arising out of this Lease.

(j) **PERSONAL PROPERTY:** LESSEE warrants that the Equipment is, and shall at all times during the Lease term remain, personal property.

(k) **ASSIGNMENT BY LESSOR:** This Lease, the Equipment and any payments by LESSEE due or to become due under it, may be assigned or otherwise transferred, either in whole or in part, by LESSOR and its assignee, without affecting any obligations of LESSEE, and in such event LESSOR'S transferee or assignee shall have all the rights, powers, privileges and remedies of LESSOR hereunder to the extent of such transfer or assignment. Any assignee's rights shall be free from all defenses, set-offs or counterclaims, which LESSEE may have. No assignee shall be obligated to perform any duty or condition required to be performed by LESSOR under the terms of this Lease.

(l) **DETERMINATION OF PAYMENT AMOUNT:** LESSOR and LESSEE hereby acknowledge that the amount of the periodic payments under this Lease has been established by negotiation between LESSEE and LESSOR, and have been agreed to by them. Such amount contemplates the addition to the equipment cost of compensation for the securing of third party funding of this Lease. LESSOR and LESSEE agree that the interest payments to the LESSOR, or a successor assignee, as shown on the supplied amortization schedule, shall be the interest applicable to this Lease.

(m) **ADMINISTRATIVE SUPPORT:** LESSEE may, from time to time, be required to file, or assist in the filing of, reports to regulatory and/or taxing authorities, which may be necessary to establish, perfect or maintain the legality and/or tax-exempt status of this Lease, or to execute documents needed for LESSOR'S financing. LESSEE acknowledges that its compliance with the reporting requirements of the Internal Revenue Code is essential to the exemption from Federal Income tax of the interest portion of payments made by LESSEE hereunder. Accordingly, LESSEE agrees that its failure to comply with those requirements shall constitute a material default thereunder which, in addition to any other remedies provided in paragraph (i) above, shall entitle LESSOR and any of its assignee(s) to be indemnified and held harmless by LESSEE for all costs, liabilities, damages, expenses, taxes and penalties including Federal Income tax penalties and interest incurred as a result of such failure, which amount LESSEE agrees to pay upon written demand therefore. LESSEE promises to promptly make such filings or to render such assistance as may, from time to time, be reasonably requested by LESSOR or its assigns, and to indemnify and hold harmless LESSOR or its assigns from any cost, expense or other damage caused by its failure to do so. LESSEE hereby further authorizes LESSOR to file UCC-1 financing statements without LESSEE'S signature, and to fill in dates and other obvious minor corrections on this Agreement.

(n) **SEVERABILITY:** Any term or provision of this Lease found to be prohibited by law or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without, to the extent reasonably possible, invalidating the remainder of this Lease.

(o) **FEES, COLLECTION EXPENSES, LATE CHARGES, AND ADVANCES.** Lessee shall also pay to Lessor with the first rental payment an administrative fee equal to: (a) three hundred seventy-five dollars ($375.00) if the purchase price of the equipment is less that $5,000.00, six hundred dollars ($600.00) if purchase price is between $5,001.00 to $10,000.00, seven hundred dollars ($700.00) if purchase price is between $10,001.00 to $25,000.00, seven hundred and fifty dollars ($750.00) if purchase price is between $25,001.00 to $50,000.00, nine hundred dollars ($900.00) if purchase price is between $50,001.00 to $100,000.00, one thousand dollars ($1,000.00) if purchase price is between $100,001.00 to $250,000.00, one-thousand two hundred dollars ($1,200.00) if purchase price is between $250,001.00 to $500,000.00, or one thousand four hundred dollars ($1,400.00) if purchase price is between $500,001.00 to $1,000,000.00. In addition, Lessee shall pay Lessor a processing fee of $1.00 per scheduled rental payment. If any rent or other amount payable hereunder is not paid when due, then as compensation for the administration and enforcement of Lessee's obligation to make timely payments, Lessee shall pay with respect to each overdue payment on demand (i) any collection agency fees and expenses, plus (ii) a late payment service fee of $10.00 or 5% of total invoice including sales tax, whichever is greater, which Lessee agrees is a reasonable approximation of the internal costs that Lessor will incur as a result of Lessee's delay in payment, plus (iii) interest at 18% per annum (but not to exceed the highest rate permitted by law) on such overdue payment for the period for which it is overdue. All advances made by Lessor to preserve said property or to pay insurance premiums for insurance hereon (but not to exceed the highest rate permitted by law) or to discharge and pay any taxes, liens or encumbrances thereon shall be added to the unpaid balance of rentals due hereunder and shall be repayable by Lessee to Lessor together with interest thereon at the highest contract rate until paid. Lessee shall pay to Lessor a fee equal to twenty-five dollars ($25.00) for each check returned to Lessor unpaid, in addition to pay late charge provided for herein for a delinquent payment.

(p) **ENTIRE AGREEMENT:** This Lease constitutes the entire agreement between the parties regarding the Equipment, and there are no representations, warranties, promises, guarantees or agreements, oral or written, expressed or implied, between the parties hereto with respect to this Lease. No modification or amendment hereof shall be binding upon the LESSOR unless made in writing and executed on behalf of LESSOR by its duly authorized officer or agent. Lessor and Lessee agree that this Lease and other documents incorporated in it shall be governed by, and construed in accordance with, the laws of, or under this Lease, shall be in the California District Court, San Diego County, or Massachusetts District Court, Suffolk County where the Lessor has places of business.

## ASSIGNMENT OF LEASE

For value received, LESSOR hereby sells, assigns and transfers to Assignee in item 2C, all of its right, title and interest in and to the Lease, including title to the Equipment, all payments due, any and all insurance policies, and all proceeds of any of the foregoing. LESSOR warrants that the Lease is genuine and in all respects what it purports to be, that LESSOR'S interest is free from liens or encumbrances: and that to the best of LESSOR'S knowledge, the Lease has been executed by an individual acting with full authority to do so. LESSOR is not hereby relieved of any of its obligations to LESSEE under the Lease.

LESSOR: LEASING INNOVATIONS, INCORPORATED

By: _____    Title: _____President_____    Date: _____

Essential Use Certificate

Leasing Innovations, Incorporated
261 N. Highway 101
Solana Beach, CA 92075

RE:     State and Municipal Lease Purchase Agreement No. HGF070117 (the "Lease"),
        between Leasing Innovations, Incorporated (the "Lessor") and Tulare Local
        Health Care District d/b/a Tulare Regional Medical Center (the "LESSEE").

Gentlemen:

This confirms and affirms that the Equipment is essential to the function of the Lessee
or to the service we provide to our citizens.

Further, we have an immediate need for, and expect to make immediate use of all the
Equipment, which need is not temporary or expected to diminish during the lease term
of the Lease.  The Equipment will be used by us only for the purpose of performing our
governmental or proprietary function consistent with permissible scope of our authority.
The Equipment will be used by Tulare Local Health Care District d/b/a Tulare Regional
Medical Center, 869 N. Cherry Street, Tulare, CA 93274.  (Name and address of User.)

 The software is used to create and maintain the electronic medical record as required by

 the federal government, and for all revenue cycle processes and functions.


**(State how and for what purposes the Equipment will be used.)**

We expect and anticipate adequate funds to be available for all future payments or rent
due after the current budgetary period.

LESSEE:

**TULARE LOCAL HEALTH DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

By: _____

Title: _____CEO_____

Date: _____



261 N. Highway 101, Solana Beach, CA 92075
Ph. 858.259.4794     Fax   858.259.7076

**INVOICE NO 1**
Lease No. HGF070117
DATE: August 31, 2017
Due: Immediately

To: Tulare Local Health Care District d/b/a Tulare Regional Medical Center
869 N. Cherry Street
Tulare, CA 93274

| DESCRIPTION | AMOUNT |
|---|---|
| First Payment | $121,600.00 |
| Processing Fee | $400.00 |
| Documentation Fee | $400.00 |
| UCC Filing Fee | $675.00 |
| Amendment Fee | $275.00 |
| SUBTOTAL | $123,350.00 |
| SALES TAX (8.25%, Tulare County) | $ 10,176.38 |
| TOTAL DUE | $ 133,526.38 |

Make all checks payable to:   Leasing Innovations, Incorporated
261 N. Highway 101
Solana Beach, CA 92075

If you have any questions concerning this invoice, call: Brian Snider at 858-259-4794

**THANK YOU FOR YOUR BUSINESS!**

*Please note that a late fee of 5% or $10.00 (whichever total is larger) will be assessed for any payments that are past due. An account will be considered in default of their lease agreement should payment not be received within **30 Days** of due date. Once an account is in default of their lease agreement, immediate action will be taken.*

Remittance Copy

Exhibit A

Amortization & Concluding Payment Schedule


Lessee:   Tulare Local Health Care District d/b/a
          Tulare Regional Medical Center

Master Agreement Number:   HGF070117

Delivery Order Number :    Short

| Lease Payment Number | Payment | Interest | Principal | Concluding Payment |
|---|---|---|---|---|
| 1 | 121,600.00 | 0.00 | 121,600.00 | 7,513,625.44 |
| 2 | 121,600.00 | 45,300.00 | 76,300.00 | 7,421,766.87 |
| 3 | 121,600.00 | 44,797.50 | 76,802.50 | 7,329,544.70 |
| 4 | 121,600.00 | 44,291.69 | 77,308.31 | 7,236,957.48 |
| 5 | 121,600.00 | 43,782.55 | 77,817.45 | 7,144,003.77 |
| 6 | 121,600.00 | 43,270.06 | 78,329.94 | 7,050,682.12 |
| 7 | 121,600.00 | 42,754.19 | 78,845.81 | 6,956,991.07 |
| 8 | 121,600.00 | 42,234.92 | 79,365.08 | 6,862,929.16 |
| 9 | 121,600.00 | 41,712.24 | 79,887.76 | 6,768,494.92 |
| 10 | 121,600.00 | 41,186.11 | 80,413.89 | 6,673,686.88 |
| 11 | 121,600.00 | 40,656.52 | 80,943.48 | 6,578,503.56 |
| 12 | 121,600.00 | 40,123.44 | 81,476.56 | 6,482,943.47 |
| 13 | 121,600.00 | 39,586.85 | 82,013.15 | 6,387,005.12 |
| 14 | 121,600.00 | 39,046.72 | 82,553.28 | 6,290,687.02 |
| 15 | 121,600.00 | 38,503.04 | 83,096.96 | 6,193,987.66 |
| 16 | 121,600.00 | 37,955.78 | 83,644.22 | 6,096,905.53 |
| 17 | 121,600.00 | 37,404.91 | 84,195.09 | 5,999,439.11 |
| 18 | 121,600.00 | 36,850.41 | 84,749.59 | 5,901,586.89 |
| 19 | 121,600.00 | 36,292.27 | 85,307.73 | 5,803,347.34 |
| 20 | 121,600.00 | 35,730.45 | 85,869.55 | 5,704,718.92 |
| 21 | 121,600.00 | 35,164.92 | 86,435.08 | 5,605,700.10 |
| 22 | 121,600.00 | 34,595.68 | 87,004.32 | 5,506,289.33 |
| 23 | 121,600.00 | 34,022.68 | 87,577.32 | 5,406,485.06 |
| 24 | 121,600.00 | 33,445.91 | 88,154.09 | 5,306,285.73 |
| 25 | 121,600.00 | 32,865.34 | 88,734.66 | 5,205,689.78 |
| 26 | 121,600.00 | 32,280.95 | 89,319.05 | 5,104,695.64 |
| 27 | 121,600.00 | 31,692.71 | 89,907.29 | 5,003,301.73 |
| 28 | 121,600.00 | 31,100.60 | 90,499.40 | 4,901,506.47 |
| 29 | 121,600.00 | 30,504.58 | 91,095.42 | 4,799,308.27 |
| 30 | 121,600.00 | 29,904.64 | 91,695.36 | 4,696,705.53 |
| 31 | 121,600.00 | 29,300.75 | 92,299.25 | 4,593,696.66 |
| 32 | 121,600.00 | 28,692.88 | 92,907.12 | 4,490,280.04 |
| 33 | 121,600.00 | 28,081.01 | 93,518.99 | 4,386,454.07 |
| 34 | 121,600.00 | 27,465.11 | 94,134.89 | 4,282,217.12 |



| | | | | |
|---|---|---|---|---|
| 35 | 121,600.00 | 26,845.16 | 94,754.84 | 4,177,567.56 |
| 36 | 121,600.00 | 26,221.12 | 95,378.88 | 4,072,503.76 |
| 37 | 121,600.00 | 25,592.97 | 96,007.03 | 3,967,024.09 |
| 38 | 121,600.00 | 24,960.68 | 96,639.32 | 3,861,126.89 |
| 39 | 121,600.00 | 24,324.23 | 97,275.77 | 3,754,810.52 |
| 40 | 121,600.00 | 23,683.59 | 97,916.41 | 3,648,073.31 |
| 41 | 121,600.00 | 23,038.73 | 98,561.27 | 3,540,913.60 |
| 42 | 121,600.00 | 22,389.62 | 99,210.38 | 3,433,329.72 |
| 43 | 121,600.00 | 21,736.24 | 99,863.76 | 3,325,319.98 |
| 44 | 121,600.00 | 21,078.55 | 100,521.45 | 3,216,882.70 |
| 45 | 121,600.00 | 20,416.53 | 101,183.47 | 3,108,016.19 |
| 46 | 121,600.00 | 19,750.16 | 101,849.84 | 2,998,718.75 |
| 47 | 121,600.00 | 19,079.39 | 102,520.61 | 2,888,988.68 |
| 48 | 121,600.00 | 18,404.21 | 103,195.79 | 2,778,824.26 |
| 49 | 121,600.00 | 17,724.58 | 103,875.42 | 2,668,223.77 |
| 50 | 121,600.00 | 17,040.47 | 104,559.53 | 2,557,185.49 |
| 51 | 121,600.00 | 16,351.86 | 105,248.14 | 2,445,707.68 |
| 52 | 121,600.00 | 15,658.71 | 105,941.29 | 2,333,788.61 |
| 53 | 121,600.00 | 14,961.00 | 106,639.00 | 2,221,426.52 |
| 54 | 121,600.00 | 14,258.69 | 107,341.31 | 2,108,619.67 |
| 55 | 121,600.00 | 13,551.76 | 108,048.24 | 1,995,366.29 |
| 56 | 121,600.00 | 12,840.17 | 108,759.83 | 1,881,664.61 |
| 57 | 121,600.00 | 12,123.90 | 109,476.10 | 1,767,512.87 |
| 58 | 121,600.00 | 11,402.91 | 110,197.09 | 1,652,909.28 |
| 59 | 121,600.00 | 10,677.17 | 110,922.83 | 1,537,852.05 |
| 60 | 121,600.00 | 9,946.65 | 111,653.35 | 1,422,339.38 |
| 61 | 121,600.00 | 9,211.32 | 112,388.68 | 1,306,369.47 |
| 62 | 121,600.00 | 8,471.15 | 113,128.85 | 1,189,940.52 |
| 63 | 121,600.00 | 7,726.10 | 113,873.90 | 1,073,050.70 |
| 64 | 121,600.00 | 6,976.14 | 114,623.86 | 955,698.19 |
| 65 | 121,600.00 | 6,221.25 | 115,378.75 | 837,881.16 |
| 66 | 121,600.00 | 5,461.38 | 116,138.62 | 719,597.77 |
| 67 | 121,600.00 | 4,696.51 | 116,903.49 | 600,846.18 |
| 68 | 121,600.00 | 3,926.61 | 117,673.39 | 481,624.53 |
| 69 | 121,600.00 | 3,151.63 | 118,448.37 | 361,930.96 |
| 70 | 121,600.00 | 2,371.55 | 119,228.45 | 241,763.60 |
| 71 | 121,600.00 | 1,586.33 | 120,013.67 | 121,120.58 |
| 72 | 121,600.00 | 743.57 | 120,856.43 | 0.00 |

```
          ---------------- - ------ -------------- ---------------
              8,755,200.00       1,755,200.00   7,000,000.00
          ================ = ====== ============== ===============
```

```
LESSOR:                        LESSEE:
LEASING INNOVATIONS,           TULARE LOCAL HEALTH CARE DISTRICT D/B/A
INCORPORATED                   TULARE REGIONAL MEDICAL CENTER

BY: _____    BY: _____

TITLE: _____    TITLE: _____

DATE: _____    DATE: _____
```

**Exhibit B**

**LEASE NO.: HGF070117**

**LESSEE:**      **TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:**      **LEASING INNOVATIONS, INCORPORATED**

1. Cerner Corporation
   2800 Rockcreek Parkway
   North Kansas City, MO 63117

2. Office Depot, Inc.
   6800 North Military Trail
   Boca Raton, FL 33496

3. Signal Communications Systems
   4325 W Shaw Ave #101
   Fresno, CA 93722

4. CDW Government LLC
   230 North Milwaukee Avenue
   Vernon Hills, IL 60061

5: I2I Systems, Inc
   3663 N. Laughlin Rd., Suite 200
   Santa Rosa, CA 95403

6: Telcor, Inc.
   1330 Fall Creek Rd.
   Lincoln, NE 68510

7. Nihon Kohden America, Inc.
   15353 Barranca Pkwy
   Irvine, CA 92618

8. Drager Medical Systems, Inc.
   211 E. 7th Street, Suite 620
   Austin, TX 78701

9. Medsphere Systems Corporation
   1903 Wright Place, Suite 120
   Carlsbad, CA 92008

10. Baker & Hostetler, LLP
    Key Tower, 127 Public Square, Suite 2000
    Cleveland, OH 44114

11. Lois Tickle Consulting Services, Inc.
    332 Glade Lane
    Charlottesville, VA 22901

12. Navigant Consulting, Inc.
    150 North Riverside Plaza, Suite 2100
    Chicago, IL 60606

13. BKD, LLP
    910 E. St. Louis Street, Suite 400
    P.O. Box 1900
    Springfield, MO 65801-1900

**Exhibit B**

**LEASE NO.:  HGF070117**

**LESSEE:      TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER**

**LESSOR:      LEASING INNOVATIONS, INCORPORATED**


14. HEI Consulting, LLC
    13635 E 50th St.
    Kansas City, MO 64133

15. Gonzalez Architects, LLC
    33 Bull Street Suite 412
    Savannah, GA 31401

16. Architectural Wood Design, Inc.
    5672 Dayton Ave
    Fresno, CA 93727

17. CDW Direct, LLC
    230 North Milwaukee Avenue
    Vernon Hills, IL 60061

18. Rutherford Co., Inc.
    2107 Crystal St.
    Los Angeles, CA 90039

19. Fujifilm Medical Systems, USA, Inc.
    419 West Avenue
    Stamford, CT 06902

20. Signal Solutions, Inc.
    4702 East Second St. Suite 1
    Benicia, CA 94510-1030

21. Morris, Levin, & Son
    1816 S K St.
    Tulare, CA 93274

**LESSOR:**                              **LESSEE:**

**LEASING INNOVATIONS,**                 **TULARE LOCAL HEALTH CARE DISTRICT**
**INCORPORATED**                         **D/B/A TULARE REGIONAL MEDICAL CENTER**


**By:**_____     **By:** _____

**Title:__  President_____**       **Title: _____CEO_____**

**Date:**_____    **Date:** _____


Exhibit E, Page 85

# State and Municipal Lease Purchase Agreement No. HGF070117

## Authorization Agreement for Preauthorized Payments (ACH)

Contact Name: Tulare Local Health Care District d/b/a Tulare Regional Medical Center

I (we) _____ hereby authorize
Leasing Innovations, Incorporated or its assigns initiate and make debit entries to my
(our) checking account at the bank named below. **Attached is a voided check** from
this checking account to ensure proper processing of this agreement.

As part of this Lease approval and funding, it was required that Lease payments would
be made by ACH.  I (we) have agreed to make payments by ACH during the term of the
Lease.  I (we) can elect to cancel this automatic payment method by providing written
notification to cancel along with an additional security deposit equal to ten percent of the
original equipment cost.  My/(our) failure to provide the additional security deposit at
anytime that I/we cancel this payment method through written notice or payments are
unable to be deducted shall be a default under the Lease and Leasing Innovations,
Incorporated or its assigns shall be entitled to all its rights and remedies there under.

Monthly Payment: $__121,601.00___ **(includes $1.00 processing fee)**

Term: _____71_____ Months Non-cancelable State and Municipal Lease-
Purchase Agreement

Bank/Depository Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Customer Signature: _____ Date: _____

**(Attach voided Check here)**

BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, Tulare Local Health Care District d/b/a Tulare Regional Medical Center (the "Seller") for good and valuable consideration paid by Leasing Innovations, Incorporated (the "Buyer") the receipt and sufficiently of which is acknowledged herein, Seller hereby grants, bargains, sells, conveys, transfers, assigns, and delivers to Buyer, its successors and assigns, all of its right, title and interest in the following equipment listed under State and Municipal Lease-Purchase Agreement No. HGF070117 and located at: Tulare Regional Medical Center, 869 N. Cherry St., Tulare, CA 93274.

| QUANTITY/DESCRIPTION | SERIAL NUMBER | COST |
|---|---|---|

SEE SCHEDULE A

Seller warrants that it is the true and lawful owner of said Equipment and that same are free and clear of all liens, security interests, claims and encumbrances of any kind; and that it has the right and authority to sell the same. SELLER MAKES NO WARRANTIES ON THE EQUIPMENT EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, UNLESS OTHERWISE PROVIDED HEREIN.

       IN WITNESS WHEREOF, this Bill of Sale has been duly executed and delivered by Seller's duly authorized corporate officer.

SELLER:

TULARE LOCAL HEALTH CARE DISTRICT D/B/A TULARE REGIONAL MEDICAL CENTER

By: _____

Title: _____ CEO _____

Date: _____

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

Leasing Innovations, Incorporated
Attn: Heather G. Fritz
15 Court Sq., Suite 520   Boston, MA 02108


Title Order No.: NCS-864456-KCTY
APN: 171-300-015-000 AND 171-300-016-000                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS

This Deed of Trust With Assignment of Rents ("**Deed of Trust**") is made this 1st day of September, 2017, among TULARE LOCAL HEALTH CARE DISTRICT ("**Trustor**"), whose address is 869 N. Cherry Street, Tulare, CA 93274, First American Title Insurance Company ("**Trustee**"), and LEASING INNOVATIONS, INCORPORATED, on behalf of itself and as collateral agent on behalf of any Assignee under the Lease (defined below) (collectively, "**Beneficiary**"), whose address is 15 Court Sq., Suite 520, Boston, MA.

**Witnesseth:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, the following property located in the City of Tulare, County of Tulare, State of California (the "**Real Property**"):

> PARCEL 1 AND REMAINDER OF PARCEL MAP NO. 4531, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED AUGUST 23, 2002 IN BOOK 46, PAGE 36 OF PARCEL MAPS, TULARE COUNTY RECORDS.
>
> EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF OF ALL THE MINERALS, GAS, OILS, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND, TOGETHER WITH ALL RIGHTS INCIDENTAL TO THE DEVELOPMENT OF SAME, AS EXCEPTED IN THE DEED FROM SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, A NATIONAL BANKING ASSOCIATION, TO C. E. SWEARINGEN AND CLARA B. SWEARINGEN, HUSBAND AND WIFE, DATED SEPTEMBER 29, 1936 AND RECORDED NOVEMBER 30, 1936 IN BOOK 704, PAGE 316 OF OFFICIAL RECORDS.

TOGETHER WITH all buildings and other improvements and structures now or hereafter located on the Real Property (collectively, the "**Improvements**" and together with the Real Property shall sometimes be referred to as the "**Property**");

TOGETHER WITH all existing and future leases, subleases, subtenancies, licenses, agreements and concessions relating to the use, occupancy or enjoyment of all or any part of the Property, together with any and all guaranties and other agreements relating to or made in connection with any of the foregoing (each, individually, a "**Lease**", and, collectively, the "**Leases**");

TOGETHER WITH all rents, issues, income, revenues, royalties, profits, proceeds and earnings now or hereafter payable with respect to or otherwise derived from the ownership, use, management, operation, leasing or occupancy of the Property, including, without limitation, cash or security deposited under any of the Leases to secure the performance by the lessees of their obligations thereunder (collectively, the "**Rents**"); and

TOGETHER WITH all Trustor's rights in and to the personal property and equipment located at the Real Property (the "**Personal Property**" collectively with the Property, Leases and Rents, the "**Collateral**").

**For the Purpose of Securing:**

    1.       Performance of each agreement of Trustor herein contained.

2.      The prompt payment, when due, of all sums due to Beneficiary as "Lessor" and any "Assignee" under that certain State and Municipal Lease-Purchase Agreement, dated September 1, 2017, (the "**Lease**"), and any assignment, extension or renewal thereof, in the principal sum of Seven Million Dollars and 00/100 ($7,000,000.00) Dollars executed by Trustor, as "Lessee", and Beneficiary, as "Lessor".

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

1.      To keep said Collateral in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.      To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.      To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4.      To pay: at least ten days before delinquency, all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said Collateral or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Deed of Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said Property for such purposes; appear in and defend any action or proceeding purporting to affect the Collateral hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5.      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6.      That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7.      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8.      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Lease for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.      That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust to Trustee and satisfaction of all obligations set forth in the Lease and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

10.     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said Property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said Property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11.     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder or under the Lease or any other documents executed in connection with the Lease (the "**Lease Documents**"), Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Lease and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said Property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of his Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto. Notwithstanding the foregoing or any other terms set forth herein, upon the occurrence of a default hereunder, Beneficiary shall have all rights and remedies available to it in law or equity.

12.     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee

predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

13.      That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the Collateral secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

14.      Beneficiary requests that a copy of any "Notice of Default" and of any "Notice of Sale" under any senior deed of trust or mortgage that affects the Property or under any other indebtedness that affects the Collateral, or any portion thereof be mailed to Beneficiary at the address set forth above.

**[Remainder of Page Intentionally Left Blank.]**

15.    That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

**See attached Rider for additional terms and provisions incorporated herein by this reference.**

TULARE LOCAL HEALTH CARE DISTRICT
D/B/A TULARE REGIONAL MEDICAL CENTER

By:    _____

Name:    _____Benny Benzeevi_____

Title:    _____CEO_____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _____                    )

                                                  )    ss:

COUNTY OF _____                       )

On _____, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
                                          Notary Public

**RIDER TO DEED OF TRUST WITH ASSIGNMENT OF RENTS**

THIS RIDER TO DEED OF TRUST WITH ASSIGNMENT OF RENTS (this "**Agreement**") is made as of September 1, 2017, by TULARE LOCAL HEALTH CARE DISTRICT ("**Trustor**"), in favor of LEASING INNOVATIONS, INCORPORATED, on behalf of itself and as collateral agent on behalf of any Assignee under the Lease ("**Beneficiary**"), and amends and supplements that certain Deed of Trust With Assignment of Rents of even date herewith (this "**Deed of Trust**"). The following additional provisions are incorporated in the above-referenced Deed of Trust to which this Rider is attached, and shall have the same force and effect as though set forth therein:

1.      Acceleration of Indebtedness Under Lease. In the event of any Transfer (defined below) of the Property or Collateral or any part thereof or any interest therein in any manner or way, whether voluntary or involuntary, without the prior written consent of the Beneficiary, (which consent may be withheld for any reason or for no reason or given upon such terms and conditions as Beneficiary deems necessary or appropriate, all within Beneficiary's absolute discretion) or upon the occurrence of a Non-Appropriation Event (as defined in the Lease), the entire balance of the principal and interest of the Lease owed to Beneficiary and secured hereby shall, at the option of the Beneficiary hereof, be declared immediately all due and payable. Consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions. Beneficiary may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Deed of Trust, and any such transferee shall assume all obligations hereunder and agree to be bound by all provisions contained herein. As used herein, "**Transfer**" includes the sale, transfer, conveyance, assignment, alienation or other disposal of or divestment of title to, or, mortgage, conveyance of security interest to, or other encumbrance of the Property or Collateral, or any portion thereof or interest therein, whether voluntary, involuntary, by operation of law or otherwise, the execution of an agreement to sell or an option to buy the Property or Collateral, or any portion thereof or interest therein. This covenant shall run with the Property and remain in full force and effect until the indebtedness secured hereby is liquidated, and Beneficiary may, without notice to Trustor, deal with such transferees with reference to the indebtedness secured hereby in the same manner as with Trustor, without in any way altering or discharging Trustor's liability hereunder or the indebtedness secured hereby or the liability of any guarantor of Trustor with respect thereto.

2.      Insurance. In addition to and without limiting any requirements set forth in this Deed of Trust, Trustor shall obtain and keep in force the following minimum insurance coverages: (i) comprehensive general liability and property damage coverage with a broad form coverage endorsement and a combined single limit of at least $2,000,000; and (ii) protection against fire, "extended coverage" and other "All Risk" perils in the full replacement cost of the improvements. All property insurance policies shall include the standard mortgagee clause in the state naming Beneficiary as the mortgagee with all losses payable to Beneficiary. All liability policies shall name Beneficiary as an additional insured. All insurance policies shall provide that the policy may not be canceled or modified in any material way without 30 days prior written notice to Beneficiary.

3.      Property. The Property encumbered by the lien of this Deed of Trust shall include all improvements now or hereafter erected on the Property, and easements, rights, appurtenances, rents, water rights, and all fixtures now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by this Deed of Trust; and all of the foregoing, together with such property are referred to herein as the "Property."

4.      Attorneys' Fees. If any claim is brought for the foreclosure of this Deed of Trust or for the enforcement of any provision of this Deed of Trust, Trustor agrees to pay all costs and expenses of Beneficiary and Trustee, including reasonable attorneys' fees, and these sums shall be secured by this Deed of Trust.

5.      Remedies. The powers and remedies conferred in this Deed of Trust are concurrent and cumulative to all other rights and remedies provided in this Deed of Trust or given by law. These powers and remedies may be exercised singly, successively, or together, and as often as deemed necessary.

**[Remainder of Page Intentionally Left Blank]**

**ADDENDUM TO**
**STATE AND MUNICIPAL LEASE-PURCHASE AGREEMENT NO. HGF070117**

This Addendum to Statement Municipal Lease-Purchase Agreement No. HGF070117 ("**Addendum**") is attached to and made part of that certain State and Municipal Lease-Purchase Agreement (the "**Agreement**") between Tulare Local Health Care District d/b/a/ Tulare Regional Medical Center ("**Lessee**") and Leasing Innovations, Incorporated (as "**Lessor**"), which Lessor's interest may be assigned (in whole or in part). All terms not defined in this Addendum have the same meanings as set forth in the Agreement. The Agreement and this Addendum are sometimes collectively referred to in this Addendum as the "**Lease**." To the extent of any inconsistency between the terms of the Agreement and the terms of this Addendum (including terms in this Addendum which "continue" provisions of the Agreement), the terms of this Addendum shall control.

The parties hereto agree that the following terms are added to and constitute an integral part of the Lease:

1. **Real Property Collateral; Deed of Trust.** In addition to the Equipment, the principal and interest payments that are due by Lessee to the Lessor in accordance with the Lease shall be secured by that certain Deed of Trust with Assignment of Rents (the "**Deed of Trust**") of even date herewith made by Lessee, as "Trustor", for the benefit of Lessor, as "Beneficiary" with respect to that certain real property and improvements thereon located at 1425 Prosperity Avenue, Tulare, CA, as more particularly described in the Deed of Trust (the "**Property**").

2. **Acceleration of Indebtedness; Event of Default.** In the event of any Transfer (defined below) of the Property or Collateral or any part thereof or any interest therein in any manner or way, whether voluntary or involuntary, without the prior written consent of the Lessor, (which consent may be withheld for any reason or for no reason or given upon such terms and conditions as Lessor deems necessary or appropriate, all within Lessor's absolute discretion) or upon the occurrence of a Non-Appropriation Event (defined below), the entire balance of the principal and interest owed by Lessee to Lessor pursuant to the Lease shall, at the option of the Lessor, be declared immediately all due and payable. Consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions. Lessor may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to the terms of the Lease, and any such transferee shall assume all obligations hereunder and agree to be bound by all provisions contained herein. As used herein, "**Transfer**" includes the sale, transfer, conveyance, assignment, alienation or other disposal of or divestment of title to, or, mortgage, conveyance of security interest to, or other encumbrance of the Property or Collateral, or any portion thereof or interest therein, whether voluntary, involuntary, by operation of law or otherwise, the execution of an agreement to sell or an option to buy the Property or Collateral, or any portion thereof or interest therein. As used herein, a "**Non-Appropriation Event**" refers to the exercise by Lessee of its rights to terminate the Lease pursuant to Section 7 hereof. For the avoidance of doubt, a Transfer or Non-Appropriation Event shall be considered an Event of Default under the Lease and the Deed of Trust and Lessor shall be permitted to exercise all remedies available to it thereunder.

3. **Appropriation of Funds; Representations of Lessee.** Lessee hereby certifies to Lessor that (a) all payments due from the Lessee to Lessor pursuant to the Lease, for the current budgetary period of the Lessee ending ___06/30/2018_____, are within the Lessee's budget for the above referenced budgetary period and are within an available, unexhausted and unencumbered appropriation for the Lessee, (b) with respect to the Lease, Lessee represents that the use of the Equipment is (i) for a governmental use; and (ii) such use is for a valid public purpose and essential to the proper, efficient, economic operation of the Lessee, and (c) Lessee has obtained all necessary consents and approvals to enter into the Lease, the Deed of Trust and all other instruments in connection with this Lease transaction. The Lessee further represents that the Equipment will not be used in or for any private commercial activity.

# EXHIBIT F

**From:** Levinson, Marc A.
**Sent:** Tuesday, September 26, 2017 8:20 AM
**To:** Mandy Jeffcoach (mandy.jeffcoach@mccormickbarstow.com) <mandy.jeffcoach@mccormickbarstow.com>; 'Tim Thompson' <Tim.Thompson@mccormickbarstow.com>
**Cc:** Grossman, Marshall <mgrossman@orrick.com>
**Subject:** Tulare Local Healthcare District -- Financial reports for January through June 2015

Mandy and Tim,

Attached is the first of several emails I'll be sending you today, each including District financial information. In doing so, HCCA reserves the right to disagree with the breadth, timing and true purpose of your September 11, 2017 document requests. Given the flurry of litigation since our September 5, 2017 meeting, HCCA has not only been operating the Hospital but it has had to engage in shortened notice litigation, most of which was precipitated by your firm and its claimed clients.

This first installment includes financials for the first six months of 2015. Almost all the pdf's include a (i) balance sheet; (ii) statement of revenues; (iii) long-term debt service coverage ratio computation; and (iv) continuing disclosure report.

Each of the documents in each of the pdf's was prepared in the ordinary course of the District's and HCCA's businesses. All the reports were presented formally in an open meeting of the District Board's Finance Committee on the month of their release, and formally to the Board of Directors at its regular monthly meetings. The regular Board meeting is usually held the day after the Finance Committee meeting. The financials were included in each individual Board member's three ring binder. The binders are made available to Board members two days before the Board meeting. In addition, copies are distributed during the Finance Committee meeting. Finally, these are generally (but not always) posted on the website as well. Thus, what I'm sending to you already has been presented to Board members at or near the time the documents were prepared, so the claim of certain Board members that they were unaware of the District's financials is specious.

Marc

**Marc Levinson**
Senior Counsel

Orrick

Sacramento 
T (916) 329-4910
malevinson@orrick.com

# orrick

Distressed Download Blog

**Tulare Local Health Care District**
**Balance sheet for the period ended January 31, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| **Current assets:** | | | | |
| Cash and cash equivalents | $ 9,704,295 | $ 7,001,441 | $ 2,702,854 | 38.6% |
| Ltd use assets avail for curr debt srvc | 4,316,310 | 7,389,395 | (3,073,085) | -41.6% |
| Patient accounts receivable: | | | | |
| Gross pt accounts receivable | 43,833,538 | 39,482,452 | 4,351,086 | 11.0% |
| Contractual allowances | (30,518,338) | (27,545,776) | (2,972,562) | 10.8% |
| Provision for bad debts | (2,865,181) | (6,014,223) | 3,149,042 | -52.4% |
| Net pt accounts receivable | 10,450,019 | 5,922,453 | 4,527,566 | 76.4% |
| | | | | |
| Other receiv. & phys. advances | | | | |
| Tax revenue receivable | 853,144 | 164,527 | 688,617 | 418.5% |
| Misc receivables | 14,362,933 | 4,411,953 | 9,950,980 | 225.5% |
| Physician advances | 14,666 | 302,708 | (288,042) | -95.2% |
| Total other receivables | 15,230,743 | 4,879,188 | 10,351,555 | 212.2% |
| | | | | |
| Inventories | 910,509 | 1,354,445 | (443,936) | -32.8% |
| Prepaid expenses & deposits | 772,327 | 470,666 | 301,661 | 64.1% |
| | | | | |
| Total current assets | 41,384,203 | 27,017,588 | 14,366,615 | 53.2% |
| | | | | |
| **Assets limited as to use:** | | | | |
| GO bond construction fund | 24 | 3,785,636 | (3,785,612) | -100.0% |
| Restricted trust funds, other | 5,287,804 | 2,612,530 | 2,675,274 | 102.4% |
| Total limited use assets | 5,287,828 | 6,398,166 | (1,110,338) | -17.4% |
| | | | | |
| **Capital assets:** | | | | |
| Land & land improvements | 3,301,871 | 3,202,671 | 99,200 | 3.1% |
| Bldgs & bldg improvements | 43,369,991 | 43,483,537 | (113,546) | -0.3% |
| Leasehold Improvements | 28,797 | 50,074 | (21,277) | -42.5% |
| Major movable equipment | 32,084,202 | 35,295,168 | (3,210,966) | -9.1% |
| Construction in progress | 131,105,467 | 118,400,589 | 12,704,878 | 10.7% |
| Gross capital assets | 209,890,328 | 200,432,039 | 9,458,289 | 4.7% |
| Accumulated depreciation | (56,326,417) | (57,562,507) | 1,236,090 | -2.1% |
| Net capital assets | 153,563,911 | 142,869,532 | 10,694,379 | 7.5% |
| | | | | |
| Bond issuance costs & other assets | 1,037,619 | 1,245,245 | (207,626) | -16.7% |
| Intercompany receivable | | | - | |
| | | | | |
| **TOTAL ASSETS** | $ 201,273,561 | $ 177,530,531 | $ 23,743,030 | 13.4% |

**Tulare Local Health Care District**
**Balance sheet for the period ended January 31, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| **Current liabilities:** | | | | |
| Current maturities of debt borrowings | $ 1,271,966 | $ 1,032,825 | $ 239,141 | 23.2% |
| Accounts payable | 15,622,736 | 4,121,199 | $ 11,501,537 | 279.1% |
| Other accrued liabilities | 3,531,451 | 289,898 | $ 3,241,553 | 1118.2% |
| Accrued payroll & related liabilities | (561,780) | 2,359,329 | $ (2,921,109) | -123.8% |
| Post-retiree health benefits | - | 68,916 | $ (68,916) | -100.0% |
| Est current 3rd party payor settlements | 1,937,716 | 1,883,170 | $ 54,546 | 2.9% |
| Self insurance program accrual | 1,542,025 | 910,596 | $ 631,429 | 69.3% |
| **Total current liabilities** | 23,344,114 | 10,665,933 | 12,678,181 | 118.9% |
| | | | | |
| **Long-term liabilities:** | | | | |
| Deferred revenue | 8,725,890 | 6,213,603 | 2,512,287 | 40.4% |
| Debt borrowings, net of curr maturities | 101,480,700 | 105,987,518 | (4,506,818) | -4.3% |
| **TOTAL LIABILITIES** | **133,550,704** | **122,867,054** | **10,683,650** | **8.7%** |
| | | | | |
| **Net assets:** | | | | |
| Net investment in capital assets | 39,915,723 | 47,273,624 | (7,357,901) | -15.6% |
| Restricted by bond indenture-debt svc | 16,250,605 | 1,665,437 | 14,585,168 | 875.8% |
| Unrestricted | 3,806,472 | 6,305,795 | (2,499,323) | -39.6% |
| Net income, corporate | 8,307,238 | (581,379) | 8,888,617 | 1528.9% |
| **Total net assets** | 68,280,038 | 54,663,477 | 13,616,561 | 24.9% |
| | | | | |
| Intercompany payable | (557,179) | - | (557,179) | 100.0% |
| | | | | |
| **TOTAL LIABILITIES & NET ASSETS** | $ 201,273,563 | $ 177,530,531 | $ 23,743,032 | 13.4% |

Tulare Local Health Care District
Days cash on hand for the period ended January 31, 2015                    UNAUDITED

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash & cash equivalents (1) | $ 10,502,792 | $ 13,595,427 | $ 14,982,239 | $ 13,333,977 | $ 12,333,331 | $ 10,513,677 | $ 9,704,295 | | | | | |
| Total operating expenses for 3 months | 17,609,078 | 17,827,992 | 17,464,538 | 17,606,373 | 17,298,272 | 17,884,548 | 18,046,498 | | | | | |
| Add interest expenses for 3 months | 199,074 | 198,799 | 198,832 | 136,902 | 72,593 | 199,703 | 260,722 | | | | | |
| Less depreciation/amort. For 3 months | (1,076,274) | (995,630) | (1,070,584) | (1,072,210) | (1,074,761) | (1,074,263) | (1,061,818) | | | | | |
| Adj. operating expenses YTD | $ 16,731,878 | $ 17,031,161 | $ 16,592,786 | $ 16,671,065 | $ 16,296,104 | $ 17,009,988 | $ 17,245,402 | $ - | $ - | $ - | $ - | - |
| Days in period | 92 | 92 | 92 | 92 | 91 | 92 | 92 | 90 | 90 | 89 | 92 | 91 |
| Daily operating expense | $ 181,868 | $ 185,121 | $ 180,356 | $ 181,207 | $ 179,078 | $ 184,891 | $ 187,450 | $ - | $ - | $ - | $ - | - |
| Days cash on hand | 57.75 | 73.44 | 83.07 | 73.58 | 68.87 | 56.86 | 51.77 | | | | | |

[1] excludes all restricted funds, e.g. bond reserve fund

Prepared by D. Bryant

M:\FYE 6.30.2015\Liabilities FY15\09-Debt borrowings net of curr mat\Revenue bond disclosure\Cash on hand FY15

## Tulare Local Health Care District
### Refunding Revenue Bonds, Series 2007
### Long-Term Debt Service Coverage Ratio (DSCR) Computation
### For the seven months ended January 31, 2015

Income Available For Debt Service

| | | |
|---|---|---|
| Increase in net assets | $ | 8,307,237 |
| Add: | | |
| Interest Expense | | 463,982 |
| Depreciation | | 2,490,589 |
| Less: | | |
| District Taxes Related to General Obligation Bonds Debt Service | | (3,547,447) |
| Total Income Available For Debt Service | | 7,714,361 |
| Maximum Annual Debt Service | $ | 2,744,112 |
| Debt Service Coverage Ratio | | 5.5766 |

Prepared by D. Bryant

Filed 10/17/17          Case 17-13797          Doc 85

**Tulare Local Health Care District**
Statement of revenue and expenditures
For the month ended January 31, 2015
unaudited

| Current period | | | | | Year to date | | | |
|---|---|---|---|---|---|---|---|---|
| This year | Last year | YOY | %Δ | | This year | Last year | YOY | %Δ |
| | | | | **Patient Revenue:** | | | | |
| $ 4,312,882 | $ 4,518,276 | $ (205,394) | -4.5% | Daily hospital services | $ 27,315,520 | $ 28,918,786 | $ (1,603,266) | -5.5% |
| 6,688,395 | 6,948,114 | (259,719) | -3.7% | Inpatient ancillary services | 38,606,252 | 42,027,643 | (3,421,391) | -8.1% |
| 11,493,741 | 11,159,476 | 334,265 | 3.0% | Outpatient ancillary services | 77,447,414 | 76,121,240 | 1,326,174 | 1.7% |
| 22,495,018 | 22,625,866 | (130,848) | -0.6% | **Gross patient revenue** | 143,369,186 | 147,067,669 | (3,698,483) | -2.5% |
| | | | | Deductions from revenue: | | | | |
| (16,583,628) | (15,555,478) | (1,028,150) | 6.6% | Contractual allowances | (102,459,860) | (103,392,240) | 932,380 | -0.9% |
| 1,578,648 | - | 1,578,648 | 100.0% | Supplemental funds | 5,688,117 | - | 5,688,117 | 100.0% |
| (66,797) | (148,856) | 82,059 | -55.1% | Charity allowances | (300,345) | (703,518) | 403,173 | -57.3% |
| (442,346) | (1,840,162) | 1,397,816 | -76.0% | Provision for uncollectibles | (2,439,868) | (8,276,510) | 5,836,642 | -70.5% |
| (15,514,123) | (17,544,496) | 2,030,373 | -11.6% | **Total deductions from revenue** | (99,511,956) | (112,372,268) | 12,860,312 | -11.4% |
| 6,980,895 | 5,081,370 | 1,899,525 | 37.4% | **Net patient revenue** | 43,857,230 | 34,695,401 | 9,161,829 | 26.4% |
| 67,629 | 284,212 | (216,583) | -76.2% | Other operating revenue | 1,720,416 | 2,180,876 | (460,460) | -21.1% |
| 7,048,524 | 5,365,582 | 1,682,942 | 31.4% | **Total operating revenue** | 45,577,646 | 36,876,277 | 8,701,369 | 23.6% |
| | | | | **Operating expenses:** | | | | |
| 24,724 | 1,954,786 | (1,930,062) | -98.7% | Salaries & wages | 7,727,084 | 13,976,623 | (6,249,539) | -44.7% |
| 7,000 | 737,482 | (730,482) | -99.1% | Employee benefits | 2,968,728 | 5,283,539 | (2,314,811) | -43.8% |
| 514,277 | 373,543 | 140,734 | 37.7% | Professional fees | 2,778,252 | 1,924,101 | 854,151 | 44.4% |
| 376,638 | 400,063 | (23,425) | -5.9% | Professional fees, physicians | 2,598,710 | 2,728,320 | (129,610) | -4.8% |
| 926,168 | 708,402 | 217,766 | 30.7% | Supplies | 6,056,494 | 5,140,752 | 915,742 | 17.8% |
| 3,651,078 | 1,074,156 | 2,576,922 | 239.9% | Purchased services | 14,042,116 | 7,404,097 | 6,638,019 | 89.7% |
| 55,805 | 24,575 | 31,230 | 127.1% | Repairs & maintenance | 180,235 | 188,540 | (8,305) | -4.4% |
| 105,696 | 114,472 | (8,776) | -7.7% | Utilities & phone | 1,178,493 | 981,249 | 197,244 | 20.1% |
| 58,921 | 64,278 | (5,357) | -8.3% | Building & equipment rental | 458,308 | 451,704 | 6,604 | 1.5% |
| 77,694 | 75,967 | 1,727 | 2.3% | Insurance | 555,767 | 454,276 | 101,491 | 22.3% |
| 345,742 | 366,619 | (20,877) | -5.7% | Depreciation & amortization | 2,490,589 | 2,585,738 | (95,149) | -3.7% |
| 108,956 | 53,109 | 55,847 | 105.2% | Other operating expenses | 567,009 | 631,052 | (64,043) | -10.1% |
| 6,252,699 | 5,947,452 | 305,247 | 5.1% | **Total operating expenses** | 41,601,785 | 41,749,991 | (148,206) | -0.4% |
| 795,825 | (581,870) | 1,377,695 | 236.8% | **Operating income** | 3,975,861 | (4,873,714) | 8,849,575 | 181.6% |
| 182,000 | 134,000 | 48,000 | 35.8% | Tax revenues, general | 974,000 | 938,000 | 36,000 | 3.8% |
| 14,008 | 16,632 | (2,624) | -15.8% | Investment income | (53,059) | 72,308 | (125,367) | -173.4% |
| (65,448) | (66,719) | 1,271 | -1.9% | Interest expense | (463,982) | (475,920) | 11,938 | -2.5% |
| 20,400 | 16,482 | 3,918 | 23.8% | Grants & contributions | 326,970 | 202,774 | 124,196 | 61.2% |
| - | - | - | 0.0% | Other income | - | - | - | 0.0% |
| 150,960 | 100,395 | 50,565 | 50.4% | **Total non-op revenue (expense)** | 783,929 | 737,162 | 46,767 | 6.3% |
| 946,785 | (481,475) | 1,428,260 | 296.6% | **Excess of revenues over exps.** | 4,759,790 | (4,136,552) | 8,896,342 | 215.1% |
| 507,363 | 507,175 | 188 | 0.0% | District taxes for GO bond debt svc | 3,547,447 | 3,555,172 | (7,725) | -0.2% |
| - | - | - | | Intergovernmental transfers | - | - | - | |
| $ 1,454,148 | $ 25,700 | $ 1,428,448 | 5558.2% | **Increase in net assets** | $ 8,307,237 | $ (581,380) | $ 8,888,617 | 1528.9% |

## Tulare Local Health Care District
Refunding revenue bonds, series 2007 - continuing disclosure report
For the seven months ended January 31, 2015, unaudited

| | 2009-2010 | 2010-2011 | 2011-2012 | 2012-2013 | 2013-2014 | 2014-2015 |
|---|---|---|---|---|---|---|
| **HISTORICAL UTILIZATION STATISTICS** | | | | | | |
| Licensed beds | 112 | 112 | 112 | 112 | 112 | 112 |
| Available beds | 103 | 103 | 103 | 103 | 103 | 103 |
| Patient days | 22,098 | 22,268 | 21,040 | 18,310 | 14,422 | 8,607 |
| Discharges | 5,740 | 5,893 | 5,368 | 4,732 | 3,807 | 2,248 |
| Average daily census | 61 | 61 | 57 | 50 | 40 | 40 |
| Occupancy percentage (1) | 59% | 59% | 56% | 49% | 38% | 39% |
| Average length of stay in days | 3.85 | 3.78 | 3.92 | 3.87 | 3.79 | 3.83 |
| Emergency room visits | 33,024 | 31,612 | 31,356 | 30,753 | 31,188 | 20,229 |
| Outpatient visits (2) | 95,674 | 85,143 | 101,094 | 82,961 | 71,653 | 40,594 |
| Outpatient surgeries | 1,679 | 1,839 | 1,785 | 1,563 | 1,675 | 1,143 |
| **SOURCES OF PATIENT SERVICE REVENUE** | | | | | | |
| Medicare | 35% | 35% | 34% | 34% | 30% | 31% |
| Medi-Cal | 33% | 39% | 34% | 34% | 42% | 47% |
| Commercial Insurance | 24% | 19% | 20% | 20% | 18% | 18% |
| Self Pay and All Other | 8% | 7% | 12% | 12% | 10% | 4% |
| **OTHER STATISTICS** | | | | | | |
| Number of active medical staff | 87 | 89 | 113 | 90 | 92 | 96 |
| Number of employees | 591 | 535 | 573 | 587 | 550 | 530 |

(1) based on available beds
(2) Includes clinics, home health and referred visits. Excludes emergency and outpatient surgery visits

Exhibit F, Page 103

Prepared by D. Bryant                M:\FYE 6.30.2015\Liabilities FY15\09-Debt borrowings net of curr mat\Revenue bond disclosure\Revenue bond continuing disclosure FY15

**Tulare Local Health Care District**
**Balance sheet for the period ended February 28, 2015**
**unaudited**

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| **Current assets:** | | | | |
| Cash and cash equivalents | $ 10,923,194 | $ 7,868,754 | $ 3,054,440 | 38.8% |
| Ltd use assets avail for curr debt srvc | 4,316,310 | 7,389,395 | (3,073,085) | -41.6% |
| Patient accounts receivable: | | | | |
| Gross pt accounts receivable | 42,138,281 | 36,933,643 | 5,204,638 | 14.1% |
| Contractual allowances | (30,182,036) | (26,930,319) | (3,251,717) | 12.1% |
| Provision for bad debts | (2,265,052) | (5,293,709) | 3,028,657 | -57.2% |
| Net pt accounts receivable | 9,691,193 | 4,709,615 | 4,981,578 | 105.8% |
| | | | | |
| Other receiv. & phys. advances | | | | |
| Tax revenue receivable | 670,811 | 324,793 | 346,018 | 106.5% |
| Misc receivables | 13,348,127 | 5,235,893 | 8,112,234 | 154.9% |
| Physician advances | 13,083 | 341,996 | (328,913) | -96.2% |
| Total other receivables | 14,032,021 | 5,902,682 | 8,129,339 | 137.7% |
| | | | | |
| Inventories | 1,197,503 | 1,361,335 | (163,832) | -12.0% |
| Prepaid expenses & deposits | 706,526 | 437,969 | 268,557 | 61.3% |
| | | | | |
| Total current assets | 40,866,747 | 27,669,750 | 13,196,997 | 47.7% |
| | | | | |
| **Assets limited as to use:** | | | | |
| GO bond construction fund | 24 | 2,526,196 | (2,526,172) | -100.0% |
| Restricted trust funds, other | 4,893,033 | 1,391,559 | 3,501,474 | 251.6% |
| Total limited use assets | 4,893,057 | 3,917,755 | 975,302 | 24.9% |
| | | | | |
| **Capital assets:** | | | | |
| Land & land improvements | 3,301,871 | 3,202,641 | 99,230 | 3.1% |
| Bldgs & bldg improvements | 43,369,991 | 43,483,537 | (113,546) | -0.3% |
| Leasehold improvements | 28,797 | 50,074 | (21,277) | -42.5% |
| Major movable equipment | 32,082,757 | 35,308,834 | (3,226,077) | -9.1% |
| Construction in progress | 131,745,160 | 119,484,955 | 12,260,205 | 10.3% |
| Gross capital assets | 210,528,576 | 201,530,041 | 8,998,535 | 4.5% |
| Accumulated depreciation | (56,657,045) | (57,914,305) | 1,257,260 | -2.2% |
| Net capital assets | 153,871,531 | 143,615,736 | 10,255,795 | 7.1% |
| | | | | |
| Bond issuance costs & other assets | 1,020,317 | 1,227,943 | (207,626) | -16.9% |
| Intercompany receivable | | | - | |
| | | | | |
| **TOTAL ASSETS** | $ 200,651,652 | $ 176,431,184 | $ 24,220,468 | 13.7% |

Tulare Local Health Care District
Balance sheet for the period ended February 28, 2015
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| **Current liabilities:** | | | | |
| Current maturities of debt borrowings | $ 1,143,951 | $ 933,577 | $ 210,374 | 22.5% |
| Accounts payable | 14,434,502 | 4,609,266 | $ 9,825,236 | 213.2% |
| Other accrued liabilities | 3,316,356 | 289,637 | $ 3,026,719 | 1045.0% |
| Accrued payroll & related liabilities | (574,240) | 2,273,397 | $ (2,847,637) | -125.3% |
| Post-retiree health benefits | - | 68,333 | $ (68,333) | -100.0% |
| Est current 3rd party payor settlements | 1,900,184 | 1,878,347 | $ 21,837 | 1.2% |
| Self insurance program accrual | 1,382,368 | 1,049,110 | $ 333,258 | 31.8% |
| | | | | |
| Total current liabilities | 21,603,121 | 11,101,667 | 10,501,454 | 94.6% |
| | | | | |
| **Long-term liabilities:** | | | | |
| Deferred revenue | 8,234,677 | 4,134,712 | 4,099,965 | 99.2% |
| Debt borrowings, net of curr maturities | 102,050,488 | 106,559,011 | (4,508,523) | -4.2% |
| **TOTAL LIABILITIES** | **131,888,286** | **121,795,390** | **10,092,896** | **8.3%** |
| | | | | |
| **Net assets:** | | | | |
| Net investment in capital asseets | 37,583,790 | 43,557,515 | (5,973,725) | -13.7% |
| Restricted by bond indenture-debt svc | 15,855,834 | 1,791,523 | 14,064,311 | 785.0% |
| Unrestricted | 6,533,176 | 9,895,856 | (3,362,680) | -34.0% |
| Net income, corporate | 9,583,658 | (609,099) | 10,192,757 | 1673.4% |
| | | | | |
| Total net assets | 69,556,458 | 54,635,795 | 14,920,663 | 27.3% |
| | | | | |
| Intercompany payable | (793,090) | - | (793,090) | 100.0% |
| | | | | |
| **TOTAL LIABILITIES & NET ASSETS** | $ 200,651,654 | $ 176,431,185 | $ 24,220,469 | 13.7% |

Tulare Local Health Care District
Days cash on hand for the period ended February 28, 2015                UNAUDITED

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash & cash equivalents (1) | $ 10,502,792 | $ 13,595,427 | $ 14,982,239 | $ 13,333,977 | $ 12,333,331 | $ 10,513,677 | $ 9,704,295 | $ 10,923,194 | | | | |
| Total operating expenses for 3 months | 17,609,078 | 17,827,992 | 17,464,538 | 17,606,373 | 17,298,272 | 17,884,548 | 18,046,498 | 17,859,834 | | | | |
| Add interest expenses for 3 months | 199,074 | 198,799 | 198,832 | 136,902 | 72,593 | 199,703 | 260,722 | 333,275 | | | | |
| Less depreciation/amort. For 3 months | (1,076,274) | (995,630) | (1,070,584) | (1,072,210) | (1,074,761) | (1,074,263) | (1,061,818) | (1,047,911) | | | | |
| Adj. operating expenses YTD | $ 16,731,878 | $ 17,031,161 | $ 16,592,786 | $ 16,671,065 | $ 16,296,104 | $ 17,009,988 | $ 17,245,402 | $ 17,145,198 | $ - | $ - | $ - | - |
| Days in period | 92 | 92 | 92 | 92 | 91 | 92 | 92 | 90 | 90 | 89 | 92 | 91 |
| Daily operating expense | $ 181,868 | $ 185,121 | $ 180,356 | $ 181,207 | $ 179,078 | $ 184,891 | $ 187,450 | $ 190,502 | $ - | $ - | $ - | - |
| Days cash on hand | 57.75 | 73.44 | 83.07 | 73.58 | 68.87 | 56.86 | 51.77 | 57.34 | | | | |

(1) excludes all restricted funds, e.g. bond reserve fund

Prepared by D. Bryant

M:\PYE 6.30.2015\Liabilities FY15\09-Debt borrowings net of curr mat\Revenue bond disclosure\February\Cash on hand FY15

Exhibit F, Page 106

## Tulare Local Health Care District
### Refunding Revenue Bonds, Series 2007
Long-Term Debt Service Coverage Ratio (DSCR) Computation
For the eight months ended February 28, 2015

Income Available For Debt Service

| | | |
|---|---|---|
| Increase in net assets | $ | 9,583,658 |
| Add: | | |
| Interest Expense | | 538,429 |
| Depreciation | | 2,834,685 |
| Less: | | |
| District Taxes Related to General | | |
| Obligation Bonds Debt Service | | (4,054,810) |
| Total Income Available For Debt Service | | 8,901,962 |
| Maximum Annual Debt Service | $ | 2,744,112 |
| Debt Service Coverage Ratio | | 4.8727 |

Prepared by D. Bryant

Tulare Local Health Care District
Statement of revenue and expenditures
For the month ended February 28, 2015
unaudited

| | Current period | | | | Year to date | | | |
|---|---|---|---|---|---|---|---|---|
| | This year | Last year | YOY | % Δ | | This year | Last year | YOY | % Δ |
| | | | | | Patient Revenue: | | | | |
| $ | 3,556,409 | $ 3,541,258 | $ 15,151 | 0.4% | Daily hospital services | $ 30,871,929 | $ 32,460,044 | $ (1,588,115) | -4.9% |
| | 5,183,823 | 5,323,077 | (139,254) | -2.6% | Inpatient ancillary services | 43,790,075 | 47,350,720 | (3,560,645) | -7.5% |
| | 11,000,306 | 10,329,283 | 671,023 | 6.5% | Outpatient ancillary services | 88,447,719 | 86,450,522 | 1,997,197 | 2.3% |
| | 19,740,538 | 19,193,618 | 546,920 | 2.8% | Gross patient revenue | 163,109,723 | 166,261,286 | (3,151,563) | -1.9% |
| | | | | | Deductions from revenue: | | | | |
| | (15,351,497) | (14,408,321) | (943,176) | 6.5% | Contractual allowances | (117,811,358) | (117,800,561) | (10,797) | 0.0% |
| | 1,968,476 | - | 1,968,476 | 100.0% | Supplemental funds | 7,656,593 | - | 7,656,593 | 100.0% |
| | 40,567 | (56,340) | 96,907 | 172.0% | Charity allowances | (259,778) | (759,858) | 500,080 | -65.8% |
| | (360,367) | (341,592) | (18,775) | 5.5% | Provision for uncollectibles | (2,800,235) | (8,618,102) | 5,817,867 | -67.5% |
| | (13,702,821) | (14,806,253) | 1,103,432 | -7.5% | Total deductions from revenue | (113,214,778) | (127,178,521) | 13,963,743 | -11.0% |
| | | | | | | | | | |
| | 6,037,717 | 4,387,365 | 1,650,352 | 37.6% | Net patient revenue | 49,894,945 | 39,082,765 | 10,812,180 | 27.7% |
| | 64,937 | 327,418 | (262,481) | -80.2% | Other operating revenue | 1,785,353 | 2,508,293 | (722,940) | -28.8% |
| | | | | | | | | | |
| | 6,102,654 | 4,714,783 | 1,387,871 | 29.4% | Total operating revenue | 51,680,298 | 41,591,058 | 10,089,240 | 24.3% |
| | | | | | | | | | |
| | | | | | Operating expenses: | | | | |
| | 29,318 | 1,639,111 | (1,609,793) | -98.2% | Salaries & wages | 7,756,401 | 15,615,733 | (7,859,332) | -50.3% |
| | 513 | 682,880 | (682,367) | -99.9% | Employee benefits | 2,969,241 | 5,966,419 | (2,997,178) | -50.2% |
| | 471,826 | 313,621 | 158,205 | 50.4% | Professional fees | 3,250,078 | 2,237,722 | 1,012,356 | 45.2% |
| | 440,689 | 371,682 | 69,007 | 18.6% | Professional fees, physicians | 3,039,399 | 3,100,001 | (60,602) | -2.0% |
| | 578,123 | 675,117 | (96,994) | -14.4% | Supplies | 6,634,617 | 5,815,869 | 818,748 | 14.1% |
| | 3,167,245 | 991,909 | 2,175,336 | 219.3% | Purchased services | 17,209,360 | 8,396,006 | 8,813,354 | 105.0% |
| | 38,341 | 37,542 | 799 | 2.1% | Repairs & maintenance | 218,576 | 226,082 | (7,506) | -3.3% |
| | 187,756 | 98,694 | 89,062 | 90.2% | Utilities & phone | 1,366,250 | 1,079,943 | 286,307 | 26.5% |
| | 61,401 | 60,733 | 668 | 1.1% | Building & equipment rental | 519,709 | 512,437 | 7,272 | 1.4% |
| | 82,634 | 60,179 | 22,455 | 37.3% | Insurance | 638,400 | 514,455 | 123,945 | 24.1% |
| | 344,097 | 365,297 | (21,200) | -5.8% | Depreciation & amortization | 2,834,685 | 2,951,034 | (116,349) | -3.9% |
| | 77,842 | 50,795 | 27,047 | 53.2% | Other operating expenses | 644,851 | 681,848 | (36,997) | -5.4% |
| | | | | | | | | | |
| | 5,479,785 | 5,347,560 | 132,225 | 2.5% | Total operating expenses | 47,081,567 | 47,097,549 | (15,982) | 0.0% |
| | | | | | | | | | |
| | 622,869 | (632,777) | 1,255,646 | 198.4% | Operating income | 4,598,731 | (5,506,491) | 10,105,222 | 183.5% |
| | | | | | | | | | |
| | 182,000 | 134,000 | 48,000 | 35.8% | Tax revenues, general | 1,156,000 | 1,072,000 | 84,000 | 7.8% |
| | 6,542 | 11,958 | (5,416) | -45.3% | Investment income | (46,517) | 84,266 | (130,783) | -155.2% |
| | (74,447) | (66,474) | (7,973) | 12.0% | Interest expense | (538,429) | (542,394) | 3,965 | -0.7% |
| | 32,093 | 18,397 | 13,696 | 74.4% | Grants & contributions | 359,063 | 221,171 | 137,892 | 62.3% |
| | - | - | - | 0.0% | Other income | - | - | - | 0.0% |
| | 146,188 | 97,881 | 48,307 | 49.4% | Total non-op revenue (expense) | 930,117 | 835,043 | 95,074 | 11.4% |
| | | | | | | | | | |
| | 769,057 | (534,896) | 1,303,953 | 243.8% | Excess of revenues over exps. | 5,528,848 | (4,671,448) | 10,200,296 | 218.4% |
| | | | | | | | | | |
| | 507,363 | 507,175 | 188 | 0.0% | District taxes for GO bond debt svc | 4,054,810 | 4,062,347 | (7,537) | -0.2% |
| | - | - | - | | Intergovernmental transfers | - | - | - | |
| $ | 1,276,420 | $ (27,721) | $ 1,304,141 | 4704.5% | Increase in net assets | $ 9,583,658 | $ (609,101) | $ 10,192,759 | 1673.4% |

# Tulare Local Health Care District

Refunding revenue bonds, series 2007 - continuing disclosure report
For the eight months ended February 28, 2015, unaudited

|  | 2009-2010 | 2010-2011 | 2011-2012 | 2012-2013 | 2013-2014 | 2014-2015 |
|---|---|---|---|---|---|---|
| **HISTORICAL UTILIZATION STATISTICS** | | | | | | |
| Licensed beds | 112 | 112 | 112 | 112 | 112 | 112 |
| Available beds | 103 | 103 | 103 | 103 | 103 | 103 |
| Patient days | 22,098 | 22,268 | 21,040 | 18,310 | 14,422 | 9,799 |
| Discharges | 5,740 | 5,893 | 5,368 | 4,732 | 3,807 | 2,544 |
| Average daily census | 61 | 61 | 57 | 50 | 40 | 40 |
| Occupancy percentage (1) | 59% | 59% | 56% | 49% | 38% | 39% |
| Average length of stay in days | 3.85 | 3.78 | 3.92 | 3.87 | 3.79 | 3.85 |
| Emergency room visits | 33,024 | 31,612 | 31,356 | 30,753 | 31,188 | 23,272 |
| Outpatient visits (2) | 95,674 | 85,143 | 101,094 | 82,961 | 71,653 | 46,077 |
| Outpatient surgeries | 1,679 | 1,839 | 1,785 | 1,563 | 1,675 | 1,292 |
| | | | | | | |
| **SOURCES OF PATIENT SERVICE REVENUE** | | | | | | |
| Medicare | 35% | 35% | 34% | 34% | 30% | 32% |
| Medi-Cal | 33% | 39% | 34% | 34% | 42% | 46% |
| Commercial Insurance | 24% | 19% | 20% | 20% | 18% | 2% |
| Self Pay and All Other | 8% | 7% | 12% | 12% | 10% | 20% |
| | | | | | | |
| **OTHER STATISTICS** | | | | | | |
| Number of active medical staff | 87 | 89 | 113 | 90 | 92 | 87 |
| Number of employees | 591 | 535 | 573 | 587 | 550 | 539 |

(1) based on available beds

(2) Includes clinics, home health and referred visits. Excludes emergency and outpatient surgery visits

Prepared by D. Bryant          M:\FYE 6.30.2015\Liabilities FY15\09-Debt borrowings net of curr mat\Revenue bond disclosure\February\Revenue bond continuing disclosure FY15

**Tulare Local Health Care District**
**Balance sheet for the period ended March 31, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| **Current assets:** | | | | |
| Cash and cash equivalents | $ 8,701,517 | $ 10,260,858 | $ (1,559,341) | -15.2% |
| Ltd use assets avail for curr debt srvc | 4,316,310 | 7,389,395 | (3,073,085) | -41.6% |
| Patient accounts receivable: | | | | |
| Gross pt accounts receivable | 44,206,254 | 36,386,758 | 7,819,496 | 21.5% |
| Contractual allowances | (32,612,302) | (27,190,456) | (5,421,846) | 19.9% |
| Provision for bad debts & charity | (1,963,691) | (5,064,604) | 3,100,913 | -61.2% |
| Net pt accounts receivable | 9,630,261 | 4,131,698 | 5,498,563 | 133.1% |
| | | | | |
| Other receiv. & phys. advances | | | | |
| Tax revenue receivable | 620,645 | 485,058 | 135,587 | 28.0% |
| Misc receivables | 14,440,959 | 3,306,514 | 11,134,445 | 336.7% |
| Physician advances | 11,336 | 354,227 | (342,891) | -96.8% |
| Total other receivables | 15,072,940 | 4,145,799 | 10,927,141 | 263.6% |
| | | | | |
| Inventories | 1,236,129 | 1,347,498 | (111,369) | -8.3% |
| Prepaid expenses & deposits | 702,686 | 381,630 | 321,056 | 84.1% |
| | | | | |
| Total current assets | 39,659,843 | 27,656,878 | 12,002,965 | 43.4% |
| | | | | |
| **Assets limited as to use:** | | | | |
| GO bond construction fund | 24 | 1,925,841 | (1,925,817) | -100.0% |
| Restricted trust funds, other | 5,025,166 | 3,173,193 | 1,851,973 | 58.4% |
| Total limited use assets | 5,025,190 | 5,099,034 | (73,844) | -1.4% |
| | | | | |
| **Capital assets:** | | | | |
| Land & land improvements | 3,301,871 | 3,202,611 | 99,260 | 3.1% |
| Bldgs & bldg improvements | 43,369,991 | 43,483,537 | (113,546) | -0.3% |
| Leasehold improvements | 28,797 | 50,074 | (21,277) | -42.5% |
| Major movable equipment | 32,100,465 | 35,315,153 | (3,214,688) | -9.1% |
| Construction in progress | 132,712,982 | 120,477,230 | 12,235,752 | 10.2% |
| Gross capital assets | 211,514,106 | 202,528,605 | 8,985,501 | 4.4% |
| Accumulated depreciation | (56,987,673) | (58,264,364) | 1,276,691 | -2.2% |
| Net capital assets | 154,526,433 | 144,264,241 | 10,262,192 | 7.1% |
| | | | | |
| Bond issuance costs & other assets | 1,006,848 | 1,210,641 | (203,793) | -16.8% |
| Intercompany receivable | 1,862,308 | - | 1,862,308 | |
| **TOTAL ASSETS** | $ 202,080,622 | $ 178,230,794 | $ 23,849,828 | 13.4% |



**Tulare Local Health Care District**
**Balance sheet for the period ended March 31, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---:|---:|---:|---:|
| Current liabilities: | | | | |
| Current maturities of debt borrowings | $ 1,026,346 | $ 834,170 | $ 192,176 | 23.0% |
| Accounts payable | 14,150,719 | 4,629,228 | $ 9,521,491 | 205.7% |
| Other accrued liabilities | 2,788,986 | 223,209 | $ 2,565,777 | 1149.5% |
| Accrued payroll & related liabilities | 84,176 | 2,437,754 | $ (2,353,578) | -96.5% |
| Post-retiree health benefits | - | 67,749 | $ (67,749) | -100.0% |
| Est current 3rd party payor settlements | 1,531,447 | 1,730,943 | $ (199,496) | -11.5% |
| Self insurance program accrual | 1,142,761 | 1,157,687 | $ (14,926) | -1.3% |
| | | | | |
| Total current liabilities | 20,724,435 | 11,080,740 | 9,643,695 | 87.0% |
| | | | | |
| Long-term liabilities: | | | | |
| Deferred revenue | 7,748,931 | 5,222,243 | 2,526,688 | 48.4% |
| Debt borrowings, net of curr maturities | 102,620,276 | 107,130,504 | (4,510,228) | -4.2% |
| **TOTAL LIABILITIES** | **131,093,642** | **123,433,487** | **7,660,155** | **6.2%** |
| | | | | |
| Net assets: | | | | |
| Net investment in capital asseets | 39,984,289 | 38,225,408 | 1,758,881 | 4.6% |
| Restricted by bond indenture-debt svc | 15,987,967 | 10,562,589 | 5,425,378 | 51.4% |
| Unrestricted | 4,000,544 | 6,456,482 | (2,455,938) | -38.0% |
| Net income, corporate | 10,891,375 | (447,172) | 11,338,547 | 2535.6% |
| | | | | |
| Total net assets | 70,864,175 | 54,797,307 | 16,066,868 | 29.3% |
| | | | | |
| Intercompany payable | 122,805 | | 122,805 | 100.0% |
| | | | | |
| **TOTAL LIABILITIES & NET ASSETS** | $ 202,080,622 | $ 178,230,794 | $ 23,849,828 | 13.4% |

**Tulare Local Health Care District**
**Statement of revenue and expenditures**
**For the month ended March 31, 2015**
unaudited

| | Current period | | | | | Year to date | | |
|---|---|---|---|---|---|---|---|---|
| This year | Last year | YOY | % Δ | | This year | Last year | YOY | % Δ |
| | | | | Patient Revenue: | | | | |
| $ 4,415,480 | $ 3,878,099 | $ 537,381 | 13.9% | Daily hospital services | $ 35,287,409 | $ 36,338,143 | $ (1,050,734) | -2.9% |
| 5,780,389 | 5,557,649 | 222,740 | 4.0% | Inpatient ancillary services | 49,570,464 | 52,908,369 | (3,337,905) | -6.3% |
| 12,993,721 | 11,435,052 | 1,558,669 | 13.6% | Outpatient ancillary services | 101,441,440 | 97,885,575 | 3,555,865 | 3.6% |
| 23,189,590 | 20,870,800 | 2,318,790 | 11.1% | Gross patient revenue | 186,299,313 | 187,132,087 | (832,774) | -0.4% |
| | | | | Deductions from revenue: | | | | |
| (17,275,899) | (15,063,615) | (2,212,284) | 14.7% | Contractual allowances | (135,087,257) | (132,864,176) | (2,223,081) | 1.7% |
| 563,654 | - | 563,654 | 100.0% | Supplemental funds | 8,220,247 | - | 8,220,247 | 100.0% |
| 4,523 | (90,367) | 94,890 | 105.0% | Charity allowances | (255,255) | (850,225) | 594,970 | -70.0% |
| (105,324) | (813,955) | 708,631 | -87.1% | Provision for uncollectibles | (2,905,559) | (9,432,057) | 6,526,498 | -69.2% |
| (16,813,046) | (15,967,937) | (845,109) | 5.3% | Total deductions from revenue | (130,027,824) | (143,146,458) | 13,118,634 | -9.2% |
| 6,376,544 | 4,902,863 | 1,473,681 | 30.1% | Net patient revenue | 56,271,489 | 43,985,629 | 12,285,860 | 27.9% |
| 69,068 | 330,489 | (261,421) | -79.1% | Other operating revenue | 1,854,421 | 2,838,782 | (984,361) | -34.7% |
| 6,445,612 | 5,233,352 | 1,212,260 | 23.2% | Total operating revenue | 58,125,910 | 46,824,411 | 11,301,499 | 24.1% |
| | | | | Operating expenses: | | | | |
| 27,021 | 1,915,642 | (1,888,621) | -98.6% | Salaries & wages | 7,783,422 | 17,531,375 | (9,747,953) | -55.6% |
| 1,270 | 693,634 | (692,364) | -99.8% | Employee benefits | 2,970,511 | 6,660,054 | (3,689,543) | -55.4% |
| 471,005 | 252,722 | 218,283 | 86.4% | Professional fees | 3,721,083 | 2,490,444 | 1,230,639 | 49.4% |
| 586,089 | 327,614 | 258,475 | 78.9% | Professional fees, physicians | 3,625,488 | 3,427,615 | 197,873 | 5.8% |
| 943,162 | 647,548 | 295,614 | 45.7% | Supplies | 7,577,779 | 6,463,417 | 1,114,362 | 17.2% |
| 2,859,742 | 1,087,321 | 1,772,421 | 163.0% | Purchased services | 20,069,103 | 9,483,327 | 10,585,776 | 111.6% |
| 31,896 | 49,965 | (18,069) | -36.2% | Repairs & maintenance | 250,472 | 276,047 | (25,575) | -9.3% |
| 136,440 | 156,014 | (19,574) | -12.5% | Utilities & phone | 1,502,690 | 1,235,957 | 266,733 | 21.6% |
| 70,773 | 75,701 | (4,928) | -6.5% | Building & equipment rental | 590,482 | 588,138 | 2,344 | 0.4% |
| 100,194 | 55,179 | 45,015 | 81.6% | Insurance | 738,594 | 569,634 | 168,960 | 29.7% |
| 344,097 | 363,558 | (19,461) | -5.4% | Depreciation & amortization | 3,178,782 | 3,314,592 | (135,810) | -4.1% |
| 176,968 | 41,564 | 135,404 | 325.8% | Other operating expenses | 821,819 | 723,411 | 98,408 | 13.6% |
| 5,748,657 | 5,666,462 | 82,195 | 1.5% | Total operating expenses | 52,830,225 | 52,764,011 | 66,214 | 0.1% |
| 696,955 | (433,110) | 1,130,065 | 260.9% | Operating income | 5,295,685 | (5,939,600) | 11,235,285 | 189.2% |
| 132,000 | 134,000 | (2,000) | -1.5% | Tax revenues, general | 1,288,000 | 1,206,000 | 82,000 | 6.8% |
| 11,361 | 3,435 | 7,926 | 230.7% | Investment income | (35,156) | 87,701 | (122,857) | -140.1% |
| (65,948) | (68,944) | 2,996 | -4.3% | Interest expense | (604,377) | (611,338) | 6,961 | -1.1% |
| 25,987 | 19,373 | 6,614 | 34.1% | Grants & contributions | 385,049 | 240,544 | 144,505 | 60.1% |
| - | - | - | 0.0% | Other income | - | - | - | 0.0% |
| 103,400 | 87,864 | 15,536 | 17.7% | Total non-op revenue (expense) | 1,033,516 | 922,907 | 110,609 | 12.0% |
| 800,355 | (345,246) | 1,145,601 | 331.8% | Excess of revenues over exps. | 6,329,201 | (5,016,693) | 11,345,894 | 226.2% |
| 507,363 | 507,175 | 188 | 0.0% | District taxes for GO bond debt svc | 4,562,174 | 4,569,521 | (7,347) | -0.2% |
| - | - | - | | Intergovernmental transfers | - | - | | |
| $ 1,307,718 | $ 161,929 | $ 1,145,789 | 707.6% | Increase in net assets | $ 10,891,375 | $ (447,172) | $ 11,338,547 | 2535.6% |

## Tulare Regional Medical Center
### Financial Statistics Summary
### March 31, 2015

| | Current Month | | | | Year-to-Date | | | | Prior year YTD | Increase/ (Decrease) | % Chg. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Budget | Variance | % Var. | Actual | Budget | Variance | % Var. | | | |
| **Inpatient Utilization** | | | | | | | | | | | |
| Acute Patient Days | 1,330 | 1,372 | (42) | -3% | 11,129 | 12,387 | (1,258) | -10% | 11,063 | 66 | 1% |
| Discharges | 316 | 393 | (77) | -20% | 2,860 | 3,632 | (772) | -21% | 2,928 | (68) | -2% |
| Average Length of Stay | 4.21 | 3.49 | 0.72 | 21% | 3.89 | 3.41 | 0.48 | 14% | 3.78 | 0.11 | 3% |
| **Discharges** | | | | | | | | | | | |
| Medicare | 118 | 98 | 20 | 20% | 848 | 978 | (130) | -13% | 695 | 153 | 22% |
| Medicare MC | 13 | 15 | (2) | -13% | 112 | 135 | (23) | -17% | 86 | 26 | 30% |
| Medi-Cal | 45 | 52 | (7) | -13% | 468 | 468 | - | 0% | 559 | (91) | -16% |
| Medi-Cal MC | 93 | 124 | (31) | -25% | 1,016 | 1,116 | (100) | -9% | 965 | 51 | 5% |
| County | - | 16 | (16) | -100% | - | 147 | (147) | -100% | 79 | (79) | -100% |
| HMO/PPO | 40 | 44 | (4) | -9% | 341 | 396 | (55) | -14% | 379 | (38) | -10% |
| Self-Pay | - | 19 | (19) | -100% | 24 | 171 | (147) | -86% | 124 | (100) | -81% |
| Other | 7 | 25 | (18) | -71% | 51 | 221 | (170) | -77% | 41 | 10 | 24% |
| | 316 | 393 | (77) | -20% | 2,860 | 3,632 | (772) | -21% | 2,928 | (68) | -2% |
| **Case Mix Index** | | | | | | | | | | | |
| Medicare | 1.3575 | 1.2400 | 0.1175 | 9% | 1.3762 | 1.2400 | 0.1362 | 11% | 1.4587 | (0.0825) | -6% |
| Medi-Cal | 0.8922 | 0.8000 | 0.0922 | 12% | 0.8434 | 0.8000 | 0.0434 | 5% | 0.8393 | 0.0040 | 0% |
| Overall | 1.0314 | 0.9350 | 0.0964 | 10% | 1.0051 | 0.9350 | 0.0701 | 7% | 0.9926 | 0.0125 | 1% |
| **Newborn Deliveries** | 72 | 103 | (31) | -30% | 795 | 927 | (132) | -14% | 896 | (101) | -11% |
| **Observation** | | | | | | | | | | | |
| Patients | 233 | 122 | 111 | 91% | 1,233 | 1,216 | 17 | 1% | 1,361 | (128) | -9% |
| Hours | 5,278 | 2,419 | 2,859 | 118% | 27,074 | 21,066 | 6,008 | 29% | 30,737 | (3,663) | -12% |
| Equivalent days | 219 | 101 | 118 | 117% | 1,128 | 879 | 249 | 28% | 1,282 | (154) | -12% |
| **Surgery Services** | | | | | | | | | | | |
| Inpatient Cases | 40 | 108 | (68) | -63% | 586 | 1,004 | (418) | -42% | 825 | (239) | -29% |
| Outpatient Cases | 194 | 122 | 72 | 59% | 1,486 | 1,131 | 355 | 31% | 1,235 | 251 | 20% |
| Total surgeries | 234 | 230 | 4 | 2% | 2,072 | 2,135 | (63) | -3% | 2,060 | 12 | 1% |
| **Emergency Room** | | | | | | | | | | | |
| Visits | 3,147 | 2,526 | 621 | 25% | 26,419 | 23,093 | 3,326 | 14% | 23,302 | 3,117 | 13% |
| Admits | 185 | 219 | (34) | -16% | 1,645 | 2,002 | (357) | -18% | 1,560 | 85 | 5% |

**Tulare Regional Medical Center**
Financial Statistics Summary
March 31, 2015

| | Current Month | | | | Year-to-Date | | | | Prior year YTD | Increase/ (Decrease) | % Chg. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Budget | Variance | % Var. | Actual | Budget | Variance | % Var. | | | |
| **Ancillary Services** | | | | | | | | | | | |
| **Inpatient** | | | | | | | | | | | |
| Imaging Procedures | 737 | 749 | (12) | -2% | 5,969 | 6,537 | (568) | -9% | 5,626 | 343 | 6% |
| Lab Tests | 10,458 | 10,989 | (531) | -5% | 83,382 | 92,888 | (9,506) | -10% | 78,415 | 4,967 | 6% |
| **Outpatient** | | | | | | | | | | | |
| Endoscopy Procedures | 196 | 145 | 51 | 35% | 1,402 | 1,206 | 196 | 16% | 1,194 | 208 | 17% |
| Lab Tests | 17,614 | 18,467 | (853) | -5% | 143,336 | 156,093 | (12,757) | -8% | 148,917 | (5,581) | -4% |
| Diag. radiology procedures | 2,716 | 2,057 | 659 | 32% | 20,618 | 17,742 | 2,876 | 16% | 18,698 | 1,920 | 10% |
| Nuclear medicine procedures | 27 | 29 | (2) | -7% | 245 | 299 | (54) | -18% | 189 | 56 | 30% |
| MRI procedures | 109 | 108 | 1 | 1% | 1,034 | 1,028 | 6 | 1% | 789 | 245 | 31% |
| Ultrasound procedures | 584 | 593 | (9) | -2% | 5,102 | 5,156 | (54) | -1% | 4,926 | 176 | 4% |
| CT procedures | 417 | 419 | (2) | 0% | 3,702 | 3,672 | 30 | 1% | 3,430 | 272 | 8% |
| **Clinics** | | | | | | | | | | | |
| Primary Care Visits | 1,179 | 1,893 | (714) | -38% | 9,610 | 17,198 | (7,588) | -44% | 10,514 | (904) | -9% |
| Specialty Care Visits | 598 | 517 | 81 | 16% | 5,052 | 4,702 | 350 | 7% | 5,316 | (264) | -5% |
| **Home Health** | | | | | | | | | | | |
| Visits | 326 | 331 | (5) | -2% | 2,439 | 3,446 | (1,007) | -29% | 2,906 | (467) | -16% |
| **Staffing** | | | | | | | | | | | |
| Paid FTE's | 387 | 415 | (29) | -7% | 398 | 415 | (17) | -4% | 412 | (13) | -3% |
| Productive FTE's | 353 | 374 | (21) | -6% | 330 | 374 | (44) | -12% | 356 | (26) | -7% |
| Paid FTE's/AOB | 3.96 | 4.72 | -0.75 | -16% | 4.47 | 4.59 | (0.12) | -3% | 4.86 | (0.39) | -8% |
| Worked FTE's/AOB | 3.61 | 4.25 | -0.63 | -15% | 3.70 | 4.19 | (0.49) | -12% | 3.99 | (0.29) | -7% |
| **Revenue/Costs** | | | | | | | | | | | |
| Op Revenue/Adjusted Discharge | 9,173 | 7,191 | 1,982 | 28% | 9,288 | 6,843 | 2,445 | 36% | 7,533 | 1,755 | 23% |
| Cost/Adjusted Discharge | 7,995 | 7,312 | 684 | 9% | 8,422 | 7,102 | 1,319 | 19% | 8,605 | (183) | -2% |
| Net Operating Gain/(Loss) $ | 846,955 | (94,237) | 941,192 | 1099% | 5,445,682 | (1,870,565) | 7,316,247 | -391% | (6,801,369) | 12,247,051 | 280% |
| Net Operating Gain/(Loss) % | 12.8% | -1.7% | 14.5% | 966% | 9.3% | -3.8% | 13.1% | -348% | -14.8% | 24.1% | 263% |

**Tulare Local Health Care District**
**Balance sheet for the period ended April 30, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| Current assets: | | | | |
| Cash and cash equivalents | $ 11,871,459 | $ 10,800,711 | $ 1,070,748 | 9.9% |
| Ltd use assets avail for curr debt srvc | 4,316,310 | 7,389,395 | (3,073,085) | -41.6% |
| Patient accounts receivable: | | | | |
| Gross pt accounts receivable | 46,193,187 | 33,183,569 | 13,009,618 | 39.2% |
| Contractual allowances | (33,581,048) | (25,401,406) | (8,179,642) | 32.2% |
| Provision for bad debts & charity | (2,218,060) | (4,581,879) | 2,363,819 | -51.6% |
| Net pt accounts receivable | 10,394,079 | 3,200,284 | 7,193,795 | 224.8% |
| Other receiv. & phys. advances | | | | |
| Tax revenue receivable | 697,506 | 619,058 | 78,448 | 12.7% |
| Misc receivables | 9,631,719 | 3,436,270 | 6,195,449 | 180.3% |
| Physician advances | 8,783 | 365,638 | (356,855) | -97.6% |
| Total other receivables | 10,338,008 | 4,420,966 | 5,917,042 | 133.8% |
| Inventories | 1,220,401 | 1,284,269 | (63,868) | -5.0% |
| Prepaid expenses & deposits | 705,324 | 333,921 | 371,403 | 111.2% |
| Total current assets | 38,845,581 | 27,429,546 | 11,416,035 | 41.6% |
| Assets limited as to use: | | | | |
| GO bond construction fund | 24 | 1,582,771 | (1,582,747) | -100.0% |
| Restricted trust funds, other | 8,002,448 | 2,858,466 | 5,143,982 | 180.0% |
| Total limited use assets | 8,002,472 | 4,441,237 | 3,561,235 | 80.2% |
| Capital assets: | | | | |
| Land & land improvements | 3,301,871 | 3,436,862 | (134,991) | -3.9% |
| Bldgs & bldg improvements | 43,402,724 | 43,483,537 | (80,813) | -0.2% |
| Leasehold improvements | 28,797 | 50,074 | (21,277) | -42.5% |
| Major movable equipment | 32,107,489 | 35,458,586 | (3,351,097) | -9.5% |
| Construction in progress | 133,777,909 | 121,619,950 | 12,157,959 | 10.0% |
| Gross capital assets | 212,618,790 | 204,049,009 | 8,569,781 | 4.2% |
| Accumulated depreciation | (57,314,312) | (58,609,988) | 1,295,676 | -2.2% |
| Net capital assets | 155,304,478 | 145,439,021 | 9,865,457 | 6.8% |
| Bond issuance costs & other assets | 993,379 | 1,193,339 | (199,960) | -16.8% |
| Intercompany receivable | - | - | - | |
| **TOTAL ASSETS** | $ 203,145,910 | $ 178,503,143 | $ 24,642,767 | 13.8% |

**Tulare Local Health Care District**
**Balance sheet for the period ended April 30, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| Current liabilities: | | | | |
| Current maturities of debt borrowings | $        908,502 | $        734,606 | $        173,896 | 23.7% |
| Accounts payable | 12,421,711 | 4,525,666 | $     7,896,045 | 174.5% |
| Other accrued liabilities | 2,736,156 | 309,784 | $     2,426,372 | 783.2% |
| Accrued payroll & related liabilities | 376,001 | 2,296,585 | $    (1,920,584) | -83.6% |
| Post-retiree health benefits | - | 67,166 | $        (67,166) | -100.0% |
| Est current 3rd party payor settlements | 1,531,447 | 1,780,262 | $       (248,815) | -14.0% |
| Self insurance program accrual | 1,270,469 | 1,025,129 | $        245,340 | 23.9% |
| | | | | |
| Total current liabilities | 19,244,286 | 10,739,198 | 8,505,088 | 79.2% |
| | | | | |
| Long-term liabilities: | | | | |
| Deferred revenue | 9,390,050 | 7,581,165 | 1,808,885 | 23.9% |
| Debt borrowings, net of curr maturities | 103,190,064 | 104,659,100 | (1,469,036) | -1.4% |
| **TOTAL LIABILITIES** | **131,824,400** | **122,979,463** | **8,844,937** | **7.2%** |
| | | | | |
| Net assets: | | | | |
| Net Investment in capital assets | 40,310,390 | 41,628,086 | (1,317,696) | -3.2% |
| Restricted by bond indenture-debt svc | 18,965,249 | 10,247,861 | 8,717,388 | 85.1% |
| Unrestricted | 697,161 | 3,427,934 | (2,730,773) | -79.7% |
| Net income, corporate | 13,306,364 | 219,800 | 13,086,564 | 5953.9% |
| | | | | |
| Total net assets | 73,279,164 | 55,523,681 | 17,755,483 | 32.0% |
| | | | | |
| Intercompany payable | (1,957,654) | - | (1,957,654) | 100.0% |
| | | | | |
| **TOTAL LIABILITIES & NET ASSETS** | $    203,145,910 | $   178,503,144 | $     24,642,766 | **13.8%** |

**Tulare L.... Health Care District**
Statement o..... ....enue and expenditures
For the month ended April 30, 2015
unaudited

| | Current period | | | | | | Year to date | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | This year | Last year | YOY | % Δ | | | This year | Last year | YOY | % Δ |
| | | | | | **Patient Revenue:** | | | | | |
| $ | 3,667,470 | $ 3,626,328 | $ 41,142 | 1.1% | Daily hospital services | $ | 38,954,879 | $ 39,964,471 | $ (1,009,592) | -2.5% |
| | 6,117,412 | 4,847,925 | 1,269,487 | 26.2% | Inpatient ancillary services | | 55,687,876 | 57,756,294 | (2,068,418) | -3.6% |
| | 14,600,100 | 11,262,007 | 3,338,093 | 29.6% | Outpatient ancillary services | | 116,041,541 | 109,147,582 | 6,893,959 | 6.3% |
| | 24,384,982 | 19,736,260 | 4,648,722 | 23.6% | **Gross patient revenue** | | 210,684,296 | 206,868,347 | 3,815,949 | 1.8% |
| | | | | | Deductions from revenue: | | | | | |
| | (18,151,027) | (13,360,993) | (4,790,034) | 35.9% | Contractual allowances | | (153,238,284) | (146,225,169) | (7,013,115) | 4.8% |
| | 605,254 | - | 605,254 | 100.0% | Supplemental funds | | 8,825,501 | - | 8,825,501 | 100.0% |
| | 98,115 | (74,675) | 172,790 | 231.4% | Charity allowances | | (157,141) | (924,900) | 767,759 | -83.0% |
| | (447,067) | (806,306) | 359,239 | -44.6% | Provision for uncollectibles | | (3,352,626) | (10,238,363) | 6,885,737 | -67.3% |
| | (17,894,725) | (14,241,974) | (3,652,751) | 25.6% | **Total deductions from revenue** | | (147,922,550) | (157,388,432) | 9,465,882 | -6.0% |
| | | | | | | | | | | |
| | 6,490,257 | 5,494,286 | 995,971 | 18.1% | Net patient revenue | | 62,761,746 | 49,479,915 | 13,281,831 | 26.8% |
| | 18,275 | 287,683 | (269,408) | -93.6% | Other operating revenue | | 1,872,696 | 3,126,465 | (1,253,769) | -40.1% |
| | | | | | | | | | | |
| | 6,508,532 | 5,781,969 | 726,563 | 12.6% | **Total operating revenue** | | 64,634,442 | 52,606,380 | 12,028,062 | 22.9% |
| | | | | | | | | | | |
| | | | | | Operating expenses: | | | | | |
| | 27,021 | 1,789,771 | (1,762,750) | -98.5% | Salaries & wages | | 7,810,443 | 19,321,146 | (11,510,703) | -59.6% |
| | 1,271 | 669,016 | (667,745) | -99.8% | Employee benefits | | 2,971,781 | 7,329,070 | (4,357,289) | -59.5% |
| | 440,204 | 261,918 | 178,286 | 68.1% | Professional fees | | 4,161,287 | 2,752,362 | 1,408,925 | 51.2% |
| | 478,594 | 400,811 | 77,783 | 19.4% | Professional fees, physicians | | 4,104,081 | 3,828,427 | 275,654 | 7.2% |
| | 673,214 | 749,902 | (76,688) | -10.2% | Supplies | | 8,250,993 | 7,213,318 | 1,037,675 | 14.4% |
| | 3,364,336 | 1,104,672 | 2,259,664 | 204.6% | Purchased services | | 23,433,438 | 10,587,999 | 12,845,439 | 121.3% |
| | 20,758 | 19,587 | 1,171 | 6.0% | Repairs & maintenance | | 271,229 | 295,633 | (24,404) | -8.3% |
| | 156,524 | 126,287 | 30,237 | 23.9% | Utilities & phone | | 1,659,214 | 1,362,244 | 296,970 | 21.8% |
| | 60,126 | 75,379 | (15,253) | -20.2% | Building & equipment rental | | 650,608 | 663,517 | (12,909) | -1.9% |
| | 95,860 | 69,179 | 26,681 | 38.6% | Insurance | | 834,454 | 638,813 | 195,641 | 30.6% |
| | 340,108 | 367,879 | (27,771) | -7.5% | Depreciation & amortization | | 3,518,890 | 3,682,472 | (163,582) | -4.4% |
| | 117,316 | 66,364 | 50,952 | 76.8% | Other operating expenses | | 939,135 | 789,775 | 149,360 | 18.9% |
| | | | | | | | | | | |
| | 5,775,332 | 5,700,765 | 74,567 | 1.3% | **Total operating expenses** | | 58,605,553 | 58,464,776 | 140,777 | 0.2% |
| | | | | | | | | | | |
| | **733,200** | **81,204** | **651,996** | 802.9% | **Operating income** | | **6,028,889** | **(5,858,396)** | **11,887,285** | 202.9% |
| | | | | | | | | | | |
| | 132,000 | 134,000 | (2,000) | -1.5% | Tax revenues, general | | 1,420,000 | 1,340,000 | 80,000 | 6.0% |
| | 6,515 | (10,275) | 16,790 | 163.4% | Investment income | | (28,641) | 77,425 | (106,066) | -137.0% |
| | (64,864) | (64,439) | (425) | 0.7% | Interest expense | | (669,241) | (675,777) | 6,536 | -1.0% |
| | 1,100,772 | 19,308 | 1,081,464 | 5601.1% | Grants & contributions | | 1,485,822 | 259,852 | 1,225,970 | 471.8% |
| | - | - | - | 0.0% | Other income | | - | - | - | 0.0% |
| | 1,174,423 | 78,594 | 1,095,829 | 1394.3% | Total non-op revenue (expense) | | 2,207,940 | 1,001,500 | 1,206,440 | 120.5% |
| | | | | | | | | | | |
| | 1,907,623 | 159,758 | 1,747,825 | 1093.8% | Excess of revenues over exps. | | 8,236,829 | (4,856,896) | 13,093,725 | 269.6% |
| | | | | | | | | | | |
| | 507,363 | 507,175 | 188 | 0.0% | District taxes for GO bond debt svc | | 5,069,537 | 5,076,696 | (7,159) | -0.1% |
| | | | | | Intergovernmental transfers | | | | | |
| | - | - | - | | | | - | - | - | |
| $ | 2,414,986 | $ 666,973 | $ 1,748,013 | 262.1% | **Increase in net assets** | $ | 13,306,366 | $ 219,800 | $ 13,086,566 | 5953.9% |

...are Local Health Care District
...ys cash on hand for the period ended April 30, 2015                    UNAUDITED

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ...h & cash equivalents (1) | $ 10,502,792 | $ 13,595,427 | $ 14,982,239 | $ 13,333,977 | $ 12,333,331 | $ 10,513,677 | $ 9,704,295 | $ 10,923,194 | $ 8,701,517 | $ 11,871,459 | | |
| ...al operating expenses for 3 months | 17,609,078 | 17,827,992 | 17,464,538 | 17,606,373 | 17,298,272 | 17,884,548 | 18,046,498 | 17,859,834 | 17,481,141 | 17,003,774 | | |
| ...d interest expenses for 3 months | 199,074 | 198,799 | 198,832 | 136,902 | 72,593 | 199,703 | 260,722 | 333,275 | 205,843 | 205,259 | | |
| ...s'depreciation/amort. For 3 months | (1,076,274) | (995,630) | (1,070,584) | (1,072,210) | (1,074,761) | (1,074,263) | (1,061,818) | (1,047,911) | (1,033,936) | (1,028,302) | | |
| ...operating expenses For 3 months | $ 16,731,878 | $ 17,031,161 | $ 16,592,786 | $ 16,671,065 | $ 16,296,104 | $ 17,009,988 | $ 17,245,402 | $ 17,145,198 | $ 16,653,048 | $ 16,180,731 | $ - | $ |
| ...ys in period | 92 | 92 | 92 | 92 | 91 | 92 | 92 | 90 | 90 | 89 | 92 | |
| ...ly operating expense | $ 181,868 | $ 185,121 | $ 180,356 | $ 181,207 | $ 179,078 | $ 184,891 | $ 187,450 | $ 190,502 | $ 185,034 | $ 181,806 | $ - | $ |
| ...ys cash on hand | 57.75 | 73.44 | 83.07 | 73.58 | 68.87 | 56.86 | 51.77 | 57.34 | 47.03 | 65.30 | | |

...xcludes all restricted funds, e.g. bond reserve fund

...ared by D. Bryant                                                      M:\FYE 6.30.2015\Liabilities FY15\09-Debt borrowings net of curr mat\Revenue bond disclosure\April\Cash on hand

# Tulare Local Health Care District
### Refunding Revenue Bonds, Series 2007
### Long-Term Debt Service Coverage Ratio (DSCR) Computation
### For the ten months ended April 30, 2015

Income Available For Debt Service

|  |  |  |
|---|---|---|
| Increase in net assets | $ | 13,306,366 |
| Add: | | |
| Interest Expense | | 669,242 |
| Depreciation | | 3,518,891 |
| Less: | | |
| District Taxes Related to General Obligation Bonds Debt Service | | (5,069,537) |
| Total Income Available For Debt Service | | 12,424,962 |
| Maximum Annual Debt Service | $ | 2,744,112 |
| Debt Service Coverage Ratio | | 6.0537 |

**Tulare Local Health Care District**
**Balance sheet for the period ended May 31, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---:|---:|---:|---:|
| **Current assets:** | | | | |
| Cash and cash equivalents | $ 9,185,469 | $ 10,094,243 | $ (908,774) | -9.0% |
| Ltd use assets avail for curr debt srvc | 4,316,310 | 7,389,395 | (3,073,085) | -41.6% |
| Patient accounts receivable: | | | | |
| Gross pt accounts receivable | 50,007,497 | 34,682,568 | 15,324,929 | 44.2% |
| Contractual allowances | (36,174,818) | (26,717,986) | (9,456,832) | 35.4% |
| Provision for bad debts & charity | (2,373,346) | (3,704,268) | 1,330,922 | -35.9% |
| Net pt accounts receivable | 11,459,333 | 4,260,314 | 7,199,019 | 169.0% |
| | | | | |
| Other receiv. & phys. advances | | | | |
| Tax revenue receivable | 468,268 | 135,862 | 332,406 | 244.7% |
| Misc receivables | 12,207,410 | 3,701,833 | 8,505,577 | 229.8% |
| Physician advances | 4,927 | 123,430 | (118,503) | -96.0% |
| Total other receivables | 12,680,605 | 3,961,125 | 8,719,480 | 220.1% |
| | | | | |
| Inventories | 1,257,932 | 1,061,268 | 196,664 | 18.5% |
| Prepaid expenses & deposits | 652,956 | 332,832 | 320,124 | 96.2% |
| | | | | |
| Total current assets | 39,552,605 | 27,099,177 | 12,453,428 | 46.0% |
| | | | | |
| **Assets limited as to use:** | | | | |
| GO bond construction fund | 24 | 1,343,291 | (1,343,267) | -100.0% |
| Restricted trust funds, other | 8,598,178 | 4,697,250 | 3,900,928 | 83.0% |
| Total limited use assets | 8,598,202 | 6,040,541 | 2,557,661 | 42.3% |
| | | | | |
| **Capital assets:** | | | | |
| Land & land improvements | 3,301,871 | 3,436,832 | (134,961) | -3.9% |
| Bldgs & bldg improvements | 43,402,724 | 43,483,537 | (80,813) | -0.2% |
| Leasehold improvements | 28,797 | 50,074 | (21,277) | -42.5% |
| Major movable equipment | 32,143,521 | 35,940,371 | (3,796,850) | -10.6% |
| Construction in progress | 134,721,766 | 122,200,385 | 12,521,381 | 10.2% |
| Gross capital assets | 213,598,679 | 205,111,199 | 8,487,480 | 4.1% |
| Accumulated depreciation | (57,642,977) | (58,956,736) | 1,313,759 | -2.2% |
| Net capital assets | 155,955,702 | 146,154,463 | 9,801,239 | 6.7% |
| | | | | |
| Bond issuance costs & other assets | 979,911 | 1,176,036 | (196,125) | -16.7% |
| Intercompany receivable | - | - | - | |
| | | | | |
| **TOTAL ASSETS** | $ 205,086,420 | $ 180,470,217 | $ 24,616,203 | 13.6% |

**Tulare Local Health Care District**
**Balance sheet for the period ended May 31, 2015**
unaudited

| | This year | Last year | Increase/(Decrease) | Inc/(Dec) percentage |
|---|---|---|---|---|
| Current liabilities: | | | | |
| Current maturities of debt borrowings | $ 790,491 | $ 634,882 | $ 155,609 | 24.5% |
| Accounts payable | 12,291,190 | 3,780,370 | $ 8,510,820 | 225.1% |
| Other accrued liabilities | 2,708,490 | 317,715 | $ 2,390,775 | 752.5% |
| Accrued payroll & related liabilities | 592,611 | 2,508,069 | $ (1,915,458) | -76.4% |
| Post-retiree health benefits | - | 66,583 | $ (66,583) | -100.0% |
| Est current 3rd party payor settlements | 1,531,447 | 1,442,613 | $ 88,834 | 6.2% |
| Self insurance program accrual | 1,251,843 | 1,012,640 | $ 239,203 | 23.6% |
| Total current liabilities | 19,166,072 | 9,762,872 | 9,403,200 | 96.3% |
| Long-term liabilities: | | | | |
| Deferred revenue | 9,372,860 | 9,024,158 | 348,702 | 3.9% |
| Debt borrowings, net of curr maturities | 103,762,438 | 105,442,732 | (1,680,294) | -1.6% |
| **TOTAL LIABILITIES** | **132,301,370** | **124,229,762** | **8,071,608** | 6.5% |
| Net assets: | | | | |
| Net investment in capital asseets | 40,507,251 | 41,420,143 | (912,892) | -2.2% |
| Restricted by bond indenture-debt svc | 19,560,980 | 12,086,645 | 7,474,335 | 61.8% |
| Unrestricted | (95,429) | 1,797,094 | (1,892,523) | -105.3% |
| Net income, corporate | 14,775,683 | 936,574 | 13,839,109 | 1477.6% |
| Total net assets | 74,748,485 | 56,240,456 | 18,508,029 | 32.9% |
| Intercompany payable | (1,963,433) | - | (1,963,433) | 100.0% |
| **TOTAL LIABILITIES & NET ASSETS** | $ 205,086,422 | $ 180,470,218 | $ 24,616,204 | 13.6% |

**Tulare Lo___ealth Care District**
**Statement of revenue and expenditures**
**For the month ended May 31, 2015**
unaudited

| | Current period | | | | | Year to date | | | |
|---|---|---|---|---|---|---|---|---|---|
| | This year | Last year | YOY | % Δ | | This year | Last year | YOY | % Δ |
| | | | | | Patient Revenue: | | | | |
| $ 3,669,825 | $ 3,763,828 | $ (94,003) | -2.5% | Daily hospital services | $ 42,624,704 | $ 43,728,299 | $ (1,103,595) | -2.5% |
| 5,454,532 | 4,584,039 | 870,493 | 19.0% | Inpatient ancillary services | 61,142,408 | 62,340,333 | (1,197,925) | -1.9% |
| 12,428,836 | 11,532,330 | 896,506 | 7.8% | Outpatient ancillary services | 128,470,377 | 120,679,912 | 7,790,465 | 6.5% |
| 21,553,193 | 19,880,197 | 1,672,996 | 8.4% | Gross patient revenue | 232,237,489 | 226,748,544 | 5,488,945 | 2.4% |
| | | | | Deductions from revenue: | | | | |
| (15,700,955) | (14,422,695) | (1,278,260) | 8.9% | Contractual allowances | (168,939,239) | (166,846,003) | (2,093,236) | 1.3% |
| 1,735,594 | 1,132,662 | 602,932 | 53.2% | Supplemental funds | 10,561,095 | 7,330,800 | 3,230,295 | 44.1% |
| (7,378) | 14,617 | (21,995) | -150.5% | Charity allowances | (164,519) | (910,283) | 745,764 | -81.9% |
| (227,579) | (1,009,646) | 782,067 | -77.5% | Provision for uncollectibles | (3,580,205) | (11,248,010) | 7,667,805 | -68.2% |
| (14,200,318) | (14,285,062) | 84,744 | -0.6% | Total deductions from revenue | (162,122,868) | (171,673,496) | 9,550,628 | -5.6% |
| 7,352,875 | 5,595,135 | 1,757,740 | 31.4% | Net patient revenue | 70,114,621 | 55,075,048 | 15,039,573 | 27.3% |
| 118,743 | 277,881 | (159,138) | -57.3% | Other operating revenue | 1,991,439 | 3,404,345 | (1,412,906) | -41.5% |
| 7,471,618 | 5,873,016 | 1,598,602 | 27.2% | Total operating revenue | 72,106,060 | 58,479,393 | 13,626,667 | 23.3% |
| | | | | Operating expenses: | | | | |
| 27,021 | 1,910,886 | (1,883,865) | -98.6% | Salaries & wages | 7,837,464 | 21,232,032 | (13,394,568) | -63.1% |
| 52 | 683,441 | (683,389) | -100.0% | Employee benefits | 2,971,833 | 8,012,512 | (5,040,679) | -62.9% |
| 547,229 | 250,081 | 297,148 | 118.8% | Professional fees | 4,708,516 | 3,002,443 | 1,706,073 | 56.8% |
| 493,732 | 396,518 | 97,214 | 24.5% | Professional fees, physicians | 4,597,813 | 4,224,945 | 372,868 | 8.8% |
| 845,953 | 725,611 | 120,342 | 16.6% | Supplies | 9,096,945 | 7,938,929 | 1,158,016 | 14.6% |
| 4,067,109 | 1,050,114 | 3,016,995 | 287.3% | Purchased services | 27,500,547 | 11,638,113 | 15,862,434 | 136.3% |
| 41,077 | 24,617 | 16,460 | 66.9% | Repairs & maintenance | 312,306 | 320,250 | (7,944) | -2.5% |
| 18,945 | 104,576 | (85,631) | -81.9% | Utilities & phone | 1,678,159 | 1,466,819 | 211,340 | 14.4% |
| 65,430 | 68,370 | (2,940) | -4.3% | Building & equipment rental | 716,038 | 731,887 | (15,849) | -2.2% |
| 55,405 | 66,179 | (10,774) | -16.3% | Insurance | 889,859 | 704,992 | 184,867 | 26.2% |
| 342,134 | 436,098 | (93,964) | -21.5% | Depreciation & amortization | 3,861,024 | 4,118,570 | (257,546) | -6.3% |
| 103,011 | 39,161 | 63,850 | 163.0% | Other operating expenses | 1,042,146 | 828,936 | 213,210 | 25.7% |
| 6,607,098 | 5,755,652 | 851,446 | 14.8% | Total operating expenses | 65,212,650 | 64,220,428 | 992,222 | 1.5% |
| 864,520 | 117,364 | 747,156 | 636.6% | Operating income | 6,893,410 | (5,741,035) | 12,634,445 | 220.1% |
| 132,000 | 134,000 | (2,000) | -1.5% | Tax revenues, general | 1,552,000 | 1,474,000 | 78,000 | 5.3% |
| 1,977 | 11,925 | (9,948) | -83.4% | Investment income | (26,664) | 89,351 | (116,015) | -129.8% |
| (64,805) | (66,481) | 1,676 | -2.5% | Interest expense | (734,047) | (742,258) | 8,211 | -1.1% |
| 28,264 | 12,791 | 15,473 | 121.0% | Grants & contributions | 1,514,086 | 272,643 | 1,241,443 | 455.3% |
| - | - | - | 0.0% | Other income | - | - | - | 0.0% |
| 97,436 | 92,235 | 5,201 | 5.6% | Total non-op revenue (expense) | 2,305,375 | 1,093,736 | 1,211,639 | 110.8% |
| 961,956 | 209,599 | 752,357 | 359.0% | Excess of revenues over exps. | 9,198,785 | (4,647,299) | 13,846,084 | 297.9% |
| 507,363 | 507,175 | 188 | 0.0% | District taxes for GO bond debt svc | 5,576,900 | 5,583,870 | (6,970) | -0.1% |
| - | - | - | | Intergovernmental transfers | - | - | - | |
| $ 1,469,319 | $ 716,774 | $ 752,545 | 105.0% | Increase in net assets | $ 14,775,685 | $ 936,571 | $ 13,839,114 | 1477.6% |

are Local Health Care District
ys cash on hand for the period ended May 31, 2015            UNAUDITED

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May |
|---|---|---|---|---|---|---|---|---|---|---|---|
| sh & cash equivalents (1) | $ 10,502,792 | $ 13,595,427 | $ 14,982,239 | $ 13,333,977 | $ 12,333,331 | $ 10,513,677 | $ 9,704,295 | $ 10,923,194 | $ 8,701,517 | $ 11,871,459 | $ 9,185,469 |
| | | | | | | | | | | | |
| tal operating expenses for 3 months | 17,609,078 | 17,827,992 | 17,464,538 | 17,606,373 | 17,298,272 | 17,884,548 | 18,046,498 | 17,859,834 | 17,481,141 | 17,003,774 | 18,131,087 |
| d interest expenses for 3 months | 199,074 | 198,799 | 198,832 | 136,902 | 72,593 | 199,703 | 260,722 | 333,275 | 205,843 | 205,259 | 195,617 |
| ss depreciation/amort. For 3 months | (1,076,274) | (995,630) | (1,070,584) | (1,072,210) | (1,074,761) | (1,074,263) | (1,061,818) | (1,047,911) | (1,033,936) | (1,028,302) | (1,026,339) |
| j. operating expenses For 3 months | $ 16,731,878 | $ 17,031,161 | $ 16,592,786 | $ 16,671,065 | $ 16,296,104 | $ 17,009,988 | $ 17,245,402 | $ 17,145,198 | $ 16,653,048 | $ 16,180,731 | $ 17,300,365 |
| | | | | | | | | | | | |
| ys in period | 92 | 92 | 92 | 92 | 91 | 92 | 92 | 90 | 90 | 89 | 92 |
| ly operating expense | $ 181,868 | $ 185,121 | $ 180,356 | $ 181,207 | $ 179,078 | $ 184,891 | $ 187,450 | $ 190,502 | $ 185,034 | $ 181,806 | $ 188,047 |
| | | | | | | | | | | | |
| ys cash on hand | 57.75 | 73.44 | 83.07 | 73.58 | 68.87 | 56.86 | 51.77 | 57.34 | 47.03 | 65.30 | 48.85 |

xcludes all restricted funds, e.g. bond reserve fund

# Tulare Local Health Care District
Refunding revenue bonds, series 2007 - continuing disclosure report
For the eleven months ended May 31, 2015, unaudited

|  | 2009-2010 | 2010-2011 | 2011-2012 | 2012-2013 | 2013-2014 | 2014-2015 |
|---|---|---|---|---|---|---|
| **HISTORICAL UTILIZATION STATISTICS** | | | | | | |
| Licensed beds | 112 | 112 | 112 | 112 | 112 | 112 |
| Available beds | 103 | 103 | 103 | 103 | 103 | 103 |
| Patient days | 22,098 | 22,268 | 21,040 | 18,310 | 14,422 | 13,532 |
| Discharges | 5,740 | 5,893 | 5,368 | 4,732 | 3,807 | 3,450 |
| Average daily census | 61 | 61 | 57 | 50 | 40 | 40 |
| Occupancy percentage (1) | 59% | 59% | 56% | 49% | 38% | 39% |
| Average length of stay in days | 3.85 | 3.78 | 3.92 | 3.87 | 3.79 | 3.92 |
| Emergency room visits | 33,024 | 31,612 | 31,356 | 30,753 | 31,188 | 32,680 |
| Outpatient visits (2) | 95,674 | 85,143 | 101,094 | 82,961 | 71,653 | 63,842 |
| Outpatient surgeries | 1,679 | 1,839 | 1,785 | 1,563 | 1,675 | 1,797 |
| | | | | | | |
| **SOURCES OF PATIENT SERVICE REVENUE** | | | | | | |
| Medicare | 35% | 35% | 34% | 34% | 30% | 34% |
| Medi-Cal | 33% | 39% | 34% | 34% | 42% | 43% |
| Commercial Insurance | 24% | 19% | 20% | 20% | 18% | 18% |
| Self Pay and All Other | 8% | 7% | 12% | 12% | 10% | 4% |
| | | | | | | |
| **OTHER STATISTICS** | | | | | | |
| Number of active medical staff | 87 | 89 | 113 | 90 | 92 | 77 |
| Number of employees | 591 | 535 | 573 | 587 | 550 | 536 |

(1) based on available beds

(2) Includes clinics, home health and referred visits. Excludes emergency and outpatient surgery visits

# Tulare Local Health Care District
### Refunding Revenue Bonds, Series 2007
### Long-Term Debt Service Coverage Ratio (DSCR) Computation
### For the eleven months ended May 31, 2015

Income Available For Debt Service

| | | |
|---|---|---|
| Increase in net assets | $ | 14,775,681 |
| | | |
| Add: | | |
|     Interest Expense | | 734,047 |
|     Depreciation | | 3,861,025 |
| Less: | | |
|     District Taxes Related to General | | |
|     Obligation Bonds Debt Service | | (5,576,900) |
| | | |
| Total Income Available For Debt Service | | 13,793,853 |
| | | |
| Maximum Annual Debt Service | $ | 2,744,112 |
| | | |
| Debt Service Coverage Ratio | | 6.0354 |

```
'CRT#  00001              Balance Sheet (Stmt Of Net Position)          TIME : 17:02:02
.. FORMAT  00001                          At                            DATE : 07/20/15
           c        ?                 JUNE 30, 2015                      PAGE: 00001
```

| | JUN 2015 This Year | JUN 2014 Last Year | Inc/(Dec) | Increase (Dec) % |
|---|---|---|---|---|
| rent Assets: | | | | |
| h and cash equivalents | $ 17,951,535 | $ 10,438,926 | 7,512,609 | 71.9 |
| . use assets avail for curr debt srvc | 4,401,087 | 7,389,395 | ( 2,988,308) | ( 40.4) |
| ient accounts receivable: | | | | |
| ss patient accounts receivable | 48,885,866 | 35,444,060 | 13,441,806 | 37.9 |
| .tractual allowances | ( 35,716,687) | ( 24,398,625) | ( 11,318,062) | 46.3 |
| vision for bad debt | ( 2,502,730) | ( 3,664,808) | 1,162,078 | ( 31.7) |
| . patient accounts receivable | 10,666,449 | 7,380,627 | 3,285,822 | 44.5 |
| er receivables & physician advances: | | | | |
| revenue receivable | 99,112 | 10,000 | 89,112 | 891.1 |
| cellaneous receivable | 6,156,083 | 4,438,569 | 1,717,514 | 38.6 |
| sician advances | 6,750 | 132,370 | ( 125,620) | ( 94.9) |
| al other receivables | 6,261,945 | 4,580,939 | 1,681,006 | 36.6 |
| entories | 1,238,000 | 961,952 | 276,048 | 28.6 |
| paid expenses & deposits | 635,589 | 391,964 | 243,625 | 62.1 |
| AL CURRENT ASSETS | 41,154,605 | 31,143,803 | 10,010,802 | 32.1 |
| ets limited as to use, long term: | | | | |
| bond construction fund | 0 | 1,177,474 | ( 1,177,474) | ( 100.0) |
| tricted trust funds, other | 8,676,189 | 5,106,225 | 3,569,964 | 69.9 |
| al ] use assets | 8,676,189 | 6,283,699 | 2,392,490 | 38.0 |
| ital assets: | | | | |
| d & land improvements | 3,301,871 | 3,301,871 | 0 | .0 |
| gs & bldg improvements | 43,402,724 | 43,025,029 | 377,695 | .8 |
| sehold improvements | 28,797 | 28,797 | 0 | .0 |
| or moveable equipment | 32,146,731 | 31,705,625 | 441,106 | 1.3 |
| struction in progress | 133,571,802 | 121,874,600 | 11,697,202 | 9.5 |
| ss capital assets | 212,451,925 | 199,935,922 | 12,516,003 | 6.2 |
| mulated depreciation | ( 57,970,434) | ( 53,930,110) | ( 4,040,344) | 7.4 |
| capital assets | 154,481,471 | 146,005,812 | 8,475,659 | 5.8 |
| i issuance costs & other assets | 966,442 | 1,158,734 | ( 192,292) | ( 16.5) |
| AL ASSETS | $ 205,278,707 | $ 184,592,048 | 20,686,659 | 11.2 |

Exhibit F, Page 126

```
                          HCS Consolidated
'ORT# 00001          Balance Sheet (Stmt Of Net Position)          TIME : 17:02:02
.. FORMAT  00001                    At                              DATE : 07/20/15
          '   '    '.            JUNE 30, 2015                       PAGE: 00002
```

|                                          | JUN 2015<br>This Year | JUN 2014<br>Last Year | Inc/(Dec) | Increase<br>(Dec) % |
|---|---|---|---|---|
| rent liabilities: |  |  |  |  |
| rent maturities of debt borrowings | $  2,246,422 | $  2,036,138 | (    210,284) | 10.3 |
| ounts payable | 11,664,542 | 4,754,544 | (  6,909,998) | 145.3 |
| er accrued liabilities | 2,385,348 | 321,423 | (  2,063,925) | 642.1 |
| rued payroll & related liabilities | 630,024 | 2,002,077 | 1,372,053 | (  68.5) |
| t-retiree health benefits | 0 | 66,000 | 66,000 | ( 100.0) |
| current 3rd party payor settlements | 1,152,627 | 1,624,789 | 472,162 | (  29.0) |
| f insurance program accrual | 926,165 | 980,638 | 54,473 | (   5.5) |
| AL CURRENT LIABILITIES | 19,005,128 | 11,785,609 | (  7,219,519) | 61.2 |
| g-term liabilities: |  |  |  |  |
| erred revenue | 9,273,649 | 8,842,645 | (    431,004) | 4.8 |
| t borrowings, net of curr maturities | 102,383,457 | 104,483,236 | 2,099,779 | (   2.0) |
| AL LIABILITIES | 130,662,234 | 125,111,490 | (  5,550,744) | 4.4 |
| position: |  |  |  |  |
| investment in capital assets | 38,956,046 | 40,663,912 | 1,707,866 | (   4.1) |
| tricted by bond indenture-debt srvc | 19,723,768 | 12,495,620 | (  7,228,148) | 57.8 |
| estricted | 1,292,987 | 2,144,350 | 851,363 | (  39.7) |
| income, corporate | 16,613,198 | 4,176,676 | ( 12,436,522) | 297.7 |
| AL NET POSITION | 76,585,999 | 59,480,558 | ( 17,105,441) | 28.7 |
| erco___ .y payable | (  1,969,525) | 0 | (  1,969,525) | .0 |
| al liabilities & net position | $ 205,278,708 | $ 184,592,048 | ( 20,686,660) | 11.2 |

Exhibit F, Page 127

TRMC CONSOLIDATED
Income Statement Year Over Year
For the month ended JUNE 30, 2015

REPORT# 00008
COL. FORMAT 00014

TIME : 17:03:03
DATE : 07/20/15
PAGE: 00001

| | CURRENT MONTH | | | | YEAR TO DATE | | |
|---|---|---|---|---|---|---|---|---|
| ...al | Prior year | Variance | % Var | Description | Actual | Prior year | Variance | % Var |
| | | | | **Patient Service Revenue:** | | | | |
| $ 3,670,149 | $ 3,808,680 | ($ 138,531) | ( 3.6) | Daily hospital services | $ 46,294,853 | $ 47,536,979 | ($ 1,242,126) | ( 2.6) |
| 6,020,220 | 4,752,154 | 1,268,066 | 26.7 | Inpatient ancillary services | 67,162,628 | 67,092,487 | 70,141 | .1 |
| 11,486,080 | 11,225,764 | 260,316 | 2.3 | Outpatient ancillary services | 139,956,457 | 131,905,676 | 8,050,781 | 6.1 |
| 21,176,449 | 19,786,598 | 1,389,851 | 7.0 | Gross patient revenue | 253,413,938 | 246,535,142 | 6,878,796 | 2.8 |
| | | | | **Deductions from revenue:** | | | | |
| ( 15,744,164) | ( 11,206,283) | ( 4,537,881) | ( 40.5) | Contractual allowances | ( 184,683,404) | ( 170,721,485) | ( 13,961,919) | ( 8.2) |
| 772,751 | 0 | 772,751 | .0 | Supplemental funds | 11,333,846 | 0 | 11,333,846 | .0 |
| ( 58,490) | ( 49,808) | ( 8,682) | ( 17.4) | Charity allowances | ( 223,009) | ( 960,090) | 737,081 | 76.8 |
| 161,859) | ( 265,775) | 103,916 | 39.1 | Provision for uncollectibles | ( 3,742,063) | ( 11,513,785) | 7,771,722 | 67.5 |
| ( 15,191,762) | ( 11,521,866) | ( 3,669,896) | ( 31.9) | Total deductions from revenue | ( 177,314,630) | ( 183,195,360) | 5,880,730 | 3.2 |
| 5,984,687 | 8,264,732 | ( 2,280,045) | ( 27.6) | Net patient service revenue | 76,099,308 | 63,339,782 | 12,759,526 | ( 20.1) |
| 212,032 | 308,790 | ( 96,758) | ( 31.3) | Other operating revenue | 2,203,471 | 3,713,136 | ( 1,509,665) | 40.7 |
| 6,196,719 | 8,573,522 | ( 2,376,803) | ( 27.7) | Total operating revenues | 78,302,779 | 67,052,918 | 11,249,861 | ( 16.8) |
| | | | | **Operating expenses:** | | | | |
| 12,643 | 1,750,571 | ( 1,737,928) | ( 99.3) | Salaries & wages | 7,850,107 | 22,982,604 | ( 15,132,497) | ( 65.8) |
| ( 116,624) | 680,320 | ( 796,944) | ( 117.1) | Employee benefits | 2,855,209 | 8,692,831 | ( 5,837,622) | ( 67.2) |
| 620,824 | 463,983 | 156,841 | 33.8 | Professional fees | 5,329,349 | 3,466,426 | 1,862,914 | 53.7 |
| 495,498 | 406,625 | 88,873 | 21.9 | Professional fees, physicians | 5,093,311 | 4,631,570 | 461,741 | 10.0 |
| 843,137 | 799,557 | 43,580 | 5.5 | Supplies | 9,940,082 | 8,738,486 | 1,201,596 | 13.8 |
| 2,851,026 | 1,062,340 | 1,788,686 | 168.4 | Purchased services | 30,351,573 | 12,700,453 | 17,651,120 | 139.0 |
| 20,823 | 34,317 | ( 13,494) | ( 39.3) | Repairs & maintenance | 333,129 | 354,567 | ( 21,438) | ( 6.0) |
| 212,229 | 178,722 | 33,507 | 18.7 | Utilities & phone | 1,890,388 | 1,645,542 | 244,846 | 14.9 |
| 62,405 | 70,379 | ( 7,974) | ( 11.3) | Building & equipment rental | 778,443 | 802,266 | ( 23,823) | ( 3.0) |
| 117,060 | 85,179 | 31,881 | 37.4 | Insurance | 1,006,918 | 790,171 | 216,747 | 27.4 |
| 340,945 | 283,615 | 57,330 | 20.2 | Depreciation & amortization | 4,201,969 | 4,402,185 | ( 200,216) | ( 4.5) |
| 63,503 | 88,904 | ( 25,401) | ( 28.6) | Other operating expenses | 1,105,649 | 917,839 | 187,810 | 20.5 |
| 5,523,469 | 5,904,512 | ( 381,043) | ( 6.5) | Total operating expenses | 70,736,118 | 70,124,940 | 611,178 | .9 |
| $ 673,250 | $ 2,669,010 | ($ 1,995,760) | 74.8 | Operating income | $ 7,566,661 | ($ 3,072,022) | $ 10,638,683 | 346.3 |

```
                                    TRMC CONSOLIDATED
REPORT# 00008                    Income Statement Year Over Year              TIME : 17:03:03
COL. FORMAT  00014              For the month ended JUNE 30, 2015              DATE : 07/20/15
                                                                              PAGE: 00002
```

| Actual | Prior year | Variance | % Var | Description | Actual | Prior year | Variance | % Var |
|---|---|---|---|---|---|---|---|---|
| | | | | Nonoperating revenues (expenses) | | | | |
| $ 177,343 | $ 110,532 | $ 66,811 | ( 60.4) | District tax revenues | $ 1,729,343 | $ 1,584,532 | $ 144,811 | ( 9.1) |
| 18,746 | ( 3,141) | 21,887 | 696.8 | Investment income | ( 7,918) | 86,210 | ( 94,128) | 109.2 |
| ( 64,631) | ( 66,234) | 1,603 | 2.4 | Interest expense | ( 798,678) | ( 808,491) | 9,813 | 1.2 |
| 525,442 | 22,761 | 502,681 | ( 2208.5) | Grants & contributions | 2,039,528 | 295,404 | 1,744,124 | ( 590.4) |
| 0 | 0 | 0 | .0 | Other income | 0 | 0 | 0 | .0 |
| 656,900 | 63,919 | 592,982 | ( 927.7) | Total non-op revenue (expense) | 2,962,275 | 1,157,655 | 1,804,620 | ( 155.9) |
| 1,330,150 | 2,732,920 | ( 1,402,778) | 51.3 | Excess of revenues over exps. | 10,528,936 | ( 1,914,367) | 12,443,303 | 650.0 |
| 507,363 | 507,175 | 188 | .0 | District taxes for GO bond deb | 6,084,263 | 6,091,045 | ( 6,782) | .1 |
| 0 | 0 | 0 | .0 | Intergovernmental transfers | 0 | 0 | 0 | .0 |
| $ 1,837,513 | $ 3,240,103 | ($ 1,402,590) | 43.3 | Increase in net position | $ 16,613,199 | $ 4,176,678 | $ 12,436,521 | ( 297.8) |
| | | | | Statistics: | | | | |
| 1,145 | 1,163 | ( 18) | ( 1.5) | Patient days | 14,677 | 14,422 | 255 | 1.8 |
| 30 | 39 | ( 1) | ( 2.6) | Avg daily census | 40 | 40 | 0 | .0 |
| 2,502 | 2,688 | ( 186) | ( 6.9) | Adjusted patient days | 32,720 | 31,037 | 1,683 | 5.4 |
| 278 | 288 | ( 10) | ( 3.5) | Admissions | 3,736 | 3,786 | ( 50) | ( 1.3) |
| 276 | 296 | ( 20) | ( 6.8) | Discharges | 3,726 | 3,807 | ( 81) | ( 2.1) |
| 4.15 | 3.93 | .22 | 5.59 | Avg LOS | 3.94 | 3.79 | .15 | ( 83.11) |
| 3,873 | 3,185 | 688 | ( 21.6) | Gross IP rev / APD | 3,469 | 3,693 | ( 225) | 18.8 |
| 211 | 234 | ( 23) | ( 9.8) | Surgeries | 2,665 | 2,718 | ( 53) | ( 1.9) |
| 1,724 | 1,847 | ( 123) | ( 6.7) | Clinic visits | 19,917 | 21,335 | ( 1,418) | ( 6.6) |
| 1,134 | 1,047 | 87 | ( 8.3) | Gross OP rev / OP visit | 1,099 | 1,069 | 30 | ( 188.8) |
| 2,477 | 3,190 | ( 713) | 22.4 | Oper revenue / APD | 2,393 | 2,160 | 233 | ( 309.4) |
| 2,208 | 2,197 | 11 | .5 | Oper expense / APD | 2,162 | 2,259 | ( 97) | 16.1 |
| 2,694 | 2,553 | 141 | 5.5 | ER visits | 35,374 | 31,188 | 4,186 | 13.4 |
| 4.66 | 4.24 | .42 | -- | Pd FTEs / APD | -- | -- | ( 4) | .0 |
| 4.14 | 3.63 | .51 | -- | Wk FTEs / APD | -- | -- | ( 5) | .0 |

## Tulare Regional Medical Center
### Financial Statistics Summary
### June 30, 2015

| | Current Month | | | | Year-to-Date | | | | Prior year YTD | Increase/ (Decrease) | % Chg. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Budget | Variance | % Var. | Actual | Budget | Variance | % Var. | | | |
| **Inpatient Utilization** | | | | | | | | | | | |
| Acute Patient Days | 1,145 | 1,377 | (232) | -17% | 14,677 | 16,489 | (1,812) | -11% | 14,366 | 311 | 2% |
| Discharges | 276 | 380 | (104) | -27% | 3,726 | 4,762 | (1,036) | -22% | 3,807 | (81) | -2% |
| Average Length of Stay | 4.15 | 3.62 | 0.52 | 14% | 3.94 | 3.46 | 0.48 | 14% | 3.79 | 0.15 | 4% |
| **Discharges** | | | | | | | | | | | |
| Medicare | 80 | 85 | (5) | -6% | 1,122 | 1,223 | (101) | -8% | 919 | 203 | 22% |
| Medicare MC | 20 | 15 | 5 | 33% | 169 | 180 | (11) | -6% | 116 | 53 | 46% |
| Medi-Cal | 39 | 52 | (13) | -25% | 576 | 624 | (48) | -8% | 738 | (162) | -22% |
| Medi-Cal MC | 97 | 124 | (27) | -22% | 1,304 | 1,488 | (184) | -12% | 1,266 | 38 | 3% |
| County | - | 16 | (16) | -100% | - | 196 | (196) | -100% | 79 | (79) | -100% |
| HMO/PPO | 30 | 44 | (14) | -32% | 452 | 528 | (76) | -14% | 490 | (38) | -8% |
| Self-Pay | 4 | 19 | (15) | -79% | 38 | 228 | (190) | -83% | 138 | (100) | -72% |
| Other | 6 | 25 | (19) | -76% | 65 | 295 | (230) | -78% | 61 | 4 | 7% |
| | 276 | 380 | (104) | -27% | 3,726 | 4,762 | (1,036) | -22% | 3,807 | (81) | -2% |
| **Case Mix Index** | | | | | | | | | | | |
| Medicare | 1.7933 | 1.2400 | 0.5533 | 45% | 1.4005 | 1.2400 | 0.1605 | 13% | 1.4427 | (0.0422) | -3% |
| Medi-Cal | 0.8148 | 0.8000 | 0.0148 | 2% | 0.8434 | 0.8000 | 0.0434 | 5% | 0.8511 | (0.0077) | -1% |
| Overall | 1.1373 | 0.9350 | 0.2023 | 22% | 1.0176 | 0.9350 | 0.0825 | 9% | 0.9957 | 0.0218 | 2% |
| **Newborn Deliveries** | 70 | 103 | (33) | -32% | 987 | 1,236 | (249) | -20% | 1,167 | (180) | -15% |
| **Observation** | | | | | | | | | | | |
| Patients | 99 | 124 | (25) | -20% | 1,549 | 1,604 | (55) | -3% | 1,789 | (240) | -13% |
| Hours | 2,407 | 2,353 | 54 | 2% | 34,750 | 28,287 | 6,463 | 23% | 41,508 | (6,758) | -16% |
| Equivalent days | 100 | 98 | 2 | 2% | 1,447 | 1,180 | 267 | 23% | 1,732 | (285) | -16% |
| **Surgery Services** | | | | | | | | | | | |
| Inpatient Cases | 66 | 118 | (52) | -44% | 723 | 1,333 | (610) | -46% | 1,010 | (287) | -28% |
| Outpatient Cases | 145 | 132 | 13 | 10% | 1,942 | 1,501 | 441 | 29% | 1,715 | 227 | 13% |
| Total surgeries | 211 | 250 | (39) | -16% | 2,665 | 2,834 | (169) | -6% | 2,725 | (60) | -2% |
| **Emergency Room** | | | | | | | | | | | |
| Visits | 2,694 | 2,483 | 211 | 8% | 35,374 | 30,717 | 4,657 | 15% | 31,188 | 4,186 | 13% |
| Admits | 155 | 216 | (61) | -28% | 2,166 | 2,664 | (498) | -19% | 2,053 | 113 | 6% |

C:\Documents ar.      ings\lrosen\Local Settings\Temporary Internet Files\Content.Outlook\NC6OTA3N\JE    35 stats

# Tulare Regional Medical Center

Financial Statistics Summary

June 30, 2015

| | Current Month | | | | Year-to-Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Budget | Variance | % Var. | Actual | Budget | Variance | % Var. | Prior year YTD | Increase/ (Decrease) | % Chg. |
| **Ancillary Services** | | | | | | | | | | | |
| **Inpatient** | | | | | | | | | | | |
| Imaging Procedures | 712 | 751 | (39) | -5% | 7,982 | 8,732 | (750) | -9% | 7,348 | 634 | 9% |
| Lab Tests | 9,890 | 11,156 | (1,266) | -11% | 113,066 | 124,787 | (11,721) | -9% | 102,964 | 10,102 | 10% |
| **Outpatient** | | | | | | | | | | | |
| Endoscopy Procedures | 129 | 120 | 9 | 8% | 1,826 | 1,596 | 230 | 14% | 1,670 | 156 | 9% |
| Lab Tests | 16,224 | 18,750 | (2,526) | -13% | 193,557 | 209,700 | (16,143) | -8% | 201,119 | (7,562) | -4% |
| Diag. radiology procedures | 2,132 | 1,955 | 177 | 9% | 27,704 | 23,536 | 4,168 | 18% | 25,363 | 2,341 | 9% |
| Nuclear medicine procedures | 21 | 31 | (10) | -32% | 304 | 382 | (78) | -20% | 271 | 33 | 12% |
| MRI procedures | 112 | 108 | 4 | 4% | 1,331 | 1,368 | (37) | -3% | 1,074 | 257 | 24% |
| Ultrasound procedures | 643 | 580 | 63 | 11% | 6,912 | 6,881 | 31 | 0% | 6,589 | 323 | 5% |
| CT procedures | 464 | 481 | (17) | -4% | 5,062 | 5,026 | 36 | 1% | 4,661 | 401 | 9% |
| **Clinics** | | | | | | | | | | | |
| Primary Care Visits | 1,256 | 1,869 | (613) | -33% | 13,292 | 22,805 | (9,513) | -42% | 14,261 | (969) | -7% |
| Specialty Care Visits | 471 | 511 | (40) | -8% | 6,628 | 6,235 | 393 | 6% | 7,340 | (712) | -10% |
| **Home Health** | | | | | | | | | | | |
| Visits | 239 | 386 | (147) | -38% | 3,115 | 4,619 | (1,504) | -33% | 3,696 | (581) | -16% |
| **Staffing** | | | | | | | | | | | |
| Paid FTE's | 389 | 415 | (27) | -6% | 395 | 415 | (20) | -5% | 404 | (8) | -2% |
| Productive FTE's | 345 | 374 | (29) | -8% | 335 | 374 | (39) | -10% | 350 | (15) | -4% |
| Paid FTE's/AOB | 4.66 | 4.53 | 0.13 | 3% | 3.31 | 3.45 | (0.14) | -4% | 3.56 | (0.26) | -7% |
| Worked FTE's/AOB | 4.14 | 4.08 | 0.06 | 1% | 2.80 | 3.13 | (0.33) | -10% | 2.93 | (0.13) | -4% |
| **Revenue/Costs** | | | | | | | | | | | |
| Op Revenue/Adjusted Discharge | 11,872 | 7,443 | 4,429 | 59% | 9,553 | 6,958 | 2,595 | 37% | 8,110 | 1,443 | 18% |
| Cost/Adjusted Discharge | 9,160 | 7,563 | 1,597 | 21% | 8,522 | 7,208 | 1,314 | 18% | 8,564 | (42) | 0% |
| Net Operating Gain/(Loss) $ | 1,635,218 | (90,651) | 1,725,869 | 2004% | 8,408,204 | (2,374,008) | 10,782,212 | -454% | (3,933,791) | 12,341,995 | 414% |
| Net Operating Gain/(Loss) % | 22.8% | -1.6% | 24.4% | 1623% | 10.6% | -3.6% | 14.2% | -396% | -5.9% | 16.6% | 379% |