8
WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Chapter 9 Counsel

MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone: (559) 433-1300
Facsimile: (559) 433-2300
E-mail: mandy.jeffcoach@mccormickbarstow.com

District Counsel

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,**<br><br>Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry St.<br>Tulare, CA 93274 | CASE NO. 17-13797<br><br>DC No.: WW-4<br><br>Chapter 9<br><br>Date: N/A<br>Time: N/A<br>Place: 2500 Tulare Street<br>        Fresno, CA 93721<br>        Courtroom 13<br>Judge: Honorable René Lastreto II |

**DECLARATION OF KEVIN NORTHCRAFT IN SUPPORT OF STATEMENT OF QUALIFICATIONS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BY TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER**

I, Kevin B. Northcraft, hereby declare and represent as follows:

1. I am currently the elected Chairman of the Board of Directors of Tulare Local Healthcare District, dba Tulare Regional Medical Center ("TRMC" or "District").

2. I am a retired public administrator. I was the City Manager of Tulare, California from 1995 to 2005. I am a voter and resident of the District.

3. I am informed and believe that TRMC is a public agency, formed in 1947 under the State of California Local Healthcare District Law.

4. As the Chairman of the Board I am familiar with the eligibility requirements of Chapter 9.

5. I have personally reviewed the Memorandum in Support of the Statement of Qualifications filed by TRMC and believe the facts stated therein are true and correct.

6. As of the date of this Declaration, the Board of Directors of TRMC ("Board") is comprised of five members, elected by the District, being myself, Mike Jamaica, Senovia Gutierrez, and Xavier Avila. There is one vacant seat. As discussed more fully below, Gutierrez was elected contemporaneously with the voter recall of Parmod Kumar, M.D. on July 11, 2017, and Avila was appointed upon the resignation of Richard Torrez.

7. TRMC's financial struggles as well as the governance of TRMC has been the subject of a great deal of controversy at the center of which lies a failure to complete construction of a hospital expansion and the misuse of tax payer dollars expended for this project (not all required audits have been made as to the District's use or misuse of the bond sale proceeds), a highly controversial and very expensive management agreement between TRMC and Healthcare Conglomerate Associates, LLC ("HCCA") which is the subject of a motion to reject, a lack of transparency regarding the financial transactions entered into by TRMC while under HCCA's control, allegiances to HCCA by former directors, HCCA's interference with the governance of the District and etc. Details of these controversies are the subject of a great number of pleadings already filed with this Court and will not be repeated herein except as needed for context.

///

8.　　I became a member of the Board in November 2016 as a result of a widespread community effort to infuse transparency and community control over TRMC. Attached collectively as Exhibit A are true and correct copies of the following news articles relating to this subject: Luis Hernandez, *Property Tax Sought to Finish Hospital's Expansion Tower*, Visalia Times Delta, May 18, 2015; Ashleigh Panoo, *Tulare Hospital District Voters Soundly Reject Bond Measure to Finish Wing*, The Fresno Bee, August 30, 2016; Jim Houck, *TRMC's Secret Loan*, Visalia Times-Delta, December 16, 2016.

9.　　Along with my election, this widespread community groundswell resulted in the election of Mike Jamaica in November 2016 as well as the election of Senovia Gutierrez on July 11, 2017. Myself, Jamaica, and Gutierrez are philosophically aligned insofar as seeking to regain control over TRMC's finances and governance. The subject Chapter 9 case was ultimately filed in furtherance of this goal.

10.　　As discussed above, Gutierrez's election on July 11, 2017 was contemporaneous with the voter recall of Parmod Kumar, M.D., who had served on the Board since 1994 and was widely viewed by me as the leader of the faction "friendly" to HCCA. Attached collectively as Exhibit B are true and correct copies of the following news articles: Jim Houck, *How HCCA Took Over Tulare Hospital*, Visalia Times-Delta, August 2, 2016; and Juan Villa, *Kumar: A Doctor's Obsession and Power*, Visalia Times-Delta, August 5, 2016.

11.　　TRMC had been faced with considering various alternatives for regaining control over its destiny, including a Chapter 9 bankruptcy filing, for quite some time due to escalating financial challenges. These challenges were amplified because of the 15 year management contract with HCCA entered into by a prior Board in May 2014 ("HCCA Contract"). The HCCA Contract essentially gave control over all of TRMC's functions, operations and finances to HCCA and HCCA thereafter made it nearly impossible for the Board to receive meaningful financial information regarding TRMC, despite numerous requests.

12. By way of understanding, the HCCA Contract obligates the District to pay HCCA roughly $3 million for management and, in addition, another $5-7 million for the 30% override on employee compensation, which is very substantially above market for a District of our size.

13. The Board's concern with HCCA's lack of transparency in providing financial information was compounded by the numerous lawsuits filed against TRMC for nonpayment, as well as widely reported cash shortages resulting in employee paychecks not being honored due to lack of funds. Attached collectively as Exhibit C are true and correct copies of the dockets from the following civil matters: <u>Phillips Healthcare v. Tulare Regional Medical Center</u>, Tulare County Superior Court Case No. VCU271244; <u>Graham Prewett, Inc. v. Tulare Local Healthcare District</u>, Tulare County Superior Court Case No. VCU269517; and <u>Firstsource Solutions, LLC v. Tulare Regional Medical Center</u>, U.S. District Court, Eastern District, Case No. 1:15-cv-01136, as well as a the following news article: Dave Adalian, *Paychecks Bounce at Tulare Local Healthcare District*, www.ourvalleyvoice.com, July 26, 2017.

14. I was further alarmed at learning Southern California Edison, TRMC's utility provider, had issued a five-day shut-off notice to TRMC due to non-payment of utility bills.

15. However, the Board's efforts implement other alternatives or to file a Chapter 9 case in response to the above concerns had been blocked by HCCA as illustrated by HCCA's refusal to recognize Senovia Gutierrez as a "seated" director until September 27, 2017, despite her election to the Board on July 11, 2017. I believe the actions of HCCA to block Director Gutierrez was motivated by a secret effort to borrow money against the District's assets despite the Board's withdrawal of authority.

16. It was not until after a lawsuit was filed by the Tulare County District Attorney asking the Court to enter an order mandating then Director Torrez to officially "seat" Gutierrez pursuant to the election results that HCCA backed off.

///

17. With Gutierrez being seated the new Board majority was able to take the steps necessary evaluate the options and then to adopt the declaration of fiscal emergency leading to filing this Chapter 9 case. We believe that all Board actions and resolutions after Gutierrez' election have been valid and proper.

18. In considering Chapter 9, the Board was driven first and foremost by its concern for the community, the employees, creditors and in providing quality healthcare for the people of the District. This concern was heightened when HCCA began talk of unilaterally shutting down the hospital due to a lack of funds and this intensified on September 27, 2017 at which time HCCA's (and TRMC's) CFO, Alan Germany, publicly stated that TRMC was "in dire circumstances" and "out of money." I was in attendance at the September 27, 2017 when the CFO admitted this, and he admitted that the patient census was very low. See Exhibit D which is a copy of the Power Point presentation Mr. Germany presented to the Board at the September 27, 2017 meeting.

19. At the meeting held on September 27, 2017, Dr. Benveezi also made remarks and the CFO was in attendance. In his remarks Dr. Benveezi made no mention of any details or remarks as to any loan purportedly arranged by HCCA. HCCA did not list a loan discussion or approval on the September 27, 2017 it prepared, which is required for the board to take any action. HCCA clearly had no intent to provide the board with any option other than shutting down. When Dr. Benveezi requested an emergency meeting the following day, we scheduled one for September 29, 2017 and listed a possible loan as an agenda item. We did not know when we rushed to set up this emergency meeting it was Yom Kippur, and understand why Dr. Benveezi was not present. However, HCCA has more than 500 employees and multiple lawyers, yet none attended to provide the loan information and recommendation. Dr. Benveezi said the loan was so urgent it required a special meeting in his correspondence just a day before.

20. As a result, at a public meeting on September 29, 2017 the Board, after hearing from the community, declared a fiscal emergency.

21. I am aware that TRMC must qualify as a Chapter 9 debtor. I am further aware that one of the requirements in qualifying as a Chapter 9 debtor is that TRMC be considered insolvent. Although the Board did not have access to the actual amount of money in TRMC's bank accounts, we were informed by HCCA and believed that TRMC was "in dire condition" and "out of money" as of September 27, 2017. We were further told by HCCA numerous times in September 2017 that the hospital would need to be shut down because it was unable to pay its bills. Considering that TRMC was reportedly out of money as of the Petition Date according to HCCA, and considering payroll expenses alone which were due to be paid on October 10, 2017, I am informed and believe that TRMC was insolvent as of the Petition Date because it was not able to pay its bills, for example payroll, as they became due.

22. It should be noted that before deciding to file Chapter 9 the District did consider other alternatives including state court litigation to terminate contract but concluded this was less advantageous than a Chapter 9 proceeding.

23. I understand that in order to qualify as a Chapter 9 Debtor TRMC must desire to effect a plan to adjust its debts. The Board does in fact desire to pay TRMC's creditors. By the filing of this Chapter 9 petition, TRMC is not stalling but rather is being proactive in regaining control over its assets and operations so the elected board has control over its destiny. TRMC wishes to reorganize and intends to propose a plan of adjustment within such time as is fixed by the Court so that creditors can be paid.

24. I am also informed that TRMC must qualify as a Chapter 9 debtor either through prior negotiation with its creditors, unless such negotiation is impracticable, or by establishing that TRMC believed a creditor may attempt to obtain a transfer of TRMC's assets just prior to a Chapter 9 filing.

25. Here, it was impossible for TRMC to enter into negotiations with its creditors because TRMC did not even know who its creditors were. HCCA would not tell us who was owed money by the District. We were in the dark. Because of the sweeping nature of the HCCA Contract as described above, and because of HCCA's

unwillingness to comply with the Board's numerous requests for financial information dating back to January 2017, TRMC did not have any meaningful information regarding the identity of its creditors, how many there were, how much they were owed, or the nature of underlying creditor claims. In fact, it was only after filing the Chapter 9 case that HCCA provided finally TRMC with any information regarding creditors, by providing a partial list of over 600 creditors. Therefore, TRMC was not able to engage in negotiation with its creditors before electing to file Chapter 9. It was simply impracticable.

26. Further, I was legitimately alarmed of a pre-filing transfer of its assets when it discovered that Leasing Innovations, Inc. had filed two UCC-1 financing statements on September 5, 2017 (after authority to borrow had been revoked), indicating that HCCA had apparently granted or intended to grant a security interest on TRMC's behalf in TRMC's assets. Attached as Exhibit E is a true and correct copy of the page of the UCC search performed with the California Secretary of State showing these two UCC-1 financing statements filed on September 5, 2017. This was very concerning to me and I believed HCCA was ignoring its lack of authority to borrow money and I believed HCCA was attempting to obtain or make a preferential transfer.

27. After the Petition was filed I learned that HCCA had, in fact, signed unauthorized promissory notes to itself for over $10,000,000 and recorded a deed of trust against one of the District's real property. Attached as Exhibit F is a true and correct copy of the deed of trust recorded by HCCA on September 28, 2017.

///
///
///
///
///
///
///

28. Given the unfavorable contract, HCCA's unwillingness to provide meaningful financial information to the Board and what I consider to be mismanagement of the District, I believe TRMC was justified in filing Chapter 9 to regain control and this has been done in good faith.

I am over the age of 18 and if I were called as a witness in connection with this proceeding I would and could testify as is set out in this declaration. I so declare under penalty of perjury this day of October 26, 2017 at Tulare, California.

Kevin B. Northcraft