Marsha E. Barr-Fernandez, Esq. (SBN 200896)
James Bulger, Esq. (SBN 290126)
**HEIMBERG BARR, LLP**
800 West Sixth Street, Suite 1500
Los Angeles, California 90017
Telephone: (213) 213-1500
Facsimile: (213) 213-1520
mbarr@heimbergbarr.com

Steven L. Saldo, Esq. (SBN 116177)
Tyler B. Saldo, Esq. (SBN 277906)
**SALDO LAW GROUP**
1042 Palm Street, Second Floor
San Luis Obispo, California 93401
Telephone: (805) 547-0700
Facsimile: (805) 547-0754

Attorneys for Movants JOHN TORREZ III and BERNADETTE TORREZ

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVSION

| | |
|---|---|
| In re:<br><br>TULARE LOCAL HEALTHCARE DISTRICT dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor. | Chapter 9<br>Case No.: 17-13797<br><br>DC No.: JAB-1<br><br>**MOTION FOR RELIEF FROM AUTOMATIC STAY TO ALLOW STATE ACTION TO PROCEED UNDER 11 U.S.C. § 362**<br><br><br>DATE: November 30, 2017<br>TIME: 9:30 a.m.<br>JUDGE: Hon. Rene Lastreto II<br>PLACE: 2500 Tulare Street<br>     Fresno, CA 93721<br>     Dept. B Courtroom 13, 5th Fr |

1

## MOTION FOR RELIEF FROM AUTOMATIC STAY

John Torrez III and Bernadette Torrez ("Movants" or "Plaintiffs") are the plaintiffs in a California civil action filed September 22, 2017, against the Debtor, Tulare Local Healthcare District dba Tulare Regional Medical Center ("TRMC" or the "Debtor") and three other defendants (Civil Action No. VCU 268786, the "State Action"). The State Action is captioned *John Torrez III and Bernadette Torrez vs. Tulare Local Healthcare District dba Tulare Regional Medical Center, Parmod Kumar, M.D., Homayoun Sohrabi, M.D., Marc Martinez, M.D. and Does 1 through 100*, and is pending in the Superior Court for the State of California for the County of Tulare. (Declaration of James Bulger ("Bulger Decl.") at ¶ 2.) A true and correct copy of Movants' Complaint is attached to the Bulger Decl. as Exhibit "1" and incorporated herein by reference. (Bulger Decl., at ¶ 3.)

Due to the negligence of TRMC and the other defendants, Mr. Torrez is a quadriplegic who requires assistance for all activities of daily living. His medical bills and costs for his care are large and growing by the day. His family does not have the money or resources to provide him with what he needs. So long as the automatic stay continues to apply to the State Action, Mr. Torrez will continue to suffer before he is unable to pursue his rights under state law in state court. Good cause therefore exists to lift the stay. Since Plaintiffs are seeking recovery solely from TRMC's risk sharing pool and/or from other non-debtor defendants (i.e., not from property of the estate), the balance of the harms weighs heavily in favor of lifting the automatic stay to allow the State Action to proceed.

## I.      JURISDICTION AND BACKGROUND

### A. Jurisdiction

Jurisdiction exists under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1408. The District Court for the Eastern District of California has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. §157(a) and United States District Court, Eastern District of California General Orders 182 and 223. This is

1  a core proceeding within the meaning of 28 U. S. C. §157(b)(2)(G). This is a contested

2  matter under F.R.B.P. Rule 9014. This motion is made pursuant to 11 U.S.C. §362 (d)(1)

3  and LBR 4001-1 and 9014-1(f)(2).

4  **B.  State Action**

5      In the State Action, the Plaintiffs allege, among other things, that the

6  Defendant/Debtor failed to diagnose and treat an epidural abscess in Plaintiff/Movant

7  John Torrez III's cervical spine, which caused Mr. Torrez to suffer severe and permanent

8  damage, including quadriplegia. (Bulger Decl., at ¶ 4.) Specifically, on March 14, 2016,

9  Mr. Torrez presented to the office of Defendant Parmod Kumar, M.D. complaining of

10  neck pain and was found to have motor weakness of the left upper extremity. Dr. Kumar

11  admitted Plaintiff to Defendant/Debtor TRMC at approximately 7:00 p.m. and a STAT

12  MRI of the cervical spine was performed that evening. The MRI revealed a small fluid

13  collection on the right anterolateral aspect of the spinal canal extending from the C5-C6

14  level to the superior aspect of C7 which was suspicious for epidural abscess. This

15  constituted a neurosurgical emergency. Despite these findings and the fact that TRMC

16  did not have neurosurgical capacity, Dr. Kumar and the employees, agents, and

17  representatives of TRMC did not take steps to manage or treat the epidural abscess at that

18  time and did not take steps to have Mr. Torrez immediately transferred to a hospital with

19  neurosurgical capacity. (Bulger Decl., at ¶ 5.)

20      From March 14, 2016 to March 16, 2016, Mr. Torrez remained a patient at TRMC.

21  During that time, his neurological condition was allowed to deteriorate until he became

22  paralyzed. As a result of the negligence of Defendants, including TRMC, Mr. Torrez

23  suffered severe and permanent damage, including but not limited to paralysis. He

24  continues to receive treatment and, among other things, will require 24/7 assistance with

25  activities of daily living for the rest of his life. (Bulger Decl., at ¶ 6.)

26  **C.  Bankruptcy Case**

27      On October 2, 2017, the Debtor/Defendant TRMC filed for protection under

28  chapter 9 of the United States Bankruptcy Code, which case was assigned *Case No. 17-*

1    *13797* by this United States Bankruptcy Court Eastern District of California. Movants

2    received notice of the automatic stay on or about October 10, 2017. (Bulger Decl., at ¶

3    7.) On October 26, 2017, the Court in the State Action found that the claims against the

4    named Defendants, other than the bankruptcy debtor, are so inextricably interwoven with

5    the claims against TRMC that the automatic stay applies to all parties. (Exhibit "2;"

6    Bulger Decl., at ¶ 8.)

7    **II.    LEGAL ARGUMENT**

8    **A. Automatic stay may be lifted on showing of cause**

9         It is well known that when a Debtor files for bankruptcy the filing triggers an

10   automatic stay of all actions against it, including civil lawsuits. On a showing of good

11   cause, the Bankruptcy Court may grant relief from the automatic stay to allow a lawsuit

12   to continue against the Debtor. 11 U.S.C. §362(d)(1). The party seeking to lift the stay

13   has the initial burden to establish a prima facie case that cause exists for the relief under

14   Section 362(d)(1). See *In re Duvar Apt, Inc.*, 205 B.R. 196, 200 (9th 23 Cir. BAP 1996).

15   Once a prima facie case has been established, the burden shifts to the debtor to show that

16   relief from the stay is not warranted. See 11 U.S.C. 362(g)(2); *In re Sonnax Indus. Inc.*,

17   907 F.2d 1280, 1285 (2d Cir. 1990).

18        "What constitutes 'cause' for granting relief from the automatic stay is decided on

19   a case-by-case basis." (*In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) citing

20   *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th

21   Cir.1990); see also *Piombo Corp. v. Castlerock Props. (In re Castlerock Props.)*, 781

22   F.2d 159, 163 (9th Cir.1986).) In deciding whether to grant relief from the automatic stay

23   to allow pending litigation to continue in another forum, the Ninth Circuit has adopted

24   the "Curtis" factors articulated in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr.D.Utah

25   1984), and adopted by the bankruptcy court in *Truebro, Inc. v. Plumberex Specialty*

26   *Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 559–60

27   (Bankr.C.D.Cal.2004) (*In re Kronemyer*, 405 B.R. at 921.)

28   ///

**B. *Curtis* factors favor lifting stay so that State Action may continue**

The *Curtis* factors, and a brief summary of their application herein, are as follows:

(1) Whether the relief will result in a partial or complete resolution of the issues. **[The State Action is a negligence and loss of consortium case under California law, resolution of which will resolve all of the issues between Movants and TRMC (Bulger Decl. at ¶10.)]**

(2) The lack of any connection with or interference with the bankruptcy case. **[According to the Debtor, the focus of the Debtor's bankruptcy is its financial struggle with Healthcare Conglomerate Associates, LLC ("HCCA"). The State Action is based on the care and treatment Mr. Torrez received. The State Action does not involve or implicate the Debtor's interactions with HCCA. Discovery in the State Action will involve issues not connected to HCCA or the Debtor's finances (Bulger Decl. at ¶ 11.)]**

(3) Whether the foreign proceeding involves the debtor as a fiduciary. **[Not applicable. The State Action involves TRMC as a principal and for its direct liability, not as a fiduciary (Bulger Decl. at ¶ 12.)]**

(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. **[Not applicable. The California Superior Court has the expertise to hear cases of negligence and loss of consortium under California law.]**

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. **[TRMC is a participating member of a risk management joint powers authority which has pooling risks among similar healthcare facilities. TRMC has disclosed in discovery in the State Action that the pool has a $10 million limit of liability. (Exhibit "3;" Bulger Decl. at ¶ 12.)]**

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. **[Not applicable. TRMC is one of four defendants in the State Action.]**

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. **[Litigation in the State Action will have no effect on TRMC's creditors, the creditors' committee or any other interested parties. The Movants are seeking to recover solely from TRMC's interest in the BETA pool and not directly from TRMC assets. If TRMC is required to pay a deductible, such payment would result in an unsecured claim which would be administered alongside other general unsecured claims in the bankruptcy. To the extent TRMC employees' and/or agents' time is required for depositions, etc., in the State Action, such requirements will be minimal and will not impact the bankruptcy administration in any meaningful way.]**

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). **[To the extent Movants obtain a judgment in the State Action it will not be subject to Section 510(c). There are no allegations that any Plaintiff has engaged in inequitable conduct and no basis for any such allegations (Bulger Decl. at ¶ 14.)]**

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). **[To the extent a judgment issued against TRMC and collection is not satisfied through BETA, no avoidable lien would be created on any estate assets.]**

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties. **[There are no bankruptcy issues involved in the State Action. The issues in the State Action are California tort claims. The California State Court is best positioned to deal with such claims. A case has been filed, all parties have already incurred expenses and discovery is underway. All parties to the State Action are represented by experienced counsel who typically practice in state court. (Bulger Decl. at ¶ 15.) The Bankruptcy Court cannot liquidate or estimate Movants' claims without consent.]**

1    (11) Whether the foreign proceedings have progressed to the point where the

2    parties are prepared for trial. **[Trial is scheduled for September 2018. (Bulger Decl. at**

3    **¶ 16.) Although the parties are not yet prepared for trial, they have been conducting**

4    **discovery with this trial date in mind.]**

5    (12) The impact of the stay on the parties and the "balance of hurt." **[The balance**

6    **of hurt strongly favors lifting the automatic stay. Plaintiff John Torrez III is a**

7    **quadriplegic. He requires assistance with all activities of daily living and he and his**

8    **family do not have the financial means to properly care for him. His medical bills**

9    **are both significant and mounting. If he is forced to wait until resolution of TRMC's**

10   **bankruptcy, a process that could take many years, before continuing with his own**

11   **litigation, which will also take many more months if not years, he will continue to**

12   **needlessly suffer. Lifting the stay has no impact on TRMC or its creditors or other**

13   **parties in interest, while it greatly prejudices Mr. Torrez by not allowing him to**

14   **conduct discovery and pursue a verdict or settlement from any non-Debtor**

15   **defendants.]**

16   (*In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984) (citations omitted).)

17   Here, application of the *Curtis* factors weighs heavily in favor of lifting the

18   automatic stay to allow Movants/Plaintiffs to continue to prosecute the State Action.

19   **C. Balance of harms weighs heavily in favor of Mr. Torrez**

20   Most importantly among the *Curtis* factors, Mr. and Mrs. Torrez will be severely

21   harmed by a long and costly delay of their State Action. Movant John Torrez III is a

22   quadriplegic who is dependent upon others for activities of daily living. He and his family

23   simply cannot afford the level of care that he needs. The Movants filed their State Action

24   with a goal of recovering compensation for Mr. Torrez's injuries so that he can receive

25   attendant care, medical supplies, and access to specialists who can increase his quality of

26   life. Mr. Torrez requires such compensation as soon as possible. The State Action itself

27   will be a long and costly process. If Mr. Torrez is forced to wait until the bankruptcy case

28   has been resolved to continue pursuing compensation in the State Action, he will continue

1 to suffer without the services he needs for a longer period of time. His family will also
2 continue to suffer as they will be overextended attempting to help keep him comfortable
3 to the extent possible and provide for his many medical and other needs.

4      "The automatic stay was never intended to preclude a determination of tort
5 liability and the attendant damages. It was merely intended to prevent a prejudicial
6 dissipation of a Debtor's assets. A lifting of the stay to allow a Plaintiff-Creditor to
7 determine liability will not affect the estate. It will only allow the Movants to establish
8 the amount of (their) claim… In this respect, a relief from the stay will not violate the
9 purpose for which it was imposed" *In re Brock Laundry Machine CO.*, 37 B.R. at 567.
10 The interests of judicial economy will be served by lifting the stay to permit the State
11 Action to continue so that Plaintiffs can determine liability. If Plaintiffs are successful,
12 they will look to other defendants and the Debtors' self-insured risk sharing pool for
13 compensation for the harms Mr. Torrez suffered.

14      Simply put, Mr. Torrez has suffered due to TRMC's and the other defendants'
15 negligence and should not be further victimized by TRMC's bankruptcy, especially when
16 the State Action will have no impact on TRMC's creditors or estate. Now that the judge
17 in the State Action has stayed the action against even the non-debtor Defendants, Mr.
18 Torrez has no hope of compensation from any Defendant while the automatic stay is in
19 place. It is fair and equitable for this Honorable Court to allow Mr. Torrez to enforce his
20 rights.

21      As the legislative history of §362 shows, "it will often be more appropriate to
22 permit proceedings to continue in their place of origin, when no great prejudice to the
23 bankruptcy estate would result, in order to leave the parties to their chosen forum and to
24 relieve the bankruptcy court from any duties that may be handled elsewhere." *In re
25 Lamberjack*, 149 B.R. 467, 470 (Bankr. N.D. Ohio 1992) (citing Senate Report No., 989,
26 95th Cong., 2D Sess., 50).

27      "Numerous Courts have permitted the stay to be lifted when the Movant is simply
28 seeking to establish the fact and amount of the Debtors liability and, as in these cases the

Movant has stipulated that any recovery will be sought from the Debtor's insurer or a codefendant." *In re Peterson*, 116 B.R. 247, 250-51 (D. Colo. 1990). In such cases, "there can be no legitimate complaint that the estates will be dissipated by allowing the litigation to move forward." *In re 15375 Memorial Corp.*, 382 B.R. 652, 689 (Bankr. D. Del. 2008).

### D. Plaintiffs will primarily look to BETA risk pool to satisfy any judgment or settlement amounts owed by TRMC

According to discovery responses in the State Action, TRMC is a "self-insured" California public hospital district. (Bulger Decl. at ¶12; Exhibit "3."). This self-insurance does not consist of paying claims out of its own assets, i.e., property of the estate, but rather refers to TRMC's participation in a risk sharing pool. Pursuant to California Government Code §§6500, et seq. and 990 et seq., BETA Healthcare Group Risk Management Authority administers risk-sharing pools under a joint powers agreement (the "JPA"). Tulare Local Healthcare District is a member of this risk sharing pool with a $10 million limit of liability. *Id.*

California Government Code §6527 authorizes a nonprofit corporation providing healthcare services carried out by the healthcare district to pool self-insurance claims or losses. Parties to a JPA are required to establish or maintain a reserve fund to be used to pay losses incurred under the agreement. Cal. Gov. Code §6527(b). It is this fund to which Movants will look to satisfy any judgment or settlement. This means that although TRMC "self-insures" its liability claims and losses by pooling risks among similar healthcare facilities, this self-insurance acts like insurance for purposes of the State Action and this motion to lift the automatic stay.

The Debtor may argue that the JPA is subject to a deductible and that the Debtor is therefore responsible for the amount of a judgment or settlement with Plaintiffs up to the amount of that deductible. While this may be true it does not change the analysis here. Courts have held that an insurer is obligated to defend and indemnify a debtor for the portion of any judgment or settlement exceeding a self-insured retention deductible, irrespective of a debtor's inability to pay the claimed retention amount. *In re OES Envtl.,*

1   *Inc.*, 319 B.R. 266, 269 (Bankr. M.D. Fla. 2004) citing *Home Insurance Company of Ill.*

2   *v. Hooper*, 294 Ill.App.3d 626, 229 Ill.Dec. 129, 691 N.E.2d 65 (1998).

3       Although the JPA may be subject to a deductible, the amount of that deductible

4   would likely be small compared to the total amount of a settlement or verdict in the State

5   Action. To the extent the State Action resulted in an award or settlement against TRMC,

6   Movants would have an unsecured claim in the amount of the deductible and would look

7   to BETA for the remainder owed. Movants concede that a deductible could implicate

8   property of the estate, however, the possible existence of a relatively minor unsecured

9   claim arising months from now and capable of being administrated with other general

10   unsecured claims does not outweigh the tremendous prejudice Mr. and Mrs. Torrez will

11   face if this Motion is denied and they are forced to wait months or even years to resume

12   pursuing compensation for Mr. Torrez's catastrophic injuries.

13                     **<u>CONCLUSION</u>**

14       Wherefore, Movants hereby request that this Court enter an order granting relief

15   from the automatic stay imposed by 11 U.S.C. §362 and permit the Movants to proceed

16   in the State Action.

17

18   DATED: November 13, 2017.      **HEIMBERG BARR, LLP**

19

20                      BY: _____

21                          JAMES BULGER

22                          Attorneys for Movants JOHN TORREZ III
                          and BERNADETTE TORREZ

23

24

25

26

27

28

PLAINTIFF'S MOTION TO LIFT AUTOMATIC STAY