103
WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:     (559) 435-9800
Facsimile:      (559) 435-9868
E-mail:          rileywalter@w2lg.com

Chapter 9 Counsel

MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone:     (559) 433-1300
Facsimile:      (559) 433-2300
E-mail:          mandy.jeffcoach@mccormickbarstow.com

District Counsel

## IN THE UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re | CASE NO.  17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER, | Chapter 9 |
| | DC No.: WW-23 |
| Debtor. | Date:      January 25, 2018 |
| Tax ID #:   94-6002897 | Time:      9:30 a.m. |
| Address:    869 N. Cherry Street | Place:     2500 Tulare Street |
| Tulare, CA 93274 | Fresno, CA  93721 |
| | Courtroom 13 |
| | Judge:     Honorable René Lastreto II |

## EXHIBITS TO STIPULATION FOR ASSUMPTION OF EXECUTORY CONTRACT (BETA Risk Management Authority)

///

///

| Exh. | Description | Pages |
|------|-------------|-------|
| A | Healthcare Entity Comprehensive Liability Coverage Contract, Contract No. HCL-17-361 | 35 |
| B | Auto Liability and Physical Damage Coverage Contract, Contract No. AL-17-361 | 34 |
| C | Directors, Officers and Trustees Liability Coverage Contract, Contract No. D&O-17-361 | 31 |
| D | Payment Plan | 1 |

Dated:  January 5, 2018

WALTER WILHELM LAW GROUP
A Professional Corporation

By: _____

Danielle J. Bethel, Attorneys for Debtor
Tulare Local Healthcare District, dba Tulare
Regional Medical Center

# EXHIBIT A

EXHIBIT ___A___
Page _1_ Of _35_

# BETA RISK MANAGEMENT AUTHORITY

## HEALTHCARE ENTITY COMPREHENSIVE LIABILITY
## COVERAGE CONTRACT

### IMPORTANT

THIS IS A NON-ASSESSABLE COVERAGE CONTRACT THAT INCLUDES MULTIPLE COVERAGE SECTIONS. SOME ARE PROVIDED ON A "CLAIMS MADE AND REPORTED" BASIS, AND OTHERS ARE PROVIDED ON AN "OCCURRENCE" BASIS. THIS COVERAGE CONTRACT REQUIRES ARBITRATION OF DISPUTES WITH BETArma. PLEASE REVIEW THE ENTIRE CONTRACT CAREFULLY.

HCL (07/15)

CONTRACT YEAR 2017/2018

EXHIBIT  *A*

Page  2  Of  35

## IMPORTANT NOTICES

This Contract affords four basic coverages in Sections 2 through 5 below. The coverages include professional liability coverage (in Section 2) that applies to only those Claims first made against the Member during the Contract Period and reported in writing to BETA Risk Management Authority ("BETARMA") as soon as possible but in no event later than thirty (30) calendar days after the termination of the Contract Period. This coverage provides no protection or defense for acts, errors, omissions that occurred prior to the Retroactive Date set forth on the Certificate of Participation (the "Certificate") or after the Expiration Date. Unlike the professional liability coverage in Section 2, the general liability coverages in Section 3, 4, and 5 apply on an "Occurrence" basis to Occurrences, offenses and negligent acts, errors or omissions that take place during the Contract Period. PLEASE READ EACH COVERAGE SECTION CAREFULLY AND DISCUSS THE CONTRACT WITH YOUR ATTORNEY, INSURANCE ADVISOR OR BROKER.

BETARMA is a California Joint Powers Authority formed to pool self-insured claims and losses among public entities and nonprofit organizations providing healthcare services as authorized by California Government Code Sections 990.4(a), 990.8(c) and 6527 and subject to the provisions of Section 991.2. BETARMA is not subject to regulation as an insurer. As a public agency, it will, for example, be guided by *Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, rather than *San Diego Federal Credit Union v. Cumis Ins. Society* (1984) 162 Cal.App.3d 385, when deciding whether to engage or provide reimbursement for independent defense counsel. This Contract is not an insurance policy. The **Named Member** must be a member in good standing in BETARMA to participate in the Group Self-Insurance Program. The **Named Member** pays, when due, Contributions to BETARMA. In return, BETARMA provides healthcare entity professional liability and general liability protection under this agreement. However, the Contract includes limitations, restrictions and exclusions. In other words, this agreement does not protect against all risks associated with your activities.

This Contract is an agreement arrived at by mutual negotiation among and consent of the members of BETARMA and approved by the BETA Council. The Contract is intended to be interpreted in accordance with the usual rules of contract law. Because, among other reasons, this Contract was negotiated at arm's length by parties of approximately equal bargaining power, any ambiguities that may be found are to be interpreted in an even-handed fashion in the manner most consistent with the relevant terms, conditions, and exclusions of the Contract. You should read this agreement carefully to determine the extent of the protection provided. This Contract sets forth the four basic coverages in Sections 2 through 5. Section 6 sets forth the exclusions. Section 7 sets forth common provisions that apply to the coverages. Amendments further expand or limit the coverages afforded. You must read the entire Contract, including the amendments and the Certificate, carefully in order to understand your and BETARMA's obligations. Words or terms that are in **bold** print have a special meaning that is set forth in the Definitions section, Section 1. These definitions limit the protection this Contract provides.

Any disputes with BETARMA under this Contract that cannot be resolved must be arbitrated as set forth in Section 7. By accepting this Contract, you and BETARMA are agreeing to give up the right to court remedies, including a jury trial. Except as provided by law, the Arbitrators' ruling will be final and binding on the parties, and rights of appeal are strictly limited.

This Contract affords Pollution Liability and Asbestos Liability Coverage by amendment on a claims-made-and-reported basis. Coverage for Pollution Liability and Asbestos Liability is limited to liability only for those Claims that are first made during the Contract Period and reported to BETARMA in writing as soon as possible but in no event later than thirty (30) calendar days after the Contract Expiration Date. Amounts incurred for Defense Expenses for such Claims are included within the Pollution Liability and Asbestos Liability Coverage Limits of Liability. Pollution Liability and Asbestos Liability Coverage is limited to Occurrences that take place after the Retroactive Dates specified in the amendments. The Pollution Liability and Asbestos Liability Coverage Limits of Liability are reduced by amounts incurred for Defense Expenses. There may also be applicable Deductibles that the Member must pay before BETARMA is obligated to pay any sum, including Defense Expenses.

EXHIBIT _A_
Page _3_ Of- _35_

## <u>HEALTHCARE ENTITY COMPREHENSIVE LIABILITY COVERAGE CONTRACT</u>

This Healthcare Entity Comprehensive Liability Coverage Contract comprises the following:

Page

CERTIFICATE OF PARTICIPATION

IMPORTANT NOTICES ................................................................................................................................ II

SECTION 1 – DEFINITIONS ........................................................................................................................ 1

SECTION 2 – HEALTHCARE ENTITY PROFESSIONAL LIABILITY (CLAIMS MADE AND REPORTED) 7

SECTION 3 – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (OCCURRENCE) ...................... 9

SECTION 4 – PERSONAL INJURY, ADVERTISING INJURY AND DISCRIMINATION LIABILITY
(OCCURRENCE) ............................................................................................... 10

SECTION 5 – EMPLOYEE BENEFIT LIABILITY (OCCURRENCE) ........................................................... 11

SECTION 6 – EXCLUSIONS ...................................................................................................................... 12

SECTION 7 – PROVISIONS APPLICABLE TO ALL COVERAGES ........................................................... 19

    1. WHO IS PROTECTED UNDER THIS CONTRACT ........................................................... 19
    2. OTHER PERSONS AND ENTITIES ELIGIBLE FOR PROTECTION UNDER THIS CONTRACT . 21
    3. COVERAGE IN THE EVENT OF ACQUISITIONS, MERGERS AND DISSOLUTIONS .............. 21
    4. SEPARATION OF MEMBERS' INTERESTS ..................................................................... 21
    5. WHERE THIS CONTRACT PROVIDES PROTECTION........................................................ 22
    6. BETARMA'S DUTY TO DEFEND...................................................................................... 22
    7. THE TOTAL BETARMA WILL PAY ................................................................................... 22
    8. ADDITIONAL AMOUNTS BETARMA WILL PAY ................................................................ 23
    9. PAYMENTS REQUIRED FROM MEMBERS AND BETARMA'S RIGHT TO AUDIT ...................... 23
    10. MEMBERS' DUTIES IN THE EVENT OF OCCURRENCE OR CLAIM..................................... 25
    11. SETTLEMENT OF CLAIMS AND PAYMENT OF JUDGMENTS............................................. 26
    12. DISPUTES WITH BETARMA............................................................................................ 26
    13. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO BETARMA .......................... 28
    14. APPLICABILITY OF INSURANCE OR OTHER COVERAGE A MEMBER MAY ALSO HAVE...... 28
    15. DELEGATION BY BETARMA AND ASSIGNMENT BY MEMBERS ......................................... 28
    16. GOVERNING LAW ........................................................................................................ 29
    17. THE TERMS OF THIS CONTRACT SHALL CONFORM TO STATUTE .................................... 29
    18. EFFECTIVE DATE OF THIS CONTRACT .......................................................................... 29
    19. TERMINATION OF THIS CONTRACT................................................................................ 29
    20. LIMITED RIGHT TO EXTENDED REPORTING PERIOD ...................................................... 30
    21. MEMBERS' AUTHORIZATION AND NOTICES TO MEMBERS ............................................. 30
    22. LIMITS ON HOW THIS CONTRACT CAN BE CHANGED .................................................... 31
    23. MEMBERS' REPRESENTATIONS ON WHICH BETARMA RELIED ....................................... 31
    24. NON-RENEWAL OF THIS CONTRACT ............................................................................. 31

AMENDMENTS

APPLICATION

EXHIBIT ___A___
Page _4_ Of- _35_

BETARMA and all **Members**, subject to all of the terms, conditions and limitations of this Contract, agree as follows:

## SECTION 1 – DEFINITIONS

1. **Advertising Injury** means injury arising out of one or more of the following offenses in the advertising of the **Named Member's** or **Subsidiary's** work or products:

    A. oral or written publication of material that slanders or libels a person or organization;

    B. oral or written publication of materials that disparages a person's or organization's goods, products or services;

    C. oral or written publication of material that violates an individual's right of privacy;

    D. unauthorized taking of advertising ideas or style of business; or

    E. infringement of copyright, trade dress or slogan.

2. **Automobile** means a motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached equipment or machinery, but **Automobile** does not include **Mobile Equipment**.

3. **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. **Bodily Injury** includes mental anguish, mental injury or shock sustained by that person as a result of such bodily injury, sickness or disease.

    For purposes of Section 2 only, **Bodily Injury** includes a bystander's mental anguish, mental injury, shock, fright or death resulting from physical injury, sickness or disease of another.

4. **Certified Act of Terrorism** means a Certified Act of Terrorism, as defined under the federal Terrorism Risk Insurance Act of 2002 or as it may be amended from time to time.

5. **Claim** means a:

    A. A written demand for damages, including:

        (1) service of suit or institution of arbitration proceedings against a **Member**; or

        (2) a demand made under an applicable claim statute, signed by or on behalf of one alleged to have been damaged by a **Member**.

    B. Written notice to BETARMA of specific circumstances involving injury to a particular person or organization that may reasonably be expected to give rise to a **Claim** against a **Member**, provided the **Member** becomes aware during the **Contract Period** of an act, error or omission that may reasonably be expected to give rise to a **Claim** against a **Member** to which Section 2- Healthcare Entity Professional Liability applies, and the **Member** reports to BETARMA in writing the names of any injured parties, witnesses, the manner in which the **Member** first became aware of the act, error or omission. Any **Claim** subsequently arising from such reported act, error or omission, shall be deemed to be a **Claim** made during the **Contract Period** in which the act, error or omission was first duly reported to BETARMA.

    For purposes of Section 2.2, **Claim** also means a writ of administrative mandamus under Section 1094.5 of the California Code of Civil Procedure.

    Internal incident reports sent to BETARMA and trending reports, quarterly claim reports and other data collection reports shall not be considered a **Claim**.

EXHIBIT _A_
Page _5_ Of- _35_

Two or more **Claims** arising out of a single **Occurrence** or an act, error, omission or offense or a series of related **Occurrences**, acts, errors, omissions or offenses shall be treated as a single **Claim**. **Occurrences**, acts, errors, omissions and offenses are related if they share a causal connection or have as a common nexus any event or transaction or series of events or transactions. When two or more **Claims** are treated as a single **Claim**, the single **Claim** shall be considered first made when the earliest of the **Claims** is first made.

However, no **Claim** shall be deemed first made during the **Contract Period** if:

C. the **Claim** or incident was reported before the Effective Date of this Contract to BETArma or to any liability insurer; or

D. any **Member** had knowledge prior to the Effective Date of facts or circumstances that would cause a reasonable person to believe that a **Claim** might be made.

6. **Claimant** means the person or entity who asserts a **Claim**.

7. **Contract Period** means the time period from the Effective Date to the Expiration Date, as specified in the Certificate, or to any earlier termination date, and not including any extended reporting period.

8. **Covered Location** means:

A. any location identified in the Certificate or by amendment; or

B. any location in the state of California, newly owned, occupied, rented, used or controlled by the **Named Member** or a **Subsidiary**; however:

(1) coverage is afforded only until the thirtieth (30th) calendar day after possession begins or the end of the **Contract Period**, whichever is earlier; and

(2) coverage will be extended beyond the thirtieth (30th) calendar day only upon the **Named Member's** or **Subsidiary's** submission of such underwriting information as may be required by BETArma, BETArma's issuance of an amendment extending coverage at the location, and timely payment of the Contribution specified by BETArma.

9. **Defense Expenses** includes the following expenses resulting from the investigation, adjustment, defense and appeal of a covered **Claim**, if incurred by BETArma or by the **Member** with the prior written consent of BETArma:

A. fees, costs and expenses charged by an attorney or other person or organization designated by BETArma; and

B. all other fees, costs and expenses, including, but not limited to, expenses incurred by independent contractors or vendors.

**Defense Expenses** does not include salaries or expenses of the **Member's** or BETArma's employees or officials, or the **Member's** unpaid patient or other bills.

10. **Economic Damages** means financial loss and does not include damages arising from **Bodily Injury** or **Property Damage**.

11. **Employee Benefit Program** means group or individual life insurance, accident and health insurance, profit sharing or savings plan, pension or retirement plan, salary reduction or deferral plan, employee stock subscription plan, workers' compensation, unemployment insurance, social security and disability benefits plan or insurance, plan to pay medical, dental, vision or drug claims, or any other similar plan provided, in whole or part, or administered by the **Named Member** for its employee(s) and their dependents.

12. **Employment Practices Liability** means:

EXHIBIT ___A___
Page __6__ Of- _35_

A. any actual or alleged act or omission by any **Member** related to the employment of the **Claimant**, including, but not limited to, recruiting, interviewing, hiring, declining to hire, assigning, reassigning, granting or placing on leave, performance reviews, promotion, training, transfer, disciplinary action, demotion, supervision, layoff and termination of the **Claimant** as an employee or as an independent contractor;

B. any actual or alleged acts of wrongful discharge, unlawful discrimination or harassment in employment, and any other act or omission prohibited by any statute regulating employment practices;

C. any actual or alleged **Retaliation**; or

D. any actual or alleged **Advertising Injury** or **Personal Injury** alleged or suffered by any employee or former employee of the **Named Member** or a **Subsidiary**.

However, "**Employment Practices Liability**" does not include any actual or alleged act or omission by any **Member** related to any **Employee Benefit Program**.

13. **Fungi** means any type or forms of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **Fungi.**

14. **Hazardous Properties** includes radioactive, toxic or explosive properties.

15. **Member** means a person or entity identified in Section 7.1 or to whom coverage is extended under Section 7.2.

16. **Mobile Equipment** means any of the following types of land vehicles, including any attached equipment or machinery:

A. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B. vehicles maintained for use solely on or next to premises the **Named Member** or **Subsidiary** owns or rents;

C. vehicles that travel on crawler treads;

D. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) power cranes, shovels, loaders, diggers or drills; or

(2) road construction or resurfacing equipment such as graders, scrapers or rollers;

E. vehicles not described in clauses A, B, C, or D above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) cherry pickers and similar devices used to raise or lower workers;

F. vehicles not described in clauses A, B, C, or D above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Automobiles**:

(1) equipment designed primarily for:

EXHIBIT _A_
Page _7_ Of- _35_

      a.   snow removal;

      b.   road maintenance, but not construction or resurfacing;

      c.   street cleaning;

  (2)  cherry pickers and similar devices mounted on **Automobile** chassis and used to raise or lower workers;

  (3)  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

17.  **Named Member** means the organization specified as such in the Certificate.

18.  **Nuclear Facility** means:

    A.  any **Nuclear Reactor**;

    B.  any equipment or device designed or used for separating the isotopes of uranium or plutonium, processing or utilizing **Spent Fuel**, or handling, processing or packaging **Nuclear Waste**;

    C.  any equipment or device used for the processing, fabricating or alloying of **Nuclear Material** if at any time the total amount of such material in the **Member's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    D.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Nuclear Waste**, including the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

19.  **Nuclear Material** means Source Material, Special Nuclear Material or By-Product Material, as defined under the federal Atomic Energy Act of 1954 or in any amendment thereto.

20.  **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

21.  **Nuclear Waste** means any material containing By-Product Material and resulting from the operation by any person or organization of any **Nuclear Facility**.

22.  **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which is neither expected nor intended by the **Member**.

23.  **Personal Information** includes any information defined as "individually identifiable health information," "medical information", "personal information" or "personally identifying information" in the Health Insurance Portability and Accountability Act of 1996 or the California Civil Code, as amended from time to time, or in any regulations adopted thereunder.

24.  **Personal Injury** means injury arising out of one or more of the following offenses resulting from the **Named Member's** or **Subsidiary's** business activities:

    A.  false arrest, detention or imprisonment;

    B.  malicious prosecution;

    C.  the wrongful eviction from, wrongful entry into, or invasion of the right of public or private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    D.  oral or written publication of material that slanders or libels a person or organization or disparages

EXHIBIT _A_
Page _8_ Of _35_

a person's or organization's goods, products or services; or

   E.  an invasion that violates a person's right of privacy.

25. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. **Pollutants** include indoor **Pollutants**.

26. **Privacy Breach Wrongful Act** means: (a) any actual or alleged failure to safeguard or to prevent unauthorized access to or use or disclosure of any **Personal Information**, including any access, use or disclosure that exceeds authorization, (b) failure to give notification of an actual or potential unauthorized access to, or use or disclosure of, any **Personal Information**.

27. **Product** means goods or products manufactured, sold, handled or distributed by the **Member**.

28. **Professional Services** means:

   A.  medical, surgical, dental or nursing or other healthcare services or treatment to a patient, including custodial care and the furnishing of food or beverages in connection with the treatment;

   B.  the furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances to a patient if the injury occurs after the **Member** has relinquished possession thereof;

   C.  healthcare research involving a patient, study participant or trial participant, if, before the research was commenced, the **Named Member** or **Subsidiary's** Institutional Review Board approved the research study or trial;

   D.  the handling or performing of post-mortem examinations on human bodies; or

   E.  services by any person as a member of the **Named Member's** or **Subsidiary's** formal accreditation or similar professional board or committee, or as a person charged with the duty of executing directives of any such board or committee.

29. **Property Damage** means:

   A.  physical injury to tangible property, including resulting loss of use of that property; or

   B.  loss of use of tangible property that is not physically injured.

30. **Retroactive Date** is the date so specified on the Certificate. The **Retroactive Date** applies only to coverages provided on a claims made and reported basis. No coverage is provided by this Contract with regard to any act, error, omission or **Occurrence** or offense happening prior to the **Retroactive Date**.

31. **Spent Fuel** means any fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

32. **Subsidiary** means any of the following:

   A.  any corporate, general partnership or limited-liability-company affiliate of the **Named Member** listed as a **Subsidiary** in the Certificate or an amendment;

   B.  any foundation the sole activity of which is to provide financial support to the **Named Member**; or

   C.  any nonprofit corporation affiliated with the **Named Member** and created pursuant to Section 32121(p) of the Health and Safety Code to which the **Named Member** has transferred assets.

33. **Supplemental Member** means a person or entity to whom coverage is extended under Section 7.2.

EXHIBIT _____ A_____
Page _9_ Of _35_

34. **Terrorism** means a **Certified Act of Terrorism** or acts of any person or organization against any persons, organization or property of any nature:

    A.  that involve the following or preparation for the following:

        (1)  use or threat of force or violence; or

        (2)  commission or threat of a dangerous act; or

        (3)  commission or threat of an act that interferes with or disrupts an electronic communication, information, or mechanical system; and

    B.  when either or both of the following applies:

        (1)  the effect is to intimidate or coerce a government or the civilian population or any segment of the public, or to disrupt any segment of the economy; or

        (2)  it appears that the intent is to influence, intimidate or coerce a government, or any segment of the public, or to further political, ideological, religious, social, economic or similar objectives or to express (or express opposition to) a philosophy or ideology.

35. **Volunteer** means any person or group, such as an auxiliary, whose services or labor are uncompensated from any source, are accepted or directed by the **Named Member** or any **Subsidiary**, and who is not a healthcare professional rendering **Professional Services** which require licensing or other certification.

36. **Waste** includes materials to be disposed of, recycled, reconditioned or reclaimed, including, but not limited to, used, expired or disposed of medical and pharmaceutical supplies.

EXHIBIT _A_
Page _10_ Of _35_

---

## SECTION 2 – HEALTHCARE ENTITY PROFESSIONAL LIABILITY
### (This coverage is provided on a claims made and reported basis.)

---

**WHAT BETArma WILL PAY SUBJECT TO THE EXCLUSIONS IN SECTION 6 AND THE TOTAL BETArma WILL PAY IN SECTION 7:**

1. BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** for **Bodily Injury**, **Property Damage** or **Economic Damages** arising out of the **Member's** negligence in the rendering of, or failure to render, **Professional Services**:

   A. on or after the **Retroactive Date**; and

   B. at a **Covered Location**; and provided that

   C. the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETArma as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.

2. BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising from a negligent act, error or omission resulting in actual or alleged denial, suspension, revocation, termination or limitation of medical staff privileges, provided that the effective date of the first denial, suspension, revocation, termination or limitation of staff privileges that is a basis of the **Claimant's Claim** occurs on or after the **Retroactive Date**. This coverage applies only if the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETArma as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**. BETArma will defend, but will not indemnify, a **Claim** that is otherwise covered under this Section, but alleges an intentional act, error or omission.

3. BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising from reckless neglect within the meaning of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare and Institutions Code, Section 15600, et seq., in the rendering of, or failure to render **Professional Services** on or after the **Retroactive Date**, at a **Covered Location**. This coverage applies only if the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETArma as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.

4. BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising out of the following offenses:

   A. discrimination based upon, without limitation, an individual's race, ethnicity, ancestry, national origin, citizenship, religion, age, sex, sexual orientation or preference, pregnancy, preexisting medical condition, physical or mental disability or handicap, insurance status, economic status or ability to pay for medical services, and

   B. sexual abuse, assault, battery, harassment or molestation

   if the **Claimant's** injury arises out of the **Member's** negligence in rendering of, or failure to render, **Professional Services** on or after the **Retroactive Date**; and at a **Covered Location**; and provided that the **Claim** is first made against the **Member** during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.

   BETArma will defend, but will not indemnify, a **Claim** that is otherwise covered under this Section, but alleges an intentional act or omission.

5. BETArma has the right and duty to defend any covered **Claim** brought against the **Member**. This means that BETArma will pay all reasonable **Defense Expenses** incurred in defending the **Claim**.

EXHIBIT _A_
Page _11_ Of- _35_

6. Only upon the **Named Member's** or **Subsidiary's** specific written request, and subject to BETArma's sole, absolute and unreviewable discretion, BETArma will pay reasonable **Defense Expenses** for a criminal action or proceeding brought by a law enforcement agency against the **Named Member's** or **Subsidiary's** employee alleging **Bodily Injury** or **Property Damage** caused by an **Occurrence** on or after the **Retroactive Date**. This provision applies only if:

   A. the criminal action or proceeding is first brought by a law enforcement agency against the **Named Member's** or **Subsidiary's** employee or employees during the **Contract Period** and is reported to BETArma as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after the termination of the **Contract Period**;

   B. the acts or omissions charged:

      (1) occur only in the discharge of the employee's regular duties to the **Named Member** or **Subsidiary**; and

      (2) arise solely and directly from the care and treatment of patients on the **Named Member's** or **Subsidiary's** behalf;

   C. the **Named Member** or **Subsidiary** determines that the **Named Member's** or **Subsidiary's** defense of the criminal action or proceeding would be in the best interests of the **Named Member** or **Subsidiary** and that the employee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the **Named Member** or **Subsidiary**; and

   D. such payment of **Defense Expenses** is permitted by law.

EXHIBIT   *A*
Page *12*  Of- *35*

## SECTION 3 – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
### (This coverage is provided on an occurrence basis.)

**WHAT BETArma WILL PAY SUBJECT TO THE EXCLUSIONS IN SECTION 6 AND THE TOTAL BETArma WILL PAY IN SECTION 7:**

1. BETArma will pay those sums which the **Member** is legally required to pay as damages for a **Claim** that is caused by an **Occurrence,** if the **Bodily Injury** or **Property Damage** occurs during the **Contract Period**.  Such **Bodily Injury** or **Property Damage** includes damages arising out of the **Member's Products** away from the **Member's** premises after physical possession of the **Products** has been relinquished to others.

2. BETArma has the right and duty to defend any covered **Claim** brought against the **Member**.  This means that BETArma will pay all reasonable **Defense Expenses** incurred in defending the **Claim**.

EXHIBIT____*A*____
Page _13_ Of- _35_

## SECTION 4 – PERSONAL INJURY, ADVERTISING INJURY AND DISCRIMINATION LIABILITY
### (This coverage is provided on an occurrence basis.)

**WHAT BETAᴿᴹᴬ WILL PAY SUBJECT TO THE EXCLUSIONS IN SECTION 6 AND THE TOTAL BETAᴿᴹᴬ WILL PAY IN SECTION 7:**

1.  BETAᴿᴹᴬ will pay those sums which the **Member** is legally required to pay as damages for a **Claim** for **Personal Injury** or **Advertising Injury** caused by an offense committed during the **Contract Period**.

2.  BETAᴿᴹᴬ will also pay those sums which the **Member** is legally required to pay as damages for a **Claim** for the following offenses committed during the **Contract Period**:

    A.  discrimination based upon, without limitation, an individual's race, ethnicity, ancestry, national origin, citizenship, religion, age, sex, sexual orientation or preference, pregnancy, preexisting medical condition, physical or mental disability or handicap, insurance status, economic status or ability to pay for medical services, and

    B.  sexual abuse, assault, battery, harassment or molestation.

3.  BETAᴿᴹᴬ has the right and duty to defend any covered **Claim** brought against the **Member**. This means that BETAᴿᴹᴬ will pay all reasonable **Defense Expenses** incurred in defending the **Claim**.

EXHIBIT _A_
Page _14_ Of- _35_

## SECTION 5 – EMPLOYEE BENEFIT LIABILITY
### (This coverage is provided on an occurrence basis.)

**WHAT BETARMA WILL PAY SUBJECT TO THE EXCLUSIONS IN SECTION 6 AND THE TOTAL BETARMA WILL PAY IN SECTION 7:**

1. BETARMA will pay those sums which the **Member** is legally required to pay as **Economic Damages** for a **Claim** arising out of the following negligent administrative acts, errors or omissions performed by the **Member**, other than as a fiduciary, during the **Contract Period**:

    A. counseling employees with respect to or interpreting **Employee Benefit Programs**;

    B. handling of records and processing of claims in connection with the **Employee Benefit Programs**; or

    C. effecting or failing to effect enrollment, termination or cancellation under the **Employee Benefit Programs**.

2. BETARMA has the right and duty to defend any covered **Claim** brought against the **Member**. This means that BETARMA will pay all reasonable **Defense Expenses** incurred in defending the **Claim**.

EXHIBIT _____ A
Page _15_ Of- _35_

---

## SECTION 6 – EXCLUSIONS

---

**WHAT BETArma WILL NOT COVER:**

**EXCEPT AS OTHERWISE PROVIDED BELOW, THESE EXCLUSIONS APPLY REGARDLESS OF WHETHER ANY OTHER CAUSE, ACT, ERROR, OMISSION, EVENT, MATERIAL OR PRODUCT CONTRIBUTES CONCURRENTLY OR IN ANY SEQUENCE TO A CLAIMANT'S INJURY OR DAMAGE.**

**EXCLUSIONS THAT APPLY TO ALL COVERAGE SECTIONS**

1. This Contract does not apply to any **Claim** for damages arising out of the breach of any contract or agreement or liability assumed by the **Member** under any contract or agreement, except that:

   A. this exclusion does not apply under Sections 2 and 3 as respects the **Member's** warranty of goods and **Products**, whether expressed or implied;

   B. this exclusion does not apply under Sections 2, 3 and 4 for liability arising out of a written agreement entered into before the **Occurrence** or offense under which the **Member** assumed the tort liability of others for injury to a third person or entity caused by the **Member's** negligence or other fault; and

   C. this exclusion does not apply under Sections 2, 3 and 4 for liability the **Member** would have had in the absence of the contract or agreement.

   Coverage is not provided for any liability resulting from guaranteeing the results of treatment.

2. This Contract does not apply to any **Claim** for or arising out of **Bodily Injury** (a) to any employee arising out of and in the course of that person's employment by any **Member**, or (b) to any **Volunteer** arising out of and in the course of that person's provision of services for any **Member**. However, clause (b) shall not apply if such **Claim** is not covered under any workers' compensation insurance policy or self-insurance program.

3. This Contract does not apply to any **Claim** for which the **Member** or any of the **Member's** insurance carriers may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law or any administrative interpretation of such laws.

4. This Contract does not apply to any liability of any person or entity:

   A. acting as an independent contractor for any **Member** or on any **Member's** behalf, except as provided in Section 7 or by amendment; or

   B. hired or employed by or on behalf of a patient.

5. This Contract does not apply to any injury that is expected or intended by the **Member**. This exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

6. Except for the defense of criminal charges as provided in Section 2.6, this Contract does not apply to any **Claim** arising from or brought about or contributed to by the **Member's** dishonest, fraudulent, criminal or malicious acts or omissions, or to acts or omissions that an insurer could not indemnify under California Insurance Code Section 533.

7. This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly, on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., or similar provisions of any federal, state or other statutory or common law or rule or regulation, including but

EXHIBIT *A*
Page *16* Of- *35*

not limited to the Pension Trusts provisions of the California Government Code, Section 53215, et seq., all as they may be amended from time to time.

8. BETArma shall have no duty under this Contract to defend or indemnify any **Claim** alleging **Employment Practices Liability**. Notwithstanding any other provision of this Contract, if a **Claim** includes allegations that are potentially covered by this Contract and also **Employment Practices Liability** allegations and the **Named Member** does not participate in the **Employment Practices Liability** coverage offered by BETArma's Directors, Officers and Trustees Liability Coverage Contract including Healthcare Entity Coverage, the **Named Member**, and not BETArma, shall be responsible for **Defense Expenses** on account of defending the **Employment Practices Liability** portion of the **Claim**. If the **Named Member** does not have **Employment Practices Liability** insurance coverage, BETArma shall have the right but not the duty to defend the **Employment Practices Liability** portion of the **Claim**, subject to the **Named Member's** obligation to pay all **Defense Expenses** on account of defending the **Employment Practices Liability** portion of the **Claim**. The **Named Member** and BETArma shall use their best efforts to agree upon a fair and reasonable allocation of the share of **Defense Expenses** that each shall bear. Until the respective shares of the **Named Member** and BETArma are determined, BETArma shall make interim payments of all **Defense Expenses**, subject to the **Named Member's** obligation to reimburse BETArma for the **Named Member's** portion.

9. This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly, on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of any federal, state or other statutory or common law (including but not limited to the Cartwright Act, California Business & Professions Code § 16600, et. seq., the Unfair Practices Act, Business & Professions Code § 17000, et. seq. and the Unfair Competition Act of the State of California, Business & Professions Code §§ 17200, et. seq. and 17500, et. seq and Title 15 of the United States Code, all as they may be amended from time to time) that prohibits the unlawful restraint of trade, business or profession, except any liability arising from actions brought against the **Member** by any person or persons alleging the improper or unlawful denial or restriction of medical staff privileges or alleging the **Member's** failure to act upon any application for such privileges.

10. This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities and Exchange Commission adopted thereunder, similar provisions of any federal, state or other statute regulating securities, all as they may be amended from time to time, any rules or regulations adopted pursuant thereto, or any other law, including common law, relating to securities.

11. This Contract does not apply to any **Claim** against an individual **Member** alleging, directly or indirectly or in whole or in part, that he or she committed sexual harassment or sexual abuse, assault, battery or molestation, unless:

  A. the **Named Member** or **Subsidiary** has first entered into an agreement with the individual **Member** reserving the rights of the **Named Member** or **Subsidiary** not to pay any judgment, compromise or settlement until it is established that: (a) the alleged injury arose out of an act or omission occurring within the scope of his or her duties to the **Named Member** or **Subsidiary**, and (b) the individual **Member** did not act because of fraud, corruption or actual malice; or

  B. before undertaking to defend or indemnify the individual **Member**, the **Named Member** or **Subsidiary** has first determined, in good faith, that: (a) the alleged injury arose out of an act or omission occurring within the scope and course of his or her duties to the **Named Member** or **Subsidiary**, and (b) the individual **Member** did not act because of fraud, corruption or actual malice; and BETArma concurs with the **Named Member's** or **Subsidiary's** determinations.

12. BETArma will not pay any punitive or exemplary damages, fines, penalties, taxes, trebled damages or any other measure of damages exceeding actual compensatory damages.

13. This Contract does not apply to any **Claim** arising, directly or indirectly, in whole or in part from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or

EXHIBIT  *A*
Page *17* Of *35*

presence of **Fungi** or bacteria at or from any premise, site or location, including its contents, which is or was at any time owned or occupied by, or rented or loaned to, any **Member**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

This exclusion does not apply to Section 2 or to any **Fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

14. Except to the extent such coverage is extended by amendment, this Contract does not apply to any **Claim** arising in whole or in part from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

   A. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Member**;

   B. at or from any premises, site or location which is or was at any time used by or for any **Member** or others for the handling, storage, disposal, processing or treatment of **Waste**;

   C. which are or were at any time transported, handled, stored, treated, disposed of, or processed as **Waste** by or for any **Member** or any person or organization for whom the **Member** may be legally responsible; or

   D. at or from any premises, site or location on which any **Member** or any contractors or subcontractors working directly or indirectly on any **Member's** behalf are performing operations:

      (1) if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Member**, contractor or subcontractor; or

      (2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**.

   Clause D (1) does not apply to **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such **Member**, contractor or subcontractor.

   Clauses A and D(1) do not apply to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a hostile fire. A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

15. Except to the extent such coverage is extended by amendment, this Contract does not apply to any loss, cost or expense arising out of any:

   A. request, demand or order that any **Member** or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, remediate, dispose or in any way respond to, or assess the effects of **Pollutants, Fungi** or bacteria; or

   B. **Claim** or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

16. BETAʀᴍᴀ will not pay for equitable remedies or the costs of complying with equitable remedies, governmental requests, directives, orders or recommendations. (Examples of equitable remedies

EXHIBIT ___*A*___
Page _*1 8*_ Of- _*3 5*_

include injunctions, restitution, disgorgement, declaratory relief, constructive trust, and rescission, reformation or specific performance of a contract.)

17. This Contract does not apply to any **Claim** that directly or indirectly or in whole or in part arises out of, results from, is based on, or alleges ownership, management, operation or control of any Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or other similar organization. However, the exclusion does not apply to the **Member's** participation solely as a provider of healthcare services to a Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or similar organization not owned, managed or controlled by a **Member**.

18. This Contract does not apply to any **Claim** that directly or indirectly, arises out of, results from, is based on or alleges any liability or injury that is in any way connected with the practice of reuse or reprocessing of medical devices (sometimes referred to as single-use devices or SUDs) that are labeled, designated or intended for one time use. However, BETA**rma** has the right but not the duty to defend such a **Claim.**

19. This Contract does not apply to any **Claim** for injury or damage arising out of, attributable to, resulting from, or in any way related to directly or indirectly, Telemedicine, if the patient is outside of the state of California, or if the **Claim** or suit is brought outside of the state of California. Telemedicine means the use of telecommunication, excluding telephone communications, to provide medical information or **Professional Services.**

20. This Contract does not apply to any **Claim** arising, directly or indirectly, in whole or in part, out of, attributable to, resulting from, or in any way related to:

    A. war, including undeclared or civil war; or

    B. warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    C. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

    D. the discharge of a nuclear weapon, even if it is accidental; or

    E. **Terrorism**, including any action taken in hindering or defending against an actual or expected incident of **Terrorism**.

    This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

    However, this exclusion does not apply to a **Claim** based solely on a **Member's** alleged negligence in rendering or failing to render **Professional Services** to a victim of **Terrorism** or other acts specified in Clauses A through D above.

21. This Contract does not apply to any **Claim** based upon or attributable to or resulting from pricing, charges, rates or billing for service or goods, including but not limited to, actual or alleged unfair, unreasonable, unlawful or excessive prices, charges, rates or billings.

22. This Contract does not apply to any **Claim** for actual or alleged injury or damage arising out of, attributable to, resulting from, or in any way related to, directly or indirectly, any of the following:

    A. any actual or alleged **Professional Services** for which the **Member** does not hold the license or certificate required by law at the time and place where the **Member** renders or fails to render such **Professional Services.** However, this exclusion shall not apply if at that time the **Member** reasonably believed in good faith that the **Member** possessed the required license or certificate and the **Member** provides documentation satisfactory to BETA**rma** that substantiates such belief.

EXHIBIT _A_
Page _19_ Of- _35_

B. any facility or equipment operated by any **Member,** or operated pursuant to any contract with any **Member,** for which all licenses and permits required by law have not been secured as of the date of the **Occurrence** (under Section 3), negligent act, error or omission (under Section 2 and 5), or offense (under Section 4).

A license or permit will be deemed to have been secured and held as of the date of the application for it, if the application was made prior to the date of such **Occurrence**, act, error or omission, or offense, and such application was granted within sixty (60) calendar days following the date of the **Occurrence**, act, error or omission or offense.

23. Except to the extent such coverage is extended by amendment, this Contract does not apply to any **Claim** that, directly or indirectly or in whole or in part, arises out of any **Product** developed or created through healthcare research conducted by any **Member**.

24. This Contract does not apply to any damages directly or indirectly arising out of, resulting from or in any way related to any **Privacy Breach Wrongful Act**.

**EXCLUSIONS THAT APPLY TO SPECIFIC COVERAGE SECTIONS**

25. Sections 2 and 3 of this Contract do not apply to any **Claim** arising out of any **Member's** ownership, maintenance, use or entrustment to others of any **Automobile**, watercraft, helicopter or aircraft or the loading or unloading thereof, except for the loading and unloading of patients by a **Member**. This exclusion does not apply to:

    A. **Property Damage** to **Mobile Equipment**

    B. **Property Damage** to an **Automobile** while it is parked or when being parked on, or on the ways immediately next to, premises that the **Named Member** or **Subsidiary** owns or rents. Coverage for such **Property Damage** will be provided subject to a deductible of $500 per **Occurrence** and is not subject to Exclusion 26. If a **Claim** described in this exception includes both **Bodily Injury** and **Property Damage**, only the highest applicable deductible will apply, unless the Certificate of Participation specifies a $0 deductible, in which case a $0 deductible will apply.

    C. **Bodily Injury** or **Property Damage** resulting from negligent maintenance of a helipad that the **Named Member** or a **Subsidiary** owns or leases.

26. Section 2 and 3 of this Contract do not apply to any **Claim** for **Property Damage** to any of the following:

    A. property any **Member** owns, rents, occupies, or holds for sale or safekeeping;

    B. property any **Member** controls, or plans to install, erect or use in construction;

    C. premises any **Member** sells, gives away or abandons, if the **Property Damage** arises out of any part of those premises;

    D. personal property in any **Member's** care, custody or control;

    E. that particular part of real property on which any **Member**, or any contractor or subcontractor working directly or indirectly for any **Member**, is working, if the **Property Damage** results from that work; or

    F. that particular part of any property that must be restored, repaired or replaced because of faulty workmanship by any **Member** or on any **Member's** behalf.

    Clauses B, D, E and F will not apply to liability for damage to the above property assumed under an elevator service agreement. Also, this exclusion does not apply to damage to property of others

caused by an elevator on the **Named Member's** or **Subsidiary's** premises. However, damage to the elevator itself is not covered.

Clauses B, D, E and F will also not apply to liability for damage to patients' property.

27. Section 3 of this Contract does not cover **Bodily Injury** or **Property Damage** arising out of rendering or failure to render **Professional Services**.

28. Sections 2, 3, and 4 of this Contract do not apply to any **Bodily Injury** or **Property Damage** resulting from the loss of use, recall or withdrawal, adjustment, inspection, repair or replacement, removal or disposal of any **Member's Product** from the market or from use by anyone for any reason.

29. Section 3 of this Contract does not apply to any **Bodily Injury** or **Property Damage** with respect to which the **Member** is also an insured under a nuclear energy policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

30. Section 3 of this Contract does not apply to any **Bodily Injury** or **Property Damage** (including, but not limited to, all forms of radioactive contamination of property) caused in whole or in part by the **Hazardous Properties** of **Nuclear Material** under any of the following circumstances:

    A. if any **Member** is required to maintain financial protection for nuclear events, or any **Member** is entitled, or would have been entitled had this Contract not been issued, to indemnity for nuclear events from the United States of America;

    B. the **Nuclear Material** is located at, or is discharged or dispersed from, any **Nuclear Facility** owned or operated by or on behalf of any **Member**;

    C. the **Nuclear Material** is contained in **Spent Fuel** or **Nuclear Waste** that has at any time been possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any **Member**; or

    D. the **Bodily Injury** or **Property Damage** arises out of services, materials, parts or equipment any **Member** furnishes in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**. If the **Nuclear Facility** is in the United States of America, its territories or possessions or Canada, this clause D applies only to **Property Damage** to or at the **Nuclear Facility**.

    This exclusion does not apply to liability arising out of the practicing of nuclear medicine and activities related to nuclear medicine by the **Member**.

31. Section 4 of this Contract does not apply to any oral or written publication of false material by the **Member** or at the **Member's** direction with knowledge of its falsity.

32. Section 4 of this Contract does not apply to any **Claim** for **Personal Injury** or **Advertising Injury** if the first oral or written publication was made prior to the first date BETAʀᴍᴀ provided the **Member** uninterrupted coverage.

33. Section 4 of this Contract does not apply to any **Claim** for **Personal Injury** or **Advertising Injury** alleging:

    A. the failure of goods, products or services to conform with advertised quality or performance; or

    B. the false or misleading description of the price of goods, products or services.

EXHIBIT ___A___
Page _2 1_ Of- _3 5_

34. Section 4 of this Contract does not apply to any **Claim** asserted by, on behalf of, with the assistance of or at the behest of any of the following persons or organizations: the **Named Member**, a **Subsidiary**, or any present or former director, trustee, officer, administrator, manager, department head, employee, **Volunteer** or member of a committee of the **Named Member** or a **Subsidiary**.

35. Section 4 of this Contract does not apply to any **Claim** for **Personal Injury** or **Advertising Injury** if the **Named Member** or any **Subsidiary** is in the business of advertising, broadcasting, publishing or telecasting.

36. Section 3 and 4.2 of this Contract do not apply to: (a) a denial, suspension, revocation, termination or limitation of medical staff privileges, or (b) any **Claim** by a patient, resident of a **Member's** facility or a person seeking care or treatment. However, clause (b) does not apply to sexual abuse, assault, battery, harassment, or molestation if the alleged perpetrator is a visitor, vendor, custodian, security guard or a person not covered by BETARMA and the incident is not directly related to the rendering or failure to render **Professional Services**.

37. Section 5 of this Contract does not apply to any **Claim**:

    A.  based in whole or in part on the termination of any **Employee Benefit Program**;

    B.  alleging that a **Member** gained any personal profit or advantage to which that **Member** is not entitled;

    C.  arising out of any **Member's** liability to return remuneration paid to that **Member** in violation of any law; or

    D.  alleging fiduciary liability associated with any **Employee Benefit Program**.

38. Section 5 of this Contract does not apply to any **Claim** based upon or attributable to:

    A.  investing, reinvesting, purchasing, acquiring, exchanging, selling, managing, handling or holding funds, including but not limited to liability under Section 53600.3 of the California Government Code;

    B.  failure of investments or securities to perform as represented;

    C.  advice given to participate or not participate in any **Employee Benefit Program**;

    D.  failure to provide benefits because they are unfunded or not properly funded;

    E.  any failure to effect and/or maintain insurance;

    F.  any insurance company's failure to comply with the terms of its contract; or

    G.  the insolvency of any insurance company.

## SECTION 7 – PROVISIONS APPLICABLE TO ALL COVERAGES

1. **WHO IS PROTECTED UNDER THIS CONTRACT**

    A. The term **Member** refers to the **Named Member** and each **Subsidiary** identified in the Certificate or by amendment, and each of the following persons, but only with respect to his or her legal liability when acting within the course and scope of his or her duties to the **Named Member** or **Subsidiary** and only to the extent the **Named Member** or **Subsidiary** is permitted or required by law to indemnify him or her:

        (1) any member of the board of directors or board of trustees, and any officer, administrator or department head of the **Named Member** or **Subsidiary**;

        (2) any employee (other than a physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife) or **Volunteer** of the **Named Member** or **Subsidiary**;

        (3) any medical director, but only when performing teaching or administrative duties and not in connection with any **Direct Patient Care**; and

        (4) any member of the **Named Member's** or **Subsidiary's** medical staff when involved in the following, other than in connection with any **Direct Patient Care**:

            (a) any **Supervisory, Evaluation or Instructional Services** with respect to employees, trainees or medical staff members or applicants of the **Named Member** or **Subsidiary**, including proctoring of any medical staff member or applicant.

            (b) any **Supervisory, Evaluation or Instructional Services** with respect to residents, paramedics, trainees, members of the medical staff or applicants for medical staff membership or privileges.

            (c) Healthcare research, if before the research was commenced, the **Named Member** or **Subsidiary's** Institutional Review Board approved the research study or trial.

    Coverage will be extended to a physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife for acts or omissions relating to or in connection with **Direct Patient Care**, including but not limited to healthcare research in connection with **Direct Patient Care**, only upon compliance with the requirements specified in Section 7.1.A.(8) below and BETARMA's issuance of a certificate evidencing such coverage.

    **Direct Patient Care** includes, but is not limited to, any direct treatment, consultation, diagnostic tests or procedures, therapeutic procedures, pathological analysis or reports, or any other associated medical or health services.

    **Supervisory, Evaluation or Instructional Services** means that supervision, evaluation or instruction required by the **Named Member** or **Subsidiary** or as an obligation of medical staff membership and for which the staff physician volunteers or is paid for such services by the **Named Member** or **Subsidiary**. The fact that the patient may also be obligated to pay for **Professional Services** rendered to the patient in the course of **Supervisory, Evaluation or Instructional Services** shall not reduce the coverage for a medical staff member's service solely as a proctor.

        (5) the **Named Member's** or **Subsidiary's** employee for any act, error or omission committed by a person whom he or she is supervising or proctoring.

EXHIBIT _A_
Page _23_ Of- _35_

(6) any person:

    (a) when acting as a member of or unpaid advisor to the **Named Member's** or a **Subsidiary's** board or any committee;

    (b) when acting as a member of any committee of the **Named Member's** or a **Subsidiary's** medical or professional staff;

    (c) when communicating information (other than legal advice) to the **Named Member** or a **Subsidiary** or its medical or professional staff for the purpose of aiding in the evaluation of the qualifications, fitness or character of an applicant for membership or privileges on such medical or professional staff or for purposes of initiating corrective action; or

    (d) charged by the **Named Member** or a **Subsidiary** with the duty of acting as a hearing officer or agent of a judicial review committee executing directives of any such board or committee. These individuals are not deemed to be independent contractors for the purpose of this Contract. This provision does not apply to any settlement review panel or arbitration under any insurance or coverage contract.

(7) any person (other than a physician, surgeon, dentist, physician assistant, nurse anesthetists, nurse practitioner or nurse midwife) enrolled as a student in a formal training program offered by the **Named Member** or a **Subsidiary** or offered by a third party educational institution at a **Covered Location** pursuant to a written agreement with the **Named Member** or **Subsidiary**. However, coverage shall not apply if the third party educational institution has agreed in writing to obtain liability coverage for the students.

(8) any physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife ("healthcare professional") who is employed by the **Named Member** or **Subsidiary** or provides **Professional Services** to the **Named Member** or **Subsidiary** on an independent contractor basis, subject, however, to the following:

    (a) the healthcare professional must possess the proper credentials and the **Named Member** or **Subsidiary** must have appropriately granted privileges to the healthcare professional, if required at the applicable **Covered Location**;

    (b) coverage is afforded only until the fifth (5th) calendar day after the healthcare professional's hire date or the effective date of his or her contract with the **Named Member** or **Subsidiary** or the termination of the **Contract Period**, whichever is earlier; and

    (c) coverage will be extended beyond the fifth (5th) calendar day only upon the **Named Member's** or **Subsidiary's** submission of such underwriting information as may be required by BETAʀᴍᴀ, BETAʀᴍᴀ's issuance of a certificate evidencing coverage for the healthcare professional, and timely payment of the Contribution specified by BETAʀᴍᴀ.

If these requirements are not met or the healthcare professional is not deemed to be an acceptable underwriting risk by BETAʀᴍᴀ, the healthcare professional will have no coverage beyond the fifth (5th) calendar day.

(9) the estates, heirs, executors, administrators and legal representatives of any individual **Member** in the event of the **Member's** death, but only to the extent the **Member** would otherwise be provided coverage under this Contract.

(10) any individual who previously qualified as a **Member** under clauses (1) through (8) above prior to the termination of his or her relationship with the **Named Member** or **Subsidiary**, but only for **Claims** alleging acts or omissions occurring prior to the termination of the relationship specified in those subsections.

EXHIBIT ___A___
Page _24_ Of- _35_

B.　If the **Named Member** or a **Subsidiary** is a limited liability company, the following are **Members**, but only to the extent that **Named Member** or **Subsidiary** is permitted or required by law to indemnify them:

　　(1)　its members, but only with respect to the conduct of its business; and

　　(2)　its managers, but only when acting within the course and scope of their duties to the **Named Member** or **Subsidiary**.

## 2.　OTHER PERSONS AND ENTITIES ELIGIBLE FOR PROTECTION UNDER THIS CONTRACT

The following persons and entities are covered as **Supplemental Members** under this Contract, subject to all of its terms and conditions, except any provision which is stated not to apply to **Supplemental Members**:

A.　the Lessor of equipment the **Named Member** or a **Subsidiary** leases, but only for **Bodily Injury** and **Property Damage** resulting solely from the acts, errors or omissions of the **Named Member** or **Subsidiary** in its use of the leased equipment. This extension of coverage applies only to Sections 2 and 3. This Contract does not apply to any **Bodily Injury** or **Property Damage** arising out of the acts, errors or omissions of the lessor or its agents or employees.

B.　the Lessor of premises the **Named Member** or a **Subsidiary** leases, but only for **Bodily Injury** and **Property Damage** resulting solely from the acts, errors or omissions of the **Named Member** or **Subsidiary** in its use of the leased premises. This extension of coverage applies only to Sections 2 and 3. This Contract does not apply to any **Bodily Injury** or **Property Damage** arising out of the acts, errors or omissions of the lessor or its agents or employees.

C.　any **Supplemental Member** to whom coverage is extended by amendment.

## 3.　COVERAGE IN THE EVENT OF ACQUISITIONS, MERGERS AND DISSOLUTIONS

A.　If the **Named Member** or **Subsidiary** acquires or forms any organization, other than a partnership or joint venture, over which the **Named Member** or **Subsidiary** maintains at least fifty percent (50%) ownership or control, the organization will qualify as a **Subsidiary** under this Contract for acts or omissions committed or begun on or after the date that the **Named Member** or **Subsidiary** acquired or formed the organization. However, coverage under this provision shall be in excess of any other valid and collectible insurance or other coverage available to the organization. Coverage under this provision is afforded only until the thirtieth (30th) calendar day after the **Named Member** or **Subsidiary** acquires or forms the organization or the end of the **Contract Period**, whichever is earlier.

B.　If, before or during the **Contract Period**, the **Named Member** or any **Subsidiary** is acquired by or merged with any other entity, or dissolved, coverage for the acquired, merged or dissolved entity will terminate and will continue only for **Claims** against the directors, officers, trustees and other individual **Members** of such **Named Member** or **Subsidiary**, and only for acts or omissions committed prior to the acquisition, merger or dissolution.

"Coverage," as used in this section, includes the obligation to defend **Claims** and to pay **Defense Expenses** and indemnification.

## 4.　SEPARATION OF MEMBERS' INTERESTS

Except with respect to the Limit of Liability and any rights or duties specifically assigned to the first **Named Member**, this coverage applies:

A.　as if each **Member** were the only **Member**; and

B.　separately to each **Member** against whom a **Claim** is made.

EXHIBIT _A_
Page _2 5_ Of- _3 5_

5. **WHERE THIS CONTRACT PROVIDES PROTECTION**

Except as provided in Section 2.1, 2.3, 2.4 and Section 6.19, this Contract will apply anywhere in the world, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada. As for **Claims** that are brought outside of the United States of America, its territories or possessions, Puerto Rico or Canada, BETArma shall have the right but not the obligation to investigate and settle such **Claims** and/or to defend such **Claims**.

6. **BETArma's DUTY TO DEFEND**

A. BETArma will defend any covered **Claim** against a **Member**, even if the allegations of the suit are groundless, false or fraudulent. BETArma will defend a **Claim** if the facts alleged by the **Claimant** create a potential for liability within the coverage of this Contract, even if BETArma's obligation to indemnify is doubtful and is not ultimately established. BETArma has no duty to defend any **Claim** that is not covered by this contract.

B. BETArma has the exclusive right, using counsel of BETArma's choice, to investigate, negotiate and defend any **Claim**. Notwithstanding any other provision of this Contract, a reservation by BETArma of the right not to cover certain causes of action, certain alleged acts or omissions or certain allegations of damage shall not entitle a **Member** to select defense counsel to be paid for by BETArma, nor shall BETArma be obligated to pay for separate, independent or additional defense counsel in such circumstances.

C. BETArma, in its sole, absolute and unreviewable discretion, may prosecute any appeal by the **Member** from an adverse judgment. If the **Member** chooses to appeal in spite of BETArma's decision not to appeal, BETArma shall have no obligation to pay for any costs of appeal, including attorneys' fees or bond premiums, and shall not be obligated to pay any post-judgment interest on the judgment even though these amounts may be within its Limit of Liability.

D. BETArma shall not be obligated to pay any **Defense Expenses** or to defend or to continue to defend any **Claim**, or to take or to continue to prosecute any appeal, once an applicable Limit of Liability shown on the Certificate, by amendment, or elsewhere has been exhausted.

7. **THE TOTAL BETArma WILL PAY**

A. The most BETArma will pay for any one **Claim** is the per-**Claim** Limit of Liability specified in the Certificate or by amendment. If the Certificate specifies a Deductible amount for "Indemnity Only", the deductible amount will reduce the amount that BETArma will pay on account of damages for a **Claim**. If the Certificate specifies a Deductible amount for "Indemnity & Expense", the Deductible amount will reduce the amount that BETArma will pay on account of both **Defense Expenses** and damages for a **Claim**. Except as otherwise provided by amendment, **Defense Expenses** paid by BETArma are in addition to the per-**Claim** Limit of Liability.

B. In no event shall BETArma be obligated to defend or to continue to defend any **Claim**, to take or prosecute any appeal or to make any additional payments, including **Defense Expenses**, once an applicable Limit of Liability shown on the Certificate, by amendment, or elsewhere has been exhausted by payments of judgments or settlements.

C. The inclusion in a **Claim** of more than one **Member** or the making of **Claims** or the bringing of suits by more than one **Claimant** shall not increase the Limit of Liability. If two or more coverages under this Contract apply to a **Claim** (including coverages added by amendment), the most that BETArma will pay is the highest applicable Limit of Liability.

D. When two or more **Claims** are treated as a single **Claim** under the definition of "**Claim**," one Deductible and one Limit of Liability shall apply to all such **Claims**.

E. Limits of Liability under multiple BETArma Contracts may not be combined, added or stacked. The Aggregate Limit of Liability is the most that BETArma will pay, regardless of the number or

EXHIBIT _A_

Page _26_ Of- _35_

duration of any and all **Claims**, **Occurrences**, injuries, acts, errors, omissions, offenses or successive periods of coverage involved.

F. This provision applies only to coverages that are provided on an Occurrence basis. If **Bodily Injury**, **Property Damage**, **Economic Damages**, **Personal Injury**, **Advertising Injury** and discrimination, acts, errors, omissions or offenses (collectively, "Injuries and Events") occur over a period of time within the **Contract Period** of two or more BETARMA Contracts, all such Injuries and Events shall be deemed to occur during the first such Contract, and the most that BETARMA will pay is the applicable Limit of Liability specified in that Contract.

G. It is the intention of BETARMA and the **Members** that this Contract and a BETARMA Directors, Officers and Trustees Liability Coverage Contract including Healthcare Entity Coverage or a BETARMA Automobile Liability and Physical Damage Coverage Contract between BETARMA and **Members** shall not provide any duplication or overlap of coverage for the same **Claim**. Nonetheless, if both this Contract and another such BETARMA Coverage Contract, including amendments, do apply to a **Claim**, the terms, conditions and exclusions, including the Deductible and the Limits of Liability, of each such Coverage Contract shall apply, provided, however, that in no event shall the **Member** pay more than the highest Deductible, nor shall BETARMA pay more than the highest applicable Limit of Liability.

## 8. ADDITIONAL AMOUNTS BETARMA WILL PAY

BETARMA will pay the following additional amounts:

A. the cost of bonds legally required to release attachments, but only for bond amounts within the Limit of Liability, and all premiums on appeal bonds required to appeal a covered judgment. BETARMA does not, however, have to apply for or furnish these bonds.

B. all expenses incurred by BETARMA.

C. all costs taxed against a **Member** on a covered cause of action.

D. all prejudgment and post-judgment interest on only the part of any judgment that BETARMA pays, and before BETARMA has paid, offered to pay, or deposited in the court the part of the judgment that is within BETARMA's applicable Limit of Liability.

## 9. PAYMENTS REQUIRED FROM MEMBERS AND RIGHT TO AUDIT

A. Contribution.

The **Named Member** shall pay a Contribution based on the estimated exposures that are calculated from the reported census the **Named Member** provided to BETARMA on or before the beginning of the **Contract Period**. BETARMA shall inform the **Named Member** of its Contribution for the **Contract Period** and installment Contribution. The **Named Member** shall pay each installment Contribution in full on or before the due date shown on the invoice.

If BETARMA does not receive the full installment Contribution by the late date shown on the invoice, a penalty equal to five percent (5%) of the original installment Contribution due shall be added to the Contribution. A 10-Day Notice of Cancellation shall be mailed to the **Named Member** on the first business day after the late date canceling coverage if BETARMA does not receive the full installment Contribution, including the five percent (5%) penalty, by the cancellation date stated on the 10-Day Notice of Cancellation ("10-Day" shall equal ten (10) calendar days). An additional penalty equal to five percent (5%) of the original installment Contribution due will be charged to reinstate coverage, if BETARMA elects in its sole, absolute and unreviewable discretion, to reinstate coverage. The entire Contribution due to BETARMA, including all penalties, must be received before coverage will be reinstated.

EXHIBIT _A_
Page _27_ Of _35_

The **Named Member** must promptly report any exposure increases due to New Exposures during the course of the **Contract Period**. New Exposures shall mean an addition of a new location, new service, or a new physician, surgeon, dentist, physician assistant, nurse anesthetists, nurse practitioner or nurse midwife. If BETARMA determines that a New Exposure materially changes Ratable Exposures, BETARMA will invoice the **Named Member** for the additional Contribution for coverage of the New Exposure. Ratable Exposures include but are not limited to exposure data reported by the **Named Member** on the census report form.

If Ratable Exposures materially change due to closure of a location, discontinuation of a service or termination of a physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife, the **Named Member** may receive a Contribution adjustment, subject to the BETARMA Underwriting Department's approval.

At any time until sixty (60) calendar days after the Expiration Date of this Contract, the **Named Member** may make a written request to BETARMA for adjustment of the Contribution based on the **Named Member's** audit of the exposure data. At any time until sixty (60) calendar days after the Expiration Date, BETARMA may audit the exposure data submitted to BETARMA and make adjustments to the Contribution. If the **Named Member** fails to disclose or misrepresents exposure data provided to BETARMA, BETARMA may audit prior years. If the **Named Member** fails to pay additional amounts invoiced by the due date of the invoice, BETARMA may cancel any BETARMA Coverage Contracts then in effect with ten (10) calendar days' written notice.

If the **Named Member** terminates this Contract at any time prior to the Expiration Date, earned Contribution shall be computed in accordance with the customary short rate table and procedure.

B. Deductible and Other Payments.

    (1) The **Named Member** is responsible for any Deductible amount that is specified in the Certificate.

        (a) Deductibles paid by the **Member** are included as part of, and are not in addition to, the applicable Limits of Liability.

        (b) If a **Member** elects to write off all or part of a bill for services, the amount written off shall not apply toward exhaustion of the Deductible.

        (c) If the **Member** fails to pay a Deductible by the due date, a five percent (5%) penalty will be added to the amount owed to BETARMA. If any part of the Deductible remains outstanding for more the thirty (30) calendar days, interest shall accrue on the outstanding balance at the rate of 1.5% per month.

    (2) If BETARMA pays any amount in settlement or satisfaction of any **Claim** within the Deductible, in excess of the Limit of Liability, or for which BETARMA has no liability under this Contract, the **Member** shall reimburse BETARMA for such amounts within thirty (30) calendar days of BETARMA's request.

    (3) Notwithstanding any other provision of this Contract, if a **Member** is required by law to seek recovery from an elected official of any payment, including **Defense Expenses**, which BETARMA has paid, advanced or reimbursed, the **Member** shall repay all such sums to BETARMA within thirty (30) calendar days of BETARMA's request.

C. Offsetting Sums.

BETARMA may reduce any amount owed to the **Named Member** by BETARMA, or any credit against the **Named Member's** monthly Contribution, by the amount of any sum owed to BETARMA which has remained unpaid for more than thirty (30) calendar days.

D. BETARMA's Right to Inspect and Audit.

(1) BETARMA shall be permitted, but not obligated, to inspect the **Member's** property and operations at any time. Neither BETARMA's right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on behalf of, or for any **Member's** benefit, to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.

(2) BETARMA may examine and audit a **Member's** books and records relevant to the subject matter of this Contract at any time during the **Contract Period**, and extensions thereof, and within one (1) year after the final termination of this Contract.

## 10. MEMBERS' DUTIES IN THE EVENT OF OCCURRENCE OR CLAIM

A. The **Member** must notify BETARMA, as soon as practicable, of an **Occurrence**, act, error or omission or offense which may reasonably be expected to result in a **Claim**. The notice must include:

(1) how, when and where the **Occurrence**, act, error or omission, or offense took place;

(2) the names and addresses of any injured persons and witnesses; and

(3) the nature of any injury or damage arising out of the **Occurrence**, act, error or omission, or offense.

Such notice is not considered a **Claim** for the purpose of determining coverage.

B. If a **Claim** is made or brought against the **Member**, the **Member** must:

(1) immediately record the specifics of the **Claim**, including the date received;

(2) notify BETARMA as soon as possible;

(3) immediately forward to BETARMA copies of any demands, notices, summonses or legal papers received in connection with the **Claim** or suit;

(4) authorize BETARMA to obtain all records and other information, including submitting to examination and interrogation by a representative of BETARMA, under oath, if required;

(5) cooperate fully with BETARMA in the investigation, settlement and defense of the **Claim** or suit, including attending hearings, depositions and trials, assisting in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, assisting in the conduct of suits, and giving a written statement or statements to BETARMA; and

(6) assist BETARMA fully to do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the **Member** may have, and authorize BETARMA to exercise those rights in the **Member's** name.

C. No **Member** shall, except at the **Member's** own cost, admit liability for or settle any **Claim**, voluntarily make a payment, assume any obligation or incur any expense without the prior written consent of BETARMA.

D. If a **Claim** involves both covered and noncovered allegations, theories of recovery or relief, BETARMA shall be responsible only for that portion of the total amount that is covered by this Contract. Each **Member** and BETARMA shall use their best efforts to agree upon a fair and proper allocation of covered and noncovered sums. Each **Member**, if requested by BETARMA, shall use its best efforts to secure:

EXHIBIT _A_
Page _29_ Of- _35_

    (1) a special verdict and findings that segregate covered and noncovered allegations, theories of recovery or relief; and

    (2) a bifurcation of the trial or hearing as to covered and noncovered allegations, theories of recovery or relief.

Should a **Member** and BETARMA be unable to resolve any disagreement regarding allocation of covered and noncovered sums, either may invoke the arbitration provisions of this Contract.

## 11. SETTLEMENT OF CLAIMS AND PAYMENT OF JUDGMENTS

  A. Settlement of **Claims**

    (1) No settlement shall be made of any **Claim** against a **Member** without the **Member's** consent, except as provided in this Section. Further, in granting or withholding such consent, the **Member** shall act reasonably and in good faith considering its and BETARMA's respective interests. If BETARMA and the **Member** cannot agree on the appropriateness of the settlement, the matter shall be submitted to settlement review as follows:

      (a) if BETARMA recommends settlement of a **Claim**, and if the **Member** desires to withhold consent to such settlement, the **Member** shall within seven (7) calendar days after notification of the recommendation appeal such recommendation to a settlement review panel. The appeal shall be in writing and shall be submitted to the BETARMA Claims Representative assigned to the **Claim**. The appeal shall indicate whether the **Member** requests to be present during the settlement review panel hearing. The settlement review panel shall be composed of:

        (i) a minimum of three (3) Members of the BETA Council, each of whom is appointed by the chairperson;

        (ii) one of the **Named Member's** administrators; and

        (iii) one of the **Named Member's** directors or trustees.

      (b) upon completion of the review, the settlement review panel shall determine whether the proposed settlement is reasonable and it shall immediately advise BETARMA and the **Member** of its decision.

      (c) If the **Member** fails to timely appeal, BETARMA will settle the **Claim** as proposed and submit National Practitioner Data Bank and licensing agency reports as required by law. If the BETA Council Chairperson or the **Named Member** fails to appoint members to the settlement review panel within five (5) calendar days of receipt of notice of the appeal, the appeal may be decided by the members of the settlement review panel who have been appointed during that period.

    (2) The decision of the settlement review panel shall be binding upon both BETARMA and the **Member**.

    (3) This Section 7.11.A does not apply to **Supplemental Members**, unless otherwise provided by amendment.

  B. Payment of Judgments

BETARMA may seek periodic payment of a judgment when such payment is permitted by law.

## 12. DISPUTES WITH BETARMA

EXHIBIT   *A*

Page 3o Of- 35

A. Legal Action Against BETARMA.

    (1)  No person or entity may join BETARMA as a party or otherwise bring BETARMA into any **Claim**, suit, arbitration or other proceeding against the **Member**.

    (2)  No person or entity has a right under this Contract to sue or arbitrate with BETARMA on this Contract unless all of its terms have been fully complied with and either a final judgment against the **Member** after an actual trial or a written agreement signed by BETARMA, the **Member** and the **Claimant** has been obtained.

    (3)  This Contract does not extend any rights to a **Claimant**.

B. **Arbitration of Disputes.**

*All disputes in any way concerning, arising out of or relating to this Contract that shall be submitted to binding arbitration, unless resolved through BETARMA's internal dispute resolution procedure established by the BETA Council.*

*Before requesting arbitration a Member must complete BETARMA's internal dispute resolution procedure established by the BETA Council. Requests for binding arbitration must be made within thirty (30) calendar days after the internal dispute resolution hearing decision is provided in writing to the Named Member by BETARMA. If a request is not made within thirty (30) calendar days, the decision shall be final and binding.*

*The arbitration and discovery will be governed by the California Arbitration Act, Section 1280, et seq. of the Code of Civil Procedure, except to the extent that it is inconsistent with this Section. BETARMA and each Member waive the right to court remedies, including a jury trial.*

*In all such arbitrations the terms, conditions and exclusions of this Contract shall be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of the Contract.*

*In any arbitration, one Arbitrator will be chosen by all Members collectively, the other by BETARMA, and a Neutral Arbitrator will be chosen by the mutual agreement of the two Arbitrators before they enter into arbitration. If any party should fail to choose an Arbitrator within thirty (30) calendar days following a written request by the other party to do so, the requesting party may choose two Arbitrators.*

*Each party will present its case to the Arbitrators within thirty (30) calendar days following the date of appointment of the Neutral Arbitrator. The Neutral Arbitrator shall be the judge of the relevance of the evidence offered and is not required to follow the strict rules of evidence. The decision of the Arbitrators chosen by the parties shall be final and binding on the parties; but, if these Arbitrators fail to agree, the decision of the majority of the Arbitrators shall be final and binding upon the parties. The Arbitrators shall be limited to the remedies that could be awarded by the Superior Court of the State of California. Judgment upon the final decision of the Arbitrators may be entered in any court of competent jurisdiction.*

*Each party shall bear the expense of its own Arbitrator, and shall jointly and equally bear with the other the expense of the Neutral Arbitrator and of the arbitration. In the event that the two Arbitrators are chosen by one party, as provided above, the expense of the Arbitrators, the Neutral Arbitrator and the arbitration shall be equally divided between the parties.*

*Any arbitration proceedings shall take place in San Francisco, California.*

EXHIBIT _A_
Page _31_ Of- _35_

*The Arbitrators shall have no authority to review any matter as to which this Contract grants BETAʀᴍᴀ sole discretion, including but not limited to the cost and terms of any extended reporting period. No Member may arbitrate, or contest in any court, any such exercise of discretion.*

## 13. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO BETAʀᴍᴀ

A. If BETAʀᴍᴀ makes any payment under this Contract, BETAʀᴍᴀ is entitled to the extent of its payment to take over the **Members'** rights of recovery against all others. The **Members** must do nothing to make it harder for BETAʀᴍᴀ to enforce those rights, and must sign and deliver any papers, and do anything else that may be necessary, to enable BETAʀᴍᴀ effectively to bring suit in the name of the **Members**. The obligations of the **Members** under this provision will survive the termination of the **Contract Period**.

B. Any amount recovered pursuant to this Section shall be apportioned as follows:

    (1) any recovery shall first be used in the repayment of expenses incurred toward recovery;

    (2) next, to any damages and **Defense Expenses** paid by BETAʀᴍᴀ;

    (3) next, to any damages and **Defense Expenses** paid by the **Member** in excess of any Deductible amount;

    (4) next, to any damages and **Defense Expenses** paid by an excess carrier on the **Member's** behalf;

    (5) next, to any damages and **Defense Expenses** paid by any other insurer on the **Member's** behalf; and,

    (6) finally, to the repayment of the **Member's** Deductible amount.

## 14. APPLICABILITY OF INSURANCE OR OTHER COVERAGE A MEMBER MAY ALSO HAVE

A. BETAʀᴍᴀ Provides Initial Protection for Certain **Members**.

With respect to all **Members** identified in Section 7 other than the **Named Member**, any **Subsidiary** and the persons identified in Sections 7.1.A(1) and 7.A(6)(a), this Contract provides protection prior to any applicable insurance or other coverage or self-insurance.

B. The Protection Afforded Under This Contract Is Excess Protection for Certain **Members**.

With respect to the **Named Member**, any **Subsidiary** and the persons identified in Sections 7.1.A(1) and 7.1.A(6)(a), this Contract shall be excess of any valid and collectible insurance or other coverage or self-insurance obtained or maintained by the **Member** or for the **Member's** benefit, whether such coverage or insurance or self-insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other coverage or insurance or self-insurance is written only as specific excess coverage, insurance or self-insurance over and above the Limit of Liability provided under this Contract by reference to the Certificate number of this Contract.

## 15. DELEGATION BY BETAʀᴍᴀ AND ASSIGNMENT BY MEMBERS

A. Delegation.

Any or all Contract duties, obligations and responsibilities of BETAʀᴍᴀ may be delegated or assigned to independent contractors and consultants retained or employed by BETAʀᴍᴀ.

EXHIBIT *A*
Page 3 2 Of 3 5

B. Assignment.

Any assignment of any right or interest under this Contract shall not bind BETARMA without its written consent.

## 16. GOVERNING LAW

This Contract in all respects shall be governed by and construed in accordance with the laws of the State of California, without regard to its choice of law rules.

## 17. THE TERMS OF THIS CONTRACT SHALL CONFORM TO STATUTE

Any terms of this Contract that conflict with any applicable statute of the State of California are hereby amended to conform to such statute.

## 18. EFFECTIVE DATE OF THIS CONTRACT

This Contract shall be effective as of the Effective Date specified on the Certificate of Participation, but only if the Certificate has been signed by a duly authorized representative of BETARMA.

## 19. TERMINATION OF THIS CONTRACT

A. Termination by **Named Member**.

The **Named Member** may terminate this Contract by mailing to BETARMA -- at the address specified on the Certificate -- written notice stating when, not less than thirty (30) calendar days thereafter, the termination will be effective.

B. Termination by BETARMA.

(1) BETARMA may terminate this Contract for:

(a)  failure to pay any Contribution when due;

(b)  failure to reimburse BETARMA for payments made

(i)  within the Deductible,

(ii)  in excess of the Limit of Liability,

(iii)  for which BETARMA has no liability under this Contract, or

(iv)  which the **Member** is obligated to repay to BETARMA;

(c) failure to abide by any provision of the Joint Powers Authority Agreement, as it may be amended, or this Contract;

(d) failure to give prompt notification to BETARMA of any **Claim**; or

(e) upon a majority vote of the BETA Council, for failure to implement loss control or risk management recommendations.

When termination is for any reason specified above, the **Named Member** shall be given ten (10) calendar days' written notice, return receipt requested, of termination. Proof of mailing shall be deemed proof of receipt.

EXHIBIT _A_
Page 33 Of- 35

(2) BETA<small>RMA</small> may terminate this Contract for any reason other than those provided above by mailing written notice stating when, not less than ninety (90) calendar days thereafter, the termination shall be effective.

C.  Automatic Termination.

This Contract shall automatically terminate on the effective date of the **Named Member's** withdrawal or termination as a member of BETA<small>RMA</small>.

D.  Effect of Termination; Adjustment of Contribution.

(1) Termination by either party shall extinguish the coverage provided to all **Members** as of the effective date of the termination.

(2) The **Named Member** shall remain liable for any unpaid Contribution, penalties, Deductibles, interest and other sums that have accrued before and/or after the termination. Payment of all such sums due BETA<small>RMA</small> shall be made within thirty (30) calendar days of the time at which termination is effective or within thirty (30) calendar days of BETA<small>RMA</small>'s request, if the amount becomes due after the termination of the Contract.

(3) Notwithstanding any other provision of this Contract, if the **Named Member** fails to pay all sums due BETA<small>RMA</small> upon written notice, BETA<small>RMA</small> shall have no further obligation to defend or indemnify the **Named Member** and **Subsidiaries** with regard to open **Claims**.

## 20. LIMITED RIGHT TO EXTENDED REPORTING PERIOD

A.  Except as provided in this Section or by amendment, upon termination of coverage there is no extended reporting period available to **Members** for **Claims** first made after this Contract ends.

B.  If this Contract is terminated by BETA<small>RMA</small> or the **Named Member**, the **Named Member** shall have the right to purchase an extended reporting period upon payment of an additional Contribution.  This right will terminate, however, unless written notice of the **Named Member's** election is received by BETA<small>RMA</small> within thirty (30) calendar days of the effective date of the termination of this Contract.  The extended reporting period will provide coverage for **Claims** which are otherwise covered under this Contract and are first made and reported in writing to BETA<small>RMA</small> as soon as possible during the extended reporting period, but only with respect to negligent acts, errors, or omissions (under Section 2) occurring on or after the **Retroactive Date** and before the effective date of such termination.  The cost and terms of the extended reporting period shall be determined in the sole, absolute and unreviewable discretion of BETA<small>RMA</small> at the time the extended reporting period is requested.  This provision applies only to coverages that are provided on a "claims made and reported" basis.

C.  The **Named Member** does not have the right to purchase an extended reporting period if, on the date of termination, the **Named Member** has failed to pay any Contribution due under this Contract, or has failed to reimburse BETA<small>RMA</small> for any amount BETA<small>RMA</small> has paid on account of any settlement or as damages or **Defense Expenses** in excess of any applicable Limit of Liability, or has otherwise failed to pay any other amount due BETA<small>RMA</small>.

D.  The extension shall not increase the Limit of Liability specified in the Certificate.

E.  The extension will reinstate the Limit of Liability specified in the Certificate one time only.

## 21. MEMBERS' AUTHORIZATION AND NOTICES TO MEMBERS

All **Members** agree that the **Named Member** will act on their behalf for receiving all notices from BETA<small>RMA</small>, and for the negotiation and acceptance of any modification to any provision of this Contract.

EXHIBIT ___*A*___
Page 34 Of- 35

## 22. LIMITS ON HOW THIS CONTRACT CAN BE CHANGED

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of BETArma will not effect a waiver or change in any part of this Contract, nor estop BETArma from asserting any right under the terms, conditions and limitations of this Contract. The terms, conditions and limitations of this Contract may only be waived or changed by written amendment.

## 23. MEMBERS' REPRESENTATIONS ON WHICH BETArma HAS RELIED

All **Members** represent that the statements contained in the application, any updated or supplementary application and all materials submitted to BETArma in connection with an application, are true, accurate and complete. All **Members** agree that:

A. those statements are the basis of this Contract and are to be considered incorporated into and a part of this Contract;

B. those statements are material to BETArma's acceptance of its obligations under this Contract; and

C. this Contract is issued in reliance upon the truth, accuracy and completeness of those statements.

## 24. NON-RENEWAL OF THIS CONTRACT

A. The **Named Member** may elect not to renew this Contract for any reason.

B. BETArma may elect not to renew this Contract for any reason.

If BETArma decides not to renew this Contract, BETArma will mail or deliver written notice of the non-renewal to the **Named Member** not less than sixty (60) calendar days before the Expiration Date specified in the Certificate. If the notice is mailed, proof of mailing will be sufficient proof of notice. BETArma need not mail or deliver such notice if the **Named Member** has informed BETArma that the **Named Member** is obtaining replacement coverage.

If BETArma elects to renew this Contract without offering coverage to an Individual **Member**, BETArma will mail or deliver written notice to the **Named Member** not less than sixty (60) calendar days before the Expiration Date specified on the Certificate. BETArma need not give such notice of other intended changes to the renewal contract.

C. Effect of Non-Renewal; Adjustment of Contribution.

(1) Non-renewal by either party shall extinguish the coverage provided to all **Members** as of the Expiration Date of this Contract.

(2) The **Named Member** shall remain liable for any unpaid Contribution, penalties, Deductibles, interest and other sums that have accrued before and after the Expiration Date. Payment of all such sums due BETArma shall be made within thirty (30) calendar days of the time at which expiration is effective or within thirty (30) calendar days of BETArma's request, if the amount becomes due after the expiration of the Contract. Notwithstanding any other provision of this Contract, if the **Named Member** fails to pay all sums due BETArma upon written notice, BETArma shall have no further obligation to defend or indemnify the **Named Member** and **Subsidiaries** with regard to open **Claims**.

EXHIBIT _A_
Page _35_ Of _35_

# EXHIBIT B

EXHIBIT   _B_

Page _l_ Of- _34_

## BETA RISK MANAGEMENT AUTHORITY

### AUTOMOBILE LIABILITY AND PHYSICAL DAMAGE
### COVERAGE CONTRACT

---

**IMPORTANT**

THIS IS A NON-ASSESSABLE COVERAGE CONTRACT. THIS COVERAGE CONTRACT REQUIRES ARBITRATION OF DISPUTES WITH BETArma. PLEASE READ THE ENTIRE CONTRACT CAREFULLY.

---

AUTO (07/12)

---

## IMPORTANT NOTICES

---

BETA Risk Management Authority ("BETARMA") is a California Joint Powers Authority formed to pool self-insured claims and losses among public entities and nonprofit organizations providing healthcare services as authorized by California Government Code Sections 990.4(a), 990.8(c) and 6257 and subject to the provisions of Section 991.2. BETARMA is not subject to regulation as an insurer. As a public agency, it will, for example, be guided by *Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, rather than *San Diego Federal Credit Union v. Cumis Ins. Society* (1984) 162 Cal.App.3d 385, when deciding whether to engage or provide reimbursement for independent defense counsel. This Contract is not an insurance policy. The **Named Member** must be a member in good standing in BETARMA to participate in the Group Self-Insurance Program. The **Named Member** pays, when due, Contributions to BETARMA. In return, BETARMA provides automobile liability and physical damage protection under this agreement. However, the Contract includes limitations, restrictions and exclusions. In other words, this agreement does not protect against all risks associated with your activities.

This Contract is an agreement arrived at by mutual negotiation among and consent of the members of BETARMA, approved by the BETA Council, and signed by BETARMA and the **Named Member**. The Contract is intended to be interpreted in accordance with the usual rules of contract law. Because, among other reasons, this Contract was negotiated at arm's length by parties of approximately equal bargaining power, any ambiguities that may be found are to be interpreted in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of the Contract. You should read this agreement carefully to determine the extent of the protection provided. This Contract sets forth the four basic coverages in Sections 2 through 5. Section 6 sets forth the exclusions. Section 7 sets forth common provisions that apply to the coverages. Amendments further expand or limit the coverages afforded. You must read the entire Contract, including the amendments and the Certificate of Participation ("the Certificate"), carefully in order to understand your and BETARMA's obligations. Words or terms that are in **bold** print have a special meaning that is set forth in the Definitions section, Section 1. These definitions limit the protection this Contract provides.

**Any disputes with BETARMA under this Contract that cannot be resolved must be arbitrated as set forth in Section 7. By accepting this Contract, you and BETARMA are agreeing to give up the right to court remedies, including a jury trial. Except as provided by law, the Arbitrators' ruling will be final and binding on the parties, and rights of appeal are strictly limited.**

EXHIBIT _____ B
Page _3_ Of _34_

## AUTOMOBILE LIABILITY AND PHYSICAL DAMAGE COVERAGE CONTRACT

This Automobile Liability And Physical Damage Coverage Contract comprises the following:

                                                                                             Page

CERTIFICATE OF PARTICIPATION

IMPORTANT NOTICES ................................................................................................................ ii

SECTION 1 – DEFINITIONS ......................................................................................................... 4

SECTION 2 – BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE.
                   WHAT BETARMA WILL COVER UNLESS EXCLUDED. ........................................ 9

SECTION 3 – AUTO MEDICAL PAYMENTS COVERAGE.  WHAT BETARMA WILL PAY UNLESS
                   EXCLUDED. ........................................................................................................ 12

SECTION 4 – DAMAGE TO THE NAMED MEMBER'S OR SUBSIDIARY'S COVERED AUTO. WHAT
                   BETARMA WILL COVER UNLESS EXCLUDED. ................................................ 13

SECTION 5 – UNINSURED/UNDERINSURED MOTORIST COVERAGE. WHAT BETARMA WILL PAY
                   UNLESS EXCLUDED. .......................................................................................... 14

SECTION 6 – EXCLUSIONS .................................................................................................... 16

SECTION 7 – PROVISIONS APPLICABLE TO ALL COVERAGES. ....................................... 22

     1.    MULTIPLE BETARMA COVERAGE CONTRACTS .................................................. 22
     2.    BANKRUPTCY .......................................................................................................... 22
     3.    PAYMENTS REQUIRED FROM MEMBERS AND BETARMA'S RIGHT TO AUDIT ..... 22
     4.    MEMBER'S DUTIES IN THE EVENT OF AN ACCIDENT ......................................... 23
     5.    ARBITRATION OF DISPUTES .................................................................................. 24
     6.    TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO BETARMA ......... 24
     7.    APPLICABILITY OF INSURANCE OR OTHER COVERAGE A MEMBER MAY ALSO
           HAVE ........................................................................................................................ 25
     8.    DELEGATION BY BETARMA AND ASSIGNMENT BY MEMBERS ............................ 25
     9.    GOVERNING LAW ................................................................................................... 25
     10.   THE TERMS OF THIS CONTRACT SHALL CONFORM TO STATUTE ..................... 25
     11.   TERMINATION OF THIS CONTRACT ....................................................................... 25
     12.   CONCEALMENT, MISREPRESENTATION OR FRAUD ............................................ 26
     13.   LIBERALIZATION ..................................................................................................... 27
     14.   NO BENEFIT TO BAILEE – PHYSICAL DAMAGE COVERAGE ............................... 27
     15.   COVERAGE PERIOD, TERRITORY .......................................................................... 27
     16.   MEMBERS' AUTHORIZATIONS AND NOTICES TO MEMBERS .............................. 27
     17.   LIMITS ON HOW THIS CONTRACT CAN BE CHANGED ........................................ 27
     18.   ALL AGREEMENTS CONTAINED IN THIS DOCUMENT .......................................... 27

AMENDMENTS

APPLICATION

EXHIBIT ___B___
Page _4_ Of _34_

BETARMA and all **Members**, subject to all of the terms, conditions and exclusions of this Contract, agree as follows:

## SECTION 1 – DEFINITIONS

1. **Accident** includes continuous or repeated exposure to the same conditions resulting in **Bodily Injury** or **Property Damage**.

2. **Auto** means a land motor vehicle, **Trailer** or semi trailer designed for travel on public roads but does not include **Mobile Equipment**.

3. **Bodily Injury** means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

4. **Certified Act of Terrorism** means a Certified Act of Terrorism, as defined under the federal Terrorism Risk Insurance Act of 2002 or as it may be amended from time to time.

5. **Covered Auto** means:

   A. Any **Auto** listed on the Schedule of Covered Vehicles attached to this Contract;

   B. Any **Replacement Auto,** or any additional **Auto** if BETARMA already covers all **Autos** that the **Named Member** or **Subsidiary** owns, or of which the **Named Member** or **Subsidiary** acquires ownership during the Contract Period, provided that for coverage to apply under Section 2 – **Bodily Injury** And **Property Damage** Liability Coverage and Section 4 – Damage To The **Named Member's** Or **Subsidiary's Covered Auto**, the **Named Member** or **Subsidiary** must notify BETARMA within thirty (30) calendar days of its acquisition;

   C. Any **Auto** not owned by the **Named Member** or **Subsidiary** being used as a temporary substitute for any other **Auto** described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, loss, or destruction. Coverage for Section 4 - Damage To The **Named Member's** Or **Subsidiary's Covered Auto** - does not apply to these temporary substitute **Autos;**

   D. **Hired Autos;**

   E. **Nonowned Autos;** and

   F. **Mobile Equipment,** even if such **Mobile Equipment** is not shown in the Schedule of Covered Vehicles, but only while being carried or towed by a **Covered Auto** described in clauses A-C above.

6. **Covered Contract** means:

   A. A lease of premises;

   B. A sidetrack agreement;

   C. Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

   D. An obligation, as required by ordinance, to indemnify a municipality, governmental unit or public entity, except in connection with work for a municipality, governmental unit or public entity;

   E. That part of any other contract or agreement pertaining to the **Named Member's** or **Subsidiary's** business (including an indemnification of a municipality, governmental unit or public entity in connection with work performed for a municipality);under which the **Named Member** or **Subsidiary** assumes the tort liability of another to pay for **Bodily Injury** or **Property Damage** to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

EXHIBIT ___ B
Page _S_ Of_ 34

F. That part of any contract or agreement entered into, as part of the **Named Member's** or **Subsidiary's** business, pertaining to the rental or lease, by a **Member**, of any **Auto**. However, such contract or agreement shall not be considered a **Covered Contract** to the extent that it obligates the **Named Member** or **Subsidiary** or any of their **Employees** to pay for **Property Damage** to any **Auto** rented or leased by the **Named Member** or **Subsidiary** or any of their **Employees**.

A **Covered Contract** does not include that part of any contract or agreement:

(1) That indemnifies any person or organization for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

(2) That pertains to the loan, lease or rental of an **Auto** to the **Named Member** or **Subsidiary** or any of their **Employees**, if the **Auto** is loaned, leased or rented with a driver; or

(3) That holds a person or organization engaged in the business of transporting property by **Auto** for hire harmless for the **Named Member's** or **Subsidiary's** use of a **Covered Auto** over a route or territory that person or organization is authorized to serve by public authority.

7. **Employee** includes a **Leased Worker** and **Volunteer**. **Employee** does not include a **Temporary Worker**.

8. **Family Member** means a person related to a **Member** by blood, marriage or adoption who is a resident of the **Member's** household, including a ward or foster child.

9. **Hired Auto** means an **Auto** leased, hired, rented or borrowed by the **Named Member** or **Subsidiary**, or an **Auto** hired or rented by an **Employee** under a contract in that individual **Employee's** name, with the permission of the **Named Member** or **Subsidiary**, while performing duties related to the conduct of the **Named Member's** or **Subsidiary's** business. This does not include any **Auto** leased, hired, rented or borrowed from any **Employee**, partner, or member of the **Named Member** or **Subsidiary** or members of their households, or (b) any **Auto** that is leased, hired, rented or borrowed for a period exceeding six (6) months, unless the **Auto** is listed on the Schedule of Covered Vehicles attached to this Contract.

10. **Leased Worker** means a person leased to the **Named Member** or **Subsidiary** by a labor leasing firm under an agreement between the **Named Member** or **Subsidiary** and the labor leasing firm, to perform duties related to the conduct of the **Named Member's** or **Subsidiary's** business. **Leased Worker** does not include a **Temporary Worker**.

11. **Loss** means direct and accidental loss or damage.

12. **Member** means any person or organization qualifying as a **Member** in the Who Is Covered provision of the applicable coverage. Except with respect to the Limit of Liability, the coverage afforded applies separately to each **Member** who is seeking coverage or against whom a claim or **Suit** is brought.

13. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B. Vehicles maintained for use solely on or next to premises the **Named Member** or **Subsidiary** owns or rents;

C. Vehicles that travel on crawler treads;

EXHIBIT ___*B*___
Page _6_ Of- _34_

   D.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     (1)  Power cranes, shovels, loaders, diggers or drills; or

     (2)  Road construction or resurfacing equipment such as graders, scrapers or rollers.

   E.  Vehicles not described in Paragraphs A, B, C or D above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2)  Cherry pickers and similar devices used to raise or lower workers.

   F.  Vehicles not described in Paragraphs A, B, C or D above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Autos**:

     (1)  Equipment designed primarily for:

       (a) Snow removal;

       (b) Road maintenance, but not construction or resurfacing; or

       (c) Street cleaning;

     (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     (3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

14.  **Named Member** means the organization specified as such on the Certificate.

15.  **Nonowned Auto** means only those **Autos** not owned, leased, hired, rented or borrowed by the **Named Member** or **Subsidiary** that are used in connection with the **Named Member's** or **Subsidiary's** business. This includes **Autos** owned by **Employees**, partners or members of the **Named Member** or **Subsidiary** or members of their households, but only while used in the **Named Member's** or **Subsidiary's** affairs.

16.  **Occupying** means in, upon, getting in, on, out or off.

17.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

18.  **Property Damage** means damage to or loss of use of tangible property.

19.  **Racing** includes any professional or organized racing or demolition contest or stunting activity, or any other contest of speed, including practice and preparation for such contest or activity.

20.  **Replacement Auto** means any **Auto** which has taken the place of an **Auto** described in the Schedule of Covered Autos due to:

EXHIBIT   _B_
Page _7_ Of- _34_

A. Termination of the **Named Member's** or **Subsidiary's** ownership or lease of the **Auto** described in the Schedule; or

B. Mechanical breakdown or deterioration of an **Auto** described in the Schedule of Covered Autos, rendering it permanently inoperable.

21. **Subsidiary** means any of the following:

A. Any corporate affiliate of the **Named Member** listed as a **Subsidiary** in the Certificate or an amendment;

B. Any foundation the sole activity of which is to provide financial support to the **Named Member;** or

C. Any non-profit corporation affiliated with the **Named Member** and created pursuant to Section 32121(p) of the Health and Safety Code to which the **Named Member** has transferred assets.

22. **Suit** means a civil proceeding in which damages because of **Bodily Injury** or **Property Damage** to which this coverage applies are alleged.

**Suit** includes:

A. An arbitration proceeding in which such damages are claimed and to which the **Member** must submit or does submit with BETARMA's consent; or

B. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Member** submits with BETARMA's consent.

23. **Supplemental Member** means a person or organization described as such in an amendment to this Contract.

24. **Temporary Worker** means a person who is furnished to the **Named Member** or **Subsidiary** for a finite time period to support or supplement the **Named Member's** or **Subsidiary's** workforce in special work situations such as **Employee** absences, temporary skill shortages and seasonal workloads.

25. **Terrorism** means a **Certified Act of Terrorism** or acts of any person or organization against any persons, organization or property of any nature:

A. that involve the following or preparation for the following:

(1) use or threat of force or violence; or

(2) commission or threat of a dangerous act; or

(3) commission or threat of an act that interferes with or disrupts an electronic communication, information, or mechanical system; and

B. when either or both of the following applies:

(1) the effect is to intimidate or coerce a government or the civilian population or any segment of the public, or to disrupt any segment of the economy; or

(2) It appears that the intent is to influence, intimidate or coerce a government, or any segment of the public, or to further political, ideological, religious, social, economic or similar objectives or to express (or express opposition to) a philosophy or ideology.

26. **Trailer** includes semi trailer.

EXHIBIT____*B*____
Page __*8*__ Of- __34__

27. **Volunteer** means any person or group, such as an auxiliary, whose services or labor are uncompensated from any source and are accepted or directed by the **Named Member** or any **Subsidiary.**

28. **War** includes

    A.  Undeclared or civil war;

    B.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

    C.  Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

EXHIBIT ___*B*___
Page _9_ Of- _34_

---

## SECTION 2. BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE. WHAT BETAᴿᴹᴬ WILL COVER UNLESS EXCLUDED.

1. **COVERAGE**

   BETAʀᴍᴀ will pay all sums the **Named Member** or its **Subsidiaries** legally must pay as damages because of **Bodily Injury** or **Property Damage** to which this coverage applies, caused by an **Accident** and resulting from the ownership, maintenance or use of a **Covered Auto**.

   BETAʀᴍᴀ has the right and duty to defend any **Member** against a **Suit** asking for such damages. However, BETAʀᴍᴀ has no duty to defend any **Member** against a **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this coverage does not apply. BETAʀᴍᴀ may investigate and settle any claim or **Suit** as it considers appropriate. BETAʀᴍᴀ's duty to defend or settle ends when the Liability Coverage Limit of Liability has been exhausted by payment of judgments or settlements.

2. **WHO IS COVERED**

   The term **Member** refers to the **Named Member** and each **Subsidiary** identified in the Certificate or by amendment, for any **Covered Auto**, and each of the following persons, but only with respect to his or her legal liability when acting within the course and scope of his or her duties to the **Named Member** or **Subsidiary** and only to the extent the **Named Member** or **Subsidiary** is permitted or required by law to indemnify him or her:

   A. Anyone while using with the **Member's** permission a **Covered Auto** the **Member** own or hires except:

      (1) The owner or anyone else from whom the **Member** hires or borrows a **Covered Auto**. This exception does not apply if the **Covered Auto** is a **Trailer** connected to a **Covered Auto** the **Member** owns;

      (2) An **Employee** of the **Named Member** or **Subsidiary** if the **Covered Auto** is owned by that **Employee** or a member of his or her household;

      (3) A partner (if the **Named Member** or **Subsidiary** is a partnership) or a member (if the **Named Member** or **Subsidiary** is a limited liability company) for a **Covered Auto** owned by him or her or a member of his or her household.

      (4) Anyone other than **Employees**, partners (if the **Named Member** or **Subsidiary** is a partnership), members (if the **Named Member** or **Subsidiary** is a limited liability company), or a lessee or borrower of the **Named Member** or **Subsidiary**, or any of their **Employees**, while moving property to or from a **Covered Auto**;

      (5) Anyone using a **Covered Auto** while he or she is working in a business of selling, servicing, repairing, parking or storing **Autos** unless that business is the **Named Member's** or **Subsidiary's**;

   B. Anyone liable for the conduct of a **Member** described above but only to the extent of that liability.

   C. Any **Supplemental Member** to whom coverage is extended by amendment.

   D. An **Employee** while operating a **Hired Auto** under a contract or agreement in that **Employee's** name, with the permission of the **Named Member** or a **Subsidiary**, while performing duties related to the conduct of the **Named Member's** or a **Subsidiary's** business.

   However, notwithstanding the above, an **Employee** of the **Named Member** or **Subsidiary** shall be a **Member** while operating an **Auto** owned by the **Employee** or a member of his or her household,

EXHIBIT _B_
Page _10_ Of- _34_

while performing duties related to the conduct of the **Named Member's** or a **Subsidiary's** business, if the owner of the **Auto** has collectible insurance available with limits of at least $15,000 per person and $30,000 per **Accident**. Such coverage as this Contract provides to the **Employee** shall be excess of all such insurance. Excess coverage applies after all other collectible insurance or other coverage has been exhausted. If the owner does not have collectible insurance available of at least $15,000 per person and $30,000 per **Accident**, then the **Named Member** shall be responsible for paying $15,000 per person and $30,000 per **Accident** before BETARMA will make any payment.

3. **COVERAGE EXTENSIONS**

   A. **Supplementary Payments**

      In addition to the Limit of Liability, BETARMA will pay for the **Member**:

      (1) All expenses BETARMA incurs;

      (2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an **Accident** BETARMA covers. BETARMA does not have to furnish these bonds;

      (3) The cost of bonds to release attachments in any **Suit** against the **Member** BETARMA defends, but only for bond amounts within the Limit of Liability;

      (4) All reasonable expenses incurred by the **Member** at BETARMA's request, including actual loss of earning up to $250 a day because of time off from work;

      (5) All costs taxed against the **Member** in any **Suit** against the **Member** that BETARMA defends;

      (6) All interest on only that part of any judgment that BETARMA pays that accrues before and after entry of a judgment and before BETARMA has paid, offered to pay, or deposited in the court the part of the judgment that is within BETARMA's applicable Limit of Liability.

   B. **Out-of-State Coverage Extensions**

      While a **Covered Auto** is away from the state where it is licensed BETARMA will:

      (1) Increase the Limit of Liability for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the **Covered Auto** is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

      (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the **Covered Auto** is being used.

      BETARMA will not pay anyone more than once for the same elements of loss because of these extensions.

4. **LIMIT OF LIABILITY: THE TOTAL AMOUNTS BETARMA WILL PAY; THE AMOUNTS THE MEMBERS MUST PAY BEFORE BETARMA WILL PAY ANY LOSS; WHEN BETARMA WILL PAY LOSS**

   A. Regardless of the number of **Covered Autos**, **Members**, Contributions paid, claims made or vehicles involved in the **Accident**, the most BETARMA will pay for the total of all damages resulting from any one **Accident** is the Limit of Liability for Liability Coverage shown on the Certificate.

   B. All **Bodily Injury** and **Property Damage** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **Accident**. No one will

EXHIBIT _____ B
Page _11_ Of- _34_

be entitled to receive duplicate payments for the same elements of **Loss** under this Coverage Contract.

C. Any amount payable under this coverage shall be reduced by:

    (1) All sums paid or payable under any workers' compensation, disability benefits or similar law, and

    (2) All sums BETARMA pays under this Coverage Contract's Medical Payments and/or Uninsured/Underinsured Motorist Coverage.

D. Any amount paid under this coverage will reduce any amount a **Member** may be paid under this Coverage Contract's Medical Payments and/or Uninsured/Underinsured Motorist Coverage.

EXHIBIT    B
Page 12   Of- 34

## SECTION 3.   AUTO MEDICAL PAYMENTS COVERAGE. WHAT BETARMA WILL PAY UNLESS EXCLUDED.

1. **COVERAGE**

   BETARMA will pay reasonable expenses incurred for necessary medical and funeral services to or for a **Member** who sustains **Bodily Injury** caused by an **Accident**. BETARMA will pay only those expenses incurred within one (1) year from the date of the **Accident**.

2. **WHO IS COVERED**

   Anyone **Occupying** a **Covered Auto**.

3. **LIMIT OF LIABILITY: THE TOTAL AMOUNTS BETARMA WILL PAY**

   A. Regardless of the number of **Covered Autos**, **Members**, Contributions paid, claims made or vehicles involved in the **Accident**, the most BETARMA will pay for **Bodily Injury** for each **Member** injured in any one **Accident** is the Limit of Liability for Auto Medical Payments Coverage shown in the Certificate.

   B. All **Bodily Injury** and **Property Damage** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **Accident**. No one will be entitled to receive duplicate payments for the same elements of **Loss** under this Coverage Contract.

   C. Any amount payable under this coverage shall be reduced by:

      (1) All sums paid or payable under any workers' compensation, disability benefits or similar law, and

      (2) All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Contract's **Bodily Injury** And **Property Damage** Liability and/or Uninsured/Underinsured Motorist Coverage.

   D. Any amount paid under this coverage will reduce any amount a **Member** may be paid under this Coverage Contract's **Bodily Injury** And **Property Damage** Liability and/or Uninsured/Underinsured Motorist Coverage.

   E. BETARMA shall be reimbursed for any amounts paid under this coverage section that are subsequently paid by a third party in the form of a judgment or settlement.

4. **CHANGES IN CONDITIONS**

   The conditions in Section 7 – PROVISIONS APPLICABLE TO ALL COVERAGES are changed for Section 3 - AUTO MEDICAL PAYMENTS COVERAGE as follows:

   A. Transfer Of Rights Of Recovery Against Others To BETARMA Condition does not apply.

   B. The reference in Applicability Of Insurance Or Other Coverage A Member May Also Have to "other collectible coverage" applies only to other collectible auto medical payments coverage.

EXHIBIT ____B____
Page _13_ Of- _34_

---

## SECTION 4.  DAMAGE TO THE NAMED MEMBER'S OR SUBSIDIARY'S COVERED AUTO. WHAT BETARMA WILL COVER UNLESS EXCLUDED.

1. **COVERAGE**

    A. BETARMA will pay for **Loss** to a **Covered Auto** or its equipment under:

    (1) Comprehensive Coverage

      From any cause except:

      (a) The **Covered Auto's** collision with another object; or

      (b) The **Covered Auto's** overturn.

    (2) Collision Coverage

      Caused by:

      (a) The **Covered Auto's** collision with another object; or

      (b) The **Covered Auto's** overturn.

    B. BETARMA will pay up to fifty dollars per disablement for towing and labor costs incurred each time a **Covered Auto** of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

    C. Glass Breakage-Hitting A Bird Or Animal-Falling Objects Or Missiles

      BETARMA will pay for the following under Comprehensive Coverage:

    (1) Glass breakage;

    (2) **Loss** caused by hitting a bird or animal; and

    (3) **Loss** caused by falling objects or missiles, or windstorm, hail, flood or rising waters, malicious mischief or vandalism, fire or theft.

2. **LIMIT OF COVERAGE: THE TOTAL AMOUNTS BETARMA WILL PAY**

    The most BETARMA will pay for **Loss** in any one **Accident** is the lesser of:

    A. The fair market value of the damaged or stolen property as of the time of the **Loss**; or

    B. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

3. **DEDUCTIBLE**

    For each **Covered Auto**, BETARMA's obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable Deductible shown in the Certificate. Any Comprehensive Coverage Deductible shown in the Certificate does not apply to **Loss** caused by fire or lightning. If Loss is caused by an identifiable **Uninsured Motor Vehicle**, then the deductible for Collision coverage is waived.

AUTO (07/12)                                        13

## SECTION 5. UNINSURED/UNDERINSURED MOTORIST COVERAGE. WHAT BETARMA WILL PAY UNLESS EXCLUDED.

1. **COVERAGE**

   A. BETARMA will pay all sums which a **Member** is legally entitled to recover as compensatory damages for **Bodily Injury** from the owner or operator of an **Uninsured Motor Vehicle** or **Underinsured Motor Vehicle.** The **Bodily Injury** must result from an **Accident** during the Contract Period arising out of the ownership, maintenance or use of an **Uninsured Motor Vehicle** or **Underinsured Motor Vehicle.**

   (1) If this coverage provides a limit in excess of the amounts required by the applicable law where a **Covered Auto** is principally garaged, BETARMA will pay only after all liability bonds or policies have been exhausted by judgments or payments.

   (2) Any judgment for damages arising out of a **Suit** brought without BETARMA's written consent is not binding on BETARMA.

2. **WHO IS COVERED**

   A. Anyone **Occupying** a **Covered Auto**.

   B. Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by a **Member**.

3. **LIMIT OF LIABILITY: THE TOTAL AMOUNTS BETARMA WILL PAY**

   A. Regardless of the number of **Covered Autos**, **Members**, Contributions paid, claims made or vehicles involved in the **Accident**, the most BETARMA will pay for all damages resulting from any one **Accident** is the Limit Of Liability for Uninsured Motorists Coverage shown in the Certificate. Any amount payable under this coverage shall be reduced by:

   (1) All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   (2) All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Contract's **Bodily Injury** And **Property Damage** Liability and/or Medical Payments Coverage.

   B. Any amount paid under this coverage will reduce any amount a **Member** may be paid under this Coverage Contract's **Bodily Injury** And **Property Damage** Liability and/or Medical Payments Coverage.

4. **CHANGES IN CONDITIONS**

   The conditions in Section 7 – PROVISIONS APPLICABLE TO ALL COVERAGES are changed for Section 5 – Uninsured/Underinsured Motorists Coverage as follows:

   A. Member's Duties In The Event Of Accident is changed by adding the following:

   (1) Promptly notify the police if a hit-and-run driver is involved, and

   (2) Promptly send BETARMA copies of all legal papers if a **Suit** is brought.

EXHIBIT _B_
Page _15_ Of- _34_

B. Transfer Of Rights Of Recovery Against Others To BETArma is changed by adding the following:

    (1) If BETArma makes any payment and the **Member** recovers from another party, the **Member** shall hold the proceeds in trust for BETArma and pay BETArma back the amount BETArma has paid.

5. **ADDITIONAL DEFINITIONS**

The following is added to the Definitions Section:

**Uninsured Motor Vehicle** means a land motor vehicle or trailer:

A. For which no liability bond or policy at the time of an **Accident** provides at least the amounts required by the applicable law where a **Covered Auto** is principally garaged;

B. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

C. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit a **Member**, a **Covered Auto** or a vehicle a **Member** is **Occupying**.

D. That is an **Underinsured Motor Vehicle**. An **Underinsured Motor Vehicle** is a motor vehicle or trailer for which the sum of all liability bonds or coverage at the time of an **Accident** provides at least the amounts required by the applicable law where a **Covered Auto** is principally garaged but that sum is less than the Limit of Liability of this coverage;

However, **Uninsured Motor Vehicle** does not include any vehicle:

A. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

B. Owned by a municipality, governmental unit or public entity; or

C. Designed for use mainly off public roads while not on public roads.

## SECTION 6. EXCLUSIONS

1. **EXCLUSIONS THAT APPLY TO ALL COVERAGE SECTIONS**

   This coverage does not apply to any of the following:

   A. Any claim settled without BETARMA's consent;

   B. Punitive or exemplary damages;

   C. **War**, including **Bodily Injury** or **Property Damage** resulting from **War**;

   D. **Terrorism**, including **Bodily Injury** or **Property Damage** resulting from **Terrorism**.

2. **EXCLUSIONS THAT APPLY TO SECTION 2 - BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**

   Coverage under Section 2 does not apply to any of the following:

   A. **Expected or Intended Injury**

      **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Member**;

   B. **Contractual**

      Liability assumed under any contract or agreement.

      But this exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is a **Covered Contract** provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the contract or agreement; or

      (2) That the **Member** would have in the absence of the contract or agreement.

   C. **Workers' Compensation**

      Any obligation for which the **Member** or BETARMA may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

   D. **Employee Indemnification and Employer's Liability**

      **Bodily Injury** to:

      (1) An **Employee** of the **Named Member** or **Subsidiary** arising out of and in the course of:

         (a) Employment by the **Named Member** or **Subsidiary**; or

         (b) Performing the duties related to the conduct of the **Named Member's** or **Subsidiary's** business; or

      (2) The spouse, child, parent, brother or sister of that **Employee**.

EXHIBIT _B_
Page _17_ Of _34_

This exclusion applies:

    (a) Whether the **Named Member** or **Subsidiary** may be liable as an employer or in any other capacity; and

    (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to **Bodily Injury** to domestic **Employees** not entitled to workers' compensation benefits or to liability assumed by the **Named Member** or **Subsidiary** under a **Covered Contract**. For the purposes of the Coverage Form, a domestic **Employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

E. **Fellow Employee**

    **Bodily Injury** to any fellow **Employee** of the **Member** or **Subsidiary** arising out of and in the course of the fellow **Employee's** employment or while performing duties related to the conduct of the **Member's** or **Subsidiary's** business.

F. **Care, Custody or Control**

    **Property Damage** to property owned or transported by the **Member** or **Subsidiary** or in the **Member's** or **Subsidiary's** care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

G. **Handling of Property**

    **Bodily Injury** or **Property Damage** resulting from the handling of property:

    (1) Before it is moved from the place where it is accepted by the **Member** for movement into or onto the **Covered Auto**; or

    (2) After it is moved from the **Covered Auto** to the place where it is finally delivered by the **Member**; or

    (3) By anyone who is not the **Named Member's** or **Subsidiary's Employee** engaged in the loading or unloading of an **Auto**.

H. **Movement Of Property By Mechanical Device**

    **Bodily Injury** or **Property Damage** resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the **Covered Auto**.

I. **Operations**

    **Bodily Injury** or **Property Damage** arising out of the operation of any equipment listed in Section 1.13.E(1) and 1.13.E(2) of the definition of **Mobile Equipment**.

J. **Completed Operations**

    **Bodily Injury** or **Property Damage** arising out of the **Member's** work after that work has been completed or abandoned. In this exclusion, the **Member's** work means:

EXHIBIT ___B___
Page _18_ Of _34_

(1)  Work or operations performed by the **Member** or on the **Member's** behalf; and

(2)  Materials, parts or equipment furnished in connection with such work or operations.

The **Member's** work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs a. or b. above.

The **Member's** work will be deemed completed at the earliest of the following times:

(1)  When all of the work called for in the **Member's** contract has been completed;

(2)  When all of the work to be done at the site has been completed if the **Member's** contract calls for work at more than one site;

(3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

K.  **Pollution**

**Bodily Injury** or **Property Damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

(1)  That are, or that are contained, in any property that is:

(a)  Being transported or towed by, handled, or handled for movement into, onto or from, the **Covered Auto**;

(b)  Otherwise in the course of transit by or on behalf of the **Named Member** or **Subsidiary**; or

(c)  Being stored, disposed of, treated or processed in or upon the **Covered Auto**.

(2)  Before the **Pollutants** or any property in which the **Pollutants** are contained are moved from the place where they are accepted by the **Member** for movement into or onto the **Covered Auto**; or

(3)  After the **Pollutants** or any property in which the **Pollutants** are contained are moved from the **Covered Auto** to the place where they are finally delivered, disposed of or abandoned.

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **Covered Auto** or its parts, if;

(a)  The **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of **Pollutants**; and

(b)  The **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment listed in Section 1.13.E(1) and 1.13.E(2) of the definition of **Mobile Equipment**.

Paragraphs (2) and (3) above of this exclusion do not apply to **Accidents** that occur away from the premises owned by or rented to a **Member** with respect to **Pollutants** not in or upon a **Covered Auto** if:

    (a) The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a **Covered Auto**; and

    (b) The discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage is also excluded for any **Loss**, cost, or expense arising out of any governmental direction or request that the **Named Member** or **Subsidiary** test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants**.

  L.  **Racing**

3. **EXCLUSIONS THAT APPLY TO SECTION 3 - AUTO MEDICAL PAYMENTS COVERAGE**

Coverage under Section 3 does not apply to any of the following:

  A.  **Bodily Injury** sustained by a **Member** while **Occupying** a vehicle located for use as a residence.

  B.  **Bodily Injury** sustained by a **Member** or any **Family Member** while **Occupying** or struck by any vehicle (other than a **Covered Auto**) owned by the **Member** or available for the **Member's** regular use.

  C.  **Bodily Injury** sustained by any **Family Member** while **Occupying** or struck by any vehicle (other than a **Covered Auto**) owned by or furnished or available for the regular use of any **Family Member**.

  D.  **Bodily Injury** to the **Named Member's** or **Subsidiary's Employee** arising out of and in the course of employment by the **Named Member** or **Subsidiary**.

  E.  **Bodily Injury** caused by **War** or **Terrorism**.

  F.  **Bodily Injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

  G.  **Bodily Injury** sustained while a **Covered Auto** is driven in or in preparation for any prearranged or organized race, speed contest or performance contest.

4. **EXCLUSIONS THAT APPLY TO SECTION 4 - DAMAGE TO THE NAMED MEMBER'S OR SUBSIDIARY'S COVERED AUTO**

  A.  BETARMA will not pay for **Loss** to a **Nonowned Auto**.

  B.  BETARMA will not pay for **Loss** caused by or resulting from any of the following. Such **Loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **Loss**.

    (1) Nuclear Hazard

      (a) The explosion of any weapon employing atomic fission or fusion; or

      (b) Nuclear reaction or radiation, or radioactive contamination, however caused.

EXHIBIT _____ B
Page 2o Of- 34

(2) **War** or **Terrorism**

(3) **Racing**

C. BETARMA will not pay for **Loss** caused by or resulting from any of the following unless caused by other **Loss** that is covered by this coverage:

(1) Wear and tear, freezing, mechanical or electrical breakdown;

(2) Blowouts, punctures or other road damage to tires.

D. BETARMA will not pay for **Loss** to any of the following:

(1) Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

(2) Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment;

(3) Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound;

(4) Any accessories used with the electronic equipment described in Paragraph (3) above.

Exclusion D(3) and D(4) do not apply to:

(a) Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the **Covered Auto** at the time of the **Loss** or such equipment is removable from a housing unit which is permanently installed in the **Covered Auto** at the time of the **Loss**, and such equipment is designed to be solely operated by use of the power from the **Covered Auto's** electrical system, in or upon the **Covered Auto**; or

(b) Any other electronic equipment that is:

(i) Necessary for the normal operation of the **Covered Auto** or the monitoring of the **Covered Auto's** operating system; or

(ii) An integral part of the same unit housing any sound reproducing equipment described in (i) above and permanently installed in the opening of the dash or console of the **Covered Auto** normally used by the manufacturer for installation of a radio.

E. BETARMA will not pay for **Loss** to a covered **Auto** if the **Loss** results from transportation of any explosive substance, flammable liquid, or similarly hazardous material.

5. **EXCLUSIONS THAT APPLY TO SECTION 5 - UNINSURED/UNDERINSURED MOTORIST COVERAGE**

Coverage under Section 5 does not apply to any of the following:

A. Any **Claim** settled without BETARMA's consent;

B. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law;

C. **Bodily Injury** sustained by a **Member** or by a **Family Member** while **Occupying** or struck by any vehicle owned by a **Member** that is not a **Covered Auto**;

D. Anyone using a vehicle without a reasonable belief that the person is entitled to do so;

E. Punitive or exemplary damages.

AUTO (07/12)               21

EXHIBIT    _B_

Page _22_ Of- _34_

## SECTION 7. PROVISIONS APPLICABLE TO ALL COVERAGES.

1. **MULTIPLE BETARMA COVERAGE CONTRACTS**

   A. With respect to any **Accident** or occurrence to which this and any other BETARMA Auto Coverage Contract, including amendments, issued to the **Named Member** applies, the total Limit of BETARMA's Liability under all the Coverage Contracts shall not exceed the highest applicable Limit of Liability under any one Contract.

   B. If both this Contract and a BETARMA Healthcare Entity Comprehensive Liability or Directors, Officers and Trustees Including Healthcare Entity Coverage Contract, including amendments, apply to any **Accident,** incident or occurrence, the terms, conditions and exclusions, including the Limits of Liability of each Contract shall apply, provided, however, that in no event shall BETARMA pay more than the highest applicable Limit of Liability.

2. **BANKRUPTCY**

   Bankruptcy or insolvency of the **Member** or the **Member's** estate will not relieve BETARMA of any obligations under this Contract.

3. **PAYMENTS REQUIRED FROM MEMBERS AND BETARMA'S RIGHT TO AUDIT**

   A. Contribution.

   The Estimated Contribution payable by the **Named Member** for the coverage provided by this Contract is the amount specified in the Certificate. The Estimated Contribution amount is based on the schedule of vehicles submitted to BETARMA by the **Named Member**. The **Named Member** is responsible for reviewing the schedule of covered vehicles and notifying BETARMA of changes. No changes will be made for prior coverage periods.

   Changes in vehicles during the coverage period may result in additional or return Contributions. The **Named Member** agrees to notify BETARMA of any vehicle additions, vehicle deletions, changes in vehicle usage or other material changes in exposure. Additional or return Contributions for changes made after the effective date of this coverage will be calculated on a prorata basis. If the **Named Member** fails to pay the additional Contribution in full no later than thirty (30) calendar days after the invoice date, a penalty equal to ten percent (10%) of the original additional Contribution shall be added to the Contribution due to BETARMA.

   In the event that BETARMA discovers that additional Contribution is due, when BETARMA adjusts a claim made by a **Named Member** or **Subsidiary** under Section 4 - Damage To the **Named Member's** or **Subsidiary's** Auto, Section 3 – Medical Payments, or Section 5 - Uninsured/Underinsured Motorist Coverage, the **Named Member** and **Subsidiary** agree that such a Contribution may be deducted from the amount of payment otherwise due under those Sections.

   B. Deductible and Other Payments.

   (1) The **Named Member** is responsible for any Deductible amount that is specified in the Certificate.

   (2) The **Named Member** is also responsible for any amounts paid by BETARMA within the Deductible.

   (3) If BETARMA pays any amount in settlement or satisfaction of any Claim within the Deductible, in excess of the Limit of Liability, or for which BETARMA has no liability under this Contract, the

EXHIBIT _B_
Page _23_ Of- _34_

Member shall reimburse BETArма for such amounts within thirty (30) calendar days of BETArма's request.

C.   Offsetting Sums.

BETArма may reduce any amount owed to the **Named Member** by BETArма, or any credit against the **Named Member's** Contribution, by the amount of any sum owed to BETArма which has remained unpaid for more than thirty (30) calendar days.

D.   BETArма's Right to Inspect and Audit.

BETArма shall be permitted, but not obligated, to inspect the **Members'** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **Autos** covered hereunder, who the **Members'** drivers are and what their driving records are. Neither BETArма's right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on behalf of or for any **Member's** benefit to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.

BETArма may examine and audit a **Member's** books and records relevant to the subject matter of this Contract at any time during the Contract Period, and extensions thereof, and within three years after the final termination of this Contract.

4.   **MEMBER'S DUTIES IN THE EVENT OF AN ACCIDENT**

BETArма has no duty to provide coverage under this Contract unless there has been full compliance with the following duties:

A.   In the event of **Accident**, claim, **Suit** or **Loss**, the **Member** must give BETArма or its authorized representative prompt notice of the **Accident** or **Loss**. Include:

(1)   How, when and where the **Accident** or **Loss** occurred;

(2)   The **Member's** name and address; and

(3)   To the extent possible, the names and addresses of any injured persons and witnesses.

B.   Additionally, the **Member** and any other involved **Member** must:

(1)   Assume no obligation, make no payment or incur any expense without BETArма's consent, except at the **Member's** own cost.

(2)   Immediately send BETArма copies of any request, demand, order, notice, summons or legal paper received concerning the claim or **Suit**.

(3)   Cooperate with BETArма in the investigation, defense and settlement of the claim or **Suit**.

(4)   Authorize BETArма to obtain medical records or other pertinent information.

(5)   Submit to examination, at BETArма's expense, by physicians of its choice, as often as it reasonably requires.

C.   If there is **Loss** to a **Covered Auto** or its equipment the **Member** must also do the following:

(1)   Promptly notify the police if the **Covered Auto** or any of its equipment is stolen.

EXHIBIT    _B_
Page _24_ Of _34_

    (2) Take all reasonable steps to protect the **Covered Auto** from further damage. Also keep a record of expenses for consideration in the settlement of the claim.

    (3) Permit BETARMA to inspect the **Covered Auto** and records relating to the **Loss** before its repair or disposition.

    (4) Submit to examinations under oath at BETARMA's request and give BETARMA a signed statement of answers.

5. **ARBITRATION OF DISPUTES**

*Before requesting arbitration a Member must complete BETARMA's internal dispute resolution procedure established by the BETA Council. All disputes in any way concerning, arising out of or relating to this Contract that are not resolved through the hearing procedure shall be submitted to binding arbitration.*

*Requests for binding arbitration must be made within thirty (30) calendar days after the internal dispute resolution hearing decision is provided in writing to the Named Member by BETARMA. If a request is not made within thirty (30) calendar days, the decision is final.*

*The arbitration and discovery will be governed by the California Arbitration Act, Section 1280, et seq. of the Code of Civil Procedure, except to the extent that it is inconsistent with this Section. BETARMA and each Member waive the right to court remedies, including a jury trial.*

*In all such arbitrations the terms, conditions and exclusions of this Contract shall be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of the Contract.*

*In any arbitration, one Arbitrator will be chosen by all Members collectively, the other by BETARMA, and a Neutral Arbitrator will be chosen by the mutual agreement of the two Arbitrators before they enter into arbitration. If any party should fail to choose an Arbitrator within thirty (30) calendar days following a written request by the other party to do so, the requesting party may choose two Arbitrators.*

*Each party will present its case to the Arbitrators within thirty (30) calendar days following the date of appointment of the Neutral Arbitrator. The Neutral Arbitrator shall be the judge of the relevance of the evidence offered and is not required to follow the strict rules of evidence. The decision of the Arbitrators chosen by the parties shall be final and binding on the parties; but, if these Arbitrators fail to agree, the decision of the majority of the Arbitrators shall be final and binding upon the parties. The Arbitrators shall be limited to the remedies that could be awarded by the Superior Court of the State of California. Judgment upon the final decision of the Arbitrators may be entered in any court of competent jurisdiction.*

*Each party shall bear the expense of its own Arbitrator, and shall jointly and equally bear with the other the expense of the Neutral Arbitrator and of the arbitration. In the event that the two Arbitrators are chosen by one party, as provided above, the expense of the Arbitrators, the Neutral Arbitrator and the arbitration shall be equally divided between the parties.*

*Any arbitration proceedings shall take place in San Francisco, California.*

*The Arbitrators shall have no authority to review any matter as to which this Contract grants BETARMA sole discretion. No Member may arbitrate, or contest in any court, any such exercise of discretion.*

6. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO BETARMA**

If any person or organization to or for whom BETARMA makes payment under this Contract has rights to recover damages from another, those rights are transferred to BETARMA. That person or

organization must do everything necessary to secure BETArma's rights and must do nothing after an **Accident** or **Loss** to impair them.

7. **APPLICABILITY OF INSURANCE OR OTHER COVERAGE A MEMBER MAY ALSO HAVE**

A. For any **Autos** listed on the Schedule of Covered Vehicles or any **Covered Auto** the **Named Member** or **Subsidiary** owns, this Contract provides primary coverage. For any **Covered Auto** the **Named Member** or **Subsidiary** does not own, this Contract provides excess coverage. Excess coverage applies after all other collectible coverage or insurance has been exhausted. If the owner of a **Nonowned Auto** has no collectible coverage or insurance available with limits of at least $15,000 per person/ $30,000 per **Accident**, then the **Named Member** or **Subsidiary** will be responsible for paying up to $15,000 per person/ $30,000 per **Accident** before BETArma will make any payments.  However, while a **Covered Auto** which is a **Trailer** is connected to another vehicle, the Liability Coverage this Contract provides for the **Trailer** is:

(1) Excess while it is connected to a motor vehicle the **Named Member** or **Subsidiary** does not own;

(2) Primary while it is connected to a **Covered Auto** the **Named Member** or **Subsidiary** owns.

B. For Hired Auto Physical Damage coverage, any **Covered Auto** the **Named Member**, **Subsidiary** or **Employee** with the permission of the **Named Member** or **Subsidiary** leases, hires, rents or borrows is deemed to be a **Covered Auto** the **Named Member** or **Subsidiary** owns. However, any **Auto** that is leased, hired, rented or borrowed with a driver is not a **Covered Auto**.

C. Regardless of the provisions of Paragraph A above, this Contract's Liability Coverage is primary for any liability assumed under a **Covered Contract**.

D. When this Contract and any other contract or policy covers on the same basis, either excess or primary, BETArma will pay only its share. BETArma's share is the proportion that the Limit of Liability of this Coverage Contract bears to the total of the limits of all the coverage contracts and policies covering on the same basis.

8. **DELEGATION BY BETArma AND ASSIGNMENT BY MEMBERS**

A. Delegation

Any or all contract duties, obligations and responsibilities of BETArma may be delegated or assigned to independent contractors and consultants retained or employed by BETArma.

B. Assignment

Any assignment of any right or interest under this Contract shall not bind BETArma without its written consent.

9. **GOVERNING LAW**

This Contract in all respects shall be governed by and construed in accordance with the laws of the State of California, without regard to its choice of law rules.

10. **THE TERMS OF THIS CONTRACT SHALL CONFORM TO STATUTE**

Any terms of this Contract that conflict with any applicable statute of the State of California are hereby amended to conform to such statute.

11. **TERMINATION OF THIS CONTRACT**

EXHIBIT _B_
Page _2 6_ Of- _3 4_

A. Termination by **Named Member.**

The **Named Member** may terminate this Contract by mailing to BETARMA--at the address specified on the Certificate--written notice stating when, not less than thirty (30) calendar days thereafter, the termination will be effective.

B. Termination by BETARMA

(1) BETARMA may terminate this Contract for:

     (a) failure to pay any Contribution or assessment when due;

     (b) for failure to reimburse BETARMA for payments made within the Deductible, in excess of the Limit of Liability, for which BETARMA has no liability under this Contract, or which the **Member** is obligated to repay BETARMA;

     (c) failure to abide by any provision of the Joint Powers Authority Agreement, as it may be amended, or this Contract;

     (d) failure to give prompt notification to BETARMA of any claim; or

     (e) upon a majority vote of the BETA Council, for failure to implement loss control or risk management recommendations.

When termination is for any reason specified in this clause, the **Named Member** shall be given ten (10) calendar days' written notice, return receipt requested, of termination. Proof of mailing shall be deemed proof of receipt.

(2) BETARMA may terminate the **Named Member** for any reason other than those provided above by mailing written notice stating when, not less than thirty (30) calendar days thereafter, the termination shall be effective.

C. Automatic Termination

This Contract shall automatically terminate on the effective date of the **Named Member's** withdrawal or termination as a member of BETARMA or notice of termination of the **Named Member's** Healthcare Entity Comprehensive Liability Coverage Contract.

D. Effect of Termination; Adjustment of Contribution

(1) Termination by either party shall eliminate the coverage provided to all **Members**.

(2) The **Named Member** shall remain liable for any unpaid Contribution that has accrued before the termination. Adjustment for amounts of Contribution due BETARMA shall be made within thirty (30) calendar days of the time at which termination is effective.

(3) BETARMA shall refund any unearned Contribution on a pro rata basis.

12. **CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Contract is void in any case of fraud by the **Named Member** or **Subsidiary** at any time as it relates to this Contract. It is also void if the **Named Member** or **Subsidiary** or any other **Member**, at any time, intentionally conceals or misrepresents a material fact concerning:

A. This Contract;

AUTO (07/12)                    26

EXHIBIT _____B_____
Page _2 7_ Of- _3 4_

B. A **Covered Auto**;

C. The **Named Member's** or **Subsidiary's** interest in a **Covered Auto**; or

D. A claim under this Contract.

13. **LIBERALIZATION**

If BETA<small>RMA</small> revises this Contract to provide more coverage without additional Contribution charge, the revision to the **Named Member's** Coverage Contract becomes effective as of the date of the Contract revision.

14. **NO BENEFIT TO BAILEE – PHYSICAL DAMAGE COVERAGE**

BETA<small>RMA</small> will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Contract.

15. **COVERAGE PERIOD, TERRITORY**

Under this Contract, BETA<small>RMA</small> covers **Accidents** and **Losses** occurring:

A. During the Contract Period shown in the Certificate; and

B. Within the coverage territory.

The coverage territory is:

A. The United States of America:

B. The territories and possessions of the United States of America;

C. Puerto Rico; and

D. Canada

BETA<small>RMA</small> also covers **Loss** to, or **Accidents** involving, a **Covered Auto** while being transported between any of these places.

16. **MEMBERS' AUTHORIZATIONS AND NOTICES TO MEMBERS**

All **Members** agree that the **Named Member** will act on their behalf for receiving all notices from BETA<small>RMA</small> and for the negotiation and acceptance of any modifications to any provision of this Contract.

17. **LIMITS ON HOW THIS CONTRACT CAN BE CHANGED**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of BETA<small>RMA</small> will not affect a waiver or change in any part of this Contract, nor estop BETA<small>RMA</small> from asserting any right under the terms, conditions and limitations of this Contract. The terms, conditions and limitations of this Contract may be waived or changed only by written amendment.

18. **ALL AGREEMENTS CONTAINED IN THIS DOCUMENT**

This Contract, including the application**,** the Certificate and any amendments, constitutes the entire agreement between the **Members** and BETA<small>RMA</small>.

EXHIBIT _B_
Page _28_ Of _34_

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**SUPPLEMENTAL MEMBER**

| Certificate Number: AL-17-361 | Amendment No: A405-01 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that:

*County of Tulare, its officers, agents, officials, employees and volunteers* is added to this Contract as a **Supplemental Member,** but only for legal liability arising from the use of **Covered Auto(s)** by the **Named Member** or its **Subsidiary** with respect to the following:

*Low Income Health Program Agreement effective March 13, 2013*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

EXHIBIT  B
Page 2 9 Of 3 4

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**SUPPLEMENTAL MEMBER**

| Certificate Number:<br>AL-17-361 | Amendment No:<br>A405-02 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that:

*The County of Tulare, its officers, agents, officials, employees and volunteers* is added to this Contract as a **Supplemental Member,** but only for legal liability arising from the use of **Covered Auto(s)** by the **Named Member** or its **Subsidiary** with respect to the following:

*Tulare County Agreement No. 7913- Paternity Testing*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

EXHIBIT *B*
Page 30 Of 34

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**SUPPLEMENTAL MEMBER**

| Certificate Number: AL-17-361 | Amendment No: A405-03 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that:

*HealthCare Conglomerate Associates, LLC, a California limited liability company, Chief Restructuring Officer and Manager* is added to this Contract as a **Supplemental Member**, but only for legal liability arising from the use of **Covered Auto(s)** by the **Named Member** or its **Subsidiary** with respect to the following:

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

EXHIBIT B
Page 31 Of 34

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**SUPPLEMENTAL MEMBER**

| Certificate Number: AL-17-361 | Amendment No: A405-04 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that:

*Earlimart School District* is added to this Contract as a **Supplemental Member**, but only for legal liability arising from the use of **Covered Auto(s)** by the **Named Member** or its **Subsidiary** with respect to the following:

*Agreement regarding location 398 S Church Road, Earlimart, CA 93219*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

EXHIBIT B
Page 32 Of 34

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**SUPPLEMENTAL MEMBER WITH SUBLIMITS**

| Certificate Number: AL-17-361 | Amendment No: A440-01 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that:

*the State of California, its officers, agents, employees, and servants* is added to this Contract as a **Supplemental Member**, but only for legal liability arising from the use of **Covered Auto(s)** by the **Named Member** or its **Subsidiary** with respect to the following:

*the Covered CA Standard Agreement for Certified Enrollment Counselors between California Health Benefit Exchange and Tulare Regional Medical Center*

It is further understood and agreed that the limits of liability for covered claims or **Suits** under this Amendment are as follows:

Limits of Liability: *$1,000,000* each **Accident**, Combined Single Limit

The Combined Single Limit is subject to the following coverage limits:

Section 2. *$1,000,000* each **Accident** (**Bodily Injury** and **Property Damage** Liability)
Section 3. $5,000 each **Accident** (Medical Payments)
Section 4. See Section 4.2. (Comprehensive & Collision coverage)
Section 5. *$1,000,000* each **Accident** (Uninsured/Underinsured Motorist)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

EXHIBIT B
Page 33 Of 34



**BETA Risk Management Authority ("BETAʀᴍᴀ")**
**A Public Entity**

**CERTIFICATE OF PARTICIPATION**

AUTO LIABILITY AND PHYSICAL DAMAGE COVERAGE CONTRACT

**PRODUCER:** Marsh & McLennan Agency LLC Attn: William Buchanan

> **CERTIFICATE NUMBER:**
> AL-17-361

| | |
|---|---|
| **ITEM 1:** | **NAMED MEMBER:**<br>Tulare Local Healthcare District<br>869 Cherry Street<br>Tulare, CA 93274 |
| **ITEM 2:** | **SUBSIDIARIES:**<br>Tulare Family X-Ray , Tulare Physical Therapy, Tulare District Health Care System Foundation, Tulare District Health Care System Lab Drawing Station, Tulare Surgical Services |
| **ITEM 3:** | **CONTRACT PERIOD:**<br>(a) Effective Date: 07/01/17 (b) Expiration Date: 07/01/18 at 12:01 a.m. local time for all dates at the address in Item 1 |
| **ITEM 4:** | **LIMIT OF LIABILITY**<br>$5,000,000 each **Accident**, Combined Single Limit<br>**The Combined Single Limit is subject to the following coverage limits:**<br>Section 2: $5,000,000 each **Accident** (**Bodily Injury** and **Property Damage**)<br>Section 3: $5,000 each **Accident** (Medical Payments)<br>Section 4: See Section 4.2. (Comprehensive & Collision coverage)<br>Section 5: $1,000,000 each **Accident** (Uninsured/Underinsured Motorist) |
| **ITEM 5:** | **DEDUCTIBLE**<br>Comprehensive: $250 each **Accident**<br>Collision:      $500 each **Accident** |
| **ITEM 6:** | **ESTIMATED CONTRIBUTION:** $7,470 (To be adjusted based on actual **Covered Autos**) |
| **ITEM 7:** | **CONTRACT AND AMENDMENT FORMS ATTACHED AT ISSUANCE:** Auto(07/12)<br>A405   A440 |
| **ITEM 8:** | **NOTICE REQUIRED TO BE GIVEN TO BETAʀᴍᴀ MUST BE ADDRESSED TO:**<br>BETA Risk Management Authority<br>1443 Danville Boulevard<br>Alamo, CA 94507 |

This Certificate of Participation, the **Application(s)** and accompanying documents, and the Coverage Contract with Amendments shall constitute the Contract between BETAʀᴍᴀ and the **Members.**

Authorized Representative of BETAʀᴍᴀ

BETA C.O.P.

Date Issued: July 01, 2017 (Initial)

EXHIBIT β

Page 34 Of 34

# EXHIBIT C

EXHIBIT _C_

Page _1_ Of _31_

## BETA RISK MANAGEMENT AUTHORITY

### DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE CONTRACT INCLUDING HEALTHCARE ENTITY COVERAGE

**IMPORTANT**

THIS IS A NON-ASSESSABLE CLAIMS MADE AND REPORTED CONTRACT WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. APPLICABLE DEDUCTIBLES APPLY TO DEFENSE EXPENSES AS WELL AS OTHER LOSS. THIS COVERAGE CONTRACT REQUIRES ARBITRATION OF DISPUTES WITH BETARMA. PLEASE READ THE ENTIRE CONTRACT CAREFULLY.

D&O (07/16)

## IMPORTANT NOTICES

The coverage afforded by this Contract is limited to liability for only those **Claims** first made against the **Member** during the **Contract Period** and reported in writing to BETA Risk Management Authority ("BETARMA ") as soon as possible but in no event later than thirty (30) calendar days after the termination of the **Contract Period**. In addition, this Contract provides no payment for **Loss** (including **Defense Expenses**) arising from acts, errors or omissions that occurred prior to the **Retroactive Date** set forth on the Certificate of Participation (the "Certificate"), or after the Expiration Date.

BETARMA is a California Joint Powers Authority formed to pool self-insured claims and losses among public entities and nonprofit organizations providing healthcare services as authorized by California Government Code Sections 990.4(a), 990.8(c) and 6527 and subject to the provisions of Section 991.2. This Contract is not an insurance policy. BETARMA is not subject to regulation as an insurer. As a public agency, it will, for example, be guided by *Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, rather than *San Diego Federal Credit Union v. Cumis Ins. Society* (1984) 162 Cal.App.3d 385, when deciding whether to pay for independent defense counsel. The **Named Member** must be a member in good standing in BETARMA to participate in the Group Self-Insurance Program.

This Contract is an agreement arrived at by mutual negotiation among and consent of the **Members** of BETARMA and approved by the BETA Council. The Contract is intended to be interpreted in accordance with the usual rules of contract law. Because, among other reasons, this Contract was negotiated at arm's length by parties of approximately equal bargaining power, any ambiguities that may be found are to be interpreted in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of the Contract. The Contract includes limitations, restrictions and exclusions. In other words, this agreement does not protect against all risks associated with your activities. Please note that this Contract is structured differently, and covers different risks, from the BETARMA Healthcare Entity Comprehensive Liability Coverage Contract. One important difference between the two Contracts is that in this Contract **Defense Expenses** that BETARMA pays reduce the Limit of Liability available to pay settlements, judgments, and other **Loss** arising from covered **Claims**. Also, there may be deductibles the **Named Member** must pay before BETARMA will be obligated to begin paying **Defense Expenses**. You must read the entire Contract, the amendments and the Certificate, in order to understand your and BETARMA's obligations. Words or terms that are in **bold** print have a special meaning that is set forth in the Definitions section, Section 1. These definitions limit the protection this Contract provides.

**Any disputes with BETARMA that cannot be resolved must be arbitrated as set forth in Section 5. By accepting this Contract, you and BETARMA are agreeing to give up the right to court remedies, including a jury trial. Except as provided by law, the Arbitrators' ruling will be final and binding on the parties, and rights of appeal are strictly limited.**

EXHIBIT ___*C*___

Page __3__ Of- _31_

## DIRECTORS, OFFICERS AND TRUSTEES LIABILITY CONTRACT
## INCLUDING HEALTHCARE ENTITY COVERAGE

This Contract comprises the following:

Page

CERTIFICATE OF PARTICIPATION

IMPORTANT NOTICES ........................................................................................................... ii

SECTION 1 – DEFINITIONS ................................................................................................... 1

SECTION 2 – COVERAGE AGREEMENTS ........................................................................... 8

SECTION 3 – SPOUSAL EXTENSION ................................................................................ 10

SECTION 4 – EXCLUSIONS ................................................................................................ 11

SECTION 5 – CONDITIONS ................................................................................................. 16

   1.    RIGHTS AND DUTIES CONCERNING CLAIMS AND CLAIMS DEFENSE ......................... 16

   2.    LIMITATIONS ON BETA<sub>RMA</sub>'s OBLIGATIONS WHEN MEMBERS HAVE INSURANCE, OTHER COVERAGE, OR OTHER INDEMNIFICATION ...................................... 17

   3.    THE TOTAL AMOUNTS BETARMA WILL PAY; THE AMOUNTS THE MEMBERS MUST PAY BEFORE BETARMA WILL PAY ANY LOSS; WHEN BETARMA WILL PAY LOSS .................. 18

   4.    MEMBER DUTY TO COOPERATE ........................................................................... 19

   5.    RIGHT TO LIMITED EXTENDED REPORTING PERIOD ............................................ 19

   6.    DATE CLAIMS ARE DEEMED TO BE FIRST MADE .................................................. 19

   7.    REPAYMENT TO BETARMA OF CERTAIN LOSS PAYMENTS THAT THE NAMED MEMBER IS REQUIRED BY LAW TO SEEK TO RECOVER FROM INDIVIDUAL MEMBERS WHO ARE ELECTED OFFICIALS ...................................................................................... 20

   8.    OFFSETTING SUMS ............................................................................................. 20

   9.    MEMBER REPRESENTATIONS TO BETARMA ........................................................ 20

   10.   ACTIONS AGAINST BETARMA ............................................................................... 20

   11.   MEMBERS' AUTHORIZATION AND NOTICES .......................................................... 21

   12.   LIMITS OF HOW THIS CONTRACT CAN BE CHANGED ........................................... 21

   13.   ASSIGNMENT OF MEMBERS' RIGHTS UNDER THIS CONTRACT ............................. 21

   14.   TERMINATION OF THIS CONTRACT ...................................................................... 21

   15.   CONTRIBUTION ................................................................................................... 22

   16.   INSPECTION AND AUDIT ..................................................................................... 22

   17.   COVERAGE IN THE EVENT OF ACQUISITIONS, MERGERS AND DISSOLUTIONS ....... 22

   18.   ARBITRATION OF DISPUTES ............................................................................... 22

   19.   DELEGATION AND ASSIGNMENT OF BETARMA's DUTIES ...................................... 23

   20.   EFFECTIVE DATE OF THIS CONTRACT ................................................................ 23

   21.   ENTIRE AGREEMENT CONTAINED IN THIS DOCUMENT ......................................... 23

   22.   HEADINGS ......................................................................................................... 23

   23.   GOVERNING LAW ............................................................................................... 23

   24.   CONFORMITY TO STATUTE ................................................................................. 23

   25.   NON-RENEWAL OF THIS CONTRACT .................................................................... 24

AMENDMENTS

APPLICATION

D&O (07/16)                  iii

EXHIBIT   C
Page 4 Of- 31

BETAᴿᴹᴬ and all **Members**, subject to all of the terms, conditions and exclusions of this Contract, agree as follows:

| SECTION 1 – DEFINITIONS |
| --- |

Whenever used in this Contract:

1.  **Advertising Injury** means injury arising out of one or more of the following offenses in the advertising of the **Named Member's** or a **Subsidiary's** services or products:

    A.  oral or written publication of material that slanders or libels a person or organization;

    B.  oral or written publication of materials that disparages a person's or organization's goods, products or services;

    C.  oral or written publication of materials that violates an individual's right of privacy;

    D.  unauthorized taking of advertising ideas or style of business; or

    E.  infringement of copyright, trade dress or slogan.

2.  **Application** means the application for this Contract, and any updated or supplementary application, including any materials submitted to BETAᴿᴹᴬ in connection with an application.

3.  **Certified Act of Terrorism** means a Certified Act of Terrorism, as defined under the federal Terrorism Risk Insurance Act of 2002 or any amendment thereto.

4.  **Claim** means:

    A.  a written notice received by a **Member** stating that a person or organization intends to hold that **Member** responsible for a **Wrongful Act**, seek an injunction or demand reinstatement of employment or re-engagement as an independent contractor;

    B.  an Equal Employment Opportunity Commission or Department of Fair Employment and Housing written administrative complaint or charge received by a **Member**;

    C.  any written administrative complaint or charge alleging **Retaliation** brought before any federal or state administrative agency and received by a **Member**; or

    D.  service on an individual **Member** of a civil judicial proceeding brought against that person solely by reason of his or her status as a **Member**.

    With regard to A above, BETAᴿᴹᴬ has the right, but not the duty, to defend an action or proceeding seeking to enjoin a **Member** from committing a **Wrongful Act**.

    However, **Claim** does not include:

    A.  any criminal prosecution, proceeding or investigation;

    B.  any action for declaratory relief or equitable relief other than injunctive relief. (Examples of excluded equitable relief include restitution, disgorgement, constructive trust, and rescission, reformation or specific performance of a contract);

    C.  any internal proceeding or grievance procedure established by or for the **Named Member** or a **Subsidiary**;

EXHIBIT ___C___
Page _5_ Of_ 3/_

D. any administrative investigation, accusation or proceeding prior to the filing of a request for review by an administrative law judge, court or arbitrator of a formal determination made following an administrative hearing; provided, however, that this subsection does not apply to Equal Employment Opportunity Commission or Department of Fair Employment and Housing proceedings or to a complaint or charge alleging **Retaliation**; or

E. any license, permit or disciplinary proceeding.

5. **Claimant** means the person or organization who asserts a **Claim** and includes the predecessor in interest of a **Claimant**.

6. **Contract Period** means the time period from the Effective Date to the Expiration Date specified in the Certificate or any earlier termination date.

7. **Defense Expenses** means reasonable legal fees and expenses necessarily incurred by BETArMA or, with BETArMA's written consent, by a **Member** to defend a **Claim**, except that **Defense Expenses** does not include wages, fees, benefits and all other employment remunerations of any individual **Member,** or any other overhead or benefit expenses associated with any such person.

8. **Employee Benefit Program** means group or individual life insurance, accident and health insurance, profit sharing or savings plan, pension or retirement plan, salary reduction or deferral plan, employee stock subscription plan, workers' compensation, unemployment insurance, social security and disability benefits plan or insurance, plan to pay medical, dental, vision or drug claims, or any other similar plan provided, in whole or part, or administered by the **Named Member** or **Subsidiary** for its employee(s) or their dependents.

9. **Employment Practices Liability** means:

A. any actual or alleged act or omission by any **Member** related to the employment of the **Claimant**, including, but not limited to, recruiting, interviewing, hiring, declining to hire, assigning, reassigning, granting or placing on leave, performance reviews, promotion, training, transfer, disciplinary action, demotion, supervision, layoff and termination of the **Claimant** as an employee or as an independent contractor;

B. any actual or alleged acts of wrongful discharge, unlawful discrimination or harassment in employment, and any other act or omission prohibited by any statute regulating employment practices;

C. any actual or alleged **Retaliation**; or

D. any actual or alleged **Advertising Injury** or **Personal Injury** alleged or suffered by any employee or former employee of the **Named Member** or a **Subsidiary**.

However, "**Employment Practices Liability**" does not include any actual or alleged act or omission by any **Member** related to any **Employee Benefit Program**.

10. **Fungi** means any type or forms of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **Fungi**.

11. **Hazardous Properties** includes radioactive, toxic or explosive properties.

12. **Loss** means adjudicated damages, judgments, settlements and **Defense Expenses** that the **Member** is legally obligated to pay solely as the result of a **Claim** covered by this Contract, but only those amounts that exceed the applicable Deductible specified in the Certificate.

EXHIBIT _C_
Page _6_ Of- _31_

**Loss** does not include:

A. all taxes;

B. equitable remedies and costs of complying with equitable remedies, including injunctive relief;

C. costs of complying with governmental requests, directives, orders or recommendations;

D. punitive or exemplary damages, the multiplied portion of any treble damage or other multiplied damage award, or any fines and penalties;

E. matters that an insurer could not indemnify under California Insurance Code Section 533; or

F. attorneys' fees or costs or expenses of investigation or prosecution awarded to a **Claimant** in any administrative proceeding.

However, BETARMA will pay BETARMA's share of **Defense Expenses** with respect to a **Claim** seeking or alleging items described in D, E and F above or seeking injunctive relief, if the **Claim** is otherwise covered by this Contract.

13. **Member** includes each of the following:

A. The **Named Member** and any **Subsidiary**.

B. Any past, present or future director, officer, trustee, department head, employee, **Volunteer**, or any member of any duly constituted committee of the **Named Member** or a **Subsidiary**.

C. Any member of the medical staff of the **Named Member** or a **Subsidiary**, but only for acts or omissions solely in an administrative or governance capacity at the request of and on behalf of the **Named Member** or **Subsidiary**, and not in the course of or in any way relating to **Direct Patient Care**.

   **Direct Patient Care** includes, but is not limited to, any direct treatment, consultation, diagnostic tests or procedures, therapeutic procedures, pathological analysis, or reports, or any other associated medical or health services.

D. The estate, heirs, executors, administrators and legal representatives of any **Member** in the event of the **Member's** death, but only to the extent the **Member** would otherwise be provided coverage under this Contract.

E. Any individual who previously qualified as a **Member** under B, C or D above prior to the termination of his or her relationship with the **Named Member** or **Subsidiary**, but these persons are covered only for **Claims** alleging a **Wrongful Act** occurring prior to the termination of their relationship required in B, C or D above.

However, notwithstanding any other provision of this Contract, **Member** does not include any independent contractor of a **Member**, or any employee of an independent contractor of a **Member**, unless an amendment has been issued extending coverage to such person or entity. "Independent contractor" includes any person or entity that provides services for a fee or other compensation, other than as an employee of the **Named Member** or a **Subsidiary**. For purposes of this provision, a member of the medical staff shall not be deemed an independent contractor when acting solely in an administrative or governance capacity at the request of and on behalf of the **Named Member** or **Subsidiary**, and not in the course of or in any way relating to **Direct Patient Care**.

14. **Multiple Claim** means two or more **Claims** arising out of a single **Wrongful Act** or a series of related **Wrongful Acts**, including **Claims** made against one or more persons or entities and **Claims** made by

EXHIBIT _____ C
Page _7_ Of_ 31_

one or more persons or entities. "Related **Wrongful Acts**" mean **Wrongful Acts** that share a causal connection or have as a common nexus any event or transaction or series of events or transactions.

15. **Named Member** means the organization specified in the Certificate.

16. **Network and/or Privacy Breach-Related Wrongful Act** includes, but is not limited to:

    A. any actual or alleged failure to safeguard or to prevent unauthorized access to **Personal Information** or a **Member's** computer network, including any access that exceeds authorization;

    B. any person's actual or alleged unauthorized access to, or use or disclosure of **Personal Information**, including any access, use or disclosure that exceeds, authorization; or

    C. any failure to give notification of an actual or potential unauthorized access to, or use or disclosure of, any **Personal Information**; or

    D. any **Wrongful Act** of any **Member** arising out of or relating to possible **Network and/or Privacy Breach-Related Wrongful Act** risk, including, but, not limited to, any failure to obtain or maintain appropriate insurance or other protection.

17. **Nuclear Facility** means:

    A. any **Nuclear Reactor**;

    B. any equipment or device designed or used for separating the isotopes of uranium or plutonium, processing or utilizing **Spent Fuel**, or handling, processing or packaging **Nuclear Waste**;

    C. any equipment or device used for the processing, fabricating or alloying of **Nuclear Material** if at any time the total amount of such material in the **Member's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    D. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Nuclear Waste**, including the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

18. **Nuclear Material** means Source Material, Special Nuclear Material or By-Product Material, as defined under the Federal Atomic Energy Act of 1954 or in any amendment thereto.

19. **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

20. **Nuclear Waste** means any material containing By-Product Material and resulting from the operation by any person or organization of any **Nuclear Facility**.

21. **Outside Not-For-Profit Organization** means an organization other than the **Named Member**, no part of the income or assets of which are distributable to its owners, stockholders or members, and which is formed and operated for a purpose other than for the pecuniary profit or financial gain of its owners, stockholders or members.

22. **Personal Information** includes any information defined as "individually identifiable health information", "medical information", "personal information", or "personally identifying information", in the Health Insurance Portability and Accountability Act of 1996 or the California Civil Code, as amended from time to time, or in any regulations adopted thereunder.

EXHIBIT _____
Page _8_ Of _31_

23. **Personal Injury** means injury arising out of one or more of the following offenses resulting from the **Named Member's** or a **Subsidiary's** activities:

    A.  false arrest, detention or imprisonment;

    B.  release of patient information or records;

    C.  malicious prosecution;

    D.  the wrongful eviction from, wrongful entry into, or invasion of the right of public or private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    E.  oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

    F.  an invasion that violates a person's right of privacy.

24. **Pollutant** means any solid, liquid, gaseous, radioactive or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. **Pollutant** includes indoor **Pollutants**.

25. **Professional Services** means the following services:

    A.  medical, surgical, dental, nursing or other healthcare services or treatment to a patient, including custodial care and the furnishing of food or beverages in connection with the treatment;

    B.  the furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances to a patient if the injury occurs after the **Member** has relinquished possession thereof;

    C.  the handling or performing of post-mortem examinations on human bodies; or

    D.  services by any person as a member of the **Named Member's** or a **Subsidiary's** formal accreditation or similar professional board or committee, or as a person charged with the duty of executing directives of any such board or committee.

26. **Retaliation** means retaliatory treatment against any employee or independent contractor because of his or her:

    A.  exercise of his or her rights under the law;

    B.  opposition to any unlawful practice or refusing to violate any law;

    C.  report or threat to report any alleged violation of law to a superior or to any governmental agency; or

    D.  assistance or testimony in or cooperation with an investigation or proceeding concerning any alleged violation of law by the **Member.**

27. **Retroactive Date** means the date specified in the Certificate. No coverage is provided by this Contract for any **Wrongful Act** occurring or beginning before the **Retroactive Date**.

28. **Spent Fuel** means any fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

29. **Subsidiary** means any of the following:

EXHIBIT _C_
Page _9_ Of _31_

    A.  any corporate, general partnership or limited-liability-company affiliate of the **Named Member** listed as a **Subsidiary** in the Certificate or an amendment;

    B.  any foundation the sole activity of which is to provide financial support to the **Named Member**;

    C.  any non-profit corporation affiliated with the **Named Member** and created pursuant to Section 32121(p) of the Health and Safety Code to which the **Named Member** has transferred assets.

30. **Terrorism** means a **Certified Act of Terrorism** or acts of any person or organization against any persons, organizations or property of any nature:

    A.  that involve the following or preparation for the following:

        (1)  use or threat of force or violence; or

        (2)  commission or threat of a dangerous act; or

        (3)  commission or threat of an act that interferes with or disrupts an electronic communication, information, or mechanical system; and

    B.  when either or both of the following applies:

        (1)  the effect is to intimidate or coerce a government or the civilian population or any segment of the public, or to disrupt any segment of the economy; or

        (2)  it appears that the intent is to influence, intimidate or coerce a government, or any segment of the public, or to further political, ideological, religious, social, economic or similar objectives or to express (or express opposition to) a philosophy of ideology.

31. **Volunteer** means any person or group, such as any auxiliary, whose services or labor are uncompensated from any source and are accepted or directed by the **Named Member** or a **Subsidiary**, and who is not a healthcare professional rendering **Professional Services** which require licensing or other certification.

32. **Waste** includes all materials to be disposed of, recycled, reconditioned and/or reclaimed, including, but not limited to used, expired or disposed-of medical and pharmaceutical supplies.

33. **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty:

    A.  with respect to Coverage Agreements A and B, by an individual **Member** solely in his or her capacity as:

        (1)  a director, officer, trustee, department head, employee, **Volunteer**, or member of any duly constituted committee of the **Named Member** or a **Subsidiary**;

        (2)  a director, officer, trustee or member of a duly constituted committee of an **Outside Not-for-Profit Organization** not covered by BETARMA, if his or her service as a director, officer, trustee or member of the committee of the **Outside Not-for-Profit Organization** was at the specific request of the Board of Directors, Board of Trustees or Chief Executive Officer of the **Named Member**; or

        (3)  a member of the medical staff, subject to the limitations of Section 1.13.C.

    B.  with respect to Coverage Agreement C, by the **Named Member** or a **Subsidiary**.

EXHIBIT _____ C
Page _10_ Of- _31_

C.  with respect to Coverage Agreement D, by the **Named Member** or a **Subsidiary**, or, subject to the limitations of A above, by an individual **Member**.

**Wrongful Act** includes, but is not limited to, an antitrust violation, including a violation of the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Cartwright Act and any similar federal, state or local statute or rule, and price fixing, monopolization, price discrimination, unfair competition and deceptive, unfair or unlawful trade practices.

EXHIBIT _____ C_____
Page _11_ Of _31_

## SECTION 2 – COVERAGE AGREEMENTS

COVERAGE AGREEMENTS: WHAT BETARᴍᴀ WILL PAY, IN EXCESS OF ANY DEDUCTIBLE, AND SUBJECT TO THE EXCLUSIONS IN SECTION 4 AND THE TOTAL AMOUNT BETARᴍᴀ WILL PAY IN SECTION 5:

**A. INDIVIDUAL MEMBERS' LIABILITY THAT A SUBSIDIARY IS NOT PERMITTED OR REQUIRED TO INDEMNIFY**

BETARᴍᴀ will pay on behalf of the individual **Member(s) Loss** that results from a **Claim** first made against them during the **Contract Period**, and reported to BETARᴍᴀ in writing as soon as possible but in no event later than thirty (30) calendar days after the **Contract Period**, for a **Wrongful Act** (other than **Employment Practices Liability)**, except **Loss** which the **Subsidiary** is permitted or required to pay the individual **Member(s)** as indemnification under the indemnification statutes applicable to the **Subsidiary**.

**B. INDIVIDUAL MEMBERS' LIABILITY THAT A NAMED MEMBER OR SUBSIDIARY IS PERMITTED OR REQUIRED TO INDEMNIFY**

BETARᴍᴀ will pay on behalf of the **Named Member** and its **Subsidiaries Loss** that results from a **Claim** first made against the individual **Member(s)** during the **Contract Period**, and reported to BETARᴍᴀ in writing as soon as possible but in no event later than thirty (30) calendar days after the **Contract Period**, for a **Wrongful Act** (other than **Employment Practices Liability)**, which the **Named Member** or **Subsidiary** is permitted or required to pay the individual **Member(s)** as indemnification under the indemnification statutes applicable to the **Named Member** or the **Subsidiary**.

**C. LIABILITY OF NAMED MEMBER OR SUBSIDIARY**

BETARᴍᴀ will pay on behalf of the **Named Member** and its **Subsidiaries Loss** that results from a **Claim** first made against them during the **Contract Period**, and reported in writing to BETARᴍᴀ as soon as possible but in no event later than thirty (30) calendar days after the **Contract Period**, for a **Wrongful Act** (other than **Employment Practices Liability)**.

**D. SPECIAL PROVISIONS FOR EMPLOYMENT PRACTICES LIABILITY CLAIMS**

BETARᴍᴀ will pay on behalf of the **Member Loss** that results from a **Claim** first made against the **Member** during the **Contract Period,** and reported in writing to BETARᴍᴀ as soon as possible but in no event later than thirty (30) calendar days after the **Contract Period**, for an **Employment Practices Liability Wrongful Act**. Any **Claim** alleging **Employment Practices Liability**, in whole or in part, will be covered only under this Coverage Agreement and will be subject to the separate Deductible specified in Item 6 of the Certificate.

**E. DISCRETIONARY REIMBURSEMENT TO NAMED MEMBER FOR INDEMNIFICATION OF INDIVIDUAL MEMBERS FOR UNINSURABLE MATTERS, INCLUDING PUNITIVE DAMAGES**

This Contract does not cover punitive or exemplary damages or other matters an insurer could not indemnify under California Insurance Code Section 533. However, a **Named Member** may make a specific, written request to BETARᴍᴀ to reimburse the **Named Member** for sums paid by the **Named Member** to indemnify an individual **Member** for matters which are excluded from coverage solely because of the exclusion for punitive or exemplary damages or for matters an insurer could not indemnify under California Insurance Code Section 533. (See Section 1.12.D and Section 1.12.E.) The **Named Member** shall make and shall submit to BETARᴍᴀ the findings required by law together with such other information as BETARᴍᴀ may request. BETARᴍᴀ may reimburse the **Named Member** in

EXHIBIT _C_
Page _12_ Of _31_

whole or in part if BETAʀᴍᴀ, in its sole, absolute and unreviewable discretion, determines that such reimbursement is in the best interests of BETAʀᴍᴀ and the members under the Joint Powers Authority Agreement.

EXHIBIT___C___
Page _13_ Of- _31_

## SECTION 3 – SPOUSAL EXTENSION

If a **Claim** against a director, officer or trustee of the **Named Member** or a **Subsidiary** includes a **Claim** against the lawful spouse of such director, officer or trustee solely by reason of (a) such spousal status, or (b) such spouse's ownership interest in property or assets that are sought as recovery for a **Wrongful Act**, any **Loss** for which such spouse becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which such director, officer or trustee of the spouse becomes legally obligated to pay as a result of such **Claim**.

All terms, conditions and exclusions of this Contract, including the Deductible, applicable to **Loss** sustained by such director, officer or trustee in the **Claim** shall also apply to the **Claim** against the spouse.

The extension of coverage afforded in this Section shall not apply to the extent the **Claim** alleges any wrongful act or omission by such spouse.

EXHIBIT _____ C
Page 14 Of 31

---

## SECTION 4 – EXCLUSIONS

---

**WHAT BETARMA WILL NOT PAY:**

**EXCEPT AS OTHERWISE PROVIDED BELOW, THESE EXCLUSIONS APPLY REGARDLESS OF WHETHER ANY OTHER CAUSE, ACT, ERROR, OMISSION, EVENT, MATERIAL OR PRODUCT CONTRIBUTES CONCURRENTLY OR IN ANY SEQUENCE TO A CLAIMANT'S INJURY OR DAMAGE.**

1.  Except for **Defense Expenses**, BETARMA will not pay **Loss** for **Claims** arising out of or attributable to:

    A.  any dishonest or fraudulent act or omission, or any willful violation of any statute or governmental regulation, by any **Member**; or

    B.  any profit, remuneration or advantage gained by any **Member** to which that **Member** was not legally entitled.

    Severability of Interests: For the purpose of determining the applicability of Subparts A and B, no **Wrongful Act** of any individual will be imputed to any other individual.

    Adverse Final Adjudication: Further, each **Member**, severally and according to his, her or its respective interest, shall repay to BETARMA upon demand all **Loss**, including **Defense Expenses**, paid on behalf of the **Member** in the event and to the extent that a judgment or other final adjudication adverse to the **Member** establishes any matter that is excluded by Subparts A or B of this exclusion. However, the preceding sentence shall not apply if BETARMA has paid **Loss** under Coverage Agreement B or Coverage Agreement D and the **Named Member** would not be entitled to obtain such repayment from an individual **Member**.

2.  BETARMA will not pay **Loss**, including **Defense Expenses**, under Coverage Agreement C or any **Claim** against the **Named Member** or a **Subsidiary** under Coverage Agreement D, alleging liability or seeking relief based on, arising out of, or attributable to, directly or indirectly, any oral or written contract, or any implied-in-fact or implied-in-law contract, or any **Claim** seeking recovery under a theory of quantum meruit, unjust enrichment or quasi-contract.

    However, this exclusion does not apply to wrongful termination of an employment contract to the extent that the **Member** would have been liable for **Loss** for **Employment Practices Liability** in the absence of the contract.

3.  BETARMA will not pay **Loss**, including **Defense Expenses**, for **Claims**:

    A.  arising out of or attributable to any actual or alleged bodily injury, sickness, mental anguish, humiliation, emotional distress, disease or death of any person unless alleged in a **Claim** for **Employment Practices Liability**.

    B.  arising out of or attributable to physical injury to tangible property, including all resulting loss of use of that property.

    C.  arising out of or attributable to **Advertising Injury** or **Personal Injury**, unless alleged in a **Claim** for **Employment Practices Liability**.

    D.  arising out of or attributable to any **Member's** rendering or failure to render **Professional Services**. However, this exclusion shall not apply to **Claims** alleging that the **Named Member** or a **Subsidiary** has charged uninsured or underinsured patients unfair, unlawful, unreasonable or excessive prices or rates for goods or services, and it is agreed that such coverages this Contract

EXHIBIT _____ C
Page _15_ Of- _31_

provides for such **Claims** shall be subject to a $500,000 sub-limit, which shall be part of and not in addition to the aggregate Limit of Liability specified in Item 5 of the Certificate of Participation.

E.   arising out of or attributable to the alleged denial, suspension, revocation, termination or limitation of medical staff privileges.

F.   arising out of or attributable to any actual or alleged failure to pay compensation, benefits, severance or other remuneration to any present or former employee or independent contractor or liability under wage and hour statutes or common law, including, but not limited to, the federal Fair Labor Standards Act and the California Labor Code, governing, for example, minimum wages, hours worked, overtime, rest or meal breaks, reimbursement of expenses, and related recordkeeping and reporting. This exclusion does not apply to employment discrimination or wrongful termination of employment.

G.   arising out of or attributable to any **Wrongful Act** by a **Member** in connection with any **Employee Benefit Program** or fiduciary liability associated with any **Employee Benefit Program**.

H.   arising out of or attributable to any actual or alleged liability under any workers' compensation, unemployment compensation, or disability benefits law or any similar law. However, this exclusion shall not apply to an **Employment Practices Liability Claim** for **Retaliation**.

I.   arising out of or attributable to, in whole or in part, any actual, alleged or threatened generation, storage, transportation, discharge, dispersal, escape, release, seepage, treatment, clean-up, removal or disposal of any **Pollutant** or contaminant, including, without limitation, **Waste**, infectious or otherwise, and medical and pharmaceutical supplies. However, this exclusion shall not apply to an **Employment Practices Liability Claim** for **Retaliation**.

J.   based on, arising out of or attributable to, in whole or in part, any order, request, demand or directive or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, **Nuclear Material** or **Waste**.

K.   asserted by, on behalf of, with the assistance of, or at the behest of any of the following persons or organizations: the **Named Member**, a **Subsidiary**, any person who is or was a director, officer, administrator, trustee, department head, manager, employee, **Volunteer**, or member of a committee of the **Named Member** or a **Subsidiary**, or the estate, heirs, executor, administrator or legal representative of any of them, except:

     (1)   if the **Named Member** or **Subsidiary** is a limited liability company, this exclusion shall not apply to a **Claim** brought by a member of the limited liability company totally independently of, and without solicitation, assistance, participation or intervention by the **Named Member** or **Subsidiary** of any other person or organization described above;

     (2)   this exclusion shall not apply to a **Claim** by a present or former employee or independent contractor of the **Named Member** or **Subsidiary** alleging **Employment Practices Liability**; and

     (3)   this exclusion shall not apply to a **Member's** request for review by an administrative law judge, court or arbitrator of a formal determination made after an administrative hearing.

L.   arising out of or attributable to any fact, circumstance or situation:

     (1)   alleged in any litigation initiated before this Contract's Effective Date, or

     (2)   of which BETArma, Program BETA or any insurer has been notified, before this Contract's Effective Date, under any coverage contract or policy of insurance.

EXHIBIT _____ C

Page _16_ Of- _31_

M. based, in whole or in part or directly or indirectly, on, attributable to, arising out of, resulting from, or in any way related to, any actual or alleged violation of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., or any similar provisions of any federal, state or other statutory law or common law or rule or regulation, including, but not limited to, the Pension Trust Provisions of the California Government Code, Section 53215, et seq., all as they may be amended. However, this exclusion shall not apply to an **Employment Practices Liability Claim** for **Retaliation**.

N. based, in whole or in part or directly or indirectly on, attributable to, arising out of, resulting from or in any way related to, any actual or alleged violation of the Securities Act of 1993, the Securities Exchange Act of 1934, any rules or regulations of the Securities and Exchange Commission adopted thereunder, similar provisions of any federal, state or other statute, regulating securities, all as they may be amended, any rules or regulations adopted pursuant thereto, or any other law, including common law.

O. against any **Subsidiary**, or any individual **Members** in their capacities with the **Subsidiary**, for any **Wrongful Act** which occurred or began before the date the entity became a **Subsidiary**.

P. arising out of or attributable to any **Wrongful Act** which occurred or began before the **Retroactive Date**.

Q. with respect to which the **Member** is also an insured under a nuclear energy policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

R. arising out of or attributable to the **Hazardous Properties** of **Nuclear Material** under any of the following circumstances:

    (1) if any **Member** is required to maintain financial protection for nuclear events; or is entitled, or would have been entitled had this Contract not been issued, to indemnity for nuclear events from the United States of America;

    (2) the **Nuclear Material** is located at, or is discharged from, any **Nuclear Facility** the **Named Member** or a **Subsidiary** owns or operates;

    (3) the **Nuclear Material** is contained in **Spent Fuel** or **Nuclear Waste** that has at any time been possessed, handled, used, processed, stored, transported or disposed of by the **Named Member** or a **Subsidiary** or someone in their behalf; or

    (4) the **Loss** results, directly or indirectly, from services or materials the **Named Member** or a **Subsidiary** furnishes in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**.

S. arising out of or attributable to, directly or indirectly or in whole or in part, actual or alleged ownership, management, operation or control of any Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or other similar organization. However, this exclusion does not apply to the **Member's** participation solely as a provider of healthcare services to a Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or similar organization not owned, managed, or controlled by a **Member.**

T. arising out of, attributable to or in any way related to, directly or indirectly:(1) any actual or alleged violation of the Federal False Claims Act, the Social Security Act, any similar federal, state or other law or common law, or any federal, state or other anti-kickback, self-referral or healthcare fraud and abuse law, or any rules or regulation adopted under any such laws; or (2) any actual or alleged Medical Benefit Billing. This exclusion includes, but is not limited to any **Claim** for **Retaliation**. Medical Benefit Billing includes presenting or causing or allowing to be presented to a government

EXHIBIT    C
Page 1 7 Of- 3 1

health benefit payor or program any document seeking payment or reimbursement for **Professional Services**.

For the purposes of this exclusion, the definition of **Professional Services** in Section 1.25.B is amended to include the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances, regardless of whether the **Member** has relinquished possession of them.

U.  based on, arising out of or attributable to, in whole or in part from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **Fungi** or bacteria at or from any premise, site or location, including its contents, which is or was at any time owned or occupied by, or rented or loaned to, any **Member**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

This exclusion does not apply to any **Fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

V.  arising, directly or indirectly, in whole or in part, out of attributable to, resulting from, or in any way related to:

  (1)  war, including undeclared or civil war; or

  (2)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  (3)  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

  (4)  the discharge of a nuclear weapon, even if it is accidental; or

  (5)  **Terrorism**, including any action taken in hindering or defending against an actual or expected incident of **Terrorism.**

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, this exclusion does not apply to a **Claim** based solely on a **Member's** alleged negligence in rendering or failing to render **Professional Services** to a victim of **Terrorism** or other acts specified in Clauses 1 through 4 above.

W.  based on, arising out of or attributable to, in whole or in part or directly or indirectly, resulting from, or in any way related to any actual or alleged violation of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare and institution Code, Section 15600 et seq., as it may be amended from time to time.

However, BETAᴿᴹᴬ has the right but not the duty to defend such a **Claim.**

X.  based on, arising out of or attributable to any actual or alleged violation of responsibilities or obligations imposed by any federal, state, or local statutory law or common law (including but not limited to the Worker Adjustment and Retraining Notification Act), or amendments to or regulations under any such law, that governs any obligation of an employer to notify, discuss or bargain with its employees or others in advance of any plant or facility closing, or mass layoff, or any similar obligation.  However, this exclusion shall not apply to an **Employment Practices Liability Claim** for retaliation.  "Retaliation," as used in this clause means retaliatory treatment of an employee on account of that employee's exercising his or her rights under law, refusing to violate any law, disclosing or threatening to disclose to a superior or to any governmental agency any alleged violation of law, testifying in or assisting an investigation or proceeding regarding alleged violation of

EXHIBIT____C____
Page _18_ Of- _31_

law, or filing a claim against the **Named Member** or a **Subsidiary** under the Federal False Claims Act or any similar "whistleblower" law.

Y. arising out of or attributable to actual or alleged discrimination based upon, without limitation, an individual's race, ethnicity, ancestry, national origin, citizenship, religion, age, sex, sexual orientation or preference, pregnancy, pre-existing medical condition, physical or mental disability or handicap, insurance status, economic status, or ability to pay for medical services, or sexual abuse, assault, battery, harassment, or molestation. This exclusion does not apply to **Employment Practices Liability Claims**.

Z. based on, arising out of or attributable to any actual or alleged **Network and/or Privacy Breach-Related Wrongful Act**. This exclusion includes, but is not limited to, a **Claim** for **Retaliation**. However, this exclusion does not apply to a **Claim** by a **Claimant** who was disciplined or whose employment was terminated or otherwise adversely affected because the **Member** believed that the **Claimant** committed a **Network and/or Privacy Breach-Related Wrongful Act**.

4. BETArma will not pay **Loss**, including **Defense Expenses**, under Coverage Agreement B, or with respect to an individual **Member** under Coverage Agreement D, unless:

A. the **Named Member** or **Subsidiary** is permitted by law to pay such **Loss** on behalf of the individual **Member(s)** under the indemnification statutes applicable to the **Named Member** or **Subsidiary**; and

B. the **Named Member** or **Subsidiary** has first entered into an agreement with the individual **Member** reserving the rights of the **Named Member** or **Subsidiary** not to pay any judgment, compromise or settlement until it is established that: (i) the alleged injury arose out of an act or omission occurring within the scope of his or her duties to the **Named Member** or **Subsidiary**, and (ii) the individual **Member** did not act because of actual fraud, corruption or actual malice; or

C. before undertaking to defend or indemnify the individual **Member**, the **Named Member** or **Subsidiary** has first determined, in good faith, that: (i) the alleged injury arose out of an act or omission occurring within the scope and course of his or her duties to the **Named Member** or **Subsidiary**, and (ii) the individual **Member** did not act because of actual fraud, corruption or actual malice; and BETArma concurs in the **Named Member's** or **Subsidiary's** determinations; and

D. before undertaking to defend or indemnify an individual **Member** in any administrative proceeding, the **Named Member** or **Subsidiary** has determined, in good faith, that he or she acted, or failed to act, in good faith, without actual malice and in the apparent interests of the **Named Member** or **Subsidiary,** and BETArma concurs in the **Named Member's** or **Subsidiary's** determination.

EXHIBIT     C
Page 19 Of 31

---

## SECTION 5 – CONDITIONS

1. **RIGHTS AND DUTIES CONCERNING CLAIMS AND CLAIMS DEFENSE**

   A. Except as otherwise provided in this Contract, BETARMA has the right and duty to defend any **Claim** covered by this Contract. BETARMA will defend any covered **Claim** even if the allegations of such **Claim** are groundless, false, or fraudulent. BETARMA has no duty to defend any **Claim** that is not covered by this Contract.

   B. Notwithstanding any other provision of this Contract, selection of defense counsel will be at the prerogative of BETARMA, unless otherwise agreed upon in writing with the **Member.** However, recommendations by the **Member** of qualified and experienced defense counsel will be considered. Further, a reservation by BETARMA of the right not to cover certain causes of action, certain alleged acts or omissions or certain allegations of damage shall not entitle a **Member** to select defense counsel to be paid for by BETARMA, nor shall BETARMA be obligated to pay for separate, independent or additional defense counsel in such circumstances.

   C. The Deductibles specified in the Certificate shall apply to all **Loss**, including **Defense Expenses**. Such Deductible amounts shall be paid by the **Members** within thirty (30) calendar days of BETARMA's written demand.

   D. **Defense Expenses** incurred by BETARMA when defending **Claims**, or by the **Member** with the written consent of BETARMA, are part of and not in addition to BETARMA's applicable Limit of Liability specified in the Certificate or by amendment, and payment by BETARMA or **Member** of **Defense Expenses** reduces the Limit of Liability.

   E. **Defense Expenses** incurred by any **Member** without the written consent of BETARMA shall be borne by the **Member** and shall not apply to reduce the **Member's** Deductible.

   F. BETARMA shall not be obligated to pay any **Loss** or to defend or to continue to defend any **Claim** or to take or to continue to prosecute any appeal after BETARMA's applicable Limit of Liability specified in the Certificate or by amendment has been exhausted.

   G. BETARMA, in its sole, absolute and unreviewable discretion, may prosecute any appeal by the **Member** from an adverse judgment, provided, however, that BETARMA shall have no obligation to pay pre- or post-judgment interest or to post a bond on any amount in excess of the applicable then-remaining Limit of Liability. Where the **Member** chooses to appeal in spite of BETARMA's decision not to appeal, BETARMA shall have no obligation to pay for any costs of appeal, including attorneys' fees or bond premiums, and shall not be obligated to pay any post-judgment interest on the judgment even though these amounts may be within its Limit of Liability.

   H. In the event BETARMA has reserved its rights to contest the applicability of its coverage, BETARMA's rights to deny coverage shall not be affected by the settlement of a **Claim** unless expressly so agreed in writing by BETARMA.

   I. If both **Loss** covered by this Contract and any sum(s) not covered by this Contract are incurred with respect to any **Claim**, either because a **Claim** against the **Member**(s) includes both covered and noncovered allegations or because a **Claim** is made against both a **Member** and other persons or entities, BETARMA shall be responsible only for that portion of the total amount that is covered by this Contract.

   The **Member** and BETARMA shall use their best efforts to agree upon a fair and proper allocation of covered **Loss** and uncovered sums. However, if the **Member** and BETARMA cannot agree upon such an allocation:

EXHIBIT C
Page 20 Of- 31

(1) BETArma shall advance on a current basis **Defense Expenses** which BETArma believes to be covered under this Contract until a different allocation is negotiated or determined by arbitration;

(2) the **Member** and BETArma shall submit the dispute to binding arbitration; and

(3) no presumption as to allocation shall exist in any arbitration.

Any negotiated or arbitrated allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of that **Claim**, notwithstanding any previous advancement made on a different basis. Any allocation or advancement of **Defense Expenses** on account of a **Claim** shall not create any presumption with respect to the allocation of other **Loss** on account of the **Claim**.

J.  (1) No **Member** shall, except at the **Member's** own cost, admit liability for or settle any **Claim**, or incur **Defense Expenses**, without BETArma's prior written consent. Expenses incurred without BETArma's written consent shall not apply to reduce the **Member's** Deductible.

(2) BETArma shall not settle any **Claim** without the prior written consent of the **Named Member**, except as provided in clause (3) below.

(3) BETArma shall not settle any **Claim** against an individual **Member** under Coverage Agreement A (INDIVIDUAL MEMBERS' LIABILITY THAT A NAMED MEMBER OR SUBSIDIARY IS NOT PERMITTED OR REQUIRED TO INDEMNIFY) without the prior written consent of the individual **Member**.

K.  BETArma will not pay **Defense Expenses** to the extent that such **Defense Expenses** are payable or are being paid under any other indemnification contract or under any policy of insurance, except as provided in Section 5.2 below.

L.  Priority of Payment – In the event of **Loss** arising from a **Claim** or **Claims** for which payment is due under the provisions of this Contract, BETArma shall:

(1) First, pay such **Loss** for which coverage is provided under Section 2 Coverage Agreement A of this Contract;

(2) Second, pay **Loss** for which coverage is provided under Coverage Agreement B; and

(3) Last, with respect to whatever remaining amount of the Limit of Liability is available after payment of such **Loss** accordance with paragraph (1) and (2) above, pay such other **Loss** for which coverage is provided under this Contract.

**2.  LIMITATIONS ON BETArma's OBLIGATIONS WHEN MEMBERS HAVE INSURANCE, OTHER COVERAGE, OR OTHER INDEMNIFICATION**

A.  **Loss** shall be paid under this Contract only after any valid and collectible insurance or other coverage is exhausted, whether such insurance or other coverage is stated to be primary, contributory, excess, contingent or otherwise, unless that insurance or other coverage is written specifically excess of this Contract by reference to its Certificate Number. Without limiting the preceding sentence, no **Defense Expenses** shall be payable under this Contract for any **Claim** which any insurer has a duty to defend, unless and until all collectible proceeds of that insurer's coverage are paid. Also, the proceeds of this Contract are available only after the exhaustion of any self-insurance and/or any indemnification to which a **Member** is entitled from any entity other than the **Named Member** or a **Subsidiary**. This Contract shall not be subject to the terms of any other contract or insurance policy.

EXHIBIT _____ C_____
Page _21_ Of- _31_

B.  Without limiting the scope of 2.A above, if any director or officer of the **Named Member** is serving or has served at the specific request of the **Named Member** as a director, officer, trustee or member of a committee of an **Outside Not-For-Profit Organization**, the coverage afforded by this Contract:

 (1)  will be available only after the exhaustion of any indemnity or insurance available to that director, officer, trustee or committee member by reason of that service; and

 (2)  will not extend to the **Outside Not-For-Profit Organization** in which the director, officer, trustee or committee member is serving or has served, or to any other director, officer, trustee, committee member or employee of that **Outside Not-For-Profit Organization**.

3.  **THE TOTAL AMOUNTS BETARMA WILL PAY; THE AMOUNTS THE MEMBERS MUST PAY BEFORE BETARMA WILL PAY ANY LOSS; WHEN BETARMA WILL PAY LOSS**

A.  The most that BETARMA will pay for any one **Claim** is the per-**Claim** Limit of Liability specified in the Certificate or by amendment.  The Aggregate Limit of Liability specified in the Certificate is BETARMA's maximum aggregate Limit of Liability (the most BETARMA will pay) under this Contract for all **Loss** resulting from all **Claims** first made during the **Contract Period**, regardless of when BETARMA pays the **Loss**.  **Defense Expenses** are part of and not in addition to the applicable Limit of Liability, and payment of **Defense Expenses** by BETARMA will reduce Contract proceeds.

B.  A **Multiple Claim** shall be considered a single **Claim** for the purpose of determining both the number of Deductibles applicable to **Claims** and, if **Claims** alleging related acts or omissions are asserted in more than one **Contract Period**, the number of Limits of Liability applicable to those **Claims**.  A **Multiple Claim** shall be considered first made when the earliest of the **Claims** is first made.

C.  If **Loss** from a **Claim** is covered under more than one Section 2 Coverage, the applicable Deductible specified in the Certificate will be applied separately to that part of the **Loss** covered by each Coverage Agreement.  However, the sum of such deductibles shall not exceed the largest Deductible specified in the Certificate.

D.  For purposes of determining the applicable Deductibles, **Loss** covered by Coverage Agreement B includes amounts for which indemnification by the **Named Member** or a **Subsidiary** is legally permissible, whether or not the **Named Member** or **Subsidiary** actually indemnifies the individual **Member(s)**.  However, when indemnification is not made by the **Named Member** or **Subsidiary** because it is a "debtor" under the United States Bankruptcy Code, BETARMA will pay that part of the Deductible that remains unpaid and will be subrogated to the **Member(s)** rights of indemnity from the **Named Member** or **Subsidiary**.

E.  It is the intention of BETARMA and the **Members** that this Contract and a BETARMA Healthcare Entity Comprehensive Liability Coverage Contract or a BETARMA Automobile Liability and Physical Damage Coverage Contract  between BETARMA and **Members** shall not provide any duplication or overlap of coverage for the same **Claim**.  Nonetheless, if both this Contract and another such BETARMA Contract, including amendments, do apply to a **Claim**, the terms, conditions and exclusions, including the Deductible and the Limit of Liability, of each Coverage Contract shall apply, provided, however, that in no event shall the **Member** pay more than the highest applicable Deductible, nor shall BETARMA pay more than the highest applicable Limit of Liability.

F.  Except for the payment of **Defense Expenses**, BETARMA will pay **Loss** only upon the final disposition of a **Claim**.

G.  If the Limit of Liability is exhausted by the payment of **Loss**, including **Defense Expenses**, all obligations of BETARMA under this Contract, including its duty to defend **Claims** and to pay

EXHIBIT ___C___
Page _22_ Of _31_

**Defense Expenses**, will be completely fulfilled and extinguished, and BETARMA will have no further obligations whatsoever under this Contract.

4. **MEMBER DUTY TO COOPERATE**

   A. If a **Claim** is made, the **Member** will provide BETARMA with all information, assistance and cooperation that BETARMA reasonably requests, including attending hearings, depositions and trials, assisting in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, assisting in the conduct of suits, and giving a written statement or statements, under oath to BETARMA.

   B. If BETARMA makes any payment under this Contract, BETARMA is entitled to the extent of its payment to take over the **Member's** rights of recovery against all others. The **Member** must do nothing to make it harder for BETARMA to enforce those rights, and must sign and deliver any papers, and do anything else that may be necessary, to enable BETARMA effectively to bring suit in the name of the **Member**. The obligations of the **Member** under this provision will survive the termination of the **Contract Period**.

   C. If a **Claim** involves both covered and non-covered allegations, theories of recovery or relief, the **Member**, if requested by BETARMA, shall use its best efforts to secure: (a) a special verdict and findings that segregate covered and non-covered allegations, theories of recovery and relief; and (b) a bifurcation of the trial or hearing as to covered and non-covered allegations, theories of recovery or relief.

5. **RIGHT TO LIMITED EXTENDED REPORTING PERIOD**

   A. If this Contract is terminated by BETARMA or the **Named Member**, the **Named Member** shall have the right to purchase an extended reporting period upon payment of an additional Contribution. This right will terminate, however, unless written notice of the **Named Member's** election is received by BETARMA within ten (10) calendar days of the effective date of the termination of this Contract. The extended reporting period will provide coverage for **Claims** which are otherwise covered under this Contract and are first made and reported in writing to BETARMA as soon as possible during the extended reporting period, but only with respect to any **Wrongful Act** occurring on or after the **Retroactive Date** and before the effective date of the termination of this Contract. The cost and terms of the extended reporting period shall be determined in the sole, absolute and unreviewable discretion of BETARMA at the time the extended reporting period is requested.

   B. The **Named Member** does not have the right to purchase an extended reporting period if, on the date of termination, the **Named Member** has failed to pay any Contribution due under this Contract or has failed to reimburse BETARMA for any amount BETARMA has paid on account of any settlement or as damages or **Defense Expenses** in excess of any applicable Limit of Liability, or has otherwise failed to pay any other amount due BETARMA.

   C. The extended reporting period shall not provide a new, additional or renewed limit of liability. BETARMA's total liability for all **Claims** made during the extended reporting period shall be limited to the remaining portion of the aggregate limit of liability set forth in the Certificate as of the effective date of the termination.

6. **DATE CLAIMS ARE DEEMED TO BE FIRST MADE**

   No **Claim** (including a **Multiple Claim**) shall be considered first made against the **Member** during the **Contract Period** if the **Claim**, or any act, error, omission or **Wrongful Act** giving rise to the **Claim**, was reported to BETARMA or to any liability insurer before the Effective Date of this Contract.

EXHIBIT ____ C
Page _2.3_ Of _3/_

A **Claim** shall be considered to have been first made when the **Claim** is first received by a **Member** against whom it is asserted, or by some person acting on behalf of that **Member**. A **Multiple Claim** shall be considered first made when the earliest of the **Claims** was first made.

7. **REPAYMENT TO BETARMA OF CERTAIN LOSS PAYMENTS THAT THE NAMED MEMBER IS REQUIRED BY LAW TO SEEK TO RECOVER FROM INDIVIDUAL MEMBERS WHO ARE ELECTED OFFICIALS**

Notwithstanding any other provision of this Contract, if a **Member** is required by law to seek recovery from an elected official of **Loss**, including **Defense Expenses,** which BETARMA has paid, advanced or reimbursed, the **Member** shall repay all such sums to BETARMA within thirty (30) calendar days of BETARMA's request.

8. **OFFSETTING SUMS**

BETARMA may reduce any amount owed to any **Member** by BETARMA, or any credits against the **Named Member's** Contribution, by the amount of any sum owed to BETARMA which has remained unpaid more than thirty (30) calendar days.

9. **MEMBER REPRESENTATIONS TO BETARMA**

Each **Member** represents that the statements contained in the **Application** are true, accurate and complete and agrees that:

A.  those statements are the basis of this Contract and are to be considered incorporated into and a part of this Contract;

B.  those statements are material to BETARMA's acceptance of its obligations under this Contract; and

C.  this Contract is issued in reliance upon the truth, accuracy and completeness of those statements.

The **Application** shall be considered a separate application for coverage by each **Named Member**. No statement in the **Application,** or knowledge or information possessed by a **Named Member**, shall be imputed to any other individual **Named Member** for the purpose of determining the validity of this Contract.

10. **ACTIONS AGAINST BETARMA**

A.  No arbitration or other action may be taken against BETARMA unless:

(1)  all **Members** have fully complied with all terms of this Contract; and

(2)  the amount of the **Members'** obligation to pay a **Claim** has been finally determined either by judgment against them after an actual trial or by written agreement signed by the **Claimant**, BETARMA and the **Members**.

B.  This Contract does not extend any rights to any **Claimant**.

C.  No person or entity may join BETARMA as a party to any **Claim** to determine the liability of the **Members**; nor shall BETARMA be impleaded by a **Member,** or his, her or its legal representative, in any **Claim**.

D.  Bankruptcy or insolvency of any of the **Members** or of any of their estates will not relieve BETARMA of any of its obligations under the Contract.

EXHIBIT ____ C
Page 24 Of 31

**11. MEMBERS' AUTHORIZATION AND NOTICES**

All **Members** agree that the **Named Member** will act on their behalf for receiving all notices from BETA<small>RMA</small> and for the negotiation and acceptance of any modification to any provision of this Contract.

**12. LIMITS OF HOW THIS CONTRACT CAN BE CHANGED**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of BETA<small>RMA</small> will not effect a waiver or change in any part of this Contract, nor estop BETA<small>RMA</small> from asserting any right under the terms, conditions and exclusions of this Contract. The terms, conditions and exclusions of this Contract can only be waived or changed by written amendment.

**13. ASSIGNMENT OF MEMBERS' RIGHTS UNDER THIS CONTRACT**

Assignment of any interest under this Contract shall not bind BETA<small>RMA</small> without its written consent.

**14. TERMINATION OF THIS CONTRACT**

A. Termination by **Named Member**.

The **Named Member** may terminate this Contract by mailing to BETA<small>RMA</small> at the address specified on the Certificate written notice stating when, not less than thirty (30) calendar days thereafter, the termination will be effective.

B. Termination by BETA<small>RMA</small>.

(1) BETA<small>RMA</small> may terminate this Contract (a) for failure to pay any Contribution when due; (b) for failure to reimburse BETA<small>RMA</small> for payments made within the Deductible, for which BETA<small>RMA</small> has no liability under this Contract, or which the **Member** is obligated to repay to BETA<small>RMA</small>; (c) for failure to abide by any provision of the Joint Powers Authority Agreement, as it may be amended, or this Contract; (d) for failure to give prompt notification to BETA<small>RMA</small> of any **Claim**; or (e) upon a majority vote of the BETA Council, for failure to implement loss control or risk management recommendations.

When termination is for any reason specified above, the **Named Member** shall be given ten (10) calendar days' written notice, return receipt requested, of termination. Proof of mailing shall be deemed proof of receipt.

(2) BETA<small>RMA</small> may terminate the **Named Member** for any reason other than those provided above by mailing written notice stating when, not less than ninety (90) calendar days thereafter, the termination shall be effective.

C. Automatic Termination.

This Contract shall be automatically terminated on the effective date of the **Named Member's** withdrawal or termination as a member of BETA<small>RMA</small> or on the cancellation date of the **Member's** Healthcare Entity Comprehensive Liability Coverage Contract.

D. Effect of Termination; Adjustment of Contribution.

(1) Termination by either party shall extinguish the coverage provided to all **Members** as of the effective date of the termination.

(2) The **Named Member** shall remain liable for any unpaid Contribution, penalties, Deductibles, interest and other sums that have accrued before and/or after the termination. Payment of all such sums due BETA<small>RMA</small> shall be made within thirty (30) calendar days of the time at which

EXHIBIT ___C___
Page _25_ Of- _31_

termination is effective or within thirty (30) calendar days of BETArma's request, if the amount becomes due after the termination of the Contract. Notwithstanding any other provision of this Contract, if the **Named Member** fails to pay all sums due BETArma upon written notice, BETArma shall have no further obligation to defend or indemnify the **Named Member** and **Subsidiary** with regard to open **Claims**.

### 15. CONTRIBUTION

The Contribution payable by the **Named Member** for the coverage provided by this Contract is the amount specified in the Certificate. The Contribution amount is based on BETArma's rating plan and may be adjusted by BETArma following issuance of the Contract based on the results of the audit referred to in Section 5.16.

### 16. INSPECTION AND AUDIT

BETArma may examine and audit the books and records of the **Named Member** and any **Subsidiary** at any time during the **Contract Period**, and BETArma's right to do so shall continue for one year after the termination of this Contract.

### 17. COVERAGE IN THE EVENT OF ACQUISITIONS, MERGERS AND DISSOLUTIONS

A. If the **Named Member** or **Subsidiary** acquires or forms any organization, other than a partnership or joint venture, over which the **Named Member** or **Subsidiary** maintains at least fifty (50%) percent ownership or control, the organization will qualify as a **Subsidiary** under this Contract for acts or omissions committed or begun on or after the date that the **Named Member** or **Subsidiary** acquired or formed the organization. However, coverage under this provision shall be in excess of any other valid and collectible insurance or other coverage available to the organization. Coverage under this provision is afforded only until the thirtieth (30th) calendar day after the **Named Member** or **Subsidiary** acquires or forms the organization or the end of the **Contract Period**, whichever is earlier.

B. If, before or during the **Contract Period**, the **Named Member** or any **Subsidiary** is acquired by or merged with any other entity, or dissolved, coverage for the acquired, merged or dissolved entity will terminate and will continue only for **Claims** against the directors, officers, trustees and other individual **Members** of such **Named Member** or **Subsidiary,** and only for **Loss** in connection with **Wrongful Acts** alleged to have been committed prior to the acquisition, merger or dissolution.

### 18. ARBITRATION OF DISPUTES

*All disputes in any way concerning, arising out of or relating to this Contract shall be submitted to binding arbitration, unless resolved through BETArma's internal dispute resolution procedure established by the BETA Council.*

*Before requesting arbitration a Member must complete BETArma's internal dispute resolution procedure established by the BETA Council. Requests for binding arbitration must be made within thirty (30) calendar days after the internal dispute resolution hearing decision is provided in writing to the Named Member by BETArma. If a request is not made within thirty (30) calendar days, the decision shall be final and binding.*

*The arbitration and discovery will be governed by the California Arbitration Act, Section 1280, et seq. of the Code of Civil Procedure, except to the extent that it is inconsistent with this Section. BETArma and each Member waive the right to court remedies, including a jury trial.*

*In all such arbitrations the terms, conditions and exclusions of this Contract shall be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of the Contract.*

EXHIBIT ___C___
Page _2 6_ Of- _3 1_

*In any arbitration, one Arbitrator will be chosen by all Members collectively, the other by BETARMA, and a Neutral Arbitrator will be chosen by the mutual agreement of the two Arbitrators before they enter into arbitration. If any party should fail to choose an Arbitrator within thirty (30) calendar days following a written request by the other party to do so, the requesting party may choose two Arbitrators.*

*Each party will present its case to the Arbitrators within thirty (30) calendar days following the date of appointment of the Neutral Arbitrator. The Neutral Arbitrator shall be the judge of the relevance of the evidence offered and is not required to follow the strict rules of evidence. The decision of the Arbitrators chosen by the parties shall be final and binding on the parties; but, if these Arbitrators fail to agree, the decision of the majority of the Arbitrators shall be final and binding upon the parties. The Arbitrators shall be limited to the remedies that could be awarded by the Superior Court of the State of California. Judgment upon the final decision of the Arbitrators may be entered in any court of competent jurisdiction.*

*Each party shall bear the expense of its own Arbitrator, and shall jointly and equally bear with the other the expense of the Neutral Arbitrator and of the arbitration. In the event that the two Arbitrators are chosen by one party, as provided above, the expense of the Arbitrators, the Neutral Arbitrator and the arbitration shall be equally divided between the parties.*

*Any arbitration proceedings shall take place in San Francisco, California.*

*The Arbitrators shall have no authority to review any matter as to which this Contract grants BETARMA sole discretion, including, but not limited to, the cost and terms of any extended reporting period. No Member may arbitrate, or contest in any court, any such exercise of discretion.*

### 19. DELEGATION AND ASSIGNMENT OF BETARMA's DUTIES

Any or all of BETARMA's duties under this Contract may be delegated or assigned to employees, independent contractors and/or consultants employed or retained by BETARMA.

### 20. EFFECTIVE DATE OF THIS CONTRACT

This Contract shall be effective as of the Effective Date specified in the Certificate of Participation, but only if the Certificate has been signed by a duly authorized representative of BETARMA.

### 21. ENTIRE AGREEMENT CONTAINED IN THIS DOCUMENT

This Contract, including the **Application**, the Certificate and any amendments, constitutes the entire agreement between the **Members** and BETARMA.

### 22. HEADINGS

The descriptions in the headings and sub-headings of this Contract are solely for convenience, and form no part of the terms and conditions of coverage.

### 23. GOVERNING LAW

This Contract in all respects shall be governed by and construed in accordance with the laws of the State of California, without regard to its choice of law rules.

### 24. CONFORMITY TO STATUTE

Any terms of this Contract that conflict with any applicable statute of the State of California are hereby amended to conform to such statute.

EXHIBIT _C_
Page 2 7 Of 3 1

**25. NON-RENEWAL OF THIS CONTRACT**

A. The **Named Member** may elect not to renew this Contract for any reason.

B. BETARMA may elect not to renew this Contract for any reason.

   If BETARMA decides to not renew this Contract, BETARMA will mail or deliver written notice of the non-renewal to the **Named Member** not less than sixty (60) calendar days before the Expiration Date specified in the Certificate. If the notice is mailed, proof of mailing will be sufficient proof of notice. BETARMA need not mail or deliver such notice if the **Named Member** has informed BETARMA that the **Named Member** is obtaining replacement coverage.

   If BETARMA elects to renew this Contract without offering coverage to an Individual **Member**, BETARMA will mail or deliver written notice to the **Named Member** not less than sixty (60) calendar days before the Expiration Date specified on the Certificate. BETARMA need not give such notice of other intended changes to the renewal contract.

C. Effect of Non-Renewal; Adjustment of Contribution

Non-Renewal by either party shall extinguish the coverage provided to all **Members** as of the Expiration Date of this Contract. The **Named Member** shall remain liable for any unpaid Contribution, penalties, Deductibles, interest and other sums that have accrued before and after the Expiration Date. Payment of all such sums due BETARMA shall be made within thirty (30) calendar days of the time at which expiration is effective or within thirty (30) calendar days of BETARMA's request, if the amount becomes due after the expiration of the Contract. Notwithstanding any other provision of this Contract, if the **Named Member** fails to pay all sums due BETARMA upon written notice, BETARMA shall have no further obligation to defend or indemnify the **Named Member** and **Subsidiaries** with regard to open **Claims**.

EXHIBIT _C_
Page _28_ Of _31_

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**ADDITIONAL MEMBER – MANAGEMENT COMPANY**

| Certificate Number: D&O-17-361 | Amendment No: D340-01 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that:

1. DEFINITIONS:

As used in this amendment:

"**Contract**" shall mean the Management Agreement between the **Named Member** and *Perfect Healthcare, Inc. and John Doe*, effective *July 1, 2001* regarding the operation of the **Named Member**.

"**Contract Activities**" shall mean and refer only to acts of *Perfect Healthcare, Inc. and John Doe* and its employees performed solely to carry out the obligations of *Perfect Healthcare, Inc. and John Doe* under the Contract and to no other activities.

2. COVERAGE EXTENSION:

It is understood and agreed that Section 1.13 (Definitions) is amended to include:

*Perfect Healthcare, Inc. and John Doe's* as a **Member**, but only for **Wrongful Act(s)** committed on or after

*July 1, 2001*, and solely in *Perfect Healthcare, Inc. and John Doe's* performance of the **Contract Activities**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_R Corey Grove_
_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**ANTITRUST VIOLATION SUB-LIMIT**

| Certificate Number:<br>D&O-17-361 | Amendment No:<br>D500-01 |
|---|---|

| Issued to: Tulare Local Healthcare District | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that **Claims** arising out of any **Wrongful Act** involving antitrust violations shall be subject to a *$1,000,000* sub-limit, which will be part of and not in addition to the aggregate Limit of Liability specified on Item 5 of the Certificate of Participation.

If a **Claim** includes both antitrust allegations and non-antitrust allegations, the sub-limit will not apply to **Loss**, including **Defense Expenses**, attributable only to the non-antitrust allegations. BETARMA and the **Member** will use the allocation procedures that Section 5 of this Contract provides for covered and non-covered allegations to determine the **Loss** that is subject to the sub-limit and **Loss** that is not subject to the sub-limit.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_R Corey Grove_
_____
Authorized Representative of BETARMA



**BETA Risk Management Authority ("BETARMA")**
**A Public Entity**

**CERTIFICATE OF PARTICIPATION**

DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE CONTRACT

INCLUDING HEALTHCARE ENTITY COVERAGE

**CERTIFICATE NUMBER:**
**D&O-17-361**

**PRODUCER:** Marsh & McLennan Agency LLC Attn: William Buchanan

| | |
|---|---|
| **ITEM 1:** | **NAMED MEMBER:**<br>Tulare Local Healthcare District<br>869 Cherry Street<br>Tulare, CA 93274 |
| **ITEM 2:** | **SUBSIDIARIES:**<br>Tulare Family X-Ray , Tulare Physical Therapy, Tulare District Health Care System Foundation, Tulare District Health Care System Lab Drawing Station, Tulare Surgical Services |
| **ITEM 3:** | **CONTRACT PERIOD:**<br>(a) Effective Date: 07/01/17 (b) Expiration Date: 07/01/18 at 12:01 a.m. local time for all dates at the address in Item 1 |
| **ITEM 4:** | **RETROACTIVE DATE:**<br>07/01/85 at 12:01 a.m. local time for all dates at the address in Item 1 |
| **ITEM 5:** | **LIMIT OF LIABILITY (Inclusive of Defense Expenses):**<br>$5,000,000 per **Claim** (except as provided by Amendment)<br>$5,000,000 in the Aggregate |
| **ITEM 6:** | **DEDUCTIBLES** (Subject to Section 5.1.C)<br>Coverage (A):  $0 each **Claim**<br>Coverage (B): $10,000 each **Claim** including **Defense Expenses**<br>Coverage (C): $10,000 each **Claim** including **Defense Expenses**<br>Coverage (D): $75,000 each **Claim** including **Defense Expenses**<br>Coverage (E):  $0 each **Claim** |
| **ITEM 7:** | **CONTRIBUTION:**  $106,367 |
| **ITEM 8:** | **CONTRACT AND AMENDMENT FORMS ATTACHED AT ISSUANCE:**  D&O (07/16)<br>D340  D500 |
| **ITEM 9:** | **NOTICE REQUIRED TO BE GIVEN TO BETARMA MUST BE ADDRESSED TO:**<br>BETA Risk Management Authority<br>1443 Danville Boulevard<br>Alamo, CA 94507 |

This Certificate of Participation, the **Application(s)** and accompanying documents, and the Coverage Contract with Amendments shall constitute the Contract between BETARMA and the **Members**.

Authorized Representative of BETARMA

EXHIBIT C
Date Issued  July 01, 2017 (Initial)
Page 31 Of 31

EXHIBIT D

EXHIBIT D
Page 1 Of- 2

TULARE LOCAL HEALTHCARE DISTRICT DBA TULARE REGIONAL MEDICAL CENTER

BETA RISK MANAGEMT ASSOCIATION - PROPOSED PAYMENT PLAN

| MONTH OF PAYMENT | Dec-17 | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| ORDINARY MOTHLY INVOICE | 63,217.50 | 63,217.50 | 63,217.50 | 63,217.50 | 63,217.50 | 63,217.50 | 63,217.50 | $ 442,522.50 |
| CATCH UP FOR SEPTEMBER AND OCTOBER 2017 | 0.00 | 0.00 | 42,145.00 | 42,145.00 | 42,145.00 | 0.00 | 0.00 | $ 126,435.00 |
| DEDUCTIBLE | 0.00 | 0.00 | 33,333.33 | 33,333.33 | 33,333.33 | 0.00 | 0.00 | $ 100,000.00 |
| TOTAL MONTHLY PAYMENT | 63,217.50 | 63,217.50 | 138,695.83 | 138,695.83 | 138,695.83 | 63,217.50 | 63,217.50 | $ 668,957.50 |

EXHIBIT   _D_
Page _2_ Of _2_