**19**
Michael L. Farley, SBN 76368
Donald L. Mabry, SBN 187750
dmabry@farleylawfirm.com
FARLEY LAW FIRM
108 West Center Avenue
Visalia, California 93291

Telephone: (559) 738-5975
Facsimile: (559) 732-2305

Attorneys for Plaintiff (Movant),
REBECCA ZULIM, M.D.

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry Street<br>Tulare, CA 93274 | Case No. 17-13797<br><br>DCN: DLM-2<br><br>Chapter 9<br><br>**EXHIBITS TO DECLARATION OF DONALD L. MABRY IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br><br>Date: April 12, 2018<br>Time: 9:30 a.m.<br>Place: 2500 Tulare Street, 5th Floor<br>      Fresno, CA 93721<br>Courtroom: 13<br>Department: B<br>Judge: Hon. René Lastreto II |

EXHIBITS TO DECLARATION OF DONALD L. MABRY IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362

# EXHIBIT INDEX

| Exhibit | Page | Description |
|---|---|---|
| Exhibit A | 000003 | California Department of Fair Employment and Housing Correspondence Re Rebecca Zulim, M.D. (including Notice of Case Closure and Right to Sue letter, at 000006), dated October 31, 2017 |

# Exhibit A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency     GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**     DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

October 31, 2017

Michael L. Farley
108 West Center Ave.
Visalia CA 93291

RE: **Notice to Complainant's Attorney**
DFEH Matter Number: 970716-321482
Right to Sue: Zulim, M.D. / Tulare Local Healthcare District dba Tulare Regional Medical Center

Dear Attorney:

Attached is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your client's Notice of Case Closure and Right to Sue. **Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the Department of Fair Employment and Housing does not review or edit this complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency　　　GOVERNOR EDMUND G. BROWN JR.

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

DIRECTOR KEVIN KISH

October 31, 2017

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 970716-321482
Right to Sue: Zulim, M.D. / Tulare Local Healthcare District dba Tulare Regional Medical Center

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by the DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency　　　GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

DIRECTOR KEVIN KISH

October 31, 2017

Rebecca Zulim, M.D.
306 North Conyer Street
Visalia, CA 93291

RE: **Notice of Case Closure and Right to Sue**
　　DFEH Matter Number: 970716-321482
　　Right to Sue: Zulim, M.D. / Tulare Local Healthcare District dba Tulare Regional Medical Center

Dear Rebecca Zulim, M.D.:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective October 31, 2017 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

**This letter is also your Right to Sue notice.** According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc: Tulare Local Healthcare District dba Tulare Regional Medical Center
　　Parmod Kumar, M.D.

　　Yorai Benzeevi, M.D.

　　Ronald Ostrom, M.D.



# CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

COMPLAINT OF DISCRIMINATION UNDER THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

## RIGHT-TO-SUE

Your submission of this document acknowledges that you have read and agree to the DFEH's Privacy Policy

**DFEH CASE NUMBER:** 970716-321482

**COMPLAINANT:**
NAME: Rebecca Zulim, M.D.
TELEPHONE NUMBER:
ADDRESS: 306 North Conyer Street
CITY/STATE/ZIP: Visalia, CA 93291

**NAMED OF THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICES COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME: Tulare Local Healthcare District dba Tulare Regional Medical Center
TELEPHONE NUMBER:
ADDRESS: 869 N. Cherry Street
CITY/STATE/ZIP: Tulare, CA 93274

NUMBER OF EMPLOYEES: Unknown
TYPE OF EMPLOYER: Hospital District

**ADD CO-RESPONDENT:**
(Individuals who were involved in this particular complaint):

| NAME/TITLE: | ADDRESS: | TELEPHONE NUMBER: |
|---|---|---|
| Parmod Kumar, M.D. | 869 N. Cherry St., Tulare, CA 93274 | 559 688 0821 |
| Yorai Benzeevi, M.D. | 858 N. Cherry St. Ste. B, Tulare, CA 93274 | 559 686 6990 |
| Ronald Ostrom, M.D. | 869 N. Cherry St., Tulare, CA 93274 | 559 688 0821 |

Do you have an attorney who agreed to represent you in this matter? ☑ Yes ☐ No

If yes, please provide the attorney's contact information.

Attorney Name: Michael L. Farley
Attorney Firm Name: Farley Law Firm
Attorney Address: 108 West Center Ave.
Attorney City, State, and Zip: Visalia, CA 93291

Right-to-Sue Form
Revised 05/16

000007

DATE MOST RECENT DISCRIMINATION TOOK PLACE (Month/Day/Year): August 14, 2017

1. I ALLEGE THAT I EXPERIENCED:  ☐ Discrimination  ☐ Harassment  ☒ Retaliation

BECAUSE OF MY ACTUAL OR PERCIEVED:

- ☐ Age - 40 and over
- ☐ Ancestry
- ☐ Association with a member of a protected class
- ☐ Color
- ☒ Disability (physical or mental)
- ☐ Engagement in Protected Activity
- ☐ Family Care or Medical Leave
- ☐ Genetic Information (Information about genetic tests or participation in clinical research or manifestation of disease)
- ☐ Marital Status
- ☐ Medical Condition - Including cancer or cancer related medical condition or genetic characteristics (a gene, chromosome or characteristic not presently associated with symptoms of disease)
- ☐ National Origin - Includes language use restriction and use and possession of a driver's license issued to persons unable to prove their presence in the U.S. is authorized under federal law
- ☐ Race
- ☐ Religion - Includes religious dress and grooming practices
- ☐ Sex - Gender
- ☐ Sex - Gender Identity or Gender expression
- ☐ Sex - Includes pregnancy, childbirth, breastfeeding and/or related medical conditions
- ☐ Sexual Orientation
- ☒ Other (specify) __Protected activity in speaking with State investigators. Please see attached.__
- ☐ Military or Veteran status

AS A RESULT, I WAS:

- ☐ Asked impermissible non-job-related questions
- ☐ Demoted
- ☐ Denied a good faith interactive process
- ☐ Denied a work environment free of discrimination and/or retaliation
- ☐ Denied continuation of employer-paid health care coverage while on pregnancy disability leave
- ☒ Denied employment
- ☐ Denied equal pay
- ☐ Denied family care or medical leave
- ☐ Denied or force to transfer
- ☐ Denied pregnancy leave
- ☐ Denied promotion
- ☐ Denied reasonable accommodation
- ☐ Denied reinstatement
- ☐ Denied the right to wear pants
- ☐ Forced to quit
- ☐ Laid-off
- ☐ Terminated
- ☐ Tested for genetic characteristics
- ☒ Other (specify) __Hospital privileges were summarily and effectively suspended without due process__

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it them to be true.

Signature of Complainant or Complainant's Legal Representative:    Date: October 31, 2017.

*[Signature: Joseph Berry for]*

Printed Name: Michael L. Farley

Right-to-Sue Form
Revised 05/16

000008

October 10, 2017

<u>Sent via E-mail</u>
California Department of Fair Employment and Housing
2218 Kausen Drive, Suite 100
Elk Grove, CA 95758
contact.center@dfeh.ca.gov

Re: Right-to-Sue Notice – Employment

To whomever it may concern,

    Up until November 2016, I was performing regular surgeries as a general surgeon at Tulare Local Healthcare District dba Tulare Regional Medical Center ("TRMC") with full privileges. I am board certified by the American Board of Surgery in general surgery. I began working at TRMC in November 2013 and enjoyed a good working relationship with both the medical and hospital staffs. In November 2016, I was effectively suspended by TRMC's Medical Executive Committee ("MEC") without the requisite physician peer review process mandated by the by-laws of TRMC and Business and Professions Code § 809, *et seq*. As explained below, I believe that TRMC's failure to follow the required procedure is the result of retaliation against me for engaging in a protected activity - my cooperation with State Investigators.

    On November 9, 2016, I noticed a memo from Dr. Benzeevi, the C.E.O. of TRMC, posted on the walls outside of an operating room. The memo stated that effective immediately, there would be no elective surgeries scheduled unless they could reasonably be completed by 5:00 p.m. and further, that no surgeries would be scheduled after 5:00 p.m. or on the weekends unless they were deemed to be Level I or II cases. A Level I case is a patient who needs to be in surgery within one hour and a Level II case is a patient who needs to be in surgery within two hours.

    On that same night, I spoke with State investigators who were performing an investigation at TRMC on behalf of the Federal Government. The investigators questioned me regarding the memo and asked me as to my interpretation of the memo. I explained my understanding of the memo, as noted above. The investigators then asked me if I felt there were any issues with emergency surgeries being performed in the nighttime, and I explained that not having a backup operating room crew or a backup anesthesiologist was an issue because it delayed being able to get both patients taken care of in a timely manner. The investigators followed up and asked who made the decision as to which patient is operated on first in the case of there being more than one emergency operation patient. I explained that the two physicians working on the cases would decide which of the patients required surgery first and that is who would be operated on. After meeting with the State investigators, I spoke with TRMC's Risk Management Officer, Jennifer Oros, to convey the investigators' concerns regarding the hospital.

It is important to note that the above investigation did not occur in isolation. Sometime in or about January, 2016, the State investigated TRMC on behalf of the Center for Medicare and Medicaid Services ("CMS"). CMS issued a report in February, 2016 setting forth a number of issues it found with TRMC. The following is a non-exhaustive list of the issues pointed out by CMS: 1) failing to develop and implement an effective performance improvement program; 2) failing to ensure that medical staff members were professionally qualified for the positions to which they were appointed and for the performance of privileges granted; and 3) failing to have a system in place to ensure that the Bylaws were evaluated and followed. CMS gave TRMC a timeline within which to correct the issues and if not corrected within 30 days, CMS would terminate TRMC's status as a Medicare and Medi-Cal provider, which would effectively cause TRMC to shut down.

About two hours after I spoke with the State investigators on November 9, 2016, I received a call from Ron Ostrum, M.D., TRMC's Chief of Medical Staff. He told me that he had some bad news for me as he had just gotten off a conference call with TRMC's CEO, CFO, CNO, and Ms. Oros. Dr. Ostrum was instructed to tell me that I must go on a voluntary leave. Dr. Ostrum told me that there were State investigators at the hospital and that I would need to take a voluntary leave in order to "appease" the investigators and to show them that Dr. Benzeevi (TRMC's CEO) was "doing something" even though Dr. Ostrum felt it was "not fair or right." I asked Dr. Ostrum how long I would need to be gone and he said he did not know. Dr. Ostrum also stated that TRMC had no intentions of generating an "805 report." An 805 report is the mechanism in which peer review bodies in hospitals are required to report specific information regarding licensees to the Medical Board. Among other reasons, an 805 report must be submitted if 1) a licensee's staff privileges are revoked for a medical disciplinary cause or reason; 2) Restrictions are imposed, or voluntarily accepted, on staff privileges, membership, or employment for a total of 30 days or more within any 12 month period for medical disciplinary reasons; or 3) A summary suspension of staff privileges, membership, or employment is imposed for a period in excess of 14 days.

On November 10, 2016, Gloria, the surgery scheduler in my office, told me that Kathy from the operating room at TRMC had called my office and told her (Gloria) that all of my surgeries were being cancelled "for the foreseeable future." Later that day, I spoke with a colleague who suggested that I reject TRMC's request that I go on voluntary leave. I decided that this was what I wanted to do and I drafted a letter to Dr. Ostrum so stating and put it through the mail slot at the Medical Staff Office.

Later that day, I was concerned about a patient of mine who was seriously ill and wanted to attend to him and figured that if I was not on leave, that if I did not take care of him, it would be considered that I was abandoning my patient. I went to the ICU to see him and the nurses there stated they were surprised to see me because they had been told

Department of Fair Employment & Housing
Request for Right-to-Sue Notice
Page 3 of 11

that I was suspended. I explained to them that I was not suspended and that I had rejected a request to go on voluntary leave. I saw my patient and decided that he needed a further surgical procedure. As I was leaving the room to schedule the procedure, I was told by Meredith, one of TRMC's Nursing Supervisors, that she had been told by Angie Graziano, TRMC's Chief Nursing Officer, that I had been suspended and would not be allowed to operate.

At 11:00 PM on November 10, I attended a meeting at TRMC with Dr. Kumar and Dr. Benzeevi. At this meeting Dr. Benzeevi told me that I was "stirring up the State" and the hospital might be closed. I responded by explaining that the State investigators only asked me about Dr. Benzeevi's memo, which caused Dr. Benzeevi to "visibly jump." Dr. Benzeevi then asked me to stay away from TRMC so that they could "hide" me from the State investigators. Dr. Benzeevi then told me that "he and his family have a lot of money, power and influence and a lot of top notch Attorneys." While he said that I "was not being accused of anything 'YET' (and he emphasized the word yet)," if I refused to cooperate, he would "crush" me. I told Dr. Benzeevi that I was confused about my status because I was never advised that I had been suspended but that I was hearing from others at the hospital that I had been suspended. Dr. Benzeevi told me that I was not suspended and intimated that I was stupid to think that. Dr. Benzeevi became agitated and said something along the lines of, "can you just go on vacation?" I then agreed to go on vacation, rather than leave. Dr. Benzeevi also told me that I would still able to attend the upcoming MEC and peer review meetings as Chair of the Peer Review Committee.

On November 16, 2016, I went to TRMC to attend the regularly scheduled MEC and Peer Review meeting. Before the meeting began, I tried to get some work done on a computer at the hospital. While standing by the entrance to the charting room and the OR lounge speaking with Mack, the OR Manager, a hospital guard approached me and said that he had been instructed by Lionel, TRMC's Chief of Security, to escort me off of the premises because I was suspended. I was obviously humiliated by this because this all happened in front of the OR staff. The guard then called on his radio to confirm his instructions and was told that I could be there. I then went to the Peer Review meeting without incident. Dr. Paul Gupta, Dr. Parmoud Kumar, Dr. Benzeevi, Dr. Chiu, Jennifer Oros, Evelyn and Charlene were all present. While we were waiting for the meeting to start, Evelyn told me that four of my cases had been sent out for review and that the responses were "bad." I told her I did not even know which cases they were as I had not been advised of any of this. The meeting began and I was told that they were going to discuss a case of mine. I then gave them my summary and stepped out. I never went back into the meeting and eventually, Dr. Ostrum called me and informed me that I would receive something in writing from the MEC regarding my status. He also stated that he was "uncomfortable" with what was going on.

On November 21, 2016, I received a letter dated November 17, 2016 from TRMC, the day after the Peer Review Committee meeting, informing me that the MEC had met

Department of Fair Employment & Housing
Request for Right-to-Sue Notice
Page 4 of 11

to review a request for a "Focused Professional Practice Evaluation regarding complications arising from [my] surgical cases and issues with [my] judgment." The letter went on to request that I take a voluntary leave of absence "until successful completion of a program agreeable to the MEC. The program needs to include Specialty Medical Evaluation, Psychiatric Evaluation, Neuropsychological Testing and Simulated Procedural/Skills Evaluation." Following my review of the letter I did the following:

    a) Scheduled a Physical Examination at UCLA for December 1, 2016.
    b) Looked online for Simulated Procedure and Skills Evaluation courses but I could not find any, so I contacted the University of Southern California Keck School of Medicine, but they did not have any courses to evaluate my skills.
    c) Contacted the American College of Surgeons and was told that they offered an Advanced Trauma and Operative Skills course "which is supposed to teach you skills and judgment in the management of difficult penetrating trauma situations." The next course was offered on February 23, 2017 in Hartford, CT.
    d) Contacted a neuropsychologist in Fresno to try to schedule an appointment but the receptionist said they needed to know what specific defect I would like to be tested for. I was not advised by anyone at TRMC what specific defect to be tested for.

On that same day, Dr. Kumar called me and invited me to come speak with the MEC the next day and said that that they may have "just kind of panicked because they thought that the State was going to close the hospital and they felt like they needed to do something." When I met with the MEC on November 22, 2016, I told them that I was confused about my status because I had been told that I was on vacation, their letter stated I was on voluntary leave, and I had been told by Meredith, the Nursing Supervisor, that I was suspended. I also told them that the scheduler in my office, Gloria, has not been able to get any labs or radiology studies done at TRMC because she had been told that I was suspended and as such, cannot accept my orders. Dr. Benzeevi agreed that I was only on vacation and that my orders should be accepted and he stated he would fix it so that my orders would be accepted as they were not supposed to be getting denied. Dr. Benzeevi then stated, "maybe we didn't think this through too well. It was not our intent to be so onerous and it is evident that we have caused a lot of emotional distress that we didn't mean to."

On November 23, 2016, I asked the surgery scheduler at my office to call TRMC to arrange for an antibiotic treatment for a patient. The surgery scheduler was told that I had been suspended and the hospital could not accept my orders. This caused me additional humiliation because now my office was made aware of my supposed suspension from TRMC, that I could not give orders, and that all of my surgical cases had been cancelled. Later that day, I attended an MEC meeting. At the MEC meeting I was

told that four of my cases had been submitted for outside review and that the conclusions were "bad." I told the committee that I was attempting to comply with the November 17 letter and recounted the steps that I had taken, including the evaluation with UCLA and the ATOM course. I also asked the committee as to what defect they thought might exist requiring a neuropsychological examination and the committee responded that they did not know what defects they wanted evaluated, but that they thought I was "an exceptional surgeon." The committee felt that I should take some time off and that I was working too hard. The committee could not say for how long they wanted me to stay away from the hospital and that they still needed to "think through what exactly" they wanted me to do.

On December 1, 2016, I met with Dr. Eyal Maidan of UCLA Health Center for a general evaluation. Following the evaluation, Dr. Maidan wrote a letter stating that I was "in good health and [my] chronic medical problems are well controlled." Dr. Maidan concluded that I had no "contraindication from continuing her work as a surgeon at this time."

On December 7, 2016, I received a letter from TRMC informing me that the MEC had concluded that her leave of absence would be terminated as of December 8. I then scheduled an operation for December 21. When my patient arrived at TRMC on December 20 to pre-register for the operation, the patient was told that the surgery had been cancelled. I called Dr. Ostrum, TRMC's Chief of Staff, and was told that Dr. Benzeevi had told him that I was not allowed to operate.

On January 18, 2017, I received a letter from TRMC stating that the MEC had met and determined that because of their "ongoing concerns and [my] failure to accept responsibility for clinical deficiencies," I was to be proctored for my next 25 surgical cases. This proctoring requirement had to be met within 120 days. On January 27, my attorney wrote to the attorney for TRMC responding to TRMC's January 18 letter stating the position that TRMC was taking was to essentially scapegoat me for the hospital's staffing deficiencies by imposing requirements that were almost impossible to meet. My attorney's letter also pointed out that it was impossible for me to meet the 25 case requirement since I did not have that number of cases to schedule at TRMC.

On May 8, 2017, I received a telephone call from Dr. Kumar asking why I had not completed the cases necessary to fulfil the proctoring requirement. I (once again) explained that the requirements were impossible to meet. Dr. Kumar told me that Dr. Ostrom suggested that I request a continuance from the MEC to complete the proctoring requirement. Dr. Kumar also told me that Dr. Benzeevi had agreed to "lift the ban" on my ability to schedule surgeries and also said that if I completed 10 surgeries without complications, Drs. Kumar and Ostrom would request that the MEC conclude that I had complied with the proctoring requirement and ask that the investigation be closed and that I would then receive written confirmation that my privileges were no longer being restricted.

As of July 3, 2017, I had completed 9 cases, at which time I received a call from TRMC about a patient who appeared to be bleeding to death following a surgical procedure performed by a locum tenens physician. I was practically begged to come to the hospital to perform surgery on the patient in order to save the patient's life. I attempted to find a physician to proctor the surgery but was unable to do so since it was after hours. It is important to note that after calling Dr. Ostrom and receiving no answer, I later received a voice mail from him giving his blessing to perform the surgery and was told to "save the patient's bacon." The locum tenens physician showed up at the hospital as the patient was being wheeled into surgery and agreed to assist with the surgery. During surgery, I was able to stop the patient's bleeding and their care was reverted back to the locum tenens physician. Unfortunately, the patient later passed away. Thereafter, I completed 4 more cases.

On August 14, 2017, the MEC met to discuss the situation regarding the patient who passed away after my surgery. Thereafter, I received a phone call from Dr. Kumar, who told me that the "deal was off" and that I would need to complete 25 proctored surgeries because the State was now investigating the locum tenens physician's patient on whom I performed surgery. However, was impossible for me to fulfill this requirement as I was no longer receiving any referrals.

I am not currently operating at TRMC at all and have ended up having to take a position with a company that does wound care in nursing homes even though I am active staff with full privileges at TRMC. My practice has been destroyed and I have had to wipe out her savings in order to support myself and my family. Further, my reputation has been irreparably damaged in the community and among my colleagues as a result of the hospital's misinformation campaign against me. Ultimately, one can only conclude that I was being punished for sharing my concerns regarding patient safety arising from TRMC's policies, because I have clearly shown that I have the skills to perform my job as a surgeon.

Legal claims against TRMC

Violation of due process rights

On February 10, 2016, Tulare Regional Medical Center Medical Staff ("Old Staff") (Old Staff was led by a Medical Executive Committee ("Old MEC")) filed a lawsuit against a) Tulare Local Healthcare District dba Tulare Regional Medical Center; b) Healthcare Conglomerate Associates, LLC (owned and controlled by Dr. Benzeevi); and c) the Professional Medical Staff of TRMC, a group of seven doctors who purportedly formed an unincorporated association that was then recognized by vote of the TRMC's Board of Directors on January 26, 2016, as the newly operative medical staff and medical staff leadership for TRMC ("New

000014

MEC"). The lawsuit, *Tulare Regional Medical Center Medical Staff v. Tulare Local Healthcare District dba Tulare Regional Medical Center, et al*, Tulare County Superior Court, Case No. VCU264227, alleges that the new MEC illegally and improperly appointed itself as the new governing body of TRMC in violation of statutory law, TRMC's Bylaws, public policy and the voting rights of medical staff members. The lawsuit seeks, among other things, reinstatement of the Old Staff and Old MEC as well as the original Bylaws. As such, any actions taken by the new MEC against me will be deemed void if the Court finds for Plaintiffs. The actions taken against me discussed above may be deemed invalid and of no consequence if the Court determines that the new MEC's appointment on January 26, 2016 was accomplished illegally. However, the damage has already been done to my practice and reputation. A court trial in the matter concluded on May 31, 2017 and the parties are awaiting a decision from the Court.

My privileges have never been revoked or suspended by TRMC. I have consistently been advised by the MEC that I am only on voluntary leave or vacation. Whenever I was told by staff that her privileges were suspended, I asked for clarification from the MEC, which consistently told me that my privileges were in fact, not suspended and that I was on voluntary leave or vacation. I was given no choice however - the leave was not voluntary and as such, what TRMC did was tantamount to a suspension. If TRMC's intent was to suspend me, the procedures enumerated in the (potentially invalid) Bylaws should have been followed. As a result, I was stripped of my due process rights.

The procedures in place for imposing a summary restriction or suspension are enumerated in Section 13.2 of TRMC's (new, and potentially invalid) Bylaws. Those procedures were not followed. I was never advised that she was suspended, which should have been done verbally initially. [Bylaws at Section 13.2.1(d).] Further, I was not provided with written notice of a suspension within three working days of the imposition. [Bylaws at Section 13.2.1(d).] The notices required by section 13 "shall not substitute for, but [are] in addition to, the notice required under Bylaws, Section 14.3.1." [Bylaws at Section 13.2.1(d).]

Further, the procedures for a formal investigation were also not followed. I do not even know if a formal investigation was completed, however, as noted above, I was informed informally that some of my cases had been sent out for outside review. I never knew which cases and I was never given an opportunity to "provide information…" to the outside reviewer [Section 13.1.7(c).] In addition, I was informed that the outside reviewer did not receive all of the files since that would have been "too expensive."

I spoke with State investigators on November 8, 2016. I met with Dr. Kumar and Dr. Benzeevi on the evening of November 10, 2016 at which time I was told that I

was not suspended and was asked by Dr. Benzeevi to "just go on vacation." I agreed to go to on vacation rather than take a voluntary leave of absence. Nothing about a summary suspension was mentioned to me.

Next, I met with the MEC on November 16 (over a week after the initial "suspension") at which time a case of mine was discussed. I provided a summary and left the room so the MEC could discuss.

On November 21, 2016, I received a letter from the MEC dated November 17, 2016. Again, the letter did not state that I was being summarily, or otherwise, suspended, but instead, requested that I take a voluntary leave of absence while the MEC reviewed a request for a Focused Professional Practice Evaluation. I met with the MEC that day and was again informed that I was not suspended.

I have never been advised of how long I was to remain on vacation and/or voluntary leave. However, the Bylaws, at section 13.1.8(a)(5) provide that if "suspension is recommended, the terms and duration of the suspension and the conditions that must be met before the suspension is ended shall be Stated in writing." I have never received anything regarding the duration of my leave/vacation in writing.

No hearing provided: Section 14.2 of the Bylaws sets forth actual or potential adverse actions which constitute grounds for a hearing. The applicable provisions are as follows:
- Section 14.2.3: revocation, termination, suspension, restriction, involuntary reduction of Medical Staff membership and/or privileges.
- Section 14.2.4: involuntary imposition of significant consultation or Level III proctoring requirements, as described at Bylaws, Section 7.4.4(a)(3) that cannot be completed prior to the time frame required for reporting the restriction to the Medical Board of California (i.e., Level I and II proctoring requirements, as well as transitory restrictions that do not require reporting to the Medical Board of the Data Bank do not entitle the practitioner to a hearing.)
- Section 14.2.5: summary suspension of Medical Staff membership and/or privileges during the pendency of corrective action and hearings and appeals procedures.
- Section 14.2.7: any other action, decision, or recommendation of the Medical Staff affecting the professional privileges of a practitioner for which the practitioner is afforded the right to appellate review pursuant to Health and Safety Code § 32150, *et. seq.*

Accordingly, I should have been provided with the opportunity to request a hearing pursuant to Bylaws Section 14.2.

Filed 03/13/18　　　　　　　　　Case 17-13797　　　　　　　　　Doc 454

Intentional interference with prospective economic relations:
TRMC has intentionally interfered with Dr. Zulim's prospective economic advantage by unlawfully and wrongfully denying her use of the medical and surgical facilities at TRMC. Dr. Zulim's medical practice has been damaged in an amount according to proof due to her inability to properly treat her patients at TRMC's medical and surgical facilities.

Negligent interference with prospective economic relations: TRMC has negligently interfered with Dr. Zulim's prospective economic advantage by unlawfully and wrongfully denying her use of the medical and surgical facilities at TRMC. Dr. Zulim's medical practice has been damaged in an amount according to proof due to her inability to properly treat her patients at TRMC's medical and surgical facilities.

California Health and Safety Code § 1278.5: California Health and Safety Code § 1278.5 provides whistleblower protections to "any . . . member of the medical staff, or any other health care worker of the health facility" if they "presented a grievance, complaint, or report . . . to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity." The medical facility cannot commit a "discriminatory action" within 120 days of the health care worker's protected action. A discriminatory action includes "discharge, demotion, suspension, or any unfavorable changes in, or breach of, the terms or conditions of a contract, employment, or privileges of the employee, member of the medical staff, or any other health care worker of the health care facility, or the threat of any of these actions." Here, Dr. Zulim's privileges have been effectively suspended even though she has been consistently told that she is on volunteer leave and/or vacation following her conversation with State investigators wherein she expressed her concerns with the operating room at TRMC.

Violation of Title III of the Americans with Disabilities Act: TRMC has violated Title III of the Americans with Disabilities Act by denying me use of the goods, services, facilities, privileges, advantages, and accommodations of TRMC on the basis of the perceived disability that for some unknown defect, I am unfit to perform surgeries. TRMC's November 17, 2016 letter to me sets forth a number of evaluations they required due to questions about my "judgment" even though I had not been disciplined for any complications with my cases. If there were investigations, I had not been afforded the opportunity to respond as is required by the Bylaws. I told the MEC that I was attempting to comply with the requirements set forth in the November 17 letter and recounted the steps that I had taken in order to comply. I also asked the committee for what defect they thought might exist necessitating a neuropsychological examination and the committee

responded that they did not know what defects they wanted evaluated. During a conversation with Dr. Benzeevi, he told me that they thought there was something wrong with me and they were just trying to help a colleague and that I was one of the best surgeons they had and that I may be working too hard. Nothing more concrete or specific has been provided, however, my privileges have been effectively taken from me due to some perceived disability.

California Health and Safety Code § 1278.5 – Retaliation: California Health and Safety Code § 1278.5 provides whistleblower protections to "any . . . member of the medical staff, or any other health care worker of the health facility" if they "presented a grievance, complaint, or report . . . to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity." The medical facility cannot commit a "discriminatory action" within 120 days of the health care worker's protected action. A discriminatory action includes "discharge, demotion, suspension, or any unfavorable changes in, or breach of, the terms or conditions of a contract, employment, or privileges of the employee, member of the medical staff, or any other health care worker of the health care facility, or the threat of any of these actions." Here, my privileges have been effectively suspended even though I have been consistently told that she is on volunteer leave and/or vacation following my conversation with State investigators wherein I expressed my concerns regarding the operating room at TRMC.

Violation of 42 U.S.C. § 1983: TRMC violated § 1983 by unlawfully and wrongfully denying Dr. Zulim her vested property rights in her privileges at TRMC. TRMC has deprived Dr. Zulim of her property rights by unlawfully and wrongfully refusing to schedule her surgeries beginning in November 2016 to the present time, despite the fact that Dr. Zulim has privileges entitling her to use of TRMC's facilities and despite the fact that Dr. Zulim has continuously been advised that her privileges are not suspended (and that she is just on voluntary leave and/or vacation), however, she has not been able to schedule any surgeries.

TRMC has also violated § 1983 by unlawfully and wrongfully denying Dr. Zulim's fundamental right to procedural due process. TRMC and Dr. Benzeevi have deprived Dr. Zulim of her right to procedural due process by failing to follow the proper procedures outlined in TRMC's Bylaws to summarily suspend Dr. Zulim's privileges. Dr. Zulim's privileges were effectively summarily suspended despite the fact that the MEC was not properly constituted.

Intentional interference with contractual relations: Drs. Benzeevi, Kumar and Ostrom have intentionally interfered with Dr. Zulim's contractual relations with TRMC by unlawfully and wrongfully denying her use of the medical and surgical facilities at TRMC. There has been a disruption of the contractual relationship

between Dr. Zulim and TRMC in that Dr. Zulim has been unable to properly treat her patients at TRMC's medical and surgical facilities. Dr. Zulim's medical practice has been damaged in an amount according to proof as a result of Dr. Benzeevi's conduct. Dr. Benzeevi is not a party to the contract between Dr. Zulim and TRMC. Dr. Benzeevi does however have knowledge of the contract.

<u>Indemnity and contribution</u>: By way of a Cross-complaint filed by Dr. Zulim on September 19, 2016, Dr. Zulim seeks indemnity and contribution from, among others, Drs. Benzeevi and Kumar and TRMC for a lawsuit she has been forced to defend brought by a Mr. David Phelps in connection with TRMC's Board of Directors' decision to authorize the use of public funds to fund a lawsuit previously brought by Drs. Zulim, Kumar and Benzeevi against Abraham Betre, D.O. ("Underlying Matter"). Dr. Zulim denies any wrongful conduct. On May 2, 2016, Sherri Bell, Board Chairperson for TRMC, executed a fee agreement with the law firm of Levinson Arshonsky and Kurtz, LLP, wherein TRMC agreed to pay the attorneys' fees of Drs. Zulim and Kumar in connection with the Underlying Matter. Dr. Zulim's Cross-complaint seeks indemnity and contribution from Cross-defendants (including, among others, TRMC and Drs. Kumar and Benzeevi) therein if she is found liable to Mr. Phelps.

DATED: October 10, 2017

By _____
Rebecca Zulim, M.D.