```
9
```
WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Kathleen D. DeVaney #156444
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:  (559) 435-9800
Facsimile:   (559) 435-9868
E-mail:       rileywalter@w2lg.com

Chapter 9 Counsel

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>        Debtor.<br><br>Tax ID #:  94-6002897<br>Address:     869 N. Cherry Street<br>               Tulare, CA 93274 | CASE NO.  17-13797<br><br>Chapter 9<br><br>DC No.: MRH-1<br><br>**RESPONSE OF TULARE LOCAL HEALTHCARE DISTRICT TO REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE AND ADMINISTRATIVE PROOF OF CLAIM**<br><br>Date:   May 17, 2018<br>Time:   9:30 a.m.<br>Place:   2500 Tulare St.<br>          Fresno, CA  93721<br>          Courtroom 13<br>Judge:  Honorable René Lastreto II |

Debtor Tulare Local Healthcare District (the "District" or "Debtor") respectfully submits this response ("Response") to the "Request for Payment of an Administrative Expense and Administrative Proof of Claim" ("Request") filed by creditor Medline Industries, Inc. ("Medline") which seeks an order of this Court requiring the District to immediately pay Medline almost $50,000.

## I. SUMMARY OF ARGUMENT

Medline requests an order requiring the District to make immediate payment of the sum of $49,914.83 of which $569.10 is sought as an administrative expense under Section 503(b)(1) of the Bankruptcy Code (the "Code"), and $49,345.73 is sought as an administrative expense under Code § 503(b)(9). See, Request at p. 2, lns. 25-27, p.3, lns. 1-4. Medline's Request for an order for immediate payment should be denied and any adjudication on the allowance of its claim should be deferred because: (1) Medline's request to adjudicate the merits of its claim is premature and Code § 904 provides that a court may not issue any order interfering with a chapter 9 debtor's revenues, property, or the use or enjoyment of any income-producing property unless the chapter 9 debtor consents or the plan so provides; (2) there are no necessary costs and expenses of preserving the estate under Code § 503(b)(1)(a) in a chapter 9 case; and (3) even if the court chooses to adjudicate the merits of Medline's claim, Medline has failed to meet its evidentiary burden to establish its claim as an administrative expense for the reasons set forth herein and the separate evidentiary objections filed with this Response.

## II. BRIEF STATEMENT OF FACTS

The District filed its emergency petition under chapter 9 of the Code on September 30, 2017 ("Petition Date") after: (1) its former manager, Health Care Conglomerate Associates ("HCCA"), threatened to cease operations at the hospital known as the Tulare Regional Medical Center ("TRMC") and other medical facilities which would have created a health and safety emergency for patients and the public seeking medical care; and (2) the District first learned it was insolvent on September 28, 2017 when HCCA advised the District that it had a critical liquidity crisis, it was completely out of cash, and it could not fund the entire gross payroll.[1] In light of the District's dire financial crisis and HCCA's threats to cease operations, the District was forced to voluntary cease operations on or about October 29, 2017 in order to avoid a

---

[1] See, Docket No. 115 at pp. 160-61.

forced shut down by the California Department of Public Health. TRMC and the District's medical clinics that provide patient care services remain closed at this time.[2]

Medline asserts the District should be ordered to make immediate payment of $49,345.73 for goods allegedly provided after and during the 20 days prior to the Petition Date. However, Medline has failed to present any admissible evidence to: (a) identify or even describe the goods provided, (b) demonstrate how any such goods were reasonable and necessary to the District's operations or to preserve the District's assets, and (c) establish the date(s) on which such goods were allegedly received by the District. For the reasons set forth below, Medline's request for immediate payment of any amount should be denied and any decision on the allowance of its claim should be deferred until this Court established procedures for objecting to the allowance of claims and/or the District proposes and confirms its plan of adjustment.

## III. ARGUMENT

A proceeding under chapter 9 of the Bankruptcy Code differs in a number of respects from cases filed under chapter 7 or 11. Two of the key differences are limitations on the scope of a bankruptcy court's authority over chapter 9 debtors under Code § 904 and what claims constitute administrative claims.

### A. Courts Do Not Have Jurisdiction Or Authority To Issue Orders That Interfere With The Property, Revenues, Or Use Or Enjoyment Of Income Producing Property Of A Chapter 9 Debtor Unless The Debtor Consents Or It Is Pursuant To A Plan

Unless a chapter 9 debtor consents or a plan so provides, Code § 904 limits the court's power and jurisdiction over, among other things, the property and revenues a chapter 9 debtor or its use or enjoyment of any income-producing property. 11 U.S.C. § 904; *Ass'n of Retired Employees of the City of Stockton v. City of Stockton* (*In re City of Stockton*), 478 B.R. 8, 13 (Bankr. E.D. Cal. 2012) (Code § 904 bars the court,

---

[2] The District has been working diligently on multiple options to secure the requisite financing and partner with third parties to reopen TRMC and the medical clinics.

| RESPONSE OF TULARE LOCAL HEALTHCARE DISTRICT TO REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE AND ADMINISTRATIVE PROOF OF CLAIM | -3- | 00178000-kdd -04.30.2018 |

without the municipality's consent, from interfering with its political or governmental powers, property or revenues, and use or enjoyment of income-producing property); *In re Valley Health Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010) ("By virtue of § 904, a debtor in chapter 9 retains title to, possession of, and complete control over its property and its operations, and is not restricted in its ability to sell, use, or lease its property.").

By expressly limiting a court's authority to interfere with a chapter 9 debtor's assets, Code § 904 protects the constitutionality of chapter 9 under the Tenth Amendment.

> "The bill here recommended for passage expressly avoids any restriction on the powers of the States or their arms of government in the exercise of their sovereign rights and duties. No interference with the fiscal or governmental affairs of a political subdivision is permitted. The taxing agency itself is the only instrumentality which can seek the benefits of the proposed legislation. No involuntary proceedings are allowable, and no control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the bill ...."

H.R. Rep. No. 95-595, at 264 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6222; *United States v. Bekins*, 304 U.S. 27, 51 (1938) (approving foregoing statements of Committee on the Judiciary of the House of Representatives in upholding the constitutionality of Chapter X of the Bankruptcy Act under the Tenth Amendment to the United States Constitution). In 1975, Congress further narrowed the power of courts to interfere with a municipal debtor's assets by removing from their discretion the determination of whether or not the assets are "necessary for essential governmental services." See H.R. Rep. No. 94-686, at 18 (1975), reprinted in 1976 U.S.C.C.A.N. 539, 556.

The District does not consent to any order directing that its property or revenues be used to satisfy Medline's asserted administrative claim, and the District has not yet

proposed its plan of adjustment. For these reasons, the court lacks jurisdiction and authority to issue any order requiring payment of Medline's asserted claim.

### B. It Is Premature To Consider The Merits Of Medline's Claim

Even if the Court had jurisdiction and authority to issue the order Medline requests, it is premature to consider the merits of Medline's asserted claim. As of the date of the filing of this Response, this Court has not established procedures for the adjudication of the merits of claims filed in the chapter 9 case. Nearly 250 proofs of claim have been filed in this chapter 9 case, and it is critical to the efficient administration of the case and to preserve the District's limited assets that it not be required to litigate each claim before it proposes and confirms a plan of adjustment and establishes procedures for the efficient administration of claims as part of its plan of adjustment. Over the last few months, the District has devoted substantial resources to diligently working to obtain the necessary funding to reopen TRMC and other patient care clinics and to identify a well-established local partner to assist it in that endeavor. It has also devoted substantial resources to efforts to resolve the disputes with HCCA (its former manager). These are important steps in moving forward in its chapter 9 case so that the District is better able to determine what resources will be available in connection with its plan of adjustment. For these reasons, the District believes it is premature and not productive to litigate the merits of any claims at this point. Indeed, the terms of a plan of adjustment may moot the need for any litigation.

### C. Bankruptcy Code § 503(b)(1)(A) Does Not Apply in Chapter 9

In a chapter 7 or 11 case, claims arising under Section 503(b)(1)(A) for "the actual, necessary costs and expenses of preserving the estate," are allowable administrative expenses. In contrast, in a chapter 9 case there is no estate. *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 419 n.4 (B.A.P. 9th Cir. 2007); *In re City of Vallejo*, 403 B.R. 72, 78 n.2 (Bankr. E.D. Cal. 2009); *In re Jefferson County, Ala.*, 484 B.R. 427, 460-61 (Bankr. N.D. Ala. 2012). At least two courts have

RESPONSE OF TULARE LOCAL HEALTHCARE DISTRICT TO REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE AND ADMINISTRATIVE PROOF OF CLAIM

-5-

00178000-kdd -04.30.2018

held that there can be no "necessary costs and expenses of preserving the estate" in a case where no estate exists. *In re New York City Off Track Betting Corp.*, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010) ("*Off Track Betting*"); *In re Texas Wyoming Drilling, Inc.*, 486 B.R. 746, 759 (Bankr. N.D. Tex. 2013)(no administrative claim exists where there is no estate to benefit); *In re City of San Bernardino*, Dkt. No. 2164 at ¶ 16 at pp. 23-24 and Plan attached as Exhibit A thereto at Article I.B.16. at p. 4 and Article II.A at p. 17 (Bankruptcy court approved plan of adjustment that provided that claims arising under section 503(b)(1)(A) are not allowable administrative expenses).

In *Off Track Betting*, the court considered motions of several creditors to compel the chapter 9 debtor to pay certain fees that had accrued post-petition. The court rejected the argument that those fees were entitled to administrative priority under Code § 503(b)(1)(A). The court reasoned that because a chapter 9 debtor's property remains its own and does not inure into any bankruptcy estate under Code § 541, there can be no administrative expenses for 'the actual and necessary costs of preserving the estate' as contemplated by Code § 503(b)(1)(A). *Off Track Betting*, 434 B.R. at 142. The court's conclusion is in accord with and required by Code § 904, which prevents bankruptcy courts from exercising jurisdiction over a municipality's use of its revenues without the municipality's consent as discussed above.

The Supreme Court has held that statutes allowing administrative priorities in bankruptcy "must be tightly construed." *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 126 S. Ct. 2105, 2116 (2006). "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute." *Id.* (*quoting Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904 (1941)). "We take into account, as well, the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Id.* at 655 (*citing Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S. Ct. 80 (1952)).

RESPONSE OF TULARE LOCAL
HEALTHCARE DISTRICT TO REQUEST FOR
PAYMENT OF ADMINISTRATIVE EXPENSE
AND ADMINISTRATIVE PROOF OF CLAIM

-6-

00178000-kdd -04.30.2018

Because the Bankruptcy Code does not expressly provide for the payment of section 503(b)(1)(A) claims in chapter 9 cases, this Court should not read Section 503(b)(1)(A) more broadly than the statute's plain meaning. Congress did not clearly authorize a priority for post-petition claims against a chapter 9 debtor. Congress could have done so by stating in Code § 902(1) that "estate" when used in the Bankruptcy Code sections made applicable to chapter 9 means "the debtor," as Congress did with respect to "property of the estate." Alternatively, Congress could have written section 503(b)(1)(A) to provide for administrative priority for "the actual, necessary costs and expenses of preserving the debtor and the estate," but Congress limited that provision to claims against the estate. Because there is no estate in chapter 9, Code § 503(b)(1)(A) simply does not apply in chapter 9. In light of the constitutional concerns in *Bekins* discussed above that led to Congress to enact section 904 (substantially limiting the jurisdiction of the bankruptcy courts over a chapter 9 debtor's property and revenues), the Court should not expand the reach of section 503(b)(1)(A) unless doing so is "clearly authorized by Congress" and "the purpose of doing so is clear from the statute." *See*, *Nathanson*, *supra*, 344 U.S. at 29; *Howard Delivery Service*, *supra*, 547 U.S. at 667. For these reasons, Medline's request for payment of an administrative claim in the amount of $569.10 for goods allegedly received after the Petition Date should be denied.

D. **Medline's Has Not Established Any Administrative Claim Under 11 Code § 503(b)(9)**

Even if the Court chooses to consider the merits of Medline's claim at this early stage before a plan of adjustment is proposed, for the reasons set forth in the evidentiary objections filed with this Response, Medline has not submitted admissible evidence to establish that it has an administrative claim under Code § 503(b)(9). The District believes that the issue of whether claims arising under Code § 503(b)(9) are allowable administrative expenses in chapter 9 case is an issue of first impression.

Code § 503(b)(9) was added by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act. The legislative history of § 503(b)(9) "suggests that it was aimed at providing relief to sellers of goods who fail to give the required notice under the reclamation provision of section 546(c)[.]" *In re Brown & Cole Stores, LLC*, 375 BR 873, (9th Cir. BAP 2007), *citing* Shirley S. Cho, *The Intersection of Critical Vendor Orders and Bankruptcy Code § 503(b)(9)*, 29 Cal. Bankr. J. 7, 11 (2007), in turn *citing* BAPCPA, *Pub. L. No. 109-8 at § 1227*. Code § 503(b)(9) allows as an administrative expense "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."

While the Bankruptcy Code does not define "goods," some courts have adopted the UCC definition describing "goods" as all things – including specially manufactured goods – that are movable at the time of identification to the contract for sale other than the money in which the price is to be paid. *In re NE Opco, Inc.*, 501 BR 233, 241 (Bankr. D. Del. 2013). Goods are "received" under 503(b)(9) when the debtor or its agent takes physical possession of them. *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017).

The declaration of Donald Torres ("Torres Declaration") contains inadmissible testimony because it does not comport with the Federal Rules of Evidence. The Torres Declaration does not comport with Federal Rule of Evidence 602 because it does not provide facts sufficient to show that the witness has personal knowledge of (a) whether any materials or products provided by Medline were "goods" within the meaning of Code § 503(b)(9) because no description of any materials or products is provided or other documentation identifying any materials or products, (b) when any materials or products were received by the District (instead there is only an inadmissible exhibit of invoice dates), or (c) how any materials or products that may have been provided were reasonable and necessary to the District's operations or to preserve the District's

assets. In addition, the Torres Declaration has inadmissible opinion testimony because it contains legal conclusions on whether any products or materials provided by Medline were "goods," provided in the "ordinary course of business" and "reasonable and necessary to the Debtor's operations and to preserve the Debtor's assets." Furthermore, Exhibit A appended to the exhibits supporting the Request is inadmissible because it does not contain facts sufficient to justify the use of a chart or summary to prove the content of voluminous writings that cannot be conveniently examined in court as required by Federal Rule of Evidence 1006. Thus, even if the Court considers the merits of Medline's Request, it should be denied on this ground alone because there is no admissible evidence to support any claim under Code § 503(b)(9).

## IV. CONCLUSION

For the foregoing reasons, the District respectfully requests that the Court: (a) deny Medline's Request for an order compelling the District to immediately pay it the sum of $49,914.83; (b) defer any adjudication of the merits of Medline's claim until after a plan of adjustment is confirmed and a process is established for objecting to claims; and (c) if the Court chooses to adjudicate the merits of the Request, deny Medline's requested administrative claim and reclassify its claim as a general unsecured claim.

Dated: May __, 2018

WALTER WILHELM LAW GROUP,
a Professional Corporation

By: _____
Riley C. Walter
Attorneys for Debtor Tulare Local Healthcare District