**22**

Lisa M. Peters (admitted *pro hac vice*)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, Nebraska 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
Email: Lisa.Peters@kutakrock.com

John Mark Jennings (State Bar No. 192641)
KUTAK ROCK LLP
Suite 1500
5 Park Place
Irvine, California 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394
Email: JohnMark.Jennings@kutakrock.com

Attorneys for Creditor GE HFS, LLC

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re: | CASE NO. 17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba Tulare Regional Medical Center, | DC No.: WW-41 |
| | Chapter 9 |
| Debtor. | Date: August 2, 2018 |
| Tax ID #: 94-6002897 | Time: 9:30 a.m. |
| Address: 869 N. Cherry Street | Dept.: B |
| Tulare, California 93274 | Place: 2500 Tulare Street |
| | Fresno, California 93721 |
| | Courtroom 13 |
| | Judge: Honorable Rene Lastreto II |

///
///
///
///
///
///

**EXHIBIT TO DECLARATION OF AMY B. WALL IN
SUPPORT OF GE HFS, LLC'S OBJECTION TO (I) PROPOSED
ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF
LEASES, AND (II) CURE OBLIGATIONS WITH RESPECT THERETO**

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | Master Lease Agreement dated as of November 11, 2016 and Equipment Schedules thereto (the "Master Lease") | 19 |

Dated: August 1, 2018.                    KUTAK ROCK LLP

                                By:/s/ Lisa M. Peters
                                    LISA M. PETERS

                                    Attorneys for Creditor GE HFS, LLC

# **EXHIBIT A**

## **MASTER LEASE**

[SEE ATTACHED]

EXHIBITS TO DECLARATION OF AMY B. WALL

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-0818-8270.1

Filed 08/01/18      Case 17-13797      Doc 635


**GE Capital**

## MASTER LEASE AGREEMENT
### DATED AS OF 11/16/2016

THIS MASTER LEASE AGREEMENT (this "**Agreement**") is between GE HFS, LLC (together with its successors and assigns, if any, "**Lessor**") and the undersigned lessee ("**Lessee**"). Lessor has a mailing address 20225 Watertower Blvd., Brookfield, WI 53045, Attn: Operations Dept. The legal entity type, jurisdiction of organization, mailing address and chief place of business of Lessee is as set forth below under the signature block of Lessee. Additional terms that apply to the Equipment shall be contained on a schedule ("**Schedule**"). Capitalized terms used, but not otherwise defined, herein and which are defined in a Schedule shall have the respective meanings assigned to such terms in a Schedule.

#### 1. LEASE, TERM AND RENT PAYMENTS:

(a) Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, all units of equipment and other property described in the Schedule(s), and all accessories, upgrades, additions, substitutions, replacement parts and tools pertaining thereto ("**Equipment**" and individually a "**unit of Equipment**") described in any Schedule signed by both parties.

(b) This Agreement shall be effective as of the date stated above and, unless sooner terminated by Lessor as hereinafter provided, shall continue until all of Lessee's obligations hereunder or under any Schedule(s) are fulfilled. The term of each Schedule is as specified in such Schedule and commences upon the Lease Commencement Date (defined in subparagraph (c) below). In the event of a conflict between provisions of this Agreement and a Schedule, the provisions of the Schedule shall control.

(c) The rent payable for the Equipment and Lessee's acceptance and right to use the Equipment shall occur on the earlier of (i) five days after the date Lessee is notified that the Equipment has been assembled and is operating in accordance with the manufacturer's published performance specifications, (ii) the date the Equipment is first used or (iii) the date when Lessee has accepted the Equipment under a certificate of acceptance ("**Lease Commencement Date**").

(d) Lessee shall pay rent to Lessor at its address stated above, except as otherwise directed by Lessor. Rent payments shall be in the amount set forth in the applicable Schedule and are due in advance beginning on the Lease Commencement Date and on the same day of each consecutive month thereafter. If any advance rent or advance charge (as stated in the applicable Schedule) is payable, it shall be due on or before Lessee signs such Schedule and shall be applied in the manner set forth under such Schedule. In no event shall any advance rent or advance charge or any other rent payments be refunded to Lessee. If rent is not paid within ten days of its due date, Lessee agrees to pay a late charge of five cents ($.05) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any. All other payments received by Lessor shall first be applied to any accrued late charge(s) and other monies due Lessor hereunder and then to any unpaid rents.

#### 2. TRANSPORTATION AND RISK OF LOSS:
The Equipment will be shipped to the site identified in a Schedule by the supplier or manufacturer of the Equipment identified in the Schedule ("**Supplier**"). Lessee or the Supplier will bear responsibility for transportation and risk of loss of the Equipment at all times. At no time will Lessor bear the risk of loss. The use of the term "**risk of loss**" herein shall include, without limitation, the entire risk of any loss, theft, damage to, or destruction of any unit of Equipment from any cause whatsoever.

#### 3. NET LEASE:
This Agreement constitutes a net lease, and Lessee's obligation to pay the rents and other amounts due hereunder (and the continuing effectiveness and enforceability of this Agreement) are absolute, unconditional, non-cancelable and independent obligations not subject to abatement, diminution, suspension, deferment or reduction of, or offset against, Lessee's obligations hereunder for any reason including without limitation: (i) any claims of Lessee against the Supplier of the Equipment; (ii) any defect in, damage to, or loss of destruction of any unit of Equipment however arising; or (iii) any interference with Lessee's use of any unit of Equipment by any third party (including any governmental body). It is the express intention of the parties hereto that all rents and other amounts payable by Lessee to Lessor hereunder shall continue to be promptly and unconditionally paid in all events.

#### 4. RENT ADJUSTMENT:

(a) If, solely as a result of Congressional enactment of any law (including, without limitation, any modification of, or amendment or addition to, the Internal Revenue Code of 1986, as amended, "**Code**"), the maximum effective corporate income tax rate (exclusive of any minimum tax rate) for calendar-year taxpayers ("**Effective Rate**") is higher than 35% for any year during the lease term, then Lessor shall have the right to increase such rent payments by, at Lessor's option, (i) requiring payment of a single additional sum, or (ii) increasing the amount of the rent for the remaining term. The additional sum shall be equal to the product of (i) the Effective Rate (expressed as a decimal) for such year less .35 (or, in the event that any adjustment has been made hereunder for any previous year, the Effective Rate (expressed as a decimal) used in calculating the next previous adjustment) times (ii) the present value of the aggregate rents remaining under a Schedule discounted at 6%, divided by (iii) the difference between the new Effective Rate (expressed as a decimal) and one (1). If Lessor chooses the first option, Lessee shall pay to Lessor the full amount of the additional rent payment on the later of (i) receipt of notice or (ii) the first day of the year for which such adjustment is being made. If Lessor chooses the second option, the rental payments for each month subsequent to when Lessor provided Lessee notice of such rent shall be increased accordingly.

(b) Lessee's obligations under this Section 4 shall survive any expiration or termination of this Agreement.

(c) Until the Lease Commencement Date, Lessor shall have the right to adjust the rent as set forth in the Schedule(s). In addition, Lessee acknowledges that Lessor may adjust the rent, up or down, by no more than 10% within each Schedule to account for Equipment change orders, Equipment returns, invoicing errors, and similar matters. Lessor shall send Lessee a written notice stating the final rent, if it has changed.

#### 5. TAXES:
If permitted by law, Lessee shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rents or receipts hereunder), any Schedule, Lessor or Lessee by any governmental entity or taxing authority during or related to the term of this Agreement, or to any other period during which the Lessee had use or possession of the Equipment, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "**Taxes**"). Lessee shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Lessor except as provided in Sections 4 and 20. Lessee shall promptly reimburse Lessor (on an after tax basis) for any Taxes charged to, assessed against or paid by Lessor. Lessee shall show Lessor as the owner of the Equipment on all tax reports or returns, and send Lessor a copy of each report or return and evidence of Lessee's payment of Taxes upon request by Lessor. Lessee's obligations under this Section 5 shall survive any expiration or termination of this Agreement.

#### 6. REPORTS:

(a) If any tax, charge or other lien shall attach to any Equipment, Lessee will notify Lessor in writing, within ten days after Lessee becomes aware of the tax, charge or lien. The notice shall include the full

Master Lease Tax Exempt
HFS0028



Rev. 04/2016

particulars of the tax, charge or lien and the location of such Equipment on the date of the notice.

(b) Lessee will deliver to Lessor, Lessee's complete financial statements, including a recognized firm of certified public accountants within 90 days of the close of each fiscal year of Lessee. Lessee will deliver to Lessor copies of Lessee's quarterly financial report certified by the chief financial officer of Lessee, within 30 days of the close of each fiscal quarter of Lessee. Lessee will deliver to Lessor all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within 30 days after the date on which they are filed. Upon the written request of Lessor, Lessee will deliver to Lessor any additional information reasonably requested by Lessor, including but not limited to accounts receivable agings, activity reports and budget comparison reports.

(c) Lessor may inspect any Equipment during normal business hours after giving Lessee reasonable prior notice (except as otherwise provided in Section 10).

(d) If any Equipment is lost or damaged (where the estimated repair costs would exceed the greater of ten percent (10%) of the original Equipment cost or ten thousand dollars ($10,000)), or is otherwise involved in an accident causing personal injury or property damage, Lessee will promptly and fully report the event to Lessor in writing.

(e) Lessee will not change its state of incorporation or organization or its name as it appears in official filings in the state of its incorporation or organization without giving Lessor at least 10 days' prior written notice.

## 7. USES, OPERATION AND MAINTENANCE:

(a) Except as otherwise agreed to by Lessor, all Equipment shall be shipped directly to Lessee.

(b) Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable laws, regulations and insurance policies.

(c) Lessee will not move any Equipment from the location specified on the applicable Schedule, without the prior written consent of Lessor.

(d) Lessee will keep the Equipment free and clear of all liens, claims and encumbrances other than those, which result from acts of Lessor.

(e) Lessor shall not disturb Lessee's quiet enjoyment of the Equipment during the term of the Agreement unless a default has occurred and is continuing under this Agreement.

(f) Lessee's use of the Equipment shall be subject to the Supplier's terms and conditions of sale, including, but not limited to any requirements regarding site preparation. Lessee further acknowledges that in the event the Equipment contains embedded software, such software is subject to the proprietary rights of the owner thereof and Lessee's use of such software will be subject to the terms of any related software licenses.

(g) Lessee will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted and also maintain the Equipment in accordance with Supplier's recommendations. Lessee shall make all alterations or modifications required to comply with any applicable law, rule or regulation during the term of this Agreement. If Lessor requests, Lessee shall affix plates, tags or other identifying labels showing ownership thereof by Lessor. If and to the extent it becomes necessary to service, repair or replace any parts, components or accessories of or to the Equipment (**"Parts"**), any such repair or replacement shall be made only with original Equipment manufacturer's (**"OEM"**) Parts, and if any OEM Part is not available, with a Part manufactured and/or distributed by a manufacturer and/or supplier approved by Lessor. All services and/or repairs performed on or with respect to the Equipment shall be performed by the OEM, or if the OEM has notified Lessee in writing that it is unable or unwilling to perform such services, such services shall be performed by a service provider approved by Lessor.

(h) Lessee will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Lessor. All additions, parts, supplies, accessories, and equipment (**"Additions"**) furnished or attached to any Equipment that are not readily removable shall become the property of Lessor. All Additions shall be made only in compliance with applicable law.

## 8. INSURANCE:

Lessee agrees at its own expense, to keep the Equipment insured with companies acceptable to Lessor for such amounts and against such hazards as Lessor may require, including, but not limited to, all risk physical damage insurance for the Equipment itself, with losses under the policies payable to Lessor or its assigns, if any, and liability coverage for personal injuries, death and/or property

damages on terms satisfactory to Lessor. Lessor and/or its officers, agents, employees and/or successors and/or assigns shall be named as an additional insured under all such insurance policies with loss payable clauses under said policies payable in Lessor's favor, as Lessor's interest may appear. Said Equipment shall be insured for not less than its Stipulated Loss Value (see Schedule) or such other amount as Lessor shall specify. Said liability insurance shall be in an amount of not less than two million dollars ($2,000,000.00) or such other amount as Lessor shall specify. Lessee hereby appoints Lessor as its attorney-in-fact to make proof of loss and claims for insurance and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made with respect to such insurance policies. Lessee may not make adjustments with insurers except with Lessor's prior written consent. The policies will provide that the insurance may not be altered or canceled by the insurer until after thirty days written notice to Lessor. In the event of damage to or loss, secretion, destruction or theft of the Equipment, or any portion of the Equipment, whether in whole or in part, Lessee will pay to Lessor the Stipulated Loss Value of all Equipment, or of the portion of the Equipment affected if the value and use of the remainder of the Equipment are not affected at the time of such occurrence (except to the extent that Lessor indefeasibly receives proceeds of insurance covering such Equipment). Lessor may, at Lessor's option, apply proceeds of insurance, in whole or in part, (i) to repair or comparably replace the Equipment or any portion of it or, (ii) to satisfy any of Lessee's obligations pursuant to this Agreement or a Schedule. Upon the request of Lessor, Lessee shall deliver to Lessor evidence reasonably satisfactory to Lessor that Lessee is in compliance with all Insurance requirements set forth in this Section 8, which evidence so requested may include insurance certificates from each relevant insurer.

## 9. STIPULATED LOSS VALUE:

If for any reason (including, without limitation, in connection with the return of such Equipment pursuant to Section 14 hereof) any unit of Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable (**"Casualty Occurrences"**) Lessee shall promptly and fully notify Lessor in writing. Lessee shall pay Lessor on the Casualty Payment Date (defined below), the sum of (i) the Stipulated Loss Value (see Schedule(s)) of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; and (ii) all rent and other amounts which are then currently outstanding and due under this Agreement for the affected unit. The **"Casualty Payment Date"** shall be the next rent payment date after the Casualty Occurrence. Upon Payment of all sums due hereunder, the term of this Agreement as to such unit of Equipment shall terminate.

## 10. DEFAULT AND REMEDIES:

(a) Lessor may declare this Agreement in default if: (i) Lessee breaches its obligation to pay rent or any other sum owing to Lessor (under this Agreement or otherwise) when due and fails to cure the breach within ten days; (ii) Lessee breaches any of its insurance obligations under Section 8 above; (iii) Lessee assigns any of its interests in this Agreement or in the Equipment without Lessor's prior written consent; (iv) Lessee breaches any of its other obligations under this Agreement and fails to cure that breach within 30 days after written notice from Lessor; (v) any representation or warranty made by Lessee in connection with this Agreement shall be incorrect, false or misleading in any material respect; (vi) Lessee or any guarantor or other obligor for Lessee's obligations hereunder (**"Guarantor"**) becomes insolvent or ceases to do business as a going concern; (vii) if Lessee or any Guarantor is a natural person, any death or incompetency of Lessee or such Guarantor; (viii) a petition is filed by or against Lessee or any Guarantor under any bankruptcy or insolvency laws (in which event it shall be an immediate event of default) and in the event of an involuntary petition, the petition is not dismissed within 45 days of the filing date; or (ix) any material adverse change occurs in Lessee's financial condition or business operations (or of any Guarantor) or any material change occurs in the ownership of Lessee (or of any Guarantor). Lessee's default under a Schedule or a default by Lessee, any principal of Lessee or any entity managed or controlled by Lessee or any principal of Lessee under any other agreement or contract with Lessor, will at Lessor's sole option, constitute a default of this Agreement and all Schedules entered into pursuant to this Agreement.

(b) Upon the occurrence of an event of default hereunder, Lessor shall have the non-exclusive option to: (i) declare the aggregate rents or the Stipulated Loss Value (see Schedule) payable under any or all of the Schedules immediately due and payable; (ii) declare all other amount(s) due Lessor hereunder immediately due and payable; (iii) terminate this Agreement as to any or all of the Equipment; (iv) collect from Lessee, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the


ORIGINAL

amount of all such monies, but not exceeding the lawful maximum; (v) take possession of the Equipment and remove same from its existing location(s) without notice to or consent of Lessee; and store and/or dispose (by public sale or otherwise) of the Equipment at its then existing location(s) at no charge to Lessor; (vi) sell or lease any or all items of Equipment at public or private sale or lease at such time or times as Lessor may determine and if notice thereof is required by law, any notice in writing of any such sale or lease by Lessor to Lessee not less than ten days prior to the date thereof shall constitute reasonable notice thereof to Lessee; (vii) otherwise dispose of, hold, use, operate, or keep idle such Equipment, all as Lessor, in its sole discretion, may determine; and (viii) assert any other remedies available to Lessor at law or in equity (including, without limitation, under the Uniform Commercial Code).

(c)    After deducting all expenses of retaking, repairing, holding, transporting, selling and/or reletting the Equipment, the net proceeds (if any) from such sale or reletting by Lessor shall be applied against Lessee's obligation hereunder. The proceeds of any sale, re-lease, or other disposition (if any) shall be applied in the following priorities: (i) first, to pay all Lessor's costs, charges and expenses in taking, removing, holding, repairing, selling, re-leasing and disposing of the Equipment; (ii) second, to the extent not previously paid by Lessee or by a Guarantor of Lessee's obligations hereunder to pay Lessor all amounts due from Lessee hereunder; and (iii) lastly, any surplus shall be retained by Lessor. Lessor shall have the right to seek a deficiency from Lessee notwithstanding Lessor's repossession or abandonment of the Equipment, or Lessor's sale or reletting the Equipment to a third party.

(d)    The foregoing remedies are cumulative and nonexclusive of any other rights and remedies that Lessor may have under any other agreement or at law or in equity and may be exercised individually or concurrently, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under statute. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Lessee shall pay Lessor's actual attorneys' fees, agency fees, collection costs and expenses and any other costs and expenses incurred in connection with the enforcement, assertion, defense or preservation of Lessor's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be a waiver of any other or subsequent default.

**11. INDEMNIFICATION:** Lessee hereby agrees to indemnify Lessor, its agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Equipment or this Agreement (**"Claims"**). This indemnity shall include, but is not limited to, Lessor's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, use, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing. All of Lessor's rights, privileges and indemnities contained in this Section 11 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

**12. DISCLAIMER:** LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE, ARE TO BE BORNE BY LESSEE. LESSEE FURTHER AGREES THAT LESSOR AND ITS REPRESENTATIVES HAVE NO LIABILITY TO LESSEE FOR (I) ANY PENAL, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES SUCH AS LOST PROFIT OR REVENUE, (II) ANY ASSISTANCE NOT REQUIRED UNDER THE

SCHEDULE, OR (III) ANYTHING OCCURRING AFTER THE END OF A SCHEDULE. THIS IS A COMMERCIAL LEASE TRANSACTION. ANY CLAIM RELATED TO THIS CONTRACT WILL BE COVERED SOLELY BY COMMERCIAL LEGAL PRINCIPLES. LESSOR, ITS REPRESENTATIVES AND ASSIGNS WILL NOT HAVE ANY NEGLIGENCE OR OTHER TORT LIABILITY TO LESSEE OR ANY PERSON OR ENTITY, ARISING FROM THIS AGREEMENT AND ANY OTHER DOCUMENT OR ANY USE OF ANY EQUIPMENT.

**13. REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE:** Lessee makes each of the following representations, warranties, and covenants to Lessor on the date hereof and on the date of execution of each Schedule.

(a)    Lessee has full power and capacity to enter into, and perform under, this Agreement, the Schedules and all related documents (together, the **"Documents"**). Lessee is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b)    The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(c)    No approval, consent or withholding of objections is required from any governmental authority or any person or entity with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d)    The entry into and performance by Lessee of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e)    There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which if decided against Lessee will have a material adverse effect on its business or operations or its ability to fulfill its obligations under this Agreement.

(f)    The Equipment is and will remain tangible personal property.

(g)    Each financial statement delivered to Lessor has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change in the financial condition of Lessee.

(h)    Lessee's exact legal name is as set forth in the last page of this Agreement and Lessee is and will be at all times validly existing and in good standing under the laws of the State of its formation (specified in the first sentence of this Agreement).

(i)    The Equipment will at all times be used for commercial or business purposes.

**14. END-OF-TERM OPTIONS:** At least 180 days prior to the expiration of the term of a Schedule, Lessee must elect, by written notice to Lessor sent via certified mail to 20225 Watertower Blvd., Suite 300, Brookfield, WI 53045, Attn: VP Asset Management, one of the following end-of-term options: (i) Lessee's purchase of all (but not less than all) of the Equipment as set forth in Section 15 below; or (ii) Lessee's return of all (but not less than all) of the Equipment to Lessor upon expiration of the Term pursuant to and in accordance with the terms and conditions of Section 16 hereof. Should Lessee fail to make an election as required pursuant to and in accordance with the immediately preceding sentence, Lessee shall be deemed for all purposes of this Agreement and such Schedule to have elected the option described in clause (ii) above.

**15. PURCHASE OPTION:**

(a)    Lessee may at lease expiration purchase all (but not less than all) of the Equipment in any Schedule on an AS IS, WHERE IS BASIS for cash equal to its then Fair Market Value (plus all rent and other sums due hereunder on or prior to the purchase date, to the extent not previously paid, plus all taxes and charges due in connection with such sale and all other expenses incurred by Lessor in connection with such sale). Lessee must notify Lessor of its intent to purchase the Equipment in writing at least 180 days in advance. If Lessee is in default or if the corresponding Schedule has already been terminated Lessee may not purchase the Equipment.

(b)    **"Fair Market Value"** shall mean the price that a willing buyer would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell. In determining the Fair Market Value

Master Lease Tax Exempt
HFS0028                  Page 3 of 6          ORIGINAL         Rev. 04/2016

6

the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement. The Equipment shall be valued on a fully assembled, installed and operational basis. If Lessor and Lessee are unable to agree on the Fair Market Value, Lessor shall appoint, at least 135 days before lease expiration, an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value. The independent appraiser's determination shall be final, binding and conclusive. Lessee shall bear all costs associated with any such appraisal.

    (c) Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is told to Lessee.

### 16. REMOVALS AND RETURN OF EQUIPMENT:

    (a) At the expiration or earlier termination of a Schedule, Lessee will arrange for the removal and return of the Equipment at its expense, including all transportation to a business address designated by Lessor within the Continental United States of America. If Lessor has not designated a business address as contemplated in the immediately preceding sentence on or prior to the expiration or earlier termination of a Schedule, Lessee shall request Lessor to so designate a business address, which request shall be in writing and delivered to Lessor in the manner provided in Section 23(b). The Equipment shall be de-installed, crated and transported by the original Equipment manufacturer (the "OEM"), or if the OEM has notified Lessee in writing that it is unable or unwilling to perform such services, such services shall be performed by a provider approved by Lessor. If Lessor so requires, the Equipment shall, at Lessee's sole cost and expense, be inspected by the OEM, the Supplier or such other person approved by Lessor, and Lessee shall obtain from the OEM, Supplier or such other person, as applicable, and make available to Lessor, a comprehensive inspections report, certifying that the Equipment is operable in accordance with the then prevailing performance specifications for it. If Lessee makes modifications to its premises after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the premises will be at Lessee's expense. The Equipment will be returned to Lessor or its assigns on the expiration or earlier termination of a Schedule in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with the Supplier's then prevailing performance specifications for it. All waste material and fluid must be removed from the Equipment and disposed of by Lessee in accordance with the then current waste disposal laws, and Lessee shall otherwise clean the Equipment in accordance with all manufacturer recommended and state-of-the-art protocols, industry standards and all applicable laws and regulations. If the Equipment is not so returned, Lessor, at Lessee's sole expense, may have the Equipment restored to such a condition. Upon the request of Lessor (or its agent), Lessee shall deliver to Lessor (or its agent) prior to the removal and return of the Equipment a certificate pursuant to which Lessee shall (i) certify that the Equipment has been cleaned to remove any hazardous substances and that the area around the Equipment has been made safe and accessible, and (ii) specify whether the Equipment has been in contact with any radioactivity, infectious or hazardous biological substances and/or any other hazardous chemicals (and if so, provide the related details of such contact), and whether the Equipment contains any liquid and/or gas (and if so, describing the same).

    (b) If Lessor so requires, at Lessor's sole discretion, Lessee shall obtain a policy of transit insurance for the return of the Equipment to Lessor in an amount equal to the replacement value of the Equipment. Such transit insurance must name Lessor as the loss payee. Lessee shall pay for all costs of complying with this section.

    (c) Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up to date copy of all other documentation pertaining to the Equipment.

    (d) All service manuals, blueprints, process flow diagrams, operating manuals, inventory, maintenance records and clinical images (for diagnostic imaging equipment only) not older than 30 days with patient data erased, shall be given to Lessor at least 90 days, and not more than 120 days, prior to the Agreement termination.

    (e) Lessee shall, at its sole cost and expense, make the Equipment available for Lessor's on-site operational inspection by potential purchasers at least 120 days prior to and continuing up to Agreement termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

    (f) In the event that Lessee is required to return the Equipment to Lessor pursuant to and in accordance with this Section 16, including,

without limitation, in the event that Lessee elects, or is deemed to have elected, the end-of-term option described in clause (ii) of Section 14 hereof, and fails to so return the Equipment as and when required, (A) Lessee shall continue to pay to Lessor Monthly Rental payments as and when required pursuant to Section 1(d) hereof as if the Term of the relevant Schedule had not expired or terminated, and the amount of each such Monthly Rental payment shall be equal to the last Monthly Rental payment (or if such last Monthly Rental payment is the lowest of all Monthly Rental payments during such Term, the highest Monthly Rental payment) due and payable by Lessee under the relevant Schedule prior to the expiration or termination of the Term of such Schedule (regardless of whether such payment has been made by or on behalf of Lessee) and (B) Lessee shall give to Lessor no less than sixty (60) days' prior written notice before returning the Equipment to Lessor, during which sixty (60) day period Lessee shall, at its sole cost and expense, make the Equipment available for Lessor's on-site operational inspection by potential purchasers and provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for the Equipment. Lessee shall continue to make the Monthly Rental payments pursuant to clause (A) above until Lessee has returned the Equipment pursuant to and in accordance with this Section 16. Lessor may, but shall not be obligated to, invoice Lessee for such Monthly Rental payments at the same intervals and in the same manner as Lessor had invoiced Lessee for Monthly Rental payments prior to the expiration or termination of such Schedule; provided, however, that the failure of Lessor to invoice Lessee for such Monthly Rental payments following the expiration or termination of such Schedule shall not relieve Lessee from, or otherwise affect, its obligations to make such Monthly Rental payments following such expiration or termination. Notwithstanding the foregoing, nothing herein is intended to provide, nor shall be interpreted as providing, (x) Lessee with a legally enforceable option to extend or renew the Term of this Agreement or any Schedule, or (y) Lessor with a legally enforceable option to compel any such extension or renewal.

    (g) All of Lessee's duties and obligations, and all of Lessor's rights, under this Section 16 shall survive the expiration or other termination of this Agreement and each Schedule.

### 17. ASSIGNMENT:
LESSEE SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF LESSEE IN THE EQUIPMENT OR THE RIGHTS OR OBLIGATIONS OF LESSEE UNDER THIS AGREEMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. Lessor may, without the consent of Lessee, assign this Agreement, any Schedule or the right to enter into a Schedule, provided that any such assignment shall not relieve Lessor of its obligations hereunder. Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all rent and all other amounts payable under any assigned Schedule to such assignee or as instructed by Lessor. Lessee also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by Lessor or assignee. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

### 18. NO THIRD PARTY BENEFICIARIES:
This Agreement is solely for the benefit of Lessee and Lessor and no person or legal entity is, or shall be considered, an intended third party beneficiary hereof, and no person other than Lessee and Lessor shall have an enforceable right to any benefits under this Agreement.

### 19. PROTECTED HEALTH INFORMATION.
Lessee shall not disclose, and shall prevent the Disclosure of, any Protected Health Information to Lessor, any agent or affiliate of Lessor, or to any third party who at any time takes possession of the Equipment for any reason. LESSEE IS SOLELY RESPONSIBLE FOR REMOVING, OR RENDERING INDECIPHERABLE IN ACCORDANCE WITH PREVAILING INDUSTRY STANDARDS, ALL PROTECTED HEALTH INFORMATION STORED ON OR OTHERWISE ACCESSIBLE FROM THE EQUIPMENT BEFORE THE EQUIPMENT LEAVES POSSESSION OF LESSEE, whether the change in possession is prompted by a default hereunder, termination of this Agreement or any Schedule, or for any other reason. "Disclosure" and "Protected Health Information" shall have the meaning for each term set forth in 45 C.F.R. § 160.103, as those definitions may be amended from time to time.

### 20. TAX BENEFIT INDEMNIFICATION:
Lessor and Lessee agree that should either the United States government or any state or local tax authority disallow, eliminate, reduce, recapture, or disqualify, in whole or



in part, the tax benefits claimed under a Schedule by Lessor, Lessee will then indemnify Lessor by payment, at its choice, of either: (i) supplemental rent to Lessor during the remaining period of the term of such Schedule in an amount necessary to permit Lessor to receive (on an after tax basis over the full term of such Schedule) the same rate of return that Lessor would have realized had there not been a loss or disallowance of such benefits, together with any interest or penalties which might be assessed by the governmental authority(ies) with respect to such loss or disallowance, or (ii) a lump sum, payable on demand, to Lessor which will be equal to the amount necessary to permit Lessor to receive (on an after-tax basis over the full term of that Schedule) the same rate of return that Lessor would have realized had there not been a loss or disallowance of such benefits, together with the amount of any interest or penalties which might be assessed by the governmental authority(ies) with respect to such loss or disallowance. All references to Lessor in this Section include Lessor and the consolidated taxpayer group of which Lessor is a member. All of Lessor's rights, privileges and indemnities contained in this Section shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

**21. COMPLIANCE WITH REPORTING RESPONSIBILITIES:** Lessee agrees to fully and accurately account for, and report in any applicable cost reports, all items and services received from Lessor under this Agreement and all Schedules, in a way which complies with all applicable laws and regulations, including the Federal Social Security Act and implementing regulations relating to Medicare, Medicaid and the Federal Health Care Programs.

**22. FILING:** Lessee will sign and return to Lessor when requested such instrument(s) as applicable law requires or permits to give public notice of Lessor's interest in the Equipment. In addition, Lessee hereby authorizes Lessor to file a precautionary financing statement and amendments thereto describing the Equipment described in any and all Schedules now and hereafter executed pursuant hereto and adding any collateral described therein and containing any other information required by the applicable Uniform Commercial Code. If and to the extent that this Agreement or a Schedule is deemed a security agreement, Lessee hereby gives, grants and assigns to Lessor, its successors and assigns, a security interest in all of Lessee's rights under and interest in the Equipment, the general intangibles related thereto, the accounts created thereby and all proceeds of the foregoing. Such security interest shall secure Lessee's obligations with respect to all Schedules and agreements between Lessee and Lessor. Lessee hereby irrevocably appoints Lessor or its designee as Lessee's agent and attorney-in-fact to sign such instrument(s) on Lessee's behalf and to file them.

**23. MISCELLANEOUS:**
(a) LESSEE AND LESSOR UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, ADDENDA OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.
(b) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right at any other time to demand strict compliance with this Agreement. If more than one Lessee is named in this Agreement, the liability of each shall be joint and several. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have specified in writing by notice as prescribed in this Agreement. This Agreement and any addendum, schedule and annexes hereto constitute the entire agreement of the parties with respect to the subject

matter hereof. No prior proposals, statements, course of dealing, or usage of trade will be a part of this Agreement. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF EACH OF THE PARTIES HERETO.
(c) If Lessee does not comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor. Lessee shall pay the additional rent within five days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.
(d) Any provisions in this Agreement, any Schedule, addendum or amendment hereto that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto, but the remaining provisions shall remain enforceable as written.
(e) This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed in accordance with, the internal laws of the State of Wisconsin (without regard to the conflict of laws principles of such State), including all matters of construction, validity and performance, regardless of the location of the Equipment.
(f) Any cancellation or termination by Lessor, pursuant to the provisions of this Agreement, any Schedule, addendum or amendment hereto, of the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder.
(g) Lessee agrees that neither it nor its affiliates will in the future issue any press release or other public disclosure using the name of GE HFS, LLC or any of its affiliates or referring to this Agreement without at least two (2) business days' prior notice to Lessor and without the prior written consent of Lessor unless (and only to the extent that) Lessee or its affiliate is required to do so under law and then, in any event, such Lessee or affiliate will consult with Lessor before issuing such press release or other public disclosure. Lessee consents to the publication by Lessor of a tombstone or similar advertising material relating to the transactions contemplated by this Agreement.
(h) There is no restriction either express or implied on any disclosure or dissemination of the structure or tax aspects of the transactions contemplated by this Agreement. Further, Lessor acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure.
(i) A manually signed copy of each Document (as defined in Section 13(a) hereof) (a "**Signed Document**") may be delivered by facsimile or as a PDF file by electronic mail (E-mail) (either such delivery method being referred to herein as **"Electronic Delivery"**). If Lessee transmits any Signed Document by Electronic Delivery, the printed Signed Document as received by Lessor shall be binding on Lessee as if it were manually signed in original; however, no such Signed Document delivered by Electronic Delivery shall be binding against Lessor unless and until manually signed by Lessor. For the purposes of executing any Document, the parties agree that (i) a Signed Document transmitted by Electronic Delivery shall be treated as an original document; (ii) the signature of any party on any such Signed Document shall be considered as an original signature; (iii) such Signed Document shall have the same effect as a counterpart thereof containing original signatures; and (iv) at the request of Lessor, Lessee, who executed such Signed Document and transmitted it by Electronic Delivery, shall provide such original signature to Lessor. No party may raise as a defense to the enforcement of any Signed Document that any signature of a party to such Signed Document was transmitted by Electronic Delivery.
(j) The parties agree that this Agreement and each Schedule constitutes a "Finance Lease" under Uniform Commercial Code Section 2A-103(g). It is the intent of the parties that this Agreement will be a true lease and not a "conditional sale", and that Lessor shall at all times be considered to be the owner of the Equipment for the purposes of all Federal, state, city and local income taxes, and that this Agreement conveys to Lessee no right, title or interest in any of the Equipment except as lessee. Accordingly, Lessee agrees (i) to treat Lessor as the owner of the Equipment, (ii) not to take any actions or positions inconsistent with such treatment on or with respect to any income tax return, and (iii) not to claim any tax benefits available to an owner of the Equipment on or with respect to any income tax return.
(k) LESSEE ACKNOWLEDGES AND CONFIRMS THAT IT HAS NOT RECEIVED ANY TAX, FINANCIAL OR ACCOUNTING ADVICE FROM LESSOR OR SUPPLIER.

 

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

Lessor:                                                  Lessee:

**GE HFS, LLC**                                          **TULARE LOCAL HEALTH CARE DISTRICT**

By: _____                             By: _____

Name: _____Amy Levere_____                             Name: ___ALAN  GERMANY___

Title:    Duly Authorized Signatory                      Title: ___CFD | COD___

 

Legal Entity Type:  Municipality
Jurisdiction of Organization: California
Mailing Address and Chief Place of Business:
869 CHERRY STREET
TULARE, CA 93274



 GE Capital

Internal Contract Ref. # 9892489001
Internal Order Ref. # 4457314, 4457684

# EQUIPMENT SCHEDULE
## DATED AS OF 11/16/2016
## TO MASTER LEASE AGREEMENT
## DATED AS OF 11/16/2016

This Equipment Schedule (this "**Schedule**") between the undersigned Lessor ("**Lessor**") and the party(ies) executing this Schedule as Lessee ("**Lessee**") hereby incorporates by this reference all of the terms and conditions of the above-referenced Master Lease Agreement between GE HFS, LLC, a Delaware limited liability company ("**GEHFS**"), as lessor, and Lessee (as such agreement may have heretofore been amended, modified or supplemented, but without giving effect to any amendment, modification or supplement to such agreement hereafter entered into unless Lessor and Lessee agree otherwise, the "**Agreement**"; this Schedule (including all of the terms and conditions of the Agreement incorporated herein), together with all documents executed in connection with this Schedule being collectively referred to as this "**Lease**"). For purposes of this Lease, unless GEHFS is the undersigned Lessor, each reference in the Agreement to the term "Lessor" shall be deemed to refer to the undersigned Lessor as if such Lessor, and not GEHFS, had been specifically named therein as lessor. LESSOR SHALL HAVE ALL RIGHTS OF GEHFS UNDER THE AGREEMENT. LESSOR (INCLUDING ITS SUCCESSORS AND ASSIGNS) MAY APPOINT ANY AGENT (INCLUDING GEHFS) TO ACT ON ITS BEHALF. In the event of a conflict between the provisions of the Agreement and this Schedule, the provisions of this Schedule shall control. Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Agreement. This Schedule and Lease constitutes a separate instrument of lease.

1.  **EQUIPMENT:**  Subject to the terms and conditions of the Lease, Lessor agrees to lease to Lessee the Equipment described below (the "**Equipment**")

| Number Of Units | Site | Supplier/ Manufacturer | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|
| 1 | TULARE DISTRICT HOSPITAL 869 N CHERRY ST TULARE, CA 93274 | GE HEALTHCARE | Dash 5000 v6 and accessories Internal Order Ref. # 4457314 |
| 1 | TULARE DISTRICT HOSPITAL 869 N CHERRY ST TULARE, CA 93274 | GE HEALTHCARE | INW Networking 696 Internal Order Ref. # 4457684 |

2.  **TERMS AND RENTALS:**

A.  Term of Schedule: 60 months. The term of this Schedule will commence on the Lease Commencement Date as specified in the "Lease, Term and Rent Payments" section of the Agreement, subject to and in accordance with the terms and conditions of this Schedule. In the event that the Lease Commencement Date does not occur on or prior to 03/17/2017, Lessor may at any time thereafter, at its option, by written notice to Lessee, terminate this Schedule, after which termination this Schedule shall be of no further force or effect.

B.  Advance Rental: $627.00.  Lessor will apply the Advance Rental to Lessee's Monthly Rental under this Schedule for Month 1.

C.  Rental Payments: 60 month(s) at $627.00 (each, a "Monthly Rental"), plus all applicable taxes. All payments will be in advance. In states assessing upfront sales and use tax, the Monthly Rentals and any Interim Rent (as defined below) (collectively, "Rentals") will be adjusted to include the applicable sales and use tax amortized over the Term using a rate that preserves Lessor's economic yield for the transaction described in this Lease. Lessee's payment of Rentals to Lessor will be in accordance with the "Lease, Term and Rent Payments" section of the Agreement. The Rental payments reflect the Five (5) Year Swap Rate of 1.2% (the "Initial Swap Rate"), and a 360-day year consisting of twelve consecutive thirty-day months. Lessor reserves the right to adjust such payments on the Lease Commencement Date based

on the number of basis points that the Swap Rate[1] has changed from the Initial Swap Rate, or for other changes in market conditions as determined by Lessor in its sole discretion. In the event that any adjustment to the Rental payments is required to be made pursuant to this paragraph, Lessor may elect that no adjustment be made to the First Monthly Rental (as defined below) and/or any Interim Rent due hereunder, but rather that each Monthly Rental payment following the First Monthly Rental be adjusted to reflect the adjustment required to be made pursuant to this paragraph, as well as to reflect that no adjustment will be made to the First Monthly Rental and/or any Interim Rent. As used herein, "**First Monthly Rental**" shall mean the first Monthly Rental payment due under this Schedule which is greater than zero ($0) dollars.

[1] "**Swap Rate**" means the interest rate for swaps that most closely approximates the initial term of this Schedule as published on the date selected by Lessor, which date shall be no earlier than seven (7) business days immediately preceding the Lease Commencement Date, by the Federal Reserve Board in the Federal Reserve Statistical Release H.15 entitled "Selected Interest Rates" currently available online at http://www.federalreserve.gov/releases/h15/update/ or such other nationally recognized reporting source or publication as Lessor may specify.

3.  **ARTICLE 2A NOTICE:**  IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR

HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS REFERENCED IN SECTION 1 ABOVE (THE "SUPPLIER(S)"), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO THE LESSOR BY THE SUPPLIER, WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

**4.     STIPULATED LOSS TABLE:** The Stipulated Loss Value for any unit of Equipment shall be the Lessor's capitalized cost of such unit (as referenced in the Stipulated Loss Table to be delivered by Lessor to Lessee) multiplied by the appropriate percentage derived from a Stipulated Loss Table. In the event that the Lease is for any reason extended, then the last percentage figure shown in the Stipulated Loss Table shall control throughout any such extended term.

**5.     LESSEE CERTIFICATIONS:** Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

**6.     ADDITIONAL TERMS:** Modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: Form of Opinion Letter and Acceptance Certificate

**7.     EXECUTION; DELIVERY:** As used in this section, "**Document**" shall mean the Agreement, this Schedule and each document executed in connection herewith or therewith. Each Document will be created and evidenced as follows: (i) Lessor will deliver to Lessee an electronic or paper version of each Document; (ii) Lessee will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by Lessor in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Document and deliver the same to Lessor by overnight courier delivery, using a nationally-recognized courier service (or if instructed or expressly permitted by Lessor, by electronic delivery or facsimile); (iii) Lessor will sign (electronically, digitally or manually, at Lessor's option) each signature page so delivered by Lessee (if the Document requires Lessor's signature); and (iv) Lessor will attach each fully signed signature page to an electronic or printed paper copy of the applicable Document. Lessee hereby represents and warrants that it has not modified the Document sent to Lessee for signature. Upon Lessee's one-time request for a copy of any fully signed Document promptly after it has been produced by this process, Lessor will make the same available to Lessee by electronic or other means. Each Document produced by this process will be conclusively presumed to be identical to the version signed or initialed by Lessee, and Lessor may (at its option) retain only a copy of such Document and dispose of the version containing Lessee's manual signature. Lessor and Lessee intend that each Document produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by this process. Lessee agrees not to raise as a defense to the enforcement of any Document that Lessee executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document.

**8.     EQUIPMENT RETURN CERTIFICATE:** Upon the request of Lessor (or its agent), Lessee shall deliver to Lessor (or its agent) prior to the removal and return of the Equipment pursuant to the Agreement a certificate pursuant to which Lessee shall (i) certify that the Equipment has been cleaned to remove any hazardous substances and that the area around the Equipment has been made safe and accessible, and (ii) specify whether the Equipment has been in contact with any radioactivity, infectious or hazardous biological substances and/or any other hazardous chemicals (and if so, provide the related details of such contact), and whether the Equipment contains any liquid and/or gas (and if so, describing the same).

**9.     ADDITIONAL PROVISIONS:** The following provisions shall apply to this Schedule and Lease and to each Schedule hereafter entered into between Lessor and Lessee:

A.     Lessee shall comply with all laws, rules and regulations applicable to Lessee, including without limitation, the USA PATRIOT ACT and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

B.     Credit to Lessee's account may be delayed if (i) payment is not received at Lessor's payment address indicated in Lessor's invoice or other instructions from Lessor from time to time, or (ii) payment is received in any form other than direct debit, wires, company checks and certified checks. Delayed credit may cause Lessee to incur a late payment fee. All credit for payments is subject to final payment by the institution on which the item was drawn. Lessor may select the method and order by which payments and credits are allocated to Lessee's account. All written communication concerning disputed amounts must be mailed or delivered to Lessor at its address specified in the first paragraph of the Agreement or at such other address that Lessor shall specify.

C.     Lessee and each of Lessee's affiliates authorize Lessor to disclose information about Lessee and Lessee's affiliates that Lessor may at any time possess to (i) any party with a financial interest in the Lease, and (ii) any state or federal regulator with supervisory authority over Lessor.

D.     For purposes of this Schedule, as well as each Schedule previously entered into by Lessee with Lessor or any other Lessor Party (as defined below), the Section of the Agreement entitled "FILING" is hereby amended and restated in its entirety as follows: If this Agreement or any Schedule is deemed a security agreement, Lessee hereby grants to Lessor and the other Lessor Parties (as defined below) a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto, whether or not furnished by the Supplier, any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of all of the foregoing. This security interest secures the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor under this Schedule, the Lessor(s) under any other Schedule(s), any affiliate of any Lessor, and any successor or assignee of any of the foregoing (collectively, "**Lessor Parties**"), now existing or arising in the future under this Agreement and each Schedule, and any renewals, extensions and modifications hereof and thereof. Lessee hereby authorizes Lessor to file financing statements and amendments thereto describing the Equipment described in any and all Schedules at any time entered into and adding any other collateral described therein and containing any other information required by the applicable Uniform Commercial Code.

E.     To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who enters into a transaction with such financial institution. What this means for Lessee: When a transaction contemplated under the Agreement is consummated, Lessor may ask for Lessee's name, address, and other information that will allow Lessor to identify Lessee. Lessor may also ask to see identifying documents.

Lessor:                                    Lessee:

GE HFS, LLC                                TULARE LOCAL HEALTH CARE DISTRICT

By: _Amy Levene_ (signature)              By: _Sherrie Bell_ (signature)
Name: Amy Levene                          Name: Sherrie Bell
Title: Duly Authorized Signatory          Title: Pres/Chair

 GE Capital

Internal Contract Ref. # 9892228001
Internal Order Ref. # 4456556

## EQUIPMENT SCHEDULE
### DATED AS OF 11/16/2016
### TO MASTER LEASE AGREEMENT
### DATED AS OF 11/16/2016

This Equipment Schedule (this "**Schedule**") between the undersigned Lessor ("**Lessor**") and the party(ies) executing this Schedule as Lessee ("**Lessee**") hereby incorporates by this reference all of the terms and conditions of the above-referenced Master Lease Agreement between GE HFS, LLC, a Delaware limited liability company ("**GEHFS**"), as lessor, and Lessee (as such agreement may have heretofore been amended, modified or supplemented, but without giving effect to any amendment, modification or supplement to such agreement hereafter entered into unless Lessor and Lessee agree otherwise, the "**Agreement**"; this Schedule (including all of the terms and conditions of the Agreement incorporated herein), together with all documents executed in connection with this Schedule being collectively referred to as this "**Lease**"). For purposes of this Lease, unless GEHFS is the undersigned Lessor, each reference in the Agreement to the term "Lessor" shall be deemed to refer to the undersigned Lessor as if such Lessor, and not GEHFS, had been specifically named therein as lessor. LESSOR SHALL HAVE ALL RIGHTS OF GEHFS UNDER THE AGREEMENT. LESSOR (INCLUDING ITS SUCCESSORS AND ASSIGNS) MAY APPOINT ANY AGENT (INCLUDING GEHFS) TO ACT ON ITS BEHALF. In the event of a conflict between the provisions of the Agreement and this Schedule, the provisions of this Schedule shall control. Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Agreement. This Schedule and Lease constitutes a separate instrument of lease.

1.    **EQUIPMENT:**  Subject to the terms and conditions of the Lease, Lessor agrees to lease to Lessee the Equipment described below (the "**Equipment**")

| Number Of Units | Site | Supplier/ Manufacturer | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|
| 1 | TULARE DISTRICT HOSPITAL 869 N CHERRY ST TULARE, CA 93274 | GE HEALTHCARE | Maclab IT 696R2 system and accessories Internal Order Ref. # 4456556 |

2.    **TERMS AND RENTALS:**

A.    Term of Schedule: **60** months. The term of this Schedule will commence on the Lease Commencement Date as specified in the "Lease, Term and Rent Payments" section of the Agreement, subject to and in accordance with the terms and conditions of this Schedule. In the event that the Lease Commencement Date does not occur on or prior to **03/17/2017**, Lessor may at any time thereafter, at its option, by written notice to Lessee, terminate this Schedule, after which termination this Schedule shall be of no further force or effect.

B.    Advance Rental: **$3,325.00**. Lessor will apply the Advance Rental to Lessee's Monthly Rental under this Schedule for Month 1.

C.    Rental Payments: **60 month(s) at $3,325.00** (each, a "Monthly Rental"), plus all applicable taxes. All payments will be in advance, unless we assess upfront sales and use tax, the Monthly Rentals and any Interim Rent (as defined below) (collectively, "**Rentals**") will be adjusted to include the applicable sales and use tax amortized over the Term using a rate that preserves Lessor's economic yield for the transaction described in this Lease. Lessee's payment of Rentals to Lessor will be in accordance with the "Lease, Term and Rent Payments" section of the Agreement. The Rental payments reflect the Five (5) Year Swap Rate of **1.2%** (the "**Initial Swap Rate**"), and a 360-day year consisting of twelve consecutive thirty-day months. Lessor reserves the right to adjust such payments on the Lease Commencement Date based on the number of basis points that the Swap Rate[1] has changed from the Initial Swap Rate, or for other changes in market conditions as determined by Lessor in its sole discretion. In the event that any adjustment to the Rental payments is required to be made pursuant to this paragraph, Lessor may elect that no adjustment be made to the First Monthly Rental (as defined below) and/or any Interim Rent due hereunder, but rather that each Monthly Rental payment following the First Monthly Rental be adjusted to reflect the adjustment required to be made pursuant to this paragraph, as well as to reflect that no adjustment will be made to the First Monthly Rental and/or any Interim Rent. As used herein, "**First Monthly Rental**" shall mean the first Monthly Rental payment due under this Schedule which is greater than zero ($0) dollars.

[1] "**Swap Rate**" means the interest rate for swaps that most closely approximates the initial term of this Schedule as published on the date selected by Lessor, which date shall be no earlier than seven (7) business days immediately preceding the Lease Commencement Date, by the Federal Reserve Board in the Federal Reserve Statistical Release H.15 entitled "Selected Interest Rates" currently available online at http://www.federalreserve.gov/releases/h15/update/ or such other nationally recognized reporting source or publication as Lessor may specify.

D.    Payment Date; Interim Rent: Monthly Rental payments shall be due in advance beginning on the 1st or 15th of a calendar month (a "**Payment Date**"), whichever of such dates is the first to occur following the Lease Commencement Date, and on the same day of each consecutive month thereafter. If the Lease Commencement Date is not a Payment Date, the Initial Term shall be extended by the number of days between the Lease Commencement Date and the next Payment Date which occurs after the Lease Commencement Date (such period, the "**Interim Rent Period**"). Lessee shall pay interim rent for the Interim Rent Period (the "**Interim Rent**") on the payment date for the First Monthly Rental payment, in an amount equal to (i) the number of days in the Interim Rent Period, times (ii) one Monthly Rental divided by 30.

3.    **ARTICLE 2A NOTICE:**  IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS REFERENCED IN SECTION 1

ABOVE (THE "SUPPLIER(S)"), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO THE LESSOR BY THE SUPPLIER, WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

**4.    STIPULATED LOSS TABLE:** The Stipulated Loss Value for any unit of Equipment shall be the Lessor's capitalized cost of such unit (as referenced in the Stipulated Loss Table to be delivered by Lessor to Lessee) multiplied by the appropriate percentage derived from a Stipulated Loss Table. In the event that the Lease is for any reason extended, then the last percentage figure shown in the Stipulated Loss Table shall control throughout any such extended term.

**5.    LESSEE CERTIFICATIONS:** Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof and (iii) Lessee has reviewed and approves the purchase documents for the Equipment, if any.

**6.    ADDITIONAL TERMS:** Modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: Form of Opinion Letter and Acceptance Certificate

**7.    EXECUTION; DELIVERY:** As used in this section, "Document" shall mean the Agreement, this Schedule and each document executed in connection herewith or therewith. Each Document will be created and evidenced as follows: (i) Lessor will deliver to Lessee an electronic or paper version of each Document; (ii) Lessee will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by Lessor in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Document and deliver the same to Lessor by overnight courier delivery, using a nationally-recognized courier service (or if instructed or expressly permitted by Lessor, by electronic delivery or facsimile); (iii) Lessor will sign (electronically, digitally or manually, at Lessor's option) each signature page so delivered by Lessee (if the Document requires Lessor's signature); and (iv) Lessor will attach each fully signed signature page to an electronic or printed paper copy of the applicable Document. Lessee hereby represents and warrants that it has not modified the Document sent to Lessee for signature. Upon Lessee's one-time request for a copy of any fully signed Document promptly after it has been produced by this process, Lessor will make the same available to Lessee by electronic or other means. Each Document produced by this process will be conclusively presumed to be identical to the version signed or initialed by Lessee, and Lessor may (at its option) retain only a copy of such Document and dispose of the version containing Lessee's manual signature. Lessor and Lessee intend that each Document produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by this process. Lessee agrees not to raise as a defense to the enforcement of any Document that Lessee executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document.

**8.    EQUIPMENT RETURN CERTIFICATE:** Upon the request of Lessor (or its agent), Lessee shall deliver to Lessor (or its agent) prior to the removal and return of the Equipment pursuant to the Agreement a certificate pursuant to which Lessee shall (i) certify that the Equipment

has been cleaned to remove any hazardous substances and that the area around the Equipment has been made safe and accessible, and (ii) specify whether the Equipment has been in contact with any radioactivity, infectious or hazardous biological substances and/or any other hazardous chemicals (and if so, provide the related details of such contact), and whether the Equipment contains any liquid and/or gas (and if so, describing the same).

**9.    ADDITIONAL PROVISIONS:** The following provisions shall apply to this Schedule and Lease and to each Schedule hereafter entered into between Lessor and Lessee:

A.    Lessee shall comply with all laws, rules and regulations applicable to Lessee, including without limitation, the USA PATRIOT ACT and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

B.    Credit to Lessee's account may be delayed if (i) payment is not received at Lessor's payment address indicated in Lessor's invoice or other instructions from Lessor from time to time, or (ii) payment is received in any form other than direct debit, wires, company checks and certified checks. Delayed credit may cause Lessee to incur a late payment fee. All credit for payments is subject to final payment by the institution on which the item was drawn. Lessor may select the method and order by which payments and credits are allocated to Lessee's account. All written communication concerning disputed amounts must be mailed or delivered to Lessor at its address specified in the first paragraph of the Agreement or at such other address that Lessor shall specify.

C.    Lessee and each of Lessee's affiliates authorize Lessor to disclose information about Lessee and Lessee's affiliates that Lessor may at any time possess to (i) any party with a financial interest in the Lease, and (ii) any state or federal regulator with supervisory authority over Lessor.

D.    For purposes of this Schedule, as well as each Schedule previously entered into by Lessee with Lessor or any other Lessor Party (as defined below), the Section of the Agreement entitled **"FILING"** is hereby amended and restated in its entirety as follows: If this Agreement or any Schedule is deemed a security agreement, Lessee hereby grants to Lessor and the other Lessor Parties (as defined below) a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto, whether or not furnished by the Supplier, any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of all of the foregoing. This security interest secures the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor under this Schedule, the Lessor(s) under any other Schedule(s), any affiliate of any Lessor, and any successor or assignee of any of the foregoing (collectively, **"Lessor Parties"**), now existing or arising in the future under this Agreement and each Schedule, and any renewals, extensions and modifications hereof and thereof. Lessee hereby authorizes Lessor to file financing statements and amendments thereto describing the Equipment described in any and all Schedules at any time entered into and adding any other collateral described therein and containing any other information required by the applicable Uniform Commercial Code.

E.    **To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who enters into a transaction with such financial institution. What this means for Lessee: When a transaction contemplated under the Agreement is consummated, Lessor may ask for Lessee's name, address, and other information that will allow Lessor to identify Lessee. Lessor may also ask to see identifying documents.**

Lessor:                                        Lessee:

GE HFS, LLC                                    TULARE LOCAL HEALTH CARE DISTRICT

By: _Amy Levene_                               By: _Sherrie Bell_
Name: Amy Levene                               Name: Sherrie Bell
Title: Duly Authorized Signatory               Title: Pres/Chairman

 GE Capital

Internal Contract Ref. # 9892587001
Internal Order Ref. # SEE EXHIBIT A
ATTACHED HERETO AND
MADE A PART HEREOF

## EQUIPMENT SCHEDULE
### DATED AS OF 11/18/2016
### TO MASTER LEASE AGREEMENT
### DATED AS OF 11/16/2016

This Equipment Schedule (this "Schedule") between the undersigned Lessor ("Lessor") and the party(ies) executing this Schedule as Lessee ("Lessee") hereby incorporates by this reference all of the terms and conditions of the above-referenced Master Lease Agreement between GE HFS, LLC, a Delaware limited liability company ("GEHFS"), as lessor, and Lessee (as such agreement may have heretofore been amended, modified or supplemented, but without giving effect to any amendment, modification or supplement to such agreement hereafter entered into unless Lessor and Lessee agree otherwise, the "Agreement"; this Schedule (including all of the terms and conditions of the Agreement incorporated herein), together with all documents executed in connection with this Schedule being collectively referred to as this "Lease"). For purposes of this Lease, unless GEHFS is the undersigned Lessor, each reference in the Agreement to the term "Lessor" shall be deemed to refer to the undersigned Lessor as if such Lessor, and not GEHFS, had been specifically named therein as lessor. LESSOR SHALL HAVE ALL RIGHTS OF GEHFS UNDER THE AGREEMENT. Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Agreement. This Schedule and Lease constitutes a separate instrument of lease.

**1. EQUIPMENT:** Subject to the terms and conditions of the Lease, Lessor agrees to lease to Lessee the Equipment described below (the "Equipment")

| Number Of Units | Site | Supplier/ Manufacturer | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|
| SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF |

**2. TERMS AND RENTALS:**

A. <u>Term of Schedule</u>: <u>60</u> months. The term of this Schedule will commence on the Lease Commencement Date as specified in the "Lease, Term and Rent Payments" section of the Agreement, subject to and in accordance with the terms and conditions of this Schedule. In the event that the Lease Commencement Date does not occur on or prior to 03/17/2017, Lessor may at any time thereafter, at its option, by written notice to Lessee, terminate this Schedule, after which termination this Schedule shall be of no further force or effect.

B. <u>Advance Rental</u>: <u>$2,734.00</u>. Lessor will apply the Advance Rental to Lessee's Monthly Rental under this Schedule for Month 1.

C. <u>Rental Payments</u>: <u>60 month(s)</u> at <u>$2,734.00</u> (each, a "Monthly Rental"), plus all applicable taxes. All payments will be in advance. In states assessing upfront sales and use tax, the Monthly Rentals and any Interim Rent (as defined below) (collectively, "Rentals") will be adjusted to include the applicable sales and use tax amortized over the Term using a rate that preserves Lessor's economic yield for the transaction described in this Lease. Lessee's payment of Rentals to Lessor will be in accordance with the "Lease, Term and Rent Payments" section of the Agreement. The Rental payments reflect the **Five (5) Year Swap Rate** of <u>1.2%</u> (the "**Initial Swap Rate**"), and a 360-day year consisting of twelve consecutive thirty-day months. Lessor reserves the right to adjust such payments on the Lease Commencement Date based on the number of basis points that the Swap Rate[(l)] has changed from the Initial Swap Rate, or for other changes in market conditions as determined by Lessor in its sole discretion. In the event that any adjustment to the Rental payments is required to be made pursuant to this paragraph, Lessor may elect that no adjustment be made to the First

Monthly Rental (as defined below) and/or any Interim Rent due hereunder, but rather that each Monthly Rental payment following the First Monthly Rental be adjusted to reflect the adjustment required to be made pursuant to this paragraph, as well as to reflect that no adjustment will be made to the First Monthly Rental and/or any Interim Rent. As used herein, "**First Monthly Rental**" shall mean the first Monthly Rental payment due under this Schedule which is greater than zero ($0) dollars.

[(l)] "Swap Rate" means the interest rate for swaps that most closely approximates the initial term of this Schedule as published on the date selected by Lessor, which date shall be no earlier than seven (7) business days immediately preceding the Lease Commencement Date, by the Federal Reserve Board in the Federal Reserve Statistical Release H.15 entitled "Selected Interest Rates" currently available online at http://www.federalreserve.gov/releases/h15/update/ or such other nationally recognized reporting source or publication as Lessor may specify.

**3. ARTICLE 2A NOTICE:** IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS REFERENCED IN SECTION 1 ABOVE (THE "**SUPPLIER(S)**"), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO THE LESSOR BY THE SUPPLIER, WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE

AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

4.      **STIPULATED LOSS TABLE:** The Stipulated Loss Value for any unit of Equipment shall be the Lessor's capitalized cost of such unit (as referenced in the Stipulated Loss Table to be delivered by Lessor to Lessee) multiplied by the appropriate percentage derived from a Stipulated Loss Table. In the event that the Lease is for any reason extended, then the last percentage figure shown in the Stipulated Loss Table shall control throughout any such extended term.

5.      **LESSEE CERTIFICATIONS:** Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

6.      **ADDITIONAL TERMS:** Modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: Form of Opinion Letter, Exhibit A, Purchase Order Assignment, Acceptance Certificate and Appropriation Clause

7.      **EXECUTION; DELIVERY:** As used in this section, "Document" shall mean the Agreement, this Schedule and each document executed in connection herewith or therewith. Each Document will be created and evidenced as follows: (i) Lessor will deliver to Lessee an electronic or paper version of each Document; (ii) Lessee will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by Lessor in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Document and deliver the same to Lessor by overnight courier delivery, using a nationally-recognized courier service (or if instructed or expressly permitted by Lessor, by electronic delivery or facsimile); (iii) Lessor will sign (electronically, digitally or manually, at Lessor's option) each signature page so delivered by Lessee (if the Document requires Lessor's signature); and (iv) Lessor will attach each fully signed signature page to an electronic or printed paper copy of the applicable Document. Lessee hereby represents and warrants that it has not modified the Document sent to Lessee for signature. Upon Lessee's one-time request for a copy of any fully signed Document promptly after it has been produced by this process, Lessor will make the same available to Lessee by electronic or other means. Each Document produced by this process will be conclusively presumed to be identical to the version signed or initialed by Lessee, and Lessor may (at its option) retain only a copy of such Document and dispose of the version containing Lessee's manual signature. Lessor and Lessee intend that each Document produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by this process. Lessee agrees not to raise as a defense to the enforcement of any Document that Lessee executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document.

8.      **EQUIPMENT RETURN CERTIFICATE:** Upon the request of Lessor (or its agent), Lessee shall deliver to Lessor (or its agent) prior to the removal and return of the Equipment pursuant to the Agreement a certificate pursuant to which Lessee shall (i) certify that the Equipment has been cleaned to remove any hazardous substances and that the area around the Equipment has been made safe and accessible, and (ii) specify whether the Equipment has been in contact with any radioactivity, infectious or hazardous biological substances and/or any other hazardous chemicals (and if so, provide the related details of such

contact), and whether the Equipment contains any liquid and/or gas (and if so, describing the same).

9.      **ADDITIONAL PROVISIONS:** The following provisions shall apply to this Schedule and Lease and to each Schedule hereafter entered into between Lessor and Lessee:

A.      Lessee shall comply with all laws, rules and regulations applicable to Lessee, including without limitation, the USA PATRIOT ACT and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

B.      Credit to Lessee's account may be delayed if (i) payment is not received at Lessor's payment address indicated in Lessor's invoice or other instructions from Lessor from time to time, or (ii) payment is received in any form other than direct debit, wires, company checks and certified checks. Delayed credit may cause Lessee to incur a late payment fee. All credit for payments is subject to final payment by the institution on which the item was drawn. Lessor may select the method and order by which payments and credits are allocated to Lessee's account. All written communication concerning disputed amounts must be mailed or delivered to Lessor at its address specified in the first paragraph of the Agreement or at such other address that Lessor shall specify.

C.      Lessee and each of Lessee's affiliates authorize Lessor to disclose information about Lessee and Lessee's affiliates that Lessor may at any time possess to (i) any party with a financial interest in the Lease, and (ii) any state or federal regulator with supervisory authority over Lessor.

D.      For purposes of this Schedule, as well as each Schedule previously entered into by Lessee with Lessor or any other Lessor Party (as defined below), the Section of the Agreement entitled "FILING" is hereby amended and restated in its entirety as follows: If this Agreement or any Schedule is deemed a security agreement, Lessee hereby grants to Lessor and the other Lessor Parties (as defined below) a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto, whether or not furnished by the Supplier, any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of all of the foregoing. This security interest secures the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor under this Schedule, the Lessor(s) under any other Schedule(s), any affiliate of any Lessor, and any successor or assignee of any of the foregoing (collectively, "Lessor Parties"), now existing or arising in the future under this Agreement and each Schedule, and any renewals, extensions and modifications hereof and thereof. Lessee hereby authorizes Lessor to file financing statements and amendments thereto describing the Equipment described in any and all Schedules at any time entered into and adding any other collateral described therein and containing any other information required by the applicable Uniform Commercial Code.

E.      To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who enters into a transaction with such financial institution. What this means for Lessee: When a transaction contemplated under the Agreement is consummated, Lessor may ask for Lessee's name, address, and other information that will allow Lessor to identify Lessee. Lessor may also ask to see identifying documents.

Lessor:

GE HFS, LLC

By: _____

Name: _____Amy Levene_____

Title: __Duly Authorized Signatory__

Lessee:

TULARE LOCAL HEALTH CARE DISTRICT

By: _____

Name: _____

Title: _____

 GE Capital

Internal Contract Ref. # 9892587001
Internal Order Ref. # SEE EXHIBIT A
                 ATTACHED HERETO AND
                 MADE A PART HEREOF

## EXHIBIT A TO EQUIPMENT SCHEDULE
## DATED AS OF 11/18/2016

| Number Of Units | Site | Supplier/ Manufacturer | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|
| 1 | TULARE LOCAL HEALTH CARE DISTRICT 869 N CHERRY ST TULARE, CA 93274 | ACIST Medical Systems Inc. | Misc Equipment |
| 2 | TULARE LOCAL HEALTH CARE DISTRICT 869 N CHERRY ST TULARE, CA 93274 | Arrow Interventional Inc. | AutoCAT 2 Wave system and accessories |
| 4 | TULARE LOCAL HEALTH CARE DISTRICT 869 N CHERRY ST TULARE, CA 93274 | CVIS | RVASF Greenlite Aprons (3) female (1) male |
| 1 | TULARE LOCAL HEALTH CARE DISTRICT 869 N CHERRY ST TULARE, CA 93274 | Accriva Diagnostics | Activated Clotting Time Analyzer |

Initials _____

 GE Capital

Internal Contract Ref. # 9899485001
Internal Order Ref. #

# EQUIPMENT SCHEDULE
## DATED AS OF 01/03/2017
## TO MASTER LEASE AGREEMENT
## DATED AS OF 11/16/2016

This Equipment Schedule (this "**Schedule**") between the undersigned Lessor ("**Lessor**") and the party(ies) executing this Schedule as Lessee ("**Lessee**") hereby incorporates by this reference all of the terms and conditions of the above-referenced Master Lease Agreement between GE HFS, LLC, a Delaware limited liability company ("**GEHFS**"), as lessor, and Lessee (as such agreement may have heretofore been amended, modified or supplemented, but without giving effect to any amendment, modification or supplement to such agreement hereafter entered into unless Lessor and Lessee agree otherwise, the "**Agreement**"); this Schedule (including all of the terms and conditions of the Agreement incorporated herein), together with all documents executed in connection with this Schedule being collectively referred to as this "**Lease**"). For purposes of this Lease, unless GEHFS is the undersigned Lessor, each reference in the Agreement to the term "Lessor" shall be deemed to refer to the undersigned Lessor as if such Lessor, and not GEHFS, had been specifically named therein as lessor. LESSOR SHALL HAVE ALL RIGHTS OF GEHFS UNDER THE AGREEMENT. LESSOR (INCLUDING ITS SUCCESSORS AND ASSIGNS) MAY APPOINT ANY AGENT (INCLUDING GEHFS) TO ACT ON ITS BEHALF. In the event of a conflict between the provisions of the Agreement and this Schedule, the provisions of this Schedule shall control. Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Agreement. This Schedule and Lease constitutes a separate instrument of lease.

1.    **EQUIPMENT:** Subject to the terms and conditions of the Lease, Lessor agrees to lease to Lessee the Equipment described below (the "**Equipment**")

| Number Of Units | Site | Supplier/ Manufacturer | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|
| 1 | TULARE REGIONAL MED CTR 869 CHERRY ST. TULARE, CA 93274 | Leica | Leica M822 F40 Ultimate Red Reflex Ophthalmic Surgical Microscope |

2.    **TERMS AND RENTALS:**

   A.    <u>Term of Schedule</u>: <u>60</u> months. The term of this Schedule will commence on the Lease Commencement Date as specified in the "Lease, Term and Rent Payments" section of the Agreement, subject to and in accordance with the terms and conditions of this Schedule. In the event that the Lease Commencement Date does not occur on or prior to <u>03/17/2017</u>, Lessor may at any time thereafter, at its option, by written notice to Lessee, terminate this Schedule, after which termination this Schedule shall be of no further force or effect.

   B.    <u>Advance Rental</u>: **$2,286.00**. Lessor will apply the Advance Rental to Lessee's Monthly Rental under this Schedule for Month 1.

   C.    <u>Rental Payments</u>: **60 month(s) at $2,286.00** (each, a "Monthly Rental"), plus all applicable taxes. All payments will be in advance. In states assessing upfront sales and use tax, the Monthly Rentals and any Interim Rent (as defined below) (collectively, "**Rentals**") will be adjusted to include the applicable sales and use tax amortized over the Term using a rate that preserves Lessor's economic yield for the transaction described in this Lease. Lessee's payment of Rentals to Lessor will be in accordance with the "Lease, Term and Rent Payments" section of the Agreement. The Rental payments reflect the **Five (5) Year Swap Rate** of <u>1.2%</u> (the "**Initial Swap Rate**"), and a 360-day year consisting of twelve consecutive thirty-day months. Lessor reserves the right to adjust such payments on the Lease Commencement Date based on the number of basis points that the Swap Rate[(1)] has changed from the Initial Swap Rate, or for other changes in market conditions as determined by Lessor in its sole discretion. In the event that any adjustment to the Rental payments is required to be made pursuant to this paragraph, Lessor may elect that no adjustment be made to the First Monthly Rental (as defined below) and/or any Interim Rent due hereunder, but rather that each Monthly Rental payment following the First Monthly Rental be adjusted to reflect the adjustment required to be

made pursuant to this paragraph, as well as to reflect that no adjustment will be made to the First Monthly Rental and/or any Interim Rent. As used herein, "**First Monthly Rental**" shall mean the first Monthly Rental payment due under this Schedule which is greater than zero ($0) dollars.

[(1)] "**Swap Rate**" means the interest rate for swaps that most closely approximates the initial term of this Schedule as published on the date selected by Lessor, which date shall be no earlier than seven (7) business days immediately preceding the Lease Commencement Date, by the Federal Reserve Board in the Federal Reserve Statistical Release H.15 entitled "Selected Interest Rates" currently available online at http://www.federalreserve.gov/releases/h15/update/ or such other nationally recognized reporting source or publication as Lessor may specify.

   D.    <u>Payment Date; Interim Rent</u>: Monthly Rental payments shall be due in advance beginning on the 1st or 15th of a calendar month (a "**Payment Date**"), whichever of such dates is the first to occur following the Lease Commencement Date, and on the same day of each consecutive month thereafter. If the Lease Commencement Date is not a Payment Date, the initial Term shall be extended by the number of days between the Lease Commencement Date and the next Payment Date which occurs after the Lease Commencement Date (such period, the "**Interim Rent Period**"). Lessee shall pay interim rent for the Interim Rent Period (the "**Interim Rent**") on the payment date for the First Monthly Rental payment, in an amount equal to (i) the number of days in the Interim Rent Period, times (ii) one Monthly Rental divided by 30.

3.    **ARTICLE 2A NOTICE:** IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS REFERENCED IN SECTION 1

ABOVE (THE "SUPPLIER(S)"), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO THE LESSOR BY THE SUPPLIER, WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

**4.    STIPULATED LOSS TABLE:**  The Stipulated Loss Value for any unit of Equipment shall be the Lessor's capitalized cost of such unit (as referenced in the Stipulated Loss Table to be delivered by Lessor to Lessee) multiplied by the appropriate percentage derived from a Stipulated Loss Table.  In the event that the Lease is for any reason extended, then the last percentage figure shown in the Stipulated Loss Table shall control throughout any such extended term.

**5.    LESSEE CERTIFICATIONS:  Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.**

**6.    ADDITIONAL TERMS:**  Modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: Acceptance Certificate, Purchase Order Assignment and Appropriation Clause

**7.    EXECUTION; DELIVERY:**  As used in this section, **"Document"** shall mean the Agreement, this Schedule and each document executed in connection herewith or therewith.  Each Document will be created and evidenced as follows: (i) Lessor will deliver to Lessee an electronic or paper version of each Document; (ii) Lessee will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by Lessor in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Document and deliver the same to Lessor by overnight courier delivery, using a nationally-recognized courier service (or if instructed or expressly permitted by Lessor, by electronic delivery or facsimile); (iii) Lessor will sign (electronically, digitally or manually, at Lessor's option) each signature page so delivered by Lessee (if the Document requires Lessor's signature); and (iv) Lessor will attach each fully signed signature page to an electronic or printed paper copy of the applicable Document. Lessee hereby represents and warrants that it has not modified the Document sent to Lessee for signature. Upon Lessee's one-time request for a copy of any fully signed Document promptly after it has been produced by this process, Lessor will make the same available to Lessee by electronic or other means. Each Document produced by this process will be conclusively presumed to be identical to the version signed or initialed by Lessee, and Lessor may (at its option) retain only a copy of such Document and dispose of the version containing Lessee's manual signature. Lessor and Lessee intend that each Document produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by this process. Lessee agrees not to raise as a defense to the enforcement of any Document that Lessee executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document.

**8.    EQUIPMENT RETURN CERTIFICATE:**  Upon the request of Lessor (or its agent), Lessee shall deliver to Lessor (or its agent) prior to the removal and return of the Equipment pursuant to the Agreement a

certificate pursuant to which Lessee shall (i) certify that the Equipment has been cleaned to remove any hazardous substances and that the area around the Equipment has been made safe and accessible, and (ii) specify whether the Equipment has been in contact with any radioactivity, infectious or hazardous biological substances and/or any other hazardous chemicals (and if so, provide the related details of such contact), and whether the Equipment contains any liquid and/or gas (and if so, describing the same).

**9.    ADDITIONAL PROVISIONS:**  The following provisions shall apply to this Schedule and Lease and to each Schedule hereafter entered into between Lessor and Lessee:

A.    Lessee shall comply with all laws, rules and regulations applicable to Lessee, including without limitation, the USA PATRIOT ACT and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

B.    Credit to Lessee's account may be delayed if (i) payment is not received at Lessor's payment address indicated in Lessor's invoice or other instructions from Lessor from time to time, or (ii) payment is received in any form other than direct debit, wires, company checks and certified checks.  Delayed credit may cause Lessee to incur a late payment fee.  All credit for payments is subject to final payment by the institution on which the item was drawn. Lessor may select the method and order by which payments and credits are allocated to Lessee's account. All written communication concerning disputed amounts must be mailed or delivered to Lessor at its address specified in the first paragraph of the Agreement or at such other address that Lessor shall specify.

C.    Lessee and each of Lessee's affiliates authorize Lessor to disclose information about Lessee and Lessee's affiliates that Lessor may at any time possess to (i) any party with a financial interest in the Lease, and (ii) any state or federal regulator with supervisory authority over Lessor.

D.    For purposes of this Schedule, as well as each Schedule previously entered into by Lessee with Lessor or any other Lessor Party (as defined below), the Section of the Agreement entitled **"FILING"** is hereby amended and restated in its entirety as follows: If this Agreement or any Schedule is deemed a security agreement, Lessee hereby grants to Lessor and the other Lessor Parties (as defined below) a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto, whether or not furnished by the Supplier, any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of all of the foregoing.  This security interest secures the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor under this Schedule, the Lessor(s) under any other Schedule(s), any affiliate of any Lessor, and any successor or assignee of any of the foregoing (collectively, **"Lessor Parties"**), now existing or arising in the future under this Agreement and each Schedule, and any renewals, extensions and modifications hereof and thereof.  Lessee hereby authorizes Lessor to file financing statements and amendments thereto describing the Equipment described in any and all Schedules at any time entered into and adding any other collateral described therein and containing any other information required by the applicable Uniform Commercial Code.

**E.    To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who enters into a transaction with such financial institution. What this means for Lessee: When a transaction contemplated under the Agreement is consummated, Lessor may ask for Lessee's name, address, and other information that will allow Lessor to identify Lessee. Lessor may also ask to see identifying documents.**

Lessor:                                    Lessee:

**GE HFS, LLC**                            **TULARE LOCAL HEALTH CARE DISTRICT**

By: _____             By: _____

Name: Amy Levene                          Name: ALAN GERMANY

Title: Duly Authorized Signatory          Title: CFO | COO