WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Kathleen D. DeVaney #156444
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Chapter 9 Counsel for Tulare Local Healthcare District

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>        Debtor.<br><br>Tax ID #:   94-6002897<br>Address:   869 N. Cherry Street<br>           Tulare, CA 93274 | CASE NO. 17-13797<br><br>DC No.: LPP-1<br><br>Chapter 9<br><br>**RESPONSE OF TULARE LOCAL HEALTHCARE DISTRICT TO MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND AMENDED PROOF OF CLAIM**<br><br>Date:     January 17, 2019<br>Time:     9:30 a.m.<br>Place:    2500 Tulare Street<br>          Fresno, CA 93721<br>          Courtroom 13<br>Judge:   Honorable René Lastreto II |

Debtor Tulare Local Healthcare District (the "District" or "Debtor") respectfully submits this response ("Response") to the "Motion for Payment of Administrative Expenses and Amended Proof of Claim 188" ("Motion") filed by creditor Owens & Minor, Inc. ("O&M") which seeks an order of this Court for payment and allowance of O&M's asserted administrative claims, as well as allowance of an unsecured claim in the total amount of approximately $15,500. O&M's Motion should be denied for the reasons set

1  forth below.

2  **I.     SUMMARY OF ARGUMENT**

3       O&M requests an order: (a) for payment and allowance of an administrative

4  expense claim of $11,467.03 for goods allegedly delivered in the 20 days immediately

5  prior to the petition date under Section 503(b)(9) of the Bankruptcy Code (the "Code");

6  (b) allowance and payment of a redemption claim as an administrative claim in the

7  amount of $1,867.91 under Code § 503(b)(1); and (c) allowance of an unsecured claim

8  in the amount of $2,135.86. *See*, Motion at p. 2, lns. 16-22 and p. 5, lns. 2-7.  Although it

9  is not clear from the Motion itself, however, based on the title of the Motion O&M

10  presumably seeks an order directing the District to pay its alleged claim under Section

11  503(b)(9). O&M's Motion should be denied and any adjudication on the allowance of its

12  claims should be deferred because: (1) O&M's Motion seeking adjudication of the merits

13  and the allowance of its claim is premature, and Code § 904 provides that a court may

14  not issue any order interfering with a chapter 9 debtor's revenues, property, or the use or

15  enjoyment of any income-producing property unless the chapter 9 debtor consents or the

16  plan so provides; (2) there are no necessary costs and expenses of preserving the

17  estate under Code § 503(b)(1)(a) in a chapter 9 case; and (3) even if the Court chooses

18  to adjudicate the merits of O&M's claims, O&M has failed to meet its evidentiary burden

19  to establish its claims as administrative expenses for the reasons set forth herein and the

20  separate Evidentiary Objections to the Declaration of Matthew A. Lesnick filed with this

21  Response.

22  **II.     BRIEF STATEMENT OF FACTS**

23       The District filed its emergency petition under chapter 9 on September 30, 2017

24  ("Petition Date") because: (1) its former manager, Health Care Conglomerate Associates

25  ("HCCA"), threatened to cease operations at the hospital known as the Tulare Regional

26  Medical Center ("TRMC") and other medical facilities which would have created a health

27  and safety emergency for patients and the public seeking medical care; and (2) the

28  District first learned it was insolvent on September 28, 2017 when HCCA advised the

Response of Tulare Local Healthcare District to Motion for     -2-
Payment of Administrative Expenses and Amended Proof of
Claim                                        00203547-gaa-01.02.2019

1  District that it had a critical liquidity crisis, it was completely out of cash, and it could not

2  fund the entire gross payroll.[1] In light of the District's dire financial crisis and HCCA's

3  threats to cease operations, the District was forced to voluntary cease operations on or

4  about October 29, 2017 in order to avoid a forced shut down by the California

5  Department of Public Health.

6          In October 2018, just over two months ago, the District reopened TRMC after a

7  nearly year-long closure during which the District made diligent efforts to obtain funding

8  and reach an agreement with a well-established local partner dedicated to providing

9  quality medical services to the District's residents.  The District reached an agreement

10  with Adventist Health which allowed it to reopen certain emergency medical services at

11  TRMC in October 2018, and the District anticipates that it will enter into a long-term

12  lease with Adventist Health in the first quarter of 2019 after obtaining a change of

13  ownership approval from the California Department of Public Health which will then allow

14  TRMC to provide a full range of medical services, including obstetrics, pediatrics,

15  neonatal intensive care and elective surgery.  At that point, the District believes that it will

16  have the necessary pieces in place to better understand the resources the District will

17  have that may be available to pay claims under a plan of adjustment.

18          O&M asserts that it should be allowed an administrative claim of $11,467.03 for

19  goods allegedly provided after and during the 20 days prior to the Petition Date.

20  However, O&M has failed to present any admissible evidence to: (a) identify or even

21  describe the goods provided, (b) demonstrate how any such goods were reasonable and

22  necessary to the District's operations or to preserve the District's assets, and (c)

23  establish the date(s) on which such goods were allegedly received by the District.  O&M

24  seeks an additional administrative claim as a redemption claim in the amount of

25  $1,867.91 under Code § 503(b)(1), but O&M has failed to present any admissible

26  evidence to: (a) identify or even describe the goods provided, (b) demonstrate how any

27  such goods were reasonable and necessary to the District's operations or to preserve

28
_____

[1] See, Docket No. 115 at pp. 160-61.

Response of Tulare Local Healthcare District to Motion for          -3-          00203547-gaa-01.02.2019
Payment of Administrative Expenses and Amended Proof of
Claim

1   the District's assets, and (c) establish the date(s) on which such goods were allegedly

2   received by the District.  O&M also seeks allowance of an unsecured claim in the amount

3   of $2,135.86, and its claim suffers from the same evidentiary defects. For the reasons

4   set forth below, O&M's requests for allowance and payment of any amount should be

5   denied and any decision on the allowance of its claim should be deferred until this Court

6   established  procedures  for  objecting  to  the  allowance  of  claims  and/or  the  District

7   proposes and confirms its plan of adjustment.

8   **III.    ARGUMENT**

9         A proceeding under chapter 9 of the Bankruptcy Code differs in a number

10   respects from cases filed under chapter 7 or 11.  Two of the key differences are

11   limitations on the scope of a bankruptcy court's authority over chapter 9 debtors under

12   Code § 904 and what claims constitute administrative claims.

13

14   **A.    Courts Do Not Have Jurisdiction Or Authority To Issue Orders
        That Interfere With The Property, Revenues, Or Use Or Enjoyment Of
        Income Producing Property Of A Chapter 9 Debtor Unless The
15        Debtor Consents Or It Is Pursuant To A Plan**

16         Unless a debtor consents or a plan so provides, Code § 904 limits the court's

17   power and jurisdiction over, among other things, the property and revenues a chapter 9

18   debtor or its use or enjoyment of any income-producing property. 11 U.S.C. § 904; *Ass'n*

19   *of Retired Employees of the City of Stockton v. City of Stockton* (*In re City of Stockton*),

20   478 B.R. 8, 13 (Bankr. E.D. Cal. 2012) (Code § 904 bars the court, without the

21   municipality's consent, from interfering with its political or governmental powers, property

22   or revenues, and use or enjoyment of income-producing property); *In re Valley Health*

23   *Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010) ("By virtue of § 904, a debtor in chapter

24   9 retains title to, possession of, and complete control over its property and its operations,

25   and is not restricted in its ability to sell, use, or lease its property.").

26         By expressly limiting a court's authority to interfere with a chapter 9 debtor's

27   assets, Code § 904 protects the constitutionality of chapter 9 under the Tenth

28   Amendment.

Response of Tulare Local Healthcare District to Motion for        -4-
Payment of Administrative Expenses and Amended Proof of
Claim                                                                    00203547-gaa-01.02.2019

> "The bill here recommended for passage expressly avoids any restriction on the powers of the States or their arms of government in the exercise of their sovereign rights and duties. No interference with the fiscal or governmental affairs of a political subdivision is permitted. The taxing agency itself is the only instrumentality which can seek the benefits of the proposed legislation. No involuntary proceedings are allowable, and no control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the bill …."

H.R. Rep. No. 95-595, at 264 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6222; *United States v. Bekins*, 304 U.S. 27, 51 (1938) (expressing approval of the foregoing statements of the Committee on the Judiciary of the House of Representatives in upholding the constitutionality of Chapter X of the Bankruptcy Act under the Tenth Amendment to the United States Constitution). In 1975, Congress further narrowed the power of bankruptcy courts to interfere with a municipal debtor's assets by removing from their discretion the determination of whether or not the assets are "necessary for essential governmental services." See H.R. Rep. No. 94-686, at 18 (1975), reprinted in 1976 U.S.C.C.A.N. 539, 556.

The District does not consent to any order directing that its property or revenues be used to satisfy O&M's asserted administrative claim, and the District has not yet proposed its plan of adjustment. For these reasons, the court lacks jurisdiction and authority to issue any order directing payment of any asserted administrative claims.

**B.     It Is Premature for the Court To Consider The Merits Of O&M's Claims And Determine Whether Any Such Claims Should Be Allowed**

Even if the Court had jurisdiction and authority to issue the order O&M requests for payment of its asserted administrative claims, it is premature to consider the merits of O&M's claims. As of the date of the filing of this Response, this Court has not established procedures for the adjudication of the merits of claims filed in the chapter 9 case. Nearly 250 proofs of claim have been filed in this chapter 9 case, and it is critical to the efficient administration of this case that the District not be required to litigate and respond to a motion seeking allowance of each and every claim before it proposes and confirms a plan of adjustment and establishes procedures for the efficient administration of claims as part of its plan of adjustment. This is also essential to preserve the District's very limited assets and allow it to focus its efforts on the process of reopening

1  TRMC. Just over two months ago, the District reopened TRMC after a nearly year-long

2  closure during which the District made diligent efforts to obtain funding and reach an

3  agreement with a well-established local partner dedicated to providing quality medical

4  services to the residents of the District. After reaching an agreement with Adventist

5  Health to reopen TRMC in October 2018 to provide basic emergency medical services,

6  the District anticipates that it will enter into a long-term lease with Adventist Health in the

7  first quarter of 2019 after obtaining a change of ownership approval from the California

8  Department of Public Health. Once that event occurs, the District believes that it will

9  have the necessary pieces in place to better understand what resources may be

10  available to pay claims under a plan of adjustment. Until these steps are completed and

11  the District files its Disclosure Statement and proposes a Plan of Adjustment, the District

12  believes it is premature, inefficient and unnecessary to litigate the merits of any claims.

13  Indeed, the terms of a plan of adjustment may moot the need for a substantial amount

14  of litigation on the allowance of claims.

15     **C.     Bankruptcy Code § 503(b)(1)(A) Does Not Apply in Chapter 9**

16          In a chapter 7 or 11 case, claims arising under Section 503(b)(1)(A) for "the

17  actual, necessary costs and expenses of preserving the estate," are allowable

18  administrative expenses. In a chapter 9 case, however, administrative claims are not

19  allowable because there is no estate. *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ*

20  *L.L.C.)*, 371 B.R. 412, 419 n.4 (B.A.P. 9th Cir. 2007); *In re City of Vallejo*, 403 B.R. 72,

21  78 n.2 (Bankr. E.D. Cal. 2009); *In re Jefferson County, Ala.*, 484 B.R. 427, 460-61

22  (Bankr. N.D. Ala. 2012). At least two courts have held that there can be no "necessary

23  costs and expenses of preserving the estate" in a case where no estate exists. *In re*

24  *New York City Off Track Betting Corp.*, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010) ("*Off*

25  *Track Betting*"); *In re Texas Wyoming Drilling, Inc.*, 486 B.R. 746, 759 (Bankr. N.D. Tex.

26  2013)(no administrative claim exists where there is no estate to benefit); *In re City of*

27  *San Bernardino*, Dkt. No. 2164 at ¶ 16 at pp. 23-24 and Plan attached as Exhibit A

28  thereto at Article I.B.16. at p. 4 and Article II.A at p. 17 (Bankruptcy court approved plan

1   of adjustment that provided that claims arising under section 503(b)(1)(A) are not

2   allowable administrative expenses).

3    In the *Off Track Betting* case, the court considered motions of several creditors to

4   compel the chapter 9 debtor to pay certain fees that had accrued post-petition. The

5   court rejected the argument that those fees were entitled to administrative priority under

6   Code § 503(b)(1)(A). The court reasoned that because a chapter 9 debtor's property

7   remains its own and does not inure into any bankruptcy estate under Code § 541, there

8   can be no administrative expenses for 'the actual and necessary costs of preserving the

9   estate' as contemplated by Code § 503(b)(1)(A). *Off Track Betting*, 434 B.R. at 142. The

10  court's conclusion is in accord with and required by Code § 904, which prevents

11  bankruptcy courts from exercising jurisdiction over a municipality's use of its revenues

12  without the municipality's consent as discussed in Section A above.

13   The Supreme Court has held that statutes allowing administrative priorities in

14  bankruptcy "must be tightly construed." *Howard Delivery Serv. v. Zurich Am. Ins. Co.*,

15  547 U.S. 651, 667, 126 S. Ct. 2105, 2116 (2006). "[I]f one claimant is to be preferred

16  over others, the purpose should be clear from the statute." *Id.* (*quoting Sampsell v.*

17  *Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904 (1941)). "We take into

18  account, as well, the complementary principle that preferential treatment of a class of

19  creditors is in order only when clearly authorized by Congress." *Id.* at 655 (citing

20  *Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S. Ct. 80 (1952).) Administrative expenses are

21  narrowly construed in chapter 9 cases. *In re Orange County*, 179 B.R. 195, 201(Bankr.

22  C.D. Cal. 1995).

23   Because the Bankruptcy Code does not expressly provide for the payment of

24  section 503(b)(1)(A) claims in chapter 9 cases, this Court should not read Section

25  503(b)(1)(A) more broadly than the statute's plain meaning. Congress did not clearly

26  authorize a priority for post-petition claims against a chapter 9 debtor. Congress could

27  have done so by stating in Code § 902(1) that "estate" when used in the Bankruptcy

28  Code sections made applicable to chapter 9 means "the debtor," as Congress did with

Response of Tulare Local Healthcare District to Motion for
Payment of Administrative Expenses and Amended Proof of
Claim                                                    -7-                    00203547-gaa-01.02.2019

respect to "property of the estate."  Alternatively, Congress could have written section
503(b)(1)(A) to provide for administrative priority for "the actual, necessary costs and
expenses of preserving the debtor and the estate," but Congress limited that provision
to claims against the estate.  Because there is no estate in chapter 9, Code §
503(b)(1)(A) simply does not apply in chapter 9.  In light of the constitutional concerns in
*Bekins* discussed above that led to Congress to enact section 904 (substantially limiting
the jurisdiction of the bankruptcy courts over a chapter 9 debtor's property and
revenues), the Court should not expand the reach of section 503(b)(1)(A) unless doing
so is "clearly authorized by Congress" and "the purpose of doing so is clear from the
statute." *See, Nathanson, supra*, 344 U.S. at 29; *Howard Delivery Service, supra,* 547
U.S. at 667.  For these reasons, O&M's request for the allowance of an administrative
claim for goods allegedly received after the Petition Date should be denied.

### D.     O&M Has Not Established Any Administrative Claim under Code Section 503(b)(9)

Even if the Court chooses to consider the merits of O&M's claim at this early
stage, for the reasons set forth in the Evidentiary Objections to the Declaration of
Mathew A. Lesnick filed with this Response, O&M has not submitted admissible
evidence to establish that it has an administrative claim under Code § 503(b)(9).  The
District believes that the issue of whether claims arising under Code § 503(b)(9) are
allowable administrative expenses in chapter 9 case is an issue of first impression.

Code § 503(b)(9) was added by the 2005 Bankruptcy Abuse Prevention and
Consumer Protection Act.  The legislative history of § 503(b)(9) "suggests that it was
aimed at providing relief to sellers of goods who fail to give the required notice under the
reclamation provision of section 546(c)[.]" *In re Brown & Cole Stores, LLC*, 375 BR 873,
(9th Cir. BAP 2007), *citing* Shirley S. Cho, *The Intersection of Critical Vendor Orders and
Bankruptcy Code § 503(b)(9)*, 29 Cal. Bankr. J. 7, 11 (2007), in turn citing
BAPCPA, *Pub. L. No. 109-8 at § 1227.*  Code § 503(b)(9) allows as an administrative
expense "the value of any goods received by the debtor within 20 days before the date

1  of commencement of a case under this title in which the goods have been sold to the

2  debtor in the ordinary course of such debtor's business."

3        While the Bankruptcy Code does not define "goods," some courts have adopted

4  the UCC definition describing "goods" as all things – including specially manufactured

5  goods – that are movable at the time of identification to the contract for sale other than

6  the money in which the price is to be paid. *In re NE Opco, Inc.*, 501 BR 233, 241 (Bankr.

7  D. Del. 2013).  Goods are "received" under 503(b)(9) when the debtor or its agent takes

8  physical possession of them. *In re World Imports, Ltd.,* 862 F.3d 338 (3d Cir. 2017).

9        The declaration of Matthew A. Lesnick ("Lesnick Declaration") does not comport

10  with Federal Rule of Evidence 602 because: it does not provide facts sufficient to show

11  that the witness has personal knowledge of: (a) whether any materials or products

12  provided were "goods" within the meaning of Code § 503(b)(9) because no description of

13  any materials or products is provided or other documentation identifying any materials or

14  products, (b) if and when any materials or products were received by the District (instead

15  there is only an inadmissible columns of dates under the headings "Trx Date" and "Due

16  Date" that are not explained in the Lesnick Declaration), and (c) how any materials or

17  products that may have been provided were reasonable and necessary to the District's

18  operations or to preserve the District's assets or the value of such materials or products.

19  Furthermore, Exhibit A is inadmissible because: (a) the Lesnick Declaration provides no

20  foundation supporting Exhibit A or his testimony related to the content of Exhibit A; (b)

21  Exhibit A is hearsay to the extent it is offered to prove its content, and (c) the Lesnick

22  Declaration does not contain facts sufficient to justify the use of a chart or summary to

23  prove the content of voluminous writings that cannot be conveniently examined in court

24  as required by Federal Rule of Evidence 1006.  Thus, even if the Court considers the

25  merits of O&M's Motion, it should be denied because there is no admissible evidence to

26  support any claim under Code § 503(b)(9) or Code § 503(b)(1)(a).

27  ///

28  ///

Response of Tulare Local Healthcare District to Motion for
Payment of Administrative Expenses and Amended Proof of
Claim .          -9-          00203547-gaa-01.02.2019

IV.     **CONCLUSION**

For the foregoing reasons, the District respectfully requests that the Court: (a) deny O&M's Request for an order allowing it administrative claims in any amount; (b) defer any adjudication of the merits of O&M's claims until after a plan of adjustment is confirmed and a process is established for objecting to claims; and (c) if the Court chooses to adjudicate the merits of the Motion, deny O&M's requested administrative claims and reclassify such claim as a general unsecured claim.

Dated: January 2, 2019             WALTER WILHELM LAW GROUP,
                                   a Professional Corporation


                              By: _Riley C. Walter_____
                                   Riley C. Walter, Attorneys for Debtor
                                   Tulare Local Healthcare District, dba
                                   Tulare Regional Medical Center