20

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Chapter 9 Counsel for Tulare Local Healthcare District

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| In re | CASE NO. 17-13797 |
|---|---|
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry Street<br>Tulare, CA 93274 | DC No.: WW-70<br><br>Chapter 9<br><br>Date: January 17, 2019<br>Time: 9:30 a.m.<br>Place: 2500 Tulare Street<br>Fresno, CA 93721<br>Courtroom 13<br>Judge: Honorable René Lastreto II |

**EXHIBIT IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSIES
(CELTIC FINANCE AND MB FINANCIAL BANK, N.A.)**

| INDEX TO EXHIBITS | | PAGES |
|---|---|---|
| A | Settlement Agreement | 19 |

Dated: January 4, 2019

WALTER WILHELM LAW GROUP
a Professional Corporation

By: /s/ Riley C. Walter
Riley C. Walter, Chapter 9 Counsel for
Tulare Local Healthcare District, dba
Tulare Regional Medical Center

# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is entered into by and between the following persons and entities (collectively, "the Parties"; each, individually, a "Party"): (1) Tulare Local Healthcare District dba Tulare Regional Medical Center ("Plaintiff"); and (2) Celtic Commercial Finance, a division of MB Equipment Finance, LLC, a Delaware limited liability company and successor by merger to Celtic Leasing Corp. ("Celtic Finance"), and MB Financial Bank, N.A., a national banking association ("MB" and collectively with Celtic Finance, the "MB Parties"), with respect to the following agreed-upon facts:

A.　　Plaintiff filed a Chapter 9 bankruptcy case on September 30, 2017 before the United States Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court") bearing case number 17-13797.

B.　　On February 7, 2018, Plaintiff filed suit bearing adversary proceeding number 18-01008 ("Adversary Proceeding") against the MB Parties, asserting that the MB Parties had received preferential and/or fraudulent transfers by virtue of an alleged unauthorized sale/lease back transaction under which: (1) Celtic Finance purportedly purchased certain equipment from Plaintiff (as more particularly described in the Proof of Claim (defined below) (the "Equipment")); and (ii) Celtic Finance purportedly leased the Equipment to Plaintiff pursuant to a master lease and lease schedule (as more particularly described in the Proof Claim (collectively, the "Purported Lease"). The MB Parties have filed an answer to Plaintiff's amended complaint in the Adversary Proceeding which answer speaks for itself.

C.  On April 9, 2018, MB filed its Proof of Claim No. 190 (the "Proof of Claim") in the Bankruptcy Case. It asserted that it had claims either under the Purported Lease, or, alternatively, if the Purported Lease was unauthorized, for return of any funds Plaintiff received from the $3,000,000 payment the MB Parties made under the Purported Lease.

D.  On or about August 24, 2018, the District Attorney for the County of Tulare seized $937,931.04 from Yorai Benzeevi, M.D. ("Benzeevi") which sum ("Seized Funds") remains in the custody of the Superior Court of California for the County of Tulare.

E.  On December 6, 2018 MB filed a Motion: (I) to Determine Stay is Inapplicable to Proceedings Concerning Seized Funds; (II) For Adequate Protection; and (III) For Relief from the Automatic Stay (the "Motion").

F.  The Parties now desire to settle all of the controversies and claims among and between them relating to the Motion, the Adversary Proceeding, the Proof of Claim, the Equipment, the Purported Lease, and the Seized Funds.

ACCORDINGLY, the Parties agree as follows:

1.  <u>Settlement Payment</u>. In consideration of this Agreement, including but not limited to the release of claims and other relief set forth below, the Parties agree that Plaintiff shall pay to MB by wire transfer of immediately available funds the amount of Five Hundred Thousand US Dollars (US $500,000) (the "Settlement Payment") on or before February 15, 2019. The Settlement Payment shall be paid to MB by wire transfer into to an account designated by the MB Parties, the wire instructions for which will be sent by the MB Parties to counsel for the District. Upon actual receipt of the Settle Payment by MB: (i) the MB Parties shall execute a bill of sale in the form attached

hereto as Exhibit 1 transferring all right, title, and interest, if any, of the MB Parties in the Equipment to Plaintiff on an "AS IS, WHERE IS" basis with no representations or warranties of any kind; and (ii) to the extent the Purported Lease exists, the Purported Lease shall terminate and be of no further force or effect.

2. <u>Dismissal of Adversary Proceeding</u>. As soon as reasonably possible following the entry of the Court Approval Order (defined below), Plaintiff shall take all appropriate steps to cause the Adversary Proceeding to be dismissed with prejudice. In that regard, Plaintiff and the MB Parties shall jointly stipulate to the dismissal and take all steps reasonably required to dismiss the Adversary Proceeding with prejudice.

3. <u>Allowance of MB's Claim</u>. In addition to the payment of the Settlement Payment and other consideration under this Agreement, immediately upon the entry of the Court Approval Order, MB shall have a fully and finally allowed general unsecured claim against Plaintiff in the Bankruptcy Case in the amount of Two Million Five Hundred Thousand US Dollars (US $2,500,000) (the "Allowed Claim"). Upon entry of the Court Approval Order, the Proof of Claim shall be automatically modified, without amendment, to reflect the Allowed Claim. In the event MB actually recovers any part of the Seized Funds, the Allowed Claim shall be automatically reduced, without amendment, by the amount equal to the amount of any Seized Funds actually received by the MB Parties multiplied by 2.5 subject to a maximum reduction of the Allowed Claim to zero. Tulare shall have no claims or other rights against the MB Parties related to the reduction of the Allowed Claim provided for in this Section 3 and the MB Parties shall have no affirmative duty to seek to intervene in any proceeding concerning the Seized Funds or assert any claim to ownership of the Seized Funds.

3



EXHIBIT A
Page 3 Of 19

4. **Relief From Stay**. Effective immediately upon the entry of the Court Approval Order, in further addition to Sections 1, 2 and 3, the automatic stay shall be terminated as to the MB Parties in Plaintiff's Bankruptcy Case and the MB Parties shall have the right to immediately enforce any of their respective rights and remedies as to the Seized Funds and the underlying legal proceeding concerning the Seized Funds, including, but not limited to, intervening in the action regarding Search Warrant #013487 pending before the Superior Court for the State of California for the County of Tulare and asserting claims of ownership to the Seized Funds. In addition, effective immediately upon the entry of the Court Approval Order, Plaintiff hereby transfers, conveys, and assigns to the MB Parties any right, title, or interest Plaintiff may have in or to the Seized Funds, including, but not limited to, any right to seek recovery or return of the Seized Funds under applicable law. Further, Plaintiff agrees to reasonably cooperate with the MB Parties in the MB Parties' pursuit of any claim to the Seized Funds. Notwithstanding the foregoing, the MB Parties shall have no affirmative duty to seek to intervene in any proceeding concerning the Seized Funds or to assert any claim to ownership of the Seized Funds.

5. **Releases**.

    a. **Tulare's Release of the MB Parties**. Conditioned solely upon the entry of the Court Approval Order, except as provided in this Agreement, in consideration of this Agreement, Tulare, on its own behalf and on behalf of its affiliates, agents, assigns, attorneys, employees, heirs, predecessors, principals, and successors, past and present, hereby releases and discharges the MB Parties, and each of their respective agents, assigns, attorneys, directors, employees, officers, predecessors, and successors, and direct and indirect parents, subsidiaries and affiliates (and their

officers, directors, agents, employees and attorneys), past and present, from any and all claims, demands, causes of action, controversies, liens, agreements, contracts, covenants, debts, costs, expenses, damages, judgments, orders and liabilities of whatever kind or nature, both in law and equity, attorneys' fees and costs, whether now known or unknown, vested or contingent, matured or unmatured, liquidated or unliquidated, suspected or unsuspected, and whether or not concealed or hidden, related to, arising out of, or incurred in connection with the Purported Lease, the Bankruptcy Case, the Motion, the Proof of Claim, the Equipment, the Adversary Proceeding, and any other transaction described in the Adversary Proceeding.

      b.    <u>The MB Parties' Release of Tulare</u>. Conditioned upon the entry of the Court Approval Order, MB's actual receipt of the Settlement Payment from Tulare, and dismissal with prejudice of the Adversary Proceeding, except as otherwise provided in this Agreement, in consideration of this Agreement, the MB Parties, on their own behalf and on behalf of their affiliates, agents, assigns, attorneys, employees, heirs, predecessors, principals, and successors, past and present, hereby release and discharge Tulare, and each of its respective agents, assigns, attorneys, directors, employees, officers, predecessors, and successors, and direct and indirect parents, subsidiaries and affiliates (and their officers, directors, agents, employees and attorneys), past and present, from any and all claims, demands, causes of action, controversies, liens, agreements, contracts, covenants, debts, costs, expenses, damages, judgments, orders and liabilities of whatever kind or nature, both in law and equity, attorneys' fees and costs, whether now known or unknown, vested or contingent, matured or unmatured, liquidated or unliquidated, suspected or unsuspected, and whether or not concealed or hidden, related to, arising out of or which were incurred in

connection with the Purported Lease, the Bankruptcy Case, the Equipment, the Motion, the Adversary Proceeding, and any other transaction described in the Adversary Proceeding; provided, however, that the foregoing release shall not, in any way, release, modify, or impair any claims, demands, legal or equitable rights, or causes of action that the MB Parties: (i) have against BakerHostetler LLP, or any of its affiliates, partners, members, or agents; (ii) have to the Seized Funds, including any rights under the California Penal Code to assert a claim of ownership to the Seized Funds; (iii) have against Healthcare Conglomerate Associates, LLC or Benzeevi, or any of their respective current or former affiliates, partners, members, or agents, including, but not limited to, any claim in connection with the Seized Funds or otherwise; and (iv) have against any party to the extent such claims, rights, or causes of action are covered by any policy of insurance. In addition, the foregoing release shall not, in any way, release, modify, or impair the Allowed Claim.

6. <u>Waiver of Civil Code Section 1542</u>. Additionally, and to the fullest extent permitted under law, each of the Parties hereto, for itself and its successors, solely respect to any claims released by Section 5 above, expressly waives the provisions of California Civil Code Section 1542, and any similar law, statute or policy. California Civil Code Section 1542 states as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Each of the Parties understand and acknowledge the significance and consequences of this waiver of California Civil Code Section 1542 and confirms that it

has either discussed or been given the opportunity to discuss such matters with counsel of that Party's choice.  This wavier does not apply to the Parties respective obligations under this Agreement, any claims not released by this Agreement, or the Allowed Claim.

Each of the parties further acknowledge that after executing this Agreement, they may discover facts in addition to or different from those which they now know or believe to exist with respect to the claims being released, as well as to all known or unknown actions, demands, injuries, damages, and/or rights that either Party may have against the other that arise from or pertain to the claims being released and which, if known or suspected at the time of executing this Agreement, may have materially affected their decision to enter into it.  Nevertheless, each of the Parties waive any right, claim, or cause of action that might arise as a result of such different or additional facts with respect to any claim released by this Agreement.

7.    <u>Fees and Costs Incurred In Connection With This Agreement</u>.  Except as set forth above the Parties shall bear their own attorney's fees and costs incurred in connection with the Adversary Proceeding, the Motion, the Bankruptcy Case, and which arise out of or relate to, the negotiation of the settlement memorialized by this Agreement or the drafting of this Agreement.

8.    <u>No Assignment</u>.  Each Party represents and warrants that that Party has not assigned or transferred or attempted to assign or transfer to any person or entity any claim or obligation which is released herein. Each Party further agrees to indemnify and hold every other Party hereto harmless with respect to any claim, demand, damages, liability, cost or expense (including attorneys' fees, litigation-related expenses and costs) arising out of or in connection with any such purported or actual transfer or assignment by that Party.

9. <u>No Admission</u>. The purpose of this Settlement Agreement and Release of Claims is to resolve all disputed claims and defenses between the Parties. Neither the execution of this Agreement, nor the releases and other obligations provided for herein, nor the payment of any consideration hereunder, nor any other act or agreement in furtherance of this Agreement, including the allowance of the Allowed Claim, shall be construed in any way as an admission of wrongdoing or liability on the part of any Party hereto. The Parties each completely deny any such liability or wrongdoing, and intend by this Agreement only to avoid further litigation.

10. <u>Claims Against Other Parties</u>. This Agreement is not based on the assumption that the Purported Lease is valid and the Agreement does not limit, in any way, the ability of either Party to bring claims against other individuals or entities based on the Purported Lease with the exception of the claims released by Section 5 above. This Agreement is not intended to and shall not be construed to give any third party any interest or rights (including, without limitation, any third party beneficiary rights) with respect to or in connection with this Agreement or any provision contained herein or contemplated hereby. No third party shall have any rights based on the allowance of the Allowed Claim in the Bankruptcy Case, including, but not limited, any defense based upon principles of res judicata, collateral estoppel, claim preclusion, judgment bar, or issue preclusion.

11. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof. This Agreement fully supersedes any and all other prior understandings, representations, warranties, draft agreements, and agreements among the Parties hereto, whether oral or written, pertaining to its subject matter.

EXHIBIT A
Page 8 of 19

12.  **Reliance on Own Counsel and Information.**  In entering into this Agreement, no Party is relying on any statement, representation, warranty or promise by any other Party, except as expressly set forth in this Agreement; nor is any Party relying on any obligation of any other Party to disclose any material facts, except to the extent that that obligation or disclosure is expressly set forth herein.

13.  **Other Facts.**  The Parties acknowledge and understand that it is possible that they, or their agents or attorneys, may discover other or further claims, injuries or facts that the ones they presently believe to exist concerning this Agreement or the specific claims compromised or released hereby.  The Parties each expressly accept and assume the risk of any such other or further claims, injuries or facts, and agree that this Agreement, and the releases and other provisions hereof, shall remain effective notwithstanding the discovery of any such other or further claims or facts.

14.  **Authority.**  Plaintiff shall cause at least three of the five current members of its Board of Directors, including, but not limited to, Kevin Northcraft, the President of the Board of Directors, to execute this Agreement on behalf of Plaintiff.  Each individual executing this Agreement as a representative of an entity represents and warrants that he or she is a duly authorized representative of that entity with full power and authority to bind it to each and every term and condition hereof, and that the entity on whose behalf he or she is signing has taken all steps necessary to authorize and approve its entering into and binding itself to each and every term and condition thereof.  Each party represents and warrants to the other that it has taken all steps necessary to authorize and approve its entering into this Agreement.  Each Party making any of the foregoing representations or warranties shall indemnify, defend and hold harmless the other Parties and the persons and entities receiving a release under this Agreement


EXHIBIT A
Page 9 Of 19

from the representing and warranting Party from any claim that, if true or valid, would breach that Party's representation or warranty.

15. <u>Waiver and Amendment</u>.  No breach of any provision hereof or right hereunder can be waived unless in a writing signed by the waiving Party.  Waiver of any one breach of any provision shall not be deemed to be a waiver of any other breach of the same or any other provision of this Agreement.  This Agreement may be amended only by written agreement executed by all Parties.

16. <u>Voluntary Agreement</u>.  The Parties represent and declare that they have read and fully understand the terms of this Agreement, that the terms of this Agreement and their consequences have been completely explained to them by their independently selected legal counsel, and that they are freely and voluntarily signing this Agreement.

17. <u>Governing Law</u>.  This Agreement shall be construed under and governed by the laws of the State of California.

18. <u>Successors</u>.  This Settlement Agreement shall bind the successors, assigns, heirs and personal representatives of each of the Parties.

19. <u>No Construction Against Author</u>.  Each Party has been advised and represented by counsel in connection with the negotiation and preparation hereof, and each has had substantial input into its drafting.  Accordingly, the Parties agree that each shall be deemed this Agreement's co-author for purposes of its construction, and that in all events the rule of construction against the drafter shall not be applied.

20. <u>Court Approval</u>.  The effectiveness of this Agreement is expressly conditioned upon the Bankruptcy Court entering an Order (the "Court Approval Order") which Court Approval Order shall, among other things: (i) approve this Agreement,

and each of the transactions contemplated herein; (ii) expressly authorize Plaintiff to execute and deliver this Agreement under 9019 of the Bankruptcy Rules; (iii) grants the MB Parties relief from the automatic stay in accordance with the provisions of this Agreement which order waives the stay provided by Bankruptcy Rule 4001(a)(3); and (iv) provides for the allowance of the Allowed Claim. Within five (5) calendar days following the execution of this Agreement by all of the parties hereto, Plaintiff shall file a motion with the Bankruptcy Court seeking entry of the Court Approval Order by the Bankruptcy Court and will thereafter use its best effort to obtain entry of the Court Approval Order by the Bankruptcy Court as soon as possible but in no event later than January 31, 2019 or other later date approved by the MB Parties in writing (the "Approval Deadline"). Plaintiff shall provide the MB Parties with a copy of all of the moving papers seeking the Court Approval Order promptly upon filing same with the Bankruptcy Court and shall otherwise keep the MB Parties informed of the status of the Court Approval Order. In the event, for any reason, the Bankruptcy Court does not enter the Court Approval Order in the Bankruptcy Case on or before the Approval Deadline, then the MB Parties shall have the option to terminate this Agreement by delivering written notice of termination to Plaintiff's counsel by email in which case this Agreement shall terminate, be null and void, and shall be of no force or effect. Upon such termination, the Recitals, representations, warranties, covenants, confirmations, releases, admissions, and statements made in this Agreement shall be of no force or effect, and may not be used in any other proceeding or action by or against any party to this Agreement.

21. <u>Plan Treatment</u>. The Allowed Claim allowed to MB pursuant to Section 3 shall be treated the same as all other general unsecured claims in Plaintiff's to be

proposed Plan of Adjustment. Nothing in said Plan of Adjustment shall modify or impair the Allowed Claim and the MB Parties' rights under this Agreement in any manner.

CONTINUED ON NEXT PAGE

22. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and delivered via facsimile or electronic transmission, each of which shall be deemed an original instrument, but all of which together shall constitute only one and the same instrument.

Dated: Jan. 3, 2019

Tulare Local Healthcare District,
dba Tulare Regional Medical Center

By _[signature]_
Kevin B. Northcraft
President of the Board of Directors

By _[signature]_
Name: Michael Jamaica
Member of the Board of Directors

By _[signature]_
Name: SENOVIA GUTIERREZ
Member of the Board of Directors

By _[signature]_
Name: Stephen C. Harrell
Member of the Board of Directors

By _[signature]_
Name: Xavier J Avila
Member of the Board of Directors

Dated: _____, 2019

Celtic Commercial Finance, a division of MB Equipment Finance, LLC, a Delaware limited liability company and successor by merger to Celtic Leasing Corp.

By_____
　Name:_____
　Its:_____

Dated: _____, 2019

MB Financial Bank, N.A.,
a national banking association

By_____
　Name:_____
　Its:_____

13

EXHIBIT A
Page 13 Of 19

22. **Counterparts.** This Agreement may be executed in any number of counterparts and delivered via facsimile or electronic transmission, each of which shall be deemed an original instrument, but all of which together shall constitute only one and the same instrument.

Dated: _____, 2019

Tulare Local Healthcare District,
dba Tulare Regional Medical Center

By_____
   Kevin B. Northcraft
   President of the Board of Directors

By_____
   Name:_____
   Member of the Board of Directors

By_____
   Name:_____
   Member of the Board of Directors

By_____
   Name:_____
   Member of the Board of Directors

By_____
   Name:_____
   Member of the Board of Directors

Dated: 1-4, 2019

Celtic Commercial Finance, a division of MB Equipment Finance, LLC, a Delaware limited liability company and successor by merger to Celtic Leasing Corp.

By [signature]
   Name: MARY ALBORS
   Its: SVP

Dated: 1-4, 2019

MB Financial Bank, N.A.,
a national banking association

By [signature]
   Name: MARY ALBORS
   Its: SVP

13

EXHIBIT A
Page 14 Of 19

EXHIBIT 1

BILL OF SALE

THIS BILL OF SALE is made as of _____, 2019, by Tulare Local Healthcare District dba Tulare Regional Medical Center ("Buyer"), on the one hand, and Celtic Commercial Finance, a division of MB Equipment Finance, LLC, a Delaware limited liability company and successor by merger to Celtic Leasing Corp. ("Celtic Finance"), and MB Financial Bank, N.A., a national banking association ("MB" and collectively with Celtic Finance, "Seller"), on the other hand.

RECITALS

A.  Buyer and Seller previously entered into that certain Settlement Agreement and Release of Claims dated December \_\_, 2018 (the "Settlement Agreement").

B.  In accordance with the terms of the Settlement Agreement, and in consideration for, among other things, Seller's actual receipt of the Settlement Payment (as such term is defined in the Settlement Agreement), Seller desires to transfer to Buyer all of Seller's interest, if any, in certain personal property as more particularly described herein.

IN CONSIDERATION OF THE FOREGOING, and for other good and valuable consideration, Seller agrees as follows:

1.  Effective immediately upon delivery of this Bill of Sale, Seller hereby grants, transfers and conveys to Buyer all of Seller's right, title, and interest, if any, in that certain personal property itemized on Exhibit "A" attached hereto and made a part hereof (collectively, the "Equipment").

2.  BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE OR GIVEN ANY STATEMENTS, OPINIONS, ADVICE, REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, CONCERNING THE EQUIPMENT, SELLER'S RIGHT, TITLE, OR INTEREST IN THE EQUIPMENT, OR ANY USES TO WHICH THE EQUIPMENT MAY OR MAY NOT BE PUT INCLUDING, BUT NOT LIMITED TO: (I) THE CONDITION OR TITLE TO THE EQUIPMENT; (II) THE NATURE OR PHYSICAL CONDITION OF THE EQUIPMENT; (III) THE SALABILITY, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE OF THE EQUIPMENT; (IV) THE CONFORMITY WITH ANY APPLICABLE LAWS OR REGULATIONS OF THE EQUIPMENT; OR (V) THE NECESSITY OF BUYER TO OBTAIN ANY NECESSARY GOVERNMENTAL APPROVALS OR PERMITS FOR BUYER'S ACQUISITION OR INTENDED USE OF THE EQUIPMENT. BUYER ACKNOWLEDGES FOR BUYER AND BUYER'S SUCCESSORS AND ASSIGNS: (I) THAT BUYER IS ACQUIRING WHATEVER INTEREST SELLER MAY HAVE IN THE EQUIPMENT, IF ANY, BASED UPON

BUYER'S OWN INVESTIGATION AND INSPECTION THEREOF. BUYER AGREES THAT WHATEVER INTEREST SELLER MAY HAVE IN THE EQUIPMENT, IF ANY, SHALL BE TRANSFERRED TO BUYER ON THE DATE OF THIS BILL OF SALE IN ITS "AS-IS, WHERE-IS, WITH ALL FAULTS" CONDITION WITH NO RIGHT OF SET-OFF OR REDUCTION AND WITHOUT REPRESENTATION OR WARRANTIES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, FITNESS FOR A PARTICULAR PURPOSE, QUALITY OR MERCHANTABILITY.

IN WITNESS WHEREOF, Buyer and Seller have executed this Bill of Sale as of the day and year first above written.

Dated: _____, 2019　　　Tulare Local Healthcare District,
dba Tulare Regional Medical Center

By_____
　　Kevin B. Northcraft
　　President of the Board of Directors

Dated: _____, 2019　　　Celtic Commercial Finance, a division of MB Equipment Finance, LLC, a Delaware limited liability company and successor by merger to Celtic Leasing Corp.

By_____

_____

_____

Dated: _____, 2019　　　MB Financial Bank, N.A.,
a national banking association

By_____

_____

_____

EXHIBIT A

EXHIBIT A
Page 17 Of-19



Exhibit "<u>A</u>"
to
PURCHASE/LEASEBACK AGREEMENT and BILL OF SALE
relating to
Lease No. CML-<u>3826A</u>/ Schedule No. <u>3826A01</u>

Equipment:
**ITEM  QTY  SERIAL NO.            DESCRIPTION**

| Item | Vendor | Invoice # | Address | City | County | State | Zip |
|---|---|---|---|---|---|---|---|
| 1. | Hill-Rom | S010464130 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 2. | FujiFilm Medical Systems USA, Inc. | 15188 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 3. | Beckman Coulter | 102788078 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 4. | Karl-Storz Endoscopy-America, Inc. | 15506 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 5. | Physio-Control, Inc. | 112111458 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 6. | Covidien | 17177845 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 7. | Covidien | 17186689 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 8. | Creche Innovations | 2912 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 9. | Karl-Storz Endoscopy-America, Inc. | 15506 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 10. | Karl-Storz Endoscopy-America, Inc. | 92489353 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 11. | Medline Industries, Inc. | 1054419482 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 12. | Medline Industries, Inc. | 1055014982 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 13. | Ohio Medical Corporation | 339043 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 14. | Stryker Sales Corporation | 1085515 M | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 15. | Owens & Minor | 4199188 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 16. | FDSI Logistics | 21860663 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 17. | Carl Zeiss Meditec, Inc. | 6044411074 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 18. | Biodex Medical Systems, Inc. | 227848 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 19. | GE Medical Systems | 80343395 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 20. | Smiths Medical ASD, Inc. | 12804833 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 21. | Scale-Tronix | 181206 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 22. | Biodex Medical Systems, Inc. | 229130 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 23. | Novum Medical Products, Inc. | 27734 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 24. | CareFusion | 9103664443 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 25. | CareFusion | 9103777669 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 26. | Covidien | 16542695 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 27. | Grainger | 8672324739 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 28. | Gyrus ACMI,LP | 101433860 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 29. | Medisafe America LLC | 26378 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 30. | Karl-Storz Endoscopy-America, Inc. | 92338451 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 31. | Karl-Storz Endoscopy-America, Inc. | 92339804 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 32. | Karl-Storz Endoscopy-America, Inc. | 92338450 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 33. | Karl-Storz Endoscopy-America, Inc. | 92347138 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 34. | Karl-Storz Endoscopy-America, Inc. | 92349192 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 35. | Olympus America Inc. | 12932823 RI | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 36. | The Drappery Shoppe | 1952 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 37. | Intuitive Surgical | 900360958 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 38. | Case Medical | 46251 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 39. | Integra | 2225893 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 40. | Integra | 2215678 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 41. | Wilson Medical Specialists, Inc. | 232883 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 42. | Wilson Medical Specialists, Inc. | 232952 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |

L:\EXPLB000

EXHIBIT A
Page 18 of 19



Exhibit "A" to PURCHASE/LEASEBACK AGREEMENT AND BILL OF SALE
Page 2

| # | Manufacturer | Serial/Model | Address | City | County | State | Zip |
|---|---|---|---|---|---|---|---|
| 43. | Teleflex Medical | 844764 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 44. | Johnson & Johnson Health Care Systems, Inc. | 906457060 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 45. | Stryker Sales Corporation | 4030842-E | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 46. | Herzog Surgical | 80845 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 47. | Teleflex Medical | 15371 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 48. | Karl-Storz Endoscopy-America, Inc. | 92372540 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 49. | Intuitive Surgical | 900360959 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 50. | CareFusion | 9103788127 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 51. | CareFusion | 9103785405 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 52. | Maquet Getinge Group | 2690380749 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 53. | GE Medical Systems | 80356425 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 54. | GE Medical Systems | 80356432 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 55. | GE Medical Systems | 80355500 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 56. | GE Medical Systems | 80380566 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 57. | Olympus America Inc. | 14499914 RJ | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 58. | Hospital Associates | 162057-00 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 59. | Hospital Associates | 162057-01 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 60. | Hospital Associates | 162057-02 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 61. | Hospital Associates | 162057-03 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 62. | Newmatic Medical | W026390 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 63. | GE Medical Systems | 80380254 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 64. | Melo's Gas & Gear | 529065 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 65. | Stryker Sales Corporation | 2403402-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 66. | Stryker Sales Corporation | 2403014-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 67. | Stryker Sales Corporation | 2403008-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 68. | Stryker Sales Corporation | 2401748-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 69. | Stryker Sales Corporation | 2401762-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 70. | Stryker Sales Corporation | 2403000-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 71. | Stryker Sales Corporation | 2403352-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 72. | Stryker Sales Corporation | 2403381-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 73. | Stryker Sales Corporation | 1211942 M | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 74. | Vital Signs, Inc. | 8480121715 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 75. | Vital Signs, Inc. | 8433821715 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 76. | CDW Government | DZ77084 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 77. | Natus | 1040032866 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |

LESSEE/SELLER

**Tulare Local Health Care District**

Signature: _/s/_

Name: Benny Benzeevi, MD

Title: CEO

Date: 8·30·2017

LESSOR/PURCHASER

**CELTIC LEASING CORP.**

Signature: _____

Name: Michael J. Purcell

Title: Executive Vice President

Date: _____

L:\EXPLB000

EXHIBIT A
Page 19 Of 19