**9 Pages**

JASON E. RIOS, State Bar No. 190086
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: jrios@ffwplaw.com

DARRELL W. CLARK, ESQ.
(*pro hac vice* to be filed)
STINSON LEONARD STREET LLP
1775 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006
Telephone: (202) 785-9100
Facsimile: (202) 785-9163
e-mail: darrell.clark@stinson.com

Attorneys for Cerner Corporation and
Cerner Health Services, Inc.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor. | CASE NO.: 17-13797-B-9<br><br>Chapter 9<br><br>DCN: FWP-1<br><br>Date: February 14, 2019<br>Time: 9:30 a.m.<br>Place: 2500 Tulare Street<br>Fresno, CA 93721<br>Courtroom 13<br>Judge: Hon. Rene Lastreto II |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF CERNER CORPORATION AND CERNER HEALTH SERVICES, INC.**

Cerner Corporation ("Cerner Corp.") and its subsidiary, Cerner Health Services, Inc. ("Cerner HS" and collectively with Cerner Corp., "Cerner"), creditors and parties-in-interest of Tulare Local Healthcare District d/b/a Tulare Regional Medical Center ("Debtor"), by and through undersigned counsel, and file this Request for Payment of Administrative Expense Claim (the "Administrative Request") against Tulare Local Healthcare District dba Tulare Regional Medical Center ("Debtor") pursuant to 11 U.S.C. § 503, made applicable in this Chapter 9

-1-

MPA iso Request for Allowance and Payment
of Administrative Expense Claim of Cerner
Corporation and Cerner Health Services, Inc.

proceeding by 11 U.S.C. § 901. In support of the Administrative Request, Cerner states as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of the Motion under 28 U.S.C. § 1334. This matter is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (G), and (O). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 901(a), 503.

## BACKGROUND

1. On September 30, 2017 ("Petition Date"), the Debtor filed a Petition for relief under Chapter 9 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of California.

2. On or about September 30, 2009, the Debtor entered into an IT and Managed Services Agreement with Siemens Medical Solutions USA, Inc. ("Siemens"). In connection with Cerner Corp.'s acquisition of the health services business of Siemens effective February 2, 2015, Siemens assigned the IT and Managed Services Agreement to Cerner HS. In the years since the execution of the IT and Managed Services Agreement, the Debtor has entered into various additional contracts, amendments, schedules and arrangement letters with Siemens and later Cerner (collectively with the IT and Managed Services Agreement, these contracts, amendments, schedules and arrangement letters are referred to as the "Agreement"). *See* the Declaration of Sara Meinhard in Support of Request for Allowance and Payment of an Administrative Expense Claim of Cerner Corporation and Cerner Health Services, Inc. (hereafter, "Meinhard Decl."), ¶ 5.

3. Under the terms of the Agreement, the Debtor licensed from Cerner certain software solutions necessary to the operations of the Debtor's hospital, including the processing and storage of electronic medical records and medical billing. Through the Agreement, the Debtor also purchased professional services, software support, managed services, hosting services, transaction services, sub-licensed software licenses and equipment, all associated with the healthcare information software licensed through the Agreement. Meinhard Decl., ¶ 6.

///

-2-

MPA iso Request for Allowance and Payment of Administrative Expense Claim of Cerner Corporation and Cerner Health Services, Inc.

4. As of the Petition Date, the Debtor owed Cerner at least $2,263,962.33 pursuant to the Agreement for unpaid services. See Cerner's Proof of Claim No. 193.

5. Since the Petition Date, the Debtor has continued to use Cerner's software solutions, but has not made any post-petition payments to Cerner. For the post-petition period from September 30, 2017 through January 2, 2019, the Debtor owes Cerner the amount of $1,502,997.19, which is in addition to the $2,263,962.33 pre-petition amounts owed as set forth in Cerner's Proof of Claim. Meinhard Decl., ¶ 7.

6. Cerner provided post-petition services to the Debtor that have benefited the Debtor. As shown on the statement of account attached hereto as Exhibit A, for the period from the Petition Date to July 20, 2018, the Debtor has incurred $940,771.54 in amounts due to Cerner under the Agreement. Cerner's records show that although the Debtor's hospital was not open during this time, Cerner's systems were being accessed for purposes such as medical billing and fulfilling medical record requests. Meinhard Decl., ¶ 8.

7. On July 20, 2018, the Debtor filed the Debtor's Motion for Authority to Enter Into a Transaction Including Borrowing Funds, Sales of Personal Property and Providing Security, Assumption and Assignment of Contracts and Leases and for Authority to Lease Real Property Pursuant to 11 U.S.C. Sections 105, 362, 364, 365, 901 and 922 ("Motion"), in which it sought authorization to enter into a transaction ("Transaction") with Adventist Health System/West, doing business as Adventist Health, a California non-profit religious corporation ("Adventist Health"). The Transaction would allow the Debtor to reopen its general acute care hospital and clinics, and the Debtor reopened its facilities on October 15, 2018.

8. As of the filing of the Motion, the Debtor knew it intended to reopen its hospital. As shown on Exhibit A of the Meinhard Declaration, the Debtor has incurred $562,225.65 in amounts due to Cerner under the Agreement from the filing of the Motion through January 2, 2019. Meinhard Decl., ¶ 9.

9. Cerner provided post-petition healthcare information software solutions to the Debtor in the ordinary course of the Debtor's business pursuant to a contractual agreement with the Debtor. Use of the software solutions helped to preserve the value of the Debtor's business

-3-

MPA iso Request for Allowance and Payment of Administrative Expense Claim of Cerner Corporation and Cerner Health Services, Inc.

and provided a significant contribution to the Debtor's efforts to reopen its hospital and to consummate the transaction with Adventist Health. Meinhard Decl., ¶ 10.

10. Although the Debtor has incurred an additional $1,502,997.19 under the Agreement since the filing of its bankruptcy case, Cerner is seeking the allowance and payment of an administrative expense claim in the amount of just $562,225.65, the amount incurred under the Agreement to reopen and operate the Debtor's hospital. Meinhard Decl., ¶ 11.

11. Cerner would also accept this amount as a cure for the assumption and assignment of the Agreement (a discount of $3,204,733.87), but the Debtor has chosen to instead reject the Agreement. Meinhard Decl., ¶ 12.

12. Cerner has had discussions with representatives of the Debtor and Adventist Health, who is managing the Debtor's hospital, regarding the Debtor's and Adventist Health's failure to make any payments to Cerner post-petition, and in particular for the use of Cerner's licensed systems to re-open and operate the hospital. The Debtor and Adventist Health have failed and refused to make any payments but they continue to use Cerner's systems. Meinhard Decl., ¶ 13.

13. Cerner reserves its rights as to all amounts due under the Agreement. Meinhard Decl., ¶ 14.

## ANALYSIS

Bankruptcy Code Section 901 incorporates Section 503 as applicable in this Chapter 9 case. Section 503 of the Bankruptcy Code states that an entity shall be allowed an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate…." 11 U.S.C. § 503(b)(1)(A). The Fifth Circuit has held that "[a] prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern." *In re Transamerican Nat'l Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992).

Here, Cerner provided post-petition electronic medical records and medical billing software services to the Debtor pursuant to a contractual agreement with the Debtor. The software

allowed the Debtor to continue to re-open and treat patients with electronic medical records and to process the Debtor's medical billing. Thus, there can be no reasonable dispute that Cerner's systems have been necessary for the Debtor to operate post-petition and to sell substantially all of its assets.

While acknowledging the importance of Cerner's systems and knowingly and actively using Cerner's licensed systems, the Debtor and its manager Adventist Health refuse to pay for such use by attempting to hide behind a technical legal argument that Section 503(b)(1)(A) does not apply in this Chapter 9 case because there is no "estate" to preserve. *See In re City of Vallejo*, 403 B.R. 72, 78 n. 2 (Bankr. E.D. Cal. 2009), *aff'd, IBEW, Local 2376 v. City of Vallejo* (*In re City of Vallejo*), 432 B.R. 262 (E.D. Cal. 2010) (In a Chapter 9 case there is no "estate."). The Debtor's assertion that Section 503(b)(1)(A) is inapplicable in Chapter 9 is misguided and wrong.

First, Section 901 expressly incorporates all of Section 503, which allows for administrative claims. Had Congress intended to limit incorporation of Section 503 to only certain subsections, it would have done so. Indeed, Section 901 does just that for Sections 347(b), 350(b), 364(c), 364(d), 364(e), 364(f), 507(a)(2), 524(a)(1), 524(a)(2), 549(a), 549(c), 549(d), 1111(b), 1123(a)(1), 1123(a)(2), 1123(a)(3), 1123(a)(4), 1123(a)(5), 1123(b), 1123(d), 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), 1127(d), 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1), 1129(b)(2)(A), 1129(b)(2)(B), 1142(b). Clearly, having specified 36 subsections Congress demonstrated that it knew how to limit its incorporation to certain subsections of the Bankruptcy Code when that is what it intended. But instead of limiting the subsections of Section 503 to be incorporated, Congress incorporated all of the Section. The Debtor's assertion that Congress did not intend to incorporate Section 503(b)(1)(A) when Section 901 expressly provides for incorporation of all of Section 503 conflicts with the plain language of the statue and should not be followed. Moreover, to adopt the Debtor's interpretation would improperly render Section 503(b)(1)(A) meaningless, which is contrary to the fundamental rules for statutory construction.

Second, the Debtor's attempt to render 503(b)(1)(A) meaningless conflicts with Section 902(1), which states that when "property of the estate" is used in a section incorporated into

-5-

MPA iso Request for Allowance and Payment of Administrative Expense Claim of Cerner Corporation and Cerner Health Services, Inc.

chapter 9, it means property of the "debtor." Thus, recognizing that Section 901 did not incorporate Section 541 to create "property of the estate," Congress provides the reasonable solution and construction, which is that that references to the "estate" should be read to reference the "debtor." The Court actually adopted this approach in a case relied upon by the Debtor, *In re City of Vallejo*. The issue in *City of Vallejo* was whether the court would approve rejection of the debtor's collective bargaining agreement with a labor union under the standard established by the Supreme Court in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984), which requires a determination of whether the collective bargaining agreement burdens the estate. *Bildisco*, 465 U.S. at 525-26. Instead of shirking this responsibility by simply stating that there is no "estate" in a Chapter 9 case, the *City of Vallejo* court evaluated the burden on the debtor and found that the Chapter 9 debtor must demonstrate that the collective bargaining agreement burdens the debtor's ability to reorganize by proposing and implementing a viable plan of readjustment. *In re City of Vallejo*, 403 B.R. at 78 n. 2.

      This Court should follow the path provided by Section 901, Section 902 and *City of Vallejo* and determine the allowance of Cerner's administrative claim based upon the actual, necessary costs and expenses of preserving the Debtor. Again, Cerner's contribution to preservation of the Debtor cannot be reasonably disputed, as the Debtor and Adventist Health have used and continue to use Cerner's licensed systems to both provide patient care and to obtain their revenues from medical billing. Conversely, the Debtor and Adventist Health could not have re-opened and operated their facility without Cerner, the Debtor's license would have been lost, and there would have been no hospital operations or Transaction without Cerner.

**Other Authorities**

      While one court has denied a request for allowance of an administrative expense claim for post-petition payment obligations, in part, by finding that there was no estate under Chapter 9, *see In re New York City Off-Track Betting Corp.*, 434 B.R. 131 (Bankr. S.D.N.Y. 2010), that case was wrongly decided and its analysis of whether Section 503(b)(1)(A) applies in Chapter 9 was *dicta*. The post-petition claim in that case was for commissions that the Court found did not benefit the debtor, so the Court's refusal to allow an administrative claim should not be

1  surprising, and its discussion about whether Section 503 could be applied if the claim was for
2  services that actually benefitted the debtor was unnecessary. Unlike the claimant in *NYC Off-*
3  *Track Betting*, Cerner's claim is based on services that have provided a benefit and, in fact, have
4  been integral to the Debtor's re-opening and operation of it business. And, as stated in another
5  case, *In re Craig Cty. Hosp. Auth.*, 572 B.R. 340, 350 (Bankr. N.D. Okla. 2017), *NYC Off-Track*
6  *Betting's* reading that the absence of an "estate" in Chapter 9 means that there can be no
7  administrative claim for business operations is "too restrictive." While the *Craig Cty. Hosp. Auth.*
8  decision relied in part on language in the plan of adjustment that provided for the allowance of
9  administrative claims as a basis for refusing to allow the debtor to engage in a "bait and switch,"
10 the same principles are present here. The Debtor and Adventist Health, have knowingly elected to
11 use and continue to use Cerner's systems and should not be permitted to claim that they have no
12 responsibility for payment for the benefits that they have received.

**Sections 903 and 904 Do No Prohibit This Court from Enforcing Section 503**

While Section 903 and 904 protect a municipal debtor from the Court's improper "interference" with its revenues or property, these sections do not give the Debtor the power to take the use of Cerner's systems without compensation. For example, Section 943 provides that the Court shall not confirm a plan of readjustment unless the plan provides for payment of allowed claims under Section 507(a)(2), which includes claims provided for under Section 503. Thus, the Debtor cannot confirm a plan of readjustment that fails to pay Cerner's allowed administrative claim. The Court's power and authority over the decision of whether a proposed plan of readjustment by a Chapter 9 debtor meets the requirements for confirmation and should be confirmed is unquestioned. *See Assoc of Retired Employees v. City of Stockton (In re City of Stockton)*, 478 B.R. 8, 24-25 (Bankr. E.D. Cal. 2012) (a proposed plan of adjustment shall only be confirmed if it meets the requirements of Section 943).

Cerner acknowledges that whether this Court can order payment of administrative claims independent from a plan of adjustment is not well settled. For example, in *City of Stockton*, the Court emphasized Section 904's limits of the court's authority to "interfere with" the municipal debtor's property or revenues. However, the court in that case also emphasized that it was dealing

-7-

MPA iso Request for Allowance and Payment of Administrative Expense Claim of Cerner Corporation and Cerner Health Services, Inc.

with pre-petition obligations of the debtor, not ongoing executory contracts. *See In re City of Stockton*, 478 B.R. at 22. The Court went on to state that the question of the effect of Section 904 on the municipal debtor's payment obligations for executory contracts is "inapposite" to the analysis for pre-petition claims. This dichotomy arises because Section 365, like Section 503, is incorporated into Chapter 9 by Section 901. Having incorporated both of these sections, Congress has reserved the power to the Bankruptcy Court to address the municipal payment obligations for goods and services provided after the commencement of the case. *See* 11 U.S.C. Section 503(a) ("an entity may timely file a request for payment of an administrative expense. . . ."). Thus, the Bankruptcy Court's authority to address executory contracts under Section 365 and to address the debtor's obligations to pay for the costs and expenses of preserving the debtor are not "interference" under Section 904. They are part of the Chapter 9 bankruptcy process. Cerner's Agreement with the Debtor is executory. *See* WW-41 identifying the Agreement as an executory contract proposed for assumption and assignment to Adventist Health.

This Court has not "interfered" in the Debtor's business by ordering or directing the Debtor to use Cerner's services. Rather, the Debtor and its manager, Adventist Health, have made that election on their own. Having independently elected to do so, they cannot now claim that the Court's exercise of the powers provided under Chapter 9 is an improper "interference" prohibited by Section 904. Rather, ordering the Debtor to pay administrative expenses that the Debtor has elected to incur post-petition does not violate Section 904. Accordingly, this Court can and should order the Debtor to pay for the actual, necessary costs and expenses of preserving the Debtor as part of the Court's authority under Section 365 and 503.

**Alternative Grounds for Allowance**

In addition to the foregoing, and in the alternative, the Court should allow Cerner's claim for post-petition goods and services on one or more of the following grounds:

1) Section 503(b)(1) contains a non-exclusive list of "administrative claims." Courts have allowed administrative claims on other grounds based upon "fundamental fairness." *See e.g. Reading Co. v. Brown*, 391 U.S. 471 (1968) and cases following such as *In re Healthco Intern., Inc.*, 272 B.R. 510, 513 (B.A.P 1st Cir. 2002). For the reasons set forth above, it would be

-8-

fundamentally unfair to allow the Debtor to use and benefit from Cerner's systems without paying for the cost of such use.

      2)      To deny Cerner's claim would unjustly enrich the Debtor. The Debtor has knowingly used Cerner's systems to re-open and operate its hospital without paying the costs of those systems. The Debtor has been enriched by the use of Cerner's systems through its contracts with Adventist Health. To deny Cerner's claim would unjustly enrich the Debtor at Cerner's expense.

## CONCLUSION

The services provided by Cerner were "actual, necessary" costs of preserving the value of the Debtor and Cerner is entitled to allowance of its administrative expense claim. Cerner Corporation and Cerner Health Services, Inc. respectfully request that this Court enter an order finally allowing Cerner's administrative expense claim in the amount of $562,225.65, as set forth above; directing payment of the full balance to Cerner; and granting such other and further relief as this Court deems just and equitable.

DATED: January 14, 2019

                                         FELDERSTEIN FITZGERALD
                                         WILLOUGHBY & PASCUZZI LLP

                      By:     */s/ Jason E. Rios*
                              JASON E. RIOS
                              Attorneys for Cerner Corporation and
                              Cerner Health Services, Inc.