7

Charles C.H. Wu (SBN 166756)
(cchwu@wclawyers.com)
Vikram M. Reddy, SBN 228515
(vreddy@wclawyers.com)
Sean J. Haddad (SBN 293960)
(shaddad@wclawyers.com)
**CHARLES C.H. WU & ASSOCIATES, APC**
98 Discovery
Irvine, CA 92618-3105
Telephone: (949) 251-0111

Attorneys for Telnet-RX

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

In re

TULARE LOCAL HEALTHCARE DISTRICT dba TULARE REGIONAL MEDICAL CENTER

Debtor.

Case No. 1:17-13797

Chapter 9

DC No.: CHW-1

**MOTION TO ALLOW LATE-FILED PROOF OF CLAIM**

**Date:** **May 16, 2019**
**Time:** **9:30 a.m.**
**Dept.:** **Department B, Courtroom 13**
**2500 Tulare Street, Fifth Floor**
**Fresno, California 93721**

**Judge:** **Honorable René Lastreto II**

**TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY JUDGE:**

Telnet-RX ("Telnet") files this *Motion to Allow Late-Filed Proof of Claim* (the "Motion") in the Chapter 9 case of Tulare Local Healthcare District, dba Tulare Regional Medical Center (the "Debtor"). In support of the Motion, Telnet is concurrently filing the notice of hearing, index of exhibits, and declaration of Tom Nguyen.

## I. INTRODUCTION

Telnet should be allowed to late-file a proof of claim in the amount of $57,010.58 based on excusable neglect. Telnet did not receive notice of the bar date and did not understand the impact

of the order authorizing the Debtor to reject Telnet's contract. However, the Debtor has been aware of the amount owed to Telnet. The Debtor has not yet filed a plan of adjustment and, if and when the Debtor does, the Debtor should easily be able to incorporate Telnet's relatively small claim. Moreover, Telnet has acted in good faith. At the Debtor's request, and despite the Debtor's bankruptcy filing and the Debtor owing an outstanding pre-petition debt to Telnet, Telnet continued to provide critical remote pharmacy services to the Debtor post-petition. These valuable services allowed the Debtor to operate without a 24-hour pharmacy on-site. Accordingly, and as further detailed below, Telnet should be allowed to late-file a proof of claim.

## II. BACKGROUND

### A. Telnet and the Debtor

Telnet provides cost-effective remote pharmacy services to facilities that are unable to operate a 24-hour pharmacy. Hospitals are required to maintain 24-hour pharmacy services by both the California Department of Public Health and the Centers for Medicare & Medicaid Services. Telnet has provided remote pharmacy services to the Debtor, who was unable to staff a 24-hour pharmacy, since about June 1, 2009. (*See* Nguyen Decl. at ¶ 1.)

On September 30, 2017, the Debtor commenced this case by filing a voluntary petition under Chapter 9 of the Bankruptcy Code [Docket No. 1]. Thereafter, the Debtor's Chief Nursing Officer, Angie Graziano, requested that Telnet continue providing remote pharmacy services to the Debtor despite the Debtor's bankruptcy filing and despite the Debtor owing Telnet for pre-petition services. Attached to the concurrently-filed Index of Exhibits as Exhibit "1" is a true and correct copy of a February 21, 2019 letter from Angie Graziano to Mr. Nguyen reflecting the Debtor's post-petition request. Pursuant to the Debtor's request, Telnet continued to provide remote pharmacy services to the Debtor until October 29, 2017. (*See* Nguyen Decl. at ¶¶ 3-4; *see also* Index of Exhibits, Ex. 1.)

### B. The Debtor's Bankruptcy Case, Notice of Bar Date, and Rejection Order

On January 26, 2018, the Court entered the *Order Fixing Bar Date for Filing Proofs of Claim* [Docket No. 377] (the "Notice of Bar Date"). The Notice of Bar Date set April 10, 2018 (the "Bar Date") as the bar date to timely file a proof of claim against the Debtor. While the proof

of service for the Notice of Bar Date [Docket No. 391] reflects that the Notice of Bar Date was mailed to Telnet, Telnet never received the Notice of Bar Date. (*See* Nguyen Decl. at ¶ 6.)

On October 27, 2018, the Court entered the *Order on Fifth Omnibus Motion Authorizing Rejection of Certain Executory Contracts* [Docket No. 850] (the "Rejection Order"). The Rejection Order authorized the Debtor to reject Telnet's contract and provided that "[t]he date by which any claim resulting from the rejection of this [sic] Designated Contracts shall be filed is December 24, 2018" (the "Rejection Claim Deadline"). Telnet did not understand the import of, and was confused by, the Rejection Order. (*See* Nguyen Decl. at ¶ 5.) Telnet did not understand what the Rejection Order meant by "any claim resulting from the rejection of this Designated Contracts. . . ." (*See id.*) Given that Telnet did not receive the Notice of Bar Date, Telnet's nine-plus year relationship with the Debtor, and the Debtor's post-petition request for Telnet to continue to provide services, and the fact that Telnet and the Debtor renegotiated a payment plan to continue to provide services in spite of the outstanding pre-petition claim, Telnet did not appreciate that it had to or could file a claim by the Rejection Claim Deadline. (*See id.*)

On January 21, 2019, the Debtor filed its most recent status report, the *Fifth Chapter 9 Status Report* [Docket No. 1020] (the "Fifth Status Report"). According to the Fifth Status Report, "[t]he District is in the process of evaluating all claims [and] will file such objections as necessary at some point in the future, likely after plan confirmation." (*See* Index of Exhibits, Ex. 2, Fifth Status Report at 2, lines 22-24.) As of the filing of this Motion, the Debtor has not filed a plan of adjustment. Further, as of the filing of this Motion, a total of $52,960,335.04 in claims have been filed according to the claim register. Attached to the Index of Exhibits as Exhibit "3" is a copy of an excerpt of the claims register reflecting the total claims on file as of April 2, 2019.

## III. <u>TELNET'S CLAIM</u>

If the Motion is granted, then Telnet will file a proof of claim in the amount of approximately $57,010.58. Of this sum, $37,864.58 is for pre-petition services and $19,146.00 is for post-petition services. (*See* Nguyen Decl. at ¶ 7.) Telnet will indicate on the proof of claim that the portion of its claim for post-petition services is entitled to priority as an administrative expense pursuant to 11 U.S.C. §§ 503, 507, and 901. The balance of the claim will be a general

unsecured claim. Telnet reserves the right to seek, by separate motion, an order allowing and requiring payment of the post-petition portion of its claim as an administrative expense.

## IV. THE COURT MAY ALLOW A LATE-FILED CLAIM IF THE FAILURE TO COMPLY WITH THE BAR DATE WAS THE RESULT OF EXCUSABLE NEGLECT

Under Bankruptcy Rule 3003(c)(3), "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." (*See* Bankruptcy Rule 3003(c)(3).) Bankruptcy Rule 3003 applies in chapter 9 cases. (*See* Bankruptcy Rule 3003(a).)

In addition, Bankruptcy Rule 9006(b)(1) provides the following:

> [w]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

(*See* Bankruptcy Rule 9006(b)(1).) In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, the Supreme Court stated that "Rule 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline was the result of excusable neglect." 507 U.S. 380, 382 (1993) (internal quotations omitted). In the Chapter 9 case of *In re City of Detroit, Michigan*, the bankruptcy court held that the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 9 cases. *See* 576 B.R. 552, 558 (Bankr. E.D. Mich. 2017); *see also In re Duarte*, 146 B.R. 985, 961 at n.3 (Bankr. W.D. Tex. 1992) ("Rule 9006(b) does apply to late filed claims by creditors in chapter 9 and 11 cases.") Accordingly, the Court may allow Telnet to file a proof of claim after the Bar Date and the Rejection Claim Deadline where the failure to timely file such was the result of excusable neglect.

## V. TELNET SHOULD BE ALLOWED TO LATE-FILE A PROOF OF CLAIM BASED ON EXCUSABLE NEGLECT

The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *See Pioneer*, 507 U.S. at 395. Whether the failure to comply with the deadline constitutes excusable neglect depends on at least four factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. (*See id.*)

### 1. There Is No Danger of Prejudice to the Debtor

There is no danger of prejudice to the Debtor. The Debtor has been aware of the amount owed to Telnet as the Debtor requested that Telnet continue providing services post-petition and the parties negotiated a payment plan related thereto. (*See* Index of Exhibits, Ex. 1.) If the Motion is granted, Telnet intends to file a proof of claim in the amount of approximately $57,010.58 based on pre-petition services of $37,864.58 and post-petition services of $19,146.00. (*See* Nguyen Decl. at ¶ 7.) This is a small amount relative to the $52,960,335.04 in total claims filed. The Debtor has not yet filed a plan of adjustment. According to the Debtor's most recent status report, the Debtor is in the process of reviewing claims. If and when the Debtor files a plan of adjustment, the Debtor can easily incorporate Telnet's relatively small claim. Thus, the first factor weighs in favor of granting the Motion.

### 2. The Length of the Delay and Its Potential Impact on the Proceedings

Allowing Telnet to file a relatively small claim one year after the Bar Date will not have any detrimental impact on the proceedings. As previously discussed, the Debtor should easily be able to incorporate Telnet's claim into a plan if and when the Debtor files a plan. Further, the Debtor indicated that it intends on filing claim objections after plan confirmation. (*See* Index of Exhibits, Ex. 2 at 2, lines 22-24.) Thus, allowing Telnet's claim now will not inhibit the Debtor's claim review process. Moreover, because the claim that Telnet intends to file is relatively small compared to the $52,693,580.24 in total claims filed, its allowance would not have a material effect on creditors' distributions. Thus, the second factor weighs in favor of granting the Motion.

**3. The Reasons for the Delay Were Not Within Telnet's Control**

The reasons for the delay were not within Telnet's control. Telnet never received the Notice of Bar Date. (*See* Nguyen Decl. at ¶ 6.) Had Telnet received the Notice of Bar Date, Telnet would have timely filed a proof of claim. Moreover, Telnet did not understand the import of, and was confused by, the Rejection Order and Telnet did not understand the meaning of filing "any claim resulting from the rejection of this Designated Contracts." (*See* Nguyen Decl. at ¶ 5.) Moreover, at that time, Telnet was hoping that the Debtor would reopen its hospital and Telnet could resume services. (*See id.*) Given that Telnet did not receive the Bar Date Notice, and considering Telnet's nine-plus year relationship with the Debtor, the Debtor's post-petition request for Telnet to continue to provide services, and the fact that Telnet and the Debtor renegotiated a payment plan for Telnet to continue to provide services in spite of Telnet's outstanding pre-petition claim, Telnet did not appreciate that it had to or could file a claim by the Rejection Claim Deadline (and after the Bar Date had already passed). Thus, the third factor weighs in favor of granting the Motion.

**4. Telnet is Acting in Good Faith**

Telnet is acting in good faith. Telnet has demonstrated good faith by continuing to provide critical services to the Debtor post-petition even though Telnet was owed outstanding amounts for pre-petition work, and Telnet hopes that it will be able to provide services to the Debtor in the future. Further, Telnet did not receive the Notice of Bar Date and upon realizing that the Bar Date and Rejection Claim Deadline had passed, Telnet quickly moved to retain counsel and have its claim allowed. Thus, the fourth factor weighs in favor of granting the Motion.

Accordingly, as detailed above, the *Pioneer* factors weigh heavily in favor of finding that Telnet's neglect was excusable.

## VI. CONCLUSION

Based on the foregoing, Telnet requests that the Court grant the Motion and enter an order:

1. Granting the Motion;

2. Authorizing Telnet to file a proof of claim that will be deemed timely if filed within 30 days after entry of an order granting the Motion; and

3. Granting such other and further relief as the Court deems appropriate.

DATED: April 22, 2019

CHARLES C.H. WU & ASSOCIATES, APC

By: */s/ Charles C.H. Wu*
Charles C.H. Wu
Vikram M. Reddy
Sean J. Haddad
Attorneys for Telnet-RX