38

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Michael L. Wilhelm #101495
Kathleen D. DeVaney #156444
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:    (559) 435-9800
Facsimile:    (559) 435-9868
E-mail:        rileywalter@W2LG.com

Chapter 9 Counsel for Tulare Local Healthcare District, dba
Tulare Regional Medical Center

## IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re | CASE NO.  17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER, | Chapter 9<br><br>WW-95 |
| Debtor. | Date:      TBD<br>Time:      TBD |
| Tax ID #:    94-6002897<br>Address:    869 N. Cherry Street<br>            Tulare, CA 93274 | Place:      2500 Tulare Street<br>            Fresno, CA  93721<br>            Courtroom 13<br>Judge:      Honorable René Lastreto II |

**PLAN FOR THE ADJUSTMENT OF DEBTS DATED AS OF APRIL 30, 2019**

The Tulare Local Health Care District, dba Tulare Regional Medical Center, a Chapter 9 debtor, proposes the following plan of adjustment under Section 941 of the Bankruptcy Code for the resolution of its debts. All impaired Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtor's financial condition, developments during the Chapter 9 Case and for a summary and analysis of the Plan and certain related matters. ***All holders of impaired***

## Table of Contents

ARTICLE I DEFINITIONS AND RULES OF INTERPRETATION ................................... 2

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ............................................ 11

ARTICLE III CLASSIFICATION OF CLAIMS ............................................................ 13

ARTICLE IV TREATMENT OF CLAIMS.................................................................... 14

ARTICLE V IMPLEMENTATION OF THE PLAN ...................................................... 22

ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 26

ARTICLE VII CONDITIONS PRECEDENT ............................................................... 28

ARTICLE VIII EFFECTS OF CONFIRMATION ......................................................... 29

ARTICLE IX RETENTION OF JURISDICTION .......................................................... 31

ARTICLE X AMENDMENT AND WITHDRAWAL OF PLAN ......................................... 33

ARTICLE XI MISCELLANEOUS .............................................................................. 34

*Claims against the Debtor are encouraged to read the Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject the Plan.*

Subject to the restrictions on modifications set forth in Section 942 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Section 10.1 of this Plan, the Debtor expressly reserves the right to alter, amend or modify the Plan one or more times before its effectiveness.

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein have the meanings ascribed to them in Article I of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**1.1 Administrative Claim.** A Claim for an administrative expense of the Chapter 9 Case that is Allowed under Sections 901 and 503 of the Bankruptcy Code and entitled to priority under Section 507 and 901 of the Bankruptcy Code.

**1.2 Administrative Claim Bar Date.** The date established pursuant to the Order by which (a) certain entities asserting a Claim or entitlement for an administrative expense of the Chapter 9 Case must have filed a request for payment with the Bankruptcy Court under Sections 503 and 901 of the Bankruptcy Code (including any requests for priority for the value of goods received by the Debtor within 20 days before the Petition Date pursuant to Section 503(b) of the Bankruptcy Code, whether or not a Claim for such amount has previously been filed in a proof of claim or listed in the List of

Creditors) must be filed with the Bankruptcy Court, or be forever barred from asserting a Claim against the Debtor or the Debtor or its property, voting on the Plan, and sharing in any distribution under the Plan.

**1.3    Adventist Health.** Adventist Health System/West, doing business as Adventist Health.

**1.4    AH Tulare.** Adventist Health Tulare.

**1.5    Agent.** Any shareholder, director, officer, employee, partner, member, agent, attorney, accountant, advisor or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

**1.6    Allowed.** Any Claim that is: (a) (i) timely filed on or before the Bar Date, Administrative Claim Bar Date or Rejection Claim Bar Date, as applicable, (ii) deemed filed on the List of Creditors or (iii) allowed by this Plan and (b) (i) not Disputed, or (ii) allowed, but only to the extent allowed, by the Plan, by any agreement or stipulation between the Debtor and the holder of such Claim, or by a Final Order. The term "Allowed," when used to modify a reference in the Plan to any Claim or Class of Claims means a Claim (or any Claim in any such Class) that is so allowed.

**1.7    Assumption Obligations.** Any undisputed monetary amounts payable to the non-debtor party to any executory contract or unexpired lease, pursuant to Section 365(b)(1) of the Bankruptcy Code, as a condition to the assumption of such contract or lease.

**1.8    Ballot.** The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan. Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

**1.9    Bankruptcy Code.** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 9 Case.

**1.10    Bankruptcy Court.** The United States Bankruptcy Court for the Eastern District of California having jurisdiction over the Chapter 9 Case and, to the extent of

any reference under 28 U.S.C. § 157, the unit of such District Court under 28 U.S.C. § 151.

**1.11    Bankruptcy Rules.**  Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 9 Case.

**1.12    Bar Date.**  April 10, 2018.

**1.13    Bond Document.**  Any indenture, resolution, paying agent agreement, bond instrument or other document that evidences, was executed in connection with, or secures Series A General Obligation Bonds, Series B-1 General Obligation Bonds, Series B-2 General Obligation Bonds or Revenue Bonds.

**1.14    Bond Insurer.** Syncora Guarantee Inc., as bond insurer for the Series A General Obligation Bonds, or any successor.

**1.15    Business Day.**  Any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.16    Cash.**  Cash and cash equivalents including checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.17    Chapter 9 Case.**  The case under Chapter 9 of the Bankruptcy Code in which the District is a debtor pending before the Bankruptcy Court.

**1.18    City of Tulare.** The Municipality of the same name.

**1.19    Claim.**  A claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code.

**1.20    Class.**  A category of holders of Claims which are substantially similar in nature to the Claims of other holders placed in such category, as designated in Article III of this Plan.

**1.21    Confirmation.**  Entry of the Confirmation Order.

**1.22    Confirmation Date.**  The date on which the Bankruptcy Court enters the Confirmation Order.

**1.23    Confirmation Hearing.**  The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan under Section 943 of the Bankruptcy Code, as such hearing may be continued from time to time.

**1.24    Confirmation Order.**  The order of the Bankruptcy Court (a) confirming the Plan in accordance with the Bankruptcy Code, (b) appointing the Disbursing Agent, and (c) determining that the deposit by the Debtor of the Effective Date Deposit into the Plan Fund following the Effective Date shall, pursuant to Section 944(b)(3) of the Bankruptcy Code, secure the payment of the obligations of the Debtor to Creditors as provided in the Plan.

**1.25    Creditor.**  An entity within the meaning of Section 101(10) of the Bankruptcy Code.

**1.26    Debtor.**  The District.

**1.27    Disbursing Agent.**  The District.

**1.28    Disclosure Statement.**  The disclosure statement relating to the Plan including, without limitation, all exhibits and schedules to such disclosure statement, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

**1.29    Disclosure Statement Order.**  The Order Approving Disclosure Statement; Fixing Time For Filing Acceptance Or Rejection Of Plan And Notice Of Confirmation Hearing on Chapter 9 Plan.

**1.30    Disputed.**  Any Claim that is: (a) identified in the List of Creditors as unliquidated, disputed, or contingent and for which no proof of Claim has been filed by the Creditor; or (b) as to which the Debtor or any other proper party-in-interest has interposed a timely objection or request for estimation, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law, and such objection, request for estimation, action to subordinate or limit recovery or other dispute has not been withdrawn or determined by a Final Order.  The

term "Disputed," when used to modify a reference in the Plan to any Claim or Class of Claims, means a Claim (or any Claim in any such Class) that is so disputed. Any claim that is or becomes allowed shall not be later disputed.

**1.31    Distribution.**  A payment of Cash to the holder of an Allowed Claim pursuant to the Plan.

**1.32    District.**  The Tulare Local Health Care District, dba Tulare Regional Medical Center, a political subdivision of the State of California.

**1.33    District Governing Body.**  The elected directors and appointed officers of the District.

**1.34    District Law.**  The Local Health Care District Law under Sections 32000 *et seq*. of the California Health and Safety Code.

**1.35    Effective Date.**  The later of: (a) the first Business Day that is at least sixty (60) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Section 7.2 of the Plan have been satisfied or waived.

**1.36    Final Order.**  An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired; or (b) as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is pending; or (c) as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtor or the Debtor; or (d) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which such order was appealed, or certiorari, reargument or rehearing has determined such appeal, writ of certiorari, reargument, or rehearing, or has denied such appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any

analogous rule under the Bankruptcy Rules, may be filed with respect to such order does not prevent such order from being a Final Order.

**1.37   Hospital.**  The District Hospital and related buildings located at 869 N. Cherry Street, Tulare, California.

**1.38   Liability Claim.**  A Claim against the Debtor pursuant to (a) the Government Claims Law, or (b) the Workers' Compensation Law.

**1.39   Lien.**  A lien as defined in Section 101(37) of the Bankruptcy Code, but not including a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 553, or 549 of the Bankruptcy Code.

**1.40   List of Creditors.**  The *List of Claims* filed by the Debtor on October 27, 2017, pursuant to Section 924 of the Bankruptcy Code and Bankruptcy Rule 1007, as such list may have been or may be supplemented or amended from time to time.

**1.41   Medi-Cal.**  The Department of Health Care Services of the Health and Human Services Agency of the State of California.

**1.42   Medi-Cal Provider Agreement.**  Collectively, the health insurance benefit agreements for the participation of the District Hospital in the Medicaid plan administered by Medi-Cal.

**1.43   Medicare Provider Agreement.**  Collectively, the health insurance benefit agreements for the participation of the District Hospital in the Medicare program established pursuant to the Social Security Act.

**1.44   Person.**  Any individual, corporation, partnership or other "person" as defined in Section 101(41) of the Bankruptcy Code, as well as any governmental agency, governmental unit or associated political subdivision.

**1.45   Petition Date.**  September 30, 2017.

**1.46   Plan.**  This Chapter 9 plan of adjustment, either in its present form or as it may be amended, supplemented or modified from time to time, including all annexed exhibits and schedules.

**1.47   Plan Fund.**  The segregated account established pursuant to the Plan for the purpose of distributions to Class 8 under the Plan.

**1.48   Plan Payments.**  All amounts to be paid by the Debtor or by any Person for services or expenses in or in connection with the Chapter 9 Case or the Plan pursuant to Section 943(b) of the Bankruptcy Code.

**1.49   Plan Supplement.** The compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be filed prior to the date on which the confirmation hearing on the Plan is commenced, including any documents as necessary or desirable to implement the terms of this Plan.  Subject to sections 901 and 1127 of the Bankruptcy Code, the Plan Supplement may also include changes to this Plan

**1.50   Preference Actions.**  Avoidance actions under Sections 547 and 550 of the Bankruptcy Code.

**1.51   Pro Rata.**  Proportionately, so that, with respect to a Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed Amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in the Class entitled to share in the applicable distribution.

**1.52   Reinstated.** Unless otherwise expressly set forth in this Plan, (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) the cure of any such default other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) the reinstatement of the maturity of such Claim as such maturity existed before such default; (iii) compensation of the holder of such Claim for any damages incurred as a result of any

reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensation of the Holder of such Claim for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder. "Reinstate" and "Reinstatement" shall have correlative meanings.

**1.53    Retained Claims and Defenses.**  All claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination held by the Debtor (including rights to or claims under any insurance policy issued to or for the benefit of the Debtor), whether or not pending on the Effective Date, not otherwise released or settled pursuant to a Final Order entered before the Effective Date, including Avoidance Actions.

**1.54    Revenue Bonds.** The District's Tulare Local Health Care District (Tulare County, California) Refunding Revenue Bonds, Series 2007, issued in the original aggregate principal amount of $17,850,000 that, from and after the Effective Date, shall (a) be Reinstated, (b) remain outstanding, and (c) be payable on the terms specified in the related Bond Documents, the Revenue Bond Supplement, and this Plan.

**1.55    Revenue Bonds Claims**. Any Claims relating to or based upon the Revenue Bonds or related Bond Documents.

**1.56    Revenue Bond Supplement.** Any deed of trust, mortgage, security or other documents in the form specified in a Plan Supplement to reflect the treatment of the Revenue Bonds set forth in this Plan.

**1.57    Trustee / Paying Agent.**    Wilmington Trust, N.A., as indenture trustee and paying agent for the General Obligation and Revenue Bonds, or any successor.

**1.58    Series A General Obligations Bonds.  The** District's Tulare Local Health Care District (Tulare County, California) General Obligation Bonds, Election of 2005,

Series A (2007), issued in the original aggregate principal amount of $15,000,000 that, from and after the Effective Date, shall (a) be Reinstated, (b) remain outstanding, and (c) be payable on the terms specified in the related Bond Documents and this Plan.

**1.59   Series A General Obligations Bonds Claims.** Any Claims relating to or based upon the Series A General Obligation Bonds or related Bond Documents.

**1.60   Series B-1 General Obligation Bonds.** The District's Tulare Local Health Care District (Tulare County, California) General Obligation Bonds, Election of 2005, Series B-1 (2009), issued in the original aggregate principal amount of $8,595,000 that, from and after the Effective Date, shall (a) be Reinstated, (b) remain outstanding, and (c) be payable on the terms specified in the related Bond Documents and this Plan.

**1.61   Series B-1 General Obligation Bonds Claims.** Any Claims relating to or based upon the Series B-1 General Obligation Bonds or related Bond Documents.

**1.62   Series B-2 General Obligation Bonds.** The District's Tulare Local Health Care District (Tulare County, California) General Obligation Bonds, Election of 2005, Series B-2 (2009), issued in the original aggregate principal amount of $61,405,000 that, from and after the Effective Date, shall (a) be Reinstated, (b) remain outstanding, and (c) be payable on the terms specified in the related Bond Documents and this Plan.

**1.63   Series B-2 General Obligation Bonds Claims.** Any Claims relating to or based upon the Series B-2 General Obligation Bonds or related Bond Documents.

**1.64   Secured Claim.** Any Claim secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to the value, as determined by the Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of (i) the interest of the holder of such Claim in the property of the Debtor securing such Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

**1.65   Unsecured Claim.** Any Claim that is not (i) an Administrative Claim, (ii) a Secured Claim, or (iii) a Liability Claim or (iv) Administrative Convenience Claim.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1     Unclassified Claims.**  As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with this Article II and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2     Administrative Claims.**

**2.2.1   Generally.**  Administrative Claims are not placed into voting Classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.

Each Administrative Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash on the latest of: (a) the 5th Business Day following the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the 10th Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Debtor may agree.

The Debtor as Disbursing Agent shall make Distributions to the holders of Administrative Claims.

**2.2.2   Administrative Claim Bar Date.**  All requests for allowance and payment of administrative expenses including only unimpaired claims arising post-petition not entitled to priority as an administrative expense of the Chapter 9 Case must be filed by the Administrative Claim Bar Date to be set by Order of the Court.  The Administrative Claim Bar Date applies to any Claim (or portion of a Claim) that has

previously been filed (in a proof of claim) or listed as undisputed (in the List of Creditors). To the extent any Creditor asserts that any portion of its Claim (whether filed or listed) is entitled to priority under Section 503(b) and 901 of the Bankruptcy Code or otherwise, that Creditor must file a timely separate request for payment of such priority portion by the Administrative Claim Bar Date (unless such amount has been previously Allowed by order of the Bankruptcy Court).

The Administrative Claim Bar Date does not apply to (a) Administrative Claims previously Allowed by order of the Bankruptcy Court, or (b) administrative expenses that have previously been paid by the Debtor, in whole or in part, in the ordinary course of the Debtor's business.

Any Administrative Claim that must be filed by the Administrative Claim Bar Date and is not timely filed shall be forever barred from asserting a Claim against the Debtor or the Debtor or its property, voting on the Plan, and sharing in any distribution under the Plan.

**2.2.3 Assumption Obligations and Rejection of Agreements.** The District has already addressed hundreds of executory contracts. Orders assuming, rejecting and assigning are on record. At least fifteen days prior to the Confirmation hearing and pursuant to Article VI the District will determine the treatment of any remaining executory contracts. Any such executory contracts that are not assumed will be deemed rejected, except for Provider Agreements between the District, Medicare, Medi-Cal, Medicaid and the State of California.

**2.3 Source of Payment.** The various sources of revenue are shown on Exhibit A to the Disclosure Statement.

**2.4 Payments for Services of Expenses in the Chapter 9 Case.** All amounts to be paid by the Debtor for services and expenses in the Chapter 9 Case or incident to this Plan must be fully disclosed and reasonable pursuant to Section 943(b)(3) of the Bankruptcy Court. Applications for ratification of all such fees will be

filed on or before the Effective Date. Most such fees have been paid in the ordinary course of business as is allowed in Chapter 9.

### ARTICLE III

### CLASSIFICATION OF CLAIMS

**3.1    Summary of Classification.** In accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article II) are placed in the Classes described below for all purposes, including voting on, confirmation of, and distribution under, the Plan:

| | | |
|---|---|---|
| Class 1 | Series A General Obligation Bonds Claims | Unimpaired. deemed to accept. |
| Class 2 | Series B-1 General Obligation Bonds Claims | Unimpaired, deemed to accept. |
| Class 3 | Series B-2 General Obligation Bonds Claims | Unimpaired, deemed to accept. |
| Class 4 | Revenue Bonds | Impaired, Entitled to Vote. |
| Class 5 | Adventist Health | Unimpaired, deemed to accept. |
| Class 6 | City of Tulare | Unimpaired, Not Entitled to Vote. |
| Class 7 | Miscellaneous Secured Claims | Unimpaired, deemed to accept. |
| Class 8 | Unsecured Claims | Impaired, entitled to vote. |
| Class 9 | Liability Claims | Unimpaired, deemed to accept. |
| Class 10 | Administrative Convenience Claims | Unimpaired, deemed to accept. |

**3.2    Specific Classification.**

      **3.2.1   Class 1 – Series A General Obligation Bonds Claims.**  Class 1 consists of the Series A General Obligation Bonds Claims.

**3.2.2   Class 2 – Series B-1 General Obligation Bonds Claims.**  Class 2.A consists of the Series B-1 General Obligation Bonds Claims.

**3.2.3   Class 3 – Series B-2 General Obligation Bonds Claims.**  Class 3 consists of the Series B-2 General Obligation Bonds Claims.

**3.2.5   Class 4 – Revenue Bonds.**  Class 4 consists of all Revenue Bond Claims.

**3.2.6   Class 5 – Adventist Health.**  Class 5 consists of the claims of Adventist Health.

**3.2.7   Class 6 – City of Tulare.**  Class 6 consists of the claims of the City of Tulare.

**3.2.8   Class 7 – Miscellaneous Secured Claims.**  Class 7 consists of all Secured Claims against the Debtor not included in Classes 1 through 6, if any.  Each holder of a Secured Claim in Class 7 is considered to be in its own separate subclass within Class 7, and each such subclass is deemed to be a separate Class for purposes of the Plan and is numbered Class 7A, Class 7B, etc.

**3.2.9   Class 8 – Unsecured Claims.**  Class 8 consists of all Unsecured Claims against the Debtor.

**3.2.10 Class 9 – Liability Claims.**  Class 9 consists of all Liability Claims against the Debtor.

**3.2.11 Class 10 – Administrative Convenience Claims.**  Class 10 consists of allowed general unsecured claims for $5,000 or less each who make an election to accept 50% payable on the Effective Date.

**ARTICLE IV**

**TREATMENT OF CLAIMS**

**4.1    Classes 1, 2 and 3– General Obligation Bonds.**

**4.1.1   Impairment and Voting.**  Classes 1, 2 and 3 are not impaired under the Plan and are not entitled to vote on the Plan.

**4.1.2   Treatment.**

**Class 1 Series A General Obligation Bonds Claims**. On the Effective Date, the Series A General Obligation Bonds Claims shall be Allowed in the amount of all then outstanding principal, accrued but unpaid interest on the Series A General Obligation Bonds, plus then existing and unpaid Paying Agent and Bond Insurer expenses (including professional fees) regarding the Series A General Obligation Bonds, and all Series A General Obligation Bonds Claims and related Bond Documents shall be Reinstated. From and after the Effective Date, the Series A General Obligation Bonds shall continue to be paid in accordance with the applicable Bond Documents. For the avoidance of doubt, all revenues pledged or otherwise used for payment of Series A General Obligation Bonds Claims shall remain special revenues as defined in Section 902 of the Bankruptcy Code, and the obligations of the Bond Insurer with respect to Series A General Obligation Bonds Claims shall remain in full force and effect on and after the Effective Date. All Claims of the Paying Agent and Bond Insurer for fees, costs and expenses arising in connection with the Series A General Obligation Bonds shall be paid in full in Cash on presentment, or as otherwise agreed by the Paying Agent, Bond Insurer and District, as applicable. The District shall maintain the existing cash management system used with respect to the collection of ad valorem taxes and subsidy payments and the distribution of payments to the Trustee/Paying Agent. Class 1 is unimpaired.

**Class 2 Series B-1 General Obligation Bonds Claims**. On the Effective Date, the Series B-1 General Obligation Bonds Claims shall be Allowed in the amount of all then outstanding principal, accrued but unpaid interest on the Series B-1 General Obligation Bonds, plus then existing and unpaid Paying Agent expenses (including professional fees) regarding the Series B-1 General Obligation Bonds, and all Series B-1 General Obligation Bonds Claims and related Bond Documents shall be Reinstated. From and after the Effective Date, the Series B-1 General Obligation Bonds shall continue to be paid in accordance with the applicable Bond Documents. For the avoidance of doubt, all revenues pledged or otherwise used for payment of Series B-1

1  General Obligation Bonds Claims shall remain special revenues as defined in Section

2  902 of the Bankruptcy Code.  All Claims of the Paying Agent for fees, costs and

3  expenses arising in connection with the Series A General Obligation Bonds shall be

4  paid in full in Cash on presentment, or as otherwise agreed by the Paying Agent and

5  District. The District shall maintain the existing cash management system used with

6  respect to the collection of ad valorem taxes and subsidy payments and the distribution

7  of payments to the Trustee/Paying Agent Class 2 is unimpaired.

8          **Class 3 Series B-2 General Obligation Bonds Claims**.  On the Effective

9  Date, the Series B-2 General Obligation Bonds Claims shall be Allowed in the amount

10 of all then outstanding principal, accrued but unpaid interest on the Series B-2 General

11 Obligation Bonds, plus then existing and unpaid Paying Agent expenses (including

12 professional fees) regarding the Series B-2 General Obligation Bonds, and all Series B-

13 2 General Obligation Bonds Claims and related Bond Documents shall be Reinstated.

14 From and after the Effective Date, the Series B-2 General Obligation Bonds shall

15 continue to be paid in accordance with the applicable Bond Documents.  For the

16 avoidance of doubt, all revenues pledged or otherwise used for payment of Series B-2

17 General Obligation Bonds Claims shall remain special revenues as defined in Section

18 902 of the Bankruptcy Code and all subsidy payments from the United States Treasury

19 with respect to the Series B-2 General Obligation Bonds shall be applied to the Series

20 B-2 General Obligation Bonds in accordance with the District's practices during the

21 Chapter 9 Case, or as otherwise agreed by the Paying Agent and District.  All Claims of

22 the Paying Agent for fees, costs and expenses arising in connection with the Series B-2

23 General Obligation Bonds shall be paid in full in Cash on presentment, or as otherwise

24 agreed by the Paying Agent and District. The District shall maintain the existing cash

25 management system used with respect to the collection of ad valorem taxes and

26 subsidy payments and the distribution of payments to the Trustee/Paying Agent.  Class

27 3 is unimpaired.

28

**4.2     Class 4 Revenue Bonds Claims.**  On the Effective Date, and consistent with the orders entered August 3 and 7, 2018 and February 22, 2019, the Revenue Bonds Claims shall be Allowed in the amount of all then outstanding principal, accrued but unpaid interest on the Revenue Bonds, plus then existing and unpaid Revenue Bonds Trustee expenses (including professional fees), and all Revenue Bonds Claims and related Bond Documents shall be Reinstated subject to the terms of this Section. The Revenue Bond Supplement shall:

(a)     specify the terms for the District's return to compliance with the payment schedule for the Revenue Bonds.

(b)     memorialize revisions made to the definitions of Revenues and Gross Revenues under the related Bond Documents during the Chapter 9 Case to expressly includes District income from ad valorem taxes on real property, other District income from taxes, proceeds thereof, and all District rights to receive the same, except to the extent pledged to and necessary to pay District obligations on District general obligation bonds in existence as of the Effective Date;

(c)     memorialize the District's agreement with the Trustee previously reached during the pendency of this Chapter 9 case to pledge additional real and personal property as collateral for the Revenue Bonds; and

(d)     otherwise ratify the District's obligations under the related Bond Documents.

From and after the Effective Date, the Revenue Bonds shall continue to be paid in accordance with the applicable Bond Documents, as modified by this Plan and the Revenue Bond Supplement.  For the avoidance of doubt, all revenues pledged or otherwise used for payment of Revenue Bonds Claims shall remain special revenues as defined in Section 902 of the Bankruptcy Code.  All claims of the Revenue Bonds Trustee for fees, costs and expenses arising in connection with the Revenue Bonds shall be paid in full in Cash on presentment, or as otherwise agreed by the Revenue Bonds Trustee and District. The District shall maintain the existing cash management

system used with respect to the collection of ad valorem taxes and subsidy payments and the distribution of payments to the Trustee/Paying Agent. Class 4 is impaired and is entitled to vote to accept or reject this Plan in accordance with procedures approved by the Bankruptcy Court.

**4.3      Class 5 – Adventist Health.**

This claim is unimpaired and it will be paid in accordance with the terms of the Credit Agreement and the Orders dated August 3 and August 7, 2018.

**4.4      Class 6 – City of Tulare.**

This Class 6 claim is unimpaired and it will be paid in accordance with its terms, and the Order dated February 22, 2019.

**4.5      Class 7 – Miscellaneous Secured Claims.**

**4.5.1    Impairment and Voting.**   The Debtor is not currently aware of the existence of any miscellaneous Class 7 Secured Claims.  To the extent any such claims are asserted and Allowed then, on or before the Effective Date of the Plan, the Debtor will select one of the following alternative treatments for each holder of an Allowed Secured Claim: (1) the Debtor will leave unaltered the legal, equitable, and contractual rights constituting such Claim, including, without limitation, any Liens related thereto and, on the Effective Date, the Claim shall be reinstated and cured, (2) the Debtor will abandon or surrender to the holder of such Claim the property securing the Claim, in full satisfaction and release of such Claim, or (3) the Debtor will make a Cash payment equal to the amount of such Claim, or such lesser amount to which the holder of the Claim and the Debtor shall agree, in full satisfaction and release of the Claim.

**4.6      Class 8 – Unsecured Claims.**

**4.6.1    Impairment and Voting.**  Class 8 is impaired under the Plan and the holders of Unsecured Claims are entitled to vote on the Plan.

**4.6.2    Treatment.**  Each holder of an Allowed Unsecured Claim shall receive, in exchange for and in full and final satisfaction of such Claim, a Pro Rata share

of the distributions to Class 8 from the Plan Fund. The Debtor estimates that the aggregate amount of allowed Unsecured Claims will be approximately $16,500,000 to $26,000,000 million held by approximately 250 ± Class 8 Creditors.[1] The Debtor further estimates that the aggregate percentage distribution to the holders of an Allowed Unsecured Claim will be 19.2% to 30.3%, which is more than will be received if this Chapter 9 case is dismissed. The payouts will be $500,000 in 2025, $750,000 in 2026, $1,000,000 in 2027, $1,250,000 in 2028 and $1,500,000 in 2029. Payments will be made semi-annually to Class 8 Claimants with Allowed Claims for 5 years.

**4.7　Class 9 – Liability Claims.**

**4.7.1　Impairment and Voting.** Class 9 is not impaired under the Plan and the holders of Liability Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.7.2　Treatment.** Each holder of a Liability Claim shall be paid from the proceeds of any applicable insurance policy or coverage agreement issued to or for the benefit of the District. The District will honor any "deductible" from its operating revenues. These amounts, to the extent determined to constitute a liability of the Debtor, would be payable under applicable insurance or coverage agreements (except any deductible). These claims are provided for in Class 9.

**4.8　Class 10 – Administrative Convenience Claims**

**4.8.1 Impairment and Voting.** Class 10 is a subclass of Class 8 and is comprised of Administrative Convenience Class Claims, which are defined in the Plan as Allowed Claims that are for $5,000 or less whose holders irrevocably elect to be reduced to 50% of the allowed amount as evidenced on the Ballot submitted by such holder. Under the Plan, on the Effective Date, each holder of an Allowed Administrative

---

[1] The Debtor recognizes that there is a significant variation between the low and high ends of the unsecured claims estimate. Much of this is due to large disputed proofs of claim filed by governmental entities by which large overpayment claims are being asserted. The Debtor has filed all necessary cost reports and believes that once these audits are completed, in 24-36 months, the overpayment claims will be eliminated and about $300,000 of escrowed funds will be released back to the Debtor. Other reductions may be achieved through objections to claims and pending or to be filed litigation. Objections to these overpayment claims are on file or soon will be.

Convenience Class Claim who opts into Class 10 will be paid said amount in complete settlement of such claim. The Class 10 Claims are not impaired. The following Class 8 claimants are eligible to opt into to Class 10.

| Name | Filed Amt. |
|---|---|
| Chemsci Technologies, Inc. | $ 4,860.00 |
| Tri-Anim Health Services Inc | $ 4,722.96 |
| Will Tiesiera Ford | $ 4,450.04 |
| Res Com Pest Control | $ 4,423.00 |
| Shred−It Usa Llc | $ 4,349.51 |
| Freedom Medical, Inc. | $ 4,103.44 |
| Bayer Healthcare | $ 3,890.52 |
| Cummins West Inc. | $ 3,881.44 |
| Alimed Inc | $ 3,825.94 |
| Language Line Services | $ 3,740.07 |
| Leaf Capital Funding | $ 3,705.52 |
| GE Healthcare Life Sciences | $ 3,583.27 |
| Baxter Healthcare Corp | $ 3,515.53 |
| HD Supply Facilities Maintenance Ltd | $ 3,375.11 |
| Stryker Instruments | $ 3,170.43 |
| Sigma-Aldrich / Supelco | $ 3,013.68 |
| Allied Reliability Inc. | $ 2,950.00 |
| Kerma Medical Products, Inc. | $ 2,938.27 |
| Iron Mountain | $ 2,718.51 |
| Sumwalt, Todd | $ 2,605.00 |
| Src. Medical | $ 2,509.89 |
| A&M Compressors | $ 2,479.27 |
| Agilent Technologies, Inc | $ 2,445.99 |
| Lifenet Health | $ 2,415.00 |
| Aetna | $ 2,033.42 |
| Rotoco Inc., Dba Roto-Rooter | $ 1,825.00 |
| Mobile Mini, Llc | $ 1,816.24 |
| Trackstar Printing, Inc. | $ 1,718.79 |
| Todd Mackey | $ 1,320.00 |
| Leticia York, Slp | $ 1,260.00 |
| Maine Standards Company, Llc | $ 1,102.96 |
| Memories Unlimited | $ 1,000.83 |
| Morris Levin & Son | $ 982.01 |
| Federal Insurance Company | $ 971.00 |
| J's Communications, Inc. | $ 914.10 |
| Tech-Time Communications, Inc. | $ 875.00 |
| AT&T Corp. | $ 828.73 |
| Pacific Bell Telephone Company | $ 796.43 |

| Name | Filed Amt. |
|------|-----------:|
| AT&T Mobility | $ 758.77 |
| Marketlab Inc | $ 738.71 |
| Henry Schein, Inc. | $ 730.25 |
| Av Now, Inc. | $ 658.97 |
| Landauer Inc | $ 642.09 |
| Mimedx Group Inc. | $ 627.00 |
| Ansell Sandel Medical Solutions, Llc | $ 561.04 |
| Axces Industrial Supply | $ 521.51 |
| Mobile Modular Management Corp | $ 509.98 |
| Abbott Nutrition | $ 454.07 |
| El Sohly Laboratories, Inc. | $ 453.20 |
| American Academy Of Pediatrics | $ 413.58 |
| Green Box Rentals, Inc | $ 351.80 |
| Identicard Systems | $ 270.63 |
| Uline | $ 217.41 |
| AT&T Long Distance, LLC | $ 170.41 |
| Instant Storage | $ 164.63 |
| Your Water Birth | $ 105.00 |
| Helmer Scientific | $ 79.83 |
| Seton Identification Products | $ 56.65 |
| **Total** | **$ 109,632.43** |

**4.8.2 Treatment**. Each holder of a Class 10 claim who elects such treatment will be paid 50% of the claim amount on the Effective Date.

**4.9     Nonconsensual Confirmation.**

In the event that any impaired Class of Claims does not accept the Plan in accordance with Sections 1126 and 1129(a)(8) of the Bankruptcy Code, the Debtor hereby reserves the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable as to the holders of Claims in any such Class, or (ii) amend or modify the Plan in accordance with its terms or as otherwise permitted.

**4.10   Risk Factors.**

There are risks associated with the Debtor's ability to perform the Plan including:

- Ad Valorem tax revenues may decline.
- Cost and expenses of maintaining District properties may be greater than projected.

- Lessors of real property may default on payments of rent.
- AH Tulare may not continue to lease the Hospital.
- Malpractice awards could exceed coverage.
- Rent revenues may not be achieved.
- Anticipated sales of assets may fail.
- Recoveries in litigation and avoidance claims may not be achieved.
- Additional costly seismic and other regulations may be imposed on the District.
- Government laws and rules may result in decreased funding.
- California and federal laws may impose much greater expenses on healthcare districts.
- Claims may exceed the high end guestimate.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for the implementation of the Plan.

**5.1     Retention of Property.** Upon the Effective Date, the Debtor shall be vested with all right, title and interest in all of the assets of the Debtor for the purposes set forth in this Plan.

**5.2     Post-Confirmation Operations.**

**5.2.1   Continued Business.**

On and after the Effective Date, the Debtor shall continue to operate pursuant to the District Law and other applicable law. The Debtor will continue to own and maintain the Hospital and will monitor the lease of the Hospital, own, maintain and operate its other assets, provide healthcare services and programs, and may use, acquire and dispose of its assets without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code.

**5.2.2   Payment of Expenses.** The expenses incurred by the Debtor related to the Plan on and after the Effective Date (including the fees and costs of

attorneys and other professionals), may be paid in the ordinary course of its affairs without further notice to Creditors or approval of the Bankruptcy Court.

       **5.2.3  Governance.**  On and after the Effective Date, the management, control and operation of the Debtor shall continue to be the general responsibility of the District Governing Body.  The members of the District Governing Body shall serve in accordance with applicable non-bankruptcy law.

      **5.3    Plan Fund.**  On the Effective Date, the Debtor shall establish the Plan Fund for purposes of making Distributions to Class 8 under the Plan. The Debtor will deposit into the Plan Fund sufficient funds to make the semi-annual distributions to Class 8 as provided in the Plan. The Plan Fund shall secure the payment of the obligations of the Debtor to Class 8 as provided in the Plan.  The Confirmation Order shall appoint the Debtor as the Disbursing Agent under the Plan for the purposes set forth in Section 944(b)(2) of the Bankruptcy Code.

      **5.4    Retained Claims and Defenses.**

       **5.4.1  Retention.**  None of the Retained Claims or Defenses shall be precluded, barred or subject to estoppel or laches because the Plan or the Disclosure Statement does not specifically identify a Retained Claim or Defense or the entity against whom a Retained Claim or Defense may be asserted.  **Parties in interest, including Creditors, may not rely on the absence of a reference in the Disclosure Statement or the Plan as any indication that the Debtor will not pursue any available Retained Claims and Defenses against such parties**.  The Bankruptcy Court shall retain jurisdiction to determine any Retained Claims or Defenses.  Following the Effective Date, the Debtor may compromise or dispose of the Retained Claims and Defenses including avoidance claims without further notice to Creditors or authorization of the Bankruptcy Court.

       **5.4.2  Investigation and Enforcement.**  Pursuant to Section 901 and 1123(b)(3) of the Bankruptcy Code, the Debtor shall have and may enforce all lawful powers and authority under the Bankruptcy Code to the extent of and consistent with its

authority under the Plan. The Debtor may investigate Retained Claims and Defenses and may assert, settle, adjust or enforce any such claims or defenses without further court approval.

    **5.4.3 Preference Actions Not Waived.** The statute of limitation for the Debtor to commence actions to recover preferential transfers under Section 547 of the Bankruptcy Code will expire on January 27, 2020, which is two years after entry of the Order for Relief. The Debtor has reviewed potential Preference Actions under Section 547 of the Bankruptcy Code against Creditors that received payments within the 90 and 365 days preceding the Petition Date and determined that the pursuit of such actions will be cost effective and all rights to pursue all preference or other avoidance actions are preserved.

    **5.5 Distributions.**

    **5.5.1 Reserves for Disputed Claims.** On the Effective Date, and from time to time thereafter, the Debtor will establish adequate and prudent reserves in an amount that is sufficient to make the payments required under the Plan to the holders of Disputed Claims against the Debtor, as and when such claims may be Allowed, amended, settled or withdrawn. The funds reserved on account of Disputed Claims will not be distributed but will be retained by the Disbursing Agent in accordance with this Plan pending resolution of such Disputed Claims. No holder of a Disputed Claim shall have any Claim against the reserve with respect to such Claim until such Disputed Claim shall become an Allowed Claim.

    **5.5.2 Full and Final Satisfaction.** Upon the Effective Date, the Debtor as the Disbursing Agent shall be authorized and directed to distribute the amounts required under the Plan according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan and the Debtor shall have no further liability on account of any Claims except as set forth in this Plan.

**5.5.3  No Post-Petition Interest.** For purposes of computing distributions under the Plan, unless specifically allowed by the Plan or order confirming the Plan, no Claim shall include any interest, penalty, premium or late charge accruing on such claim from and after the Petition Date, other than as permitted pursuant to Section 506(b) of the Bankruptcy Code or by a Final Order of the Bankruptcy Court.

**5.5.4  Distribution Procedures.** Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Debtor under the Plan shall be distributed in such amounts and at such times as is provided for by the Plan. The Debtor shall file all objections to Disputed Claims on or before ninety (90) days of the Effective Date, unless the Bankruptcy Court, for cause shown, extends such deadline.

**5.5.5  Disputed Claims.** The Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Confirmation Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan.

**5.5.6  Unclaimed Distributions.** Any entity which fails to claim any Cash within ninety (90) days from the date upon which a Distribution is first made to such entity shall forfeit all rights to such Distribution under the Plan and the Disbursing Agent shall be authorized to cancel any Distribution that is not timely claimed. Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Debtor. Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditor shall have no claim whatsoever against the Debtor.

**5.5.7  Setoff.** Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment the Debtor may have against any Creditor. The Debtor may, but is not required to, set off or recoup against any

Claim and the payments or other distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtor may have against the holder of such Claim.

     **5.5.8  Taxes.**  The Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from Distributions.  The Disbursing Agent shall be authorized to take all actions necessary to comply with applicable withholding and reporting requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that receives a Distribution shall have responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation on account of such Distribution.

     **5.5.9  De Minimis Distributions.**  If any interim distribution under the Plan to the holder of an Allowed Claim (other than Class 10) would be less than $50.00, the Disbursing Agent may withhold such distribution until a final distribution is made to such holder.  If any final distribution under the Plan to the holder of an Allowed Claim would be less than $50.00, the Disbursing Agent may cancel such distribution.  Any unclaimed distributions shall be treated as unclaimed property.

**ARTICLE VI**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

     **6.1**    **Assumption.**

     The Plan provides the Debtor will assume only the executory contracts and unexpired leases of the Debtor that (i) have otherwise been assumed by a prior order of the Bankruptcy Court, or (ii) are the subject of a pending motion to assume as of the Confirmation Date. All other remaining such agreements will be deemed rejected, except for Provider Agreements between the District, Medicare, Medi-Cal, Medicaid and the State of California .

     **6.2**    **Rejection.**  On the Effective Date, unless previously ordered or subject to a then pending motion to assume or reject, pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Debtor will reject all remaining executory contracts that have not

1  been previously assumed or rejected (together with any additions, deletions,
2  modifications or other revisions to such Exhibits as may be made by the Debtor prior to
3  the Confirmation Date), except for Provider Agreements between the District, Medicare,
4  Medi-Cal, Medicaid and the State of California. Each such executory contract and
5  unexpired lease shall include any modifications, amendments and supplements to such
6  agreement. Any Person asserting any Claim for damages arising from the rejection of
7  an executory contract or unexpired lease of the Debtor under this Plan shall file such
8  Claim on or before the Rejection Claim Bar Date (unless governed by an earlier Order),
9  or be forever barred from (i) asserting such Claim against the Debtor, the Debtor or any
10  property of the Debtor, and (ii) sharing in any distribution under the Plan.

11  **6.3    Assumption Obligations.**  Any Person that fails to object to the
12  assumption by the Debtor of an executory contract or unexpired lease on or prior to the
13  deadline set or previously set by the Bankruptcy Court for filing objections to
14  Confirmation of the Plan shall be forever barred from (i) asserting any other, additional,
15  or different amount on account of such obligations against the Debtor or the Debtor, and
16  (ii) sharing in any other, additional or different distribution under the Plan on account of
17  such obligations.  If and to the extent any Assumption Obligation is determined and
18  allowed by the Bankruptcy Court, the Debtor shall satisfy such cure Assumption
19  Obligation by making a Cash payment in the manner provided for Administrative Claims
20  under Article II of the Plan.

21  **6.4        Effect of Confirmation Order.**

22  **6.4.1**    The Confirmation Order  shall constitute an order of the
23  Bankruptcy Court approving, as of the Effective Date, the assumption or rejection by the
24  Debtor pursuant to Sections 365(a), 901 and 1123(b)(2) of the Bankruptcy Code of all
25  executory contracts and unexpired leases identified under Article VI of the Plan.  The
26  contracts and leases identified in the Plan will be assumed or rejected, respectively,
27  only to the extent that such contracts or leases constitute pre-petition executory
28  contracts or unexpired leases of the Debtor, and the identification of such agreements

under the Plan does not constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder.  The Plan does not affect any executory contracts or unexpired leases that (a) have been previously assumed, rejected or terminated  prior to the Confirmation Date, (b) are the subject of a pending motion to assume, reject or terminate as of the Confirmation Date, or (c) are not identified for assumption or rejection in the Plan.

**6.5    Insurance/Coverage Agreements.**  Any insurance policy issued to or for the benefit of the Debtor (or any member of the District Governing Body or other Agent of the Debtor) before or after the Petition Date shall remain in full force and effect after the Effective Date according to its terms, including agreement with BETA.

**6.6    Indentures.**  The General Obligation and Revenue Bond Indentures relating to Classes 1 to 4 shall remain in full force and effect after the Effective Date according to their respective terms.

### ARTICLE VII

### CONDITIONS PRECEDENT

**7.1    Conditions to Confirmation.**  The following is a condition to the confirmation of the Plan:  the Confirmation Order shall have been entered and shall be in a form and substance reasonably acceptable to the Debtor.

**7.2    Conditions to Effectiveness.**  The following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Date shall have occurred;

(b)    The Confirmation Order must be reasonably acceptable and approved by the Bond Insurer and Paying Agent;

(c)    The Revenue Bond Supplement on terms acceptable to the Debtor and Trustee shall have been executed; and

(d)    The Confirmation Order shall be a Final Order, except that the Debtor reserves the right, in its sole discretion, to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order.

**7.3    Waiver of Conditions.**  Conditions to Confirmation, except as provided in 7.2(b) and (c) above, and the Effective Date may be waived in whole or in part by the Debtor at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

## ARTICLE VIII

## EFFECTS OF CONFIRMATION

**8.1    Binding Effect.**  The rights afforded under the Plan and the treatment of Claims under the Plan shall be the sole and exclusive remedy on account of such Claims against the Debtor and the Debtor, including any interest accrued on such Claims from and after the Petition Date or interest which would have accrued but for the commencement of the Chapter 9 Case.  Confirmation of the Plan shall bind and govern the acts of the Debtor and any Creditor of the Debtor, whether or not: (i) a proof of Claim is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim is allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim has accepted the Plan.

**8.2    Vesting.**  Upon the Effective Date, all property of the Debtor shall vest in the Debtor.  Following the Effective Date, the Debtor may use, transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**8.3    Discharge.**  The rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge, and release of all Claims by Creditors against the Debtor.  Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall discharge the Debtor from all Claims or other debts that arose at any time before the Effective Date whether or not: (i) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is Allowed pursuant to Section 502 of

the Bankruptcy Code; or (iii) the holder of a Claim has accepted the Plan. As of the Effective Date, all Creditors that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other act, to collect, recover or offset any such Claim as a personal liability of the Debtor or the Debtor to the full extent permitted by Sections 524(a)(1) and (2) of the Bankruptcy Code.

**8.4    No Exceptions to Discharge Under Plan.** There are no debts of the Debtor that are excepted by the Plan from the discharge afforded the Debtor under Section 944 of the Bankruptcy Code. All debts including debts arising post-petition not qualified as administrative expense claims will be discharged upon Confirmation.

**8.5    Limitation of Liability.** The Debtor and its Agents shall have all of the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.

**8.6    Exoneration.** The Debtor and its Agents, attorneys, financial consultants and the Bond Trustee, Paying Agent and Syncora Guarantee Inc. , and their attorneys shall not be liable, other than for gross negligence or willful misconduct, to any holder of a Claim or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date and prior to the Effective Date in connection with: (a) the management or operation of the Debtor or the discharge of its duties under the Bankruptcy Code, (b) the implementation of any of the transactions provided for, or contemplated in, the Plan, (c) any action or inaction taken in connection with either the enforcement of the Debtor's rights against any entities or the defense of Claims asserted against the Debtor with regard to the Chapter 9 Case, (d) any action taken in the negotiation, formulation, development, proposal, disclosure, Confirmation or implementation of the Plan, or (e) the administration of the Plan or the assets and property to be distributed pursuant to the Plan. The exonerated persons, and their respective Agents, may reasonably rely upon

the opinions of their respective counsel, accountants, and other experts and professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of gross negligence or willful misconduct; provided however, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination or finding of bad faith, gross negligence or willful misconduct. Any action, suit or proceeding by any holder of a Claim or any other entity contesting any action, omission, forbearance from action, decision or exercise of discretion in connection with the matters in subsections *(a)* through *(e)* above, by the Debtor, the exonerated persons and their respective Agents, or any of them, whether commenced before or after the Effective Date, shall be commenced only in the Bankruptcy Court.[2]

## ARTICLE IX

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 9 Case after the Effective Date pursuant to Section 945(a) of the Bankruptcy Code, including, without limitation, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)     Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or Assumption Obligations related to, such assumption or rejection;

---

[2] For the avoidance of doubt, nothing herein shall affect the rights and obligations of Adventist Health, AH Tulare, the Debtor and the Reorganized Debtor under or pursuant to the Lease, the APA, the Credit Agreement, the Security Agreement, the Deed, the MSA or any related documents, nor the loan agreements with the City of Tulare.

Chapter 9 Plan of Adjustment

M:\S-U\TRMC\PLEADINGS\WW-95 Chapter 9
Plan\Plan.052219.nam.docx

(c)  Ensure that Distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(d)  Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving the Debtor that may be pending on the Effective Date;

(e)  Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(f)  Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

(g)  Modify the Plan before or after the Effective Date under Section 942 of the Bankruptcy Code or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan and the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(h)  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided in the Plan;

(i)  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(j)      Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(k)      Hear and determine Retained Claims and Defenses commenced by the Debtor or the Debtor; and

(l)      Enter a Final Decree closing the Chapter 9 Case pursuant to Section 945(b) of the Bankruptcy Code which provides for the retention of jurisdiction by the Bankruptcy Court for purposes of this Article IX.

## ARTICLE X

## AMENDMENT AND WITHDRAWAL OF PLAN

**10.1    Amendment of the Plan.**  At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under Section 942 of the Bankruptcy Code, <u>provided that</u>, such alteration, amendment, or modification does not materially and adversely affect the treatment and rights of the holders of Claims under this Plan. After the Confirmation Date and before the effectiveness of the Plan, the Debtor may, under Section 942 of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, or as otherwise may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**10.2    Revocation or Withdrawal of the Plan.**  The Debtor reserves the right to revoke or withdraw this Plan at any time in its sole discretion.  If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed a waiver of any Claims by or against the Debtor or any other Person in

any further proceedings involving the Debtor or an admission of any sort, and this Plan and any transaction contemplated by this Plan shall not be admitted into evidence in any proceeding.

## ARTICLE XI

## MISCELLANEOUS

**11.1    Effectuating Documents; Further Transactions; Timing.**  The Debtor shall be authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All transactions required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

**11.2    Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, the Debtor and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of California, without giving effect to California's choice of law provisions.

**11.3    Modification of Treatment.**  The Debtor may modify the treatment or payment terms of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

**11.4    Method of Payment.**  The Debtor shall make Cash payments: (X) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Debtor in its sole discretion, or by wire transfer from a domestic bank, at the Debtor's option, and (Y) by first-class mail (or by other equivalent or superior means as determined by the Debtor).  Whenever any deposit, payment or distribution to be made under the Plan is due on a day other than a Business Day, such deposit, payment or distribution may instead be made, without interest, on the immediately following Business Day.

**11.5    Notice of Confirmation.** As soon as practicable following the Effective Date of the Plan, the Debtor shall file and serve notice of the entry of the Confirmation Order in the manner required under Bankruptcy Rule 2002(f). The notice shall further identify the Effective Date and shall set forth the Administrative Claim Bar Date, the Rejection Claim Bar Date and any other deadlines that may be established under the Plan or the Confirmation Order.

**11.6    Severability of Plan Provisions.** If, prior to the Confirmation Date, any provision of the Plan is judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of the Plan shall not in any way be affected or impaired thereby and the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable and consistent with the original purpose of the term or provision held to be invalid. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms

**11.7    Notices.** Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (x) the first business day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service; or (y) the third calendar day after deposit in the United States mail, with proper first class postage prepaid. If such notice is made to the Debtor, it shall be addressed as follows:

> Tulare Local Health Care District, dba Tulare Regional Medical Center
> c/o Walter Wilhelm Law Group
> Attn: TRMC
> 205 E. River Park Cir., Ste. 410
> Fresno, CA 93720
> rileywalter@W2LG.com

///

-35-

McCormick Barstow, et al.
Todd Wynkoop
7647 N. Fresno St.
Fresno, CA 93720
todd.wynkoop@mccormickbarstow.com

And

Tulare Local Health Care District, dba Tulare Regional Medical Center
Attention:  Chief Executive Officer
869 N. Cherry Street
Tulare, CA 93274
sormonde@tulareregional.org

**11.7.1 Notice to Creditors.**  Notices to Creditors will be sent in accordance with the Order prescribing scope of notice entered on April 29, 2019 (ECF No. 1340).

**11.7.2 Post Confirmation Notices.**  Following the Effective Date, notices will only be served on the Debtor and those Creditors who file with the Court and serve upon Walter Wilhelm Law Group a request, which includes such Creditor's name, contact person, address, telephone number and E-mail address, that such Creditor receive notice of any post-Confirmation matters.  Creditors who had previously filed with the Court requests for special notice of the proceedings and other filings in the Chapter 9 Case will not receive notice of post-Confirmation matters unless such Creditors file a new request in accordance with this Section 11.7.2.

**11.8  Incorporation by Reference.**  All exhibits, schedules and supplements to the Plan are incorporated and are made a part of the Plan as if set forth in full in the Plan.

**11.9  Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Any reference to "day" or "days" shall mean calendar days, unless otherwise specified herein.

///

///

Chapter 9 Plan of Adjustment

M:\S-U\TRMC\PLEADINGS\WW-95  Chapter 9
Plan\Plan.052219.nam.docx

**11.10 Conflict of Terms.** In the event of a conflict between the terms of this Plan and the Disclosure Statement, the terms of this Plan will control.

Submitted By:

DATED: May 22, 2019

WALTER WILHELM LAW GROUP
a Professional Corporation

By: _____
Riley C. Walter, Attorneys for
Tulare Local Healthcare District dba
Tulare Regional Medical Center

DATED: May 22, 2019

TULARE LOCAL HEALTHCARE DISTRICT,
dba Tulare Regional Medical Center

By: _____
Kevin B. Northcraft, President