70

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:   (559) 435-9800
Facsimile:    (559) 435-9868
E-mail:        rileywalter@W2LG.com

Chapter 9 Counsel for Tulare Local Healthcare District, Debtor

(SPACE BELOW FOR FILING STAMP ONLY)

## IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #:   94-6002897<br>Address:    869 N. Cherry Street<br>                  Tulare, CA 93274 | CASE NO.  17-13797<br><br>Chapter 9<br><br>DC No.: WW-112<br><br>Date:    July 3, 2019<br>Time:    10:00 a.m.<br>Place:    2500 Tulare Street<br>             Fresno, CA 93721<br>             Courtroom 13<br>Judge:   Honorable René Lastreto II |

### EXHIBIT TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NUMBER 49 FILED BY IBM CREDIT LLC

| Exhibit | Description | Pages |
|---|---|---|
| A | Proof of Claim Number 49 filed by IBM Credit LLC | 69 |

Dated: May 31, 2019

WALTER WILHELM LAW GROUP,
a Professional Corporation

By:  _____
Riley C. Walter, Attorneys for Debtor,
Tulare Local Healthcare District dba Tulare
Regional Medical Center

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | TULARE LOCAL HEALTHCARE DISTRICT |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of California |
| Case number | 17-13797 |

RPAF

FILED
DEC 07 2017
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## Official Form 410
# Proof of Claim
12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

IBM CREDIT LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

IBM Corp. / Attn: Marie-Josee Dube
Name

275 Viger East
Number    Street

Montreal         QC    H2X 3R7
City             State    ZIP Code

Contact phone 514-964-0694

Contact email mjdube@ca.ibm.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City    State    ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

EXHIBIT    A
Page    1   Of   69

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _2_ _7_ _0_ _2_

**7. How much is the claim?** $_____888,667.59 . Does this amount include interest or other charges?

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__LEASE__

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____
**Amount of the claim that is secured:** $_____
**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☐ No
☑ Yes. Amount necessary to cure any default as of the date of the petition. $_____352,826.04

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                    Proof of Claim                    page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

|  |  | Amount entitled to priority |
|---|---|---|
| ☐ | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ | Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ | Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ | Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  <u>11/30/2017</u>
                  MM / DD / YYYY

Signature _____

Print the name of the person who is completing and signing this claim:

| Name | Marie-Josee Dube |
|---|---|
|  | First name          Middle name          Last name |
| Title | Bankruptcy Coordinator |
| Company | IBM Corp. |
|  | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 275 Viger East |
|  | Number        Street |
|  | Montreal                          QC          H2X 3R7 |
|  | City                              State        ZIP Code |
| Contact phone | 514-694-1543          Email  mjdube@ca.ibm.com |

EXHIBIT    A
Page   3   Of   69

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CALIFORNIA

In re                                    )
                                         )
Tulare Local Healthcare District,        )
                                         )  Case No. 17-13797
                                  Debtor. )
                                         )

_____

POWER OF ATTORNEY

TO:    Marie-Josee Dube
       Bankruptcy Coordinator
       275 Viger East
       Montreal, Qc
       Canada   H2X 3R7

       The undersigned claimant hereby authorizes you as attorney in fact for the
undersigned and will full power of substitution to file Proof of Claim, to execute any other
documents, to receive distributions, and in general, to perform any act not constituting
the practice of law for the undersigned in all matter arising in this case.

Dated:  December 5, 2017
             Signed:         IBM CREDIT LLC

                  By:    _____
                Title:  IGF Counsel
            Address:  North Castle Drive
                      Armonk NY 10504

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF WESTCHESTER )

       The foregoing instrument was acknowledged before me this 5ᵗʰ day of
December 2017, by Bill Dimos, who says that he is IGF Counsel of IBM Credit LLC, a
Delaware limited liability company, and is authorized to execute this power of attorney
on its behalf.

                      _____
                      Notary Public

                ERIC C. SEMENETZ
          NOTARY PUBLIC-STATE OF NEW YORK
                 No. 02SE6234390
             Qualified in Putnam County
         My Commission Expires January 18, 20 19

EXHIBIT    A
Page   4  Of  69

**Tulare Local Healthcare District**
Chapter 9 Bankruptcy
Case# 17-13797, filed on 09/30/2017
Eastern District of California

| CUSTNO | INVNO | INVDATE | SOURCE | GROSSINV | NETINV | PRE PETITION | POST PETITION |
|---|---|---|---|---|---|---|---|
| 8973117 | Q9828IE | 2016-12-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q9827IE | 2016-12-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q9826IE | 2016-12-01 | Q896 | $17,458.98 | $17,458.98 | $17,458.98 | |
| 8973117 | Q9421IH | 2017-01-01 | Q896 | $5,811.12 | $5,811.12 | $5,811.12 | |
| 8973117 | Q9420IH | 2017-01-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q9419IH | 2017-01-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q9418IH | 2017-01-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q9417IH | 2017-01-01 | Q896 | $17,458.98 | $17,458.98 | $17,458.98 | |
| 8973117 | Q8561IK | 2017-02-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q8560IK | 2017-02-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q8559IK | 2017-02-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q8558IK | 2017-02-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q8557IK | 2017-02-01 | Q896 | $17,458.98 | $17,458.98 | $17,458.98 | |
| 8973117 | Q9707IM | 2017-03-01 | Q896 | $17,458.98 | $17,458.98 | $17,458.98 | |
| 8973117 | Q9711IM | 2017-03-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q9710IM | 2017-03-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q9709IM | 2017-03-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q9708IM | 2017-03-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q8384IQ | 2017-04-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q8383IQ | 2017-04-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q9919IS | 2017-05-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q9918IS | 2017-05-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q9917IS | 2017-05-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q9916IS | 2017-05-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q9915IS | 2017-05-01 | Q896 | $17,458.98 | $17,458.98 | $17,458.98 | |
| 8973117 | Q8340IW | 2017-06-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q8339IW | 2017-06-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q8338IW | 2017-06-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q8337IW | 2017-06-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q8336IW | 2017-06-01 | Q896 | $17,458.98 | $17,458.98 | $17,458.98 | |
| 8973117 | Q9433IY | 2017-07-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q9432IY | 2017-07-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q9431IY | 2017-07-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q9430IY | 2017-07-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q8427J1 | 2017-08-01 | Q896 | $17,946.63 | $17,946.63 | $17,946.63 | |
| 8973117 | Q8429J1 | 2017-08-01 | Q896 | $8,712.65 | $8,712.65 | $8,712.65 | |
| 8973117 | Q8428J1 | 2017-08-01 | Q896 | $1,928.44 | $1,928.44 | $1,928.44 | |
| 8973117 | Q8430J1 | 2017-08-01 | Q896 | $1,937.04 | $1,937.04 | $1,937.04 | |
| 8973117 | Q8033J4 | 2017-09-01 | Q896 | $1,928.44 | $1,928.44 | | $1,928.44 |
| 8973117 | Q8032J4 | 2017-09-01 | Q896 | $17,946.63 | $17,946.63 | | $17,946.63 |
| 8973117 | Q8035J4 | 2017-09-01 | Q896 | $1,937.04 | $1,937.04 | | $1,937.04 |
| 8973117 | Q8034J4 | 2017-09-01 | Q896 | $8,712.65 | $8,712.65 | | $8,712.65 |
| 8973117 | Q8218J6 | 2017-10-01 | Q896 | $1,928.44 | $1,928.44 | | $1,928.44 |
| 8973117 | Q8217J6 | 2017-10-01 | Q896 | $17,946.63 | $17,946.63 | | $17,946.63 |
| 8973117 | Q8220J6 | 2017-10-01 | Q896 | $1,937.04 | $1,937.04 | | $1,937.04 |
| 8973117 | Q8219J6 | 2017-10-01 | Q896 | $8,712.65 | $8,712.65 | | $8,712.65 |
| 8973117 | Q8819J8 | 2017-11-01 | Q896 | $1,928.44 | $1,928.44 | | $1,928.44 |
| 8973117 | Q8818J8 | 2017-11-01 | Q896 | $17,946.63 | $17,946.63 | | $17,946.63 |
| 8973117 | Q8821J8 | 2017-11-01 | Q896 | $1,937.04 | $1,937.04 | | $1,937.04 |
| 8973117 | Q8820J8 | 2017-11-01 | Q896 | $8,712.65 | $8,712.65 | | $8,712.65 |

Total               $352,826.04     $91,574.28

Lease Stream        $444,267.27

**POC Total**         **$888,667.59**

N.B. due to the volume, invoices will be provided upon request. A spreadsheet format has ben provided.



EXHIBIT ___A___
Page ___5___ Of _69_



## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**CT Lien Solutions**
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER** (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

10689 - IBM CREDIT LLC

☐ CT Lien Solutions
330 N Brand Blvd #700
Glendale, CA 91203

53241284

CALI

File with: Secretary of State, CA

**This filing is Completed**
File Number : 167517693520
File Date : 03-Apr-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TULARE LOCAL HEALTH CARE DISTRICT | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 869 NORTH CHERRY | TULARE | CA | 932740000 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| IBM Credit LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One North Castle Drive | Armonk | NY | 10504 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
All of the following equipment together with all related software, whether now owned or hereafter acquired and wherever located (all as more fully described on IBM Credit LLC Agreement(s) 015944 including one or more of the following: XSV2/OEM -OEM SERVICES,XOT9/OEM -OEM OTHER,XSW1/OEM -OEM SOFTWARE,APPQ/A16 -IPAD AIR 16GB 1GB RAM 9.7",HPKM/L24 -24" HP FLAT PANEL MONITOR all additions, attachments, accessories, accessions and upgrades thereto and any and all substitutions, replacements or exchanges for any such item of equipment or software and any and all proceeds of any of the foregoing, including, without limitation, payments under insurance or any indemnity or warranty relating to loss or damage to such equipment and software. IBM Credit LLC files this notice as a precautionary filing.

---

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
53241284      015944          CR00001B3245

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: 800-331-3282/Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   10689 - IBM CREDIT LLC

> CT Lien Solutions      51872768
> 330 N Brand Blvd #700
> Glendale, CA 91203      CALI

File with: Secretary of State, CA

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 167501977649
File Date : 02-Jan-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TULARE LOCAL HEALTH CARE DISTRICT | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 869 NORTH CHERRY | TULARE | CA | 932740000 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| IBM Credit LLC | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One North Castle Drive | Armonk | NY | 10504 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
All of the following equipment together with all related software, whether now owned or hereafter acquired and wherever located (all as more fully described on IBM Credit LLC Agreement(s) 011349 including one or more of the following: 2076/224 -Storwize V7000 Expansion 24,XSV2/OEM -OEM SERVICES,XSW1/OEM -OEM SOFTWARE,HPKM/L23 -23" FLAT PANEL LED MONITOR,9SW1/IBM -IBM SOFTWARE,WYSQ/P25 -WYSE P25 ZERO CLIENT,XOT9/OEM -OEM OTHER,7162/G4U -FLEX SYSTEM X240 XEON 8 CORE 2.6GHZ 16GB 25MB CACHE,9848/AE2 -FlashSys V9000 Storag Enclos all additions, attachments, accessories, accessions and upgrades thereto and any and all substitutions, replacements or exchanges for any such item of equipment or software and any and all proceeds of any of the foregoing, including, without limitation, payments under insurance or any indemnity or warranty relating to loss or damage to such equipment and software. IBM Credit LLC files this notice as a precautionary filing.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. **ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor.

8. **OPTIONAL FILER REFERENCE DATA:**
51872768      011349      CR00001A6784

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282



Invoice Details

| Invoice number | Invoice date | Machine type | Model feature | Part number | Description | Product serial | Line item net amount | Total line-item amount |
|---|---|---|---|---|---|---|---|---|

*(Tabular invoice data — illegible at available resolution.)*

- WYSE P25 ZERO CLIENT ... 6.43 ... 17,946.63
- 23" FLAT PANEL LED MONITOR ... 3.94 ... 17,946.63
- OEM OTHER / VENDOR SOURCED PRODUCTIONS / REMARKETED SERVICES
- Flex System x240 Compute Node
- Flex System Chassis
- OEM SOFTWARE
- 24" FLAT PANEL MONITOR / 14" FLAT PANEL MONITOR

EXHIBIT A
Page 9 of 69


EXHIBIT ___ A ___
Page __13__ Of __69__



The body of this page consists of a very dense multi-column tabular listing of line items (product descriptions such as "WYSE P25 ZERO CLIENT", "27" FLAT PANEL LED MONITOR", "Flex System x240 Compute Node", "OEM SOFTWARE", "OEM SERVICES", etc.) with associated dates (01 Oct 2017, 01 Mar 2017, 01 May 2017), codes, quantities, and dollar amounts (e.g., 17,946.63, 3.94). The individual rows are too small and dense to transcribe reliably.

The body of this page is a dense multi-column tabular listing. The recurring legible entries include item descriptions such as "25" FLAT PANEL LED MONITOR", "23" FLAT PANEL LED MONITOR", "27" FLAT PANEL LED MONITOR", "OEM SOFTWARE", "OEM OTHER", "WYSE P25 ZERO CLIENT", with associated dates "01 Oct 2017" / "01 Sep 2017" / "01 Mar 2017", codes such as "HPRM", "OEM", "XEVO", "WYSQ", "L23", "P25", "3CC", and amount values such as "17,946.63", "6.43", "3.94".

EXHIBIT ___A___
Page ___18___ Of _69_

EXHIBIT A

Page 20 Of 69

EXHIBIT A
Page 21 Of 69

| Item | Date | Model | Type | Code | Description | Serial | Value | Amount |
|------|------|-------|------|------|-------------|--------|-------|--------|
| Q842711 | 01 Aug 2017 | WYSQ | P25 | 3CC | WYSE P25 ZERO CLIENT | 000039F | 6.43 | 17,946.63 |
| Q842711 | 01 Aug 2017 | WYSQ | P25 | 3CC | WYSE P25 ZERO CLIENT | 000019J | 6.43 | 17,946.63 |
| Q842711 | 01 Aug 2017 | WYSQ | P25 | 3CC | WYSE P25 ZERO CLIENT | 000027R | 6.43 | 17,946.63 |
| ... | ... | ... | ... | ... | ... | ... | ... | ... |

(The table continues for hundreds of near-identical rows across four column groups. Individual serial numbers and codes are not legibly resolvable.)

Some later rows read:

| Q85589R | 01 Feb 2017 | WYSQ | P25 | 3CC | WYSE P25 ZERO CLIENT | 00082vV | 6.43 | 17,946.63 |
| Q85589R | 01 Feb 2017 | HPKM | L23 | 3CC | 23" FLAT PANEL LCD MONITOR | 00081Xg | 3.94 | 17,946.63 |



| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Q9430Y | 01 Jul 2017 | WYSQ | P25 | 3CC | WYSE P25 ZERO CLIENT | 0002FB | 6.43 | 17,946.63 | Q9418H | 01 Jan 2017 | HPRM | L23 | 3CC | 23" FLAT PANEL LED MONITOR | 0008108 | 3.94 | 17,946.63 |

EXHIBIT 4
Page 27 Of 69

EXHIBIT A

Page 28 of 69

EXHIBIT _A_

Page _32_ Of _69_

IBM Credit LLC
## Lease/Purchase Supplement

Supplement No: 015944　　　　　　　　　　　　　　　　　　　　　　Page 1 of 2

Lease/Purchase Master Agreement No.: 8972702LP

**Lessee Name and Address:**
TULARE LOCAL HEALTH CARE DISTRICT
869 N CHERRY ST
TULARE CA 93274-2207

**Lessor Name and Address:**
IBM Credit LLC
7100 Highlands Parkway
Smyrna, GA 30082
igfnadoc@us.ibm.com

This Supplement to the above referenced Lease/Purchase Master Agreement ("Agreement") is executed between TULARE LOCAL HEALTH CARE DISTRICT ("Lessee") and IBM Credit LLC ("Lessor").

Payment Period means the period for which a Payment is due and payable (e.g., Month, Quarter). Payment Period is: Monthly

Quote Validity Date is the date by which the executed Supplement must be returned to Lessor. Quote Validity Date is: April 15, 2016

Supplier

### TAX-EXEMPT FINANCING TRANSACTION(S)

| Ref No. | Qty. | Property Description | Original Term (months) | Amount Financed ($) | Interest Rate (%) | Planned Commencement Month |
|---|---|---|---|---|---|---|
| 1 | 1 | XOT9 OEM OEM OTHER | 36 | 128,075.00 | 5.09 | March 2016 |
| 2 | 1 | XOT9 OEM OEM OTHER | 36 | 10,674.47 | 5.09 | March 2016 |
| 3 | 35 | APPQ A16 IPAD AIR 16GB 1GB RAM 9.7" | 36 | 16,456.30 | 4.68 | March 2016 |
| 4 | 1 | XOT9 OEM OEM OTHER | 36 | 402.03 | 5.06 | March 2016 |
| 5 | 22 | HPKM L24 24" HP FLAT PANEL MONITOR | 36 | 2,923.80 | 4.70 | March 2016 |
| 6 | 1 | XOT9 OEM OEM OTHER | 36 | 1,840.31 | 5.08 | March 2016 |
| 7 | 1 | XSW1 OEM OEM SOFTWARE | 36 | 13,911.40 | 5.09 | March 2016 |
| 8 | 1 | XOT9 OEM OEM OTHER | 36 | 2,837.68 | 5.09 | March 2016 |
| 9 | 1 | XSW1 OEM OEM SOFTWARE | 36 | 80,000.00 | 5.09 | March 2016 |
| 10 | 1 | XSV2 OEM OEM SERVICES | 36 | 5,000.00 | 5.08 | March 2016 |
| 11 | 1 | XOT9 OEM OEM OTHER | 36 | 27,200.08 | 5.09 | March 2016 |
| 12 | 1 | XOT9 OEM OEM OTHER | 36 | 2,315.18 | 5.08 | March 2016 |
| 13 | 1 | XOT9 OEM OEM OTHER | 36 | 37.25 | 4.89 | March 2016 |
| | | | TOTALS | 291,673.50 | | |

**SPECIAL TERMS AND CONDITIONS:** None

**ADDITIONAL TERMS AND CONDITIONS:**

"Planned Commencement Month" means for the Financing Transaction to commence, the acceptance date on the Certificate of Acceptance must be prior to the end of the month of "Planned Commencement Month" indicated above unless otherwise approved by Lessor.

The Lease Payment Schedule for this Supplement sets forth the scheduled Lease Payments under this Supplement. The Commencement Date for this Supplement is set forth in the Lease Payment Schedule.

With respect to Financed Items consisting of prepaid maintenance, Lessee accepts the terms of the prepaid maintenance and agrees to look solely to the maintenance provider for provision of such maintenance in accordance with the terms of the contracts with the maintenance provider for said maintenance. Acceptance for purposes of a Supplement shall be the date of acceptance by Lessee in the Certificate of Acceptance.

Lessee agrees that it will timely complete, execute and file the Internal Revenue Service Form 8038-G or Form 8038-GC with the appropriate office of the Internal Revenue Service. Property contained in a Transaction is either Tax-Exempt, whereas the Property qualifies for tax-exempt interest treatment under the Code, or Taxable, whereas the Property does not qualify for tax exempt interest treatment under the Code. The interest rates applicable to this Supplement that provide for Tax-Exempt Lease/Purchase are based on many factors including Lessee's underlying obligation qualifying to pay interest that is treated as exempt by the Internal Revenue Service (IRS) from federal income tax under Section 103(a) of the Internal Revenue Code (Code), as well as many proprietary factors including pricing assumptions made by Lessor as to whether Lessor anticipates being able to recognize any benefits of this tax exemption. Lessee shall pay Lessor, on demand, a sum to be determined by Lessor, that will return to Lessor the economic results

Z126-6420-US-01 (05/2015)　　　　　　　　　　　　　　　　　　　　　　　　　X00017788-06



EXHIBIT ___A___
Page _33_ Of _69_

**IBM Credit LLC**
Supplement No: *015944*        **Lease/Purchase Supplement**        Page 2 of 2

Lessor would otherwise have received if: (i) Lessee does not file the above IRS form on a timely basis; or (ii) IRS rules Lessee does not qualify under Section 103(a) of the Code.

The interest rates applicable to a Supplement may reflect fees or other consideration Lessor receives from Lessee's Suppliers that is passed on to Lessee in the form of lower rates.

For a Taxable Financing Transactions, the following provisions of the Lease/Purchase Master Agreement shall not be applicable: (i) Part 3, paragraph (f), (ii) Section entitled Arbitrage Certifications.

Lessor reserves the right to reject any invoice that is: (i) not for information technology Equipment or related software or services, or (ii) dated more than 90 days prior to the date Lessor receives authorization from Lessee to finance.

Capitalized terms set forth in this Supplement or in the attachments, but not defined herein or therein, shall have the meaning set forth in the Lease/Purchase Master Agreement. The complete terms and conditions of the Lease/Purchase Master Agreement are incorporated by reference.

Section entitled "Waiver of Jury Trials" under this Agreement is deleted in its entirety.

In addition to a Supplement, and as a requirement to entering into of Lease/Purchase Supplement, Lessee shall provide in completed and executed form, acceptable to Lessor, the additional documents attached to this Supplement that may include:

(a) Payment Schedule for a Supplement, (b) Opinion of Counsel to the Lessee, (c) Lessee's Certificate, (d) Certificate of Acceptance, (e) State Addendum, if applicable and attached, (f) for Tax-Exempt Financed Items (i) Form 8038-G or 8038-GC (to be filed with Internal Revenue Service by Lessee), (ii) Prepaid Maintenance Certification of Maintenance Provider and (iii) Prepaid Maintenance Certification of Maintenance Vendor.

The Agreement referenced above shall be incorporated herein by reference. Lessee hereunder shall be bound to the terms and conditions of the Agreement as Lessee. The Agreement. this Supplement and any applicable attachments or addenda are the complete, exclusive statement of the parties with respect to the subject matter herein. These documents supersede any prior oral or written communications between the parties. By signing below, Lessee represents and warrants that Lessee's name as set forth in the signature block below is Lessee's exact legal name and the information identifying Lessee's state of organization is true, accurate and complete in all respects. By signing below, both parties agree to the terms represented by this Agreement as it may be amended or modified. Delivery of an executed copy of any of these documents by facsimile or other reliable means shall be deemed to be as effective for all purposes as delivery of a manually executed copy. Lessee acknowledges that we may maintain a copy of these documents in electronic form and agrees that copy reproduced from such electronic form or by any other reliable means (for example, photocopy, image or facsimile) shall in all respects be considered equivalent to an original.

Agreed to:
**TULARE LOCAL HEALTH CARE DISTRICT**

By _____

    Authorized signature

Name (type or print): _____

Title (type or print): _____

Date: _____

Agreed to:
**IBM Credit LLC**

By _____

    Authorized signature    **Claire L. Squires**
          **Business Support Operations Manager**

Name (type or print): _____

Title (type or print): _____

Date: *03-30-16*

Z126-6420-US-01 (05/2015)                                    X00017788·06


EXHIBIT __A__
Page __34 of 69__

Filed 06/03/19
Filed 12/07/17

Case 17-13797
Case 17-13797

Doc 1469

Claim 49

## IBM Credit LLC
## Lease Payment Schedule

**Lessee Name:** TULARE LOCAL HEALTH CARE DISTRICT

**Lease/Purchase Supplement No:** 015944

### Commencement Date

The Commencement Date shall be the date of acceptance of the Property as set forth in the Acceptance Certificate executed by the Lessee and filed with the Lessor. The Lease Payment Due Dates listed below are based on the date of acceptance being a date on or before the end of the Planned Commencement Month.

### Lease Payment Schedule

Total Principal Amount: $291,673.50
Interest Rate for Schedule: 5.06%

| Payment No. | Lease Payment Due Dates | Lease Payments ($) | Principal Component ($) | Interest Component ($) | Prepayment Price (After Making Payment for Said Due Date) ($) |
|---|---|---|---|---|---|
| 1 | 4/01/2016 | 8,712.65 | 8,712.65 | 0.00 | 282,960.85 |
| 2 | 5/01/2016 | 8,712.65 | 7,519.39 | 1,193.26 | 275,441.46 |
| 3 | 6/01/2016 | 8,712.65 | 7,551.31 | 1,161.34 | 267,890.15 |
| 4 | 7/01/2016 | 8,712.65 | 7,583.15 | 1,129.50 | 260,307.00 |
| 5 | 8/01/2016 | 8,712.65 | 7,615.33 | 1,097.32 | 252,691.67 |
| 6 | 9/01/2016 | 8,712.65 | 7,647.05 | 1,065.60 | 245,044.62 |
| 7 | 10/01/2016 | 8,712.65 | 7,679.30 | 1,033.35 | 237,365.32 |
| 8 | 11/01/2016 | 8,712.65 | 7,711.83 | 1,000.82 | 229,653.49 |
| 9 | 12/01/2016 | 8,712.65 | 7,744.31 | 968.34 | 221,909.18 |
| 10 | 1/01/2017 | 8,712.65 | 7,776.92 | 935.73 | 214,132.26 |
| 11 | 2/01/2017 | 8,712.65 | 7,809.86 | 902.79 | 206,322.40 |
| 12 | 3/01/2017 | 8,712.65 | 7,842.71 | 869.94 | 198,479.69 |
| 13 | 4/01/2017 | 8,712.65 | 7,875.94 | 836.71 | 190,603.75 |
| 14 | 5/01/2017 | 8,712.65 | 7,909.06 | 803.59 | 182,694.69 |
| 15 | 6/01/2017 | 8,712.65 | 7,942.30 | 770.35 | 174,752.39 |
| 16 | 7/01/2017 | 8,712.65 | 7,975.92 | 736.73 | 166,776.47 |
| 17 | 8/01/2017 | 8,712.65 | 8,009.44 | 703.21 | 158,767.03 |
| 18 | 9/01/2017 | 8,712.65 | 8,043.29 | 669.36 | 150,723.74 |
| 19 | 10/01/2017 | 8,712.65 | 8,077.11 | 635.54 | 142,646.63 |
| 20 | 11/01/2017 | 8,712.65 | 8,111.26 | 601.39 | 134,535.37 |
| 21 | 12/01/2017 | 8,712.65 | 8,145.30 | 567.35 | 126,390.07 |
| 22 | 1/01/2018 | 8,712.65 | 8,179.51 | 533.14 | 118,210.56 |
| 23 | 2/01/2018 | 8,712.65 | 8,214.05 | 498.60 | 109,996.51 |
| 24 | 3/01/2018 | 8,712.65 | 8,248.87 | 463.78 | 101,747.64 |
| 25 | 4/01/2018 | 8,712.65 | 8,283.70 | 428.95 | 93,463.94 |
| 26 | 5/01/2018 | 8,712.65 | 8,318.45 | 394.20 | 85,145.49 |
| 27 | 6/01/2018 | 8,712.65 | 8,353.55 | 359.10 | 76,791.94 |
| 28 | 7/01/2018 | 8,712.65 | 8,388.93 | 323.72 | 68,403.01 |
| 29 | 8/01/2018 | 8,712.65 | 8,474.29 | 288.36 | 59,978.72 |
| 30 | 9/01/2018 | 8,712.65 | 8,459.61 | 253.04 | 51,519.11 |
| 31 | 10/01/2018 | 8,712.65 | 8,495.64 | 217.01 | 43,023.47 |
| 32 | 11/01/2018 | 8,712.65 | 8,531.22 | 181.43 | 34,492.25 |
| 33 | 12/01/2018 | 8,712.65 | 8,567.16 | 145.49 | 25,925.09 |
| 34 | 1/01/2019 | 8,712.65 | 8,603.38 | 109.27 | 17,321.71 |
| 35 | 2/01/2019 | 8,712.65 | 8,639.63 | 73.02 | 8,682.08 |

EXHIBIT A
Page 35 Of 69

Filed 06/03/19
Filed 12/07/17

Case 17-13797
Case 17-13797

Doc 1469
Claim 49

**IBM Credit LLC**
**Lease Payment Schedule**

Lessee Name: TULARE LOCAL HEALTH CARE DISTRICT

Lease/Purchase Supplement No: 015944

| Payment No. | Lease Payment Due Dates | Lease Payments ($) | Principal Component ($) | Interest Component ($) | Prepayment Price (After Making Payment for Said Due Date) ($) |
|---|---|---|---|---|---|
| 36 | 3/01/2019 | 8,712.65 | 8,682.08 | 30.57 | 0.00 |
| | Totals: | 313,655.40 | 291,673.50 | 21,981.90 | |

Z126-5744-US-03 (05/2015)

Page 2 of 3

EXHIBIT _A_
Page _36_ Of _69_

**IBM Credit LLC**
**Lease Payment Schedule**

Lessee Name: TULARE LOCAL HEALTH CARE DISTRICT

Lease/Purchase Supplement No: 015944

| QTY | Product Description | Serial No. / Alteration Reference No. | Principal Amt ($) |
|---|---|---|---|
| 1 | XOT9 OEM  OEM OTHER | | 128,075.00 |
| 1 | XOT9 OEM  OEM OTHER | | 10,674.47 |
| 35 | APPQ A16  IPAD AIR 16GB 1GB RAM 9.7" | | 16,456.30 |
| 1 | XOT9 OEM  OEM OTHER | | 402.03 |
| 22 | HPKM L24  24" HP FLAT PANEL MONITOR | | 2,923.80 |
| 1 | XOT9 OEM  OEM OTHER | | 1,840.31 |
| 1 | XSW1 OEM  OEM SOFTWARE | | 13,911.40 |
| 1 | XOT9 OEM  OEM OTHER | | 2,837.68 |
| 1 | XSW1 OEM  OEM SOFTWARE | | 80,000.00 |
| 1 | XSV2 OEM  OEM SERVICES | | 5,000.00 |
| 1 | XOT9 OEM  OEM OTHER | | 27,200.08 |
| 1 | XOT9 OEM  OEM OTHER | | 2,315.18 |
| 1 | XOT9 OEM  OEM OTHER | | 37.25 |

Totals: 291,673.50

Lessee: TULARE LOCAL HEALTH CARE DISTRICT

By _____
Authorized signature

Name (type or print): _____

Title (type or print): _____

Date _____

Z126-5744-US-03 (05/2015)          Page 3 of 3

EXHIBIT _A_
Page _37_ Of _69_

**IBM Credit LLC**

**LESSEE'S CERTIFICATE**      Page 1 of 2

Re: Lease/Purchase Supplement No. 015944 to Lease/Purchase Master Agreement No. 8972702LP between IBM Credit LLC and TULARE LOCAL HEALTH CARE DISTRICT ("Lessee").

The undersigned, being the duly elected, qualified and acting _Chairman_ of the Lessee do hereby certify, as of _3/16/16_ , as follows:

1. Lessee did, at a meeting of the governing body of the Lessee held _3/16/16_ by resolution or ordinance duly enacted in accordance with all requirements of law, approve and authorize the execution and delivery of the above-referenced Lease/Purchase Supplement and any related documents entered into pursuant to the Lease/Purchase Master Agreement (the "Lease/Purchase Supplement") by the following named representative of Lessee, to wit:

| NAME OF EXECUTING OFFICIAL | TITLE OF EXECUTING OFFICIAL | SIGNATURE OF EXECUTING OFFICIAL |
|---|---|---|
| _Sherrie Bell_ | _Chairman_ | _[signature]_ |
| And/Or | | |
| And/Or | | |
| And/Or | | |

2. The above-named representative of the Lessee held at the time of such authorization and holds at the present time the office set forth above

3. The meeting(s) of the governing body of the Lessee at which the Lease/Purchase Supplement was approved and authorized to be executed was duly called, regularly convened and attended throughout by the requisite quorum of the members thereof, and the enactment approving the Lease/Purchase Supplement and authorizing the execution thereof has not been altered or rescinded. All meetings of the governing body of Lessee relating to the authorization and delivery of the Lease/Purchase Supplement have been: (a) held within the geographic boundaries of the Lessee; (b) open to the public, allowing all people to attend; (c) conducted in accordance with internal procedures of the governing body; and (d) conducted in accordance with the charter of the Lessee, if any, and the laws of the State.

4. No event or condition that constitutes, or with the giving of notice or the lapse of time or both would constitute, an Event of Default or a Non-appropriation Event (as such terms are defined in the Lease/Purchase Master Agreement (the "Master Agreement")) exists at the date hereof with respect to this Lease/Purchase Supplement or any other Lease/Purchase Supplements under the Master Agreement.

5. The acquisition of all of the Property under the Lease/Purchase Supplement has been duly authorized by the governing body of Lessee

6. Lessee has, in accordance with the requirements of law, fully budgeted and appropriated sufficient funds for the current budget year to make the Lease Payments scheduled to come due during the current budget year under the Lease/Purchase Supplement and to meet its other obligations for the current budget year and such funds have not been expended for other purposes.

7. Lessee represents and warrants that the Property is essential to the proper, efficient and economic functioning of Lessee or to the services that Lessee provides; and Lessee has immediate need for and expects to make immediate use of substantially all of the Property, which need is not temporary or expected to diminish in the foreseeable future.

8. Bank Qualified Tax-Exempt Obligation under Section 265 (Consult tax counsel for applicable provisions.).

_____ Lessee hereby designates this Lease/Purchase Supplement as a "qualified tax-exempt obligation" as defined in Section 265(b)(3)(B) of the Code. Lessee reasonably anticipates issuing tax-exempt obligations (excluding private activity bonds other than qualified 501(c)(3) bonds and including all tax-exempt obligations of subordinate entities of the Lessee) during the calendar year in which the Commencement Date of this Lease/Purchase Supplement falls, in an amount not exceeding $10,000,000.

_or_

_X_ Not applicable

9. Has Lessee ever terminated a lease or financing contract prior to the expiration of its term (including all permitted renewal terms) due to nonappropriation or other provision permitting Lessee to terminate in Lessee's discretion?

Yes _____ No _X_ If yes, then please describe the circumstances of such termination:

_____

_____

Z126-5746-US-02 (02/2012)
Exhibit 3

Filed 06/03/19
Filed 12/07/17

Case 17-13797
Case 17-13797

Doc 1469
Claim 49

**IBM Credit LLC**

## LESSEE'S CERTIFICATE

Page 2 of 2

10. As of the date hereof, no litigation is pending, (or, to my knowledge, threatened) against Lessee in any court (a) seeking to restrain or enjoin the delivery of the Master Agreement or the Lease/Purchase Supplement or of other agreements similar to the Master Agreement; (b) questioning the authority of Lessee to execute the Master Agreement or the Lease/Purchase Supplement or the validity of the Master Agreement or the Lease/Purchase Supplement, or the payment of principal of or interest on the Lease/Purchase Supplement; (c) questioning the constitutionality of any statute, or the validity of any proceedings, authorizing the execution of the Master Agreement and the Lease/Purchase Supplement; or (d) affecting the provisions made for the payment of or security for the Master Agreement and the Lease/Purchase Supplement.

Lessee  TULARE LOCAL HEALTH CARE DISTRICT

By: _Alan Germany_

Title: _CEO / COO_

SIGNER MUST NOT BE THE SAME AS THE EXECUTING OFFICIAL(S) SHOWN ABOVE

Z126 5746 US 02 (02/2012)
Exhibit 3

EXHIBIT ___4___
Page _39_ Of _69_

Filed 06/03/19
Filed 12/07/17

Case 17-13797
Case 17-13797

Doc 1469
Claim 49

Schedule/Agreement No.: 015944
Certificate of Acceptance No.: 015944001

**IBM Credit LLC**
**Certificate of Acceptance**

Page 1 of 2

**Lessee/Borrower Name ("Client") and Address:**
TULARE LOCAL HEALTH CARE DISTRICT
869 N CHERRY ST
TULARE CA 93274-2207

**Lessor Name and Address:**
IBM Credit LLC
7100 Highlands Parkway
Smyrna, GA 30082
igfnadoc@us.ibm.com

The Client certifies and agrees that the information contained in the following table(s) is correct and relates to item(s) leased or financed under the terms and conditions of the above referenced Schedule/Agreement with IBM Credit LLC.

Client Reference:
Payment Period: Monthly
Payment Type: Advance

**TAX-EXEMPT FINANCING TRANSACTION(S)**

| Qty. | Property Description | Original Term (months) |
|---|---|---|
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 35 | APPQ A16 IPAD AIR 16GB 1GB RAM 9.7" | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 22 | HPKM L24 24" HP FLAT PANEL MONITOR | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XSW1 OEM OEM SOFTWARE | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XSW1 OEM OEM SOFTWARE | 36 |
| 1 | XSV2 OEM OEM SERVICES | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |

Client represents and certifies that the item(s) listed in the above table(s) are in compliance with Client's specifications ("Accepted Item(s)"). Client hereby accepts the Accepted Item(s) listed in the above table(s) on the Acceptance Date and authorizes IBM Credit LLC to make payments to the Supplier(s) for the Supplier's invoice(s) for the Accepted Item(s) and to commence the leasing or financing of these Accepted Item(s) under the Schedule/Agreement

Since this Certificate of Acceptance ("COA") is being issued prior to Lessor's receipt of an invoice, Lessor, upon its receipt of this COA duly executed by Lessee and the Supplier's invoice, will either issue i) a confirmation document in order to confirm Lessor's acceptance of the COA or ii) an updated COA which requires Lessee's signature in order to confirm any changes. In order for IBM Credit LLC to make payment to your listed Suppliers, all Equipment must include serial number information. Accordingly, Client hereby authorizes IBM Credit LLC to complete or update any manufacturer serial number information for any Accepted Item(s) accepted, without Client's further action or consent.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement referenced in the Schedule listed above.

**This COA may be sent to Client by IBM Credit LLC in soft copy format, such as a PDF file. Client represents and warrants that no changes have been made to the text of this COA, except for IBM Credit LLC authorized alterations to the Product Description (including without limitation, changes to any other information listed on the product information tables herein). If there are any conflicts between the version delivered by IBM Credit LLC to Client and the version delivered by Client to IBM Credit LLC, or if the Supplier's invoice does not match the information listed on the COA, IBM Credit LLC reserves the right not to incept the transaction and to send a replacement COA to Client. Any copy of this COA made by reliable means (for example photocopy, image or facsimile) shall in all respects be considered equivalent to an original.**

Z126-5787-US-02 (06/2015)

EXHIBIT 4
Page 40 of 69

| Schedule/Agreement No.: 015944 | **IBM Credit LLC** | |
|---|---|---|
| Certificate of Acceptance No.: 015944001 | **Certificate of Acceptance** | Page 2 of 2 |

For the purposes of the transaction commencement provisions specified in the Agreement referenced in the Schedule listed above, Client hereby represents, warrants and certifies that as of the following date, Client has accepted the Accepted Item(s) listed in the product information tables herein:

_3/16/16_ (MM/DD/YYYY) ("Acceptance Date" for Accepted Item(s))

Agreed to:
TULARE LOCAL HEALTH CARE DISTRICT

By _Shawn Bolouki_
Authorized signature

_Shawn Bolouki_
Name (type or print):

_Cio_
Title (type or print):

Client shall return this executed COA to IBM Credit LLC by mail, in an email, or by facsimile within ten (10) days of Acceptance Date.

Z126 5787-US-02 (06/2015)

EXHIBIT _A_
Page _41_ Of _69_

Baker&Hostetler LLP

11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025-0509

T 310.820.8800
F 310.820.8859
www.bakerlaw.com

March 16, 2016

IBM Credit, LLC
7100 Highlands Parkway
Smyrna, GA 300852

Re:     Lease / Purchase Supplement No. 015944 to Lease / Purchase
        Master Agreement between IBM Credit, LLC and Tulare Local
        Healthcare District

Ladies and Gentlemen:

    We have acted as special California counsel to Tulare Local Healthcare District
("**Lessee**") in connection with the above-referenced Lease/Purchase Supplement
between Lessee and IBM Credit, LLC ("**Lessor**") (the "**Transaction**").

    In such capacity, we have reviewed the following documents:-

    1.  Lease/Purchase Master Agreement dated May 16, 2014 between Lessor
        and Lessee (the "**Master Agreement**"); and

    2.  Lease/Purchase Supplement (No. 015944) between Lessor and Lessee
        (including the attached Certificate of Acceptance, Lessee's Certificate
        and Lease Payment Schedule), dated as of the date of this opinion (the
        "**Supplement**").

    The Master Agreement and the Supplement are hereinafter referred to
collectively as the "**Documents**."

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC

093734.000003 608245938.2

EXHIBIT _A_
Page _42_ Of _69_

Filed 06/03/19

Case 17-13797

Doc 1469

Filed 12/07/17

Case 17-13797

Claim 49

IBM Credit, LLC
March 16, 2016
Page 2

In rendering our opinion we have also examined such certificates of public officials, organizational documents of Lessee, and other certificates and instruments as we have deemed necessary for the purposes of the opinions herein expressed. As to various questions of fact material to our opinion, we have relied upon certificates and written statements of the directors or officers of Lessee (the "**Opinion Certificate**"), and the representations of Lessee contained in the Lessee Certificate attached to the Supplement.

We express no opinion with respect to the effect of any law other than the laws of the State California (the "**State**"), including, without limitation, the California Uniform Commercial Code (the "**UCC**"), and the federal law of the United States (together with the laws of the State, "**Applicable Law**").

Whenever our opinion herein is qualified by the phrase "to the best of our knowledge" (or similar phrase) it is intended to indicate that the current, actual knowledge of the attorneys within the Los Angeles office of this firm engaged in the representation of Lessee in connection with the Transaction is not inconsistent with that portion of the opinion which such phrase qualifies. Except as expressed herein, we have made no independent investigation of any such matters and we have not made any other examination of Lessee.

Based on the foregoing and upon such investigation as we have deemed necessary, and subject to the qualifications and exceptions herein contained, we are of the opinion that:

1.    Lessee is a local healthcare district, duly organized and existing under the laws of the State, and specifically Section 32000 et seq of the California Health & Safety Code.

2.    Lessee has all the requisite power and authority to enter into the Documents and to perform its obligations thereunder.

3.    The execution, delivery and performance of the Documents by Lessee has been duly authorized by the Board of Directors of Lessee.

4.    All proceedings of Lessee and its Board of Directors relating to the authorization and approval of the Documents, the execution thereof and the transactions contemplated thereby have been conducted in accordance with all applicable open meeting laws (i.e. the Ralph M. Brown Act) and all other Applicable Law.

093734.000003 808245938.2

IBM Credit, LLC
March 16, 2016
Page 3

     5.    Lessee has acquired or has arranged for the acquisition of the property subject to the Supplement, and has entered in to the Documents in compliance with all State public bidding laws, to the extent that they are applicable to the Transaction.

     6.    Lessee has obtained all consents and approvals of other governmental authorities or agencies which may be required for the execution, delivery and performance by Lessee of the Documents.

     7.    The Documents have been duly executed and delivered by Lessee and constitute legal, valid and binding obligation of Lessee, enforceable against Lessee in accordance with their respective terms.

     8.    To the best of our knowledge, no litigation is pending or threatened against Lessee in any court (a) seeking to restrain or enjoin the delivery of the Documents; (b) questioning the authority of Lessee to execute the Documents, or the validity of the Documents, or the payment of principal of or interest on, the Documents; (c) questioning the constitutionality of any statute, or the validity of any proceedings, authorizing the execution of the Documents; or (d) affecting the provisions made for the payment of or security for the Documents.

     We express no opinion with respect to any documents other than the Documents, regardless of whether any other documents are referred to or incorporated by reference therein.

     The foregoing opinions are subject to the following qualifications, limitations and exceptions:

     (a)    The effect of bankruptcy, insolvency, fraudulent conveyance or transfer, reorganization, arrangement, moratorium or other similar laws relating to or affecting the rights, powers, privileges, remedies and interests of creditors, obligees or sureties including, without limitation, the effect of Sections 547 and 548 of the Federal Bankruptcy Code and comparable provisions of the laws of the State;

     (b)    The effect of the limitations imposed by Applicable Law or rules or principles (of equity, public policy or otherwise) affecting the enforcement of obligations generally, whether considered at law, in equity or otherwise, including (without limitation) those pertaining to specific performance, injunctive relief, materiality, good faith, fair dealing, diligence, reasonableness, unconscionability, impossibility of performance, redemption or other cure, suretyship rights or defenses, waiver, laches, estoppel, or judicial deference or other equitable remedies;

     (c)    The enforceability of any term or provision of the Documents that purportedly grants to a party or authorizes or permits a party or other person to

093734.000003 608245938.2

IBM Credit, LLC
March 16, 2016
Page 4

exercise or otherwise enforce or pursue specific rights, powers, privileges, remedies or interests in a manner impermissible under or otherwise inconsistent with Applicable Law or public policy of the State from time to time in effect;

      (d)      The unenforceability under certain circumstances, under Applicable Law or State court decisions, of provisions in the Documents expressly or by implication waiving broadly or vaguely stated rights, unknown future rights, defenses to obligations or rights granted by law, where such waivers are against public policy or prohibited by Applicable Law;

      (e)      The unenforceability under certain circumstances of provisions in the Documents to the effect that rights or remedies are not exclusive, that every right or remedy is cumulative and may be exercised in addition to or with any other right or remedy, that election of a particular remedy or remedies does not preclude recourse to one or more other remedies, that any right or remedy may be exercised without notice, or that failure to exercise or delay in exercising rights or remedies will not operate as a waiver of any such right or remedy;

      (f)      The unenforceability under certain circumstances of any term or provision in the Documents indemnifying a party against liability for its own wrongful or negligent acts or where such indemnification is contrary to public policy or prohibited by Applicable Law;

      (g)      The enforceability of any term or provision in the Documents respecting self-help or summary remedies which provide that they may be exercised without notice or opportunity for hearing or correction;

      (h)      The enforceability of any term or provision in the Documents purporting to assign contractual rights, to the extent such provisions are limited by requirements of notice to and consent of any third parties to such contracts or other interested parties, or any other restrictions as to the assignability of such contractual rights;

      (i)      The enforceability of any term or provision in the Documents purporting to appoint Lessor as attorney-in-fact for Lessee or to grant an irrevocable power of attorney to Lessor;

      (j)      The effect of the provisions of the UCC which require a secured party, in any disposition of personal property collateral, to act in good faith or in a commercially reasonable manner;

      (k)      We express no opinion with respect to the usury laws of any jurisdiction;

093734.000003 608245938.2

EXHIBIT 4
Page 45 Of 69

IBM Credit, LLC
March 16, 2016
Page 5

(l)      Any rights under the Documents held to be governed by the UCC are subject to the limitations and restrictions of the UCC which such statute provides cannot be waived;

(m)      We express no opinion as to the enforceability of any provision of the Documents purporting to (a) provide for interest after judgment, or after the filing of a voluntary or involuntary proceeding for bankruptcy, insolvency, winding up, reorganization or moratorium, (b) deny the effectiveness of waivers, amendments and modifications that are not in writing, (c) waive rights relating to the survival of obligations after termination or cancellation of the Documents, (d) deny the applicability of conflicts of laws rules, (e) grant or waive any rights of set-off, recoupment or counterclaim, (f) provide that provisions of the Documents that are invalid, illegal or unenforceable may be severed from the Documents without affecting the validity, legality or enforceability of the remaining provisions of the Documents, (g) provide that failure to exercise or delay in exercising rights or remedies will not result in a forfeiture of such rights or remedies, (h) provide what actions or omissions to act constitute commercially reasonable behavior to the extent such actions or omissions are contrary to Applicable Law or (i) permit the Lessor to collect attorneys' fees and costs under the Documents, if Lessor is not the prevailing party in such action;

(n)      We express no opinion as to the enforceability of any provision of the Documents that purports to establish evidentiary standards or to waive any right to trial by jury.  We express no opinion as to the effectiveness of waivers of defenses based on improper venue or an inconvenient forum.  Regarding provisions for service of process in the Documents, we express no opinion as to the effect of the laws of any jurisdiction on the validity of service of process;

(o)      We express no opinion as to the existence, validity, binding effect, enforceability, attachment, perfection or priority of any security interest or lien created or purported to be created under the Documents;

(p)      In the case of property which becomes security for the repayment of the indebtedness evidenced by the Documents after the date hereof, Section 552 of Title 11 of the United States Code (the "**Bankruptcy Code**") limits the extent to which property acquired by a debtor after the commencement of a case under the Bankruptcy Code may be subject to a security interest arising from a security agreement entered into by the debtor before the commencement of such case.  Moreover, security interests in after-acquired property may be limited by Section 9204 of the UCC;

(q)      There may be limitations on the exercise of the Lessor's remedies arising out of any failure by the Lessor to comply with statutory requirements or judicial decisions thereunder in the actual exercise of its rights in connection with the foreclosure, sale or other enforcement of its security interests in any of the Property (as

093734.000003 608245938.2

IBM Credit, LLC
March 16, 2016
Page 6

defined in the Documents). Our opinions herein should not be read or construed to include any opinion as to: (i) the enforceability of any limitation on the obligation of the Lessor to account for any surplus arising from the sale or other disposition of any Property and the application of the proceeds thereof to the satisfaction of indebtedness secured thereby, (ii) the Lessor's retention or disposition of any Property in the context of any other person's exercise of an equity of redemption, (iii) any right of the Lessor to accept any Property in discharge of any obligation secured, (iv) the marshalling of any Property or (v) any limitation on the Lessor's liability for failure to comply with Chapter 6 of Article 9 of the UCC;

(r)       We express no opinion as to the availability of any remedy with respect to any Property provided for in the Documents to the extent that such remedy is not otherwise available under the UCC or comparable laws of the State. Without limiting the generality of the foregoing, we express no opinion as to the validity, binding effect or enforceability of any provision in the Documents (a) that purports to permit the Lessor or any other party to foreclose on any Property without any notice to the Lessee, except as provided in Section 9611(d) of the UCC, or (ii) that purports to permit the Lessor or any other party to sell or otherwise dispose of, or purchase, any Property, or enforce any other right or remedy thereunder (including without limitation any self-help or taking possession remedy), except in compliance with Applicable Law;

(s)       We express no opinion as to the validity, binding effect or enforceability of any provision in the Documents that purports to establish standards for the performance of the obligations of good faith, diligence, reasonableness and care that are different from the standards prescribed by the UCC; and

(t)       We express no opinion as to whether or not the Transaction will be treated for federal and state income tax purposes as a lease or as a financing transaction.

In our opinion, the foregoing qualifications, limitations and exceptions do not render the Documents invalid as a whole, and there exist, in the Documents or pursuant to Applicable Law, legally adequate remedies for a realization of the principal benefits and/or security intended to be provided by the Documents.

We advise Lessor that circumstances can occur after the perfection of a security interest in personal property which could cause the security interest to become unperfected including, without limitation, the fact that a financing statement lapses after five years; the UCC creates certain limitations on the rights to proceeds; a change in the name of the debtor or the location of the debtor will result in the security interest in certain property to become unperfected unless appropriate steps are taken; and a secured party's rights are subject to the rights of certain purchasers of the collateral to acquire the collateral free of the security interest.

093734.000003 608245938.2



IBM Credit, LLC
March 16, 2016
Page 7

To the extent that the obligations of Lessee may be dependent upon such matters, we assume that: Lessor is duly formed, validly existing and in good standing under the laws of its jurisdiction of formation; Lessor has the requisite power and authority to execute and deliver the Documents and to perform its obligations under the Documents; each of the Documents has been duly executed and delivered by Lessor, and constitutes the legally valid and binding obligation of Lessor, enforceable against Lessor in accordance with its terms; there are no other documents, understandings, or agreements (whether written or oral) between or among the parties which would expand, modify or otherwise affect the obligations of the parties under the Documents, the documents submitted to us contain therein all the terms intended by the parties, and no evidence extrinsic to the written provisions contained in the Documents will be introduced into evidence to a court of law or equity or otherwise for the purpose of showing that the parties intended a meaning contrary to that expressed by the written provisions of such document.

We have also assumed that:

(1)    None of the transactions evidenced by the Documents is being entered into for any personal, family or household purposes.

(2)    None of the collateral involved in the Transaction consists or will consist of consumer goods, mobile goods, farm products, crops, timber, minerals or accounts resulting from the sale thereof, beneficial interests in a trust or a decedent's estate, commercial tort claims, letter of credit rights or uncertificated securities, or consists or will consist of items that are subject to a certificate-of-title statute, and that, no party other than the Lessor has a present security interest perfected by possession in any item of collateral in which a security interest may be perfected either by possession or the filing of a financing statement.

(3)    Lessee has "rights" (within the meaning of Section 9203 of the UCC) in all portions of the collateral purported to be assigned or pledged by it to the Lessor pursuant to the Documents, and value has been given by the Lessor to Lessee in connection with the transactions contemplated by the Documents, and there is no agreement to which the Lessor is a party that postpones attachment of the security interests granted under the Documents.

This opinion is intended solely for the benefit of the Lessor and its successors and assigns in connection with the Transaction. No part of this opinion may be relied upon by any other person or for any other purpose, be incorporated, quoted or otherwise referred to in any other document or communication or be filed with or otherwise furnished to any governmental authority or other person without our prior written consent, except that our prior written consent is not needed to furnish a copy of this opinion: (a) in connection with any proceedings relating to the Documents or the

093734.000003 608245938.2



EXHIBIT _A_
Page _48_ Of _69_

IBM Credit, LLC
March 16, 2016
Page 8

enforcement thereof; and (b) to accountants and legal counsel for the Lessor (each of whom may rely upon this opinion as though it had been addressed and delivered to them as of the date of this opinion). In all cases, reliance upon this opinion is conditioned upon acceptance of all of the qualifications, exceptions, assumptions, definitions, exclusions and other limitations set forth herein.

This opinion speaks only as of the date hereof, and to its addressees and their successors and assigns, and we have no responsibility or obligation to update this opinion, to consider its applicability or correctness to anyone other than its addressees, and their successors and assigns, or to take into account changes in law, facts or any other developments of which we may later become aware.

Very truly yours,

*[signature]*

BAKER & HOSTETLER LLP

093734.000003 608245938.2

EXHIBIT ___4___
Page _49_ Of _69_

**IBM Credit LLC**
**Lease/Purchase Supplement**

Supplement No: *011349*              Page 1 of 2

Lease/Purchase Master Agreement No.: *8972702LP*

**Lessee Name and Address:**
TULARE LOCAL HEALTH CARE DISTRICT
869 CHERRY AVE
TULARE CA 93274-2207

**Lessor Name and Address:**
IBM Credit LLC
7100 Highlands Parkway
Smyrna, GA 30082
igfnadoc@us.ibm.com

This Supplement to the above referenced Lease/Purchase Master Agreement ("Agreement") is executed between TULARE LOCAL HEALTH CARE DISTRICT ("Lessee") and IBM Credit LLC ("Lessor").

Payment Period means the period for which a Payment is due and payable (e.g., Month, Quarter). Payment Period is: Monthly

Quote Validity Date is the date by which the executed Supplement must be returned to Lessor. Quote Validity Date is: January 8, 2016

Supplier:

| Ref No. | Qty. | Property Description | Original Term (months) | Amount Financed ($) | Interest Rate (%) | Planned Commencement Month |
|---|---|---|---|---|---|---|
| colspan7: **TAX-EXEMPT FINANCING TRANSACTION(S)** |
| 1 | 290 | HPKM L23 23" FLAT PANEL LED MONITOR | 36 | 38,187.20 | 5.18 | December 2015 |
| 2 | 1 | XOT9 OEM OEM OTHER | 36 | 1,160.00 | 5.14 | December 2015 |
| 3 | 1 | XOT9 OEM OEM OTHER | 36 | 3,245.91 | 5.14 | December 2015 |
| 4 | 290 | WYSQ P25 WYSE P25 ZERO CLIENT | 36 | 62,350.00 | 5.14 | December 2015 |
| 6 | 1 | 9848 AE2 FlashSys V9000 Storag Enclos | 36 | 174,944.18 | 3.06 | December 2015 |
| 8 | 3 | 7162 G4U FLEX SYSTEM X240 XEON 8 CORE 2 | 36 | 36,600.00 | 3.56 | December 2015 |
| 9 | 1 | 2076 224 Storwize V7000 Expansion 24 | 36 | 13,744.80 | 3.07 | December 2015 |
| 10 | 1 | XSV2 OEM OEM SERVICES | 36 | 17,960.00 | 5.14 | December 2015 |
| 11 | 1 | XSW1 OEM OEM SOFTWARE | 36 | 189,441.00 | 5.14 | December 2015 |
| 12 | 1 | XOT9 OEM OEM OTHER | 36 | 24,449.31 | 5.14 | December 2015 |
| 13 | 1 | XOT9 OEM OEM OTHER | 36 | 18,373.98 | 5.14 | December 2015 |
| 14 | 1 | 9SW1 IBM IBM SOFTWARE | 36 | 26,723.20 | 3.06 | December 2015 |
| | | | **TOTALS** | **607,179.58** | | |

**SPECIAL TERMS AND CONDITIONS:** None

**ADDITIONAL TERMS AND CONDITIONS:**

"Planned Commencement Month" means for the Financing Transaction to commence, the acceptance date on the Certificate of Acceptance must be prior to the end of the month of "Planned Commencement Month" indicated above unless otherwise approved by Lessor.

The Lease Payment Schedule for this Supplement sets forth the scheduled Lease Payments under this Supplement. The Commencement Date for this Supplement is set forth in the Lease Payment Schedule.

With respect to Financed Items consisting of prepaid maintenance, Lessee accepts the terms of the prepaid maintenance and agrees to look solely to the maintenance provider for provision of such maintenance in accordance with the terms of the contracts with the maintenance provided for said maintenance. Acceptance for purposes of a Supplement shall be the date of acceptance by Lessee in the Certificate of Acceptance.

Lessee agrees that it will timely complete, execute and file the Internal Revenue Service Form 8038-G or Form 8038-GC with the appropriate office of the Internal Revenue Service. Property contained in a Transaction is either Tax-Exempt, whereas the Property qualifies for tax-exempt interest treatment under the Code, or Taxable, whereas the Property does not qualify for tax exempt interest treatment under the Code. The interest rates applicable to this Supplement that provide for Tax-Exempt Lease/Purchase are based on many factors including Lessee's underlying obligation qualifying to pay interest that is treated as exempt by the Internal Revenue Service (IRS) from federal income tax under Section 103(a) of the Internal Revenue Code (Code), as well as many proprietary factors including pricing assumptions made by Lessor as to whether Lessor anticipates being able to recognize any benefits of this tax exemption. Lessee shall pay Lessor, on demand, a sum to be determined by Lessor, that will return to Lessor the economic results Lessor would otherwise have received if: (i) Lessee does not file the above IRS form on a timely basis; or (ii) IRS rules Lessee does not qualify under Section 103(a) of the Code.

Z126-6420-US-01 (05/2015)                                    X00012875-01



---

**IBM Credit LLC**
**Lease/Purchase Supplement**

Supplement No: *011349*                                        Page 2 of 2

The interest rates applicable to a Supplement may reflect fees or other consideration Lessor receives from Lessee's Suppliers that is passed on to Lessee in the form of lower rates.

For a Taxable Financing Transactions, the following provisions of the Lease/Purchase Master Agreement shall not be applicable: (i) Part 3, paragraph (f), (ii) Section entitled Arbitrage Certifications.

Lessor reserves the right to reject any Invoice that is: (i) not for information technology Equipment or related software or services, or (ii) dated more than 90 days prior to the date Lessor receives authorization from Lessee to finance.

Capitalized terms set forth in this Supplement or in the attachments, but not defined herein or therein, shall have the meaning set forth in the Lease/Purchase Master Agreement. The complete terms and conditions of the Lease/Purchase Master Agreement are incorporated by reference.

Section entitled "Waiver of Jury Trials" under this Agreement is deleted in its entirety.

In addition to a Supplement, and as a requirement to entering into a Lease/Purchase Supplement, Lessee shall provide in completed and executed form, acceptable to Lessor, the additional documents attached to this Supplement that may include:

(a) Payment Schedule for a Supplement, (b) Opinion of Counsel to the Lessee, (c) Lessee's Certificate, (d) Certificate of Acceptance, (e) State Addendum, if applicable and attached, (f) for Tax-Exempt Financed Items (i) Form 8038-G or 8038-GC (to be filed with Internal Revenue Service by Lessee), (ii) Prepaid Maintenance Certification of Maintenance Provider and (iii) Prepaid Maintenance Certification of Maintenance Vendor.

The Agreement referenced above shall be incorporated herein by reference. Lessee hereunder shall be bound to the terms and conditions of the Agreement as Lessee. The Agreement, this Supplement and any applicable attachments or addenda are the complete, exclusive statement of the parties with respect to the subject matter herein. These documents supersede any prior oral or written communications between the parties. By signing below, Lessee represents and warrants that Lessee's name as set forth in the signature block below is Lessee's exact legal name and the information identifying Lessee's state of organization is true, accurate and complete in all respects. By signing below, both parties agree to the terms represented by this Agreement as it may be amended or modified. Delivery of an executed copy of any of these documents by facsimile or other reliable means shall be deemed to be as effective for all purposes as delivery of a manually executed copy. Lessee acknowledges that we may maintain a copy of these documents in electronic form and agrees that copy reproduced from such electronic form or by any other reliable means (for example, photocopy, image or facsimile) shall in all respects be considered equivalent to an original.

| Agreed to: | Agreed to: |
|---|---|
| **TULARE LOCAL HEALTH CARE DISTRICT** | **IBM Credit LLC** |

By: _Sherri Bell_ (signature)                    By: _Claire Squires_ (signature)

Authorized signature                              Authorized signature   Business Support Operations Manager

Name (type or print): *Sherry Bell*              Name (type or print): Claire L. Squires

Title (type or print): *Chair of Board of Directors*   Title (type or print):

Date: *12/23/15*                                  Date: *12-28-15*

Z126-6420-US-01 (05/2015)                                        X00012875-01

EXHIBIT ___4___
Page _51_ Of _69_

Schedule/Agreement No.: 011349

Certificate of Acceptance No.: 011349001

**IBM Credit LLC**

**Certificate of Acceptance**

Page 1 of 2

**Lessee/Borrower Name ("Client") and Address:**
TULARE LOCAL HEALTH CARE DISTRICT
869 CHERRY AVE
TULARE CA 93274-2207

**Lessor Name and Address:**
IBM Credit LLC
7100 Highlands Parkway
Smyrna, GA 30082
igfnadoc@us.ibm.com

The Client certifies and agrees that the information contained in the following table(s) is correct and relates to item(s) leased or financed under the terms and conditions of the above referenced Schedule/Agreement with IBM Credit LLC.

Client Reference:
Payment Period: Monthly
Payment Type: Advance

| Qty. | **TAX-EXEMPT FINANCING TRANSACTION(S)** Property Description | Original Term (months) |
|---|---|---|
| 290 | HPKM L23 23" FLAT PANEL LED MONITOR | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 290 | WYSQ P25 WYSE P25 ZERO CLIENT | 36 |
| 1 | 9848 AE2 FlashSys V9000 Storeg Enclos | 36 |
| 3 | 7162 G4U FLEX SYSTEM X240 XEON 8 CORE 2 | 36 |
| 1 | 2076 224 Storwize V7000 Expansion 24 | 36 |
| 1 | XSV2 OEM OEM SERVICES | 36 |
| 1 | XSW1 OEM OEM SOFTWARE | 36 |
| 1 | XOT9 OEM OEM OTHER | 36 |
| 1 | XOT9 OEM OEM OTHER | 38 |
| 1 | 9SW1 IBM IBM SOFTWARE | 36 |

Client represents and certifies that the item(s) listed in the above table(s) are in compliance with Client's specifications ("Accepted Item(s)"). Client hereby accepts the Accepted Item(s) listed in the above table(s) on the Acceptance Date and authorizes IBM Credit LLC to make payments to the Supplier(s) for the Supplier's invoice(s) for the Accepted Item(s) and to commence the leasing or financing of these Accepted Item(s) under the Schedule/Agreement.

Since this Certificate of Acceptance ("COA") is being issued prior to Lessor's receipt of an invoice, Lessor, upon its receipt of this COA duly executed by Lessee and the Supplier's invoice, will either issue i) a confirmation document in order to confirm Lessor's acceptance of the COA or ii) an updated COA which requires Lessee's signature in order to confirm any changes. In order for IBM Credit LLC to make payment to your listed Suppliers, all Equipment must include serial number information. Accordingly, Client hereby authorizes IBM Credit LLC to complete or update any manufacturer serial number information for any Accepted Item(s) accepted, without Client's further action or consent.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement referenced in the Schedule listed above.

**This COA may be sent to Client by IBM Credit LLC in soft copy format, such as a PDF file. Client represents and warrants that no changes have been made to the text of this COA, except for IBM Credit LLC authorized alterations to the Product Description (including without limitation, changes to any other information listed on the product information tables herein). If there are any conflicts between the version delivered by IBM Credit LLC to Client and the version delivered by Client to IBM Credit LLC, or if the Supplier's invoice does not match the information listed on the COA, IBM Credit LLC reserves the right not to incept the transaction and to send a replacement COA to Client. Any copy of this COA made by reliable means (for example photocopy, image or facsimile) shall in all respects be considered equivalent to an original.**

Z126-5787-US-02 (06/2015)

EXHIBIT ___4___
Page _52_ Of _69_

Filed 06/03/19
Filed 12/07/17

Case 17-13797
Case 17-13797

Doc 1469
Claim 49

| Schedule/Agreement No.: 011349 | **IBM Credit LLC** | |
|---|---|---|
| Certificate of Acceptance No.: 011349001 | **Certificate of Acceptance** | Page 2 of 2 |

For the purposes of the transaction commencement provisions specified in the Agreement referenced in the Schedule listed above, Client hereby represents, warrants and certifies that as of the following date, Client has accepted the Accepted Item(s) listed in the product information tables herein:

12/23/15 (MM/DD/YYYY) ("Acceptance Date" for Accepted Item(s))

Agreed to:
**TULARE LOCAL HEALTH CARE DISTRICT**

By: _____    _Sherrie Bell_
    Authorized signature

Name (type of print): _____    Sherrie Bell

Title (type of print): _Chief Information Officer_    President

Client shall return this executed COA to IBM Credit LLC by mail, in an email, or by facsimile within ten (10) days of Acceptance Date.

Z126-5787-US-02 (06/2015)

EXHIBIT _A_
Page _53_ Of _69_

**LESSEE'S CERTIFICATE**

**IBM Credit LLC**

Page 1 of 2

Re: Lease/Purchase Supplement No. 011349 to Lease/Purchase Master Agreement No. 8972702LP between IBM Credit LLC and TULARE LOCAL HEALTH CARE DISTRICT ("Lessee").

The undersigned, being the duly elected, qualified and acting _Chairman_ of the Lessee do hereby certify, as of _12/23/15_, as follows:

1. Lessee did, at a meeting of the governing body of the Lessee held _12/23/15_ by resolution or ordinance duly enacted, in accordance with all requirements of law, approve and authorize the execution and delivery of the above-referenced Lease/Purchase Supplement and any related documents entered into pursuant to the Lease/Purchase Master Agreement (the "Lease/Purchase Supplement") by the following named representative of Lessee, to wit:

| NAME OF EXECUTING OFFICIAL | TITLE OF EXECUTING OFFICIAL | SIGNATURE OF EXECUTING OFFICIAL |
|---|---|---|
| _George Bell_ | _Chairman_ | _Shane Bell_ |
| And/Or | | |
| And/Or | | |
| And/Or | | |
| And/Or | | |

2. The above-named representative of the Lessee held at the time of such authorization and holds at the present time the office set forth above.

3. The meeting(s) of the governing body of the Lessee at which the Lease/Purchase Supplement was approved and authorized to be executed was duly called, regularly convened and attended throughout by the requisite quorum of the members thereof, and the enactment approving the Lease/Purchase Supplement and authorizing the execution thereof has not been altered or rescinded. All meetings of the governing body of Lessee relating to the authorization and delivery of the Lease/Purchase Supplement have been: (a) held within the geographic boundaries of the Lessee; (b) open to the public, allowing all people to attend; (c) conducted in accordance with internal procedures of the governing body; and (d) conducted in accordance with the charter of the Lessee, if any, and the laws of the State.

4. No event or condition that constitutes, or with the giving of notice or the lapse of time or both would constitute, an Event of Default or a Non-appropriation Event (as such terms are defined in the Lease/Purchase Master Agreement (the "Master Agreement")) exists at the date hereof with respect to the Lease/Purchase Supplement or any other Lease/Purchase Supplements under the Master Agreement.

5. The acquisition of all of the Property under the Lease/Purchase Supplement has been duly authorized by the governing body of Lessee.

6. Lessee has, in accordance with the requirements of law, fully budgeted and appropriated sufficient funds for the current budget year to make the Lease Payments scheduled to come due during the current budget year under the Lease/Purchase Supplement and to meet its other obligations for the current budget year and such funds have not been expended for other purposes.

7. Lessee represents and warrants that the Property is essential to the proper, efficient and economic functioning of Lessee or to the services that Lessee provides; and Lessee has immediate need for and expects to make immediate use of substantially all of the Property, which need is not temporary or expected to diminish in the foreseeable future.

8. Bank Qualified Tax-Exempt Obligation under Section 265 (Consult tax counsel for applicable provisions.).

____ Lessee hereby designates this Lease/Purchase Supplement as a "qualified tax-exempt obligation" as defined in Section 265(b)(3)(B) of the Code. Lessee reasonably anticipates issuing tax-exempt obligations (excluding private activity bonds other than qualified 501(c)(3) bonds and including all tax-exempt obligations of subordinate entities of the Lessee) during the calendar year in which the Commencement Date of this Lease/Purchase Supplement falls, in an amount not exceeding $10,000,000.

or

_x_ Not applicable

9. Has Lessee ever terminated a lease or financing contract prior to the expiration of its term (including all permitted renewal terms) due to nonappropriation or other provision permitting Lessee to terminate in Lessee's discretion?

Yes ____ No _x_ If yes, then please describe the circumstances of such termination:

_____

_____

Z128-5746-US-02 (02/2012)
Exhibit 3

EXHIBIT _A_
Page _54_ Of _69_

IBM Credit LLC

**LESSEE'S CERTIFICATE**

Page 2 of 2

10. As of the date hereof, no litigation is pending, (or, to my knowledge, threatened) against Lessee in any court (a) seeking to restrain or enjoin the delivery of the Master Agreement or the Lease/Purchase Supplement or of other agreements similar to the Master Agreement; (b) questioning the authority of Lessee to execute the Master Agreement or the Lease/Purchase Supplement, or the validity of the Master Agreement or the Lease/Purchase Supplement, or the payment of principal of or interest on, the Lease/Purchase Supplement; (c) questioning the constitutionality of any statute, or the validity of any proceedings, authorizing the execution of the Master Agreement and the Lease/Purchase Supplement; or (d) affecting the provisions made for the payment of or security for the Master Agreement and the Lease/Purchase Supplement.

Lessee: TULARE LOCAL HEALTH CARE DISTRICT

By: _Sherrie Bell_        Alan W. Germany

Title: _Chairman_         CFO/CCO

SIGNER MUST NOT BE THE SAME AS THE EXECUTING OFFICIAL(S) SHOWN ABOVE

Z126-5746-US-02 (02/2012)
Exhibit 3

EXHIBIT _A_
Page _55_ Of _69_

**IBM Credit LLC**
**Lease Payment Schedule**

Lessee Name:  TULARE LOCAL HEALTH CARE DISTRICT

Lease/Purchase Supplement No: 011349

Commencement Date

The Commencement Date shall be the date of acceptance of the Property as set forth in the Acceptance Certificate executed by the Lessee and filed with the Lessor.  The Lease Payment Due Dates listed below are based on the date of acceptance being a date on or before the end of the Planned Commencement Month.

Lease Payment Schedule

**Total Principal Amount: $607,179.56**
**Interest Rate for Schedule: 4.31%**

| Payment No. | Lease Payment Due Dates | Lease Payments ($) | Principal Component ($) | Interest Component ($) | Prepayment Price (After Making Payment for Said Due Date) ($) |
|---|---|---|---|---|---|
| 1 | 1/01/2016 | 17,946.63 | 17,946.63 | 0.00 | 589,232.93 |
| 2 | 2/01/2016 | 17,946.63 | 15,832.20 | 2,114.43 | 573,400.73 |
| 3 | 3/01/2016 | 17,946.63 | 15,889.33 | 2,057.30 | 557,511.40 |
| 4 | 4/01/2016 | 17,946.63 | 15,943.74 | 2,002.89 | 541,567.66 |
| 5 | 5/01/2016 | 17,946.63 | 16,004.11 | 1,942.52 | 525,563.55 |
| 6 | 6/01/2016 | 17,946.63 | 16,058.84 | 1,887.79 | 509,504.71 |
| 7 | 7/01/2016 | 17,946.63 | 16,119.56 | 1,827.07 | 493,385.15 |
| 8 | 8/01/2016 | 17,946.63 | 16,174.64 | 1,771.99 | 477,210.51 |
| 9 | 9/01/2016 | 17,946.63 | 16,235.68 | 1,710.95 | 460,974.83 |
| 10 | 10/01/2016 | 17,946.63 | 16,291.08 | 1,655.55 | 444,683.75 |
| 11 | 11/01/2016 | 17,946.63 | 16,349.56 | 1,597.07 | 428,334.19 |
| 12 | 12/01/2016 | 17,946.63 | 16,408.24 | 1,538.39 | 411,925.95 |
| 13 | 1/01/2017 | 17,946.63 | 16,467.03 | 1,479.60 | 395,458.92 |
| 14 | 2/01/2017 | 17,946.63 | 16,526.04 | 1,420.59 | 378,932.88 |
| 15 | 3/01/2017 | 17,946.63 | 16,585.23 | 1,361.40 | 362,347.65 |
| 16 | 4/01/2017 | 17,946.63 | 16,644.56 | 1,302.07 | 345,703.09 |
| 17 | 5/01/2017 | 17,946.63 | 16,704.07 | 1,242.56 | 328,999.02 |
| 18 | 6/01/2017 | 17,946.63 | 16,763.75 | 1,182.88 | 312,235.27 |
| 19 | 7/01/2017 | 17,946.63 | 16,823.63 | 1,123.00 | 295,411.64 |
| 20 | 8/01/2017 | 17,946.63 | 16,883.70 | 1,062.93 | 278,527.94 |
| 21 | 9/01/2017 | 17,946.63 | 16,946.82 | 999.81 | 261,581.12 |
| 22 | 10/01/2017 | 17,946.63 | 17,007.20 | 939.43 | 244,573.92 |
| 23 | 11/01/2017 | 17,946.63 | 17,067.79 | 878.84 | 227,506.13 |
| 24 | 12/01/2017 | 17,946.63 | 17,128.54 | 818.09 | 210,377.59 |
| 25 | 1/01/2018 | 17,946.63 | 17,189.50 | 757.13 | 193,188.09 |
| 26 | 2/01/2018 | 17,946.63 | 17,250.61 | 696.02 | 175,937.48 |
| 27 | 3/01/2018 | 17,946.63 | 17,314.80 | 631.83 | 158,622.68 |
| 28 | 4/01/2018 | 17,946.63 | 17,376.28 | 570.35 | 141,246.40 |
| 29 | 5/01/2018 | 17,946.63 | 17,437.94 | 508.69 | 123,808.46 |
| 30 | 6/01/2018 | 17,946.63 | 17,499.82 | 446.81 | 106,308.64 |
| 31 | 7/01/2018 | 17,946.63 | 17,564.72 | 381.91 | 88,743.92 |
| 32 | 8/01/2018 | 17,946.63 | 17,626.94 | 319.69 | 71,116.98 |
| 33 | 9/01/2018 | 17,946.63 | 17,689.36 | 257.27 | 53,427.62 |
| 34 | 10/01/2018 | 17,946.63 | 17,754.82 | 191.81 | 35,672.80 |
| 35 | 11/01/2018 | 17,946.63 | 17,820.52 | 126.11 | 17,852.28 |

Z126-5744-US-03 (05/2015)          Page 1 of 3

EXHIBIT _____A_____
Page _56_ Of _69_

**IBM Credit LLC**
**Lease Payment Schedule**

Lessee Name: TULARE LOCAL HEALTH CARE DISTRICT

Lease/Purchase Supplement No: 011349

| Payment No. | Lease Payment Due Dates | Lease Payments ($) | Principal Component ($) | Interest Component ($) | Prepayment Price (After Making Payment for Said Due Date) ($) |
|---|---|---|---|---|---|
| 36 | 12/01/2018 | 17,946.63 | 17,852.28 | 94.35 | 0.00 |
| | Totals: | 646,078.68 | 607,179.56 | 38,899.12 | |

EXHIBIT A
Page 57 Of 69

**IBM Credit LLC**
**Lease Payment Schedule**

Lessee Name: TULARE LOCAL HEALTH CARE DISTRICT

Lease/Purchase Supplement No: 011349

| QTY | Product Description | Serial No. / Alteration Reference No. | Principal Amt ($) |
|---|---|---|---|
| 290 | HPKM L23 23" FLAT PANEL LED MONITOR | | 38,187.20 |
| 1 | XOT9 OEM OEM OTHER | | 1,160.00 |
| 1 | XOT9 OEM OEM OTHER | | 3,245.91 |
| 290 | WYSQ P25 WYSE P25 ZERO CLIENT | | 62,350.00 |
| 1 | 9848 AE2 FlashSys V9000 Storag Enclos | | 174,944.18 |
| 3 | 7162 G4U FLEX SYSTEM X240 XEON 8 CORE 2 | | 36,600.00 |
| 1 | 2076 224 Storwize V7000 Expansion 24 | | 13,744.80 |
| 1 | XSV2 OEM OEM SERVICES | | 17,960.00 |
| 1 | XSW1 OEM OEM SOFTWARE | | 189,441.00 |
| 1 | XOT9 OEM OEM OTHER | | 24,449.31 |
| 1 | XOT9 OEM OEM OTHER | | 18,373.96 |
| 1 | 9SW1 IBM IBM SOFTWARE | | 26,723.20 |
| | | Totals: | 607,179.56 |

Lessee: **TULARE LOCAL HEALTH CARE DISTRICT**

By: _Sherri Bell_
    Authorized signature

Name (type or print): _Sherry Bell_

Title (type or print): _Chairman_

Date: _12/23/15_

Z126-5744-US-03 (05/2015)        Page 3 of 3



EXHIBIT ___A___

Page _58_ of _69_

**LESSEE'S CERTIFICATE**                    **IBM Credit LLC**
                                            Page 1 of 2

Re: Lease/Purchase Supplement No. 013070 to Lease/Purchase Master Agreement No. 8972702LP between IBM Credit LLC and TULARE LOCAL HEALTH CARE DISTRICT ("Lessee").

The undersigned, being the duly elected, qualified and acting _Chairman of the Board_ of the Lessee do hereby certify, as of _12/28/15_, as follows:

1. Lessee did, at a meeting of the governing body of the Lessee held _12/23/15_ by resolution or ordinance duly enacted, in accordance with all requirements of law, approve and authorize the execution and delivery of the above-referenced Lease/Purchase Supplement and any related documents entered into pursuant to the Lease/Purchase Master Agreement (the "Lease/Purchase Supplement") by the following named representative of Lessee, to wit:

| NAME OF EXECUTING OFFICIAL | TITLE OF EXECUTING OFFICIAL | SIGNATURE OF EXECUTING OFFICIAL |
|---|---|---|
| _George Bell_ | _Chairman of the Board_ | _Shmin Bell_ |
| And/Or | | |
| And/Or | | |
| And/Or | | |
| And/Or | | |

2. The above-named representative of the Lessee held at the time of such authorization and holds at the present time the office set forth above.

3. The meeting(s) of the governing body of the Lessee at which the Lease/Purchase Supplement was approved and authorized to be executed was duly called, regularly convened and attended throughout by the requisite quorum of the members thereof, and the enactment approving the Lease/Purchase Supplement and authorizing the execution thereof has not been altered or rescinded. All meetings of the governing body of Lessee relating to the authorization and delivery of the Lease/Purchase Supplement have been: (a) held within the geographic boundaries of the Lessee; (b) open to the public, allowing all people to attend; (c) conducted in accordance with internal procedures of the governing body; and (d) conducted in accordance with the charter of the Lessee, if any, and the laws of the State.

4. No event or condition that constitutes, or with the giving of notice or the lapse of time or both would constitute, an Event of Default or a Non-appropriation Event (as such terms are defined in the Lease/Purchase Master Agreement (the "Master Agreement")) exists at the date hereof with respect to this Lease/Purchase Supplement or any other Lease/Purchase Supplements under the Master Agreement.

5. The acquisition of all of the Property under the Lease/Purchase Supplement has been duly authorized by the governing body of Lessee.

6. Lessee has, in accordance with the requirements of law, fully budgeted and appropriated sufficient funds for the current budget year to make the Lease Payments scheduled to come due during the current budget year under the Lease/Purchase Supplement and to meet its other obligations for the current budget year and such funds have not been expended for other purposes.

7. Lessee represents and warrants that the Property is essential to the proper, efficient and economic functioning of Lessee or to the services that Lessee provides; and Lessee has immediate need for and expects to make immediate use of substantially all of the Property, which need is not temporary or expected to diminish in the foreseeable future.

8. Bank Qualified Tax-Exempt Obligation under Section 265 (Consult tax counsel for applicable provisions.).

_____ Lessee hereby designates this Lease/Purchase Supplement as a "qualified tax-exempt obligation" as defined in Section 265(b)(3)(B) of the Code. Lessee reasonably anticipates issuing tax-exempt obligations (excluding private activity bonds other than qualified 501(c)(3) bonds and including all tax-exempt obligations of subordinate entities of the Lessee) during the calendar year in which the Commencement Date of this Lease/Purchase Supplement falls, in an amount not exceeding $10,000,000.

*or*

_X_ Not applicable

9. Has Lessee ever terminated a lease or financing contract prior to the expiration of its term (including all permitted renewal terms) due to nonappropriation or other provision permitting Lessee to terminate in Lessee's discretion?

Yes ____    No _X_. If yes, then please describe the circumstances of such termination:

_____

_____

Z126-5746-US-02 (02/2012)
Exhibit 3

**IBM Credit LLC**

**LESSEE'S CERTIFICATE**

Page 2 of 2

10. As of the date hereof, no litigation is pending, (or, to my knowledge, threatened) against Lessee in any court (a) seeking to restrain or enjoin the delivery of the Master Agreement or the Lease/Purchase Supplement or of other agreements similar to the Master Agreement; (b) questioning the authority of Lessee to execute the Master Agreement or the Lease/Purchase Supplement, or the validity of the Master Agreement or the Lease/Purchase Supplement, or the payment of principal of or interest on, the Lease/Purchase Supplement; (c) questioning the constitutionality of any statute, or the validity of any proceedings, authorizing the execution of the Master Agreement and the Lease/Purchase Supplement; or (d) affecting the provisions made for the payment of or security for the Master Agreement and the Lease/Purchase Supplement.

Lessee: TULARE LOCAL HEALTH CARE DISTRICT

By: _____

Title: _____CEO/COO_____

SIGNER MUST NOT BE THE SAME AS THE EXECUTING OFFICIAL(S) SHOWN ABOVE

Z126-5746-US-02 (02/2012)
Exhibit 3

**IBM Credit LLC**

**Lease/Purchase Supplement**

Supplement No: *013070*

Page 1 of 2

Lease/Purchase Master Agreement No.: *8972702LP*

**Lessee Name and Address:**
TULARE LOCAL HEALTH CARE DISTRICT
869 CHERRY AVE
TULARE CA 93274-2207

**Lessor Name and Address:**
IBM Credit LLC
7100 Highlands Parkway
Smyrna, GA 30082
igfnadoc@us.ibm.com

This Supplement to the above referenced Lease/Purchase Master Agreement ("Agreement") is executed between TULARE LOCAL HEALTH CARE DISTRICT ("Lessee") and IBM Credit LLC ("Lessor").

Payment Period means the period for which a Payment is due and payable (e.g., Month, Quarter). Payment Period is: Monthly

Quote Validity Date is the date by which the executed Supplement must be returned to Lessor. Quote Validity Date is: January 27, 2016

Supplier:

| | | **TAX-EXEMPT FINANCING TRANSACTION(S)** | | | | | |
|---|---|---|---|---|---|---|---|
| Ref No. | Qty. | Property Description | Original Term (months) | Amount Financed ($) | Interest Rate (%) | Planned Commencement Month |
| 1 | 1 | XSW1 OEM OEM SOFTWARE | 36 | 64,487.74 | 5.14 | December 2015 |
| | | | **TOTALS** | 64,487.74 | | |

**SPECIAL TERMS AND CONDITIONS:** None

**ADDITIONAL TERMS AND CONDITIONS:**

"Planned Commencement Month" means for the Financing Transaction to commence, the acceptance date on the Certificate of Acceptance must be prior to the end of the month of "Planned Commencement Month" indicated above unless otherwise approved by Lessor.

The Lease Payment Schedule for this Supplement sets forth the scheduled Lease Payments under this Supplement. The Commencement Date for this Supplement is set forth in the Lease Payment Schedule.

With respect to Financed Items consisting of prepaid maintenance, Lessee accepts the terms of the prepaid maintenance and agrees to look solely to the maintenance provider for provision of such maintenance in accordance with the terms of the contracts with the maintenance provided for said maintenance. Acceptance for purposes of a Supplement shall be the date of acceptance by Lessee in the Certificate of Acceptance.

Lessee agrees that it will timely complete, execute and file the Internal Revenue Service Form 8038-G or Form 8038-GC with the appropriate office of the Internal Revenue Service. Property contained in a Transaction is either Tax-Exempt, whereas the Property qualifies for tax-exempt interest treatment under the Code, or Taxable, whereas the Property does not qualify for tax exempt interest treatment under the Code. The interest rates applicable to this Supplement that provide for Tax-Exempt Lease/Purchase are based on many factors including Lessee's underlying obligation qualifying to pay interest that is treated as exempt by the Internal Revenue Service (IRS) from federal income tax under Section 103(a) of the Internal Revenue Code (Code), as well as many proprietary factors including pricing assumptions made by Lessor as to whether Lessor anticipates being able to recognize any benefits of this tax exemption. Lessee shall pay Lessor, on demand, a sum to be determined by Lessor, that will return to Lessor the economic results Lessor would otherwise have received if: (i) Lessee does not file the above IRS form on a timely basis; or (ii) IRS rules Lessee does not qualify under Section 103(a) of the Code.

The interest rates applicable to a Supplement may reflect fees or other consideration Lessor receives from Lessee's Suppliers that is passed on to Lessee in the form of lower rates.

For a Taxable Financing Transactions, the following provisions of the Lease/Purchase Master Agreement shall not be applicable: (i) Part 3, paragraph (f), (ii) Section entitled Arbitrage Certifications.

Lessor reserves the right to reject any invoice that is: (i) not for information technology Equipment or related software or services, or (ii) dated more than 90 days prior to the date Lessor receives authorization from Lessee to finance.

Capitalized terms set forth in this Supplement or in the attachments, but not defined herein or therein, shall have the meaning set forth in the Lease/Purchase Master Agreement. The complete terms and conditions of the Lease/Purchase Master Agreement are incorporated by reference.

Section entitled "Waiver of Jury Trials" under this Agreement is deleted in its entirety.

Z126-6420-US-01 (05/2015)

X00014174-02

EXHIBIT *A*
Page *61* Of *69*

## IBM Credit LLC
## Lease Payment Schedule

**Lessee Name:** TULARE LOCAL HEALTH CARE DISTRICT

**Lease/Purchase Supplement No:** 013070

### Commencement Date

The Commencement Date shall be the date of acceptance of the Property as set forth in the Acceptance Certificate executed by the Lessee and filed with the Lessor. The Lease Payment Due Dates listed below are based on the date of acceptance being a date on or before the end of the Planned Commencement Month.

### Lease Payment Schedule

**Total Principal Amount:** $64,487.74
**Interest Rate for Schedule:** 5.14%

| Payment No. | Lease Payment Due Dates | Lease Payments ($) | Principal Component ($) | Interest Component ($) | Prepayment Price (After Making Payment for Said Due Date) ($) |
|---|---|---|---|---|---|
| 1 | 1/01/2016 | 1,928.44 | 1,928.44 | 0.00 | 62,559.30 |
| 2 | 2/01/2016 | 1,928.44 | 1,660.69 | 267.75 | 60,898.61 |
| 3 | 3/01/2016 | 1,928.44 | 1,667.79 | 260.65 | 59,230.82 |
| 4 | 4/01/2016 | 1,928.44 | 1,674.93 | 253.51 | 57,555.89 |
| 5 | 5/01/2016 | 1,928.44 | 1,682.10 | 246.34 | 55,873.79 |
| 6 | 6/01/2016 | 1,928.44 | 1,689.30 | 239.14 | 54,184.49 |
| 7 | 7/01/2016 | 1,928.44 | 1,696.53 | 231.91 | 52,487.96 |
| 8 | 8/01/2016 | 1,928.44 | 1,703.79 | 224.65 | 50,784.17 |
| 9 | 9/01/2016 | 1,928.44 | 1,711.08 | 217.36 | 49,073.09 |
| 10 | 10/01/2016 | 1,928.44 | 1,718.41 | 210.03 | 47,354.68 |
| 11 | 11/01/2016 | 1,928.44 | 1,725.76 | 202.68 | 45,628.92 |
| 12 | 12/01/2016 | 1,928.44 | 1,733.15 | 195.29 | 43,895.77 |
| 13 | 1/01/2017 | 1,928.44 | 1,740.57 | 187.87 | 42,155.20 |
| 14 | 2/01/2017 | 1,928.44 | 1,748.02 | 180.42 | 40,407.18 |
| 15 | 3/01/2017 | 1,928.44 | 1,755.50 | 172.94 | 38,651.68 |
| 16 | 4/01/2017 | 1,928.44 | 1,763.01 | 165.43 | 36,888.67 |
| 17 | 5/01/2017 | 1,928.44 | 1,770.56 | 157.88 | 35,118.11 |
| 18 | 6/01/2017 | 1,928.44 | 1,778.13 | 150.31 | 33,339.98 |
| 19 | 7/01/2017 | 1,928.44 | 1,785.75 | 142.69 | 31,554.23 |
| 20 | 8/01/2017 | 1,928.44 | 1,793.39 | 135.05 | 29,760.84 |
| 21 | 9/01/2017 | 1,928.44 | 1,801.06 | 127.38 | 27,959.78 |
| 22 | 10/01/2017 | 1,928.44 | 1,808.77 | 119.67 | 26,151.01 |
| 23 | 11/01/2017 | 1,928.44 | 1,816.51 | 111.93 | 24,334.50 |
| 24 | 12/01/2017 | 1,928.44 | 1,824.29 | 104.15 | 22,510.21 |
| 25 | 1/01/2018 | 1,928.44 | 1,832.10 | 96.34 | 20,678.11 |
| 26 | 2/01/2018 | 1,928.44 | 1,839.94 | 88.50 | 18,838.17 |
| 27 | 3/01/2018 | 1,928.44 | 1,847.81 | 80.63 | 16,990.36 |
| 28 | 4/01/2018 | 1,928.44 | 1,855.72 | 72.72 | 15,134.64 |
| 29 | 5/01/2018 | 1,928.44 | 1,863.66 | 64.78 | 13,270.98 |
| 30 | 6/01/2018 | 1,928.44 | 1,871.64 | 56.80 | 11,399.34 |
| 31 | 7/01/2018 | 1,928.44 | 1,879.65 | 48.79 | 9,519.69 |
| 32 | 8/01/2018 | 1,928.44 | 1,887.70 | 40.74 | 7,631.99 |
| 33 | 9/01/2018 | 1,928.44 | 1,895.78 | 32.66 | 5,736.21 |
| 34 | 10/01/2018 | 1,928.44 | 1,903.89 | 24.55 | 3,832.32 |
| 35 | 11/01/2018 | 1,928.44 | 1,912.04 | 16.40 | 1,920.28 |

EXHIBIT 4
Page 62 Of 69

## IBM Credit LLC
## Lease Payment Schedule

**Lessee Name:** TULARE LOCAL HEALTH CARE DISTRICT

**Lease/Purchase Supplement No:** 013070

| Payment No. | Lease Payment Due Dates | Lease Payments ($) | Principal Component ($) | Interest Component ($) | Prepayment Price (After Making Payment for Said Due Date) ($) |
|---|---|---|---|---|---|
| 36 | 12/01/2018 | 1,928.44 | 1,920.28 | 8.16 | 0.00 |
| | Totals: | 69,423.84 | 64,487.74 | 4,936.10 | |



EXHIBIT _A_
Page _63_ Of _69_

**IBM Credit LLC**
**Lease Payment Schedule**

Lessee Name: TULARE LOCAL HEALTH CARE DISTRICT

Lease/Purchase Supplement No: 013070

| QTY | Product Description | Serial No. / Alteration Reference No. | Principal Amt ($) |
|---|---|---|---|
| 1 | XSW1 OEM OEM SOFTWARE | | 64,487.74 |
| | | Totals: | 64,487.74 |

Lessee: **TULARE LOCAL HEALTH CARE DISTRICT**

By: _Shawn Bell_
    Authorized signature

Name (type or print) _George Bell_

Title (type or print) _Chairman of the Board_

Date: _12/28/15_

EXHIBIT _A_
Page _69_ Of _69_

DocuSign Envelope ID: 96438F79-0EDF-4EB0-A050-26ED290B434C

St. Jude Medical

TD02A – IBM US Country Schedule for St. Jude Medical China SAP Implementation

# IBM US

Transaction Document 02A - Statement of Work
for St. Jude Medical China SAP Implementation

for

ST. JUDE MEDICAL
SAP Implementation Services

© 2015 IBM Corporation | IBM and St. Jude Medical Confidential

1

DocuSign Envelope ID: 96438F79-0EDF-4EB0-A050-26ED290B434C

St. Jude Medical

TD02A – IBM US Country Schedule for St. Jude Medical China SAP Implementation

IBM

## Table of Content

1 - Professional US Services Fees Summary.................................... ............................ .. ..........3
   1.1 - Project Fee for the IBM US Implementation Services ... ............................ · ...........3
2 - Signature Acceptance.................................................................. ............................ ............5

EXHIBIT ___A___
Page _66_ Of _69_

DocuSign Envelope ID: 96438F79-0EDF-4EB0-A050-26ED290B434C

St. Jude Medical

TD02A – IBM US Country Schedule for St. Jude Medical China SAP Implementation

# 1 - Professional US Services Fees Summary

This Transaction Document "02A - Statement of Work for St. Jude Medical China SAP Implementation" (called the "US SOW") describes the Resources and Professional Fees for the work to be undertaken by IBM US (Services) detailed in the Master Statement of Work "TD01 – Statement of Work for St. Jude Medical China SAP Implementation" ("MSOW"). These Services are to be provided under the IBM customer agreement (ICA), number # HW 67416 (Agreement), dated July 10, 2006.

## 1.1 - Project Fee for the IBM US Implementation Services

The Services will be conducted on a time and materials basis.

In addition, IBM will invoice SJM monthly for applicable taxes, travel and living expenses, and other reasonable expenses incurred in connection with the Services.

IBM personnel will typically work and charge SJM 40 to 45 hours per week. All hours in excess of 45 hours per week must be approved in advance of working the hours by the IBM Project Manager for such hours to be chargeable to SJM and may be subject to the Project Change Control Procedure in the Master SOW TD01.

IBM will provide an estimated 28,576 hours for the Services at the following hourly rates:

| Role | USD Rate | Hours | USD Fees |
|---|---|---|---|
| Project Executive (US) | $390 | 192 | $74,880 |
| Project Manager (US) | $277 | 2,536 | $702,472 |
| Methods & Tools | $258 | 80 | $20,640 |
| SoH/Tech Infrastructure Lead | $295 | 2,472 | $729,240 |
| Off-shore PM | $60 | 1,296 | $77,760 |
| ABAP Development Lead | $55 | 1,752 | $96,360 |
| Sr. ABAP Consultants | $55 | 3,168 | $174,240 |
| ABAP Consultants | $49 | 2,832 | $138,768 |
| Jr. ABAP Consultants | $45 | 2,656 | $119,520 |
| PI/PO Consultant | $55 | 1,600 | $88,000 |
| BOBJ HANA LIVE Consultant | $55 | 1,600 | $88,000 |
| Basis/Security Consultant - ECC & CRM | $49 | 2,328 | $114,072 |
| Basis/Security Consultant - ECC & CRM | $49 | 2,168 | $106,232 |
| Security Consultant – Authorization | $49 | 1,000 | $49,000 |
| Security Consultant – Authorization | $258 | 1,008 | $260,064 |
| Enterprise Portal Design | $258 | 880 | $227,040 |
| GRC Sr. Consultant | $258 | 1,008 | $260,064 |
| TOTAL | | 28576 | $ 3,326,352 |

- IBM will also provide SJM a credit in the amount of $50,000 on the condition that the MSOW and the US SOW are signed by December 31, 2015. This credit will be applied in increments of $10,000 per month on each of the 5 monthly invoices between April 2016 and August 2016. If the monthly billing in any of these months is less than $10,000, then the credit will be applied in the

EXHIBIT A

Page 67 Of 69

Filed 06/03/19

Filed 12/07/17

Case 17-13797

Case 17-13797

Doc 1469

Claim 49

DocuSign Envelope ID: 98438F79-0EDF-4EB0-A050-28ED290B434C

St. Jude Medical

IBM

TD02A – IBM US Country Schedule for St. Jude Medical China SAP Implementation

following month. If either the MSOW or the US SOW are not signed by December 31, 2015, then this credit will not be provided to SJM.

- Including the above credit, the estimated professional services charges for this SOW are $3,276,352 and are exclusive of any travel and living expenses, other reasonable expenses incurred in connection with the Services, and any applicable taxes. Any estimate given by IBM of any charge whether for planning or any other purpose is only an estimate and can be greater or lesser than the amount indicated. As these are estimated amounts, actual fees may differ.

- SJM will be billed all actual travel and living costs according to IBM travel and living policy estimated at 15% of professional services. This estimate is provided for budgeting purposes only, and actual expenses may exceed this amount.

- Pricing excludes individual tax and compliance costs associated with IBM personnel who travel to a single location for more than one year or who are assigned to a project in a location other than their normal work location. Where possible, IBM will manage the length of these assignments to mitigate such personnel being subject to increased tax liabilities.

- IBM will invoice SJM monthly for actual Services hours worked (whether above or below the estimated hours), applicable taxes, travel and living expenses, and other reasonable expenses incurred in connection with the Services.



EXHIBIT A

Page 68 of 69

DocuSign Envelope ID: 96438F79-0EDF-4EB0-A050-26ED290B434C

St. Jude Medical

TD02A – IBM US Country Schedule for St. Jude Medical China SAP Implementation     IBM

## 2 - Signature Acceptance

This Transaction Document 02A –Statement of Work for St. Jude Medical China SAP Implementation (TD02A–US), the US SOW, and the Agreement identified below, are the complete agreement regarding Services, and replace any prior oral or written communications, representations, undertakings, warranties, promises, covenants, and commitments between SJM and IBM regarding the Services. In entering into this TD02A-US, neither party is relying upon any representation that is not specified in this TD02A-US, the SOW or the Agreement. Additional or different terms in any written communication from SJM (such as a purchase order) are void. Each party agrees that no modifications have been made to this TD02A-US.

Each party accepts the terms of this TD02A-US by signing this TD02A-US by hand or, where recognized by law, electronically. Any reproduction of this TD02A-US made by reliable means (for example, electronic image, photocopy, or facsimile) is considered an original and all Services and Products ordered under this TD02A-US and the SOW are subject to it.

IBM agrees to provide the Services described in this TD02A-US provided SJM accepts this TD02A-US, without modification, by signing in the space provided below.

| Agreed to | Agreed to |
|---|---|
| **Customer Name:** St. Jude Medical, Inc. | **International Business Machines Corporation** |
| Customer Address: <br><br> One St. Jude Medical Drive <br> St. Paul, MN 55117 | IBM Office Address: <br><br> 425 Market St. <br> San Francisco, CA  94105 |
| By (Authorized Signature): <br><br> *Mark Murphy* <br> DocuSigned by: <br> F660DE53F66A416... | By (Authorized Signature): <br><br> *Karen M J Theis* |
| Name (type or print): <br><br> *Mark Murphy* | Name (type or print): <br><br> *KAREN M. J. THEIS* |
| Date: <br><br> *December 30, 2015* | Date: <br><br> *12/30/2015* |
| Customer Number: | Referenced Agreement Name: <br><br> IBM Customer Agreement (ICA), number # HW 67416, dated July 10, 2006 (the "MSA" or "Agreement") |
| Estimated Start Date: Jan 4,2016 <br> Estimated End Date: May 15, 2017 | Project Name: <br><br> St. Jude Medical China SAP Implementation |

*P. Babcock*
*12/30/15*

EXHIBIT *A*
Page *69* Of *69*