7
WANGER JONES HELSLEY, PC
Riley C. Walter #91839
265 East River Park Circle, Ste. 310
Fresno, CA 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330
E-mail: rwalter@wjhattorneys.com

Chapter 9 Counsel for Debtor Tulare Local Healthcare District

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry Street<br>Tulare, CA 93274 | CASE NO. 17-13797<br><br>Chapter 9<br><br>DC No.: WJH-2<br><br>Date: Not set<br>Time: Not set<br>Place: 2500 Tulare Street<br>        Fresno, CA 93721<br>        Courtroom 13<br>Judge: Honorable René Lastreto II |

**DEBTOR'S OBJECTION TO PROOF OF CLAIM NUMBER 186
IN THE AMOUNT OF $2,370,060 FILED BY THE DEPARTMENT OF
HEALTH CARE SERVICES ON APRIL 3, 2018**

TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY JUDGE, THE DEPARTMENT OF HEALTH CARE SERVICES, AND TO ALL OTHER PARTIES IN INTEREST:

    Pursuant to 11 U.S.C. § 502 and Rule 3007 of the Federal Rules of Bankruptcy Procedure, the Tulare Local Healthcare District dba Tulare Regional Medical Center (the "Debtor" or "District") objects to Proof of Claim Number 186 filed by the Department of Health Care Services on the grounds set forth below.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider and determine this objection pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND FACTS

On September 30, 2017, the District filed a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") commencing Case No. 17-13797. Dkt. No. 1. On January 26, 2018, this Court entered the Order for Relief. Dkt. 379. On January 25, 2018, the Court approved the District's application for an order fixing the bar date for filing proofs of claim. Dkt. 366. On January 31, 2018, the District filed its proof of service of the Notice of Claims Bar Date and the "Order Fixing Bar Date for Filing Proofs of Claim" ("Bar Date Order"). Dkts. 371, 377 and 391. The Bar Date Order provided that the Claims Bar Date was April 10, 2018.

On April 3, 2018, the California Department of Health Care Services ("DHCS") filed Proof of Claim 186 in the amount of $2,370,060 (the "Claim"). DHCS asserts that the Claim is for an overpayment of supplemental reimbursement funds under the Disproportionate Share Hospital ("DSH") program for payment year 2013/14. DHCS, as the Medicaid State Agency, administers the DSH program because it is a Medi-Cal supplemental reimbursement program. The DSH program distributes funds to hospitals that provide health care services to a disproportionately large volume of Medi-Cal beneficiaries and uninsured individuals. The District's hospital, the Tulare Regional Medical Center, was a DSH eligible hospital during the 2013/14 payment year.

As set forth in the Declaration of Jillian Mongetta ("Mongetta Declaration") submitted in support of the Claim, DHCS asserts that the District was paid $2,370,060 in DSH funds for the 2013/14 payment year. As a recipient of DSH funds, the District is required to undergo a mandatory audit conducted by Myers & Stauffer (the "DSH Auditors"). In its Claim, DHCS also states that the former manager of the hospital operated by the District did not submit the requested data for the audit by the due date

of May 19, 2017, and thereafter sent a few files to the DSH Auditors but that such information was incomplete and insufficient to conduct the DSH audit. The Mongetta Declaration states that because the DSH Auditors did not receive the information necessary to conduct the DSH audit, the District's "Uncompensated Care Costs (UCC) were adjusted to zero for inpatient Fee for Service due to lack of support." The Mongetta Declaration further states that since the requested data was not provided, the District's "UCC were adjusted to zero for Managed Care due to lack of support." The Mongetta Declaration concludes that as a result of the Uncompensated Care Costs being adjusted to zero because the requested data was not provided by the District, the District had a "UCC well in excess of their DSH payment" and that the District "must return the entire amount of the DSH funds that they received for payment year 2013/14." A copy of Proof of Claim Number 186 is attached as Exhibit A to the Declaration of Daniel Heckathorne ("Heckathorne Decl.").

After the District's former manager was terminated and Daniel Heckathorne was appointed as the Interim Chief Financial Officer by the District's Board, Mr. Heckathorne directed individuals working under his supervision to compile the data requested by DHCS for the DSH audit for the 2013/14 payment year, and to submit such data to the DSH Auditors. The requisite data was compiled, and on October 29, 2018, the District's representative requested that the DSH Auditors provide instructions as to how that data should be transmitted to the DSH Auditors. That same day, Mike Davis, a Senior Manager with the DSH Auditors, confirmed that the District had provided the DSH Auditors with the required information regarding Medicare and Medical payments for the 2013/14 payment year, and that it would not need additional data unless the Centers for Medicare and Medicaid ("CMS") prevailed in litigation with certain hospitals. Heckathorne Decl. at ¶ 4 and Exhibit B thereto. The DSH Auditors have not requested that any additional data be provided. *Id.* Furthermore, on October 15, 2018, the DHCS sent a letter to hospital administrators which stated that the DSH audit for the 2013/14 payment year were calculated based on a methodology that has

been determined to be invalid and unenforceable, and that DHCS had suspended its effort to recoup DSH funds on that basis. *Id.* at ¶ 5 and Exhibit C thereto. For those reasons, the District does not owe DHCS for any overpayment of DSH funds for the 2013/14 payment year asserted in the Claim.

**RELIEF REQUESTED**

By this Objection, the District requests entry of an order, pursuant to 11 U.S.C. § 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure, that provides the following relief: (a) sustains the Objection; (b) disallows the Claim in its entirety; and (c) grants such other and further relief as this Court deems just and proper. No previous request for the relief sought herein has been made by the District to this or any other court.

**BASIS FOR RELIEF**

**A.     The Legal Standard**

Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Bankruptcy Code § 502(b)(1) states that if an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that ... such claim is unenforceable against the debtor ... under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Bankruptcy Rule 3007, which governs the procedure for objections to claims, provides that "[a]n objection to an allowance of a claim shall be in writing and filed.

**B.     Burden of Proof**

All allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof constitutes *prima facie* evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). However, once the objector

raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623. In considering an objection to a claim, a bankruptcy court may take judicial notice of the underlying records in a bankruptcy case. *O'Rourke v. Seaboard Surety Co., (In re ER Fergert, Inc.)*, 887 F.2d 955, 957-958 (9th Cir. 1998).

### C. The Objection Should Be Granted

The objection should be sustained and the Claim disallowed in its entirety because the District has provided evidence that the Claim should be reduced to zero because it has provided all information it was required to provide to DHCS and the DSH Auditors, and the DSH Auditors used a method to determine the amount of the overpayment that is invalid and unenforceable.

As explained above, after the District's former manager was terminated and Daniel Heckathorne was appointed as the Interim Chief Financial Officer by the District's Board, Mr. Heckathorne directed individuals working under his supervision to compile the data requested by DHCS for the DSH audit for the 2013/14 payment year, and to submit such data to the DSH Auditors. The requisite data was compiled, and on October 29, 2018, the District's representative requested that the DSH Auditors provide instructions as to how that data should be transmitted to the DSH Auditors. That same day, Mike Davis, a Senior Manager with the DSH Auditors, confirmed that the District had provided the DSH Auditors with the required information regarding Medicare and Medical payments for the 2013/14 payment year, and that it would not need additional data unless the Centers for Medicare and Medicaid prevailed in litigation with certain hospitals. Heckathorne Decl. at ¶ 4 and Exhibit B thereto. The DSH Auditors have not

requested that any additional data be provided. *Id.* Furthermore, on October 15, 2018, the DHCS sent a letter to hospital administrators which stated that the DSH audit for the 2013/14 payment year was calculated based on a methodology that has been determined to be invalid and unenforceable, and that DHCS had suspended its effort to recoup DSH funds on that basis. *Id.* at ¶ 5 and Exhibit C thereto. For those reasons, the District does not owe DHCS for any overpayment of DSH funds for the 2013/14 payment year asserted in the Claim.

The District also objects to the Claim on legal grounds because the State of California's DSH Auditors utilized and relied on FAQ responses 33 and 34 issued by the Center for Medicare and Medicaid Services in conducting the DSH audit of the District for payment year 2013/14, which numerous courts have determined to be invalid and in violation of the Administrative Procedures Act. *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029 (6th Cir. 2018)(FAQs 33 and 34 caused DSH auditors to violate 42 C.F.R. §447.299(c)); *Children's Health Care v. CMS*, 900 F.3d 1022 (8th Cir. 2018)(FAQs 33 and 34 are not procedurally valid legislative rules and violate the Administrative Procedures Act ("APA")), *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615 (4th Cir. 2018)(promulgation of FAQ 33 failed to comply with APA); *New Hampshire Hosp. Ass'n v. Azar*, 887 F.3d 62 (1st Cir. 2018)(holding that the rules in FAQs 33 and 34 are legislative and is procedurally improper for noncompliance with the notice and comment procedures prescribed by the APA). As set forth on Exhibit C to the Heckathorne Declaration, the DHCS halted its effort to recoup DSH funds on that basis of one or more of those decisions in the First, Fourth, Sixth and Eighth Circuit Court of Appeals. CMS withdrew FAQs 33 and 34 as of December 30, 2018 in light of those four decisions. For these reasons, the District believes that the DSH Audit for payment year 2013/14 by which the overpayment asserted in the Claim was calculated is invalid and unenforceable, and that the District does not owe any amount for the alleged overpayment of DSH funds.

## RESERVATION OF RIGHTS

The District has not attempted to raise in this Objection each defense, counterclaim, or setoff that may apply to the Claim. If a response to this Objection is received, the District reserves the right to amend and supplement this Objection, or file additional objections to assert any defenses, counterclaims, and/or setoffs against the Claim. In all instances, the District reserves the right to file future objections or motions or to supplement this Objection as to the validity, amount, or status of the Claim upon different grounds than set forth herein or otherwise.

## CONCLUSION

For the foregoing reasons, the District respectfully requests that the Court enter an order granting the Objection and disallowing the Claim in its entirety.

Dated: July 1, 2019                    WANGER JONES HELSLEY, PC

By: *Riley C. Walter*
Riley C. Walter, Attorneys for Debtor
Tulare Local Healthcare District dba Tulare
Regional Medical Center