**3**

**WANGER JONES HELSLEY PC**
Riley C. Walter #91839
Steven K. Vote #309152
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330
Email:    rwalter@wjhattorneys.com
          svote@wjhattorneys.com

Attorneys for Tulare Local Healthcare District

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>      Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry Street<br>              Tulare, CA 93274 | CASE NO. 17-13797<br><br>Chapter 9<br><br>DC No.: WJH-6<br><br>Date:    August 29, 2019<br>Time:    9:30 a.m.<br>Place:    2500 Tulare Street<br>           Fresno, CA 93721<br>           Courtroom 13<br>Judge:   Honorable René Lastreto II |

**EXHIBIT TO DECLARATION OF SANDRA ORMONDE IN SUPPORT OF MOTION FOR AUTHORITY TO BORROW AND GIVE SECURITY AND TO PROVIDE ADEQUATE PROTECTION (INSURANCE PREMIUM FINANCE AGREEMENT)**

| Exh. | Description | Pages |
|---|---|---|
| A | Commercial Premium Finance Agreement | 2 |

Dated: July 16, 2019            WANGER JONES HELSLEY, P.C.

                                        By:   /s/ Riley C. Walter
                                             Riley C. Walter,
                                             Attorneys for Debtor, Tulare Local Healthcare District, dba Tulare Regional Medical Center

| LENDER: | | 450 Skokie Blvd, Ste 1000 |
|---|---|---|
| | **COMMERCIAL**<br>**PREMIUM FINANCE AGREEMENT** | Northbrook, IL 60062-7917<br>P:(800) 837-2511 F:(800) 837-3709 |

**FIRST INSURANCE**
FUNDING
A WINTRUST COMPANY

www.firstinsurancefunding.com

**Quote #: 18301705**

| **INSURED/BORROWER**<br>(Name and Address as shown on Policy)<br>Tulare Local Health Care District<br>dba Tulare Regional<br>869 Cherry St<br>Tulare, CA 93274 | Customer ID: N/A | **AGENT or BROKER**<br>(Name and Business Address)<br>MARSH & MCLENNAN AGENCY, LLC-SAN DIEGO<br>9171 TOWNE CENTRE DRIVE<br>SUITE 500<br>SAN DIEGO, CA 92122 |
|---|---|---|

## LOAN DISCLOSURE

| Total Premiums, Taxes and Fees | Cash Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 237,400.00 | 59,350.00 | 178,050.00 | 0.00 | 178,050.00 | 4,668.81 | 182,718.81 | 6.250 % |

**YOUR PAYMENT SCHEDULE WILL BE:**    Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000

| Number of Payments | Amount of Each Payment | First Installment Due | 08/01/2019 |
|---|---|---|---|
| 9 | 20,302.09 | Installment Due Dates | 1st (Monthly) |

**SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a security interest in the financed policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments, and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest. If any circumstances exist in which premiums related to any financed policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.
**FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies. The finance charge may include a nonrefundable service charge equal to the maximum amount permitted by law. The finance charge is computed using a 365-day calendar year.
**LATE PAYMENT.** A late charge will be assessed on any installment at least 5 days in default (7 days in VA; 10 days in MA & TX; or later date as required by law.). This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less (greater of $10 or 5% in FL; greater of $25 or 1.5% in NJ; $5 maximum in DE, MT and ND; $100 maximum in MD; 5% in VA).
**PREPAYMENT.** Insured is entitled to a refund of the unearned finance charge if the loan is prepaid in full. The refund shall be computed according to applicable law.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C01417-AFFILIATED FM INSURANCE CO<br>[CX:0]  [PR] | PROP | 12 | 07/01/2019<br>ERN TXS/FEES<br>FIN TXS/FEES | 237,400.00<br>0.00<br>0.00 |
| | | | | TOTAL | 237,400.00 |

Q# 18301705, PRN: 062719, CFG: A03611, RT: A03611-IMM, DD: 0, BM: Invoice, Qtd For: A03611 Original, Memo 1
**INSURED'S AGREEMENT:**
1. In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions of this Agreement.
2. **POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of Insured all documents relating to the insurance policies listed on the Schedule of Policies ("Financed Policies") in furtherance of this Agreement (clauses (ii) and (iii) are not applicable in Florida). This right to cancel will terminate only after Insured's indebtedness under this Agreement is paid in full.
3. **SIGNATURE & ACKNOWLEDGEMENT.** Insured has signed and received a copy of this Agreement. If Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of Insured. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**
**NOTICE TO INSURED:** (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to receive a partial refund of the finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.
4. **EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER.

| Signature of Insured or Authorized Agent | Date | Signature of Agent | Date |
|---|---|---|---|
| | | The undersigned hereby warrants and agrees to the Agent or<br>Broker Representations and Warranties set forth herein. | |

FIF0617P

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured: Tulare Local Health Care Di
Quote #: 18301705

**5. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) a payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement; provided, however, when required by law, Insured may be deemed in default only under clause (a) above. Clauses (b) and (c) are not applicable in FL, MD, NV, NC or VA. At any time after default, LENDER can demand and has the right to receive immediate payment of the total unpaid amount due under this Agreement even if LENDER has not received any refund of unearned premium. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in cancellation of the Financed Policies, Insured agrees to pay a cancellation charge where allowed by law (not permitted in AK, FL, KS, KY, NV, NY, NC, PA, SC, TX or VA). If cancellation or default occurs, Insured agrees to pay LENDER interest on the balance due at the contract rate or at the maximum lawful rate, whichever is less, until the balance is paid in full or until such other date as provided by law.

**6. LIMITATION OF LIABILITY.** Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER, except in KY.

**7. RETURNED CHECK CHARGE.** If Insured's check is dishonored for any reason and if permitted by law, Insured will pay LENDER a returned check charge equal to the maximum fee permitted by law ($0 in KY; $15 in FL & NV; $20 in VA; maximum of $25 in MD).

**8. REINSTATEMENT.** Once a Notice of Cancellation has been sent to any insurance company, LENDER has no duty to ask that the Financed Policy be reinstated, even if LENDER later receives a payment from Insured. If LENDER requests reinstatement, such request does not guarantee coverage will be reinstated by the insurance company. Payments that LENDER receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of LENDER's rights under this Agreement.

**9. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER (in VA, only to this Agreement). Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation will be credited to the balance due with any excess paid to Insured; the minimum refund is the greater of $1.00 or the minimum amount allowed by law (no minimum in VA). Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the financed policies.

**10. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**11. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the policies or through whom the policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker will receive from LENDER 1,068.30 for aiding in the administration of this Agreement relating to the Financed Policies. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**12. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**13. GOVERNING LAW.** This Agreement is governed by and interpreted under the laws of the state where Insured resides, except for conflict of laws principles thereof. If any court finds any part of this Agreement to be invalid, such finding shall not affect the remaining provisions of this Agreement.

**14. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge (i) the Financed Policies are in full force and effect and that Insured has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees, (ii) that none of the Financed Policies are for personal, family or household purposes, (iii) the Cash Down Payment and any past due payments have been paid in full to the Agent or Broker in cash or other immediately available funds, (iv) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading, (v) Insured is not insolvent nor presently involved in any insolvency proceeding, (vi) Insured has no indebtedness to the insurers issuing the Financed Policies, and (vii) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of such policies.

**15. ADDITIONAL PREMIUMS.** Insured agrees to fully and timely comply with all audits and pay to the insurance company any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. Insured, or Agent/Broker, may request that LENDER finance additional policies and/or additional premium during the term of this Agreement, and if LENDER agrees, this Agreement shall be deemed amended accordingly. Should LENDER assign an account number to further extensions of credit, then a) this Agreement and loan documents identified by the assigned account number(s) shall be deemed to comprise a single and indivisible loan transaction, b) Insured shall irrevocably appoint LENDER as its attorney in fact in connection with additional amount financed, c) default under any component of the transaction shall constitute a default under the entire transaction, and d) unearned premium relating to any component of the transaction may be collected and applied to the entire loan transaction balance.

**16. CORRECTIONS.** LENDER may insert the names of the insurance companies and policy numbers, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement (not applicable in KY or VA).

**17. NON-WAIVER.** Not Applicable.

**18. THIRD PARTY FEE.** Not Applicable.

### AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the cash down payment has been received from Insured, (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the policies listed in the Schedule of Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

California Borrowers: **FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

FIF0617P