10

Fear Waddell, PC
Peter L. Fear, No. 207238
Gabriel J. Waddell, No. 256289
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)
pfear@fearlaw.com

Attorney for Siemens Medical Solutions USA, Inc.,
 Creditor

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>TULARE LOCAL HEALTHCARE DISTRICT, D/B/A TULARE REGIONAL MEDICAL CENTER,<br><br>          Debtor(s). | Case No. 17-13797-B-9<br><br>Chapter 9<br><br>D.C. No. FW-1<br><br>Date:   August 29, 2019<br>Time:  9:30 a.m.<br>Place:  Dept. B, Courtroom 13, 5th Floor<br>        United States Courthouse<br>        2500 Tulare St., Fresno, California<br>Judge: Hon. René Lastreto, II |

**MOTION OF SIEMENS MEDICAL SOLUTIONS USA, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO § 503(b)**

Siemens Medical Solutions USA, Inc. ("Siemens"), by its attorney Peter L. Fear, presents this motion ("Motion"), together with the Declaration of Kim Nealy, filed herewith ("Declaration"), for entry of an Order pursuant to section 503(b)(3)(D) of Title 11 of the United States Code ("Bankruptcy Code") (i) allowing Siemens' administrative expense claim ("Administrative Expense Claim") for substantial contributions made to the above-captioned debtor's ("Debtor") chapter 9 bankruptcy case ("Case") and (ii) directing the Debtor to pay

1  Siemens' Administrative Expense Claim, and for such other and further relief as is

2  appropriate.

3                              **JURISDICTION**

4      1.      This Court has jurisdiction pursuant to 11 U.S.C. § 157 and 1334(a).  Venue

5  of this case and the Motion in this district are proper pursuant to 28 U.S.C. §§ 1408 and

6  1409.

7      2.      The statutory predicate for the relief sought by the Motion is Section

8  503(b)(3)(D) of the Bankruptcy Code.

9                              **BACKGROUND**

10 **A.  Bankruptcy Proceeding**

11     3.      On September 30, 2017 ("Petition Date"), the Debtor filed a voluntary petition

12 for relief pursuant to Chapter 9 of the Bankruptcy Code in the United States Bankruptcy

13 Court for the Eastern District of California ("Court").

14     4.      On May 22, 2019, the Debtor filed the *Disclosure Statement dated as of April*

15 *30, 2019* (Docket No. 1441) ("Disclosure Statement") and the *Plan for Adjustment of Debts*

16 *Dated as of April 30, 2019* (Docket No. 1440) ("Plan").

17     5.      The Debtor is a municipal corporation and healthcare district organized under

18 the Constitution of the State of California, which district encompasses a portion of Tulare

19 County in the State of California.  *See* Disclosure Statement at 14.

20     6.      The Debtor provides healthcare services primarily to the individuals who

21 reside within the geographic boundaries of the healthcare district.  *Id*.  The hospital owned

22 and operated by the Debtor ("Hospital") is a "critical component of the overall economic

23 health of the community" and is the only hospital operating within the healthcare district.  *Id*.

24 at 3, 14.

**B. Agreement Between Siemens and the Debtor**

7.     Siemens and the Debtor are party to certain Service Agreements ("Service Agreements") pursuant to which Siemens would perform equipment maintenance services for the Debtor with respect to certain medical equipment ("Covered Equipment") sold to the Debtor by Siemens.  Dec'l ¶6.

8.     Pursuant to the Service Agreements, Siemens was to provide remedial maintenance service on the Covered Equipment.  Dec'l ¶7.  The Service Agreements also provide that Siemens would order and supply to the Debtor replacement parts for the Covered Equipment.  Pursuant to the Service Agreements, Siemens would also provide scheduled routine maintenance of the Covered Equipment and would maintain and update software associated with the Covered Equipment.  Id.

9.     The Service Agreements specify, among other things, the days and times during which servicing would be available to the Debtor, how much time Siemens had to respond to a service call placed by the Debtor, and how quickly Siemens had to provide replacement parts for the Covered Equipment.  Dec'l ¶8.  The Service Agreements also provided the annual contract price to service the particular piece of Covered Equipment described in the Service Agreement, the monthly installment payments required to be made by the Debtor under the Service Agreement, and the length of the contract term.  *Id*.

10.     The monthly installment payments described in the Service Agreements are intended to compensate Siemens for costs incurred while preforming under the Service Agreements.  Under the Service Agreements, Siemens had to maintain adequate levels of staffing in order to respond to telephonic or in-person service calls placed by the Debtor, all within the time frames prescribed in the Service Agreements.  Dec'l ¶9.  Siemens was also

1  responsible to perform routine, scheduled maintenance under the Service Agreements, the

2  costs of which were covered by the monthly installment payments set forth therein.  Id.

3  **C.  Siemens' Pre-Petition Date Claim**

4      11.    As of the Petition Date, the Debtor owed Siemens $93,844.67 for unpaid

5  installment payments due and owing under the Service Agreements before the Petition Date,

6  as well as for charges for labor and materials provided to the Debtor before the Petition Date,

7  as described in the Proof of Claim filed by Siemens on April 6, 2018 (Claim No. 199-1).

8  **D.  Post-Petition Period**

9      12.    Upon information and belief, the Debtor ceased operations at and closed the

10  Hospital in or around October, 2017.  Siemens did not receive notice at the time that the

11  Hospital's operations had been suspended.  Dec'l ¶11.  Further, no notice was filed on the

12  bankruptcy docket to inform creditors that the Hospital had stopped operating.  Indeed, even

13  the Debtor's Disclosure Statement does not provide the exact date of the Hospital's closure

14  and the implications thereof.   The Hospital officially re-opened to the public on October 15,

15  2018.  Disclosure Statement at 23.

16      13.    In the period following the Petition Date ("Post-Petition Period"), the Debtor

17  entered into a complex transaction with Adventist Health System/West ("Adventist Health"),

18  whereby Adventist Health agreed to, among other things, enter into a lease with the Debtor

19  for the Hospital, to purchase certain medical equipment and supplies from the Debtor, and to

20  assume responsibility for the Hospital's operations and financial liabilities.   Disclosure

21  Statement at 23.  Adventist Health assumed responsibility for the Hospital's operations on

22  March 15, 2019.  *Id.*

23      14.    During the Post-Petition Period, including during the period of time that the

24  Hospital had ceased operations ("Shutdown Period"), Siemens continued to provide services

MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE [ETC.] - 4

to the Debtor in accordance with the terms of the Service Agreements for three pieces of Covered Equipment.   Dec'l ¶14.   Copies of the Service Agreements for the Covered Equipment maintained during the Post-Petition Period are attached to the Declaration as Exhibit A.

15.   During the Post-Petition Period, Siemens provided routine, scheduled maintenance to the Covered Equipment, as well as on-site visits in response to service calls placed by the Debtor.  During the Post-Petition Period, Siemens responded to approximately forty-one service calls with respect to the Covered Equipment, twenty-four of which were made during the Shutdown Period.  Siemens also maintained the staff necessary to respond to service calls, either by phone or in person, placed by the Debtor during the times prescribed by the Service Agreements.   Dec'l ¶19.   A copy of the log of service calls placed by the Debtor with respect to the Covered Equipment during the Post-Petition Period is attached to the Declaration as Exhibit B.

16.   Accordingly, during the Post-Petition Period, Siemens continued to invoice the Debtor for the monthly installment amounts owed pursuant to the terms of the Service Schedules, as well as for labor and replacement parts necessary to complete certain repairs made to the Covered Equipment, during the Post-Petition Period.  Dec'l ¶16.

17.   The unpaid invoices provided to the Debtor during the Post-Petition Period for services rendered under the Service Agreements are attached to the Declaration as Exhibit C.

18.   In addition, during the Shut-Down Period, Siemens provided repair services to the Debtor with respect to an ultrasound machine not covered by a Service Agreement ("Excluded Equipment" and together with the Covered Equipment, the Equipment).  Dec'l ¶18.  During the Post-Petition Period, Siemens responded to two service calls with respect to the Excluded Equipment and submitted Invoice No. 200925145 to the Debtor for time and

1    materials to repair the Excluded Equipment ("Excluded Invoice").  Id.  A copy of the

2    Excluded Invoice is attached to the Declaration as Exhibit D.

3          19.    Siemens is owed $123,766.29 for services, labor and materials provided to the

4    Debtor during the Post-Petition Period.  Dec'l ¶19.

5                                    **ARGUMENT**

6    **A. Bankruptcy Code Section 503(b)(3)(D) Provides Administrative Priority Status for**
        **Substantial Contribution Claims**
7

8          20.    Bankruptcy Code Section 503(b)(3)(D) provides that "[a]fter notice and a

9    hearing, there shall be allowed, administrative expenses . . . including the actual, necessary

     expenses . . . incurred by . . . a creditor . . . in making a substantial contribution in a case
10
     under chapter 9 or 11 of this title…"  11 U.S.C. § 503(b)(3)(D).
11
           21.    A creditor seeking payment of an administrative expense pursuant to section
12
     503(b)(3)(D) must show that the expenses were incurred "in an endeavor that provided
13
     tangible benefits to the bankruptcy estate and the other unsecured creditors."  *In re Sedona*
14
     *Institute*, 21 Fed. Appx. 723, 724 (9th Cir. 2001) (internal quotations omitted); see *also In re*
15
     *Legacy Estate Grp., LLC*, No. 05-14659, 2006 WL 3392068 at *2 (Bankr. N.D. Cal. Nov. 20,
16
     2006) ("In determining whether there has been a 'substantial contribution' pursuant to
17
     section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an
18
     actual and demonstrable benefit to the debtor's estate and the creditors.").  "Services which
19
     substantially contribute to a case are those which foster and enhance, rather than retard or
20
     interrupt the progress o[f] reorganization."  *In re Cellular 101, Inc*., 377 F.3d 1092, 1097 (9th
21
     Cir. 2004) (quoting *In re Consol. Bancshares, Inc*., 785 F.2d 1249, 1253 (5th Cir. 1986)).
22

23

24

**B. Siemens has an Administrative Expense Claim for Expenses Incurred in Making a Substantial Contribution to the Case**

22.     Siemens has provided a substantial contribution to the Case during the Post-Petition Period by providing critical repair services for the Equipment. The Debtor is a provider of healthcare and medical services to the general public and would be unable to provide such services without routine and essential maintenance performed to the Equipment. The Equipment is comprised of ultrasound machines and Computed Tomography (CT), machines that are used regularly in hospitals to provide patient care.

23.     By continuing to provide service and maintenance to the Equipment, Siemens provided a benefit to the Debtor's other creditors. Without functioning Equipment, the Hospital would be unable to provide testing and diagnostics to its patients and therefore would be unable to collect revenues for providing common procedures to its patients. In keeping the Equipment in good repair, Siemens allowed the Hospital to continue performing revenue-generating services for its patients.

24.     The services provided by Siemens also provided a substantial contribution during the Shutdown Period, notwithstanding that the Hospital was not providing care to patients during that time. The service calls answered by Siemens, as well as the routine, scheduled maintenance provided by Siemens, kept the Equipment in working order during the Shutdown Period. Without well-maintained and functioning Equipment, the Hospital's re-opening may well have been delayed. Further, had the Hospital re-opened without well-maintained and functioning Equipment, the Hospital would have been subject to the same risk of decreased revenues described above.

25.     By continuing to provide services to the Debtor, Siemens also assisted with the Debtor's reorganization efforts: as part of the Debtor's restructuring, Adventist Health

1　　agreed to lease the Hospital and assume responsibility for the operations at the Hospital.  By

2　　maintaining and repairing the Equipment during the Post-Petition Period, Siemens

3　　maintained the value of the Equipment at the Hospital, in turn allowing the Debtor to derive

4　　greater value from the lease and sale transaction with Adventist Health.[1]

5　　　　　　26.　　　Siemens is entitled to receive payment of the full amount of the

6　　Administrative Expense Claim because it represents the expenses incurred by Siemens to

7　　maintain adequate levels of staffing to respond to the Debtor's telephonic or in-person

8　　service calls and to provide the necessary routine maintenance to the Covered Equipment.

9　　The Administrative Expense Claim also represents the actual cost of labor and materials

10　　incurred by Siemens in providing service to the Covered Equipment pursuant to the terms of

11　　the Service Agreements and to the Excluded Equipment during the Post-Petition Period.

12　　　　　　27.　　　Finally, it is essential that important post-Petition Date service providers like

13　　Siemens are entitled to administrative priority under Bankruptcy Code section 503.

14　　Otherwise, by treating service-providers like Siemens like any other general unsecured

15　　creditor with a pre-petition claim, critical service providers in future cases filed under

16　　Chapter 9 of the Bankruptcy Code will be unwilling and unlikely to continue providing

17　　necessary services integral to a municipal debtor's operations after such a municipal debtor

18　　files for relief if they are subject to be treated like all other general unsecured creditors,

19　　uncertain of being fully compensated for their services.

20

21

22

23　　[1] Siemens is not aware of whether the Equipment was sold in connection with the Adventist Health transaction
because, to the best of its knowledge, there is no complete and publicly posted version of an executed asset
purchase agreement with Adventist Health.  Further, there is no mention in the Disclosure Statement regarding

24　　when the sale to Adventist Health closed.  Dec'l ¶13

**C. Siemens is Entitled to Immediate Payment of its Administrative Expense Claim**

28.    The decision about when administrative expenses will be paid lies within the discretion of the bankruptcy court. *In re Steiny and Company, Inc.,* No. 1:16-bk-25619-WB, 2017 WL 1788414 at *4 (C.D. Cal. May 3, 2017) (citing *In re Verco Indus.*, 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982).

29.    Immediate payment of Siemens' Administrative Expense Claim is warranted in this Case because Siemens provided a substantial contribution to the Debtor's Case by providing critical maintenance and repair services for the Debtor's Equipment, which in turn allowed the Debtor to continue providing healthcare services to the healthcare district.

30.    Accordingly, Siemens seeks immediate payment from the Debtor of the Administrative Expense Claim or, in the alternative, payment at such other time as the Debtor's other administrative claimants are paid.

**NO PRIOR MOTION**

31.    Siemens has not made any prior motion or application for the relief sought herein to this Court or to any other court. Siemens expressly reserves its rights to seek such other relief as deemed appropriate.

**NOTICE**

32.    Notice of the Motion has been given to counsel for the Debtor, the United States Trustee, the Debtor's twenty largest creditors, and all parties requesting service in this case.

WHEREFORE, Siemens respectfully requests this Court to enter an Order allowing Siemens' Administrative Expense Claim and directing the Debtor to pay the Administrative Expense Claim, and for other and further relief as is appropriate under the circumstances.

1

2    Date:  7/30/2019           FEAR WADDELL, P.C.

3        By:   /s/ Peter L. Fear
                  Peter L. Fear

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE [ETC.] - 10