30

**WANGER JONES HELSLEY PC**
Riley C. Walter #91839
265 East River Park Circle, Ste. 310
Fresno, CA 93720
Telephone:   (559) 490-0949
Facsimile:   (559) 233-9330
E-mail:      rwalter@wjhattorneys.com

(SPACE BELOW FOR FILING STAMP ONLY)

Chapter 9 Counsel for Debtor Tulare Local Healthcare District

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re | CASE NO. 17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER, | Chapter 9 |
| | DC No.: WW-95 |
| Debtor. | |
| Tax ID #:    869 N. Cherry Street<br>Tulare, CA 93274 | Date:   August 15, 2019<br>Time:   9:30 a.m.<br>Place:  2500 Tulare Street<br>             Fresno, CA  93721<br>             Courtroom 13<br>Judge:  Honorable René Lastreto, II |

**ORDER CONFIRMING PLAN FOR THE ADJUSTMENT OF DEBTS OF TULARE LOCAL HEALTHCARE DISTRICT DATED AS OF APRIL 30, 2019**

At Fresno, in the Eastern District of California.

The hearing ("Confirmation Hearing") to consider confirmation of the Second Modified Plan for the Adjustment of Debts of Tulare Local Healthcare District dba Tulare Regional Medical Center, dated as of April 30, 2019, commenced before the undersigned Judge of the United States Bankruptcy Court at Fresno in the Eastern District of California on August 15, 2019, at 9:30 a.m.  Riley C. Walter appeared on behalf of Tulare Local Healthcare District as Bankruptcy Counsel. Ian Hammel

RECEIVED
August 15, 2019
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0006564356

appeared for Wilmington Trust N.A. as paying agent and trustee (the "Trustee / Paying Agent"). Rebecca Winthrop appeared for Adventist Health. Karol Denniston appeared for Syncora Guarantee. Todd Wynkoop and Jason Howard appeared as District Counsel. Gerald Sims appeared for BETA. Other appearances were as is of record.

Having considered, among other things:

(i)     The Plan for the Adjustment of Debts of Tulare Local Healthcare District dba Tulare Regional Medical Center dated as of April 30, 2019 [Docket No. 1440] (the "Plan");

(ii)     The "*Response of Wilmington Trust, N.A. as Successor Indenture Trustee and Paying Agent Regarding Debtor's Plan for the Adjustment of Debts Dated as of April 30, 2019*" [Docket No. 1584] (the "Trustee / Paying Agent Response");

(iii)     The absence of any other objections or responses to the Plan;

(iv)     The Disclosure Statement for the Plan of Adjustment dated as of April 30, 2019 (the "Disclosure Statement"), approved by the Order Approving the Second Modified Disclosure Statement for the Plan of Adjustment Of Debts of Tulare Local Healthcare District dba Tulare Regional Medical Center Dated as of April 30, 2019 and Fixing Time for Filing Acceptance or Rejection of Plan and Notice of Hearing on Confirmation of the Chapter 9 Plan, entered July 3, 2019 ("Disclosure Statement Order"), finding and holding, among other things, that the Disclosure Statement contained adequate information for use in connection with the solicitation of acceptances of the Plan;

(v)     The proofs of service relative to the dissemination of the Plan, Disclosure Statement, ballots and notice of the date and time of the confirmation hearing and the deadlines to vote on and object to confirmation of the Plan;

(vi)     Declaration of Nicole A. Medina to which is attached the ballot tabulation report concerning Class 8, which confirms that of the 52 total ballots cast 51 ballots

ORDER CONFIRMING PLAN FOR THE ADJUSTMENT
OF DEBTS OF TULARE LOCAL HEALTHCARE
DISTRICT DBA TULARE REGIONAL MEDICAL CENTER
DATED AS OF APRIL 30, 2019                              -2-

J:\Client\9703-001\PLEADINGS\WW-95
Chapter 9 Plan\Confirmation
Module\Confirmation Order\Order
Confirming.081519.nam.docx

voted to accept the Plan representing 98% percent acceptance in number and 93% percent in dollar amount of all ballots received from holders of Class 8 Claims[1];

      (vii)    Declaration of Stephenie Kjontvedt of Epiq Global regarding the Class 4 ballot solicitation and tabulation , which confirms acceptances of the Plan by 93 percent in number and 99 percent in amount of all ballots received from holders of Class 4 Claims;

      (viii)   The brief in support of Confirmation filed on August 9, 2019;

      (ix)    The declarations of Kevin B. Northcraft, Sandra Ormonde and Daniel Heckathorne;

      (x)     The record and proceedings in this case; and

      (xi)    The Plan Supplement[2] including the Revenue Bond Supplement, attached as ***Exhibit A***.

      (xii)   The arguments of counsel at the Confirmation Hearing.

      Having separately issued, on the record, its findings of fact and conclusions of law regarding the confirmation requirements of Section 943(b) and 1129(a), finding herein that all amounts to be paid for services or expenses in the case or incident to the Plan have been fully disclosed and are reasonable, and concluding that compliance has been made with all aspects of Section 943(b)(1)-(7) of the Code, including those aspects of Title 11 made applicable by Section 103(e) and 901 of Title 11, THE COURT HEREBY ORDERS:

      1.     Pursuant to Section 943(b), the Plan is hereby confirmed on the terms of this Order.

      2.     All objections to the Plan not expressly withdrawn are overruled on the merits.

---

[1]    The only creditor voting to reject was Baker Hostetler, the District's former attorney which is the subject of a pending lawsuit.

[2]    Capitalized terms used in this Order but not defined have the meanings ascribed in the Plan.

ORDER CONFIRMING PLAN FOR THE ADJUSTMENT
OF DEBTS OF TULARE LOCAL HEALTHCARE
DISTRICT DBA TULARE REGIONAL MEDICAL CENTER
DATED AS OF APRIL 30, 2019      -3-       J:\Client\9703-001\PLEADINGS\WW-95
Chapter 9 Plan\Confirmation
Module\Confirmation Order\Order
Confirming.081519.nam.docx

3.      The Debtor shall receive a discharge as provided by Section 944 of the Code.

4.      The Court retains jurisdiction over the Debtor's Chapter 9 case to the fullest extent allowed by law.

5.      The rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge, and release of all Claims by Creditors against the Debtor.  Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall discharge the Debtor from all Claims or other debts that arose at any time before the Effective Date whether or not: (i) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim has accepted the Plan.  As of the Effective Date, all Creditors that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other act, to collect, recover or offset any such Claim as a personal liability of the Debtor or the Debtor to the full extent permitted by Sections 524(a)(1) and (2) of the Bankruptcy Code. There are no debts of the Debtor that are excepted by the Plan from the discharge afforded the Debtor under Section 944 of the Bankruptcy Code. All debts including debts arising post-petition not qualified and allowed as administrative expense claims will be discharged upon Confirmation.  The discharge and exoneration terms of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered, and shall be immediately effective on Confirmation without further action by the Court, the Debtor or any other party.

6.      All injunctions or stays provided for in the Debtor's Chapter 9 case pursuant to Sections 105, 362 or 922 of the Bankruptcy Code shall remain in full force and effect until the date on which the discharge of the Debtor occurs.

7. The Debtor and all of its officers, directors, employees, and professionals are authorized to take any and all actions deemed necessary or reasonable by them in the exercise of their business judgment to cause the consummation and implementation of all transactions contemplated by the Plan to occur and to otherwise assure that the Plan's provisions are implemented as provided for in the Plan. Without limiting the forgoing, the Debtor is authorized and directed to execute, deliver and, from and after the Effective Date, perform under, the documents that comprise the Revenue Bond Supplement, substantially in the forms attached as ***Exhibit A***. For the avoidance of doubt, all revenues pledged or otherwise used for payment of Series A General Obligation Bonds Claims, Series B-1 General Obligation Bonds Claims, Series B-2 General Obligation Bonds Claims and/or Revenue Bonds Claims shall remain special revenues as defined in Section 902 of the Bankruptcy Code.

8. The Effective Date of the Plan shall be the later of: (a) the first Business Day that is at least sixty (60) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Section 7.2 of the Plan have been satisfied or waived.

9. The provisions of the Plan and this Order shall bind the Debtor and all its Creditors regardless of: (a) whether or not the claims of such Creditors or claims and causes of action are expressly provided for under the Plan; (b) whether or not such Creditors have accepted the Plan; and (c) whether or not such Creditors have filed proofs of claim in this case.

10. All executory contracts and unexpired leases of the Debtor, to the extent not previously assumed or rejected, are rejected as of the Effective Date or such other date as set forth in any order regarding the rejection of any of the Debtor's executory contracts or unexpired leases, except for Provider Agreements between the District, Medicare, Medi-Cal, Medicaid and the State of California pursuant to the Plan. The bar date for filing a proof of claim based on the rejection of an executory contract or unexpired lease which is rejected pursuant to the terms of this Order shall be thirty (30)

ORDER CONFIRMING PLAN FOR THE ADJUSTMENT
OF DEBTS OF TULARE LOCAL HEALTHCARE
DISTRICT DBA TULARE REGIONAL MEDICAL CENTER
DATED AS OF APRIL 30, 2019          -5-

J:\Client\9703-001\PLEADINGS\WW-95
Chapter 9 Plan\Confirmation
Module\Confirmation Order\Order
Confirming.081519.nam.docx

days from service of notice of entry of this Order or as otherwise provided in any order regarding the rejection of any of the Debtor's executory contracts or unexpired leases. Notice of the rejection of any such executory contract or unexpired lease rejected by this Order shall be promptly given to any such claimants.

11.     If and to the extent that there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall govern and control. The failure to reference any particular provision of the Plan in this Order shall have no effect on the binding nature, enforceability or legality of such provision and such provision shall have the same binding effect, enforceability and legality of any other provision of the Plan.

12.     This Order shall constitute all approvals and consents required of the Bankruptcy Court, if any, by the laws, rules or regulations of any state or any other governmental or regulatory authority or governmental unit with respect to the implementation or consummation of the Plan or any documents, instruments or agreements referred to in or contemplated by the Plan and any amendments or modifications thereto and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments, or agreements and any amendments or modifications thereto.  All actions taken by the Debtor, in connection with the implementation of the Plan, shall be deemed to have been taken in good faith.

13.     Pursuant to Section 2.2.2 of the Plan, all requests for payment of any administrative claims (other than claims for professional fees and previously paid post-petition debts) arising after September 30, 2017 except as previously ordered must be filed and served on the Debtor no later than sixty (60) days after the Effective Date and the giving of notice to the affected persons (the "Administrative Claims Bar Date"). Holders of administrative claims that are required to file a request for payment of such administrative claims that do not timely file such a request will be forever barred from asserting such administrative claims against the Debtor or its property.

///

ORDER CONFIRMING PLAN FOR THE ADJUSTMENT
OF DEBTS OF TULARE LOCAL HEALTHCARE
DISTRICT DBA TULARE REGIONAL MEDICAL CENTER
DATED AS OF APRIL 30, 2019          -6-

J:\Client\9703-001\PLEADINGS\WW-95
Chapter 9 Plan\Confirmation
Module\Confirmation Order\Order
Confirming.081519.nam.docx

14. This Order shall be effective upon entry on the Court's docket, and the stay imposed by Bankruptcy Rule 3020(e) or 6004(h) shall not apply.

Presented by:

WANGER JONES HELSLEY PC

By: _Riley C. Walter_
　　Riley C. Walter
　　Attorneys for Debtor,
　　Tulare Local Healthcare District

IT IS SO ORDERED:
Dated: Aug 16, 2019

By the Court

_René Lastreto II_
René Lastreto II, Judge
United States Bankruptcy Court

ORDER CONFIRMING PLAN FOR THE ADJUSTMENT
OF DEBTS OF TULARE LOCAL HEALTHCARE
DISTRICT DBA TULARE REGIONAL MEDICAL CENTER
DATED AS OF APRIL 30, 2019

-7-

C:\Users\rwalter\AppData\Local\Microsoft\Wind
ows\INetCache\Content.Outlook\GFFL4AOE\Or
der Confirming.081519.nam.docx

1

2          **_EXHIBIT A_**
   **_PLAN SUPPLEMENT INCLUDING REVENUE BOND SUPPLEMENT_**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER CONFIRMING PLAN FOR THE ADJUSTMENT
OF DEBTS OF TULARE LOCAL HEALTHCARE
DISTRICT DBA TULARE REGIONAL MEDICAL CENTER
DATED AS OF APRIL 30, 2019          -8-

J:\Client\9703-001\PLEADINGS\WW-95
Chapter 9 Plan\Confirmation
Module\Confirmation Order\Order
Confirming.081519.nam.docx

Draft 8/12/19

BOND SUPPLEMENT

Dated as of October ___, 2019

by and between

TULARE LOCAL HEALTH CARE DISTRICT

and

WILMINGTON TRUST NATIONAL ASSOCIATION, as Trustee

relating to:
$17,850,000
Tulare Local Health Care District
(Tulare County, California)
Refunding Revenue Bonds, Series 2007

Draft 8/12/19

## BOND SUPPLEMENT

THIS BOND SUPPLEMENT (this "Bond Supplement"), made and entered into and dated as of October ▒▒▒, 2019, by and between TULARE LOCAL HEALTH CARE DISTRICT, a local health care district of the state of California (the "District") and WILMINGTON TRUST NATIONAL ASSOCIATION, a national banking association organized and existing under the laws of the United States of America (the "Trustee").

## W I T N E S S E T H

WHEREAS, the District previously issued its $17,850,000 Tulare Local Health Care District (Tulare County, California) Refunding Revenue Bonds, Series 2007 (the "Series 2007 Bonds") pursuant to that certain Indenture of Trust dated as of November 1, 2007 between the District and the Trustee, as successor indenture trustee to U.S. Bank National Association (the "Indenture"). As of the date of this Bond Supplement, $13,650,000 in principal of the Series 2007 Bonds is outstanding. Wilmington Trust National Association is the current indenture trustee for the Series 2007 Bonds;

WHEREAS, in September 2017 the District commenced proceedings as a debtor under chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Proceedings") in the United States Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court");

WHEREAS, by order of the Bankruptcy Court in the Bankruptcy Proceedings dated August ▒▒▒, 2019 (the "Plan Order"), the Bankruptcy Court confirmed the District's *Plan for the Adjustment of Debts Dated as of April 30, 2019"* in the Bankruptcy Proceedings (the "Bankruptcy Plan"). Copies of the Plan Order and Bankruptcy Plan, as approved by the Plan Order, are attached hereto as **Exhibit A** and **Exhibit B**; and

WHEREAS, the Bankruptcy Plan generally provides for the reinstatement of the Bonds, including the return of the District to compliance with the debt service payment schedule set forth in the Indenture and related documents. This Bond Supplement is for the purpose of more formally documenting the treatment of the Series 2007 Bonds under the Bankruptcy Plan;

The District and Trustee therefore agree as follows:

## ARTICLE I.
## IMPLEMENTATION OF THE BANKRUPTCY PLAN

**SECTION 1.01.** **Incorporation of Recitals; Capitalized Terms.** The recitals set forth immediately above are incorporated herein and form an integral part of this Bond Supplement. Capitalized terms used in this Bond Supplement and not otherwise defined herein shall have the meanings assigned to them in the Indenture.

**SECTION 1.02.** **Amendment of Certain Indenture Definitions.**

(a)     The existing proviso to the definition of "Income Available for Debt Service" in Section 1.01 of the Indenture is hereby amended by inserting the phrase "and necessary to" as shown below such that it reads as follows (without underlining):

; provided that no such determination shall include any gain or loss resulting from either the extinguishment of Indebtedness or any

{//Tulare -- Bond Supplement.DOC} 1

Draft 8/12/19

disposition of capital assets not made in the ordinary course of business and shall not include income from *ad valorem* taxes on real property pledged to <u>and necessary to</u> pay debt service on general obligation bonded indebtedness.

(b)    The definition of "Permitted Encumbrances" in Section 1.01 of the Indenture is hereby amended by deleting the existing clause (l) and replacing it with the following:

(l)    liens, charges and encumbrances in existence as of the Effective Date associated with or securing the Lease, the Working Capital Loan and/or the Exit Loan.

(c)    The definition of "Revenues" and "Gross Revenues" in Section 1.01 of the Indenture is hereby amended by deleting the existing last sentence thereof, and substituting in lieu thereof the following:

In addition to the foregoing, Revenues and Gross Revenues also shall include all District income from *ad valorem* taxes on real property, other District income from taxes, proceeds thereof, and all District rights to receive the same, except to the extent pledged to and necessary to pay District obligations on District general obligation bonds in existence as of the Effective Date.

(d)    The Trustee hereby specifies to the District that the current "Principal Corporate Trust Office" is 1 Light Street, 14th Floor, Mail Code: MD2-L140, Baltimore, MD 21202.

**SECTION 1.03.**    **Addition of Certain Indenture Definitions.**

Section 1.01 of the Indenture is hereby amended by adding the following defined terms:

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of California.

*"Bankruptcy Proceedings"* means the District's chapter 9 bankruptcy proceedings in the Bankruptcy Court, assigned case no. 17-13797.

*"Bankruptcy Plan"* means the *"Plan for the Adjustment of Debts Dated as of April 30, 2019"* in the Bankruptcy Proceedings, as amended and supplemented, in the form attached to the Bond Supplement as Exhibit B.

*"Bond Supplement"* means that certain Bond Supplement dated as October ___, 2019 between the District and Trustee.

*"Effective Date"* means October ___, 2019. [to insert effective date of the Bankruptcy Plan]

*"Exit Loan"* means that certain loan extended to the District pursuant to that certain *"Debtor in Possession Credit Agreement"* dated as of

Draft 8/12/19

February ▨▨, 2019 between the District and the City of Tulare, California on the terms in existence as of the Effective Date.

"*Lease*" means that certain "*Lease*" dated as of February 12, 2019, between the District and Adventist Health Tulare, as amended and supplemented on the terms in existence as of the Effective Date.

"*Plan Order*" means the order entered by the Bankruptcy Court in the Bankruptcy Proceedings confirming the Bankruptcy Plan, in the form attached to the Bond Supplement as Exhibit A.

"*Working Capital Loan*" means that certain loan extended to the District pursuant to that certain "*Debtor in Possession Credit Agreement*" dated as of August 2, 2018 between the District, Adventist Health System/West and Adventist Health on the terms in existence as of the Effective Date.

**SECTION 1.04.**      **Amendment of Indenture Section 6.05.**

Section 6.05 of the Indenture is hereby amended by adding the following at the end of the existing section:

> Further, the Working Capital Loan and the Exit Loan constitute additional Long-Term Indebtedness permitted under this Indenture.

**SECTION 1.05.**      **Amendment of Indenture Section 6.07.**

Section 6.07 of the Indenture is hereby amended by adding the following subsection (c) at the end of the existing section:

> (c)      Notwithstanding anything to the contrary in this Indenture, the Lease is a permitted disposition of the Facilities under the terms of this Indenture.

**SECTION 1.06.**      **Bond Reinstatement Provisions.**

Article II of the Indenture is hereby amended by adding the following Sections:

Section 2.12. Bond Reinstatement.

> (a)      As of the Effective Date, the Series 2007 Bonds are reinstated in the principal amount of $13,650,000, together with accrued but unpaid interest as determined pursuant to the Indenture. The Indenture and Series 2007 Bonds are otherwise reinstated on their existing terms, except as expressly modified by the Bond Supplement;

> (b)      Notwithstanding any other provision of the Indenture, the District shall make a series of monthly supplemental payments to

Draft 8/12/19

the Trustee, commencing the first full month after the Effective Date, to return the Series 2007 Bonds to full compliance with the maturity schedule set forth in the Indenture (each a "Supplemental Payment"). Each Supplemental Payment shall be in the amount of not less than $35,000.

Supplemental Payments shall continue until (i) the Bond Reserve Account balance equals the Bond Reserve Account Requirement, (ii) the Revenue Fund holds an amount that, when added to payments otherwise anticipated under the Indenture, is expected to permit the District to pay scheduled debt service on the Series 2007 Bonds in cash in the amount(s) and at the time(s) contemplated by the Indenture, and (iii) the District then has no amount of matured but unpaid principal or due but unpaid interest on the Series 2007 Bonds outstanding.

For the avoidance of doubt, Supplemental Payments shall be in addition to, and not in lieu of, amounts required to be paid under Section 5.01(d) of the Indenture.

(c)      Notwithstanding any other provision of the Indenture, the Trustee shall deposit Supplemental Payments in the Bond Reserve Fund until the Bond Reserve Account Requirement is satisfied and thereafter in the Revenue Fund for application pursuant to this Section 2.12. Within 60 days after the Effective Date and thereafter in its sole discretion but not less frequently than each Interest Payment Date, the Trustee shall, after payment of or reserve for existing and anticipated reasonable Trustee expenses and provision acceptable to the Trustee in its sole discretion for interest payable on the next successive Interest Payment Date, make interim distributions of all remaining funds in the Revenue Fund against then unpaid matured principal on the Series 2007 Bonds, together with interest accrued thereon at the rates specified in the Indenture through the date of payment thereof. The Trustee may in its sole discretion and without liability allocate such distributions pro-rata to all then unpaid matured Series 2007 Bonds, to the then unpaid matured Series 2007 Bonds in their order of priority starting with the earliest maturity, or use any other distribution method then reasonably available. The Trustee may in its sole discretion and without liability round distributions made to any specific CUSIP to the nearest $5,000.

(d)      Notwithstanding any other provision of the Indenture, the Trustee shall forbear from exercising any remedy based solely on Events of Default under the Indenture in existence as of the Effective Date so long as the District continues to make Supplemental Payments and, in addition, all payments required under Section 5.01(d) of the Indenture. Upon completion of the Supplemental Payments as contemplated by this Section 2.12, and provided the

Draft 8/12/19

District is then otherwise in compliance with the Indenture, the District shall be deemed, without any further act or notice, to have cured all then existing Events of Default under the Indenture. Further, upon completion of the Supplemental Payments, the provisions of Section 2.12(b), Section 2.12(c) and the first sentence of this Section 2.12(d) shall cease to be effective.

Section 2.13.  Effect of Lease, Working Capital Loan, Exit Loan and Related Documents.  Notwithstanding any other provision of the Indenture, the District's execution, delivery and performance of the Lease, the Working Capital Loan, the Exit Loan and any related document, and the District's performance or any act required thereunder or reasonably contemplated in connection with the Lease, the Working Capital Loan, the Exit Loan or any related document, shall not constitute an Event of Default, *provided, however,* the occurrence of any event of default under the Lease, the Working Capital Loan or the Exit Loan shall constitute an Event of Default under this Indenture.

### SECTION 1.07        Additional Collateral.

To memorialize the District's agreement with the Trustee reached during the Bankruptcy Proceedings to pledge additional real and personal property as collateral for the Series 2007 Bonds, the District is herewith executing and delivering a deed of trust describing that property that is subject to that pledge (the "Collateral") substantially in the form attached hereto as **Exhibit C**.  The Bankruptcy Plan contemplates that, from time to time, the District may sell, lease or otherwise dispose of some or all of the Collateral to pay District expenses described in projections filed as Docket No. 1442 in the Bankruptcy Proceedings.  Provided the District is then in compliance with the Plan, Trustee shall, at the written request of the District, release its liens at closing for Collateral sold, leased or disposed of for this purpose.  Notwithstanding any other provision of the Indenture, including Section 6.07 of the Indenture, a disposition of Collateral on the terms of this Section 1.07 shall not constitute an Event of Default under the Indenture.  The Trustee shall otherwise release all liens in the Collateral upon the earlier of (i) the District's full compliance with its obligations under the Indenture for 24 consecutive months and (ii) so long as the District is then in full compliance with Section 2.12 of the Indenture, full and final payment and termination of the Working Capital Loan and Exit Loan.

Draft 8/12/19

## ARTICLE II.
## EFFECT OF BOND SUPPLEMENT

From and after the time of taking effect of this Bond Supplement, the Indenture shall be, and be deemed to be, modified and amended in accordance herewith, and the respective rights, duties and obligations under this Bond Supplement and the Indenture of the District and the Trustee shall be determined, exercised and enforced thereunder subject in all respects to the provisions of this Bond Supplement and the Indenture, and all provisions hereof shall be deemed to be part of the terms and conditions of said Indenture for any and all purposes.

## ARTICLE III.
## TIME OF TAKING EFFECT; MISCELLANEOUS PROVISIONS

**SECTION 3.01.** **Time of Taking Effect; Ratification of Indenture.** This Bond Supplement shall be effective as of the Effective Date. Except as otherwise expressly set forth herein, the Indenture remains in full force and effect and shall be and hereby is ratified.

**SECTION 3.02.** **Representations.** The District and Trustee each represent and warrant to the other that: (a) it has full legal right, power and authority to enter into this Bond Supplement and to carry out and consummate all transactions contemplated by this Bond Supplement, and by proper action has duly authorized the execution and delivery of this Bond Supplement; (b) the party signing this Bond Supplement on its behalf is fully authorized to execute the same; and (c) this Bond Supplement constitutes its legal, valid and binding agreement.

**SECTION 3.03.** **Events of Default.** The following shall constitute events of default hereunder: (a) the occurrence of any Event of the Default under the Indenture; (b) any failure by the Trustee or District to observe or perform any covenant hereunder if such failure remains uncured for a period of 30 days after written notice is given the other party; and (c) if any representation made by the District herein or in any document furnished to the Trustee shall at any time prove to have been incorrect in any material respect as of the time made. Either party may enforce any remedy under the Indenture or at law or equity upon the occurrence of an Event of Default.

**SECTION 3.04.** **Further Assurance.** The District will adopt, make, execute and deliver any and all such further resolutions, instruments and assurances as may be reasonably necessary or proper to carry out the intention or to facilitate the performance of this Bond Supplement, and for the better assuring and confirming unto the Trustee the rights and benefits provided herein.

**SECTION 3.05.** **Successor is Deemed Included in All References to Predecessor.** Whenever in this Bond Supplement either the District or the Trustee is named or referred to, such reference shall be deemed to include the successors or assigns thereof, and all the covenants and agreements in this Indenture contained by or on behalf of the District or the Trustee shall bind and inure to the benefit of the respective successors and assigns thereof whether so expressed or not.

**SECTION 3.06.** **Limitation of Rights to Parties and Bondowners.** Nothing in this Bond Supplement expressed or implied is intended or shall be construed to give to any person other than the District, the Trustee and the Owners of the Bonds, any legal or equitable right, remedy or claim under or in respect of this Bond Supplement or any covenant, condition or provision therein or

Draft 8/12/19

herein contained; and all such covenants, conditions and provisions are and shall be held to be for the sole and exclusive benefit of the District the Trustee and the Owners of the Bonds.

**SECTION 3.07.**    **Article and Section Headings and References.**    The headings or titles of the several Articles and Sections hereof, shall be solely for convenience of reference and shall not affect the meaning, construction or effect of this Bond Supplement.

**SECTION 3.08.**    **Severability of Invalid Provisions.**    If any one or more of the provisions contained in this Bond Supplement shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such provision or provisions shall be deemed severable from the remaining provisions contained in this Bond Supplement and such invalidity, illegality or unenforceability shall not affect any other provisions of this Bond Supplement, and this Bond Supplement shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein.

**SECTION 3.09.**    **Notice to District and Trustee.**    Any notice to or demand upon the Trustee may be served or presented, and such demand may be made, pursuant to the terms of the Indenture.

**SECTION 3.10.**    **Execution in Counterparts.**    This Bond Supplement may be executed in any number of counterparts and each shall for all purposes shall be deemed to be an original; and all such counterparts or as many of them as the District and the Trustee shall preserve undestroyed, shall together constitute but one and the same instrument.    **SECTION 3.11.** **Governing Law.**    This Bond Supplement shall be construed in accordance with and governed by the Constitution and laws of the State.

[signature pages follow]

Draft 8/12/19

**IN WITNESS WHEREOF,** the District has caused this Bond Supplement to be signed in its name by its Chief Executive Officer and the Trustee has caused this Bond Supplement to be signed in its name by one of its authorized officers, all as of the day and year above written.

TULARE COUNTY HEALTH CARE DISTRICT

By: _____
　　　　Name:
　　　　Title:　Chief Executive Officer

WILMINGTON TRUST NATIONAL
ASSOCIATION, as Trustee

By:_____
　　　　Authorized Officer

89556914v.2

{//Tulare -- Bond Supplement.DOC}8

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

| | |
|---|---|
| NAME | Mintz Levin, Cohn, Ferris |
| | Glovsky and Popeo, P.C. |
| ATTN: | Gabriel Schnitzler |
| ADDRESS | 44 Montgomery Street, |
| | 36th Floor |
| CITY | San Francisco |
| STATE & ZIP | California 94111 |

**SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS**

**This Deed of Trust,** made this _____ day of _____, 2019, between

     TULARE LOCAL HEALTHCARE DISTRICT, a local health care district of the State of California, herein called Trustor, whose address is 1255 N. Cherry #536, Tulare, California 93274,

     STEWART TITLE OF CALIFORNIA, INC., a California Corporation, herein called Trustee, whose address is _____, and

     WILMINGTON TRUST NATIONAL ASSOCIATION, as successor trustee under the below-referenced Indenture of Trust, whose address is _____, herein called beneficiary.

**Witnesseth:** That Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that property in Tulare County, California, described as:

     SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE (the "Property")

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Prompt and complete payment and performance of the obligations of Tulare Regional Health Care District with respect to (A) the Tulare Local Health Care District (Tulare County, California) Refunding Revenue Bonds, Series 2007, and (B) the Indenture of Trust dated as of November 1, 2007 between the Tulare Local Health Care District and Wilmington Trust National Association, as successor trustee, as each of the foregoing may be amended, amended and restated, or supplemented from time to time. 3. Any other document or instrument supplementing or further evidencing or describing the obligations described in clause 2. above.

**To Protect the Security of This Deed of Trust, Trustor Agrees:** By the execution and delivery of this Deed of Trust, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961 and in all other

counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said Property is located, noted below opposite the name of such county, viz.:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Modoc | 184 | 851 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Alpine | 1 | 260 | Inyo | 147 | 598 | Mono | 52 | 429 | San Joaquin | 2470311 | | Stanislaus | 1715 | 456 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Monterey | 2194 | 538 | San Luis Obispo | 1151 | 12 Sutter | 572 | 297 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Napa | 639 | 86 | San Mateo | 4078420 | | Tehama | 401 | 289 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Nevada | 305 | 320 | Santa Barbara | 1878060 | | Trinity | 93 | 366 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Orange | 5889 | 611 | Santa Clara | 5336341 | | Tulare | 2294 | 275 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Placer | 895 | 301 | Santa Cruz | 1431494 | | Tuolumne | 135 | 47 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Plumas | 161 | 5 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Riverside | 3005 | 523 | San Diego | Series 2 Book 1961, Page 183887 | | | | |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | | | |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | San Benito | 271 | 383 | Siskiyou | 468 | 181 | Yolo | 653 | 245 |
| Humboldt | 657 | 527 | Merced | 1547 | 538 | San Bernardino | 5567 | 61 | Solano | 1105182 | | Yuba | 334 | 486 |

hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length (the "Incorporated Provisions"); that Trustor will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The Addendum attached hereto (and incorporated by this reference herein) contains other terms and conditions of this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to Trustor at Trustor's address hereinbefore set forth.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be executed as of the day and year first written above.

**TRUSTOR:**

TULARE LOCAL HEALTHCARE DISTRICT,
a local health care district of the State of California

By: _____

Name:

Title:

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness accuracy or validity of that document.

---

## CALIFORNIA ACKNOWLEDGEMENT

STATE OF CALIFORNIA                    } ss:

COUNTY OF _____

On _____, before me, _____, a
Notary Public, personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

**Addendum to Short Form Deed of Trust and Assignment of Rents**
**from**
**Tulare Local Healthcare District**
**for the benefit of**
**City of Tulare, California**

This ADDENDUM TO SHORT FORM DEED OF TRUST WITH ASSIGNMENT OF RENTS ("Addendum") constitutes part of the Short Form Deed of Trust With Assignment of Rents dated _____, 2019 (the "Deed of Trust"), between **TULARE LOCAL HEALTHCARE DISTRICT**, a local health care district of the State of California ("Trustor"), **STEWART TITLE COMPANY**, a California corporation ("Trustee"), and **WILMINGTON TRUST NATIONAL ASSOCIATION** ( "Beneficiary"). In the event of any conflict or discrepancy between the terms and provisions of the Deed of Trust and this Addendum, the terms and provisions of this Addendum shall control. The terms of this Addendum are incorporated in the Deed of Trust for all purposes. All capitalized terms not otherwise defined in this Addendum are defined by the terms of the Deed of Trust.

A-1    **Due on Sale**. If Trustor, without the prior written consent of Beneficiary, directly or indirectly, voluntarily or involuntarily, sells, assigns, transfers, disposes of (including, without limitation, through execution of an installment land sale agreement) or further encumbers or suffers to exist any other lien that does not exist today (including, without limitation, any mortgage, deed of trust or other lien subordinate to the lien of the Deed of Trust) against all or any portion of or any interest in the property described in Exhibit A to this Deed of Trust (the "Property"), or if Trustor increases the amount of indebtedness or obligations secured by any lien or modifies the terms thereof without Beneficiary's written consent, then the same shall be deemed to increase the risk to Beneficiary and Beneficiary may then, or at any time thereafter, declare the entire indebtedness secured by the Deed of Trust immediately due and payable.

For the purpose of this Section A-1: (a) the terms "sell" and "transfer" shall include, in addition to the common and ordinary meaning of those terms and without limiting their generality, any "change in ownership" as that term is used from time to time in California real property taxation law; and (b) the term "transferee" shall mean purchaser, assignee, grantee or subsequent owner of all or any portion of the Property or of any interest in Trustor.

The foregoing options may be exercised at any time after the occurrence of any such event and the acceptance of one or more installments from any person thereafter shall not constitute a waiver of Beneficiary's option. Beneficiary's approval of any sale, assignment, transfer, pledge, disposition, encumbrance or other lien or failure to exercise said option with respect thereto shall not be construed as a waiver of the provisions hereof with regard to any subsequent transaction.

A-2    **Due on Bankruptcy**. Trustor agrees that Beneficiary, at its option, shall have the right to declare the entire indebtedness secured by this Deed of Trust immediately due and payable if Trustor shall file or have filed against it a case or petition in bankruptcy or be adjudicated a debtor, a bankrupt or an insolvent or if Trustor shall file any case, petition or answer seeking or acquiescing in any reorganization, arrangement composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or

other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or if Trustor or such other party seeks or consents to or acquiesces in the appointment of any trustee, receiver or liquidator of Trustor or such other party or of all or a substantial part of the Property or any or all rents, revenues, issues, earnings, profits or income thereof or makes any general assignment for the benefit of creditors, or admits in writing of its inability to pay its debts generally as they become due, or if a court of competent jurisdiction enters an order, judgment or decree approving a case or petition filed against Trustor or any such other party seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors or the appointment of any trustee, receiver or liquidator of Trustor or of all or any substantial part of the Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof without the consent of Trustor, and if, in the case of any of the involuntary events described above, such condition or situation is not remedied within a period of sixty (60) days.

         A-3     **Special Notice**. Trustor shall notify Beneficiary promptly of the occurrence of any of the following, and shall provide to Beneficiary a copy of any documentation related to same upon receipt of same by Trustor:

               (a)     A fire or other casualty causing damage to the Property or any portion thereof;

               (b)     Receipt of notice of condemnation or other taking of all or any portion of the Property or any interest therein;

               (c)     Receipt of notice from any governmental agency relating to the use of the Property or any portion thereof, including without limitation, a copy of any notice, approval or other correspondence or document received by Trustor from any party relating to any entitlements, zoning changes, tentative or final subdivision maps or development of the Property;

               (d)     Any notice of default or notice of sale or other enforcement action under any deed of trust or other lien affecting the Property; or

               (e)     The commencement of any litigation affecting the Property, any interest therein or the title thereto.

         A-4     **Hazardous Materials**.

               (a)     For purposes of this Deed of Trust, the term "Hazardous Material" means, without limitation, (i) petroleum, any petroleum product or fraction thereof, (ii) friable asbestos, or any material containing asbestos, (iii) polychlorinated byphenyls ("PCBs"), or any material containing PCBs, (iv) urea formaldehyde foam insulation, (v) any substance, product, waste or other material of any nature whatsoever which is or becomes regulated or listed by any local, state or federal governmental authority, entity or agency pursuant to any "Environmental Law" (as hereinafter defined), including, without limitation, any substance defined as a "hazardous substance", "hazardous material" or "toxic material" by any Environmental Law, (vi) any substance, product, waste or other material of any nature whatsoever which may give rise to any liability under any Environmental Law and (vii) any substance, product, waste or other material

the presence of which on the Property or the migration of which from the Property gives rise to liability under any statutory or common law theory based on negligence, trespass, intentional tort, nuisance or strict liability or under any reported judicial decision.

(b)     "Environmental Law" as used in this Deed of Trust means any federal, state or local law, regulation, guideline, code, ordinance, rule, resolution, order or decree regulating the use, generation, handling, storage, treatment, transport, decontamination, cleanup, removal, encapsulation, enclosure, abatement or disposal of any Hazardous Material, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sections 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Sections 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Sections 2601, et seq., the Clean Water Act, 33 U.S.C. Sections 1251 et seq., the California Hazardous Waste Control Act, California Health and Safety Code Sections 25100 et seq., the California Hazardous Substance Account Act, California Health and Safety Code Sections 25330 et seq., the California Safe Drinking Water and Toxic Enforcement Act, California Health and Safety Code Sections 25249.5 et seq., California Health and Safety Code Sections 25280, et seq. (Underground Storage of Hazardous Substances), the California Hazardous Waste Management Act, California Health and Safety Code Sections 25170.1 et seq., California Health and Safety Code Sections 25501 et seq. (Hazardous Materials Release Response Plans and Inventory), the California Porter-Cologne Water Quality Control Act, California Water Code Sections 13000 et seq., California Health and Safety Code Section 26316 and the Uniform Fire Code and any other federal, state or local statute, law, ordinance, resolution, code, rule, regulation, order or decree relating to, or imposing liability or standards of conduct concerning any Hazardous Material, as now or at any time hereafter in effect, all as amended or hereafter amended.

(c)     Trustor hereby covenants and agrees as follows:

(i)     Trustor shall not undertake, authorize, or knowingly permit the Property or any portion thereof to be a site for the use, generation, manufacture, handling, storage, treatment, discharge, release, burial, disposal or transportation of any Hazardous Material in violation of any Environmental Law.

(ii)     Trustor shall keep and maintain the Property and each portion thereof in compliance with, and shall not cause or permit the Property or any portion thereof to be in violation of any Environmental Law.

(iii)     Trustor shall immediately advise Beneficiary in writing of any of the following:

(A)     Any and all enforcement, cleanup, removal, remediation or other governmental or regulatory actions instituted, completed or threatened pursuant to any Environmental Law;

(B)     All "Claims" (as hereinafter defined) asserted by any third party against Trustor or the Property or any portion thereof;

(C)     Trustor's discovery of any occurrence or condition that could cause the Property or any part thereof to be classified as "hazardous waste property" or as

"border zone property" under any Environmental Law or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Environmental Law; and

        (D)    Trustor's taking of any cleanup, removal or remedial action in response to the presence of any Hazardous Material at, upon, under, over or about the Property, and any proposed settlement agreement, consent, decree or other compromise in respect to any "Claim" (as hereinafter defined).

      A-5    **Senior Lien.**  Trustor covenants to comply with all obligations under or secured by that certain Short Form Deed of Trust and Assignment of Rents dated as of February 8, 2019 in favor of the City of Tulare, California recorded [in Book _____ Page _____] [as Instrument Number _____] of the Tulare County Official Records.  Trustor covenants to provide Beneficiary with a copy of all notices of default and notices of sale and other material notices with respect to such deed of trust.  Upon Trustor's failure to comply with this paragraph A-5, Beneficiary may cure such failure, and Beneficiary shall have all rights with respect thereto as are provided in paragraphs (4) and (5) of the fictitious deed of trust incorporated herein, as well as all rights at law and in equity.

      A-6    **Confirmation of Deed of Trust**.  The Deed of Trust, as modified herein, shall remain in full force and effect.

     IN WITNESS WHEREOF, Trustor has executed this Addendum as set forth below.

|  | **TULARE LOCAL HEALTHCARE DISTRICT,** a local health care district of the State of California<br><br><br>By: _____<br>Name: _____<br>Its: _____ |
|---|---|

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness accuracy or validity of that document.

## CALIFORNIA ACKNOWLEDGEMENT

STATE OF CALIFORNIA                    } ss:

COUNTY OF _____

On _____, before me, _____, a
Notary Public, personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

**Exhibit A**
**to Short Form Deed of Trust and Assignment of Rents**
**from**
**Tulare Local Healthcare District**
**for the benefit of**
**City of Tulare, California**

Legal Description of the Property

Evolutions Property

PARCEL 1 OF PARCEL MAP NO. 4531, IN THE CITY OF TULARE, COUNTY OF
TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED AUGUST 23, 2002 IN
BOOK 46, PAGE 36 OF PARCEL MAPS, TULARE COUNTY RECORDS.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF OF ALL THE MINERALS, GAS,
OILS, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES IN, ON
OR UNDER SAID LAND, TOGETHER WITH ALL RIGHTS INCIDENTAL TO THE
DEVELOPMENT OF SAME, AS EXCEPTED IN THE DEED FROM SECURITY-FIRST
NATIONAL BANK OF LOS ANGELES, A NATIONAL BANKING ASSOCIATION, TO C.
E. SWEARINGEN AND CLARA B. SWEARINGEN, HUSBAND AND WIFE, DATED
SEPTEMBER 29, 1936, RECORDED NOVEMBER 30, 1936 IN BOOK 704, PAGE 316 OF
OFFICIAL RECORDS AND THE REMAINDER OF PARCEL MAP 4531 IN THE CITY OF
TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED
AUGUST 23, 2002 IN BOOK 46, PAGE 36 OF PARCEL MAPS, TULARE COUNTY
RECORDS (APN 171-300-016).

**APN: 171-300-015**

Cottages Property

PARCEL 1:

THAT PORTION OF THE EAST HALF OF THE SOUTHWEST QUARTER OF THE
SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 2, TOWNSHIP
20 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE CITY
OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE
OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF THE WEST HALF OF THE
SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 2;
THENCE NORTH 0° 05' 45" WEST ALONG THE EAST LINE OF THE WEST HALF OF
THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 2, A
DISTANCE OF 449.94 FEET, MORE OR LESS, TO A POINT ON THE EASTERLY
EXTENSION OF THE NORTH LINE OF THE MOUNTAIN VIEW TRACT, AS PER MAP
RECORDED IN VOLUME 21, PAGE 64 OF MAPS, TULARE COUNTY RECORDS;
THENCE SOUTH 88° 54' 45" WEST ALONG THE EASTERLY EXTENSION OF SAID
NORTH LINE, 125 FEET TO THE TRUE POINT OF BEGINNING; SAID POINT ALSO

BEING THE SOUTHWEST CORNER OF THE LAND CONVEYED TO CYRIL H. JOHNSON AND LUCY JANE JOHNSON, HIS WIFE, BY DEED DATED JULY 22, 1954, RECORDED IN BOOK 1773, PAGE 332 OFFICIAL RECORDS; THENCE NORTH 0° 05' 45" WEST ALONG THE WEST LINE OF THE LAND SO CONVEYED, 180 FEET TO THE NORTHWEST CORNER THEREOF; THENCE WESTERLY ALONG THE WESTERLY EXTENSION OF THE NORTH LINE OF THE LAND SO CONVEYED, 68 FEET; THENCE SOUTH 0° 05' 45" EAST, 180 FEET, MORE OR LESS, TO THE NORTH LINE OF SAID MOUNTAIN VIEW TRACT; THENCE EAST ALONG SAID NORTH LINE, 68 FEET TO THE TRUE POINT OF BEGINNING.

TOGETHER WITH THAT PORTION OF PARCEL B OF RESOLUTION NO. 09-22 VACATING A PORTION OF TERRACE AVENUE LYING ADJACENT TO SAID PARCEL ON THE SOUTH, RECORDED APRIL 14, 2009, AS INSTRUMENT NO. 2009-0021887, OF OFFICIAL RECORDS.

**APN: 170-092-003**

*(Appurtenant Easement)*

EASEMENTS OVER THAT PORTION OF THE EAST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 2, TOWNSHIP 20 SOUTH, RANGE 24 EAST MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHERE A STAKE IS DRIVEN 5 CHAINS EAST OF THE SOUTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 2; THENCE RUNNING EASTERLY 5 CHAINS; THENCE NORTHERLY 450 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING NORTHERLY 210 FEET TO A POINT; THENCE WESTERLY 125 FEET; THENCE SOUTHERLY PARALLEL TO THE FIRST COURSE OF THE LAND BEING DESCRIBED 210 FEET; THENCE EAST 125 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THE NORTH 30 FEET THEREOF, AS FOLLOWS:

A)     A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES 18 FEET WIDE, THE CENTER LINE OF WHICH BEGINS AT A POINT ON THE LAST LINE OF THE LAST DESCRIBED REAL PROPERTY, 31 FEET NORTH OF THE SOUTHEAST CORNER THEREOF; THENCE RUNNING WESTERLY AND PARALLEL TO THE SOUTH LINE OF SAID LAST DESCRIBED REAL PROPERTY TO THE WESTERLY LINE THEREOF.

B)     A NON-EXCLUSIVE EASEMENT FOR A WALKWAY 4 FEET WIDE, THE CENTER LINE OF WHICH BEGINS AT A POINT ON THE EAST LINE OF THE LAST DESCRIBED REAL PROPERTY, 46 FEET SOUTH OF THE NORTHEAST CORNER THEREOF; THENCE RUNNING WESTERLY TO THE WESTERLY LINE OF THE LAST DESCRIBED REAL PROPERTY.

C)    A NON-EXCLUSIVE EASEMENT OVER THE NORTH 3 FEET OF THE LAST DESCRIBED REAL PROPERTY FOR A SEWER LINE AND FOR A WATER LINE.

PARCEL 2:

THAT PORTION OF THE EAST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 2, TOWNSHIP 20 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHERE A STAKE IS DRIVEN 5 CHAINS EAST OF THE SOUTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 2; THENCE RUNNING EASTERLY 5 CHAINS; THENCE NORTHERLY, 450 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING NORTHERLY, 210 FEET TO A POINT; THENCE WESTERLY, 125 FEET; THENCE SOUTHERLY, PARALLEL TO THE FIRST COURSE OF THE LAND BEING DESCRIBED, 210 FEET; THENCE EAST, 125 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THE NORTH 30 FEET THEREOF.

TOGETHER WITH THAT PORTION OF PARCEL B OF RESOLUTION NO. 09-22 VACATING A PORTION OF TERRACE AVENUE LYING ADJACENT TO SAID PARCEL ON THE SOUTH, RECORDED APRIL 14, 2009, AS INSTRUMENT NO. 2009-0021887, OF OFFICIAL RECORDS.

    **APN: 170-092-004**

PARCEL 3:

THE SOUTH 72 FEET OF LOT 2 OF TERRACE GARDEN SUBDIVISION, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 21, PAGE 95 OF MAPS, TULARE COUNTY RECORDS.

    **APN: 170-072-020 (PORTION)**

PARCEL 4:

LOTS 3 AND 4 OF TERRACE GARDEN SUBDIVISION, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 21, PAGE 95 OF MAPS, TULARE COUNTY RECORDS.

    **APN: 170-072-020 (PORTION)**

PARCEL 5:

LOT 2 OF TERRACE GARDEN SUBDIVISION, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 21, PAGE 95 OF MAPS, TULARE COUNTY RECORDS.

EXCEPTING THEREFROM THE NORTHERLY 10 FEET THEREOF.

ALSO EXCEPTING THE SOUTH 72 FEET THEREOF.

    **APN: 170-072-020 (PORTION)**

PARCEL 6:

LOT 7 OF CHERRY PARK ESTATES, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 23, PAGE 94 OF MAPS, TULARE COUNTY RECORDS.

    **APN: 170-322-034 (PORTION)**

PARCEL 7:

LOT 5 OF CHERRY PARK ESTATES, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 23, PAGE 94 OF MAPS, TULARE COUNTY RECORDS.

    **APN: 170-322-034 (PORTION)**

PARCEL 8:

LOT 1 AND THE NORTHERLY 10 FEET OF LOT 2 OF TERRACE GARDEN SUBDIVISION, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 21, PAGE 95 OF MAPS, TULARE COUNTY RECORDS.

    **APN: 170-072-002**

PARCEL 9:

LOTS 2 AND 3 AND A PORTION OF LOT 4 OF TULARE MEDICAL CENTER UNIT NO. 2, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 35, PAGE 28 OF MAPS, TULARE COUNTY RECORDS.

    **APN: 170-340-038**

PARCEL 10:

LOT 8 OF CHERRY PARK ESTATES, IN THE CITY OF TULARE, COUNTY OF TULARE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 23, PAGE 94 OF MAPS,
TULARE COUNTY RECORDS.

**APN: 170-322-020**