24

(SPACE BELOW FOR FILING STAMP ONLY)

**WANGER JONES HELSLEY PC**
Riley C. Walter, #91839
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 490-0949
Facsimile: (559) 233-9330
E-Mail: rwalter@wjhattorneys.com

Chapter 9 Counsel for Tulare Local Healthcare District, Debtor

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | CASE NO. 17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER, | Chapter 9 |
| | DC No.: WJH-9 |
| Debtor. | Date: November 8, 2019 |
| | Time: 11:00 a.m. |
| Tax ID #: 94-6002897 | Place: 2500 Tulare Street |
| Address: 869 N. Cherry Street | Fresno, CA 93721 |
| Tulare, CA 93274 | Courtroom 13 |
| | Judge: Honorable René Lastreto II |

**EXHIBIT TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NUMBER 35 FILED BY MYLENE RUCKER**

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | Proof of Claim Number 35 filed by Mylene Rucker | 23 |

Dated: September 10, 2019          WANGER JONES HELSLEY PC

By:  *Riley C. Walter*
Riley C. Walter, Attorneys for Debtor,
Tulare Local Healthcare District



*(23)*

**Fill in this information to identify the case:**

Debtor 1  Mylene Ruckes M

Debtor 2  Dr Ruckes Wetter Ctr
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Fresno California

Case number 1713797

*(handwritten at right)* Tulare Local Health Care District DBA Tulare Regional Medical Center

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

ISAF

**FILED**

DEC 06 2017

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## Part 1:  Identify the Claim

**1. Who is the current creditor?**

Mylene M Ruckes
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Mylene Ruckes
Name

3106 S Byrd
Number    Street

Visalia CA 93292
City    State    ZIP Code

Contact phone 559 635 308 5370
Contact email Mylene Ruckes @ Yahoo. Com

Where should payments to the creditor be sent? (if different)

Name _____
Number    Street

City    State    ZIP Code

Contact phone Kweke Middleton
Contact email 559 308 2990

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 35

Filed on 11 / 20 / 2017
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

EXHIBIT A
Page 1 of 23

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2 8 9 7

**7. How much is the claim?** $ 24,000 . **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

I worked as an Independent Contractor for the Past year

**9. Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** Invoice attached
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 14000
**Amount of the claim that is secured:** $ _____
**Amount of the claim that is unsecured:** $ 24 000 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 24,000

**Annual Interest Rate** (when case was filed) _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

EXHIBIT A
Page 2 of 23

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☒ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).          $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).          $_____

☒ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).          $ 24,000 ~

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).          $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).          $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.          $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12 / 6 / 70
                 MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

Name        Mylene          Middleton          Rucker
            First name      Middle name        Last name

Title       Physician    MD

Company     Dr Ruckers Wellness Center
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     3106     S.     Bvd
            Number   Street

            Visalia          CA     93292
            City             State  ZIP Code

Contact phone  559  3085370          Email  Mylene.Rucker@
                                            yahoo.w

EXHIBIT A
Page 3 of 23

December 6, 2017

To Whom it may concern,

I have worked in the capacity as medical supervisor for mid-levels for over a year. HCCA has had a major problem paying me on time, with numerous delays. Payment for the month of August had been promised for over three months. I have not been paid for the months of august, September and October. I have filed previous grievances with Alan Germany to no avail. Most recently I have submitted my claim as a creditor with the Fresno county Bankruptcy court.

I am will to continue work as a medical supervisor once I have been paid for the work that I have done.

Mylene Rucker MD, MPH

United States Bankruptcy Court Eastern District of California

Successful verification ...

Your claim was successfully filed in case number 17-13797.
**Your claim number is 35.**

Open in new window: Click 1 0 to view/print your filed claim.

*Note: Any attachment(s) added will **NOT** be available*
*to view/print unless you have a Pacer account.*

File additional claims

**Schedule 4.3**

**MID-LEVEL SUPERVISION AGREEMENT**
**TULARE REGIONAL MEDICAL CENTER**

To the extent you may want to add greater specificity please do so in blank space
provided under each service.

**TIME RECORD**

Name: _Mylene Rucker_        Month: _Sep_

Date: _____

| Date | Description of Services Include Contracted Services | Total Time Spent On Task (Time In .25 Increments) |
|---|---|---|
| 9/4 | Supervision of mid-level practitioners (e.g. nurse practitioners and physician assistants) providing services in the Service who are designated for supervision by Hospital. | 10 |
| 9/6 | Development and implementation of standards of practice and written protocols for mid-level practitioner practice. | 6 |
| 9/11 | Entering into delegation of services, collaboration and supervision agreements with mid-level practitioners. | 3 |
| 9/13 | Reviewing, countersigning, and dating charts and controlled substance drug orders as required (i) under applicable law, (ii) by third party payers and Hospital's professional liability carriers and (iii) by Hospital policies and procedures. | 8 |
| 9/20 | Collaborating with Hospital and the mid-level practitioners to determine the applicable method of supervision for mid-level practitioners. | 4 |
| 9/22 | Telephonic consultation with mid-level practitioners with respect to patient specific clinical issues. | 2 |
| 9/27 | In-person consultation with mid-level practitioners with respect to patient specific clinical issues. | 1 |
|  |  |  |

EXHIBIT A
Page 6 of 23

## ATTESTATION

By signing this document, I affirm and attest that the services described herein and the number of hours recorded for such services were performed by me.

9/36/17
Date

Mylene M. Rucker, M.D.

By signing this document, the Service Line Director, CFO and CEO affirm and attest that they have confirmed that the services rendered and number of hours recorded for such services satisfy the duties set forth in the Agreement, and that the number of calendar months remaining in the Agreement term as stated on page 1 and 2 are accurate.

REVIEWED AND APPROVED BY SERVICE LINE DIRECTOR:

Samantha Bland, VP of Ambulatory Care                    Date

REVIEWED AND APPROVED BY COO:

Delbert Bryant, Compliance Officer                       Date

REVIEWED AND APPROVED BY CFO:

Alan Germany, Chief Financial Officer/Chief Operating Officer     Date

3

609382092.2

Schedule 4.3

## MID-LEVEL SUPERVISION AGREEMENT
## TULARE REGIONAL MEDICAL CENTER

To the extent you may want to add greater specificity please do so in blank space
provided under each service.

### TIME RECORD

Name: _Mylene Rucker MD, MPH_    Month: _August 2017_

Date: _2017_

| Date | Description of Services Include Contracted Services | Total Time Spent On Task (Time In .25 Increments) |
|---|---|---|
| 8/2 | Supervision of mid-level practitioners (e.g. nurse practitioners and physician assistants) providing services in the Service who are designated for supervision by Hospital. | 10 |
| 8/4 | Development and implementation of standards of practice and written protocols for mid-level practitioner practice. | 7 |
| 8/7 | Entering into delegation of services, collaboration and supervision agreements with mid-level practitioners. | 2 |
| 8/8 | Reviewing, countersigning, and dating charts and controlled substance drug orders as required (i) under applicable law, (ii) by third party payers and Hospital's professional liability carriers and (iii) by Hospital policies and procedures. | 8 |
| 8/16 | Collaborating with Hospital and the mid-level practitioners to determine the applicable method of supervision for mid-level practitioners. | 4 |
| 8/20 | Telephonic consultation with mid-level practitioners with respect to patient specific clinical issues. | 2 |
| 8/16 | In-person consultation with mid-level practitioners with respect to patient specific clinical issues. | 7 |

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | **Total Number of Hours from Continuation Sheet(s)** |  |
|  | **Total Number of Hours for Month** | 40 |

**(Complete and attach continuation sheets if additional space is needed)**

609382092.2

2

## ATTESTATION

By signing this document, I affirm and attest that the services described herein and the number of hours recorded for such services were performed by me.

_____          9/5/17
Mylene M. Rucker, M.D.                          Date

By signing this document, the Service Line Director, CFO and CEO affirm and attest that they have confirmed that the services rendered and number of hours recorded for such services satisfy the duties set forth in the Agreement, and that the number of calendar months remaining in the Agreement term as stated on page 1 and 2 are accurate.

**REVIEWED AND APPROVED BY SERVICE LINE DIRECTOR:**


_____          _____
Samantha Bland, VP of Ambulatory Care                    Date


**REVIEWED AND APPROVED BY COO:**


_____          _____
Delbert Bryant, Compliance Officer                       Date


**REVIEWED AND APPROVED BY CFO:**


_____          _____
Alan Germany, Chief Financial Officer/Chief Operating Officer          Date

609382092.2

3

Schedule 4.3

## MID-LEVEL SUPERVISION AGREEMENT
## TULARE REGIONAL MEDICAL CENTER

To the extent you may want to add greater specificity please do so in blank space provided under each service.

### TIME RECORD

Name: _Mylene Rucker_      Month: _October_

Date: _Oct. 31, 2017_

| Date | Description of Services<br>Include Contracted Services | Total Time Spent On Task (Time In .25 Increments) |
|------|--------------------------------------------------------|---------------------------------------------------|
| 10/4 | Supervision of mid-level practitioners (e.g. nurse practitioners and physician assistants) providing services in the Service who are designated for supervision by Hospital. | 10 |
| 10/4 | Development and implementation of standards of practice and written protocols for mid-level practitioner practice. | 6 |
| 10/16 | Entering into delegation of services, collaboration and supervision agreements with mid-level practitioners. | 3 |
| 10/18 | Reviewing, countersigning, and dating charts and controlled substance drug orders as required (i) under applicable law, (ii) by third party payers and Hospital's professional liability carriers and (iii) by Hospital policies and procedures. | 8 |
| 10/16 | Collaborating with Hospital and the mid-level practitioners to determine the applicable method of supervision for mid-level practitioners. | 4 |
| 10/25 | Telephonic consultation with mid-level practitioners with respect to patient specific clinical issues. | 2 |
| 10/29 | In-person consultation with mid-level practitioners with respect to patient specific clinical issues. | 7 |
| | | |

609382092.2

1

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | **Total Number of Hours from Continuation Sheet(s)** | |
| | **Total Number of Hours for Month** | 40 |

**(Complete and attach continuation sheets if additional space is needed)**

2

609382092.2

## ATTESTATION

By signing this document, I affirm and attest that the services described herein and the number of hours recorded for such services were performed by me.

_____

Mylene M. Rucker, M.D.                                    Oct 31
                                                          Date

By signing this document, the Service Line Director, CFO and CEO affirm and attest that they have confirmed that the services rendered and number of hours recorded for such services satisfy the duties set forth in the Agreement, and that the number of calendar months remaining in the Agreement term as stated on page 1 and 2 are accurate.

**REVIEWED AND APPROVED BY SERVICE LINE DIRECTOR:**


_____          _____
Samantha Bland, VP of Ambulatory Care                    Date


**REVIEWED AND APPROVED BY COO:**


_____          _____
Delbert Bryant, Compliance Officer                       Date


**REVIEWED AND APPROVED BY CFO:**


_____          _____
Alan Germany, Chief Financial Officer/Chief Operating Officer          Date

## TULARE LOCAL HEALTH CARE DISTRICT
## DBA TULARE REGIONAL MEDICAL CENTER
## MID-LEVEL SUPERVISION AGREEMENT

This Mid-Level Supervision Agreement ("**Agreement**") is made and entered into as of the date of the last signature at the end of this Agreement ("**Effective Date**"), by and between Tulare Local Health Care District, dba Tulare Regional Medical Center ("**Hospital**"), and Mylene M. Rucker, M.D. ("**Physician**").

### RECITALS

A.     Hospital operates Tulare Regional Medical Center, a general acute care hospital located in Tulare, California, under The Local Health Care District Law of California (commencing at Health and Safety Code § 32,000 et seq.), which includes a fully staffed and equipped clinic (the "**Service**"), and is in need of an experienced physician to serve as Mid-Level practitioner supervisor for physician assistants and nurse practitioners providing services related to the Service.

B.     Physician is a physician duly licensed to practice medicine in the State of California ("**State**") and is qualified in the specialty of Family Medicine ("**Specialty**")

C.     Hospital desires to secure the services of Physician with respect to the performance of coordination, administration, quality assurance, and other medical administrative services described in this Agreement, and Physician desires to provide such services to Hospital; and

NOW, THEREFORE, in consideration of the above recitals, mutual covenants and agreements herein contained, the parties agree:

### ARTICLE 1

### PHYSICIAN DUTIES, SERVICES, AND RESPONSIBILITIES

1.1     <u>Medical Administrative Services.</u>

1.1.1 <u>Services.</u>     During the Term of this Agreement, as hereinafter defined, Physician shall serve as the mid-Level practitioner supervisor for physician assistants and nurse practitioners providing services related to the Service and shall perform the duties and obligations set forth hereinafter and such additional duties and obligations as are set forth in **Schedule 1.1** attached hereto and made a part hereof. The Physician Services to be provided under this Agreement do not exceed what is reasonable and necessary as determined by Hospital. Physician shall report to Hospital's Chief Executive Officer ("**CEO**") or his/her designee, who will represent Hospital in the administration of this Agreement.

1.1.2 <u>Coordination of Services</u>. CEO or his/her designee and Physician shall coordinate their activities in connection with the Service, and Physician shall inform CEO or his/her designee of any extended periods (greater than one week) during which Physician will be unavailable due to vacation, professional meetings, or other personal or professional commitments.

1.2 <u>Licenses and Good Standing</u>. Physician shall obtain and maintain in good standing an unrestricted license to practice medicine in the State, a controlled substances permit and unrestricted Drug Enforcement Administration permit valid within the State, and such other permits, licenses, certificates, and qualifications as may be required or contemplated hereunder.

1.3 <u>Medical Staff Membership, Privileges, Documentation</u>. Physician shall obtain and maintain membership and clinical privileges on the Medical Staff of Hospital in accordance with Hospital's Medical Staff Bylaws and Rules and Regulations. Physician is responsible for complying with credentialing and proctoring requirements of Hospital. Physician shall furnish Hospital with documentation in such form as Hospital may specify relating to Physician's health status, professional qualifications, licensure status, membership status in professional entities, investigations, disciplinary actions, professional liability claims or civil or criminal investigations or actions relating to Physician's professional practice or qualifications. Physician authorizes and directs the Medical Board of California, all healthcare entities and peer review bodies with which Physician is or has been affiliated to provide Hospital information and documents including privileged material relating in any way to Physician's professional qualifications to the fullest extent allowed by law, and shall execute such other documents and perform such acts as are necessary to effectuate such authorization and direction. Such information shall be maintained in confidence and used in Hospital's peer review process and quality efforts.

1.4 <u>Scheduling</u>. Physician will provide Services described in this Agreement as according to **Schedule 1.1**.

1.5 <u>Compliance with Laws and Standards</u>. Physician shall comply with applicable Federal, state or municipal statutes, regulations or ordinances; Medical Board of California rules and regulations; California Medical Association and American Medical Association ethical standards; applicable accrediting or certifying agency standards, and the policies and procedures of the Hospital. The Physician Services to be provided under this Agreement do not involve the promotion of a business arrangement or activity that violates any federal or state law.

1.6 <u>Certain Notification Requirements</u>. Physician shall notify Hospital within 10 days after Physician becomes aware of any fact or circumstance that makes any representation or warranty in ARTICLE 3 untrue, misleading, or incomplete, and within three (3) days of any fact or circumstance that might reasonably give the Hospital grounds for termination under Section 6.3.

**ARTICLE 2**

2

609382092.1

### HOSPITAL RESPONSIBILITIES

Hospital shall consult with and provide Physician such office space, equipment, and office administrative staff at Hospital's cost, and as its deems reasonably necessary to support for Physician's Services.

### ARTICLE 3

### REPRESENTATIONS AND WARRANTIES OF PHYSICIAN

3.1    Physician Represents, Covenants and Warrants that: No Pre-Existing Cause for Termination. No fact or circumstance is known to Physician that would give rise to termination under Section 6.3 or which would make ARTICLE 3 or **Schedule 3.3** untrue, incomplete, or misleading,

3.2    Legal Status. If Physician is a legal entity, rather than an individual, Physician has all licenses and permits necessary to carry out its obligations, the signatory hereto is duly authorized by the entity, and the entity has the ability and capacity to enter into and perform this Agreement.

3.3    Physician and Physician Family: Financial Relationships with Hospital. Physician agrees that any Financial Relationship between Physician or Physician's Immediate Family Member (as such italicized terms are defined in **Schedule 3.3**) and Hospital or Hospital's affiliates, whether direct or indirect, must be disclosed and referenced in **Schedule 3.3** attached to this Agreement or similar schedules attached to any other agreements between the parties. Hospital maintains and updates a central database of all physician business arrangements to which **Schedule 3.3** will be verified. Physician shall notify Hospital in writing within three (3) days of becoming aware that **Schedule 3.3** is or has become inaccurate or incomplete.

3.4    Licensure. Physician's license to practice medicine in the State or in any other jurisdiction has never been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way;

3.5    Privileges. Physician's medical staff privileges at any health care facility have never been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or made subject to terms of probation or any other restriction; and

## ARTICLE 4

## COMPENSATION

4.1     Payment.

      4.1.1   For services rendered under this Agreement, Hospital shall pay Physician as full compensation for services hereunder, a monthly fee of $205 per hour, payable in accordance with Hospital's customary practices after its receipt of Time Records that comply with the requirements of Section 4.3; provided, however, that no payment shall be made under this subsection until the CEO has approved such Time Records. Notwithstanding the foregoing, no compensation shall be payable to Physician in the event documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification" and the documentation provided for under Subsection 2.b. of this Agreement, is not submitted. Physician further expressly acknowledges and agrees that, with respect to any period during the Term in which Physician shall be suspended from the medical staff for delinquent medical records, compensation owed hereunder by Hospital to Physician shall continue to accrue in accordance with the provisions of this Agreement but shall not be payable by Hospital until such time as Physician is no longer suspended for delinquent medical records. TRMC will reimburse physician for travel, car rental, gas receipts, and lodging expenses preapproved in writing by TRMC.

      4.1.2   The aforesaid compensation is the parties' best estimate of fair market value.

      4.1.3   Physician shall not bill or assert any claim for payment against any patient for services performed by Physician or any mid-level practitioner under this Agreement.

4.2     Fair Market Value of Compensation. Hospital and Physician agree the compensation paid by Hospital to Physician as set forth herein is consistent with and does not exceed the fair market value of Physician Services.

4.3     Time Records.

      4.3.1   Physician shall fully and promptly record and maintain in reasonable detail and legible format all information pertaining to Physician's performance of duties under this Agreement ("Time Records"). Physician's Time Records shall be submitted substantially in the form attached as Schedule 4.1 (incorporated by reference herein), and shall contain all information requested by the form and/or Hospital.

      4.3.2   Time Records shall be submitted to Hospital by the 10th of the month (the "**Due Date**") following the month in which services were rendered (the "Performance Month"). The failure to submit to Hospital complete and legible Time Records by the Due Date shall constitute a breach of the Agreement and Hospital may terminate this Agreement in accordance with ARTICLE 6 of this Agreement. In addition,

609382092.1

Filed 09/11/19
Filed 12/06/17

Case 17-13797
Case 17-13797

Doc 1647
Claim 35-2

if Physician's Time Records for a Performance Month are not received within ten (10) days of the Due Date, Physician shall forfeit all compensation due for Services rendered during that Performance Month.

## ARTICLE 5

### RELATIONSHIP OF THE PARTIES

5.1 <u>Independent Contractors</u>. In performing the services herein specified, Physician is acting as an independent contractor, and shall not be considered an employee of Hospital. It is agreed and acknowledged by the parties that, as an independent contractor, Physician retains the right to engage in the private practice of medicine, and nothing in this Agreement shall be interpreted as limiting or restricting that right in any way. In no event shall this Agreement be construed as establishing a partnership or joint venture or similar relationship between the parties hereto, and nothing herein contained shall be construed to authorize either party to act as agent for the other. Physician shall be liable for Physician's own debts, obligations, acts and omissions, including the payment of all withholding, social security and other taxes and benefits. As an independent contractor, Physician is responsible for filing such tax returns and paying such self-employment taxes as may be required by law or regulations. Physician shall not be subject to any Hospital policies solely applicable to Hospital's employees, and shall not be eligible for any employee benefit plan offered by Hospital. In the event that this independent contractor relationship is determined by tax authorities to constitute an employment relationship, Physician hereby waives, for the period prior to the date such determination becomes final, any and all claims to coverage under Hospital pension, profit-sharing, health, dental, welfare, or similar type plans which are generally limited to Hospital employees, unless otherwise agreed by Hospital in writing. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

5.2 <u>Liability for Obligations</u>. Neither party may bind the other contractually with regard to third parties. Nothing contained in this Agreement shall cause either party to be liable or responsible for any debt, liability, or obligation of the other party to any third party.

609382092.1

5

## ARTICLE 6

## TERM, COMMENCEMENT, EXPIRATION, RENEWAL AND TERMINATION

6.1    Effective Date. The initial term of this Agreement ("**Initial Term**") shall be for a period of one year commencing on the effective date. At the end of the Initial Term and any Term Extension, this Agreement shall be automatically renewed for an additional period of one year (each one-year period shall be considered a ("**Term Extension**") on the same terms and conditions, unless otherwise terminated or modified as provided in this Agreement. The Initial Term and each Term Extension shall be collectively referred to as the "**Term**."

6.1.1    If this Agreement is terminated during the Initial Term, the parties shall enter into no further Agreement for the same or similar services to be provided within the period which would otherwise have been the Initial Term. The foregoing sentence is intended to meet the regulation at 42 CFR § 411.357(d)(iv) on altering material terms of this Agreement and shall survive the termination of this Agreement.

6.1.2    If this Agreement is terminated during a Term Extension and a new or replacement Agreement is entered into for the same or similar services, such new or replacement Agreement shall have a minimum initial term of one year.

6.2    Termination Without Cause. Regardless of any Initial Term or Term Extension, this Agreement may be terminated by either party without cause on 30 days written notice. If a party should terminate this Agreement with or without cause during the Initial Term, the parties shall not thereafter enter into a similar contract for a period of one year from the effective date of such termination. The foregoing sentence is intended to meet the regulation at 42 CFR §411,357(d) (iv) on altering material terms of this Agreement and shall survive the termination of this Agreement.

6.3    Immediate Termination For Cause. Notwithstanding any other provision in this Agreement, Hospital may immediately terminate this Agreement if any of the following occur:

6.3.1    Patient health or safety is or may be in imminent and serious danger because of Physician's action or inaction, in the discretionary judgment of Hospital;

6.3.2    Physician is charged with a felony, or with another crime involving moral turpitude or health care related offenses;

6.3.3    Physician's license to practice medicine in the State or any other jurisdiction lapses or is denied, suspended, revoked, terminated, relinquished or is made subject to terms of probation, other restriction, or to an action or proceeding that may have the same result;

6.3.4    Disciplinary action against Physician is initiated under the Hospital Medical Staff bylaws that is, in Hospital's good faith opinion, of such serious nature that

6

609382092.1

it warrants termination of this Agreement. Termination of this Agreement is not contingent on the outcome of any Medical Staff proceeding;

6.3.5 Public notoriety that calls into question Physician's skill, capability, or character, or which, in Hospital's sole judgment, may undermine Hospital or patient confidence in such skill, capability, or character;

6.3.6 Any representation or warranty under ARTICLE 3 is or becomes materially incorrect, incomplete, or untrue, or any covenant hereunder is materially breached;

6.3.7 Physician becomes the subject of an investigatory, disciplinary, or other proceeding before any governmental, professional, licensing board, medical staff, or peer review body;

6.3.8 Physician's Drug Enforcement Agency number is revoked, suspended, terminated, relinquished, placed on terms of probation, or restricted in any way;

6.3.9 An event occurs that substantially interrupts all or a portion of Physician's professional practice or that materially adversely affects Physician's ability to perform Physician's obligations hereunder;

6.3.10 Physician's conviction of an offense related to health care or Physician's suspension, debarment or exclusion from participation in the Medicare or Medicaid programs, or any other state or federal healthcare program, or Physician's listing by a state or federal agency as being debarred, excluded or otherwise ineligible for participation in any state or federal healthcare program. Physician must disclose the occurrence of such events with respect to any other physician members of Physician's practice, Physician's independent contractors, and Physician's employees;

6.3.11 Failure to complete compliance training within the time and manner specified in Section 9.4 or to abide Physician's other obligations under Article IX;

6.3.12 Physician's failure to provide timely notice to Hospital as required under Section 1.6 of this Agreement;

6.3.13 Continued performance of this Agreement, in Hospital's sole discretion, violates any applicable law or materially conflicts with any accreditation standard, the Corporate Integrity Agreement (CIA), or Federal or State health care program requirements; or

6.3.14 A matter that a reasonable person would consider a notable violation of criminal, civil, or administrative law for which penalties or exclusions from health care programs may arise. Hospital will report such event to the Office of Inspector General of Health & Human Services under its Corporate Integrity Agreement.

6.4    <u>Termination for Change in Law.</u>

7

609382092.1

6.4.1  In the event that any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues or promulgates any new, or change to any existing, law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "**Legal Event**"), which, in the good faith judgment of one party (the "**Noticing Party**") (i) may result in a material and adverse effect to either party or (ii) indicates a rule or regulation with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other party notice of its intent to amend or terminate this Agreement, as provided below.

6.4.2  The Noticing Party shall give notice to the other party, together with an opinion of counsel, describing the Legal Event(s) and its consequences to the Noticing Party, and the Noticing Party's intention to either terminate this Agreement or amend this Agreement, together with a statement of the purposes therefore and the proposed amendment(s).

6.4.3  If the Noticing Party has elected to terminate this Agreement in accordance with this Section, then this Agreement shall terminate within thirty (30) days of receipt by the other party of such notice.

6.4.4  If the Noticing Party has elected to amend this Agreement in accordance with this Section, then the parties shall have ten (10) days from the receipt of such notice by the other party to amend this Agreement. If this Agreement is not so amended, then this Agreement shall terminate immediately thereafter. Except as otherwise required by applicable law, any outstanding amounts owed pursuant to this Agreement shall be paid to the date of such termination, and any obligations under this Agreement that are intended to continue beyond expiration or termination hereof shall so continue. All opinions of counsel delivered in accordance herewith shall be deemed confidential, given solely for purposes of renegotiation and settlement of a potential dispute, and shall not be deemed disclosed so as to waive any privileges otherwise applicable.

6.5  <u>Termination Not Exclusive Remedy</u>. Termination for Cause as provided under Section 6.3 shall not prohibit Hospital from exercising any other right or remedy under this Agreement or otherwise allowed by law.

6.6  <u>Material Breach</u>. This Agreement may be immediately terminated upon the breach of a material term thereof, unless cured to the reasonable satisfaction of the non-breaching party within ten (10) days of written notice of the breach.

6.7  <u>Cross Termination</u>. In the event that a cause for termination arises under this Agreement, Hospital may also terminate the Additional Agreements identified under Section **Error! Reference source not found.** of this Agreement. A termination of one, any or all such agreements shall not limit available rights and remedies of Hospital.

6.8  <u>Effect of Termination</u>. Upon the effective date of termination of this Agreement, neither party shall have any further rights nor obligations hereunder except:

609382092.1

(1) as otherwise provided herein; (2) for rights and obligations accruing prior to such effective date of termination; and (3) arising as a result of any breach of this Agreement.

## ARTICLE 7

## PROPRIETARY INFORMATION, CONFIDENTIALITY MAINTENANCE AND ACCESS TO BOOKS AND RECORDS

7.1     Hospital Information. Physician recognizes and acknowledges that, by entering into this Agreement and providing Services hereunder, Physician may have access to certain Hospital information that is confidential and constitutes valuable, special and unique property of Hospital.   Physician agrees that Physician will not disclose to others, use, copy or permit to be copied, without Hospital's express prior written consent, except in connection with the performance of Physician's duties hereunder, any confidential or proprietary information of Hospital, including, without limitation, information which concerns Hospital's patients, costs, prices and treatment methods at any time used, developed or made by Hospital, and which is not otherwise available to the public.

Pursuant to Section 7 of the federal Defend Trade Secrets Act of 2016 (the "Act"), Physician is hereby notified that Physician shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that: (A) is made: (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal, as provided under the Act.

7.2     Covenant Not to Solicit.  In order to protect the trade secrets and confidential and proprietary information belonging to Hospital, during the term of this Agreement and any extensions or renewals thereof, and for a further period of one (1) year after termination of this Agreement, Physician shall not (i) recruit, solicit for hire, or induce any party to recruit, hire or solicit for hire, any person who is an employee or independent contractor of Hospital; or (ii) disrupt, damage, impair or interfere with the business of Hospital.

7.3     Terms of this Agreement. Except for disclosure to Physician's legal counsel, accountant or financial advisors (none of whom shall be associated or affiliated in any way with Hospital or any of its affiliates), Physician shall not disclose the terms of this Agreement to any person, unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to, in writing, by Hospital. Unauthorized disclosure of the terms of this Agreement shall be a material breach of this Agreement and shall permit Hospital to pursue remedies for breach, and termination of this Agreement.

7.4     Patient Information. Physician shall not disclose to any third party, except where permitted or required by law or where such disclosure is expressly approved by Hospital in writing, any patient or medical record information regarding Hospital patients,

609382092.1

and Physician shall comply with all federal and state laws and regulations, and all rules, regulations, and policies of Hospital and its medical staff, regarding the confidentiality of such information. Physician acknowledges that in receiving or otherwise dealing with any records or information from Hospital about Hospital patients receiving treatment for alcohol or drug abuse, Physician is bound by the provisions of the federal regulations governing Confidentiality of Alcohol and Drug Abuse Patient Records, 42 C.F.R. Part 2, as amended from time-to-time.

Any and all Patient records and charts prepared by Physician as a result of Services performed under and subject to this Agreement shall be and remain the property of Hospital. Both during and after the term of this Agreement, Physician or his/her agent shall be permitted to inspect and duplicate, at Physician's sole expense, any individual chart or record; however, such inspection, duplication or review of confidential patient medical records shall be done in strict compliance with all statutes and regulations imposing standards of privilege and patient confidentiality.

     7.5     HIPAA Compliance. Physician agrees to comply with the applicable provisions of the Administrative Simplification section of the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. § 1320 through d-8 ("HIPAA"), and the requirements of any regulations promulgated thereunder, including, without limitation, the federal privacy regulations as contained in 45 C.F.R. Part 164, and the federal security standards as contained in 45 C.F.R. Part 142 (collectively, the "Regulations"). Physician shall not use or further disclose any protected health information, as defined in 45 C.F.R. 164.504, or individually identifiable health information, as defined in 42 U.S.C. § 1320d (collectively, the "Protected Health Information"), other than as permitted by this Agreement and the requirements of HIPAA or the Regulations. Physician will implement appropriate safeguards to prevent the use or disclosure of Protected Health Information other than as contemplated by this Agreement. Physician will promptly report to Hospital and Facility any use or disclosures, of which Physician becomes aware, of Protected Health Information in violation of HIPAA or the Regulations. In the event that Physician contracts with any agents to whom Physician provides Protected Health Information, Physician shall include provisions in such agreements pursuant to which Physician and such agents agree to the same restrictions and conditions that apply to Physician with respect to Protected Health Information. Physician will make its internal practices, books and records relating to the use and disclosure of Protected Health Information available to the Secretary to the extent required for determining compliance with HIPAA and the Regulations. No attorney-client, accountant-client or other legal or equitable privilege shall be deemed to have been waived by Physician, Hospital or Facility by virtue of this Subsection. Upon request Physician shall sign Hospital's standard form Business Associate Agreement.

     7.6     Books and Records. If the value or cost of services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with § 1861(v)(1)(I) of the Social Security Act, Physician agrees as follows:

609382092.1