NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 17-13797-B-9 |
| | ) |
| **TULARE LOCAL HEALTHCARE** | ) DC No. GL-1 |
| **DISTRICT,** | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM DECISION ON CREDITOR DEPARTMENT OF HEALTH CARE
SERVICES' MOTION FOR LEAVE TO FILE AMENDED CLAIM 197**

**Before:  René Lastreto II, Bankruptcy Judge**

———————————————

Grant Lien, Deputy Attorney General of California, Sacramento,
CA, for the Department of Health Care Services, Creditor.

Riley C. Walter, WANGER JONES HELSLEY, PC, Fresno, CA, for
Tulare Local Health Care District, dba Tulare Regional Medical
Center, Debtor.

———————————————

RENÉ LASTRETO II, Bankruptcy Judge:

**INTRODUCTION**

    To receive payments on allowed claims provided by a Chapter
9 Plan of Adjustment under the Bankruptcy Code, the creditor
must file a proof of claim on the approved form.[1]  Filed claims
can be amended.  The question here is "when?"

———————

[1] Unless specified otherwise, all chapter, code and rule references are
to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of

In the Ninth Circuit, amendments to claims are "liberally" allowed unless leave to amend would prejudice an opposing party. "Prejudice," though, means more than having to litigate about or pay the claim.

The California Department of Health Care Services ("DHCS") timely filed a proof of claim on the approved form in the Tulare Local Health Care District's ("District") Chapter 9 case. But the claim stated the amount was "[u]ndetermined at this time." After District objected to allowance of the claim, filed a Disclosure Statement and Plan of Adjustment, obtained court approval of the Disclosure Statement, served the Disclosure Statement and Plan, District's creditors voted to overwhelmingly support the Plan, and the court confirmed the Plan, DHCS filed a motion to amend the claim from "undetermined" to $5,520,423.33.

DHCS had many reasons for the delay in specifying the claim amount. The court considered those and the prejudice District, its creditors, and other constituencies would experience if leave to amend was granted. Based on the evidence and status of the Chapter 9 case, the court DENIES the motion for leave to amend.

**FACTS**

**Background**

Since 2002, District was a participant in a program administered by DHCS providing supplemental reimbursement to qualified health providers for outpatient services rendered to Medi-Cal patients. Doc. 2260. Annually, District provided cost

Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civ. Rule."

1   reports to DHCS for eligible outpatient services.  Doc. 1513.

2   Under California's reimbursement plan, DHCS should annually

3   reconcile District's cost reports with settled/audited cost

4   reports.  After reconciliation, any underpayment or overpayment

5   is to be reflected annually in DHCS's supplemental payment to

6   the participating provider under the program.  Doc. 2260.

7        Though District submitted its reports annually, no

8   reconciliation followed.  Docs. 1513, 2397.  That is until after

9   this case was filed, a claim deadline imposed, and District

10  objected to DHCS's claim – over sixteen years after the

11  reimbursement program began.

12       Why?  Because, DHCS says, as of April 2018 (when it filed

13  its proof of claim 197 in an "undetermined" amount) "final

14  reconciliations [were] still pending."[2]  Also, DHCS says "the

15  reconciliation process is inherently complicated and necessarily

16  time consuming."  Doc. 2259.  Time is consumed because interim

17  payments to District (and other providers) are calculated using

18  "cost-to-charge ratios" from provider cost reports and Medi-Cal

19  Fee-for-Service ("FFS") charges.  *Id.*  But final reconciliations

20  require audited cost reports and FFS charges and payments

21  reconciled from the State's "internal Medicaid Management

22  Information System ("MMIS")."  *Id.*

23       DHCS "experienced difficulties" during this sixteen-year

24  period due to: "difficulties in extracting [outpatient fee-for-

25  service] charges and revenues from MMIS;" "workforce

26

27  ─────────────────

28      [2] Decl. Shiela Mendiola, attach. to proof of claim 197.  Then, Ms.
    Mendiola was "Section Chief of Medi-Cal Supplemental Payment Section, Staff
    Services Manager II, for the Safety New Financing Division of . . . [DHCS]."

1  reductions;" and "inefficiencies with workflow logistics, some
2  of which lasted for years." *Id.*

3      Once DHCS "developed the necessary framework for extracting
4  the data, additional nuances needed to be addressed." DHCS had
5  to determine the amount of provider cost associated with
6  professional services by using all providers' MMIS data so it
7  could be excluded. This proved to be "difficult" and led to
8  further delays. *Id.*

9      Meanwhile, beset with many financial and other problems
10  complicated by its former management arrangement, District filed
11  this Chapter 9 case September 30, 2017. Less than three months
12  later, DHCS was added to the creditor list. After entering an
13  order for relief, the court issued an order setting the claims
14  bar date for April 10, 2018. Doc. 377.

15      Thirteen months later, District filed its Plan of
16  Adjustment and Disclosure Statement. Docs. 1440, 1441. The
17  Disclosure Statement said allowed unsecured claims would be
18  between $16.5 million and $26 million held by about 250
19  claimants. Doc. 1441. In a footnote, District explained the
20  wide range of estimated claim amounts was due to disputed
21  government reimbursement claims. District said it "believed"
22  that after the audits are completed within two to three years,
23  the overpayment claims will be eliminated. "Other reductions
24  may be achieved through objections to claims and pending or to
25  be filed." *Id.*

26      In August 2019, the Plan of Adjustment was confirmed.[3]
27  Doc. 1618. The success of District's reorganization hinged on

28
    ───────────────
    [3] DHCS was served all the ballot solicitation materials on July 9, 2019.
    Doc. 1545 at 11. DHCS did not return a ballot or participate in the

two major conditions.  First, District needed to lease most of its facilities.  They did.  Adventist Health is the lessee and is operating the hospital and accompanied facilities.  Second, certain loans needed to be repaid which facilitated restructuring of some of District's bond debt.  District managed that as well.

Cash flow from the lease payments and other sources under the plan permit District to attend to certain deferred maintenance projects and other needs.  Under the Plan, the unsecured creditor class (class 8) is to receive between 19.2% and 30.3% distributions on allowed claims over five years.  But payments do not begin until 2025.

**Chapter 9**

A word about Chapter 9.  This chapter of the Bankruptcy Code is available only to "municipalities" as defined in 11 U.S.C. § 101 (40).  District is a municipality.  This chapter permits reorganization of municipalities and represents a careful application of reorganization policies under bankruptcy law.  Care is necessary because of the constitutional limitation on Federal "interference" with state governments.

Very similar to Chapter 11, Chapter 9 incorporates many provisions of the Bankruptcy Code.  A list of applicable sections is found in 11 U.S.C. § 901 (a).  Among those incorporated are the provisions dealing with filing and

solicitation process. Docs. 1593-97.  Further, DHCS did not object to plan confirmation.

allowance of claims.  Both §§ 501 and 502 are incorporated entirely.[4]

For our purposes, existing jurisprudence about claims and amendments involving other chapters of the Bankruptcy Code is largely applicable.  This will become evident throughout the analysis.

**DHCS's Claim**

DHCS filed a claim in April 2018 before the bar date.[5]  The claim is in an "undetermined amount."  Claim 197 states it is for "overpayment of supplemental reimbursement under Medi-Cal." It is accompanied by the declaration of Shiela Mendiola, the Branch Chief of Provider Payments and Policy, which states, in part, that final reconciliations are still pending for "all program years beginning in State Fiscal Year 2002-2003 until the bankruptcy filing in September 2017."

A month and one half before the Plan confirmation, District filed an objection to the claim.[6]  Reserving any other grounds for objection, District contended first the claim should be disallowed because it did not specify an amount, and second, District promptly provided all information for DHCS to liquidate the claim.  After agreed continuances, DHCS opposed the claim

---

[4] That said, there are provisions of both sections that are inapplicable such as those dealing with filing and allowance of "interests" – no "interests" are involved in Chapter 9 – and claims arising during "the involuntary gap" – municipalities cannot be involuntary debtors.  *See* Richard Levin and Henry J. Sommer, eds. 6 Collier on Bankruptcy ¶ 901.04 [11], [12] (16th ed. Matthew, Bender, 2021).

[5] DHCS filed other claims as well.  All of them have been withdrawn or disallowed.  The only remaining claim is the subject of this motion.

[6] WJH-4.  District did not file a notice of hearing on its objection until several months later.  Doc. 1948.

objection and filed its first motion to amend the claim to
assert a liquidated amount: over $5.5 million.  This first
motion, filed two years after the claim filing deadline, was
denied for procedural reasons.

Finally, in late August 2020 this motion was filed.
Following agreed upon continuances to accommodate discovery, the
matter was argued and submitted to the court on March 30, 2021.[7]


**<u>Summary of Contentions</u>**

DHCS contends it is merely adding "greater particularity"
to its already timely filed proof of claim.  Under the Ninth
Circuit's "liberal standard" for claim and pleading amendments,
the liquidation of the claim from "undetermined" to $5.5 million
is allowed.  Under its legal framework, DHCS argues, it has
three years to complete its audit and did not delay in
finalizing the reconciliations.  Further, DHCS has established
reasons for the delay in reconciliations.

District urges the court adopt the standard in the Seventh
and Eleventh Circuits that claim amendments at this stage should
only be allowed for "compelling reasons" or under "compelling
circumstances."  DHCS has not met this standard, District
concludes, so the amendment should be disallowed.  Also,
District claims DHCS had all the information necessary to
provide a liquidated amount long before Plan confirmation.  At
any rate, the District urges, permitting this amendment will
hamper any reorganization effort and is harmful to the integrity

---

[7] Neither party elected to nor reserved the right to present live
testimony under Local Rule of Practice 9014-1 (f) (1) (B), (C).  So, each
party is deemed to have factual issues resolved under Civ. Rule 43 (c).  Rule
9017.

of the reorganization process.  Allowing the amendment now,
District adds, will significantly prejudice unsecured creditors
because they will receive over 20% less than they would have
otherwise received.

**JURISDICTION**

The United States District Court for the Eastern District
of California has jurisdiction over this proceeding since it
arises in a case under Title 11 of the United States Code under
28 U.S.C. § 1334 (b).  This court has jurisdiction to hear and
determine this matter by reference from the District Court under
28 U.S.C. § 157 (a).  This is a "core" proceeding under 28
U.S.C. §§ 157 (b) (2) (A) and (B).

**DISCUSSION**

I.

Whether to allow an amendment to a timely filed proof of
claim is within the discretion of the bankruptcy court.  *In re
Roberts Farms, Inc.*, 980 F.2d 1248, 1251 (9th Cir. 1992);
*Venhaus v. Wilson (In re Wilson)*, 96 B.R. 257, 262 (B.A.P. 9th
Cir. 1988).  A bankruptcy court abuses its discretion if it
applies an incorrect legal standard or its factual findings are
illogical, implausible, or without support in the record.
*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th
Cir. 2011).

The Ninth Circuit's standard for allowing claim amendments
is often characterized as "liberal." That is an overstatement.
Even under that "liberal" standard, Ninth Circuit courts look to

whether the opposing party would be "unduly prejudiced" by the amendment. *Roberts Farms*, 980 F.2d at 1251. "[I]n determining prejudicial effect [we] look to such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position." *Id.* at 1251-52 quoting *Wilson*, 96 B.R. at 262.

A.

The court declines District's invitation to adopt the "compelling reason" or "compelling circumstance" standard of the Seventh and Eleventh Circuits in considering claim amendments.

First, neither the Seventh Circuit's *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993) nor the Eleventh Circuit's *IRT Partners v. Winn-Dixie Stores, Inc. (In re Winn-Dixie Stores, Inc.)*, 639 F.3d 1053 (11th Cir. 2011) are controlling in this circuit. Neither decision cites nor distinguishes *Roberts Farms*. The dissent in *Holstein* does cite *Roberts Farms* and *Wilson* to urge remand of the case to bankruptcy court for explanation of the reasons for allowing the amendment. *Holstein*, 987 F.2d at 1271 (Ripple, J., dissenting).

Second, neither *Winn-Dixie* nor *Holstein* have been cited in the Ninth Circuit as stating a more workable test for considering post-confirmation claim amendments than *Roberts Farms*. *Winn-Dixie*, as far as the court can tell, has never been cited in the Ninth Circuit. *Holstein* has been cited twice – in a published and unpublished decision.[8] Neither case examined

---

[8] *Fed. Tax Id. Nos. 33-0811062 v. Office of State Assessed Props. (In re Leap Wireless Int'l Inc.)*, 2005 Bankr. LEXIS 3300 (Bankr. S.D. Cal. Aug. 19,

*Roberts Farms* and each referenced *Holstein* as considering various "benchmarks" (including the claims bar date and plan confirmation in Chapter 11) when proposed claim amendments should be more carefully scrutinized. *Konop*, 386 B.R. at 258; *Leap Wireless*, 2005 Bankr. LEXIS 3300 at *7.

*Roberts Farms* is not "on all fours" with the facts here. In *Roberts Farms,* the debtor did not object to the proof of claim - which was in a liquidated amount – for almost two years so the passage of time was not prejudicial. *Roberts Farms*, 980 F.2d at 1252. The proposed amendment to the claim did not change the amount of the claim, but only the legal theory of the claim. *Ibid.* There was also no persuasive showing of any prejudice in allowing the amendment.

Still, the post-confirmation amendment here attempts to change the amount. The Ninth Circuit's considerations of numerous factors will inform our analysis.


                                    B.

Nor will the court apply the "liberal" standard of pleading amendments under Civ. Rule 15 urged by DHCS.

First, Civ. Rule 15 does not apply to contested matters without a court order. Rule 9014 (c). This motion is a contested matter and there is no order applying Civ. Rule 15.

Second, even if Civ. Rule 15 applied, that does not change the analysis of facts surrounding the proposed amendment. Nor should the court ignore the effects of allowing the amendment.

---

2005); *Konop v. Hawaiian Airlines, Inc. (In re Hawaiian Airlines, Inc.)*, 386 B.R. 251 (D. Haw., 2008).

Pleading amendments are not automatic. *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 738 (9th Cir. 2013). The Ninth Circuit considers if any of five factors deter granting leave to amend:

     1. Bad faith.

     2. Undue delay.

     3. Prejudice to the opposing party.

     4. Futility of the amendment.

     5. Previous opportunities to amend the complaint.

*See also*, *Foman v. Davis*, 371 U.S. 178, 182 (1962). So, even though pleading amendments are to be freely given "when justice requires," (Civ. Rule 15 (a) (2)) the court should engage in an analysis of the surrounding circumstances before deciding whether the amendment should be allowed.

## II.

Considering the pertinent facts and circumstances, the court finds and concludes DHCS unreasonably delayed in seeking to amend its proof of claim.

## A.

DHCS reported no final reconciliations to District for at least thirteen fiscal years. This delay occurred though it is undisputed District timely provided cost reports for all those fiscal years. This tenacious reticence continued after the Chapter 9 case was filed. DHCS did not file their first motion to amend the claim until two years after the claim deadline.

1.

This brings the next question into focus.  Was the delay reasonable?  The answer: no.

At bottom, "reasonable" means "[f]air proper or moderate under the circumstances; sensible." *Black's Law Dictionary* (11th ed. 2019).  This determination relies on an objective analysis of facts.  This is consistent with other evaluations of "reasonable delay." *See Dye v. Rivera (In re Marino)*, 193 B.R. 907, 915 (B.A.P. 9th Cir. 1996) (consider "facts and circumstances of the case and determine whether delay in [lien] perfection was reasonable"); *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 256 (B.A.P. 9th Cir. 2007) (affirming bankruptcy court's application of "objective, reasonable person standard" in finding an involuntary petition was not filed in bad faith); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-89 (9th Cir. 1990) (relevant to determining undue delay is "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.").

It is not "sensible" or "moderate" to delay filing a claim in a liquidated amount when the information needed from the District was timely provided.  Nor is it "fair or proper" to delay two years after the claim deadline before seeking to amend a claim from "undetermined" to $5.5 million.  DHCS admits here that the District's fiscal year 2015-16 cost reports were audited by April 2018 (before the claim deadline).[9]  Yet no amended claim nor motion to amend was filed or prosecuted for

---

[9] Mendiola Decl., Doc. 2260, Ex. B.  She also testified that the 2016-17 fiscal year cost reports did not have to be audited until November 2020.  *Id.*

1  two years.  No estimated claim was filed based on the
2  information provided by District.

3

4                              B.
5      DHCS's explanations for the delay distill into two themes:
6  internal issues and legal protections.

7

8                              1.
9      DHCS claims there were 60-70 providers that participated in
10 the Supplemental Reimbursement Program.  There were also delays
11 in establishing the "framework" for evaluating cost reports,
12 reconciling data from DHCS's MMIS system, personnel challenges,
13 other hindrances in finally reconciling the audited cost
14 reports, and "nuances" that added to their problems.  But our
15 inquiry must be an objective one.  These issues ultimately are
16 not District's nor its creditors' responsibility.
17     The program is undoubtedly complex to administer.  But it
18 is DHCS's duty to annually reconcile cost information from filed
19 hospital cost reports to the audited reports.[10]  Payments under
20 the program are adjusted based on the reconciliation.
21 District's duty is to provide the reports.  District did.
22     The subjective explanations for DHCS's delays are logical.
23 But they do not make the delay reasonable here.

24

25                              2.
26     DHCS also argues that statutes authorizing recoupment of
27 overpayments provide three years from acceptance of a cost

28
   _____
   [10] *Id.*

                              13

report to complete an audit.  Cal. Welf. & Inst. Code §§ 14710
(a) (1), 14115.5, 14172 and 14177.  True enough, but DHCS
provides no authority that these statutes excuse DHCS from claim
filing deadlines or other deadlines critical to a reorganization
process.  *See In re Bajac Constr. Co.*, 100 B.R. 524, 525 (Bankr.
E.D. Cal. 1989) (acknowledging "[in] Chapter 11, Chapter 12, or
Chapter 13 proceedings there may well be equities present which
make it proper to reject the attempted amendment of a claim.
The process of reorganization or rehabilitation may be too far
along and various parties who have labored on the plan may be
prejudiced" by the amendment). The cited statutes authorize
recoupment the amounts overpaid from future payments.
*Krolikowski v. San Diego City Employees' Ret. Sys.*, 24 Cal. App.
5th 537, 560; 24 Cal. Rptr. 3d 499 (2018).  The statutes do not
go as far as DHCS advocates.

Further, recoupment is not what DHCS is seeking here.
Rather, it wants to assert a $5.5 million claim.  Recoupment in
the bankruptcy context is "the setting up of a demand arising
from the *same transaction* as the plaintiff's claim or cause of
action *strictly* for the purpose of abatement or reduction of
such claim." *Gardens Reg'l Hosp. & Med. Ctr. Liquidating Tr. v.
Cal. (In re Gardens Reg'l Hosp. & Med. Ctr., Inc.)*, 975 F.3d
926, 934 (9th Cir. 2020) (emphasis in original) quoting *Newbery
Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir.
1996).  DHCS is not seeking to recoup its alleged claim from
future reimbursements.  District is not operating the hospital
now.  So, prosecuting the claim is not recoupment subject to the
statutes cited.

3.

The Ninth Circuit's frequent application of the "informal proof of claim" doctrine is unhelpful to DHCS, here.  This "judge made" doctrine permits late "amendments" to claims that may not have been filed timely under certain circumstances. Usually, the claimant seeking relief under the doctrine has otherwise participated in the case and the claim is well known from the case record.  *See Pac. Res. Credit Union v. Fish (In re Fish)*, 456 B.R. 413, 419 (B.A.P. 9th Cir. 2011) (holding stay relief motion and plan objection which stated the amount and basis of the claim met the requirements); *In re Sambo's Rests., Inc.*, 754 F.2d 811, 816-17 (9th Cir. 1985) (holding wrongful death lawsuit, correspondence between counsel, and claimant's joinder in a motion to transfer was sufficient).

A bankruptcy court's determination of whether a document is an informal proof of claim is an issue of law.  *In re Fish*, 456 B.R. at 417 citing *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii)*, 761 F.2d 1374, 1377 (9th Cir. 1985).

To constitute an informal proof of claim, the document must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the estate liable.  *In re Holm*, 931 F.2d 620, 622 (9th Cir. 1991) (quoting *In re Anderson-Walker Indus., Inc.*, 798 F.2d 1285, 1287 (9th Cir. 1986); *In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 182 (9th Cir. 1979) *cert. den.* 445 U.S. 915 (1980)).  DHCS's claim here suffers from three infirmities preventing application of the "informal proof of claim" doctrine.

First, DHCS filed the proof of claim on the requisite form before the claim filing deadline. Beneficiaries of the doctrine have not filed a timely claim.

Second, DHCS's claim does not state an explicit demand. The claim states the amount as: "Undetermined at this time."[11] In fact, the attachment to the claim does not establish an intent to hold the estate liable. The declaration attached states in part: "A final reconciliation may result in a determination of overpayment or additional reimbursement (underpayment) for a particular year."[12]

Third, DHCS ignores the existence of prejudice in the analysis. Under the "informal proof of claim" doctrine, amending the claim will only be allowed "in the absence of prejudice to opposing parties." *Sambo's*, 754 F.2d at 816-17. Evident so far is unreasonable delay. District and other creditors have also been prejudiced for other reasons.

### III.

On these facts, the court finds and concludes District and other creditors relied upon and changed their positions based on the unliquidated claim filed by DHCS.

### A.

District's interim CEO, Daniel R. Heckathorne, testified by declaration that District ordinarily provided cost reports on an annual basis to DHCS through September 30, 2017 when District

---

[11] Claim 197.

[12] *Id.*, Ex. A, ¶ 4.

filed Chapter 9.[13]  This testimony is unchallenged.  Further, no
information was available in the books and records showing any
demand from DHCS between 2002 and 2017.[14]

What is more, District's next CEO, Sandra L. Ormonde,
confirmed in her declaration the District's books and records
did not reflect any money was due.  So, the DHCS claims were
valued at $0 when financial projections were prepared for the
Disclosure Statement and Plan.[15]  This assumption underpinned
District's calculation of the range of percentages allowed
unsecured claims would receive, ensure plan feasibility, and
District's ability to otherwise perform.[16]  No District records
reflected any sums due DHCS for the outpatient reimbursement
program.[17]  So, it was more than plausible that District's
reliance was reasonable.

The Disclosure Statement stated a range of potential
recoveries for the unsecured class (Class 8).  The Plan was
overwhelmingly accepted by the impaired classes, including
Class 8.[18]  Logically, those creditors relied upon the estimates
of distribution in deciding how to vote.  That is reliance and
change of position based on the "undetermined" amount of the
proof of claim filed by DHCS.

///

///

///

---

[13] Heckathorne Decl., Doc. 1513.
[14] *Id.*
[15] Ormonde Decl., Doc. 2397.
[16] *Id.*
[17] *Id.*  DHCS objected to admission of portions of the Ormonde
declaration and rulings on the objections were placed on the record at the
hearing.
[18] Ballot Summ., Doc. 1593.

B.

District should not have relied upon the proof of claim, contends DHCS, because participation was voluntary, and District could have determined a relatively accurate amount due by examining the actual interim payments it received and recalculated the payments once it received the audited cost reports from DHCS for each fiscal year.

Two problems abate that contention.  First, DHCS admits that due to its operational problems, audited cost reports could not be generated on a timely basis until at least April 2018.[19] This is further bolstered by Mr. Heckathorne's and Ms. Ormonde's declarations which state the District's records showed nothing was due.[20]

Second, DHCS's argument proves too much.  If District could have hypothetically made an internal reconciliation, so should DHCS.  Plus, DHCS had superior access to the necessary information including the internal processes to "put a fine point" on the reconciliation calculation.  Yet, no attempt was made to estimate a claim amount in DHCS's proof of claim until well after the Plan of Adjustment was confirmed.


C.

DHCS disputes reliance or change of position by creditors because the Disclosure Statement revealed a range of allowed unsecured claims between $16.5 and $26 million.  The Disclosure Statement also included a footnote explaining the reason for the range was in part due to "large disputed proofs of claim filed

---

[19] Mendiola Decl., Doc. 2260, Ex. B.
[20] Heckathorne Decl., Doc. 1513; Ormonde Decl., Doc. 2397.

by governmental entities" for overpayment claims.[21]  So, DHCS
contends its $5.5 million amount due, if allowed, is within the
range the creditor's expected.

The contention is unsupported by the facts.  District
disputed many claims in the case for various reasons.  Those
included DHCS's withdrawn claims which were disallowed after
objection.[22]  The claim at issue here, claim 197, differs from
the others because it was not in any amount and the attachment
to the claim was ambiguous whether any claim existed at all.

IV.

This court also finds and concludes that based on the
above, District and other creditors would be legally prejudiced
if DHCS's claim amendment was allowed.

A.

We begin by acknowledging DHCS is correct that in the
context of claim amendments "prejudice requires more than simply
having to litigate the merits of, or to pay, a claim – there
must be some legal detriment to the party opposing." *Wall St.
Plaza, LLC v. JSJF Corp. (In re JSJF Corp.),* 344 B.R. 94, 102
(B.A.P. 9th Cir. 2006).  Also, the burden of identifying actual
prejudice that would result from allowing an amendment is on the
party objecting to the amendment.  *Sambo's*, 754 F.2d at 817
(applying the rule to find a sufficient informal proof of
claim).  This is consistent with burdens placed on parties

---

[21] Disclosure Statement, Doc. 1441 at 37.
[22] Claims 186, 187, 243 which totaled about $5.35 million. Docs. 2120-
22.

1 opposing pleading amendments under Civ. Rule 15.  *See DCD*
2 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

3      That said, the factors used to determine potential
4 prejudice are the factors listed in *Roberts Farms.  JSJF*, 344
5 B.R. at 102.  The court has found unreasonable delay, reliance,
6 and change of position of both District and creditors.  So,
7 there is already *more* prejudice shown than simply having to
8 litigate or pay the amended claim.  But we examine prejudice
9 further.

10

11                              B.

12      Ms. Ormonde testified that based on District's books and
13 records and other data the aggregate percentage distribution
14 under the Plan of Adjustment will be 19.2% to 30.3%.  She also
15 calculated that based on District's current liability for
16 allowed Class 8 claims, if DHCS's proposed amended claim of over
17 $5.520 million were allowed, the amount paid to Class 8 claims
18 would drop to 18.56%.  That is below the "low end" of the
19 estimated payment to Class 8 claims.  20.49% lower.[23]  A
20 significant reduction of potential payment to creditors.

21      Also, District indisputably submitted timely cost reports.
22 No evidence was presented that at any time before this motion to
23 amend was District made aware of a claim that would be made by
24 DHCS under the outpatient reimbursement program.  District filed
25 this Chapter 9, obtained an order for relief, the court ordered
26 a claims bar date, District prepared a Plan and Disclosure
27 Statement, creditors voted, the Plan was confirmed.  All these

28

---

[23] Ormonde Decl., Doc. 2397 at 3-4.

benchmarks occurred under the scenario presented by DHCS that
the claim amount was "undetermined."  That is legal detriment to
District and creditors.

                                    C.

     DHCS disagrees.  They claim neither District nor creditors
were prejudiced because claim 197 was "undetermined" since the
proposed amendment simply adds more particularity to the claim.
Even so, DHCS adds, the confirmed Plan does not start
distributions to Class 8 for approximately four more years.  The
court is unconvinced.

                                    1.

     "More particularity" assumes some "particularity" in the
first place.  We have already discussed the issues with the
vagueness of the claim and its effects on District and its
creditors.

     Also, DHCS improperly minimizes the magnitude of the
proposed amendment.  The effects on District and distributions
to the unsecured class have been discussed.

                                    2.

     Nor does the delay in the start of payments to Class 8
creditors assist DHCS.

     First, the voting creditors overwhelmingly supported the
confirmation of the Plan.  It is more than probable the
creditors read and understood the Disclosure Statement revealing
the proposed delay in beginning the payment stream.

1    Second, the delay in starting payments does not equate to
2    creditor nonchalance about the amount they were to receive.  If
3    anything, the delay in payment would heighten creditor
4    enthusiasm for accurate estimates of their proposed dividend.
5    Those distribution estimates were calculated based on District's
6    evaluation of DHCS's claim discussed previously.

7

8                                    3.

9    DHCS has provided no authority supporting such a
10   significant "amendment" after plan confirmation even under the
11   often misunderstood "liberal standard" for claim amendments in
12   the Ninth Circuit.  Most authorities referenced examine
13   application of the "informal proof of claim" doctrine discussed
14   before:  *Sambo's*, 754 F.2d at 816*; JSJF*, 344 B.R. at 101-04
15   (reversing order denying claim amendment since Plan and
16   Disclosure Statement set forth claim); *Green v. Brotman Med.*
17   *Ctr., Inc. (In re Brotman Med. Ctr., Inc.)*, No. CC-11-1131
18   PaMkLa, 2012 Bankr. LEXIS 665, *23 (B.A.P. 9th Cir. Jan. 31,
19   2012) (holding stay relief motion accompanied by attachments
20   including pending lawsuit with inexact claim amount
21   sufficient);[24] *In re Parrott Broad. Ltd. P'ship.*, 518 B.R. 602,
22   609 (Bankr. D. Idaho 2014) (finding declaration submitted to
23   United States Trustee establishing qualification to serve on
24   creditor's committee while case pending as Chapter 11 was
25   sufficient after conversion of the case to Chapter 7).

26

27   _____

28   [24] The unpublished *Brotman* memorandum cites *In re Pizza of Haw.*, 761
     F.2d at 1381 (holding that an effort to join a debtor as a defendant in a
     civil action was sufficient to show an intention to hold the estate liable).
     No similar facts are present here.

In contrast, claim amendments after plan confirmation have been denied on grounds of prejudice. *See Bevan v. Socal Communs. Sites, LLC*, 327 F.3d 994, 998 at n.2 (9th Cir. 2003) (dicta) (secured creditor's attempted amendment to increase claim to amount paid to IRS to redeem collateral prejudicial, citing *Roberts Farms*); *In re Clickaway Corp.*, No. 18-51662 MEH, 2020 Bankr. LEXIS 1436, *23 (Bankr. N.D. Cal. May 28, 2020) (amendment found prejudicial when attempted over a year after it should have been asserted under the parties' agreement and allowance would have a significant impact on other claimants, citing *Roberts Farms*).

In sum, even applying the "liberal" standard of allowing claim amendments under *Roberts Farms*, the proposed amendment urged by DHCS, if allowed, would result in prejudice to District, creditors, and other beneficiaries of the confirmed Plan of Adjustment. The court does not make this decision lightly – especially considering the potential fiscal impact. But, weighing the facts present here, this is the warranted resolution.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

    For the foregoing reasons, DHCS's Motion for Leave to Amend Claim 197 is DENIED.[25]

    An appropriate order will issue.

**Dated:** Apr 27, 2021

**By the Court**

*René Lastreto II*

**René Lastreto II, Judge**
**United States Bankruptcy Court**

---

[25] The above are the court's findings of fact and conclusions of law under Civ. Rule 52 made applicable to bankruptcy proceedings under Rule 7052 and in contested matters under Rule 9014 (c). If any finding of fact is deemed a conclusion of law, or conclusion of law deemed a finding of fact, the court adopts them as findings or conclusions, respectively.

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Gregory S. Powell, Assistant U.S. Trustee
Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Grant Lien
1300 I St #125
PO Box 944255
Sacramento CA 94244

Riley C. Walter
265 E. River Park Circle, Ste. 310
Fresno CA 93720